1   GEORGE A. RILEY (State Bar No. 118304)
    O'MELVENY & MYERS LLP
2   Embarcadero Center West
    275 Battery Street
3   San Francisco, California  94111-3305
    Telephone:   (415) 984-8700
4   Facsimile:    (415) 984-8701
    E-Mail:        griley@omm.com
5
    Attorneys for Defendants
6   STEVEN P. JOBS, WILLIAM V. CAMPBELL,
    MILLARD S. DREXLER, ARTHUR D. LEVINSON,
7   JEROME B. YORK, GARETH C.C. CHANG, PETER O. CRISP,
    LAWRENCE J. ELLISON, B. JURGEN HINTZ, KATHERINE
8   M. HUDSON, DELANO E. LEWIS, A.C. MARKKULA, JR.,
    EDGAR S. WOOLARD, JR., and APPLE INC.
9
    JEROME C. ROTH (State Bar No. 159483)
10  YOHANCE C. EDWARDS (State Bar No. 237244)
    MUNGER TOLLES & OLSON LLP
11  560 Mission Street, 27th Floor
    San Francisco, California  94105
12  Telephone: (415) 512-4000
    Facsimile:  (415) 512-4077
13  E-Mail:       Jerome.Roth@mto.com
                  Yohance.Edwards@mto.com
14
    Attorneys for Defendant
15  FRED D. ANDERSON

16              **UNITED STATES DISTRICT COURT**

17            **NORTHERN DISTRICT OF CALIFORNIA**

18                   **SAN JOSE DIVISION**

19  MARTIN VOGEL and KENNETH              Case No. C-06-05208-JF
    MAHONEY, on Behalf of Themselves and
20  All Other Similarly Situated,          **NOTICE OF MOTION AND
                                           MOTION TO DISMISS
21              Plaintiffs,                CONSOLIDATED CLASS ACTION
                                           COMPLAINT; MEMORANDUM OF
22          v.                             POINTS AND AUTHORITIES IN
                                           SUPPORT THEREOF**
23  STEVEN JOBS, PETER OPPENHEIMER,
    FRED ANDERSON, WILLIAM V.
24  CAMPBELL, MILLARD S. DREXLER,          Date:          September 7, 2007
    ALBERT GORE, JR., ARTHUR D.            Time:          9:00 a.m.
25  LEVINSON, JEROME B. YORK AND           Department:    Ctrm 3, 5th Floor
    APPLE COMPUTER, INC.                   Action Filed:  August 24, 2006
26                                         Trial Date:    None Set
                Defendants.                Judge:         Honorable Jeremy Fogel
27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

ARGUMENT .................................................................................................................. 6

    I.    The Complaint Fails To State Viable Claims Because It Does Not Supply A Sufficient Causal Link Between The Alleged Misconduct And Specific, Non-Speculative Economic Loss. ........................................................................ 6

        A.    Each Claim Requires A Showing That The Alleged Misconduct Caused Economic Loss To Plaintiff............................................................ 6

        B.    The Complaint Does Not Allege Facts Showing That Plaintiff Sustained Any Economic Loss Or That A Connection Exists Between Any Loss And The Alleged Misconduct.................................... 7

               1.    The Complaint does not allege facts showing that the challenged conduct caused plaintiff to suffer any economic loss. ............................................................................................... 8

               2.    The Complaint does not supply any causal link between the alleged misrepresentations and the supposed harm at issue.......... 10

               3.    Apple's stock price does not support any showing of loss. .......... 11

    II.    The Complaint Is Improper Because It States Only Derivative Claims. .............. 12

        A.    Alleged Injuries To A Corporation That Indirectly Affect Shareholders Support Only Derivative Claims. ........................................ 12

        B.    The Complaint's Allegations Demonstrate That Any Claims Arising From The Challenged Conduct Would Be Solely Derivative........................................................................................................ 14

    III.    The May 10, 2007 Shareholder Vote Defeats Any Remaining Claims. ............... 17

    IV.    SLUSA Bars The Complaint Because It Includes Class Securities Claims Based On State Law Theories. ............................................................................... 18

        A.    SLUSA Applies To The Complaint And Compels Dismissal Of The Case Absent An Exception To SLUSA's Bar........................................... 18

        B.    SLUSA's "Delaware Carve-Out" Does Not Save The Complaint. .......... 19

        C.    SLUSA Bars Entire Actions That Include Prohibited Claims. ................. 19

    V.    Apart From Its Other Defects, The Complaint Does Not Satisfy The Rigorous Pleading Requirements That Govern The Claims. ................................. 20

    VI.    The State Claims Are Barred By The Applicable Limitations Periods. ............... 22

CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)......................................................................................... 13

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
  891 A.2d 150 (Del. Ch. 2005)........................................................................... 9

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*,
  754 F.2d 57 (2d Cir. 1985)........................................................................... 8, 11

*Buckley v. Archer-Daniels-Midland Co.*,
  111 F.3d 524 (7th Cir. 1997)........................................................................... 17

*City of Ann Arbor Employees' Ret. Sys. v. Gecht*,
  No. C-06-7453, 2007 WL 760568 (N.D. Cal. Mar. 9, 2007)....................... 18, 19

*City of Vista v. Robert Thomas Sec., Inc.*,
  84 Cal. App. 4th 882 (2000) ............................................................................ 23

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)........................................................................... 2, 7, 8, 10

*Falkowski v. Imation Corp.*,
  309 F.3d 1123 (9th Cir. 2002) ......................................................................... 18

*Feitelberg v. Merrill Lynch & Co.*,
  234 F. Supp. 2d 1043 (N.D. Cal. 2002), *aff'd*, 353 F.3d 765 (9th Cir. 2003)....................... 18

*Fisher v. Kanas*,
  467 F. Supp. 2d 275 (E.D.N.Y. 2006) ............................................................... 7

*Gelfman v. Weeden Investors, L.P.*,
  859 A.2d 89 (Del. Ch. 2004).............................................................................. 9

*Gen. Elec. Co. by Levit v. Cathcart*,
  980 F.2d 927 (3d Cir. 1992)............................................................................. 17

*Gorman v. Coogan*,
  No. 03-173, 2004 WL 60271 (D. Me. Jan. 13, 2004) ......................................... 7

*Hartman v. Pathmark Stores, Inc.*,
  No. Civ. A 05-403, 2006 WL 571852 (D. Del. Mar. 8, 2006)............................. 7

*In re CNET Networks, Inc.*,
  No. C 06-03817, 2007 WL 1089690 (N.D. Cal. Apr. 11, 2007) ......................... 9

*In re Harmonic, Inc. Sec. Litig.*,
  163 F. Supp. 2d 1079 (N.D. Cal. 2001) ........................................................... 21

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
  906 A.2d 808 (Del. Ch. 2005), *aff'd* 906 A.2d 766 (Del. 2006)................... passim

*In re Lord Abbett Mut. Funds Fee Litig.*,
  463 F. Supp. 2d 505 (D. N.J. 2006) ................................................................. 20

*In re Lukens S'holders Litig.*,
  757 A.2d 720 (Del. Ch. 1999)......................................................................... 17

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...................................................... 20, 21

1

# TABLE OF AUTHORITIES
## (Continued)

2

Page

3

*In re Real Estate Assocs. Ltd. P'ship Litig.*,
223 F. Supp. 2d 1109 (C.D. Cal. 2002) ............................................................. 21

4

*In re Triarc Companies, Inc.*,
791 A.2d 872 (Del. Ch. 2001).................................................................... 13, 14

5

*J. I. Case Co. v. Borak*,
377 U.S. 426 (1964)......................................................................................... 13

6

*Jones v. H.F. Ahmanson & Co.*,
1 Cal. 3d 93 (1969) ......................................................................................... 12

7

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
199 F. Supp. 2d 993 (C.D. Cal. 2002) ............................................................. 20

8

*Koppel v. 4987 Corp.*,
167 F.3d 125 (2d Cir. 1999)............................................................................. 7

9

*Kramer v. W. Pac. Indus., Inc.*,
546 A.2d 348 (Del. 1988) ...................................................................... 13, 14, 15

10

*La. State Employees' Ret. Sys v. Citrix Sys., Inc.*,
No. Civ. A. 18298, 2001 WL 1131364 (Del. Ch. Sept. 19, 2001).......................... 9

11

*Lasley v. New England Variable Life Ins. Co.*,
126 F. Supp. 2d 1236 (N.D. Cal. 1999) ............................................................. 20

12

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
547 U.S. 71 (2006)............................................................................................ 18

13

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)........................................................................................... 7

14

*Premium Plus Partners L. P. v. Davis*,
No. 04 C 1851, 2005 WL 711591 (N.D. Ill. Mar. 28, 2005) ................................ 18

15

*Rowinski v. Salomon Smith Barney Inc.*,
398 F.3d 294 (3d Cir. 2005)............................................................................. 20

16

*Schuster v. Gardner*,
127 Cal. App. 4th 305 (2005) ................................................................... passim

17

*Slovensky v. Friedman*,
142 Cal. App. 4th 1518 (2006) ........................................................................... 7

18

*Solomon v. N. Am. Life & Cas. Ins. Co.*,
151 F.3d 1132 (9th Cir. 1998).......................................................................... 22

19

*Thiara v. Kiernan*,
No. C06-03503, 2006 WL 3065568 (N.D. Cal. Oct. 25, 2006)............................ 13

20

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004) ......................................................................... 12, 15

21

*Vega v. Jones, Day, Reavis & Pogue*,
121 Cal. App. 4th 282 (2004) ........................................................................... 22

22

*Vess v. Ciba-Geigy Corp.*,
317 F.3d 1097 (9th Cir. 2003)............................................................................ 23

23

24

25

26

27

28

iii

**TABLE OF AUTHORITIES**
(Continued)

Page

*Wenger v. Lumisys, Inc.*,
  2 F. Supp. 2d 1231 (N.D. Cal. 1998) .................................................................. 22

*Zoren v. Genesis Energy, L.P.*,
  195 F. Supp. 2d 598 (D. Del. 2002) .................................................................. 19

**STATUTES**

15 U.S.C. § 78bb ....................................................................................... 18, 19, 20

15 U.S.C. § 78u-4 ..................................................................................... 2, 6, 12, 20

28 U.S.C. § 1367 ............................................................................................... 20

Cal. Civ. Proc. Code § 338(d) ........................................................................ 23

Cal. Civ. Proc. Code § 343 ....................................................................... 22, 23

Securities Exchange Act, Section 10(b) ........................................................ 1, 5

Securities Exchange Act, Section 14(a) ................................................... passim

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................. v, 2, 21

Fed. R. Civ. P. 12 ................................................................................................ v

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on September 7, 2007 at 9:00 a.m., defendants Apple Inc. ("Apple"), Steven P. Jobs, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, Jerome B. York, Fred D. Anderson, Gareth C.C. Chang, Peter O. Crisp, Lawrence J. Ellison, B. Jurgen Hintz, Katherine M. Hudson, Delano E. Lewis, A.C. Markkula, Jr., and Edgar S. Woolard, Jr. ("defendants"), will and hereby do move for an order dismissing the Consolidated Class Action Complaint ("Complaint"). This motion seeks dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12, the Private Securities Litigation Reform Act (the "Reform Act"), and the Securities Litigation Uniform Standards Act ("SLUSA") on the grounds that the Complaint does not allege loss causation, does not state a direct claim that may be asserted by plaintiff, is pre-empted by SLUSA and otherwise does not state a claim on which relief may be granted. This motion is based on this notice, the accompanying memorandum, the declaration of Vivi N. Tran with attached exhibits and request for judicial notice, the record in this matter, oral argument, and such other matters as may be presented in connection with the hearing on this motion.

**ISSUES TO BE DECIDED (L.R. 7-4)**

1)  May plaintiff pursue claims for damages for dilution where the Complaint fails to allege economic loss from dilution and there is no causal link to the alleged misstatements?

2)  May plaintiff proceed with direct claims where the Complaint's allegations indicate that any causes of action that exist are derivative in nature?

3)  Does SLUSA bar an action that includes claims falling within the scope of Congress's express prohibitions of state law securities class actions?

4)  Do vague allegations that do not specify any defendant's role or knowledge satisfy the rigorous pleading standards of the Reform Act and Rule 9(b)?

5)  Are plaintiff's claims time-barred when the evidence cited in support of them has been a matter of public record for more than four years prior to the filing of the Complaint?

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The Consolidated Class Action Complaint filed by lead plaintiff New York City Employees' Retirement System ("NYCERS") is a radical departure from the original complaint filed by Martin Vogel and Kenneth Mahoney.

The original complaint sought damages under Section 10(b) of the Securities Exchange Act on behalf of purchasers of Apple stock between December 1, 2005 and August 11, 2006. Although such class complaints typically are followed by numerous identical suits, none were filed here. The reason is obvious: not only had Apple's disclosures of its option inquiry not resulted in any appreciable stock price drop, Apple's stock price soared in the months following the initial disclosure. When it became apparent that no damages would be available, Vogel and Mahoney lost interest in the case and did not seek lead plaintiff appointment. The only shareholder to apply for that role was NYCERS. In its appointment motion, NYCERS acknowledged its inability to recover Section 10(b) damages and declared that it would seek "equitable relief (as opposed to damages) as a remedy" under Section 14(a). Memorandum in Support of Motion for Appointment as Lead Plaintiff ("Lead Plaintiff Memo") 14 n.9.

The current Complaint purports to be on behalf of shareholders who held — rather than purchased — Apple stock as of record dates before shareholder meetings from 1996 through 2005. All Section 10(b) claims have been dropped. The Complaint depends on the speculative (and, as noted below, demonstrably false) assumption that shareholders would not have approved increases to the number of authorized shares in Apple's option plans if the company had disclosed that it had made "below market" grants. The Complaint seeks equitable relief in the form of rescission of plan amendments and an accounting. Despite NYCERS's promise to forgo claims for money damages, the Complaint also seeks damages for alleged "dilution" to shareholders.

Plaintiff's attempt to restructure this case is fundamentally flawed, and the resulting Complaint should be dismissed for the following reasons:

**The Complaint does not allege loss causation.** To recover damages, plaintiff must show, among other things, that the challenged act "caused the loss for which the plaintiff seeks to

MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT –NO. C-06-05208-JF

1  recover damages." 15 U.S.C. § 78u-4(b)(4).  Thus, the Complaint must plead facts showing both

2  loss and a causal connection between that loss and the alleged deceit.  *Dura Pharm., Inc. v.*

3  *Broudo*, 544 U.S. 336, 347 (2005).  The Complaint utterly fails to do so.  The only loss the

4  Complaint identifies is "dilution," which it equates to issuance of shares pursuant to the exercise

5  of options under the plans amended by shareholder approval.  A company, however, does not *per*

6  *se* cause a loss to its shareholders when it issues new shares.  The Complaint does not and cannot

7  allege how plaintiff was harmed by the use of stock options as incentives for Apple employees.

8  The Complaint further fails to show any causal link between any harm and the challenged

9  statements, particularly when the proxy statements fully disclosed the dilution that would occur

10  following amendment of the plans.  Without facts showing economic loss linked to the supposed

11  deception, the Complaint does not state claims for damages.

12        **The claims are derivative and cannot be asserted directly by shareholders.**  Any harm

13  from alleged misdating of options was suffered only by Apple.  If shareholders were affected at

14  all, it was only indirectly as a result of allegedly lower prices paid to Apple upon option exercises.

15  Because the alleged injury falls directly on Apple and only indirectly on shareholders, the claims

16  are derivative only, and the Complaint should be dismissed.  Similarly, any equitable remedy

17  would benefit only Apple, and claims seeking such remedies are plainly derivative.

18        **The Complaint is barred by SLUSA.**  The Complaint is barred by SLUSA because it

19  includes pre-empted state law claims.  Under SLUSA, the entire action must be dismissed.

20        **The Complaint lacks the required particularity.**  The claims are governed by the strict

21  standards of the Reform Act and Rule 9(b).  The Complaint does not meet those standards.

22        **Plaintiff's claims are time-barred.**  Plaintiff's state claims, which carry at most a four

23  year limitations period, rest on information that has been public for more than four years prior to

24  the filing of the Complaint.

25                    **FACTUAL AND PROCEDURAL BACKGROUND**

26        It is deeply ironic that during the period about which plaintiff complains, Apple produced

27  extraordinary results for its shareholders.  In 1997, following two disastrous years where Apple

28  lost $2 billion, Steve Jobs returned to the company he co-founded, first as a director and advisor,

MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT –NO. C-06-05208-JF

1  and then as CEO.  Under Jobs's leadership, Apple was restructured and new products were

2  introduced.  Apple's compensation policies were reformed to reduce cash outlays and align

3  employees' interests with shareholders.  Declaration of Vivi N. Tran ("Tran Dec."), Ex. A at 6-7.

4  $1 invested in Apple stock when Jobs returned would be worth approximately $25 today.

5  Apple's stock price has continued to rise throughout the recent period of stock option

6  investigation and disclosures.  On June 28, 2006, the trading day before the initial disclosure of

7  Apple's independent options investigation, the share price was $65.59.  By October 5, 2006 —

8  the day after Apple announced the results of the investigation — the price had reached $74.83.

9  When Apple announced its restatement on December 29, 2006, the price closed at $84.84.  And

10  the share price closed at $99 on April 24, 2007, when the SEC announced that it would sue two

11  former officers, but not Apple, whose cooperation and independent investigation were praised by

12  the SEC as "swift, extensive, and extraordinary."  *Id.*, Ex. B.  Today the price closed at $124.

13  As emphasized in Apple's SEC filings, stock options have been the "cornerstone" of the

14  company's compensation program.  *Id.*, Ex. A at 7.  According to its 1998 proxy, Apple's

15  compensation program is structured to "motivate executive officers to improve the financial

16  position of the Company, to hold executives accountable for the performance of the organizations

17  for which they are responsible, to attract key executives into the service of the Company and to

18  create value for the Company's shareholders."  *Id.* at 6.

19  Apple's stock option plans afforded administrators broad discretion to give employees a

20  direct equity stake in the company's future.  The plans typically set the exercise price at market

21  value on the "date of grant" (an undefined term), although the administrators of certain plans

22  were authorized to set the exercise price below market value in their discretion.  At the April 22,

23  1998 Annual Meeting, shareholders adopted the 1998 Executive Officer Stock Option Plan.  *See*

24  *id.* at 22-27; Tran Dec., Ex. C at 12.  This plan provided that "[o]ptions may be granted with a per

25  Share exercise price of less than 100% of the Fair Market Value per Share on the date of grant as

26  determined by the Administrator or pursuant to a merger . . ."  Tran Dec., Ex. C at 42.  *See also*

27  *id.* at 18 (for 1997 Employee Stock Option Plan, Administrator had authority to reduce exercise

28  prices, in which case "the exercise price shall be no less than 100% of the Fair Market Value as of

MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT –NO. C-06-05208-JF

1   the date of that reduction"). Under the plans, options to purchase shares at certain prices could be

2   subsequently cancelled and issued at lower prices, so that Apple could make the fullest possible

3   use of the authorized shares. If an employee left Apple without exercising options that were

4   "underwater" (*i.e.*, the current market price was lower than the exercise price), those options

5   would be returned to the pool for reissuance. Apple also authorized option exchanges whereby

6   options that were "underwater" could be exchanged for new options with exercise prices set at

7   current market prices but which required several additional years of employment for vesting. *See,*

8   *e.g.*, Tran Dec., Ex. A at 7, 14. All of these provisions were disclosed to shareholders prior to

9   approval of any plans or amendments. Plaintiff does not allege that the shareholders were ever

10  misled as to the plans' terms and flexibility.

11        The plans authorized the total number of shares that could be issued upon the exercise of

12  options, and these limits were periodically increased by amendments approved by Apple's

13  shareholders. In each case, the proxy expressly stated the amount of the increase. For example,

14  when the 1998 Executive Officer Stock Plan was adopted, the number of authorized shares was

15  17,000,000. *Id.*, Ex. C at 38. In 2000, the limit was increased by 2 million following a proxy

16  vote. Complaint ¶ 99. The Complaint does not and cannot allege that shareholders were ever

17  deceived as to the amount of the increase in authorized shares or that Apple issued shares in

18  excess of the amounts authorized by the proxy votes.

19        On June 29, 2006, Apple announced that a voluntary, internal review had discovered

20  irregularities in certain past option grants and that a special committee of outside directors had

21  hired independent counsel to perform an investigation. Tran Dec., Ex. D. The investigation

22  included more than 40,000 stock option grants made on 259 dates. The independent investigative

23  team spent more than 26,500 person-hours searching more than one million documents and

24  interviewing more than 40 current and former directors, officers, employees, and advisors. *Id.*,

25  Ex. E at 2. As a result of this inquiry, Apple concluded that certain grants made before 2003 had

26  actually been finalized after their stated grant dates and that the Company's financials should be

27  restated to reflect additional non-cash compensation expense. *See id.* at 3.

28        On April 24, 2007, the SEC filed an action against two former Apple officers for claims

4

MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT –NO. C-06-05208-JF

1   arising from two stock option grants.  The SEC announced that it would not bring an action

2   against the Company based in part on Apple's "swift, extensive, and extraordinary cooperation"

3   that included "prompt self-reporting, an independent internal investigation, the sharing of the

4   results of that investigation with the government, and the implementation of new controls

5   designed to prevent the recurrence of fraudulent conduct."  Tran Dec., Ex. B.

6        Apple's "extraordinary" proactive efforts to resolve all option issues, however, did not

7   deter a wave of lawsuits from shareholder plaintiffs.  All but one of the lawsuits were derivative

8   suits — sixteen derivative suits were filed in this Court, and five more in state court.  In this, the

9   single purported shareholder class action, only one party, NYCERS, sought lead plaintiff status.

10  NYCERS argued that "[h]ere, unlike in the typical class action, the damages available under

11  Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder are *de minimus* . . . .

12  This is because the damages recoverable under Section 10(b) are severely limited by the

13  PSLRA's 90-day 'look back' provision."  Lead Plaintiff Memo 2:5-10.  As NYCERS noted,

14  under that provision damages are curtailed or eliminated where, as here, the company's stock

15  price increases in the 90-day period following the filing of a complaint.  Perhaps because

16  damages were unavailable, the parties that filed the original complaint did not contest NYCERS'

17  lead plaintiff motion, and they have made no further appearances in the case.

18       NYCERS' current Consolidated Class Action Complaint, filed on March 23, 2007,

19  alleges that Apple proxy statements from 1996 to 2005 were misleading for failing to disclose

20  alleged misdating of certain option grants.  *See* Complaint ¶ 97.  The Complaint speculates that

21  shareholders would not have approved any expansion of "Apple's ability to award stock options

22  or other executive compensation" sought in various proxy statements if Apple's financial

23  statements had disclosed the misdating of executive stock options and their accounting

24  consequences.  *Id*. ¶¶ 49, 107, 115, 124, 133, 144, 155, 167, 176, 284.  Lacking any basis for

25  challenging the proxies, the Complaint alleges that shareholders relied on annual reports in

26  casting their votes.  *Id*. ¶ 177.  The Complaint further alleges that shareholders were misled in

27  some manner by registration statements that Apple filed after each vote had been completed.  *Id*.

28  ¶¶ 262-264.  In an attempt to find some cognizable injury, the Complaint alleges that the stock

1   that the shareholders authorized improperly "diluted" the value of plaintiff's Apple shares, and

2   that no shareholder who knew about the alleged improper conduct "would [] have voted in favor

3   of expanding Apple's ability to award executive compensation…." *Id.* ¶ 284; *see also id.* ¶ 303

4   (same assertion regarding awards to employees).  Absent from the Complaint, however, are any

5   allegations that such dilution could qualify as a loss caused by misleading proxies.  To the

6   contrary, the Complaint does not allege that the alleged misstatements had anything to do with the

7   amount of shares issued.  Nor does the Complaint suggest that the alleged "dilution" exceeded the

8   amount shareholders approved.  The Complaint similarly fails to acknowledge that the value of

9   plaintiff's stock has already increased more than twenty-five-fold during the period in which it

10  claims its stock value was somehow improperly degraded.

11      Following the filing of the Complaint, Apple's shareholders rendered demonstrably false

12  the speculation on which plaintiff's theory rests.  On May 10, 2007, fully informed of all option

13  issues of which plaintiff complains, Apple's shareholders approved further increases to the

14  amount of shares authorized for issuance under various plans, including 28 million shares under

15  the 2003 Plan and 6 million shares under the Employee Stock Purchase Plan.  *See* Tran Dec., Ex.

16  F.  Shareholders also approved extension of the terms of the 2003 Plan and the Director Plan to

17  May 10, 2017, and May 10, 2012, respectively.  *Id.*

18                                      **ARGUMENT**

19  **I.    The Complaint Fails To State Viable Claims Because It Does Not Supply A**
20  **Sufficient Causal Link Between The Alleged Misconduct And Specific, Non-**
     **Speculative Economic Loss.**

21      To state claims for damages on any legal theory, plaintiff must plead that the alleged

22  misconduct caused economic loss to the plaintiff.  Yet the Complaint fails to show either

23  economic loss or a causal link between any form of economic loss and the alleged wrongdoing.

24          **A.    Each Claim Requires A Showing That The Alleged Misconduct**
25          **Caused Economic Loss To Plaintiff.**

26      The Reform Act provides: "plaintiff shall have the burden of proving that the act or

27  omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff

28  seeks to recover damages."  15 U.S.C. § 78u-4(b)(4).  Under that standard, plaintiff must plead

facts showing "what the relevant economic loss might be" as well as "what the causal connection might be between that loss and the misrepresentation." *Dura*, 544 U.S. at 347 (dismissing claim); *see also Hartman v. Pathmark Stores, Inc.*, No. Civ. A 05-403, 2006 WL 571852 (D. Del. Mar. 8, 2006) (dismissing 14(a) claim for failure to satisfy *Dura*).[1]  The Complaint's state law claims also require a showing that the alleged wrongdoing caused the harm at issue. *See, e.g.*, *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1534 (2006) (fiduciary duty claim must show "damage proximately caused by the breach").

The Supreme Court has required strict application of causation requirements to prevent speculative and abusive litigation. *Dura*, 544 U.S. at 347.  That risk is acute here.  Apple's stock price has risen dramatically since 1997, and has soared during the months encompassed by Apple's investigation.  In this context, allegations that shareholders suffered harm to their ever-increasing stock value are implausible on their face.  Thus, plaintiff bears a heavy burden to show that it was damaged.  Speculation and assumptions are not sufficient to support claims; without specific facts showing that the alleged misconduct caused plaintiff to suffer loss, the Complaint cannot stand. *See, e.g.*, *Fisher v. Kanas*, 467 F. Supp. 2d 275, 283 (E.D.N.Y. 2006) (requiring "nonspeculative evidence" of causation).

**B.      The Complaint Does Not Allege Facts Showing That Plaintiff Sustained Any Economic Loss, Or That A Connection Exists Between Any Loss And The Alleged Misconduct.**

Realizing that any actual harms associated with option misdating — accounting charges and waste of resources — would support only claims by Apple, plaintiff offers an alternative

---

[1] Loss causation is a requirement separate and distinct from transaction causation (which the Complaint also fails to show). *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) sets forth a test for transaction causation. *See, e.g.*, *id.* at 385 ("Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.").  Claims for damages require plaintiff to show both transaction causation (*i.e.*, that the challenged statement caused the transaction) and loss causation (*i.e.*, that the alleged misstatement caused plaintiff's losses). *Dura*, 544 U.S. at 341-342; *Koppel v. 4987 Corp.*, 167 F.3d 125, 137 (2d Cir. 1999) (identifying "two components of causation in the context of securities litigation:  transaction causation and loss causation" and noting that plaintiff had properly alleged "transaction causation under *Mills*"); *Gorman v. Coogan*, No. 03-173, 2004 WL 60271, at *20 (D. Me. Jan. 13, 2004) (plaintiff must prove "not only that a defendant's misstatements or omissions caused shareholders to accept the [deal] ('transaction causation'), but also that the violations caused the injuries of which the plaintiff complains ('loss causation').").

1    justification for its attempt to benefit from the Apple option litigation.  The Complaint summarily

2    asserts that plaintiff was harmed because the issuance of shares to option holders "caused

3    dilution," and that such dilution was "the proximate and foreseeable result" of misstatements in

4    Apple's financial statements regarding earlier stock option grants.  Complaint ¶¶ 276, 277.  These

5    claims echo the boilerplate that the Supreme Court rejected in *Dura*, 544 U.S. at 340 (rejecting

6    assertions that plaintiffs "'paid artificially inflated prices for Dura securities'" and suffered

7    "'damage[s]' thereby").  They carry no greater weight here.  Nothing in the Complaint shows that

8    the alleged "dilution" constitutes economic loss of any kind to plaintiff.  Nor does the Complaint

9    establish any causal link between dilution and the alleged misstatements.

         1.    The Complaint does not allege facts showing that the challenged
10              conduct caused plaintiff to suffer any economic loss.
11

12         The Complaint alleges no facts showing loss causation on even the most basic level.  The

13   Complaint merely asserts that "but for" the alleged misstatements, the shareholders would not

14   have voted to increase the authorized shares under the plans.  This assertion is not only

15   implausible and insufficient to establish "but for" causation, it has been dramatically disproved by

16   the recent shareholder vote to increase the number of shares available under several plans.  But

17   even if this assertion were plausible, it would, at most, pertain only to transaction causation.

18   Under *Dura*, loss causation is a distinct element from transaction causation.  *Id*. at 341-342; *see*

19   *also, e.g.*, *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir. 1985)

20   (noting in 10(b) case that for loss causation, the "required causal connection may not be supplied

21   by 'but for' allegations").  Because, as demonstrated below, the Complaint offers no more than

22   conclusory and speculative "but for" allegations, it does not adequately allege loss or "proximate"

23   causation.

24         Plaintiff's damage theory rests entirely on a simplistic assumption that the issuance of new

25   shares when options are exercised (what it calls "dilution") equates to economic loss.  This

26   assumption cannot satisfy the requirements of pleading loss causation.  Share issuance is a

27   common feature of corporate life.  If every issuance caused a loss to existing shareholders, no

28   issuance would ever be approved by shareholders or management.  That is simply not the case.

1    Corporations issue shares for a wide variety of purposes that increase corporate value and thereby

2    advance shareholders' interests.  *See, e.g.*, *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d

3    150, 189-190 (Del. Ch. 2005) (financing via stock rather than debt was legitimate decision).  For

4    instance, if issuance of additional shares benefits the company by attracting and motivating its

5    employees, by allowing the company to preserve cash by paying lower salaries, or by enabling

6    the purchase of a business that produces tremendous returns, an economic gain, not a loss, is the

7    result of what plaintiff describes as "dilution."  *See, e.g.*, *In re CNET Networks, Inc.*, No. C 06-

8    03817, 2007 WL 1089690, at *1 (N.D. Cal. Apr. 11, 2007) ("Because they are so closely tied

9    with the company's stock price, and in turn the company's fortunes, stock options have been

10   considered by some to be an important part of incentive-based compensation.").

11          In light of the important and salutary purposes of share issuances, plaintiff cannot assume

12   that share issuance or "dilution" equates to economic loss.  Claims of loss from stock issuance

13   must consider the purpose for which the stock was issued, as well as the value the company

14   received in return.  *See, e.g.*, *La. State Employees' Ret. Sys v. Citrix Sys., Inc.*, No. Civ. A. 18298,

15   2001 WL 1131364, at *7-*8 (Del. Ch. Sept. 19, 2001) (attempt to value withdrawn options based

16   on dilution was "fatally flawed" because it did not consider benefits from issuance of options).

17   The court in *Gelfman v. Weeden Investors, L.P.*, 859 A.2d 89, 97 (Del. Ch. 2004), recognized this

18   fact.  The court observed that while "the number of outstanding [partnership] units nearly

19   doubled" and "[t]he balance of ownership [] shifted from non-employees to employees," "the

20   effects of this dilution and shift did not translate into negative economic effects on the per-unit

21   distributions to non-employee unitholders.  Because of Weeden's strong performance, earnings

22   kept up with dilution and Outside Investors received healthy distributions throughout this period."

23   *Id*.  Accordingly, plaintiff can only use dilution to show harm if it can show that this dilution

24   came without any corresponding economic benefit.  Without such a showing, the Complaint does

25   not establish any economic loss.

26          The Complaint nowhere alleges that Apple did not receive benefits for the option shares it

27   issued.  For instance, the Complaint does not allege that the twenty-five-fold return shareholders

28   have received since 1997 is less than it would have received without issuance of the authorized

9

1   shares.  The Complaint similarly does not allege that alternate forms of compensation (*e.g.*, cash)

2   would not have depleted Apple's value to a greater degree than did the options plaintiff now

3   speculates would not have been authorized.  Indeed, the Complaint is silent as to what value

4   Apple received in exchange for the options.  The Complaint merely reflects that the shareholders

5   authorized a series of small stock issuances (in all but two cases, 5 million shares or less,

6   Complaint ¶ 99) for use as equity incentives for employees.  Far from injuring shareholders, these

7   incentives helped produce spectacular investment returns.  Thus, because the Complaint fails to

8   show that stock issuance caused economic loss to plaintiff, it fails to state a claim.

9           2.      The Complaint does not supply any causal link between the alleged
                    misrepresentations and the supposed harm at issue.

10

11          If plaintiff could show economic loss from dilution — which the Complaint has not

12  alleged — plaintiff would next have to establish a causal link between that loss and the alleged

13  misrepresentations (*i.e.*, the failure to disclose, before a shareholder vote, that certain stock option

14  grants had been made below market).  Stated differently, even if the share issuances did not

15  produce the intended benefits for Apple but actually caused economic loss, plaintiff would still

16  have to show that the loss was caused by the alleged misstatements rather than by unrelated

17  business or market forces.  This showing — what *Dura* calls a "causal connection between the

18  material misrepresentation and the loss" — is absent here.  *Dura*, 544 U.S. at 342.  Indeed, the

19  Complaint suffers from a severe and irreparable disconnect between the harm it asserts and the

20  alleged misrepresentations on which the claims are based.

21          To show the necessary causal link, plaintiff would have to allege facts indicating that the

22  challenged statements concerned the amount of dilution shareholders experienced.  Nothing in the

23  Complaint makes this connection.  The alleged harm — "dilution" — was never concealed from

24  anyone.  Each proxy clearly and unambiguously described the number of shares to be authorized.

25  The proxies further highlighted the plans under which those shares would be issued.  The plans,

26  as noted, afforded the Company great flexibility, allowing below-market awards and adjustment

27  of grants as necessary (*e.g.*, to recycle unexercised options).  This flexibility ensured that the

28  plans, and the stock to be issued under them, would fully serve their purpose of incentivizing the

MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT –NO. C-06-05208-JF

1   employees who proved so critical to Apple's turnaround and subsequent success.  *See, e.g.*, *supra*

2   at 3.  The Complaint does not allege that any aspects of these plans were misrepresented, or that

3   shareholders were ever misled about the amount of shares that were to be issued.  In fact, the

4   misstatements that plaintiff alleges had nothing to do with the dilutive impact of the shares

5   authorized under these plans.  The alleged misstatements concerned past facts — *i.e.*, prior option

6   grants that were misdated and priced below market.  *See, e.g.*, Complaint ¶ 104 (criticizing failure

7   to disclose supposed added compensation from alleged backdating).  Those prior grants, however,

8   are not alleged to have had any impact on the number of shares that Apple issued for later grants.

9          Because the supposed deception on which the Complaint rests is not alleged to have

10   misled anyone concerning the amount of dilution that would occur, the Complaint has not alleged

11   the necessary link between the supposed misrepresentation and the claimed harm.  The

12   allegations show that shareholders experienced exactly the dilution they authorized under Apple's

13   plans — nothing more.  On these facts, the Complaint does not show causation sufficient to

14   support damage claims of any kind.  *See, e.g.*, *In re J.P. Morgan Chase & Co. S'holder Litig.*,

15   906 A.2d 808, 825-26 (Del. Ch. 2005), *aff'd* 906 A.2d 766 (Del. 2006) (rejecting attempt to use

16   breach of disclosure theory to support dilution claim; alleged dilution was injury to corporation

17   and had no logical relationship to any impairment of voting rights due to nondisclosure); *Bloor*,

18   754 F.2d at 62 (dismissing claim where loss was caused not by documents used to attract

19   investments, but by mismanagement of investment proceeds by controlling stockholders).

20                      3.      Apple's stock price does not support any showing of loss.

21          The Complaint's "damage-by-dilution" theory is also foreclosed by the Reform Act.

22   Reduced to its essence, this theory contends that plaintiff's shares are worth less than they would

23   have been absent dilution.  To measure damages under that theory, plaintiff necessarily must refer

24   to the value of Apple's stock.  Yet any attempt to measure such damages with reference to

25   Apple's stock price implicates the Reform Act's "look-back" provision.  This provision is fatal to

26   any damage claims given the spectacular performance of Apple's stock.

27          The "look back" provision applies to "any private action arising under this chapter in

28   which the plaintiff seeks to establish damages by reference to the market price of a security."  15

MOTION TO DISMISS CONSOLIDATED CLASS
                                                                     ACTION COMPLAINT –NO. C-06-05208-JF

1    U.S.C. § 78u-4(e)(1).  To ensure that no suit can proceed in the absence of an actual calculable

2    loss, this provision provides that damages "shall not exceed the difference between the purchase

3    or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean

4    trading price of that security during the 90-day period beginning on the date on which the

5    information correcting the misstatement or omission that is the basis for the action is

6    disseminated to the market."  *Id.*  This provision mandates that where, as here, the company's

7    stock price increased during the period following the filing of the suit, plaintiff has not suffered

8    recoverable damages under the Reform Act.  Indeed, NYCERS acknowledged this fact in its lead

9    plaintiff motion.  Lead Plaintiff Memo 13:3-14:18.  In light of that fact, plaintiff's damage

10   demand merits no further consideration.

11   **II.      The Complaint Is Improper Because It States Only Derivative Claims.**

12        While plaintiff has styled its claims as direct, the injuries alleged in the Complaint are in

13   fact derivative and the right to pursue any remedies belongs exclusively to Apple.  Plaintiff has no

14   right to usurp the corporation's ability to recover any such damages.  Thus, the Complaint fails.

15              **A.      Alleged Injuries To A Corporation That Indirectly Affect**
              **Shareholders Support Only Derivative Claims.**
16

17        "An action is derivative if 'the gravamen of the complaint is injury to the corporation, or

18   to the whole body of its stock or property without any severance of distribution among individual

19   holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its

20   assets.'"  *Schuster v. Gardner*, 127 Cal. App. 4th 305, 313 (2005) (quoting *Jones v. H.F.*

21   *Ahmanson & Co.*, 1 Cal. 3d 93, 106-107 (1969)).  "An individual cause of action exists only if

22   damages to the shareholders were not incidental to damages to the corporation."  *Schuster*, 127

23   Cal. App. 4th at 313.  Accordingly, a "stockholder's claimed direct injury must be independent of

24   any alleged injury to the corporation.  The stockholder must demonstrate that the duty breached

25   was owed to the stockholder and that he or she can prevail without showing an injury to the

26   corporation."  *Id.* at 316 (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031,

27   1039 (Del. 2004)).  Conversely, where the alleged injury at the heart of the case is to the

28   corporation, and the remedy sought would flow to the corporation, the claims are derivative and

1   no direct action may proceed. *See, e.g., Schuster*, 127 Cal. App. 4th at 316-18 (citing authority).[2]

2        As a general rule, "[t]he injury which a stockholder suffers from corporate action pursuant

3   to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather

4   than from the damage inflicted directly upon the stockholder," and is therefore derivative. *J. I.*

5   *Case Co. v. Borak*, 377 U.S. 426, 432 (1964), *abrogated on other grounds as recognized in*

6   *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001). Claims where the alleged harm is based on

7   dilution through issuance of options and other compensation to executives are derivative. *See,*

8   *e.g., In re Triarc Companies, Inc.*, 791 A.2d 872, 878 (Del. Ch. 2001) (claims based on issuance

9   of executive options were derivative). Hence, "[m]ere claims of dilution, without more, cannot

10   convert a claim traditionally understood as derivative, into a direct one." *J.P. Morgan*, 906 A.2d

11   at 818-19 (citations and internal quotation marks omitted).[3] Hence, where plaintiffs allege harm

12   from dilution as a result of issuance of stock in a merger, any "cash overpayment would not have

13   harmed the stockholders [] directly. The only harm to the stockholders would have been the

14   natural and foreseeable consequence of the harm to [the company]. . . . The fact that th[e]

15   transaction was effectuated by issuing stock and not by paying cash does not change the result."

16   *Id.* Claims where the alleged harm is mismanagement and waste of corporate assets are similarly

17   derivative — regardless of whether the wasted assets involve cash or stock. *Schuster*, 127 Cal.

18   App. 4th at 316 (citing authority); *see also, e.g., Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348,

19   353 (Del. 1988) (in claim by shareholder "that the value of his proportionate share of the stock

20   will be decreased as a result of alleged director mismanagement," "[a]ny devaluation of stock is

21   shared collectively by all the shareholders, rather than independently by the plaintiff or any other

22   individual shareholder. Thus, the wrong alleged is entirely derivative in nature.").

23

24   [2] "In determining the nature of the wrong alleged, a court must look to 'the body of the complaint, not to the plaintiff's designation or stated intention.'" *Thiara v. Kiernan*, No. C06-03503, 2006

25   WL 3065568, at *3 (N.D. Cal. Oct. 25, 2006) (citation omitted).

26   [3] Courts have recognized that dilution claims "are individual in nature [only] where a significant stockholder's interest is increased at the sole expense of the minority." "[T]o the extent that any

27   alleged decrease in the asset value and voting power of plaintiff's shares ... results from the issuance of new equity to a third party ..., plaintiff's dilution theory as a basis for a direct claim

28   fails and any individual claim for dilution must be dismissed." *J.P. Morgan*, 906 A.2d at 818. (citations and internal quotation marks omitted)

MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT –NO. C-06-05208-JF

1    *Schuster* illustrates the direct/derivative analysis in the context of share issuance.  There,

2    the plaintiffs alleged that in "an effort to benefit themselves, certain [d]efendants: (a) solicited

3    stockholder approval to increase the number of authorized shares of common stock from 200

4    million to 500 million shares, enabling [the company] to issue shares in payment for an ill-

5    conceived acquisition spree by issuing stock to pay for those acquisitions and diluting the

6    interests of [p]laintiff and the [c]lass," among other things.  *Schuster*, 127 Cal. App. 4th at 313.

7    Because the gravamen of this claim "was harm to [the corporation]," the claim was derivative,

8    and direct claims failed.  *Id.*

9    **B.    The Complaint's Allegations Demonstrate That Any Claims Arising
         From The Challenged Conduct Would Be Solely Derivative.**

10

11   The injury that the Complaint alleges parallels the dilution injury asserted in *Schuster*,

12   albeit to a far less degree.  *Compare, e.g.*, *Schuster*, 127 Cal. App. 4th at 313 (where the

13   corporation's total shares were increased from 200 million to 500 million, reducing plaintiffs'

14   relative ownership interests to less than half their prior percentage) *with* Complaint ¶ 38 (alleging

15   that shareholder interests were diluted by a series of individually small issuances over the course

16   of a decade); *see also, e.g.*, *id.* ¶ 99 (citing to 1996 proxy, which sought approval for issuance of

17   6.5 million shares against then-outstanding total of over 124 million shares).[4]  Both cases involve

18   alleged harm to the corporation with only incidental dilution of the interests of shareholders.  As

19   in *Schuster*, NYCERS cannot show injury to itself without also claiming injury to Apple from the

20   alleged improper options practices.  Any incidental injuries that shareholders experienced due to

21   the harm Apple suffered would have been "shared collectively by all the shareholders, rather than

22   independently by the plaintiff or any other individual shareholder."  *Kramer*, 546 A.2d at 353.

23   Because dilution — even dilution on the level of *Schuster* — supports only derivative claims, the

24   Complaint's theory fails outright.  *See, e.g.*, *id.*; *see also Triarc*, 791 A.2d at 878 (rejecting

25   _____

26   [4] The Complaint does not properly characterize Apple's share issuances in any event.  Plaintiff
     exaggerates the amount of shares at issue by improperly casting separate issuances, each of which

27   involved negligible percentages of the total outstanding shares, as a single "dilution" event.  *Id.* at
     99.  The Complaint further incorrectly assumes that all of the authorized shares were issued and

28   ignores subsequent cancellations.  And even if plaintiff's calculation was not inflated, it would
     still fall far below the level of dilution that was insufficient to create a direct claim in *Schuster*.

MOTION TO DISMISS CONSOLIDATED CLASS
                                          ACTION COMPLAINT –NO. C-06-05208-JF

1  argument that dilutive effect of options rendered claims direct).

2        The derivative character of the Complaint's claims is confirmed by the fact that the

3  remedies plaintiff seeks would flow to Apple, not to plaintiff and other members of the purported

4  class.  *See, e.g.*, *Tooley*, 845 A.2d at 1039 (in direct/derivative analysis, courts "look to the nature

5  of the wrong and to whom the relief should go"); *Schuster*, 127 Cal. App. 4th at 316 (same).  Any

6  money damages from share issuance would properly go to Apple.  *See, e.g.*, *J.P. Morgan*, 906

7  A.2d at 773 (dilution damages "would be a logical and reasonable consequence (and measure) of

8  the harm caused to [the company]," but would not support recovery by shareholders).  This is also

9  true of the equitable remedies the Complaint seeks, such as the demands to rescind option plan

10  amendments and to require defendants to account for their alleged profits.  Complaint, Prayer for

11  Relief.  Rescission of plan amendments would only change the relationship between Apple and its

12  current employees; it offers no relief to shareholders for any alleged injury they sustained.

13  Similarly, any accounting of alleged profits from misdated options would only benefit Apple.

14  When employees exercised their options, they paid the exercise price to Apple.  According to the

15  Complaint, Apple received artificially low exercise prices because options were backdated.  Thus,

16  an accounting of the alleged "profits" from these practices could only support a potential

17  repayment to Apple.  Both accounting and rescission remedies would indirectly affect all current

18  shareholders equally — a classic indicator of derivative claims.  *Kramer*, 546 A.2d at 353.  Yet

19  neither remedy would affect former shareholders in the putative class.  Any other form of

20  equitable relief similarly would directly affect only Apple, without any direct effect on plaintiff.

21        An analysis of the fundamental nature of plaintiff's claims confirms their derivative

22  character.  Plaintiff alleges that Apple improperly paid its personnel using options with below-

23  market prices, and that because Apple did so with stock rather than cash, it diluted plaintiff's

24  interests.  *See, e.g.*, Complaint ¶¶ 38, 69.  Plaintiff does not deny, however, that the number of

25  shares to be issued for options was disclosed to the voting shareholders.  *Id*.  The Complaint does

26  not supply any facts showing that alleged backdating caused Apple to issue any more shares than

27  the shareholders approved.  If the shares issued produced the value the shareholders expected

28  from them — *i.e.*, providing key employees with the incentives required to turn Apple around —

1   then plaintiff suffered no harm at all.  If the shares did not supply the desired result, then the only

2   potential claims would be derivative ones against the individuals who supposedly caused the

3   dissipation of company assets in the form of grants.  In either event, plaintiff has no direct claim.

4        The pendency of parallel derivative suits further demonstrates that the purported class

5   members have no claims.  Direct and derivative actions "are mutually exclusive: i.e., the right of

6   action and recovery belongs either to the *shareholders* (direct action) or to the *corporation*

7   (derivative action)."  *Schuster*, 127 Cal. App. 4th at 312 (citations and internal quotation marks

8   omitted).  The derivative plaintiffs in the parallel case have asserted Section 14(a) and other

9   claims based on the same substantive allegations plaintiff offers here.  *See, e.g.*, First Amended

10  Shareholder Derivative Complaint, Cause of Action XI.  While Apple opposes these suits because

11  its Board alone has the right to litigate on its behalf, Apple certainly agrees that any potential

12  claims belong to the company — not to individual shareholders.  Plaintiff thus cannot bring a

13  separate suit on claims that, to the extent they exist at all, belong solely to Apple.

14       The unalterably derivative nature of the injuries alleged here forecloses any attempt by

15  shareholders to recover individual damages on any legal theory or alternative argument.  In *J.P.*

16  *Morgan*, the plaintiffs were prevented from seeking direct damages arising from an allegedly

17  false proxy that resulted in dilution because the claims were in fact derivative.  *J.P. Morgan*, 906

18  A.2d at 773.  The plaintiffs argued that they could nevertheless seek damages on an alternative

19  theory that they had been injured by the denial of their rights to cast informed votes.  *Id.*  The

20  court rejected that tactic.  Among other things, the court noted "[a]lthough the $7 billion damage

21  figure would be a logical and reasonable consequence (and measure) of the harm caused to [the

22  company]" by issuance of additional shares, "that $7 billion figure has no logical or reasonable

23  relationship to the harm caused to the shareholders individually for being deprived of their right

24  to cast an informed vote."  *Id.*  The Court further noted that "if the plaintiffs' damages theory is

25  valid, the directors of an acquiring corporation would be liable to pay both the corporation and its

26  shareholders the same compensatory damages for the same injury.  That simply cannot be."  *Id.*

27  The same is true here.  There is no causal link to any economic loss by shareholders in this case.

28  To the contrary, shareholders saw the value of their Apple stock skyrocket during the period (in

16

1    marked contrast to *Schuster*, where the company went bankrupt).  Any recovery based on option

2    issues belongs to Apple and cannot be usurped by certain classes of shareholders.  *See, e.g.*,

3    *Schuster*, 127 Cal. App. 4th at 314 (noting that "the damages sought are still incidental to the

4    alleged injury to Peregrine, and any recovery should go to the company").[5]

5    **III.    The May 10, 2007 Shareholder Vote Defeats Any Remaining Claims.**

6          The recent shareholder vote demolishes the shaky premise on which all of plaintiff's

7    claims depend.  Following public disclosure of Apple's investigation and restatement, as well as

8    public filing of numerous shareholder suits (including the Complaint in this case, which was

9    disclosed in Apple's SEC filings), Apple's shareholders voted to increase the number of shares

10   available under the 2003 Plan and Employee Stock Purchase Plan and to extend the terms of the

11   2003 Plan and Director Plan.  Tran Dec., Ex. F.  In so doing, the shareholders raised the number

12   of shares authorized under those plans above the levels that plaintiff asks the Court to assume

13   were procured by fraud.  *Id.*  This vote not only belies the speculation on which plaintiff's claims

14   are founded, but forecloses any remedy as well.  By approving a higher number of shares than

15   that which plaintiff challenges, the shareholders have mooted plaintiff's claims for relief;

16   rescission of superseded shareholder votes would have no effect.  *See, e.g.*, *Gen. Elec. Co. by

17   Levit v. Cathcart*, 980 F.2d 927, 934-35 (3d Cir. 1992) (dismissing Section 14(a) equitable claims

18   because new election of directors mooted claims); *Buckley v. Archer-Daniels-Midland Co.*, 111

19   F.3d 524, 526-27 (7th Cir. 1997) (dismissing as moot challenges to proxy statement and election

20   because later proxy statement and election superseded allegedly invalid election and left the court

21   with no remedy to grant).  Similarly, by approving increased numbers of shares under various

22   plans, shareholders have effectively ratified the prior approvals for issuance of lower numbers of

23   shares.  *See, e.g.*, *In re Lukens S'holders Litig.*, 757 A.2d 720, 737 (Del. Ch. 1999) (informed

24   _____

25   [5] The *J.P. Morgan* court further noted that shareholders have no cognizable injury to voting rights
     in situations of this kind.  As the Court indicated, "[d]amages will be available only in
26   circumstances where disclosure violations are concomitant with deprivation to stockholders'
     economic interests or impairment of their voting rights. . . . JPMC stockholders' voting rights
27   were unaffected by the merger.  Although there are now more JPMC shares outstanding and a
     greater number of stockholders, control of the corporation remains unchanged."  *J.P. Morgan*,
28   906 A.2d at 774.  The same is true here, as there are no allegations that any controlling
     shareholder significantly increased his or her voting influence due to the challenged options.

1    shareholder vote can ratify board action and extinguish claim for breach of fiduciary duty).  The

2    Complaint thus cannot stand in any event.

3    **IV.**     **SLUSA Bars The Complaint Because It Includes Class Securities Claims**
            **Based On State Law Theories.**

4

5       In addition to its other defects, the Complaint fails because it alleges claims that are pre-

6    empted by SLUSA.  Congress enacted SLUSA to ensure that the stringent pleading standards that

7    govern federal securities claims cannot be circumvented through the filing of state law class

8    actions.  *See* 15 U.S.C. § 78bb.  SLUSA embodies a simple rule: "if it looks like a securities fraud

9    claim, sounds like a securities fraud claim and acts like a securities fraud claim, it is a securities

10    fraud claim, no matter how you dress it up."  *Feitelberg v. Merrill Lynch & Co., Inc*, 234 F. Supp.

11    2d 1043, 1051 (N.D. Cal. 2002), *aff'd*, 353 F.3d 765 (9th Cir. 2003).  To effectuate that rule,

12    SLUSA provides that no suit containing a concealed securities fraud claim may proceed in either

13    state or federal court.  15 U.S.C. § 78bb(f)(1).  Because this Complaint reflects an attempt to

14    disguise a securities class action in state law theories, the Complaint is barred by SLUSA.

15         **A.**     **SLUSA Applies To The Complaint And Compels Dismissal Of The**
               **Case Absent An Exception To SLUSA's Bar.**

16

17       SLUSA prohibits actions involving:  1) a covered class action; 2) alleging state law claims;

18    3) alleging a misrepresentation or omission of material fact; 4) in connection with the purchase or

19    sale of 5) a covered security.  15 U.S.C. § 78bb(f)(1).  As this Court has held, claims involving

20    proxies seeking approval for issuance of stock options fall squarely within this definition.  *See,*

21    *e.g.*, *City of Ann Arbor Employees' Ret. Sys. v. Gecht*, No. C-06-7453, 2007 WL 760568, *4-*5

22    (N.D. Cal. Mar. 9, 2007) (claims involving proxy seeking approval for issuance of stock options

23    were barred by SLUSA unless falling within one of its exceptions), *citing Merrill Lynch, Pierce,*

24    *Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006); *see also, e.g.*, *Premium Plus Partners L.P. v.*

25    *Davis*, No. 04 C 1851, 2005 WL 711591, at *19 (N.D. Ill. Mar. 28, 2005) (claims barred even

26    without purchases of covered securities by plaintiffs); *Falkowski v. Imation Corp.*, 309 F.3d 1123,

27    1129 (9th Cir. 2002) (SLUSA barred claims involving options).  The Complaint alleges precisely

28    such claims.  *See, e.g.*, Complaint ¶¶ 68-74.  As a result, unless plaintiff can demonstrate that an

   MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT –NO. C-06-05208-JF

1   exception to SLUSA applies here, the Complaint should be dismissed.

2         **B.**     **SLUSA's "Delaware Carve-Out" Does Not Save The Complaint.**

3        SLUSA contains an exception for state law class actions that target "any recommendation,

4   position, or other communication with respect to the sale of securities of an issuer that … is made

5   by or on behalf of the issuer … and … concerns decisions of such equity holders with respect to

6   voting their securities…." 15 U.S.C. § 78bb(f)(3)(A)(ii).  This exception, known as the "second

7   Delaware carve-out," reserves limited claims for state law.  Plaintiff here, like the plaintiffs in

8   *Ann Arbor*, may argue that this exception applies because the Complaint includes challenges to

9   proxies issued in connection with corporate elections.  *City of Ann Arbor Employees' Ret. Sys.*,

10  2007 WL 760568 at *3 (citing 15 U.S.C. § 78bb(f)(3)(A)(ii)).  Such an argument would fail in

11  light of established case law.

12       The Complaint challenges not only proxies and accompanying 10-Ks, but registration

13  statements as well.  *See, e.g.*, Complaint ¶¶ 262-264.  These registration statements are not part of

14  any solicitation of votes.  They were not mailed to shareholders in advance of an election, were

15  not intended to go to shareholders, and did not even exist at the time of the elections they pertain

16  to.  They were instead prepared after elections to register the authorized shares.  *Id.* ¶ 262.

17  Accordingly, the registration statements do not qualify for the second Delaware carve-out

18  irrespective of whether any shareholders considered them in deciding how to vote.  *See, e.g.*,

19  *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 604 (D. Del. 2002) (claims of misleading

20  statements in IPO and SPO prospectuses not saved by second Delaware carve-out because they

21  "did not concern decisions of such equity holders with respect to voting their securities…")

22  (citation and internal quotation marks omitted).  Were the rule otherwise, SLUSA would be

23  meaningless as plaintiff could claim to have relied on literally anything in determining how to

24  vote.  Because the challenges to the registration statements do not qualify for preservation under

25  the second Delaware carve-out, all claims concerning those statements are barred by SLUSA.

26       **C.**     **SLUSA Bars Entire Actions That Include Prohibited Claims.**

27       By its terms, SLUSA prohibits "covered class action[s]" that allege misstatements in

28  connection with covered securities transactions.  15 U.S.C. § 78bb(f)(1), (2).  "Covered class

MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT –NO. C-06-05208-JF

action," in turn, refers to "any single lawsuit" or "group of lawsuits."  15 U.S.C. § 78bb(f)(5).

This language contrasts sharply with other federal statutes that speak in terms of "claims" within

a suit.  *See, e.g.*, 28 U.S.C. § 1367 (authorizing supplemental jurisdiction over "claims" that are

related to other "claims in the action").  SLUSA thus compels dismissal of any <u>action</u> that

includes prohibited claims; its bar is not limited to individual claims within a larger suit.

Because SLUSA calls for covered class actions to stand or fall as a whole, complaints that

combine SLUSA and non-SLUSA claims are subject to dismissal in their entirety.  *See, e.g.*,

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1000, 1004 (C.D.

Cal. 2002) (dismissing action alleging fraud involving covered and non-covered securities);

*Lasley v. New England Variable Life Ins. Co.*, 126 F. Supp. 2d 1236, 1238-39 (N.D. Cal. 1999)

(same); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 304 (3d Cir. 2005) ("Under the

statutory language [of SLUSA], inclusion of these preempted claims within the putative class

compels dismissal of the entire action.").  Indeed, every class action covered by SLUSA may

encompass claims that might have been proper if brought individually.  SLUSA, however, does

not authorize courts to dissect classes into fractional claims that might have survived if alleged

separately.  The statute bars the alleged class claims outright.  Because the Complaint includes

claims that fall within SLUSA's prohibition, the Complaint cannot proceed irrespective of

whether sub-portions of its purported claims might fall outside the bar.  *See, e.g.*, *In re Lord

Abbett Mut. Funds Fee Litig.*, 463 F. Supp. 2d 505 (D. N.J. 2006) (dismissing case where one of

the claims asserted was barred by SLUSA).

**V.     Apart From Its Other Defects, The Complaint Does Not Satisfy The Rigorous Pleading Requirements That Govern The Claims.**

Section 14(a) is governed by the Reform Act's heightened pleading standards.  *In re

McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000).  In the context

of Section 14(a), the Reform Act requires highly specific facts showing falsity, a "strong

inference" that each defendant acted negligently, and a detailed factual basis for all of plaintiff's

claims.  *Id.* at 1267 (citing 15 U.S.C. § 78u-4(b)(2)).  Moreover, plaintiff's state claims are based

on allegations of wrongful concealment.  *See* Complaint ¶¶ 37 (alleging concealment), 51

1  (alleging intentional conduct), 264 (same), 273 (alleging wrongful concealment).  Indeed,

2  plaintiff's effort to avoid the statute of limitations recognizes that without a showing of

3  concealment, plaintiff's claims would be time-barred.  *See infra* at VI; *see also* Complaint ¶¶ 273-

4  275.  As a result, plaintiff's state claims "sound in fraud" and must be alleged with particularity

5  under Rule 9(b).  Fed. R. Civ. P. 9(b); *see also, e.g.*, *In re Harmonic, Inc. Sec. Litig.*, 163 F. Supp.

6  2d 1079, 1088-89 (N.D. Cal. 2001) (claims "plainly sound in fraud" when their "essence" was

7  that defendants intentionally withheld information).  This standard requires plaintiff to plead with

8  factual specificity the "'who, what, where, when, and how' and the reasons why the

9  misstatements were in fact false." *McKesson HBOC*, 126 F. Supp. 2d at 1266.

10       The Complaint does not satisfy either the Reform Act or Rule 9(b).  Plaintiff supplies no

11  facts showing what any defendant did or did not do in connection with preparation of the 2005

12  proxy — or for that matter, any other proxy, report, or registration statement.  The Complaint

13  merely identifies statements that plaintiff contends were false because they did not disclose option

14  issues.  *See, e.g.*, Complaint ¶¶ 98-264.  Plaintiff couples these descriptions with conclusory

15  statements about each defendant's supposed involvement in the alleged wrongdoing.  *See, e.g.*, *id.*

16  ¶ 98 (alleging that statements were made "with the knowledge, approval, participation, reckless

17  disregard or negligence of each individual defendant").  There are no facts showing that any

18  defendant knew of, or had any reason to know of, any problems with the accounting for stock

19  options at the time any of the challenged statements were made.  There are not even allegations as

20  to what any defendant did other than sign documents.  *See, e.g.*, *id.* ¶¶ 179, 184, 189 (identifying

21  directors who signed various annual reports).  These allegations do not begin to show what any

22  defendant knew, did, or did not do at any particular time.  As a result, these assertions do not

23  support a "strong inference" that any defendant acted negligently as required for liability here.

24  Such vague allegations similarly do not show that any defendant had any reason to suspect that

25  option improprieties existed at all — much less that option issues rendered any Apple statements

26  misleading.  *See, e.g.*, *In re Real Estate Assocs. Ltd. P'ship Litig.*, 223 F. Supp. 2d 1109, 1119-

27  1120 (C.D. Cal. 2002) (Section 14 and Rule 14a-9 "require that officials divulge all known

28  material facts so that shareholders can make informed choices"); *Vega v. Jones, Day, Reavis &*

MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT –NO. C-06-05208-JF

1    *Pogue*, 121 Cal. App. 4th 282, 292 (2004) ("the question in a nondisclosure case is whether the

2    defendant knows of material facts, and also knows that those facts are neither known nor readily

3    accessible to the plaintiff").[6]  Plaintiff thus has not presented any viable claims for relief.

4           The Complaint's critical lack of specificity is highlighted by its failure to limit its

5    accusations against anyone to the period in which he or she was actually at Apple.  The

6    Complaint levies the same accusations at Katherine Hudson (who is not alleged to have been at

7    Apple after 1997, *see* Complaint ¶ 21) as it does against Arthur Levinson (who is not alleged to

8    have joined Apple until 2000, *see id.* ¶ 13).  *See, e.g.*, *id.* ¶¶ 295-309 (asserting same claims

9    against all defendants).  Plaintiff does not explain how Hudson could be responsible for

10   statements issued after she left Apple.  Nor does it specify how Levinson could be liable for

11   events that occurred before he joined the Company.

12          Because it lacks facts showing why any defendant knew or should have known of any

13   problems with the challenged statements, the Complaint simply assumes that because Apple

14   eventually discovered some misdated option grants, a strong inference exists that every person

15   who ever signed any Apple SEC filing was negligent per se — and is somehow responsible for all

16   statements issued concerning options, regardless of when they were issued.  Such implausible

17   assumptions cannot save the Complaint's claims.  In the absence of facts supporting a "strong

18   inference" of culpability, or even providing basic notice as to who supposedly knew and did what,

19   the Complaint's claims do not pass muster on any theory.[7]

20   **VI.    The State Claims Are Barred By The Applicable Limitations Periods.**

21          The initial complaint in this action was not filed until August 2006, and the amended

22   complaint alleging state claims was not filed until March 2007.  Giving plaintiff every benefit of

23   the doubt, the longest limitations period for the state claims would be four years.  *See, e.g.*, Cal.

24   Civ. Proc. Code § 343 (four year limitations period governs claims not otherwise covered);

25   *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998) ("California Courts

26

27   [6] If plaintiff accuses defendants of failing to discover option issues, it would be asserting the same duty of care claim alleged in the derivative suit, and would be subject to the defenses noted there.

28   [7] Count II also fails because without a sufficient primary violation, the Complaint cannot show control person liability.  *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1252 (N.D. Cal. 1998).

1   have expressly held that claims for breach of fiduciary duty are governed by the four-year statute

2   of limitations, pursuant to CCP § 343.").  A shorter period (three years from notice) applies to

3   fraud-based claims under state law.  Cal. Civ. Proc. Code § 338(d); *see also City of Vista v.*

4   *Robert Thomas Sec., Inc.*, 84 Cal. App. 4th 882, 889 (2000) (breach of fiduciary duty claim

5   alleging constructive fraud was governed by three year limitations period).  Yet plaintiff attempts

6   to assert claims extending back more than a decade.  *See, e.g.*, Complaint ¶ 99 (challenging

7   statements extending as far back as January 1996).  None of these claims can proceed.

8         To the extent that plaintiff attempts to save its claims by arguing that defendants delayed

9   discovery of those claims by fraud, such a tactic lacks merit.  As noted, any "[a]verments of

10   fraud" would need to "be accompanied by 'the who, what, when, where, and how' of the

11   misconduct charged."  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation

12   omitted).  The Complaint lacks any such facts; it offers only summary assertions of concealment.

13   *See, e.g.*, Complaint ¶ 273 (alleging that limitations period should be tolled because "Defendants

14   wrongfully concealed their manipulation of Apple's stock option plans" by issuing false

15   statements).  In all events, the Complaint is based on information that has been public for years.

16   The Complaint's claims of backdating rest on lists of grant dates and prices.  *See, e.g.*, *id.* ¶¶ 84-

17   85.  Plaintiff draws these allegations from public filings with the SEC — which include Form 4s

18   and 5s filed within weeks of the grants.  *See id.* at 1 (introductory paragraph).  No special

19   knowledge was required to prepare these accusations.  Plaintiff simply paired public grant data

20   with public stock price data and assumed from that information that favorable prices had been

21   selected by hindsight.  Because all of the data needed to make these allegations has been public

22   since the time of the grants at issue, concealment arguments do not save plaintiff's claims.

23

24

25

26

27

28

MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT –NO. C-06-05208-JF

**CONCLUSION**

Apple has already moved to resolve all issues arising from past stock options.  The spurious claims in this Complaint do not begin to justify plaintiff's attempt to insert itself into that process.  Because this Complaint does not state any viable claims, the Court should dismiss it.

Dated: June 8, 2007

GEORGE A. RILEY
DAVID M. FURBUSH
O'MELVENY & MYERS LLP

By:_____/s/ George A. Riley_____
George A. Riley

Attorneys for Defendants
STEVEN P. JOBS, WILLIAM V.
CAMPBELL, MILLARD S. DREXLER,
ARTHUR D. LEVINSON, JEROME B.
YORK, GARETH C.C. CHANG, PETER O.
CRISP, LAWRENCE J. ELLISON, B.
JURGEN HINTZ, KATHERINE M.
HUDSON, DELANO E. LEWIS, A.C.
MARKKULA, JR., EDGAR S. WOOLARD,
JR., AND APPLE INC.

Dated: June 8, 2007

JEROME C. ROTH
YOHANCE C. EDWARDS
MUNGER TOLLES & OLSON LLP

By:_____/s/ Yohance C. Edwards_____
Yohance C. Edwards

Attorneys for Defendant
FRED D. ANDERSON

I, George A. Riley, am the ECF User whose ID and password are being used to file this Motion to Dismiss Consolidated Class Action Complaint.  In compliance with General Order 45, X.B., I hereby attest that Yohance C. Edwards has concurred in this filing.

By:  /s/ George A. Riley_____
George A. Riley

MP1:998647.7

MOTION TO DISMISS CONSOLIDATED CLASS
ACTION COMPLAINT –NO. C-06-05208-JF