GEORGE A. RILEY (State Bar No. 118304) griley@omm.com
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, California 94111-3305
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Defendants
STEVEN P. JOBS, WILLIAM V. CAMPBELL,
MILLARD S. DREXLER, ARTHUR D. LEVINSON,
JEROME B. YORK, GARETH C.C. CHANG, PETER O. CRISP,
LAWRENCE J. ELLISON, B. JURGEN HINTZ, KATHERINE
M. HUDSON, DELANO E. LEWIS, A.C. MARKKULA, JR.,
EDGAR S. WOOLARD, JR., and APPLE INC.

JEROME C. ROTH (State Bar No. 159483)
YOHANCE C. EDWARDS (State Bar No. 237244)
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105

Attorneys for Defendant
FRED D. ANDERSON

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| MARTIN VOGEL and KENNETH MAHONEY, on Behalf of Themselves and All Other Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEVEN JOBS, PETER OPPENHEIMER, FRED ANDERSON, WILLIAM V. CAMPBELL, MILLARD S. DREXLER, ALBERT GORE, JR., ARTHUR D. LEVINSON, JEROME B. YORK AND APPLE COMPUTER, INC.,<br><br>Defendants. | Case No. C-06-05208-JF<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: September 7, 2007<br>Time: 9:00 a.m.<br>Department: Ctrm 3, 5th Floor<br>Action Filed: August 24, 2006<br>Trial Date: None Set<br>Judge: Honorable Jeremy Fogel |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

I. The Complaint Does Not Adequately Allege A Causal Relationship Between An Actual Economic Loss And The Claimed Misrepresentations .......... 2

   A. The Complaint Must Comply With The Reform Act By Adequately Showing That The Misrepresentations Caused Shareholders To Suffer Economic Loss ................................................................................ 2

   B. The Complaint Fails To Allege That Any Misrepresentations Proximately Caused An Actual Economic Loss To Shareholders In Connection With The Authorization Of New Option Shares ..................... 3

   C. The Reform Act's Look-Back Provisions Bar Plaintiff's Attempt To State Economic Loss ............................................................................... 7

II. The Opposition Fails In Its Attempt To Obscure The Inherently Derivative Nature Of The Complaint ........................................................................................ 8

   A. Because They Target Dilution To All Shareholders, The Claims Asserted Are Wholly Derivative ................................................................ 8

   B. Plaintiff's Attempt To Cast Its Claims As Direct Rests On A Mischaracterization Of The Law .................................................................. 9

   C. The Remedies Sought Inure Solely To Apple And Thus Confirm The Derivative Nature Of The Complaint ................................................. 10

III. SLUSA's Second Delaware Carve-Out Does Not Save Plaintiff's Otherwise Pre-Empted Claims ................................................................................. 11

IV. The Opposition Does Not Identify Facts In The Complaint That Satisfy The Applicable Pleading Standards ........................................................................ 12

V. The Opposition's Tolling Theory Does Not Save Otherwise Time-Barred Claims That Are Based On Public Information ..................................................... 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bell Atlantic v. Twombly*,
   127 S.Ct. 1955 (2007) .................................................................................................... 3

*County of Santa Clara v. Vargas*,
   71 Cal. App. 3d 510 (1977) ......................................................................................... 14

*Cromer Finance v. Berger*,
   2002 WL 826847 (S.D.N.Y. 2002) ............................................................................... 5

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) ..................................................................................... 12

*Dura Pharmaceuticals v. Broudo*,
   544 U.S. 336 (2005) ............................................................................................. passim

*Estate of Pieper*,
   224 Cal. App. 2d 670 (1964) ....................................................................................... 14

*Gatz v. Ponsoldt*,
   2007 WL 1120338 (Del. Apr. 16, 2007) ................................................................. 9, 10

*General Elec. Co. by Levit v. Cathcart*,
   980 F.2d 927 (3d Cir. 1992) ........................................................................................ 11

*Gentile v. Rossette*,
   906 A.2d 91 (Del. 2006) ............................................................................................... 9

*Gould v. American Hawaiian S. S. Co.*,
   351 F.Supp. 853 (D. Del. 1973) .................................................................................. 13

*Grace v. Rosenstock*,
   228 F.3d 40 (2d Cir. 2000) ........................................................................................ 2, 7

*In re Harmonic, Inc. Sec. Litig.*,
   163 F. Supp. 2d 1079 (N.D. Cal. 2001) ...................................................................... 12

*In re Intelligroup Sec. Litig.*,
   468 F. Supp. 2d 670 (D.N.J. 2006) ............................................................................... 7

*In re J.P. Morgan Chase & Co. Shareholder Litigation*,
   906 A.2d 766 (Del. 2006) ............................................................................... 5, 8, 9, 10

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) ...................................................................... 12

*In re Textainer P'ship Sec. Litig.*,
   2005 WL 3801596 (N.D. Cal. Mar. 8, 2005) ........................................................... 7, 12

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re Zoran Corp. Deriv. Litig.*,
  No. C 06-05503, 2007 WL 1650948 (N.D. Cal. June 5, 2007) .............................. 12, 13, 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
  547 U.S. 71 (2006) .......................................................................................................... 11

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970) .......................................................................................................... 6

*Ryan v. Gifford*,
  918 A.2d 341 (Del. Ch. 2007) ........................................................................................ 14

*Schuster v. Gardner*,
  127 Cal. App. 4th 305 (2005) ........................................................................................ 10

*Shidler v. All American Life & Financial Corp.*,
  775 F.2d 917 (8th Cir. 1985) .......................................................................................... 13

*Slovensky v. Friedman*,
  142 Cal. App. 4th 1518 (2006) ........................................................................................ 2

*Thiara v. Kiernan*,
  Slip Copy, 2006 WL 3065568 (N.D. Cal. Oct. 25, 2006) ............................................. 10

*Zoren v. Genesis Energy, L.P.*,
  195 F. Supp. 2d 598 (D. Del. 2002) .............................................................................. 11

**STATUTES**

15 U.S.C. § 78u-4(b)(4) .......................................................................................................... 2

15 U.S.C. § 78u-4(e)(1) .......................................................................................................... 7

**OTHER AUTHORITIES**

H.R. Conf. Rep. 104-369 ........................................................................................................ 7

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................................... 12

**INTRODUCTION**

Plaintiff's Opposition does not deny that the Complaint's theory of causation and damages rests entirely on layers of speculation. The Complaint alleges that shareholders would not have approved increases in the number of authorized option shares if defendants had not misrepresented the exercise prices previously assigned to certain stock options. Complaint ¶ 38. According to the Complaint, these increases in the number of authorized – but not issued – option shares somehow diminished the value of shares held by each shareholder. *Id.* Plaintiff calls this assumed injury "dilution," although the Complaint never addresses how or when this injury occurred. The Complaint then assumes that this dilution injury constitutes recoverable damages for classes of shareholders for each annual meeting for a ten year period. *Id.* ¶¶ 69-74, 265, 310.

When challenged to explain how this unsupported conjecture satisfies pleading requirements, plaintiff asserts that it is sufficient to allege in conclusory terms that the misrepresentations caused shareholders to suffer damages. Opp. 13. This argument was squarely rejected by a unanimous Supreme Court in *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005). Under *Dura*, a plaintiff seeking damages in a securities action must adequately allege a "relevant economic loss" — an actual rather than potential injury to a shareholder's investment — and the essential "causal connection" between that loss and the challenged statements. *Id.* at 347. The dilution alleged in the Complaint is not such an economic loss. To the contrary, the authorization of new shares ultimately results in economic gain by way of a compensation program that retains and motivates thousands of employees. The Complaint also fails to show how any loss was proximately caused by the alleged misstatements, rather than by a host of other factors that influence the number of outstanding shares and their market price. Because the Complaint fails to adequately allege both a relevant economic loss and a proximate causal connection between that loss and the challenged statements, it must be dismissed.

The Complaint must also be dismissed because the alleged claims belong exclusively to Apple rather than to shareholders. It is well established that an allegation of a general dilution of all outstanding shares caused by an improper issuance of new shares will support only derivative claims. Rather than confront this principle, the Opposition cites cases in which a controlling

shareholder issues shares as part of a self-dealing transaction and thereby violates a fiduciary duty to a minority shareholder.  Because the Complaint alleges no such circumstances, these cases are irrelevant.  Only Apple suffered the supposed harm from any dilution that might have resulted from the issuance of option shares, and the remedies plaintiff seeks would all inure to Apple's benefit.  Thus, the claims are derivative, and plaintiff has no standing to assert them in this action.

Finally, the Opposition does not overcome the other flaws identified in defendants' moving papers.  The Complaint does not satisfy the standards for pleading fraud, and the claims fail to avoid the bars of SLUSA and the statutes of limitations.

## ARGUMENT

**I.     The Complaint Does Not Adequately Allege A Causal Relationship Between An Actual Economic Loss And The Claimed Misrepresentations.**

**A.     The Complaint Must Comply With The Reform Act By Adequately Showing That The Misrepresentations Caused Shareholders To Suffer Economic Loss.**

The Complaint's claims under Section 14 of the 1934 Act must satisfy the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("Reform Act").  15 U.S.C. § 78u-4(b)(4).  Pursuant to those requirements, plaintiff must show that the alleged misrepresentation not only caused the challenged transaction to occur, but that it also caused the "economic loss" for which plaintiff seeks recovery.  *Dura*, 544 U.S. at 341-42 (citing 15 U.S.C. § 78u-4(b)(4)); *see also, e.g., Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000) ("[B]oth loss causation and transaction causation must be proven in the context of a private action under § 14(a) of the 1934 Act.").  As the Supreme Court recognized, the loss causation requirement is rooted in the common law principle that a plaintiff must allege and prove that defendant's misconduct proximately caused an actual injury.  *Dura*, 544 U.S. at 343.  Accordingly, loss causation is a required element for all claims here.[1]

---

[1] Count I of the Complaint alleges violations of Section 14 against all the defendants.  Count II alleges violations of Section 20(a) by certain individuals who allegedly violated Section 14.  Count III alleges breach of fiduciary duty, which requires a showing of "damages proximately caused by the breach."  *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1534 (2006).

-2-

1    Plaintiff insists that the Complaint need not "show" loss causation and that it is sufficient
2 merely to allege the bare elements of the claims. Opp. 13. The Supreme Court has held
3 otherwise. "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement
4 to relief." *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1965 n. 3 (2007). Thus, the Complaint must
5 supply factual allegations, not merely conclusory statements, showing loss causation. *Id*. at 1968.

6    **B.  The Complaint Fails To Allege That Any Misrepresentations Proximately Caused An Actual Economic Loss To Shareholders In Connection With The Authorization Of New Option Shares.**
7

8    The Complaint asserts that misrepresentations regarding past option exercise prices
9 caused shareholders to authorize new stock option shares at each annual shareholder meeting for
10 ten years. Complaint ¶ 69. The Complaint asserts that these authorizations resulted in share
11 "dilution" at some unspecified time and through some unstated process. The Complaint assumes
12 that this dilution constitutes a harm suffered by the shareholders for which damages may be
13 recovered. *Id*. ¶¶ 69-74. As discussed below and in defendants' opening brief, such share
14 "dilution" does not equate to economic loss. Whether the authorization of new shares has any
15 affect on the economic loss or gain realized by a shareholder depends on myriad factors, none of
16 which is addressed in the Complaint.

17    In *Dura*, a unanimous Supreme Court rejected allegations far less conclusory and
18 attenuated than those in the Complaint. The plaintiffs in *Dura* alleged that the company had
19 made false statements about FDA approval of a new medical device. Relying on the "fraud-on-
20 the-market" theory for transaction causation — which presumes that the price of a publicly traded
21 stock reflects a material misrepresentation and that investors would not have purchased if the
22 truth had been disclosed — the plaintiffs alleged that they paid "artificially inflated prices" for
23 their stock and thereby suffered damages. *Dura*, 544 U.S. at 340. The Court held that these
24 allegations did not establish loss causation. The Court found that while an artificially inflated
25 stock price could potentially contribute to an actual loss, an inflated stock price "will not itself
26 constitute or proximately cause the relevant economic loss." *Id*. at 342. An investor could sell
27 the inflated security before the correcting disclosure, or the investor could sell after the disclosure
28 when the new lower price may reflect other changed economic circumstances. *Id*. at 342-43. The

1  possibility that the stock price inflation caused by the misrepresentation <u>might</u> contribute to a

2  later loss did not satisfy the requirement of loss causation:

> Given the tangle of factors affecting price, the most logic alone permits us to say is that the higher purchase price will *sometimes* play a role in bringing about a future loss. It may prove to be a necessary condition of any such loss, and in that sense one might say that the inflated purchase price suggests that the misrepresentation "touches upon" a later economic loss. But, even if that is so, it is insufficient. To "touch upon" a loss is not to *cause* a loss, and it is the latter that the law requires.

8  *Id*. at 343 (emphasis in original; citations omitted).

9      *Dura's* reasoning and holding apply directly to the Complaint's allegations. The

10 authorization of new stock options does not "constitute or proximately cause the relevant

11 economic loss." *Id*. at 342. The impact on outstanding shares of the authorization of new options

12 depends on myriad factors, including the rate at which options are granted and exercised,

13 cancellations and exchanges of options, exercise prices paid, repurchases of shares by the

14 corporation, and various economic conditions. In fact, by retaining and motivating thousands of

15 employees, newly authorized options actually increase the value of outstanding shares, as

16 undoubtedly occurred at Apple. With regard to economic loss, however, the Complaint alleges

17 nothing more than the authorization of stock options. This is insufficient as a matter of law.

18     Plaintiff's failure to adequately allege economic loss undermines the Complaint's entire

19 theory of recovery. For example, the Complaint describes a class of shareholders who were

20 eligible to vote at Apple's 2005 annual meeting — which took place three years after the last

21 alleged misdated option grant. Complaint ¶ 1. The Complaint asserts that these shareholders

22 were injured by the authorization of new options, regardless of when these shareholders acquired

23 their stock and whether they were holding the stock when any newly authorized options were

24 granted and/or shares issued. Whether a 2005 authorization of new stock options had any effect

25 on a shareholder's investment would depend, among many factors, on when and how new options

26 were issued, the manner in which the options were exercised and shares issued, the economic

27 value associated with the newly issued shares, and repurchases of shares by the corporation in

28 connection with the exercise of the options. The Complaint fails to address any of these factors.

At least in *Dura*, the class purchased shares that had been inflated by the misstatements; here, there are no rational allegations of any actual impact on shareholders. Because it lacks allegations showing economic loss, the Complaint does not properly allege the essential element of loss causation.

Even if the Complaint had adequately alleged an economic loss, dismissal would be warranted because the Complaint does not show that misrepresentations about earlier option prices *proximately caused* any such loss. In *Dura,* the inflated stock price declined with the disclosure of the FDA's decision, and the Supreme Court accepted that the misstatements "touched upon" a later loss. Yet such a relationship was not direct and strong enough to satisfy the requirement of showing that the misstatements proximately caused the loss. Here, the relationship between the alleged misrepresentations and any impact — much less economic loss — is even more remote. As noted above, whether the misstatements could have any impact on a shareholder's stock depends on a complex series of remote events. Without a much stronger, direct connection between the alleged wrong and the supposed harm, plaintiff has no claim. *See, e.g.*, *Cromer Finance v. Berger*, 2002 WL 826847, *11 (S.D.N.Y. 2002) (while plaintiffs claimed they would not have invested if the fund had disclosed the auditor's inadequate resources, the auditor's ability to satisfy judgment "did not cause [defendant] to fabricate critical information about the Fund, cause DTB to perform a flawed audit, or cause the Fund to lose the hundreds of millions of dollars that the plaintiffs had invested.").

In *In re J.P. Morgan Chase & Co. Shareholder Litigation*, 906 A.2d 766 (Del. 2006), the Delaware Supreme Court rejected a similar attempt to claim that misstatements in connection with a shareholders' vote on a transaction caused the shareholders to suffer harm in the form of dilution. The *J.P. Morgan* plaintiffs argued that a violation of disclosure obligations during a merger vote entitled the plaintiffs to recover damages for the "dilution" caused by stock issued in the alleged overpayment for the merger. The court rejected that claim. The court held that the alleged dilution resulting from the excess issuance of shares "has no logical or reasonable relationship to the harm caused to the shareholders individually for being deprived of their right to cast an informed vote." *Id.* at 773. Here, any alleged impact on shareholders from the

authorization of new options has no "logical or reasonable relationship" to the alleged misstatements. As discussed above, any impact – much less economic loss – from the authorization of new options depends on a highly attenuated series of events. Accordingly, the Complaint does not plead loss causation.

Plaintiff glosses over the Complaint's failure to plead loss causation by improperly conflating this requirement with materiality. Plaintiff argues that Apple's restatement is an admission that the alleged misstatements are material and imply that this is sufficient to show loss causation. Opp. 14. As demonstrated below, Plaintiff is wrong on both counts.

First, the restatement of non-cash compensation expense from past stock option grants does not constitute an admission regarding the materiality of the alleged misstatements as they relate to the transaction at issue, *i.e.*, voting to authorize increases in the number of stock options. Materiality in this context simply means that the information "might have been considered important by a reasonable shareholder who was in the process of deciding how to vote." *Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 384 (1970). The Opposition concedes that shareholders were never misled about the number of option shares they were voting to authorize. Opp. 14. The alleged misstatements relate to the separate issue of the pricing of certain earlier option grants. The Complaint fails to show that the alleged misstatements about pricing of certain grants were material or that shareholders relied on them when voting to authorize option shares. That Apple shareholders recently voted in favor of additional stock option increases after full disclosure demonstrates that no presumptions of materiality and reliance are warranted.

Second, even if the Complaint had properly alleged material misrepresentations on which shareholders relied in voting to approve option share increases, those allegations would not satisfy the separate and distinct requirement of loss causation. For example, the *Dura* plaintiffs were able to demonstrate transaction causation through the "fraud-on-the-market" presumption, but they did not satisfy the requirement of loss causation, which requires a showing that the material misstatements proximately caused an economic loss. Here, too, even if the Complaint had established both materiality and transaction causation, that showing would not satisfy the

1  separate and distinct requirement of loss causation for the reasons set forth above.  *Grace v.*

2  *Rosenstock*, 228 F.3d at 47.  Thus, the Complaint must be dismissed.

3          **C.**        **The Reform Act's Look-Back Provisions Bar Plaintiff's Attempt To**
4                             **State Economic Loss.**

5          Plaintiff's attempt to show economic harm is also foreclosed by the Reform Act's look-

6  back provision, which limits securities actions to those in which losses caused by defendants'

7  conduct can be shown.  *See, e.g.*, *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 697 n.29

8  (D.N.J. 2006) (noting Congress's intent to limit plaintiffs' rights and to eliminate "windfall"

9  damages); H.R. Conf. Rep. 104-369 (same).

10          Plaintiff first attempts to sidestep the provision entirely by arguing that it does not apply to

11  Section 14 claims.  In fact, the look-back provision applies to "any private action arising *under*

12  *this chapter* in which the plaintiff seeks to establish damages by reference to the market price of a

13  security."  15 U.S.C. § 78u-4(e)(1) (emphasis added).  Because Section 14 is encompassed within

14  the 1934 Exchange Act, the look-back provision, by its terms, applies to plaintiff's claim.[2]

15          More importantly, while plaintiff denies that it must examine stock prices to determine its

16  alleged dilution damages, *see* Opp. 19-20, that argument is manifestly incorrect.  The Complaint

17  alleges that the authorization of stock options somehow resulted in dilution of shareholders'

18  holdings in proportion to the amount of shares authorized, and plaintiff seeks money damages

19  based on that alleged dilution.  Complaint ¶¶ 71-73; *see also* Opp. 20:1-2 (alleging dilution of

20  "economic interests").  Plaintiff's asserted reliance on a purported mathematical relationship

21  between outstanding shares and number of authorized stock options, *see* Opp. 20:10-13, ignores

22  the fact that a dilution percentage does not establish an actual measure of damages.  Determining

23  the value of each shareholder's economic interests in Apple and thus the value of any dilution

24  injury necessarily requires reference to the market price of Apple shares.  There is no other way

25

26  ――――――――――――――

27  [2] The plain meaning of the text is controlling.  *See In re Textainer P'ship Sec. Litig.*, 2005 WL
     3801596, at \*5 (N.D. Cal. Mar. 8, 2005) (section heading's reference to "securities fraud"
28       could not limit plain meaning of text applying section to "any private action" arising under the
     Exchange Act).

to measure the alleged impact on the value of each putative class members' shareholdings except by market price. Thus, the Reform Act's look-back provisions defeat plaintiff's claims.

## II. The Opposition Fails In Its Attempt To Obscure The Inherently Derivative Nature Of The Complaint.

In addition to its failure to allege loss causation, the Complaint does not plead direct claims that belong to the plaintiff rather than derivative claims that belong to Apple. *See* Mot. 12-15. The Opposition does not remedy this fatal defect.

### A. Because They Target Dilution To All Shareholders, The Claims Asserted Are Wholly Derivative.

Plaintiff first asserts that claims of misleading proxies can support both direct and derivative claims. Opp. 14-15, 18. This assertion misses the point. It does not matter whether proxy challenges may theoretically support direct suits under the proper circumstances. The relevant inquiry is whether the Complaint's particular claims and theory of relief are derivative or direct. As demonstrated in the motion, the Complaint's claims are exclusively derivative.

The Opposition confuses the rights at issue with the claims for which the Complaint seeks recovery. Opp. 15. The Complaint maintains that stockholders were deprived of their right to make an informed vote by the alleged misstatements. Yet the claims for damages – which determines whether the action is derivative in nature – seek recovery for the dilution of all outstanding shares, claims that are wholly derivative in nature. *See* Mot. 12-17. This point was underscored in *J.P. Morgan*. Like the plaintiff here, the plaintiffs in *J. P. Morgan* argued "that where a disclosure violation arises from a corporate transaction in which the shareholders suffer a dilution of the economic and voting power of their shares, the shareholders automatically become entitled to recover the identical damages on their disclosure claim, that the corporation would be entitled to recover on its underlying (derivative) claim." *J.P. Morgan*, 906 A.2d at 772-73. The *J.P. Morgan* court rejected that argument on multiple grounds and criticized plaintiffs for improperly "conflating their individual direct claim of liability for a duty of disclosure violation with the compensatory damages flowing from the corporation's separate and distinct underlying derivative claim for waste." *Id.* at 773-74. The same result is appropriate here. Because the

damages plaintiff seeks are based on dilution to all outstanding shares, the claim remains inherently derivative. *Id.*

### B. Plaintiff's Attempt To Cast Its Claims As Direct Rests On A Mischaracterization Of The Law.

Plaintiff invokes the overruled *TriStar* decision, as well as the *Gentile* and *Gatz* cases, for the proposition that dilution can support direct claims in certain contexts and that plaintiff therefore can proceed directly here. Opp. 16-18. Plaintiff is again incorrect. The cases in the Opposition all involve a narrow exception to the general rule. This exception allows direct claims only where a controlling shareholder abuses its voting power in a self-dealing transaction to injure the interests of minority shareholders. This exception does not purport to alter the derivative character of general dilution claims of the kind advanced in the Complaint.

As plaintiff's own authority recognizes, when the value of a corporation's outstanding shares or assets is diminished because of an improper transaction, the claim for that lost value belongs exclusively to the corporation, not to the shareholders:

> Normally, claims of corporate overpayment are treated as causing harm solely to the corporation and, thus, are regarded as derivative. The reason (expressed in *Tooley* terms) is that the corporation is both the party that suffers the injury (a reduction in its assets or their value) as well as the party to whom the remedy (a restoration of the improperly reduced value) would flow. In the typical corporate overpayment case, a claim against the corporation's fiduciaries for redress is regarded as exclusively derivative, irrespective of whether the currency or form of overpayment is cash or the corporation's stock.

*Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006) (citing *J.P. Morgan, supra*). The one narrow exception that gives rise to both a direct and derivative claim occurs "where: (1) a stockholder having majority or effective control causes the corporation to issue 'excessive' shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders." *Gatz v. Ponsoldt*, 2007 WL 1120338 (Del. Apr. 16, 2007), at *1278 (quoting *Gentile*, *supra*). Accordingly, in *Tri-Star*, *Gentile*, and *Gatz*, minority shareholders had direct claims against controlling shareholders who abused their voting power to

improperly degrade the interests of the minorities in each case.[3] No such facts are even remotely alleged here. This case instead alleges the typical kind of dilution that courts from Delaware to California have consistently found to be derivative. *See, e.g.*, *J.P. Morgan*, *supra*; *Schuster v. Gardner*, 127 Cal. App. 4th 305 (2005). The Complaint's attempt to assert direct claims thus fails as a matter of law.

### C. The Remedies Sought Inure Solely To Apple And Thus Confirm The Derivative Nature Of The Complaint.

Apart from the unalterably derivative nature of plaintiff's "dilution claims," the action is derivative because the remedies would benefit Apple rather than the shareholders. Mot. 15. The Opposition attempts to downplay this fact by arguing that plaintiffs has not asked for relief on Apple's behalf. Opp. 16. This argument is specious. It is undisputed that the direct/derivative analysis looks to the reality of the claims alleged, not to plaintiff's "designation or stated intention." *Thiara v. Kiernan*, Slip Copy, 2006 WL 3065568, at *3 (N.D. Cal. Oct. 25, 2006). Indeed, virtually every case in which the court found dilution claims to be derivative involved complaints in which the plaintiff sought direct relief. *See, e.g.*, *J.P. Morgan*, 906 A.2d at 769 (seeking direct relief for plaintiff class). The plaintiff's attempt to style its claims as direct, however, did not alter the derivative character of the litigation. *Id.* at 775 (dismissing claims). Similarly, plaintiff's stated request for direct relief does not alter the derivative nature of this suit.

Plaintiff's assertion that rescission and accounting remedies would not redound to Apple's benefit, but would only benefit the putative class, is flatly incorrect. *See* Opp. 16 & n.8. Plaintiff does not deny that rescission or accounting would result in a transfer of equity or funds back to Apple rather than to the members of the purported class. And the rescission remedy is moot in any event given the shareholders' recent vote to authorize even higher amounts of shares for option issuances. *See, e.g.*, *General Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 934-35 (3d Cir.

---

[3] Plaintiff attributes significance to the fact that in *Gatz v. Ponsoldt*, the shares expropriated from the minority were transferred to a third party, and thus did not remain with the controlling shareholder. *Gatz*, 2007 WL 1120338 at *1278-80. The *Gatz* court, however, expressly noted that this distinction had no meaning, and that a controlling shareholder could not escape liability by transferring improperly expropriated shares to another party. *Id.* *Gatz* thus does not support plaintiff's claim of a general right to pursue direct claims for supposed "dilution."

1992) (dismissing Section 14(a) equitable claims because new election of directors mooted claims).  The remedies sought here thus cannot support direct claims of any kind.  As a result, this suit may not proceed and plaintiff may only attempt to seek those remedies in the parallel derivative actions.

### III. SLUSA's Second Delaware Carve-Out Does Not Save Plaintiff's Otherwise Pre-Empted Claims.

As set forth in defendants' opening brief, SLUSA bars plaintiff's claims absent application of the second Delaware carve-out.  *See* Mot. 18-19.  The Opposition does not dispute this fact.  Nor does it deny that doubts should be resolved in favor of application of SLUSA's bar. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 86 (2006) (stating that "Congress envisioned a broad construction [of SLUSA]" and that "[a] narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act").

Plaintiff's only response is to attempt to shoehorn its challenges to proxies into the second Delaware carve-out.  Opp. 22.  Plaintiff's effort is unavailing because in addition to its attacks on proxies, the Complaint includes challenges to registration statements that have nothing to do with any effort to solicit votes.  *See, e.g.*, Complaint ¶¶ 262-264.  The Opposition does not and cannot argue otherwise.  Where, as here, a complaint includes challenges to both voting-related statements and statements that do not concern efforts to solicit votes, the second Delaware carve-out does not apply.  *See, e.g.*, *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 604 (D. Del. 2002) (dismissing case challenging both proxy statements and offering prospectuses).  Again, the Opposition provides neither authority nor even argument to the contrary.[4]  Accordingly, because the Complaint includes claims that even plaintiff cannot cast as falling within the carve-out, SLUSA bars those claims.[5]

---

[4] In a futile attempt to distinguish *Zoren*, plaintiff contends that *Zoren* has no application because it involved allegations of fraud.  Opp. 22 n.12.  Setting aside the fact that this case also involves fraud allegations, *see infra* at IV, the presence of fraud applications had nothing to do with the analysis of the second Delaware carve-out.  The carve-out was inapplicable because the offering prospectuses (which were issued to raise revenue) did not concern voting decisions. *Zoren*, 195 F. Supp. 2d at 604.  Because the registration statements at issue here also did not concern voting decisions, this case falls squarely under *Zoren*.

[5] Plaintiff contends that even if part of its claim is pre-empted the entire action need not be

-11-

### IV. The Opposition Does Not Identify Facts In The Complaint That Satisfy The Applicable Pleading Standards.

Plaintiff improperly discounts the stringency of the applicable pleading standards by arguing that it is asserting only negligence claims. Opp. 7:13-18. This argument ignores the well-established rule that Rule 9(b) applies when the particular theory plaintiff asserts sounds in fraud even if the cause of action could be utilized in a non-fraud context. *See, e.g.*, *In re Harmonic, Inc. Sec. Litig.*, 163 F. Supp. 2d 1079, 1088 (N.D. Cal. 2001) (Section 11 claims, which also permit liability on negligence, were nevertheless governed by Rule 9(b) because the particular theory plaintiffs advanced involved fraud). The Opposition acknowledges many times that the specific theory advanced in the Complaint involves accusations of knowing wrongdoing, Opp. 23, and active concealment. *Id.* 24 n.14; *see also id.* 9:23 (stating that Complaint's "allegations go well beyond mere negligence"); *id.* 13 n.6 (alleging that stockholders did not know that the "[B]oard was *lying to them*") (emphasis in original); Complaint ¶¶ 37 (alleging concealment), 51 (alleging intentional conduct), 264 (same), 273 (alleging wrongful concealment). While plaintiff attempts to disclaim reliance on fraud, *see* Opp. 7:13-14, such rote disclaimers carry no weight when a complaint in fact sounds in fraud. *See, e.g.*, *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000) (affirming rejection of plaintiff's assertion that complaint sounded in negligence when the complaint alleged knowing and intentional misconduct; applying Rule 9(b) to Section 14(a) claims). And plaintiff does not begin to justify any relaxation of the even more stringent pleading standards of the Reform Act. *See, e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) (applying Reform Act to Section 14 claims); *In re Textainer P'ship Sec. Litig.*, 2005 WL 3801596 (N.D. Cal. Mar. 8, 2005) (same); *Zoran*, *infra,* at *22 (same).

The Complaint cannot satisfy those heightened standards. Plaintiff claims to have established negligence by asserting that grant accounting was incorrect and defendants had a duty to prevent errors. Opp. 8-9. This argument would have the Court hold that every corporate

---

dismissed. This argument relies on a single out-of-circuit case. It does not attempt to address the authorities defendants identified indicating that SLUSA prohibits improper "actions" in their entirety. *See* Mot. 21-22 (citing authority).

-12-

officer or director with responsibility for signing a proxy statement is per se liable for any errors that statement contains. To the contrary, Section 14 claims are not strict liability claims. *See, e.g.*, *Gould v. American Hawaiian S. S. Co.*, 351 F.Supp. 853, 858-859 (D. Del. 1973) (rejecting strict liability standard for Section 14(a) claims because "making directors guarantors of the accuracy of proxy materials would create serious practical problems for directors and would not fulfill other purposes of the Securities Acts"); *Shidler v. All American Life & Financial Corp.*, 775 F.2d 917, 927 (8th Cir. 1985) (rejecting strict liability standard to prevent imposition of liability for innocent misstatements). To state claims under Section 14, the Complaint must allege more than guilt by position. It must supply sufficient facts to support a strong inference that each defendant was negligent. That showing requires facts demonstrating that each defendant knew or should have known of misstatements — not just that each defendant held a particular position. Neither the Complaint nor the Opposition supplies such facts, but instead offer nothing more than recitations of the defendants' various positions and generic job responsibilities associated with those positions. This is plainly insufficient.

Unable to plead facts supporting any inference of negligence (much less a strong inference), plaintiff argues that the *Zoran* decision excuses it from supplying any facts beyond defendants' positions. Opp. 8. Not so. In *Zoran*, the complaint supplied facts showing that certain defendants were intimately involved in the option granting process and that each defendant had received backdated options. *In re Zoran Corp. Deriv. Litig.*, No. C 06-05503, 2007 WL 1650948 (N.D. Cal. June 5, 2007), at *10, *20. No such facts are present here. The Complaint contains no allegations beyond job descriptions to indicate what anyone knew, should have known, did, or should have done. Plaintiff does not specify any facts regarding particular grants and each individual's actions regarding those grants. To the contrary, the Complaint's claims are so unspecific that its allegations challenging the 1996 proxy are identical to the allegations challenging the 2001 proxy, *see* Complaint ¶¶ 102-107, 134-144. These generalized allegations are particularly insufficient given that here, unlike *Zoran*, the Board delegated to management authority to establish grant dates, recipients and terms — a context that further weakens any inference that defendants were sufficiently involved in the details of the process to

1  have known of any misconduct.  Because the Complaint alleges no facts that explain why

2  defendants should have known of any improprieties, it does not state viable claims under any

3  standard — much less the strict standards that apply here.

4  **V.      The Opposition's Tolling Theory Does Not Save Otherwise Time-Barred
            Claims That Are Based On Public Information.**
5

6  The Opposition does not deny that absent tolling, the Complaint's state claims are time-

7  barred.  Plaintiff argues, however, that tolling should apply on a theory that defendants concealed

8  the facts supporting the Complaint for a number of years.  They did not.  Plaintiff does not and

9  cannot deny that its claims are based entirely on public information.  *See, e.g.*, Complaint ¶¶ 84-

10 85 (basing allegations on grant dates and prices publicly filed with the SEC).  In marked contrast

11 to *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007), no complex analysis was necessary to prepare

12 the charts of publicly disclosed grant dates and prices on which plaintiff bases its claims.

13 Because the facts plaintiff advance in support of its claims have been public for years, plaintiff's

14 claims are not tolled.

15 Unable to deny that the Complaint's backdating allegations rest entirely on long-available

16 public share and grant prices, plaintiff invokes the *Zoran* decision.  This tactic fails because the

17 allegations that supported tolling in *Zoran* are absent here.  In *Zoran*, the plaintiff engaged an

18 expert to analyze Zoran's option granting practices and cited confidential witnesses to support

19 allegations that the defendants were intimately involved with the option granting process and

20 were in a position to know that the challenged misrepresentations were false.  *Zoran*, 2007 WL

21 1650948 at *20.  Here, the Complaint rests entirely on public information that requires no expert

22 analysis to understand and fails to allege any particularized wrongdoing or misconduct by any

23 defendant, much less concealment.  *See supra* at IV.  In this context, tolling does not apply.

24 Plaintiff's equitable estoppel argument, *see* Opp. 24 n.14, is similarly unavailing.  The

25 doctrine of equitable estoppel applies only if defendants' "'acts, representations or conduct lulled

26 a party into a sense of security preventing him from instituting proceedings before the running of

27 the statute.'"  *County of Santa Clara v. Vargas*, 71 Cal. App. 3d 510, 524 (1977) (quoting *Estate

28 of Pieper*, 224 Cal. App. 2d 670, 690 (1964)).  Plaintiff identifies no facts in the Complaint to

support the inference that Defendants engaged in any conduct that prevented plaintiff from filing its suit. Nor does the Opposition identify any facts showing that defendants acted to conceal any of the public information on which plaintiff now bases its claims. In the absence of facts showing that any kind of concealment occurred, much less that defendants were responsible for it, plaintiff cannot rely on equitable estoppel to save the Complaint.

## CONCLUSION

The Opposition does not remedy the multiple fatal defects in plaintiff's implausible claims. The Court therefore should dismiss this case.

Dated: August 17, 2007

GEORGE A. RILEY
O'MELVENY & MYERS LLP

By:           /s/ George A. Riley
                  George A. Riley
Attorneys for Defendants
STEVEN P. JOBS, WILLIAM V. CAMPBELL, MILLARD S. DREXLER, ARTHUR D. LEVINSON, JEROME B. YORK, GARETH C.C. CHANG, PETER O. CRISP, LAWRENCE J. ELLISON, B. JURGEN HINTZ, KATHERINE M. HUDSON, DELANO E. LEWIS, A.C. MARKKULA, JR., EDGAR S. WOOLARD, JR., AND APPLE INC.

Dated: August 17, 2007

JEROME C. ROTH
YOHANCE C. EDWARDS
GENEVIEVE COX
MUNGER TOLLES & OLSON LLP

By:         /s/ Genevieve Cox
                  Genevieve Cox
Attorneys for Defendant
FRED D. ANDERSON

I, George A. Riley, am the ECF User whose ID and password are being used to file this Reply Memorandum of Points and Authorities in Support of Motion to Dismiss Consolidated Class Action Complaint. In compliance with General Order 45, X.B., I hereby attest that Genevieve Cox has concurred in this filing.

By:  /s/ George A. Riley
        George A. Riley

SF1:683615.2