1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 11/14/2007**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

MARTIN VOGEL and KENNETH MAHONEY,
on Behalf of Themselves and All Others Similarly
Situated,

Plaintiffs,

v.

STEVEN JOBS, et al.,

Defendants.

Case Number C 06-5208 JF

ORDER[1] GRANTING MOTION TO
DISMISS

[re: docket no. 54]

## I.  BACKGROUND

**1.      Procedural Background**

On August 24, 2006, Plaintiffs Martin Vogel and Kenneth Mahoney filed a class action

complaint against a number of officer and directors of Apple Inc. ("Apple") alleging options

backdating.  On January 19, 2007, the Court appointed New York City Employees' Retirement

System as the lead plaintiff ("Lead Plaintiff") and approved its choice of class counsel.  On

March 23, 2007, Lead Plaintiff filed the operative consolidated class action complaint ("the

_____

[1] This disposition is not designated for publication and may not be cited.

Case No. C 06-5208 JF
ORDER GRANTING MOTION TO DISMISS
(JFLC1)

1   Complaint").  The Complaint names Apple and fourteen individual defendants: Steven P. Jobs;

2   William V. Campbell; Millard S. Drexler; Arthur D. Levinson; Jerome B. York; Fred D.

3   Anderson; Gareth C.C. Chang; Peter O. Crisp; Lawrence J. Ellison; B. Jurgen Hintz; Katherine

4   M. Hudson; Delano E. Lewis; A.C. Markkula, Jr.; and Edgar S. Wollard, Jr.  The Complaint

5   refers to Jobs, Campbell, Drexler, Levinson, as the "Director Defendants," and to Chang, Crisp,

6   Ellison, Hintz, Hudson, Lewis, Markkula, and Wollard as the "Former Director Defendants."

7   Complaint ¶¶ 15, 25.  The Complaint asserts three class claims: (1) violation of section 14(a) of

8   the Securities Exchange Act with respect to the 2005 Proxy Statement, against the Director

9   Defendants and Anderson; (2) violation of section 20(a) of the Securities Exchange Act with

10  respect to the 2005 Proxy Statement, against the Director Defendants and Anderson; and (3)

11  breach of the duty of disclosure, against all defendants.

12          On June 8, 2007, Defendants moved to dismiss the Complaint.  Defendants argue that the

13  Complaint does not allege loss causation, does not state a direct claim, is pre-empted by the

14  Securities Litigation Uniform Standards Act ("SLUSA"), does not satisfy applicable pleading

15  standards, asserts claims that are time-barred, and otherwise fails to state a claim.  Lead Plaintiff

16  opposes the motion.  The Court heard oral argument on September 7, 2007.

17                                  **II.  LEGAL STANDARD**

18          For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

19  Court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v.*

20  *McKeithen*, 395 U.S. 411, 421 (1969).  Leave to amend must be granted unless it is clear that the

21  complaint's deficiencies cannot be cured by amendment.  *Lucas v. Department of Corrections*,

22  66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be

23  ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

24          On a motion to dismiss, the Court's review is limited to the face of the complaint and

25  matters judicially noticeable.  *North Star International v. Arizona Corporation Commission*, 720

26  F.2d 578, 581 (9th Cir. 1983); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.

27  1986); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995).  However, under the

28  "incorporation by reference" doctrine, the Court also may consider documents which are

2

referenced extensively in the complaint and which are accepted by all parties as authentic, which

are not physically attached to the complaint. *In re Silicon Graphics, Inc. Securities Litigation*,

183 F.3d 970 (9th Cir. 1999).

## III.  DISCUSSION

### 1.    Character of the Claims

Lead Plaintiff alleges the following with respect to its claim under section 14(a):

> The false and misleading 2005 Proxy was an essential link in accomplishing the
> [backdating] transactions challenged hereby, and as a direct and proximate result,
> Lead Plaintiff and the Section 14(a) Class have been damaged because the value
> of their shares were improperly diluted through the issuance of these additional
> shares as a direct and proximate result of the defendants' breach of their duty of
> full disclosure.

Complaint ¶ 286.  Defendants argue the injury suffered by the alleged class is derivative in

nature.

The proper characterization of a claim as direct or derivative is governed by the law of the

state of incorporation, which in this case is California.  *See Kennedy v. Venrock Associates*, 348

F.3d 584, 589 (7th Cir. 2003); *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211,

221 (5th Cir. 1994).    California corporate law is functionally identical to Delaware corporate

law.  *See Oakland Raiders v. National Football League*, 93 Cal.App.4th 572, 586 n.5 (2001)

("The parties agree that we may properly rely on corporate law developed in the State of

Delaware given that it is identical to California corporate law for all practical purposes.").  The

parties have not identified any difference between California and Delaware corporate law that

affects the instant analysis.

Under Delaware law, the character of a claim is determined by answering two questions:

"Who suffered the alleged harm–the corporation or the suing stockholder individually–and who

would receive the benefit of the recovery or other remedy?" *Tooley v. Donaldson, Lufkin &*

*Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004).  Under this test "a court should look to the

nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury

must be *independent* of any alleged injury to the corporation." *Id*.  (emphasis added).  The

3

1    plaintiff satisfies his burden of establishing that the claim is derivative if he can show that "he or

2    she has suffered an injury that is *not dependent on an injury to the corporation*." *Id.* (emphasis

3    added).

4         Courts typically recognize claims of corporate overpayment as derivative. *Gentile v.*

5    *Rossette*, 906 A.2d 91, 99 (Del. 2006) ("Normally, claims of corporate overpayment are treated

6    as causing harm solely to the corporation and, thus, are regarded as derivative." ).   "The reason

7    (expressed in *Tooley* terms) is that the corporation is both the party that suffers the injury (a

8    reduction in its assets or their value) as well as the party to whom the remedy (a restoration of the

9    improperly reduced value) would flow." *Id*.  This is true when the form of payment is corporate

10   stock:

11           In the typical corporate overpayment case, a claim against the corporation's
             fiduciaries for redress is regarded as exclusively derivative, irrespective of
12           whether the currency or form of overpayment is cash or the corporation's stock.
             Such claims are not normally regarded as direct, because any dilution in value of
13           the corporation's stock is merely the unavoidable result (from an accounting
             standpoint) of the reduction in the value of the entire corporate entity, of which
14           each share of equity represents an equal fraction. In the eyes of the law, such equal
             "injury" to the shares resulting from a corporate overpayment is not viewed as, or
15           equated with, harm to specific shareholders individually.

16   *Id*. (footnote omitted referring to excessive issuance of stock options and payment of fees to

17   executives as example of "typical overpayment").

18        However, there exists "at least one transactional paradigm–a species of corporate

19   overpayment claim–that Delaware case law recognizes as being both derivative and direct in

20   character." *Id*.  Such a claim arises where: (1) the majority shareholder causes the corporation to

21   issue him "excessive" shares for inadequate compensation; and (2) the effect of the exchange is

22   to simultaneously increase the shareholder's percentage of outstanding shares while decreasing

23   the percentage owned by minority shareholders. *Id*.  The *Gentile* Court explained:

24           Because the means used to achieve that result is an overpayment (or
25           "over-issuance") of shares to the controlling stockholder, the corporation is
             harmed and has a claim to compel the restoration of the value of the overpayment.
26           That claim, by definition, is derivative.

27           But, the public (or minority) stockholders also have a separate, and direct, claim
             arising out of that same transaction. Because the shares representing the
28           "overpayment" embody both economic value and voting power, the end result of

                                                    4

1    this type of transaction is an improper transfer–or expropriation–of economic
2    value and voting power from the public shareholders to the majority or controlling
3    stockholder. For that reason, the harm resulting from the overpayment is not
confined to an equal dilution of the economic value and voting power of each of
4    the corporation's outstanding shares. A separate harm also results: an extraction
from the public shareholders, and a redistribution to the controlling shareholder,
5    of a portion of the economic value and voting power embodied in the minority
interest. As a consequence, the public shareholders are harmed, uniquely and
6    individually, to the same extent that the controlling shareholder is
(correspondingly) benefitted. In such circumstances, the public shareholders are
7    entitled to recover the value represented by that overpayment–an entitlement that
may be claimed by the public shareholders directly and without regard to any
claim the corporation may have.

*Id.* at 99-100 (footnotes and internal citations omitted).

The alleged circumstances of the instant case do not fit within *Gentile*'s transactional paradigm. Lead Plaintiff does not allege that a controlling shareholder exchanged Apple stock for assets of a lesser value. In fact, Lead Plaintiff alleges specifically that backdated options were issued to a large group of officers, rather than a single controlling stockholder. *See, e.g.*, Complaint ¶¶ 83-88. Treating such a broad group of executives as equivalent to the controlling shareholder described by *Gentile* would expand significantly the bounds of the "one transactional paradigm" recognized by that case.

It follows that Lead Plaintiff's allegations properly are analyzed as claims of corporate overpayment that must be treated as derivative under the *Tooley* test. *See Id.* at 99. The thrust of the allegations is that the recipients of the backdated options were overpaid, in violation of Apple's stock option plans. Such allegations necessarily involve an injury to the corporation in that overpayment entails a reduction in corporate assets. Here, as in *Gentile*, "any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the *entire corporate entity*." *Gentile*, 906 A.2d at 100 (emphasis added); *see also In re J.P. Morgan Chase & Co. Shareholder Litig.*, 906 A.2d 808 (Del. Ch. 2005) (observing that "[m]ere claims of dilution, without more, cannot convert a claim traditionally understood as derivative, into a direct one"). Lead Plaintiff has not identified a

1  unique injury independent of any harm done to the corporation.[2]

2       At oral argument, counsel for Lead Plaintiff did not suggest that any further facts that

3  could be pled that would render this dilution case exceptional.  Thus, were Plaintiffs to file an

4  amended complaint, their claims properly would be stated as derivative claims on behalf of

5  Apple.  However, any derivative claims on behalf of Apple arising from the facts alleged in the

6  Complaint likely would be subject to consolidation with the pending derivative action, *In re*

7  *Apple Computer Inc. Derivative Litig.*, Case No. C 06-4128 JF

8  **2.     Loss Causation**

9       The Complaint also asserts a reputed direct claim based upon an allegedly fraudulent

10  proxy statement under section 14(a) and a related claim for control liability under section 20(a).

11  Rule 14a-9 provides:

12      No solicitation subject to this regulation shall be made by means of any proxy
    statement, form of proxy, notice of meeting or other communication, written or
13      oral, containing any statement which, at the time and in the light of the
    circumstances under which it is made, is false or misleading with respect to any
14      material fact, or which omits to state any material fact necessary in order to make
    the statements therein not false or misleading or necessary to correct any
15      statement in any earlier communication with respect to the solicitation of a proxy
    for the same meeting or subject matter which has become false or misleading.

16

17  17 C.F.R. § 240.14a-9(a).  To state a claim under Rule 14a-9 and section 14(a), a plaintiff must

18  allege that: (1) the defendant made a false or misleading statement or omission of material fact;

19  (2) the misstatement or omission was made with the requisite level of culpability; and (3) the

20  _____

21     [2] Lead Plaintiff relies on *In re Tri-Star Pictures, Inc. Litig.*, 634 A.2d 319 (Del. 1993)
and *Oliver v. Boston Univ.*, No. 16570, 2000 WL 1091480 (Del. Ch. July 25, 2000) to support
22  the argument that the dilution of economic interests and voting power involved here constitute
individual injuries sufficient to support a direct action.  These cases are distinguishable.  In *Tri-*
23  *Star*, the plaintiffs were alleging that the majority shareholder "used its influence as controlling
24  shareholder, and its domination of the self-dealing board of directors, to orchestrate a master plan
fully knowing that the special injury would be suffered by the non-controlling stockholders . . . ."
25  634 A.2d at 326-27; *see also Gentile*, 906 A.2d at 102 (noting that in *Tri Star* "what was reduced
was a *significant portion* fo the economic value and voting power of theat minority interest."
26  (emphasis added)).  *Oliver* involved a claim that the defendants acted improperly to dilute votes
27  for the purpose of effectuating a merger which was not supported by the minority shareholders.
In each of these cases, individual shareholders allegedly suffered some unique injury.  Indeed that
28  injury (the dilution of their voting power) was the purpose of the acts of which they complained.

Case No. C 06-5208 JF
ORDER GRANTING MOTION TO DISMISS
(JFLC1)

1   statement provided an essential link in the accomplishment of the transaction. *Desaigoudar v.*

2   *Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).  The Private Securities Litigation Reform Act

3   places upon a plaintiff "the burden of proving that the act or omission of the defendant alleged to

4   violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C.

5   § 78u-4(b)(4).  The Supreme Court has explained that this section requires a plaintiff to plead

6   both economic loss and proximate causation. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S.

7   336, 347 (2005).

8        Pointing to the fact that Apple's stock price has not fallen as a result of the disclosure of

9   backdating, Defendants argue that the Complaint does not include allegations of economic loss

10   or of a connection between such loss and the alleged misconduct.  Lead Plaintiff contends that it

11   nonetheless has alleged causation of economic loss in the form of the dilution resulting from the

12   issuance of more than 200 million shares that in turn was caused by the issuance of false and

13   misleading proxy statements.  Lead Plaintiff cites no authority to support its position.

14        If Lead Plaintiff were correct, any allegation of options backdating would satisfy the loss

15   causation requirement, as every improper grant of a backdated option by definition dilutes the

16   existing common stock.  However, as Defendants note, such dilution is not necessarily

17   accompanied by economic loss in the form of a fall in the stock price.  For example, a company's

18   stock might soar if it were to announce that it had secured the services of a leading executive by

19   granting the executive a large number of options.  While the subsequent disclosure that the

20   options were backdated might require a restatement, without a discernible drop in the stock price

21   there is no basis upon which to establish an injury to shareholders. *Dura* bars any suit brought

22   solely on the basis that a misrepresentation caused an inflated share price, and Lead Plaintiff

23   alleges no more here.

24        In light of the foregoing analysis, the claim asserted under section 14(a) will be

25   dismissed.  Because a plaintiff must state a primary violation of the federal securities laws to

26   prevail on a claim under section 20(a), that claim also is subject to dismissal. *See e.g.*, *Paracor*

27   *Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996)*.*

28

1

**3.      Additional Challenges to the Complaint**

Because the claims in the instant case properly should be asserted as derivative claims on

behalf of Apple, and because the Complaint does not include adequate allegations of loss

causation, the Court need not consider Defendants' additional challenges to the sufficiency of the

Complaint.

## IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is

GRANTED, with leave to amend.  Any amended complaint may assert only derivative claims

and shall be filed within thirty (30) days of the date of this order.  Should Lead Plaintiffs file an

amended complaint, the parties shall, with twenty (20) days thereafter, file simultaneous letter

briefs, not to exceed three (3) pages in length, addressing the question of whether the instant

action should be consolidated with the related derivative action, Case No. C 06-4128 JF.

DATED: November 14, 2007.

_____
JEREMY FOGEL
United States District Judge

Case No. C 06-5208 JF
ORDER GRANTING MOTION TO DISMISS
(JFLC1)

This Order has been served upon the following persons:

Michael J. Barry                 mbarry@gelaw.com, mswift@gelaw.com

Patrice L. Bishop                service@ssbla.com

Charles Thomas Caliendo          ccaliendo@gelaw.com, mswift@gelaw.com

Diane M. Doolittle               dianedoolittle@quinnemanuel.com,
                                 emilywada@quinnemanuel.com,
                                 sandranichols@quinnemanuel.com

Yohance Claude Edwards            yohance.edwards@mto.com, milvi.giesinger@mto.com

David Malcolm Furbush             david.furbush@pillsburylaw.com, dedmondson@omm.com,
                                 dshah@omm.com, frances.ceccacci@pillsburylaw.com,
                                 lnewell@omm.com, vtran@omm.com

Gary S. Graifman                 ggraifman@kgglaw.com

Howard Theodore Longman          tsvi@aol.com

John Mark Potter                 matthewgardner@quinnemanuel.com,
                                 rachelmullinax@quinnemanuel.com

George A. Riley                  griley@omm.com, cchiu@omm.com, mhenderson@omm.com

Jerome Cary Roth                 Jerome.Roth@mto.com, susan.ahmadi@mto.com

Luann Loraine Simmons            lsimmons@omm.com, cchiu@omm.com, cholsome@omm.com,
                                 smeblin@omm.com

John W. Spiegel                  spiegeljw@mto.com, berryjm@mto.com, finchac@mto.com,
                                 giesingermj@mto.com, stonelc@mto.com, voigtsam@mto.com

Mary Sikra Thomas                mthomas@gelaw.com, memaryt@verizon.net

Elizabeth B. Wydra               elizabethwydra@quinnemanuel.com,
                                 veronicavelilla@quinnemanuel.com

Notice has been delivered by other means to:

Jay W. Eisenhofer
Grant & Eisenhofer, P.A.
45 Rockefeller Center, 15th Floor
630 Fifth Avenue
New York, NY 10111

Carl Holliday Moor
Munger Tolles & Olson LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

9