**E-Filed 11/14/2007**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| MARTIN VOGEL and KENNETH MAHONEY, on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>STEVEN JOBS, et al.,<br><br>    Defendants. | Case Number C 06-5208 JF<br><br>ORDER[1] GRANTING MOTION TO DISMISS<br><br>[re: docket no. 54] |

## I. BACKGROUND

**1.  Procedural Background**

On August 24, 2006, Plaintiffs Martin Vogel and Kenneth Mahoney filed a class action complaint against a number of officer and directors of Apple Inc. ("Apple") alleging options backdating. On January 19, 2007, the Court appointed New York City Employees' Retirement System as the lead plaintiff ("Lead Plaintiff") and approved its choice of class counsel. On March 23, 2007, Lead Plaintiff filed the operative consolidated class action complaint ("the

---

[1] This disposition is not designated for publication and may not be cited.

Complaint"). The Complaint names Apple and fourteen individual defendants: Steven P. Jobs; William V. Campbell; Millard S. Drexler; Arthur D. Levinson; Jerome B. York; Fred D. Anderson; Gareth C.C. Chang; Peter O. Crisp; Lawrence J. Ellison; B. Jurgen Hintz; Katherine M. Hudson; Delano E. Lewis; A.C. Markkula, Jr.; and Edgar S. Wollard, Jr. The Complaint refers to Jobs, Campbell, Drexler, Levinson, as the "Director Defendants," and to Chang, Crisp, Ellison, Hintz, Hudson, Lewis, Markkula, and Wollard as the "Former Director Defendants." Complaint ¶¶ 15, 25. The Complaint asserts three class claims: (1) violation of section 14(a) of the Securities Exchange Act with respect to the 2005 Proxy Statement, against the Director Defendants and Anderson; (2) violation of section 20(a) of the Securities Exchange Act with respect to the 2005 Proxy Statement, against the Director Defendants and Anderson; and (3) breach of the duty of disclosure, against all defendants.

On June 8, 2007, Defendants moved to dismiss the Complaint. Defendants argue that the Complaint does not allege loss causation, does not state a direct claim, is pre-empted by the Securities Litigation Uniform Standards Act ("SLUSA"), does not satisfy applicable pleading standards, asserts claims that are time-barred, and otherwise fails to state a claim. Lead Plaintiff opposes the motion. The Court heard oral argument on September 7, 2007.

## II. LEGAL STANDARD

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 581 (9th Cir. 1983); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are

referenced extensively in the complaint and which are accepted by all parties as authentic, which are not physically attached to the complaint. *In re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999).

### III.  DISCUSSION

**1.    Character of the Claims**

Lead Plaintiff alleges the following with respect to its claim under section 14(a):

> The false and misleading 2005 Proxy was an essential link in accomplishing the [backdating] transactions challenged hereby, and as a direct and proximate result, Lead Plaintiff and the Section 14(a) Class have been damaged because the value of their shares were improperly diluted through the issuance of these additional shares as a direct and proximate result of the defendants' breach of their duty of full disclosure.

Complaint ¶ 286.  Defendants argue the injury suffered by the alleged class is derivative in nature.

The proper characterization of a claim as direct or derivative is governed by the law of the state of incorporation, which in this case is California. *See Kennedy v. Venrock Associates*, 348 F.3d 584, 589 (7th Cir. 2003); *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 221 (5th Cir. 1994).   California corporate law is functionally identical to Delaware corporate law. *See Oakland Raiders v. National Football League*, 93 Cal.App.4th 572, 586 n.5 (2001) ("The parties agree that we may properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes.").  The parties have not identified any difference between California and Delaware corporate law that affects the instant analysis.

Under Delaware law, the character of a claim is determined by answering two questions: "Who suffered the alleged harm–the corporation or the suing stockholder individually–and who would receive the benefit of the recovery or other remedy?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004).  Under this test "a court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be *independent* of any alleged injury to the corporation." *Id*. (emphasis added).  The

3

plaintiff satisfies his burden of establishing that the claim is derivative if he can show that "he or she has suffered an injury that is *not dependent on an injury to the corporation*." *Id.* (emphasis added).

Courts typically recognize claims of corporate overpayment as derivative. *Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006) ("Normally, claims of corporate overpayment are treated as causing harm solely to the corporation and, thus, are regarded as derivative."). "The reason (expressed in *Tooley* terms) is that the corporation is both the party that suffers the injury (a reduction in its assets or their value) as well as the party to whom the remedy (a restoration of the improperly reduced value) would flow." *Id*. This is true when the form of payment is corporate stock:

> In the typical corporate overpayment case, a claim against the corporation's fiduciaries for redress is regarded as exclusively derivative, irrespective of whether the currency or form of overpayment is cash or the corporation's stock. Such claims are not normally regarded as direct, because any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction. In the eyes of the law, such equal "injury" to the shares resulting from a corporate overpayment is not viewed as, or equated with, harm to specific shareholders individually.

*Id*. (footnote omitted referring to excessive issuance of stock options and payment of fees to executives as example of "typical overpayment").

However, there exists "at least one transactional paradigm–a species of corporate overpayment claim–that Delaware case law recognizes as being both derivative and direct in character." *Id.* Such a claim arises where: (1) the majority shareholder causes the corporation to issue him "excessive" shares for inadequate compensation; and (2) the effect of the exchange is to simultaneously increase the shareholder's percentage of outstanding shares while decreasing the percentage owned by minority shareholders. *Id*. The *Gentile* Court explained:

> Because the means used to achieve that result is an overpayment (or "over-issuance") of shares to the controlling stockholder, the corporation is harmed and has a claim to compel the restoration of the value of the overpayment. That claim, by definition, is derivative.
>
> But, the public (or minority) stockholders also have a separate, and direct, claim arising out of that same transaction. Because the shares representing the "overpayment" embody both economic value and voting power, the end result of

4

> this type of transaction is an improper transfer–or expropriation–of economic value and voting power from the public shareholders to the majority or controlling stockholder. For that reason, the harm resulting from the overpayment is not confined to an equal dilution of the economic value and voting power of each of the corporation's outstanding shares. A separate harm also results: an extraction from the public shareholders, and a redistribution to the controlling shareholder, of a portion of the economic value and voting power embodied in the minority interest. As a consequence, the public shareholders are harmed, uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefitted. In such circumstances, the public shareholders are entitled to recover the value represented by that overpayment–an entitlement that may be claimed by the public shareholders directly and without regard to any claim the corporation may have.

*Id.* at 99-100 (footnotes and internal citations omitted).

The alleged circumstances of the instant case do not fit within *Gentile*'s transactional paradigm. Lead Plaintiff does not allege that a controlling shareholder exchanged Apple stock for assets of a lesser value. In fact, Lead Plaintiff alleges specifically that backdated options were issued to a large group of officers, rather than a single controlling stockholder. *See, e.g.*, Complaint ¶¶ 83-88. Treating such a broad group of executives as equivalent to the controlling shareholder described by *Gentile* would expand significantly the bounds of the "one transactional paradigm" recognized by that case.

It follows that Lead Plaintiff's allegations properly are analyzed as claims of corporate overpayment that must be treated as derivative under the *Tooley* test. *See Id*. at 99. The thrust of the allegations is that the recipients of the backdated options were overpaid, in violation of Apple's stock option plans. Such allegations necessarily involve an injury to the corporation in that overpayment entails a reduction in corporate assets. Here, as in *Gentile*, "any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the *entire corporate entity*." *Gentile*, 906 A.2d at 100 (emphasis added); *see also In re J.P. Morgan Chase & Co. Shareholder Litig.*, 906 A.2d 808 (Del. Ch. 2005) (observing that "[m]ere claims of dilution, without more, cannot convert a claim traditionally understood as derivative, into a direct one"). Lead Plaintiff has not identified a

unique injury independent of any harm done to the corporation.[2]

At oral argument, counsel for Lead Plaintiff did not suggest that any further facts that could be pled that would render this dilution case exceptional. Thus, were Plaintiffs to file an amended complaint, their claims properly would be stated as derivative claims on behalf of Apple. However, any derivative claims on behalf of Apple arising from the facts alleged in the Complaint likely would be subject to consolidation with the pending derivative action, *In re Apple Computer Inc. Derivative Litig.*, Case No. C 06-4128 JF

**2. Loss Causation**

The Complaint also asserts a reputed direct claim based upon an allegedly fraudulent proxy statement under section 14(a) and a related claim for control liability under section 20(a). Rule 14a-9 provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a-9(a). To state a claim under Rule 14a-9 and section 14(a), a plaintiff must allege that: (1) the defendant made a false or misleading statement or omission of material fact; (2) the misstatement or omission was made with the requisite level of culpability; and (3) the

---

[2] Lead Plaintiff relies on *In re Tri-Star Pictures, Inc. Litig.*, 634 A.2d 319 (Del. 1993) and *Oliver v. Boston Univ.*, No. 16570, 2000 WL 1091480 (Del. Ch. July 25, 2000) to support the argument that the dilution of economic interests and voting power involved here constitute individual injuries sufficient to support a direct action. These cases are distinguishable. In *Tri-Star*, the plaintiffs were alleging that the majority shareholder "used its influence as controlling shareholder, and its domination of the self-dealing board of directors, to orchestrate a master plan fully knowing that the special injury would be suffered by the non-controlling stockholders . . . ." 634 A.2d at 326-27; *see also Gentile*, 906 A.2d at 102 (noting that in *Tri Star* "what was reduced was a *significant portion* fo the economic value and voting power of theat minority interest." (emphasis added)). *Oliver* involved a claim that the defendants acted improperly to dilute votes for the purpose of effectuating a merger which was not supported by the minority shareholders. In each of these cases, individual shareholders allegedly suffered some unique injury. Indeed that injury (the dilution of their voting power) was the purpose of the acts of which they complained.

statement provided an essential link in the accomplishment of the transaction. *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).  The Private Securities Litigation Reform Act places upon a plaintiff "the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4).  The Supreme Court has explained that this section requires a plaintiff to plead both economic loss and proximate causation. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

Pointing to the fact that Apple's stock price has not fallen as a result of the disclosure of backdating, Defendants argue that the Complaint does not include allegations of economic loss or of a connection between such loss and the alleged misconduct.  Lead Plaintiff contends that it nonetheless has alleged causation of economic loss in the form of the dilution resulting from the issuance of more than 200 million shares that in turn was caused by the issuance of false and misleading proxy statements.  Lead Plaintiff cites no authority to support its position.

If Lead Plaintiff were correct, any allegation of options backdating would satisfy the loss causation requirement, as every improper grant of a backdated option by definition dilutes the existing common stock.  However, as Defendants note, such dilution is not necessarily accompanied by economic loss in the form of a fall in the stock price.  For example, a company's stock might soar if it were to announce that it had secured the services of a leading executive by granting the executive a large number of options.  While the subsequent disclosure that the options were backdated might require a restatement, without a discernible drop in the stock price there is no basis upon which to establish an injury to shareholders.  *Dura* bars any suit brought solely on the basis that a misrepresentation caused an inflated share price, and Lead Plaintiff alleges no more here.

In light of the foregoing analysis, the claim asserted under section 14(a) will be dismissed.  Because a plaintiff must state a primary violation of the federal securities laws to prevail on a claim under section 20(a), that claim also is subject to dismissal. *See e.g.*, *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).

**3.    Additional Challenges to the Complaint**

Because the claims in the instant case properly should be asserted as derivative claims on behalf of Apple, and because the Complaint does not include adequate allegations of loss causation, the Court need not consider Defendants' additional challenges to the sufficiency of the Complaint.

## IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is GRANTED, with leave to amend.  Any amended complaint may assert only derivative claims and shall be filed within thirty (30) days of the date of this order.  Should Lead Plaintiffs file an amended complaint, the parties shall, with twenty (20) days thereafter, file simultaneous letter briefs, not to exceed three (3) pages in length, addressing the question of whether the instant action should be consolidated with the related derivative action, Case No. C 06-4128 JF.

DATED: November 14, 2007.

JEREMY FOGEL
United States District Judge

1 | This Order has been served upon the following persons:

2 | Michael J. Barry — mbarry@gelaw.com, mswift@gelaw.com

3 | Patrice L. Bishop — service@ssbla.com

4 | Charles Thomas Caliendo — ccaliendo@gelaw.com, mswift@gelaw.com

5 | Diane M. Doolittle — dianedoolittle@quinnemanuel.com, emilywada@quinnemanuel.com, sandranichols@quinnemanuel.com

7 | Yohance Claude Edwards — yohance.edwards@mto.com, milvi.giesinger@mto.com

8 | David Malcolm Furbush — david.furbush@pillsburylaw.com, dedmondson@omm.com, dshah@omm.com, frances.ceccacci@pillsburylaw.com, lnewell@omm.com, vtran@omm.com

10 | Gary S. Graifman — ggraifman@kgglaw.com

11 | Howard Theodore Longman — tsvi@aol.com

12 | John Mark Potter — matthewgardner@quinnemanuel.com, rachelmullinax@quinnemanuel.com

13 | George A. Riley — griley@omm.com, cchiu@omm.com, mhenderson@omm.com

14 | Jerome Cary Roth — Jerome.Roth@mto.com, susan.ahmadi@mto.com

15 | Luann Loraine Simmons — lsimmons@omm.com, cchiu@omm.com, cholsome@omm.com, smeblin@omm.com

17 | John W. Spiegel — spiegeljw@mto.com, berryjm@mto.com, finchac@mto.com, giesingermj@mto.com, stonelc@mto.com, voigtsam@mto.com

18 | Mary Sikra Thomas — mthomas@gelaw.com, memaryt@verizon.net

19 | Elizabeth B. Wydra — elizabethwydra@quinnemanuel.com, veronicavelilla@quinnemanuel.com

21 | Notice has been delivered by other means to:

22 | Jay W. Eisenhofer
Grant & Eisenhofer, P.A.
45 Rockefeller Center, 15th Floor
630 Fifth Avenue
New York, NY 10111

25 | Carl Holliday Moor
Munger Tolles & Olson LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560

9

Case No. C 06-5208 JF
ORDER GRANTING MOTION TO DISMISS
(JFLC1)