GEORGE A. RILEY (State Bar No. 118304)
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, California 94111-3305
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
E-Mail: griley@omm.com

Attorneys for Defendants
STEVEN P. JOBS, WILLIAM V. CAMPBELL, MILLARD S. DREXLER, ARTHUR D. LEVINSON, JEROME B. YORK, GARETH C.C. CHANG, PETER O. CRISP, LAWRENCE J. ELLISON, B. JURGEN HINTZ, KATHERINE M. HUDSON, DELANO E. LEWIS, A.C. MARKKULA, JR., EDGAR S. WOOLARD, JR., and APPLE INC.

JEROME C. ROTH (State Bar No. 159483)
YOHANCE C. EDWARDS (State Bar No. 237244)
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
E-Mail: Jerome.Roth@mto.com
Yohance.Edwards@mto.com

Attorneys for Defendant
FRED D. ANDERSON

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

MARTIN VOGEL and KENNETH MAHONEY, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

STEVEN P. JOBS, PETER OPPENHEIMER, FRED ANDERSON, WILLIAM V. CAMPBELL, MILLARD S. DREXLER, ALBERT GORE, JR., ARTHUR D. LEVINSON, JEROME P. YORK and APPLE COMPUTER, INC.,

Defendants.

Case No. C06-05208-JF

**OPPOSITION TO MOTION FOR LEAVE TO FILE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Date: March 14, 2008
Time: 9:00 a.m.
Department: Ctrm 3, 5th Floor
Judge: Honorable Jeremy Fogel

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1
PROCEDURAL HISTORY ........ 2
ARGUMENT ........ 5
I. BECAUSE THE CONSOLIDATED COMPLAINT DID NOT REALLEGE THE SECTION 10(b) CLAIMS ASSERTED IN THE ORIGINAL COMPLAINT, THOSE CLAIMS HAVE BEEN WAIVED AND MAY NOT BE ALLEGED IN AN AMENDED CONSOLIDATED COMPLAINT ........ 5
II. THE DOCTRINE OF JUDICIAL ESTOPPEL PRECLUDES NYCERS FROM PURSUING THE 10(b) CLAIMS THAT IT EXPRESSLY ABANDONED AS WORTHLESS ........ 7
III. NYCERS SHOULD NOT BE GRANTED LEAVE TO AMEND UNDER FEDERAL RULE 15(a) ........ 9
A. Amendment Would Cause Undue Prejudice To Defendants ........ 10
B. The Amendment Is The Result Of Undue Delay ........ 10
C. NYCERS's Reversal Of Position Suggests Bad Faith. ........ 11
CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946 (9th Cir. 2006)........................................ 10

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)........................................ 8

*Chodos v. W. Publ. Co.*, 292 F.3d 992 (9th Cir. 2002)........................................ 11

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183 (9th Cir. 1987)........................................ 9

*Ferdik v Bonzelet*, 963 F.2d 1258 (9th Cir. 1992), *cert. denied*, 506 U.S. 915 (1992)........................................ 6

*Forsyth v. Humana, Inc.*, 114 F.3d 1467 (1997)........................................ 5

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542 (9th Cir. 1990)........................................ 6

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001)........................................ 7

*Helfand v. Gerson*, 105 F.3d 530 (9th Cir. 1997)........................................ 7

*King v. Atiyeh*, 814 F.2d 565 (9th Cir. 1987)........................................ 6

*Lockheed Martin Corp. v. Network Solutions Inc.*, 194 F.3d 980 (9th Cir. 1999)........................................ 11

*London v. Coopers & Lybrand*, 644 F.2d 811 (9th Cir. 1981)........................................ 5, 6

*Loux v. Rhay*, 375 F. 2d 55 (9th Cir. 1967)........................................ 5

*Marx v. Loral Corp.*, 87 F.3d 1049 (9th Cir. 1996)........................................ 6

*Mir v. Fosburg*, 646 F. 2d 342 (9th Cir. 1980)........................................ 9

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990)........................................ 10

*Nelson v. Capital One Bank*, 206 F.R.D. 499 (N. D. Cal. 2001)........................................ 5

*New Hampshire v. Maine*, 532 U.S. 742 (2001)........................................ 7

*Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996)........................................ 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Russell v. Rolfs*,
893 F.2d 1033 (9th Cir. 1990) ........ 7

*Sorosky v. Burroughs Corp.*,
826 F.2d 794 (9th Cir. 1986) ........ 11

*Studio Carpenters Local Union No. 946 v. Loew's, Inc.*,
*182 F.2d 168 (9th Cir. 1950)* ........ 5

*Thornton v. McClatchy Newspapers, Inc.*,
261 F.3d 789 (9th Cir. 2001) ........ 11

*United States v. Webb*,
655 F.2d 977 (9th Cir. 1980) ........ 9

*Wagner v. Prof'l Engineers in California Gov't*,
354 F.3d 1036 (9th Cir. 2004) ........ 8

*Wyatt v. Terhune*,
15 F.3d 1108 (9th Cir. 2003) ........ 9

*Yniguez v. Arizona*,
939 F.2d 727 (9th Cir. 1991) ........ 8, 9

**<u>STATUTES</u>**

15 U.S.C. § 78u-4(a)(3)(B)(i) ........ 2

15 U.S.C. § 78u-4(e)(3) ........ 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

On November 14, 2007, the Court dismissed this purported federal securities class action, granting plaintiff New York City Employees' Retirement System ("NYCERS") leave to refile the action only as a derivative suit. Despite this clear direction, NYCERS now seeks to amend the dismissed complaint to add claims under Section 10(b) of the Securities Act. NYCERS argues that its "duties" to class members require it to raise these claims because no Section 10(b) claim was alleged in the "original Complaint." (Motion to File the First Amended Consolidated Class Action Complaint and to Amend the Caption ("Motion for Leave"), Docket #70, at 2:8-11.)[1] NYCERS points to no change in facts or law to support its request.

NYCERS's motion is founded on an extraordinary misrepresentation. Contrary to NYCERS's account, Section 10(b) claims were, in fact, asserted on behalf of the class in the original complaint. NYCERS, however, deliberately abandoned these 10(b) claims when it filed the subsequent Consolidated Class Action Complaint. In its efforts to win designation as Lead Plaintiff, NYCERS represented to the Court that the 10(b) claims asserted in the original complaint on behalf of the purported class were worthless. In so doing, NYCERS sought to enhance its standing for appointment as Lead Plaintiff, arguing that its large shareholdings made it the most appropriate party to lead an effort to seek dilution damages under Section 14. Therefore, rather than attempting to add new claims as part of its "duty" to absent class members, NYCERS now seeks to resurrect previously asserted claims that it intentionally abandoned for strategic reasons.

Under well-established law in the Ninth Circuit, a claim that was made in an initial complaint but that was not reasserted in a subsequent complaint is conclusively waived and cannot be realleged in a further amended complaint. This rule, which has been consistently applied to *pro se* plaintiffs who inadvertently drop claims from an earlier-filed complaint, applies

---

[1] Unless otherwise noted, the initial references to documents filed in this action will include the full title and docket number. Subsequent references will contain a short title and page and line numbers.

with greater force to a sophisticated plaintiff who made a strategic decision, announced to the Court, to abandon the very claims that it now seeks to resurrect. NYCERS is also barred by the doctrine of judicial estoppel from attempting to amend the complaint. Moreover, even if the doctrines of waiver and judicial estoppel did not preclude the Section 10(b) claims, NYCERS does not meet the requirements for leave to amend. Therefore, the motion should be denied.

## PROCEDURAL HISTORY

Shortly after Apple's June 29, 2006 announcement that its Board of Directors had launched an independent investigation into past stock option practices, 21 derivative actions were filed in state and federal courts. Approximately 60 days later, on August 24, 2006, plaintiffs Martin Vogel and Kenneth Mahoney filed a Class Action Complaint ("Original Complaint"), Docket #1, against Apple and certain former and current officers and directors ("Defendants") for violations of federal securities laws. Count I alleged that Defendants violated Section 10(b) and Rule 10b-5 by deceiving the investing public and artificially inflating the market price of Apple common stock. Count II asserted violations of Section 14(a) for allegedly misleading statements contained in Apple's 2006 Proxy Statement. Count III alleged Section 20(a) control persons liability.

Approximately two months after the Original Complaint was filed, NYCERS filed a motion for appointment as Lead Plaintiff under the Private Securities Litigation Reform Act ("PSLRA"). NYCERS argued that it was "precisely the type of sophisticated institutional investor that Congress envisioned taking control of class action securities litigation." (NYCERS Mem. in Support of Mot. for Its Appointment as Lead Plaintiff ("NYCERS Appt. Mot."), Docket #4, at 1:23-25); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(i) (providing that the court shall appoint as lead plaintiff the member of the purported class "most capable of adequately representing the interests of the class members.") NYCERS further claimed that it "has experience acting in a fiduciary capacity, [and] is committed to conducting this litigation efficiently and maximizing recovery on behalf of the class." (NYCERS Appt. Mot. at 1:25-27.)

After extolling its qualifications and experience for the position of Lead Plaintiff, NYCERS explained that the Section 10(b) claims alleged in *Vogel* were worthless, and should not

be considered by the Court. NYCERS asserted "the lion's share of the available relief may be obtained under Section 14(a)." (*Id.* at 2:7-8.) Because NYCERS owned more than 1 million shares of Apple stock, NYCERS argued that it was the most appropriate plaintiff to represent the interests of the class in seeking Section 14(a) recovery. (*Id.* at 3:10-16.) NYCERS maintained that any damages available under the Section 10(b) claim, on the other hand, were "severely circumscribed" because only shareholders who purchased Apple stock during an "extremely narrow time frame" may have a claim. (*Id.* at 1:13, 14:5-6.) In support of this argument, NYCERS pointed to the 90-day look back period under the PSLRA that limits the award of damages when a company's stock price recovers during the three months following a corrective disclosure. 15 U.S.C. § 78u-4(e)(3). As a result, according to NYCERS, damages under Section 10(b) were "*de minimis*" and the named plaintiffs in particular would have "no recoverable damages" whatsoever. (*Id.* at 14:5-18.)

Defendants filed a statement of non-opposition to the motion, without prejudice to challenge class certification and the merits of NYCERS's arguments. The Court appointed NYCERS as Lead Plaintiff at a hearing on January 19, 2007.

As Lead Plaintiff, NYCERS could have relied on the Original Complaint or realleged the Section 10(b) claims in a subsequent complaint. (*See* October 27, 2006 Stipulation and Order Extending Time for Defendants to Respond to Complaint, Docket #10.) However, despite its awareness that other plaintiffs believed the Section 10(b) claims based on the alleged conduct at issue in the Original Complaint should be protected,[2] NYCERS deliberately elected to abandon

[2] On November 21, 2006, plaintiffs Saratoga Advantage Trust Large Capitalization Growth Portfolio and Saratoga Advantage Trust Technology & Communications Portfolio ("Saratoga Plaintiffs") filed a motion for appointment as Lead Plaintiff in *In re Apple Computer Inc. Derivative Action*, Case No. C-06-04128-JF ("Derivative Action"), Docket #84. ("Saratoga Pls. App. Mot.") The Saratoga Plaintiffs argued that their appointment as Lead Plaintiff was necessary to protect the Section 10(b) claims at issue in the Derivative Litigation, claims that were based on the same alleged conduct that formed the basis of the 10(b) claims originally alleged in the *Vogel* action. (Saratoga Pls. App. Mot. at 3:14-6:7.) On January 10, 2007, NYCERS filed a response to the Saratoga Plaintiffs' motion, stating that it had no opposition to the motion to the extent it would not prejudice its own application for Lead Plaintiff status in *Vogel*. (*See* Response of NYCERS to Motion for Appointment of Finkelstein & Krinsk LLP to the Management Committee and Appointment of Saratoga Plaintiffs as Lead Plaintiff, Docket #18, at 1:5-11.) The Court denied the Saratoga Plaintiffs' motion, concluding that the

the Section 10(b) claims when it filed its new consolidated complaint on March 23, 2007. (*See* Lead Plaintiff NYCERS's Consolidated Class Action Complaint filed on March 23, 2007 ("Consolidated Complaint"), Docket #39.) Because NYCERS had jettisoned the 10(b) claims it had disparaged as worthless, the Consolidated Complaint sought damages for dilution of class members' shareholdings solely based on alleged violations of Section 14 and state law.

On September 7, 2007, the Court heard argument on Defendants' motion to dismiss the Consolidated Complaint. During the argument, the Court sought an explanation of plaintiffs' theory of loss because contrary to the "garden-variety PSLRA fact pattern" plaintiffs here alleged that "[t]hey lost an inchoate value of shares, but the stock price didn't drop." (S*ee* Tran Declaration Ex. A (Sept. 7, 2007 Hrg. Tr.) at 17:23-18:3.) To distinguish the type of economic harm alleged in this case from typical PSLRA cases, plaintiffs' counsel stated that this "is not a stock price drop case." (*Id.* at 18:15-18:19.) And because "it's not a 10b5 open market case . . . you can't apply the rule of a 10b5 case to a section 14 case. It doesn't . . . work." (*Id.* at 18:4-6.)

On November 14, 2007, the Court granted Defendants' motion to dismiss. The Court held that "the claims in the instant case properly should be asserted as derivative claims on behalf of Apple." (November 14, 2007 Order Granting Motion to Dismiss ("Dismissal Order"), Docket #69, at 8:2-5.) The Court noted that, in opposition to the motion to dismiss, NYCERS had conceded "that Apple's stock price has not fallen as a result of the disclosure of backdating." (Dismissal Order at 7:8-13.) The Court ordered that "[a]ny amended complaint may assert only derivative claims." (*Id.* at 8:8-9.)

Instead of filing a derivative action as permitted by this Court's order, NYCERS filed a motion for leave to file a First Amended Consolidated Class Action Complaint. In a stark reversal of its original position, NYCERS now claims that "[u]pon reflection of its duties to the absent class members . . . it is both necessary and appropriate to assert a direct class claim that was *not* asserted in the original Complaint — specifically, a claim under Section 10(b) of the

---

management committee in the Derivative Action "has adequate experience to protect any claims for relief under Section 10(b)" and added in a footnote that it had granted NYCERS's motion for Lead Plaintiff status in *Vogel* at a hearing. (Order Denying Motion for Appointment of Saratoga Plaintiffs as Lead Plaintiff, Docket #19, at 2:10-3:1.)

Exchange Act." (Motion for Leave at 2:8-11.) NYCERS also reasserts the previously dismissed Section 14(a) claims, explaining it needs to do so in order to avoid waiving those claims for appeal. (*Id.* at 1 n.1 (*citing* Local Rule 10-1 and *Forsyth v. Humana, Inc.*, 114 F.3d 1467 (1997)).) In the Motion for Leave, NYCERS does not mention, much less explain, its dramatic change in position. Nor does NYCERS point to any change in facts or law that would justify its attempt to resurrect the Section 10(b) claims asserted in the Original Complaint that NYCERS deliberately abandoned for strategic reasons.

## ARGUMENT

### I. BECAUSE THE CONSOLIDATED COMPLAINT DID NOT REALLEGE THE SECTION 10(b) CLAIMS ASSERTED IN THE ORIGINAL COMPLAINT, THOSE CLAIMS HAVE BEEN WAIVED AND MAY NOT BE ALLEGED IN AN AMENDED CONSOLIDATED COMPLAINT.

There is a simple rule that governs this motion. "[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint." *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981). Because NYCERS did not allege in the Consolidated Complaint the Section 10(b) claims alleged in the Original Complaint, those claims are waived and may not be asserted in a First Amended Consolidated Complaint.

The *London* rule is based on the well-established doctrine that subsequent pleadings supersede prior pleadings, "the latter being treated thereafter as non-existent." *Loux v. Rhay*, 375 F. 2d 55, 57 (9th Cir. 1967); *see also Nelson v. Capital One Bank*, 206 F.R.D. 499, 501-02 (N.D. Cal. 2001) (consolidated class action complaint supersedes the original complaint). As the court stated in *Studio Carpenters Local Union No. 946 v. Loew's, Inc.*, the rationale underlying the *London* rule is simple: "[i]f appellant desired to rely upon the original complaint, it should have refused to plead further." 182 F.2d 168, 170 (9th Cir. 1950), *cert. denied*, 340 U.S. 828 (1950). In *London*, the plaintiff's original complaint alleged sex and national origin discrimination against her employer under Title VII, and further claimed that her termination violated the Civil Rights Act of 1866, 42 U.S.C. § 1981. 644 F.2d at 813. The district court dismissed the plaintiff's complaint as time-barred, but granted her leave to amend. *Id.* In her second amended complaint, the plaintiff did not reallege a Title VII claim but instead brought a Section 1981 claim and

pendent state employment causes of action. The court granted the defendant's subsequent motion to dismiss with prejudice, and also dismissed plaintiff's Title VII claim with prejudice because it was not realleged in the second amended complaint. *Id.* at 814.

On appeal, each party briefed the merits of the district court's statute of limitations determination for both the Title VII and Section 1981 claims. Before even reaching the merits of the statute of limitations defense, however, the Ninth Circuit held that the plaintiff had waived her Title VII claim by failing to reallege it in the second amended complaint. *Id.* The court explained that "[i]t has long been the rule in this circuit that a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint." *Id.*

Since *London*, the Ninth Circuit has consistently applied this rule to conclude that plaintiffs waive claims alleged in an original complaint but unasserted in subsequent complaints. *See, e.g., Marx v. Loral Corp.*, 87 F.3d 1049, 1055-56 (9th Cir. 1996) (plaintiffs waived the contract theory alleged in the original complaint by electing to proceed "only on the narrow ground of equitable estoppel sounding in fraud" in the amended complaint); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), *cert. denied*, 506 U.S. 915 (1992) (affirming dismissal of amended complaint with prejudice because the court could not look to prior pleadings to correct defect appearing in amended complaint); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990) ("The fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original."); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (affirming district court's dismissal based on its ruling that the *London* rule applied to *pro se* litigants who failed to reallege claims contained in the original complaint).

The *London* rule has particular force in this case. The first claim for relief alleged in the Original Complaint was "For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder." (*See* Original Compl. Count I.) After representing to the Court that the claim was worthless in its effort to win Lead Plaintiff designation, NYCERS made a deliberate decision to drop the Section 10(b) claims in the discharge of its purported duty to "conduct this litigation efficiently." If the *London* rule is used to bar *pro se* litigants from asserting claims they negligently fail to reallege in a subsequent complaint, it certainly should

preclude a sophisticated plaintiff from resurrecting claims previously abandoned for strategic reasons. Accordingly, the Section 10(b) claims NYCERS seeks to allege in an Amended Consolidated Complaint have been waived and the Motion for Leave should be denied.

## II. THE DOCTRINE OF JUDICIAL ESTOPPEL PRECLUDES NYCERS FROM PURSUING THE 10(B) CLAIMS THAT IT EXPRESSLY ABANDONED AS WORTHLESS.

The doctrine of judicial estoppel also precludes NYCERS from pursuing Section 10(b) claims in an amended complaint. Having expressly abandoned these claims with its representation to the Court that their value was, at most, "*de minimis*," NYCERS is estopped from now asserting these claims.

"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant from "playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal quotation marks omitted). The doctrine applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion. *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997).

In *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001), the Supreme Court outlined three factors a court should consider in deciding whether to apply judicial estoppel: (1) whether the party's position is clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading the court to accept its original position; and (3) whether the party would obtain an unfair advantage or impose an unfair detriment if allowed to take the new position. *Id*. These factors are not prerequisites but rather considerations whose applicability and weight will be affected by the specific factual context of a given case. *See also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001).

All of the considerations in *New Hampshire v. Maine* weigh heavily in favor of judicial estoppel in this case. NYCERS's position is clearly inconsistent with its earlier position. In attempting to secure appointment as Lead Plaintiff, NYCERS characterized the Section 10(b)

claims as worthless, having at most *de minimis* value for the class members and no value for the named plaintiffs. The term "*de minimis*" means something that is "trifling, minimal" or "so insignificant that a court may overlook it in deciding an issue or case." Black's Law Dictionary 464 (8th ed. 2004). NYCERS confidently asserted that full damages could be obtained for the massive putative class – all purchasers of Apple stock for 10 years – under Section 14, which would also result in NYCERS's greatest recovery. Accordingly, NYCERS abandoned the Section 10(b) claims when it filed the Consolidated Complaint. NYCERS's position was accepted by the Court and recited in the decision on the motion to dismiss. Now, by attempting to reverse a deliberate strategic decision, NYCERS is seeking to revive its lawsuit and force Defendants to defend against class claims NYCERS abandoned 13 months prior. Therefore, NYCERS is estopped from pursing the abandoned 10(b) claims.

The Ninth Circuit has consistently applied the doctrine of judicial estoppel to prevent a party from taking inconsistent legal positions in litigation, as NYCERS does here. One analogous case is *Yniguez v. Arizona*, 939 F.2d 727, 738 (9th Cir. 1991), *vacated on other grounds sub nom. Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997).

In *Yniguez*, the Arizona Attorney General represented to the district court that "he did not wish to be a party to this litigation, presented arguments in support of that position, and persuaded the district court to rule in his favor on that point." 939 F.2d at 738. "Only after the district court granted the Attorney General's request and then reached a result on the merits with which the Attorney General disagreed did that official decide that he would rather be a party after all." *Id.* On appeal, the Ninth Circuit concluded that the case was "ideally suited for the application of judicial estoppel." *Id.* The court rejected the Attorney General's arguments that no prejudice would result from his intervention, pointing out that the prejudice argument "misses the point [because] [t]he principal concern of the doctrine of judicial estoppel is the integrity of the judicial process." *Id.* at 739; *see also Wagner v. Prof'l Engineers in California Gov't*, 354 F.3d 1036 (9th Cir. 2004) (holding that the district court's grant of plaintiffs' partial summary judgment motion based on a previously abandoned claim was an abuse of discretion and that plaintiffs were estopped from pursuing that claim).

Having lost its federal securities claims based on dilution of interests, NYCERS reverses tack and seeks to resurrect claims that it expressly abandoned as worthless. NYCERS offers no new facts or law to account for the contradiction in the positions it has represented to this Court. Such conduct certainly implicates "the integrity of the judicial process." *Yniguez*, 939 F.2d at 739. Moreover, if leave were granted, Defendants would be forced to develop an entirely new defense to a class claim earlier rejected by NYCERS as without value. Accordingly, NYCERS should be judicially estopped from claiming damages on the basis of a Section 10(b) claim.

## III. NYCERS SHOULD NOT BE GRANTED LEAVE TO AMEND UNDER FEDERAL RULE 15(A).

Even if the doctrines of waiver and judicial estoppel did not preclude NYCERS's attempt to amend the dismissed complaint, the motion should be denied because it does not satisfy the requirements of Federal Rule of Civil Procedure 15(a).

Rule 15(a) provides that a party may amend its pleading with the leave of the court and instructs that permission to amend "shall be freely given when justice so requires." While the Ninth Circuit grants this leave "with extreme liberality," the denial of leave to amend lies "within the sound discretion of the trial court." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1980) (internal quotation marks omitted). A court's discretion to deny a motion for leave to amend is especially broad "where the court has already given a plaintiff one or more opportunities to amend his complaint." *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980). Courts in the Ninth Circuit will consider whether the proposed amendment results from undue delay, will cause prejudice to the non-movant, is made in bad faith or, if granted, would be futile. *Webb,* 655 F.2d at 980. Typically, leave to amend is granted in cases where newly discovered facts make amendment necessary, *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987), or where plaintiffs' claims have been affected by new law, *Wyatt v. Terhune*, 315 F.3d 1108, 1115 (9th Cir. 2003), or where the need for amendment arises from some form of excusable neglect.

In this case, leaving aside the futility of NYCERS's proposed amendment,[3] consideration

---

[3] Defendants reserve the right to move to dismiss the First Amended Consolidated Complaint if NYCERS's Motion for Leave is granted. Among other reasons, the Section 10(b) claims have no

of the other three factors provides an independent and adequate basis for the Court to reject the requested leave to amend. At this stage in the litigation, amendment would be unduly prejudicial because NYCERS sought and obtained Lead Plaintiff status on the basis that Section 10(b) claims had no value, and Defendants now would be forced to develop an entirely new defense to these class claims. NYCERS's excessive and unexplained delay in seeking to reassert a Section 10(b) claim also weighs heavily in favor of denial. Finally, NYCERS's reversal of position in pursuing these claims suggests bad faith because without them, this action will end now. Taken together, these facts justify denial of the Motion for Leave.

**A. Amendment Would Cause Undue Prejudice To Defendants.**

Prejudice may exist if the addition of a new claim would alter the nature of the litigation, thus requiring the defendant to develop an entirely new defense. *See, e.g., Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("In light of the radical shift in direction posed by these claims, their tenuous nature, and the inordinate delay, we conclude that the district court did not clearly abuse its discretion in denying leave to amend.") Such a shift is especially disfavored when the opposing party relied to its detriment on the original position. *AmerisourceBergen Corp. v. Dialysist West, Inc.* 465 F.3d 946, 953-54 (9th Cir. 2006) (affirming denial of leave to amend due to "sudden change in tactics" which could have been either "gamesmanship or the result of an oversight by counsel").

NYCERS is seeking to reassert a statutory claim based on a theory of loss causation that it explicitly considered and rejected more than 13 months prior to this motion. (NYCERS Appt. Mot. at 14:16-18.) If the amendment were allowed, Defendants would be forced to formulate a new defense on an entirely different basis to class claims previously rejected by NYCERS.

**B. The Amendment Is The Result Of Undue Delay.**

In assessing the timeliness of a motion for leave to amend, courts do not merely look to the amount of time between the original complaint and the proposed amendment, but also consider "whether the moving party knew or should have known the facts and theories raised by

---

merit because of the application of the 90-day look back provision and the failure to allege loss causation.

the amendment in the original pleading." *AmerisourceBergen*, 465 F.3d at 953 (internal quotation marks omitted). Delay is inexcusable where the new facts to be alleged were previously available and no reason is given for their exclusion from earlier complaints. *Id.* (affirming denial of leave to amend because plaintiff "has never provided a satisfactory explanation of why, twelve months into the litigation, it so drastically changed its litigation theory"); *Chodos v. W. Publ. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (because the district court had found that the "new" facts were available even before the *first* amendment of the complaint, the second amendment was unduly delayed); *Lockheed Martin Corp. v. Network Solutions Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (finding that a motion to amend filed after several months with no reason given for the delay supported the district court's denial of leave).

NYCERS provides no explanation for its delay in asserting Section 10(b) claims. NYCERS points to no newly discovered facts, inadvertence or excusable neglect. The reason for this lack of explanation is simple: NYCERS did not "delay" its assertion of a Section 10(b) claim; NYCERS deliberately elected not to pursue Section 10(b) claims that were alleged in the Original Complaint. NYCERS filed a motion for leave to amend over 13 months after rejecting the claim it now seeks to assert, over eight months after filing its Consolidated Complaint, and fresh on the heels of an order dismissing without leave to amend the federal securities claims. In these circumstances, the "delay" in failing to assert Section 10(b) claims is inexcusable.

### C. NYCERS's Reversal Of Position Suggests Bad Faith.

A motion to amend is considered in bad faith when the court determines that it is pursued with the purpose of delaying the administration of justice or to achieve some strategic end outside the substance of the claim. For example, the Ninth Circuit has concluded that a motion for leave to amend aimed only at regaining a previously waived right to a jury trial is in bad faith. *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789 (9th Cir. 2001). Efforts to amend a complaint simply to avoid the termination of the action have similarly been found to be in bad faith. *See Lockheed Martin*, 194 F.3d at 986 (plaintiff sought to add causes of action to avoid summary judgment); *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 804-05 (9th Cir. 1986) (upholding district court's denial of leave where amendment sought to add a defendant "to

destroy diversity and to destroy the jurisdiction of this court" and noting that "bad faith motive is a proper ground for denying leave to amend").

This Court has already dismissed without leave to amend NYCERS's federal securities claims, granting leave to amend only to file state derivative claims. (Dismissal Order at 8:8-9.) NYCERS freely admits that it has no reason to believe that any derivative claims are "inadequately represented" in the pending Derivative Litigation. The implicit concession is that NYCERS would have no further role in the stock option litigation as a derivative plaintiff.

To avoid that result, NYCERS now argues that its requested amendment is not in bad faith but the result of its determination that, as the Lead Plaintiff, it owes a fiduciary duty to all members of the purported class which obliges them now to assert 10(b) claims. (Motion for Leave at 4:13-28.) But in order to achieve appointment as Lead Plaintiff, NYCERS claimed that the 10(b) claims had *de minimis* value. NYCERS was on notice before it filed the Consolidated Complaint that some plaintiffs believed that the 10(b) claims had value, but NYCERS elected to abandon those claims as worthless. NYCERS provides no explanation why its obligations to absent class members are any different now than in 2006 when it rejected those claims. Indeed, it was only after its efforts to obtain the largest award possible for itself failed that NYCERS "reflected" upon its obligations to absent class members and sought to reassert the 10(b) claims that it had rejected. These circumstances suggest that the amendment is proposed not out of some consideration of duty, as represented to the Court, but in bad faith to preserve NYCERS's role in this litigation.

**CONCLUSION**

For the foregoing reasons, the Motion for Leave should be denied.

Dated: January 23, 2008

GEORGE A. RILEY
O'MELVENY & MYERS LLP

By: /s/ George A. Riley
George A. Riley

Attorneys for Defendants
STEVEN P. JOBS, WILLIAM V. CAMPBELL, MILLARD S. DREXLER, ARTHUR D. LEVINSON, JEROME B. YORK, GARETH C.C. CHANG, PETER O. CRISP, LAWRENCE J. ELLISON, B. JURGEN HINTZ, KATHERINE M. HUDSON, DELANO E. LEWIS, A.C. MARKKULA, JR., EDGAR S. WOOLARD, JR., AND APPLE INC.

Dated: January 23, 2008

JEROME C. ROTH
YOHANCE C. EDWARDS
MUNGER TOLLES & OLSON LLP

By: /s/ Yohance C. Edwards
Yohance C. Edwards

Attorneys for Defendant
FRED D. ANDERSON

I, George A. Riley, am the ECF User whose ID and password are being used to file this Opposition to Motion for Leave to File First Amended Consolidated Class Action Complaint. In compliance with General Order 45, X.B., I hereby attest that Yohance C. Edwards has concurred in this filing.

By: /s/ George A. Riley
George A. Riley

SF1:700240.6