**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE NEW YORK CITY EMPLOYEES'
RETIREMENT SYSTEM,
    *Plaintiff-Appellant,*

and

MARTIN VOGEL; KENNETH
MAHONEY,
    *Plaintiffs,*

v.

STEVEN P. JOBS; FRED ANDERSON;
WILLIAM V. CAMPBELL; MILLARD S.
DREXLER; ARTHUR D. LEVINSON;
JEROME P. YORK; APPLE COMPUTER,
INC.; GARETH C.C. CHANG; PETER
O. CRISP; LAWRENCE J. ELLISON; B.
JURGEN HINTZ; KATHERINE M.
HUDSON; DELANO E. LEWIS, JR.; A.
C. MARKKULA, JR.; EDGAR S.
WOLLARD, JR.,
    *Defendants-Appellees.*

No. 08-16488

D.C. No.
5:06-CV-05208-JF

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeremy D. Fogel, District Judge, Presiding

Argued and Submitted
October 7, 2009—San Francisco, California

Filed January 28, 2010

1725

Before: David R. Thompson and Sidney R. Thomas,
Circuit Judges, and Ann Aldrich,* District Judge.

Opinion by Judge Thompson

---

*The Honorable Ann Aldrich, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

### COUNSEL

Michael J. Barry, Grant & Eisenhoffer P.A., Wilmington, Delaware, for the plaintiff-appellant.

George A. Riley, O'Melveny & Myers, LLP., San Francisco, California, for the defendants.

### OPINION

THOMPSON: Senior Circuit Judge:

This litigation arises out of the issuance of an allegedly false and misleading proxy solicitation for a stock option plan. Plaintiff-appellant New York City Employees' Retirement System ("NYCERS") alleged that the false solicitation denied it its right to an informed shareholder vote and caused it to suffer economic loss through share dilution. The district court dismissed NYCERS' consolidated complaint. The court determined that: (1) NYCERS' claim was derivative, not direct, and (2) stock dilution, alone, did not establish economic loss.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's dismissal of NYCERS' consolidated complaint. NYCERS pled a direct injury, but failed to assert any cognizable economic loss.

NYCERS also appeals the district court's denial of leave to amend its consolidated complaint to reallege a claim that was asserted in the initial complaint, but which it omitted from the consolidated complaint. The district court, applying Federal Rule of Civil Procedure 15(a), concluded that no factors

weighed against further amendment, but nonetheless determined that by not realleging the claim in the consolidated complaint, NYCERS had "waived" it. We conclude that the district court erred in applying a "waiver" rule to the omitted claim, and, because the district court determined that leave to amend should otherwise be granted, a ruling not challenged in this appeal, we grant NYCERS leave to amend to reallege the omitted claim.

## BACKGROUND

NYCERS is a public pension fund that manages retirement assets for over 200,000 current and former employees of the City of New York. Apple Inc. is a California corporation based in Cupertino, California.

Plaintiffs Vogel and Mahoney, individual Apple shareholders, filed the original complaint in this action, alleging claims under §§ 10(b), 14(a), and 20(a) of the Securities Exchange Act ("SEA"). NYCERS was appointed lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") and filed a consolidated class action complaint against Apple and fourteen of its officers and directors. The consolidated complaint alleges: (1) direct class claims under §§ 14(a) and 20(a) of the SEA for a misleading 2005 proxy solicitation; and (2) a state law claim for breach of the fiduciary duty of candor for various proxy solicitations, Form 10-K annual reports, and registration statements. NYCERS bases its allegations on the backdating of stock options by Apple.[1]

---

[1] Apple compensates some employees by awarding stock options. "Backdating" of stock options involves granting an awardee a stock option that is dated on a date earlier than it is actually issued, usually at a date when the stock price was lower. This may benefit awardees, as the value of the option is the difference between the low option price and the current higher market price. *See United States v. Ruehle*, 583 F.3d 600, 602 n.1 (9th Cir. 2009).

Shortly before the complaint was filed, Apple initiated an investigation into past option practices. The results disclosed that 6,428 backdated options had been granted on forty-two days between 1997 and 2002. As a consequence, Apple restated its financial statements to reflect a pre-tax expense of $105 million.

According to NYCERS, Apple shareholders suffered injury through impairment of their right to a fully informed vote and substantial dilution of their shares. NYCERS asserts that, from 1996 to 2005, shareholders "unwittingly" authorized issuance of a total of 205 million shares, or 20% of Apple's stock. The consolidated complaint prays for rescission of the votes, compensatory damages for share dilution, an order for an accounting, a declaration of defendants' liability, and attorney fees and costs.

For the § 14(a) claim, NYCERS alleges three falsities in Apple's 2005 proxy solicitation. First, the solicitation states that Apple's compensation practices "align[ed]" the interests of employees and stockholders, because stock options would "have value . . . only if the Company's stock price increases." NYCERS alleges falsity because backdated options can have value even if Apple's stock price does not increase, thereby decoupling employee and shareholder interests. Second, the solicitation states that granted options "did not make up for the below market . . . cash compensation . . . paid to executive officers." NYCERS alleges misrepresentation because backdating can surreptitiously increase compensation. Third, the solicitation states that in March 2003, Steve Jobs, Apple's current Chairman and CEO, cancelled his outstanding options in exchange for ten million (split adjusted) shares of restricted stock. NYCERS alleges misrepresentation because some of the cancelled options were backdated, improperly providing Jobs with 630,000 extra shares valued at over $50 million. For its state law claim, NYCERS identifies a longer list of falsities in the various documents, notably, affirmations that options were priced at fair market value on the date of the grant.

On November 14, 2007, the district court dismissed the consolidated complaint with leave to amend solely to assert derivative claims. *Vogel v. Jobs*, No. C 06-5208 JF, 2007 WL 3461163, at *5 (N.D. Cal. Nov. 14, 2007). In rejecting the § 14(a) claim, the court stated that the consolidated complaint

failed to allege facts giving rise to a *direct* claim and, alternatively, failed to plead loss causation under the PSLRA. *Id.* at *2-5. Without a primary violation under § 14(a), NYCERS' § 20(a) control person claim failed. *Id.* at *5. Furthermore, the state law claims presumably failed because the § 14(a) analysis was based on an interpretation of state law. *Id.* at *2-5.

NYCERS sought leave to amend to assert, in part, a direct claim under § 10(b). The district court denied NYCERS leave to file such an amended complaint on the ground that NYCERS waived the § 10(b) claim by not alleging that claim in its consolidated complaint. *Vogel v. Jobs*, No. C 06-5208 JF, 2008 WL 2073935, at *2-4 (N.D. Cal. May 14, 2008). This appeal followed.

## DISCUSSION

### I. Disclosure Claims Under § 14(a) of the SEA and SEC Rule 14a-9

To state a claim under § 14(a) and Rule 14a-9, a plaintiff must establish that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007) (quotation marks omitted); *see also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000) (stating that such a plaintiff must also "demonstrate that the misstatement or omission was made with the requisite level of culpability and that it was an essential link in the accomplishment of the proposed transaction"). In addition, private plaintiffs must meet the heightened pleading standards of the PSLRA, as well as its loss causation requirement. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 165 (2008). On appeal, the parties dispute whether NYCERS states a claim

under § 14(a) that is both direct and adequately alleges loss causation.

We review *de novo* the district court's decision to grant a motion to dismiss. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008).

### A.   Nature of NYCERS' Claim

**[1]** A claim asserted under § 14(a) of the SEA may be brought either as a direct or a derivative claim. *J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964). The characterization of a claim as direct or derivative is governed by the law of the state of incorporation. *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000). In the present case, California law applies, but there appears to be no difference between Delaware and California law on this issue.

In 2004, the Delaware Supreme Court stated that an analysis of whether a claim is direct or derivative "must be based solely on the following questions: Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004). A plaintiff's classification of the suit is not binding. *Id.* To establish a direct action, "[t]he stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.* at 1039.

**[2]** In the pleadings, NYCERS alleges that Apple shareholders were deprived of the right to a fully informed vote. This claimed injury is independent of any injury to the corporation and implicates a duty of disclosure owed to shareholders. *See In re Tyson Foods, Inc.*, 919 A.2d 563, 601 (Del. Ch. 2007) ("Where a shareholder has been denied one of the most

critical rights he or she possesses—the right to a fully informed vote—the harm suffered is almost always an individual, not corporate, harm."); *Dieterich v. Harrer*, 857 A.2d 1017, 1029 (Del. Ch. 2004) ("Dieterich's disclosure allegations are direct claims, as they are based in rights secured to stockholders by various statutes."). Thus, under state law, NYCERS' claim for injury to its right to a fully informed vote is a direct claim. *See also In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006) ("[W]here it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct." (citing *In re Tri-Star Pictures, Inc., Litig.*, 634 A.2d 319, 330 n.12, 332 (Del. 1993))).[2] Because NYCERS' § 14(a) claim is direct, the district court erred in dismissing the consolidated complaint on the ground the claim was derivative and had to be pleaded as such.

## B.  Economic Loss

**[3]** Treating the claim as a direct claim under § 14(a) of the SEA and SEC Rule 14a-9, the private plaintiffs had to allege loss causation. *See Stoneridge*, 552 U.S. at 165 (discussing a claim under § 10(b) of the SEA, but explaining that the PSLRA "imposed . . . a loss causation requirement upon 'any private action' arising from the [SEA]" (quoting 15 U.S.C. § 78u-4(b))); *Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000) ("[L]oss causation . . . must be proven in the context of a private action under § 14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.") As codified, loss causation requires a showing that the defendant "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). To show loss causation, a plaintiff must prove

---

[2]The consolidated complaint might also be read to allege direct injury through dilution of Apple stock's economic value and voting power. However, because NYCERS states a direct claim based on the alleged injury to its right to a fully informed vote, we need not address this alternate theory of injury.

both economic loss and proximate causation. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). In well-pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm. *Grace*, 228 F.3d at 46.

NYCERS seeks to plead economic loss in the form of "dilution to the Section 14(a) Class's shareholder interests." In dismissing the claim, the district court noted that "dilution is not necessarily accompanied by economic loss." The court concluded that *Dura Pharmaceuticals* "bars any suit brought solely on the basis that a misrepresentation caused an inflated share price, and [NYCERS] alleges no more here." *Vogel v. Jobs*, 2007 WL 3461163, at *4.

In *Dura Pharmaceuticals*, the Supreme Court considered whether shareholders successfully pleaded economic loss by alleging they "paid artificially inflated prices for Dura['s] securities." 544 U.S. at 347 (alteration in original). The Court found the complaint "legally insufficient," because an " 'artificially inflated purchase price' is not itself a relevant economic loss." *Id.* at 347-48 (noting the complaint's failure to allege a subsequent drop in Dura's share price). The Court faulted the complaint for failing to "provide[ ] the defendants with notice of what the relevant economic loss might be or of what the causal connection might be between that loss and the misrepresentation." *Id.* at 347.

**[4]** Here, NYCERS alleges economic loss only in the form of dilution, and, as such, does not seek to rely directly on *Dura*.[3] Instead, NYCERS characterizes its claim as "rescissory in nature" and argues that *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970), grants courts broad authority to fashion equitable remedies for § 14(a) claims. However, NYCERS cannot

---

[3] Even if NYCERS were to allege a drop in Apple stock's price due to a disclosure of backdating, it is unclear whether NYCERS could successfully establish a causal connection between such a drop and any misrepresentation in a proxy solicitation.

use *Mills* to avoid pleading economic loss. The PSLRA does not differentiate between plaintiffs seeking legal and equitable remedies, and thus, without an allegation of economic loss, no remedy, equitable or otherwise, is available.

NYCERS next asserts that, even if *Dura* applies, *Dura* does not purport to establish a single method of proving loss causation. Indeed, in *Dura*, the Supreme Court noted that it "need not, and d[id] not, consider other proximate cause or loss-related questions." 544 U.S. at 346. Accordingly, courts have recognized other showings of loss causation. *See, e.g.*, *In re Cigna Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 350-54, 357 (E.D. Pa. 2006) (holding that *Dura* allows the "transaction-based methodology" for calculating economic loss which permits claims for losses without offsetting for profitable transactions). Nonetheless, *Dura* requires that the pleadings provide notice of what the relevant economic loss might be. Here, NYCERS states that dilution "reduces a shareholder's percentage of ownership." NYCERS elaborates, "This 20% transfer clearly has a highly significant economic consequence even though the Company's share price may not have moved in response to the transfer."

**[5]** NYCERS' dilution theory of economic loss is unsupported in caselaw, and as the district court recognized, economic loss does not necessarily accompany dilution, so such conclusory assertions of loss are insufficient. Thus, NYCERS fails to adequately plead economic loss, and the district court's dismissal on this ground was proper.

**II.  Leave to Amend**

Although we review a denial of leave to amend for abuse of discretion, *see Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 737 (9th Cir. 2008), a district court may abuse its discretion by erroneous application of the law, *see United States v. Sprague*, 135 F.3d 1301, 1304 (9th Cir. 1998).

In this case, the original complaint contained a § 10(b) claim, but NYCERS did not include that claim in the consolidated complaint. After dismissal of the consolidated complaint, but before entry of judgment, NYCERS sought leave to amend the consolidated complaint to reallege the § 10(b) claim. The district court, applying Federal Rule of Civil Procedure 15(a), concluded that no factors weighed against amendment. *Vogel v. Jobs*, 2008 WL 2073935, at *2-4 (considering undue delay, bad faith, undue prejudice, futility and previous amendments). Nonetheless, the district court denied leave to amend on the ground that NYCERS "waived" the § 10(b) claim by failing to include it in the consolidated complaint. *Id.* at *4.

The district court erred by relying on *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981), for the assertion that "a party's failure to reassert a claim may be deemed a waiver of that claim." In *London*, the plaintiff alleged a Title VII claim in her first amended complaint, but not in her second amended complaint. 644 F.2d at 814. After dismissal of the second amended complaint, the plaintiff appealed, seeking, in part, to challenge the dismissal of her Title VII claim. *Id.* This court stated, "It has long been the rule in this circuit that a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint." *Id.*

**[6]** On appeal, NYCERS correctly asserts that *London* actually stands for the proposition that the scope of appellate review is limited to the allegations in the most recently filed complaint. We have held that, "[i]f a plaintiff fails to include dismissed claims in an amended complaint, the plaintiff is deemed to have waived any error in the ruling dismissing the prior complaint." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997); *see also King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). We have never held, however, that a plaintiff who omits previously dismissed claims from an amended complaint waives his right to reallege these claims

in further amendments at the district court level. The district court's application of a waiver rule to the § 10(b) claim was an erroneous application of the law and, thus, an abuse of discretion.

Apple's arguments to the contrary do not alter this result. First, Apple's policy argument, advocating the efficient administration of justice, is not well-grounded, considering that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). Second, Apple incorrectly asserts that, in *King*, we approved a waiver rule at the district court level. In *King*, the plaintiffs elected not to reallege certain claims in their amended complaint. 814 F.2d at 567. The district court dismissed the amended complaint and ruled that the amended complaint "superseded" the original, precluding review of the omitted claims. *Id.* On appeal, no error was shown. *Id. King* is distinguishable from the present case because the *King* plaintiffs did not seek to amend, but merely sought to have the omitted claims considered by the district court.[4]

## CONCLUSION

**[7]** NYCERS fails to allege economic loss as required to state a direct claim under § 14(a). Thus, we affirm the district court's dismissal of that claim on this ground. However, the district court abused its discretion by relying on London in applying a waiver rule to NYCERS' omitted § 10(b) claim, and thus, NYCERS is granted leave to amend its consolidated complaint to reallege the omitted claim.

---

[4]Citing *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990), Apple contends that denial of leave to amend is appropriate on the alternate ground that the plaintiffs offered no proper explanation for the omission. We decline to consider this new contention Apple raises for the first time on appeal. *See Turnacliff v. Westly*, 546 F.3d 1113, 1120 (9th Cir. 2008).

1738      NEW YORK CITY EMPLOYEES' RETIREMENT v. JOBS

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for proceedings consistent with this opinion.

The parties shall bear their own costs for this appeal.