1   JAY W. EISENHOFER (*admitted pro hac vice*)
    MICHAEL J. BARRY (*admitted pro hac vice*)
2   GRANT & EISENHOFER P.A.
    Chase Manhattan Centre
3   1201 N. Market Street
    Wilmington, Delaware 19801
4   Telephone:    (302) 622-7000
5   Facsimile:    (302) 622-7100
    E-Mail:       jeisenhofer@gelaw.com
6                 mbarry@gelaw.com

7   *Attorneys for Lead Plaintiff New York City*
8   *Employees' Retirement System*

9

10

11

12                       **UNITED STATES DISTRICT COURT**
13                      **NORTHERN DISTRICT OF CALIFORNIA**
                             **SAN JOSE DIVISION**
14

15   IN RE APPLE INC. SECURITIES          CASE NO. C-06-05208-JF
     LITIGATION
16                                         CLASS ACTION

17

18                                         **LEAD PLAINTIFF'S NOTICE OF**
                                           **MOTION AND UNOPPOSED MOTION**
19                                         **FOR PRELIMINARY APPROVAL OF**
                                           **CLASS ACTION SETTLEMENT;**
20                                         **MEMORANDUM OF POINTS AND**
                                           **AUTHORITIES IN SUPPORT THEREOF**

21                                         Date:        October 7, 2010
22                                         Time:        9:00 a.m.
                                           Courtroom: 3, 5th Floor
23                                         Judge:       Hon. Jeremy Fogel

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. ii

I.    INTRODUCTION ...................................................................................................... 2

II.   STATEMENT OF FACTS ......................................................................................... 3

  A.    Background ....................................................................................................... 3

  B.    The Proposed Settlement ................................................................................. 5

      1.    The Settlement Fund .............................................................................. 5

      2.    Payments to Corporate Governance Programs ...................................... 6

      3.    Corporate Governance Reforms at Apple ............................................. 6

III.  ARGUMENT ............................................................................................................. 7

  A.    This Court Should Grant Preliminary Approval Of The Proposed
        Settlement ......................................................................................................... 7

      1.    Factors To Be Considered By The Court In The Preliminary
            Approval Of A Class Action Settlement ................................................ 7

          a)    The Settlement Was Vigorously Negotiated And Is
                Supported By Experienced Counsel ........................................ 10

          b)    The Substantial Benefit Obtained For The Class, Especially
                In Light Of Serious Risks Of Lesser Or No Recovery,
                Supports Approval Of The Settlement ..................................... 11

          c)    The Stage Of The Proceedings And Discovery Completed
                Support Approval Of The Settlement ....................................... 11

      2.    Proposed Notice To The Class Is Adequate ......................................... 12

  B.    The Proposed Class Meets The Prerequisites For Class Certification Under
        Rule 23(a) ...................................................................................................... 13

      1.    Numerosity ........................................................................................... 14

      2.    Commonality ......................................................................................... 15

      3.    Typicality .............................................................................................. 16

      4.    Adequacy .............................................................................................. 17

      5.    Common Questions Of Law Predominate And A Class Action Is
            The Superior Method Of Adjudication ................................................. 18

          a)    Common Questions Of Law And Fact Predominate ................ 19

　　　　　b)　　A Class Action Is Superior To Other  Available Methods
　　　　　　　　For Resolving This Controversy ..................................................... 20

IV.　　SCHEDULE OF SETTLEMENT EVENTS .................................................. 20

V.　　CONCLUSION ................................................................................................ 22

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

## <u>TABLE OF AUTHORITIES</u>

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ............................................................................14, 15, 16, 19

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................................10

*Browning v. Yahoo Inc.*,
    2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ........................................................................8

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .................................................................................................9

*Crossen v. CV Therapeutics*,
    2005 WL 1910928 (N.D. Cal. Aug. 10, 2005) ......................................................................16

*Dukes v. Wal-Mart, Inc.*,
    509 F.3d 1168 (9th Cir. 2007) ...............................................................................................17

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ......................................10

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) .................................................10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................................13, 15, 16, 19

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .................................................................................................17

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................................8

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)...................................................................................13

*In re Infineon Techs. AG Sec. Litig.*,
    266 F.R.D. 386 (N.D. Cal. Mar. 6, 2009) .........................................................................15, 16

*In re Juniper Networks Sec. Litig.*,
    264 F.R.D. 584 (N.D. Cal. 2009)................................................................................. *passim*

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009)......................................................................................17, 19

*Mendoza v. Tucson School Dist. No. 1*,
    623 F.2d 1338 (9th Cir. 1980) ...............................................................................................12

iii

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

*In re Micron Techs., Inc. Sec. Litig.*,
    247 F.R.D. 627 (D. Idaho 2007) ........................................................................20

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ..............................................................................8

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................8

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 1991529 (N.D. Cal. June 30, 2007) ....................................................13

*In re Portal Software Sec. Litig.*,
    2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) ....................................19

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..............................................................................12

*Santos v. Camacho*,
    2007 U.S. Dist. LEXIS 1668 (D. Guam Jan. 9, 2007) ........................................13

*Schaefer v. Overland Express Family of Funds*,
    169 F.R.D. 124 (S.D. Cal. 1996) ........................................................................17

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) ........................................................................15

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................10

*In re THQ Inc. Sec. Litig.*,
    2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002).................................14, 15, 17, 19

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................................9

*Utility Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ..............................................................................8

*In re UTStarcom Secs. Litig.*,
    2010 U.S. Dist. LEXIS 48122 (N.D. Cal. May 12, 2010) ................................18, 19

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ..............................................................................8

*In re VeriSign Inc. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ............................13, 14, 18

*Williams v. Costco Wholesale Corp.*,
    2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ....................................................8, 9

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

*In re Wireless Facilities, Inc. Sec. Litig.*,
 253 F.R.D. 630 (S.D. Cal. 2008) ...................................................................12, 16

*Yamner v. Boich*,
 1994 U.S. Dist. LEXIS 20849 (N.D. Cal. Sept. 15, 1994) .....................................16

## <u>S</u><u>TATUTES</u>

15 U.S.C. § 78u-4(a)(7) ................................................................................................12

15 U.S.C. § 78u-4(e) ......................................................................................................5

Private Securities Litigation Reform Act of 1995 ("PSLRA")....................................12

## <u>O</u><u>THER</u> <u>A</u><u>UTHORITIES</u>

Fed. R. Civ. P. 23 ................................................................................... *passim*

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................12

Fed. R. Civ. P. 23(e) ...........................................................................................1, 7, 8

H.R. Conf. Rep. No. 104-369 (1995)..........................................................................18

Manual for Complex Litigation, § 21.633 (4th ed. 2004)............................................14

Rule 14a-8 ......................................................................................................................6

1

## NOTICE OF MOTION AND MOTION

2   PLEASE TAKE NOTICE that on October 7, 2010, at 9:00 a.m., before the Honorable Jeremy

3   Fogel of the United States District Court for the Northern District of California, San Jose, California,

4   Lead Plaintiff The New York City Employees' Retirement System ("Lead Plaintiff") will and hereby

5   do move the Court for an order, pursuant to Fed. R. Civ. P. 23(e), preliminarily approving the

6   Settlement in the above-captioned action, preliminarily certifying the action as a class action for

7   settlement purposes, approving of the manner and form of notice to be sent to Class Members, and

8   scheduling a hearing for consideration of final approval of the Settlement.

9   This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in

10   Support Thereof, all pleadings and papers filed herein, arguments of counsel, and any other matters

11   properly before the Court.

12   ## STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

13   1.   Whether the Settlement of this action should be granted preliminary approval.

14       Lead Plaintiff's Answer:  Yes.

15   2.   Whether this action should be certified as a class action for settlement purposes.

16       Lead Plaintiff's Answer:  Yes.

17   3.   Whether the manner and form of notice to be sent to Class Members should be

18       approved.

19       Lead Plaintiff's Answer:  Yes.

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff, The New York City Employees' Retirement System ("NYCERS"), respectfully submits this Memorandum of Points and Authorities in support of their unopposed motion for preliminary approval of the Settlement in the above-captioned class action. Specifically, Lead Plaintiff moves this Court for entry of the [Proposed] Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Settlement Hearing ("Preliminary Approval Order"), submitted herewith. The proposed Preliminary Approval Order will, among other things: (i) grant preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement dated as of September 28, 2010 (the "Stipulation" or "Settlement")[1]; (ii) certify the Class for settlement purposes only[2]; (iii) approve the form and manner of giving notice of the proposed Settlement to the Class; and (iv) confirm the date for the Final Approval Hearing.

## I.    INTRODUCTION

The proposed Settlement provides for the payment of $14 million in cash (the "Settlement Fund") for the benefit of the Class, the adoption of certain corporate governance reforms and a total of $2.5 million in charitable donations to certain corporate governance programs in exchange for the dismissal of the litigation and a release of claims against Apple, the other defendants and other persons and entities.[3] The Settlement was reached only after extensive litigation and negotiations. Lead Plaintiff and Lead Counsel – based upon their evaluation of the facts and applicable law and their recognition of the substantial risk and expense of continued litigation – submit that the proposed Settlement is in the best interests of the Class, providing a meaningful recovery for the Class now. Accordingly, Lead Plaintiff respectfully moves for preliminary approval of the Settlement.

---

[1] All capitalized terms that are not defined herein are defined in the Stipulation, which is submitted herewith.

[2] The "Class" is defined as all purchasers of Apple common stock during the Class Period of August 24, 2001 through June 29, 2006, both dates inclusive. Excluded from the Class are Defendants, all current and former directors and officers of Apple, and all employees of Apple and/or its subsidiaries during the Class Period, as defined herein, and any family member, trust, company, entity, or affiliate controlled or owned by any of the excluded persons and entities referenced in this subsection.

[3] "Defendants" means Apple, Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, Williams V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York.

1   **II.    STATEMENT OF FACTS**

2       **A.    Background**

3           This is a securities fraud class action alleging violations of Sections 10(b) and 20(a) of the

4   Securities Exchange Act ("Exchange Act") based on misrepresentations and omissions of material

5   facts by Defendant Apple, the Officer Defendants (defined below) and certain members of Apple's

6   Board of Directors, relating to Defendants systemic and illegal backdating of stock options.  This

7   action was brought by Lead Plaintiff NYCERS and by Plaintiffs Martin Vogel and Kenneth Mahoney

8   (collectively, Plaintiffs) on behalf of themselves and other persons or entities who acquired securities

9   issued by Apple between and including August 24, 2001 and June 29, 2006 (the "Class Period").  As a

10  result of the defendants' wrongdoing, Plaintiffs and the other members of the putative Class

11  collectively lost hundreds of millions of dollars.

12          On August 24, 2006, plaintiffs Martin Vogel and Kenneth Mahoney filed a purported class

13  action in the U.S. District Court for the Northern District of California against Apple and certain of its

14  current or former officers and directors: Steven P. Jobs, Fred D. Anderson, Peter Oppenheimer,

15  William V. Campbell, Millard S. Drexler, Albert Gore, Jr., Arthur D. Levinson, and Jerome B. York.

16  The action was captioned *Vogel, et al. v. Jobs, et al.*, Case No. C-06-5208-JF, and alleged violations of

17  Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  This case

18  is referred to as "*Vogel I*."  On October 24, 2006, The New York City Employees' Retirement System

19  ("NYCERS") filed a Motion for Its Appointment as Lead Plaintiff and for Approval of Its Selection of

20  Counsel.   On January 19, 2007, the Court granted NYCERS's motion and appointed Grant &

21  Eisenhofer P.A. as lead counsel.

22          On March 23, 2007, NYCERS filed a consolidated class action complaint ("Consolidated

23  Complaint") against Apple and certain of its current or former officers and directors: Steven P. Jobs,

24  Fred D. Anderson, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, Jerome B. York,

25  Gareth C.C. Chang, Peter O. Crisp, Lawrence J. Ellison, B. Jurgen Hintz, Katherine M. Hudson,

26  Delano E. Lewis, A.C. Markkula, Jr., and Edgar S. Woolard, Jr.  The Consolidated Complaint alleged

27  violations of Sections 14(a) and 20(a) of the Exchange Act and breach of state law duties of disclosure.

28  NYCERS did not assert a claim under Section 10(b) of the Exchange Act.  On June 8, 2007, the

defendants moved to dismiss the Consolidated Complaint.  On November 14, 2007, the Court dismissed the Consolidated Complaint with leave to amend only as a derivative action.  On December 14, 2007, NYCERS filed a motion for leave to file a first amended consolidated class action complaint to assert claims under Sections 10(b) and 20(a) of the Exchange Act, as well as amended versions of the claims asserted in the Consolidated Complaint.  On May 14, 2008, the Court denied NYCERS's motion for leave to amend.  On June 12, 2008, the Court entered judgment in favor of the defendants and dismissed NYCERS's claims with prejudice.

On June 17, 2008, NYCERS filed a notice of appeal before the U.S. Court of Appeals for the Ninth Circuit.  On January 28, 2010, the Ninth Circuit affirmed the Court's dismissal of NYCERS's claims under Section 14(a) of the Exchange Act and state law.  The Ninth Circuit reversed the Court's May 14, 2008 order and granted NYCERS leave to amend its complaint to assert claims under Sections 10(b) and 20(a) of the Exchange Act.  On March 22, 2010, NYCERS filed a First Amended Consolidated Class Action Complaint against Apple and certain of its current or former officers and directors: Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York.  NYCERS's amended complaint alleged violations of Sections 10(b) and 20(a) of the Exchange Act.

On June 27, 2008, plaintiffs Vogel and Mahoney filed another purported class action suit in the U.S. District Court for the Northern District of California against Apple and certain of its current or former officers and directors: Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York.  This action was captioned *Vogel, et al. v. Apple Inc., et al.*, Case No. C-08-3123-JF, and alleged violations of Sections 10(b) and 20(a) of the Exchange Act.  This action is referred to as "*Vogel II*."  On July 22, 2008, the Court stayed all proceedings in *Vogel II* pending the outcome of NYCERS's appeal before the Ninth Circuit in *Vogel I.*

On April 8, 2010, the Court entered an order consolidating *Vogel I* and *Vogel II*.  The Court designated NYCERS as the Lead Plaintiff and Grant & Eisenhofer P.A. as Lead Counsel for the consolidated action.  On May 14, 2010, Plaintiffs filed a Corrected First Amended Consolidated Class Action Complaint ("FACC") against Apple and certain of its current or former officers and directors:

Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York.[4]  The action is captioned *In re Apple Inc. Securities Litigation*, Case No. C-06-5208-JF, and alleges violations of Sections 10(b) and 20(a) of the Exchange Act. Defendants' response to the FACC is due on August 13, 2010.  The Court has not previously certified any class in the Action.

On May 19 and 20, 2010, Lead Plaintiff and Defendants participated in a mediation session with Jonathan Marks in New York.  After considerable negotiations, the Settling Parties reached an agreement to settle the action.

### B.    The Proposed Settlement

The proposed settlement has three main components:  (1) a payment of $14 million for distribution to a class of Apple shareholders; (2) a total payment of $2.5 million allocated evenly among corporate governance programs at twelve different universities located throughout the country; and (3) the implementation of significant corporate governance reforms at Apple.  By our calculations, the economic value of this settlement exceeds $20.8 million.

### 1.    The Settlement Fund

Apple has agreed to make a payment of $14 million into a fund to be distributed among the Class of Apple shareholders who purchased Apple common stock prior to June 29, 2006, when Apple first disclosed "irregularities" in the manner in which it had accounted for stock options.  The PSLRA precludes any claim by shareholders who purchased securities at prices lower than the average trading price of the relevant stock over the 90-days following the end of the class period.  *See* 15 U.S.C. § 78u-4(e).  Here, the average trading price of Apple common stock in the 90-days following June 29, 2006 was $65.71.  *See Bloomberg*.  In the three years preceding August 24, 2006, when this action originally was commenced, Apple common stock traded at prices in excess of $65.71 per share on a total of 96 days.  *Id*.  The proposed class that would be eligible for distributions from this fund would consist of shareholders who purchased Apple common stock on one of these days at a price in excess of $65.71.

---

[4]  Mr. York died on March 18, 2010.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

In addition, Apple agreed to pay all costs of administering the settlement funds and any award of attorneys fees separately, so as not to reduce the total fund to be distributed to the Company's shareholders.

## 2.    Payments to Corporate Governance Programs

Apple agreed to make payments totaling $2.5 million to corporate governance programs at educational institutions as identified by Lead Plaintiff, subject to Apple's approval.  After conducting a review of corporate governance programs nationally, and considering both public and private institutions, Lead Plaintiff suggested the following institutions, which are acceptable Apple:

| | |
|---|---|
| Baruch College, City University of New York<br>Robert Zicklin Center for Corporate Integrity | San Diego State University<br>Corporate Governance Institute |
| Columbia Law School<br>Center on Corporate Governance | Stanford Law School and the Graduate School of<br>Business, Rock Center for Corporate Governance |
| Harvard Law School[5] Forum on Corporate Governance<br>and Financial Regulation | University of Delaware[5]<br>Weinberg Center for Corporate Governance |
| Indiana University, Kelly School of Business<br>Institute for Corporate Governance | University of Texas, Dallas School of Management<br>Institute for Excellence in Corporate Governance |
| Kennesaw State University College of Business<br>Corporate Governance Center | Vanderbilt University Law School<br>Law & Business Program |
| Northwestern University, Kellogg School of<br>Management Corporate Governance Program | Yale School of Management,<br>Millstein Center for Corporate Governance and<br>Performance |

If the settlement is approved, each of the foregoing institutions will receive a donation of approximately $208,333.33.

## 3.    Corporate Governance Reforms at Apple

As part of the proposed settlement, Apple has agreed to implement various reforms in its corporate governance programs that provide material benefits to the Company's shareholders.  First, Apple has agreed to amend its bylaws to make clear that shareholders may submit proposals under SEC Rule 14a-8 without complying with the Company's "advance notice" requirements, which otherwise restrict matters that may be brought for consideration by shareholders at the Company's annual

---

[5]   Jay Eisenhofer, counsel for Lead Plaintiff, serves in an uncompensated capacity on the boards of advisors for the corporate governance programs at the Harvard Law School and the University of Delaware.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

meetings.  Second, Apple has agreed to amend the Charter for the Compensation Committee of the Company's Board of Directors to specifically require the directors on that committee to consider the appropriate of implementing clawback provisions for executive compensation grants.  Third, Apple has agreed to amend its insider trading policy to provide enhanced compliance requirements that extends blackout trading periods, requires mandatory pre-clearance of trades by Section 16 officers and directors, and places restrictions of 10b-1 trading plans that may be adopted by such Section 16 officers and directors.

Finally, as part of a settlement entered into by the Company in 2008 in an action captioned *In re Apple, Inc. Derivative Litigation* and docketed at No. C-06-04128-JF, Apple agreed to implement the following reforms:

    a.    Adoption of an Equity Award Grant Practices Policy;

    b.    Establishment of a Trading Compliance Committee;

    c.    Adoption of certain amendments to the charter of the company's Compensation Committee;

    d.    Amendment of Apple's Corporate Governance Guidelines to provide that at least one member of the Compensation Committee will not simultaneously serve on the Audit and Finance Committee;

    e.    Adoption of a Corporate Minutes Procedure;

    f.    Adoption of a procedure governing actions by written consent by the Company's Board of Directors; and

    g.    Implementation of a training program relating to stock options.

Under the proposed settlement, Apple has agreed that these reforms will remain effective through at least the end of the Company's 2012 fiscal year.

## III.   ARGUMENT

### A.   This Court Should Grant Preliminary Approval Of The Proposed Settlement

#### 1.   Factors To Be Considered By The Court In The Preliminary Approval Of A Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis.  When a proposed settlement precedes class certification, the court must examine the propriety of the certification and the fairness of the settlement contemporaneously in

7

conjunction with preliminary approval.[6]  "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Browning v. Yahoo Inc.,* No. C04-01463 HRL, 2007 WL 4105971, at *13 (N.D. Cal. Nov. 16, 2007) ("public and judicial policies strongly favor settlement of class action suits").

Accordingly, "in making its assessment pursuant to Rule 23(e), the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Heritage Bond*, 2005 WL 1594403, at *2 (quoting *Officers for Justice*, 688 F.2d at 625).  Recognizing that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation," courts favor approval of the settlement rather than continuation of the litigation.  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

At the preliminary approval stage, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible [judicial] approval."  *Williams*, 2010 WL 761122, at *6.  In considering whether to grant preliminary approval of a class action settlement, courts make a preliminary evaluation of the fairness of the settlement prior to issuing notice to the class and prior to holding a final approval hearing.  If the proposed settlement falls within the range of what could be found "fair, adequate and reasonable," preliminary approval is

---

[6] *Williams v. Costco Wholesale Corp.*, No. O2cv2003 IEG (AJB), 2010 WL 761122, at *2 (S.D. Cal. Mar. 4, 2010) (preliminary approval order) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

appropriate, notice may be given to the proposed class and a hearing for final approval can be scheduled.  *See id*.; *Class Plaintiffs*, 955 F.2d at 1276.  "Given that some . . . factors cannot be fully assessed until the Court conducts the Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'"  *Williams*, 2010 WL 761122, at *5.

At this point, the Court need not answer the ultimate question:  whether the Settlement is fair, reasonable and adequate.  When the Court makes this ultimate determination at a later point, the Court will be asked to review the following factors:  the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; and the reaction of Class Members to the proposed settlement.  *Id.; see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) (citing *Officers for Justice*, 688 F. 2d at 625).

The Settling Parties here request only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement.  The proposed Settlement, which provides $14 million in cash for distribution to eligible Class Members, the adoption of certain corporate governance reforms discussed above, and a total of $2.5 million in charitable donations to certain corporate governance programs at twelve different universities located throughout the country is unquestionably beneficial to the Class.  Given the complexities of this action and the continued risks if the parties were to proceed, the Settlement represents a reasonable resolution and eliminates the risk that the Class might recover less or nothing at all.

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, Lead Plaintiff, through the Claims Administrator, will notify Class Members of the Settlement by mailing the Notice and Claim Form to Class Members (*see* A-1 and A-2 to the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation).  Additionally, Lead Counsel will cause to be published the Summary Notice (Exhibit A-3) pursuant to the terms of the Preliminary Approval Order.  The Notice advises Class Members of the essential terms of the Settlement.  The Notice also sets forth the procedure for objecting to the Settlement, Plan of Allocation or the request for an award of attorneys' fees and reimbursement of litigation expenses; sets out the procedure for

opting out of the Class; and provides specifics on the date, time, and place of the Final Approval Hearing.   The proposed Preliminary Approval Order further requires Lead Plaintiff to cause the Summary Notice to be published once in *The Investor's Business Daily,* a widely-disseminated national investors' news publication, and transmitted over *Business Wire*.  Lead Counsel believe that, because the Notice and Summary Notice fairly apprise Class Members of their rights with respect to the Settlement, they represent the best notice practicable under the circumstances and should be approved by the Court.

As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, a preview of the factors considered by courts in granting final approval of class action settlements demonstrates that this Settlement is well within the range of possible approval.

a)      **The Settlement Was Vigorously Negotiated**
**And Is Supported By Experienced Counsel**

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arm's-length negotiations is entitled to considerable weight.[7]  Here, the parties have been actively litigating this case for over four years since its commencement in 2006.  Lead Counsel conducted a sophisticated and extensive investigation into the claims asserted in the Complaint, including but not limited to review of public documents and consultation with experts.  Thus, by the time settlement discussions began, Lead Counsel had a solid understanding of the strengths and weaknesses of the claims, both factually and legally, and were able to engage in a rigorous negotiation process with Defendants.   A "proposed settlement [that] appears to be the product of serious, informed, non-collusive negotiations" should be given effect.[8]

---

[7] *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,* MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement).

[8] *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ("As noted in the Manual for Complex Litigation, Second, '[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

10

1    Additionally, throughout the litigation and settlement negotiations, Defendants have been

2 represented by experienced counsel from prominent law firms.  Counsel for Defendants were equally

3 well-informed regarding the case, and their representation of the Defendants was no less rigorous than

4 Lead Counsel's representation of the Class.

5    As a result, the parties' settlement negotiations were hard-fought.  The negotiations required a

6 formal two day mediation session – conducted under the direction of Jonathan Marks, a well-regarded

7 mediator with extensive experience in the mediation of complex actions.  *See curriculum vitae* of

8 Jonathan Marks attached hereto as **Exhibit A**.  With this background, there is no doubt that the

9 Settlement was reached without collusion and after good-faith bargaining among the parties, and this

10 factor supports a finding that the Settlement is fair, adequate, and reasonable for purposes of

11 preliminary approval.

12              **b)     The Substantial Benefit Obtained For The Class,
                      Especially In Light Of Serious Risks Of Lesser Or**
13                    **No Recovery, Supports Approval Of The Settlement**

14    As set forth above, the Settlement provides for the recovery of $14 million in cash to be

15 allocated among Class Members, the adoption of certain corporate governance reforms and a total of

16 $2.5 million in charitable donations to certain corporate governance programs.  If the action had

17 continued, Lead Plaintiff faced substantial risks, including establishing Defendants' liability and the

18 full amount of the Class' damages at summary judgment or trial.  In addition, litigating this complex

19 securities fraud class action to completion would result in significant expense and delay.  This

20 recovery, obtained in the face of the risk of a lesser recovery or no recovery at all, supports approval of

21 the Settlement.

22              **c)     The Stage Of The Proceedings And Discovery
                      Completed Support Approval Of The Settlement**
23

24    The stage of proceedings and discovery completed are additional factors supporting the

25 Settlement.   Here, Lead Counsel advanced the case through the drafting of the consolidated

26 Complaint, opposing Defendants' motions to dismiss, an appeal before the Ninth Circuit, consultation

27 preferential treatment to class representatives or segments of the class, and falls within the range of

28 possible approval, then the court should direct that the notice be given to the class members of a
formal fairness hearing . . . .'") (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

with experts, and preparation and participation in mediation before an experienced mediator.   In addition, Lead Counsel conducted a thorough investigation of the facts and claims of this case, including review and analysis of the Company's SEC filings, annual reports, and other public statements.   Consequently, at the time the parties agreed to the Settlement, Lead Counsel had a firm understanding of the strengths and weaknesses of the claims.

### 2.        Proposed Notice To The Class Is Adequate

Notice of a proposed settlement must be given to class members in the most practicable manner under the circumstances, describing "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."   *Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980); *see also* Fed. R. Civ. P. 23(c)(2)(B).   In addition, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), "every settlement notice must include a statement explaining a plaintiff's recovery."   *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008) (citing *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007)).

The proposed Notice to the Class (Exhibit A-1) more than satisfies this standard.   The proposed Notice informs the Class of:  (1) the amount of the Settlement – $14 million to be allocated to the members of the Class, the adoption of certain corporate governance reforms by Apple, and $2.5 million in charitable donations to certain corporate governance programs; (2) the reasons why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the attorneys' fees and expenses sought; (5) the name, telephone number, and address of representatives of Lead Counsel who will be reasonably available to answer questions from Class Members concerning matters contained in the Notice; (6) the right of Class Members to object to the Settlement or seek exclusion from the Class; and (7) the dates and deadlines for certain Settlement-related events.   15 U.S.C. § 78u-4(a)(7).

Here, the proposed Notice is adequate and complies with due process, Fed. R. Civ. P. 23, and the PSLRA.[9]   If the Court grants preliminary approval of the Settlement, the Notice will be mailed to

---

[9] *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) ("Notice is satisfactory if it

all Class Members who appear on the transfer records of Apple as having transferred to their names Apple common stock during the time period between August 24, 2001 through June 29, 2006, inclusive (the "Class Period").

Further, Lead Counsel, through the Claims Administrator, will use reasonable efforts to give notice to nominee holders such as brokerage firms and other persons or entities who purchased and/or acquired Apple common stock during the Class Period as record owners but not as beneficial owners.

Courts routinely find that comparable notice procedures meet the requirements of due process, Fed. R. Civ. P. 23, and the PSLRA.[10]

## B. The Proposed Class Meets The Prerequisites For Class Certification Under Rule 23(a)

The Settling Parties have stipulated that the Court may, for settlement purposes only, certify a Class. Stipulation ¶4.1. The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

"Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants." *In re VeriSign Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438, at *31-32 (N.D. Cal. Jan. 13, 2005). Accordingly, courts liberally

---

'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'") (citations omitted); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007) (notice providing description of the nature of the action and issues involved in the litigation, concise and clear statement of definition of the class that was certified, procedure for requesting appearance at the settlement hearing, procedure for exclusion from the class, binding effect of the class judgment and deadline for filing objections approved).

[10] *See, e.g., In re Portal Software, Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (dissemination of notice to all reasonably identifiable class members with summary notice published in *Investor's Business Daily* approved as best practical) (citing Manual for Complex Litigation (4th ed. 2004) § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort")); *Santos v. Camacho*, No. 04-00006, 2007 U.S. Dist. LEXIS 1668, at *24-25 (D. Guam Jan. 9, 2007) (notice approved where each class member would be mailed a notice and notice would also be published, and where the proposed notice adequately described the facts of the case, the members of the class, the settlement terms, information regarding attorney fees, information on how class members could object to the settlement, and contact information for class counsel and defense counsel).

1   construe the requirements of Rule 23 in favor of certification for class action cases brought under the

2   federal securities laws.  *In re THQ Inc. Sec. Litig.,* No. CV 00-1783 AHM (Ex), 2002 U.S. Dist.

3   LEXIS 7753, at *8 (C.D. Cal. Mar. 22, 2002).

4         Fed. R. Civ. P. 23(a) sets forth four prerequisites to class certification applicable to all class

5   actions, including classes for the purpose of settlement: (1) numerosity; (2) commonality; (3)

6   typicality; and (4) adequacy of representation.  In addition, the class must meet one of the three

7   requirements of Rule 23(b).  Fed. R. Civ. P. 23; *see also* Manual for Complex Litigation, § 21.633 (4th

8   ed. 2004).

9         Here, the proposed Class is defined in the Stipulation as follows:

10      all purchasers of Apple common stock during the Class Period.  Excluded from the Class
     are Defendants, all current and former directors and officers of Apple, and all employees

11      of Apple and/or its subsidiaries during the Class Period, as defined herein, and any family
     member, trust, company, entity, or affiliate controlled or owned by any of the excluded

12      persons and entities referenced in this subsection.

13  Generally, courts have found securities claims to be particularly well-suited for class action status

14  because they allow for enforcement of the policies behind the securities laws in circumstances where

15  there are numerous investors with small individual claims that otherwise would effectively be barred

16  from litigation.  *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 902-04 (9th Cir. 1975).  This action is no

17  exception, and as explained below, the Settling Parties agree that, for purpose of the Settlement, the

18  Class should be certified as satisfying each of the requirements set forth above.

19        **1.**    <u>**Numerosity**</u>

20        Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

21  "impracticable."  For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible, only that

22  it would be difficult or inconvenient to join all members of the class."  *In re Juniper Networks Sec.*

23  *Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329

24  F.2d 909, 913-14 (9th Cir. 1964)).  "Numerosity does not presume a strict numerical cut-off.  Courts

25  have certified classes whose membership sizes range from less than one hundred to over one hundred

26  thousand."  *VeriSign,* 2005 U.S. Dist. LEXIS 10438, at *12.  "In cases involving securities traded on

27  national stock exchanges, numerosity is practically a given."  *Id.*; *see also Juniper*, 264 F.R.D. at 588

28  ("Some courts have assumed that the numerosity requirement is met in securities fraud suits involving

1   nationally traded stocks.").  Mathematical computation of class size is not a prerequisite for class

2   certification, and the court may use common sense assumptions to support a finding of numerosity

3   when the class is obviously large.  *See Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985)

4   ("A failure to state the exact number in the proposed class does not defeat class certification.").

5          Here, Lead Plaintiff estimates that the number of record holders of Apple common stock

6   throughout the Class Period number in the tens of thousands.  During the Class Period, Apple's

7   average *daily* trading volume was 17.5 million shares.  Given the number and geographic distribution

8   of the Apple Class members, joinder of all Class members would be impracticable, and the proposed

9   Class easily satisfies Rule 23's numerosity requirement.  *See Juniper,* 264 F.R.D. at 588 (numerosity

10  met where weekly volume of trading was over 50 million shares); *In re Infineon Techs. AG Sec. Litig.,*

11  266 F.R.D. 386, 393 (N.D. Cal. Mar. 6, 2009) (finding numerosity where the weekly volume of

12  trading "was frequently in the millions" and the class was presumed to have potentially thousands of

13  members).

14                    2.      **Commonality**

15         Fulfillment of Rule 23(a)(2) requires only the existence of "questions of fact and law which are

16  common to the class."  The Ninth Circuit construes this requirement "permissively."  *Hanlon*, 150

17  F.3d at 1019.  Thus, "[a]ll questions of fact and law need not be common to satisfy the rule."  *Id*.

18  Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a

19  common core of salient facts coupled with disparate legal remedies within the class."  *Id.*; *see also*

20  *THQ*, 2002 U.S. Dist. LEXIS 7753, at *11 (noting that courts have found that a single issue common

21  to the proposed class satisfies Rule 23(a)(2)).

22         As the Ninth Circuit explained in *Blackie*:

23         The overwhelming weight of authority holds that repeated misrepresentations of the sort
           alleged here satisfy the "common question" requirement. Confronted with a class of
24         purchasers allegedly defrauded over a period of time by similar misrepresentations,
           courts have taken the common sense approach that the class is united by a common
25         interest in determining whether a defendant's course of conduct is in its broad outlines
           actionable, which is not defeated by slight differences in class members' positions, and
26         that the issue may profitably be tried in one suit.

27  524 F.2d at 902 (citations omitted).

28

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

"Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)." *Juniper*, 264 F.R.D. at 588.

Here, the Complaint describes a "common course of conduct" which demonstrates commonality for class certification purposes. All Class members who purchased Apple common stock were allegedly injured by Defendants' material misrepresentations and omissions, which artificially inflated the market price of Apple's common stock. The questions of law and fact common to all Class members include:

i)   whether the federal securities laws were violated by Defendants' acts and omissions as alleged in the Complaint;

ii)  whether Defendants participated in and pursued the common course of conduct and fraudulent scheme as alleged in the Complaint;

iii) whether Defendants acted with scienter;

iv)  whether the price of Apple common stock was artificially inflated during the Class Period;

v)   whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, financial performance, and management of Apple; and

vi)  to what extent the members of the Class have sustained damages and the proper measure of damages.

Courts have consistently certified classes in securities fraud cases involving similar common questions. *See, e.g., Blackie*, 524 F.2d at 902-05; *Juniper*, 264 F.R.D. at 590; *Infineon*, 266 F.R.D. at 393; *Yamner v. Boich*, No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *9 (N.D. Cal. Sept. 15, 1994) ("These are the standard questions upon which federal courts have based the grant of class certification in numerous securities actions."). In light of these questions of law and fact common to all members of the Class, Rule 23(a)(2) is easily satisfied here. *See In re Wireless*, 253 F.R.D. at 635 (finding "core issue" in a securities litigation to be plaintiffs' "acquisition of [defendant's] common stock at artificially inflated prices").

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representatives parties are typical of the claims or defenses of the class." *Juniper,* 264 F.R.D. at 588. Typicality does not require that all members of the Class be *identically* situated. *See Hanlon*, 150 F.3d at 1020. "The Ninth Circuit has

16

held that typical claims need only be 'reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 WL 1910928, at *4 (N.D. Cal. Aug. 10, 2005) (quoting *Hanlon,* 150 F.3d at 1020). Like commonality, typicality is interpreted permissively. *Juniper*, 264 F.R.D. at 589.   Consequently, differences in the amount of damages, the size or manner of purchase or holding, and the nature of the purchase or holding are insufficient to defeat class certification. *See In re LDK Solar Sec. Litig.,* 255 F.R.D. 519, 530 (N.D. Cal. 2009) (certifying the class and holding that "potential complications regarding the computation of damages" do not defeat class certification); *THQ*, 2002 U.S. Dist. LEXIS 7753, at *12 ("In the securities context, the fact that the class representatives may have reviewed different documents from other members of the class or purchased different amounts of stock does not mean their claims are not typical of the class."); *Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 129 (S.D. Cal. 1996) ("differences in the amount of damages, the size or manner of purchase, the nature of the purchase, and even the specific document influencing the purchase will not render a claim atypical in most securities cases").

Here, the Lead Plaintiff and the members of the Class seek to recover damages for losses caused by the same alleged course of conduct by Defendants – dissemination to the investing public of materially false and misleading statements.   The claims of the Class and the Lead Plaintiff are co-extensive and the same proof is needed to establish the claims which arise out of the same wrongful course of conduct.   The alignment of the Lead Plaintiff's interests with those of the Class constitutes fulfillment of the purpose of the typicality requirement. *See Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

### 4.   Adequacy

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In the Ninth Circuit, the adequacy requirement is met if plaintiffs: (1) "do not have conflicts of interest with the proposed class"; and (2) "are represented by qualified and competent counsel." *Dukes v. Wal-Mart, Inc*., 509 F.3d 1168, 1185 (9th Cir. 2007) (citing *Hanlon*, 150 F.3d at 1020); *see also LDK Solar*, 255 F.R.D. at 532.   Here, the requirements for adequacy are satisfied.

Lead Plaintiff's interests are co-extensive with the Class Members – no conflict exists.  Lead Plaintiff sustained losses as a result of the same alleged material misrepresentations and omissions whereby the Class was allegedly injured.  *See VeriSign*, 2005 U.S. Dist. LEXIS 10438, at *29 (finding adequacy where lead plaintiffs' claims and the unnamed class members' claims do not conflict because they all arise out of the same set of facts); *See In re UTStarcom Secs. Litig.*, No. C 04-04908 JW, 2010 U.S. Dist. LEXIS 48122, at *28, 31 (N.D. Cal. May 12, 2010) (finding adequacy requirement met where the interests of the class representative are co-extensive with the class because they bring identical claims under federal securities laws).

Lead Plaintiff has been actively engaged in this Action, including supervising the progress of the litigation and responding to Defendants' motions.  Lead Plaintiff is precisely the type of institutional investor Congress sought to empower when passing the PSLRA.  Congress enacted the PSLRA in large part to encourage sophisticated institutional investors, like Lead Plaintiff, to take control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel."  H.R. Conf. Rep. No. 104-369, at 32 (1995).

Lead Plaintiff retained skilled and experienced counsel.  There can be no doubt that Lead Counsel are qualified and capable of prosecuting this action.  Lead Counsel Grant & Eisenhofer P.A. has a proven track record of success in complex cases such as this one.  Importantly, Lead Plaintiff, as proposed Class Representatives, understands that it owes a fiduciary duty to all Class Members to provide fair and adequate representation and to continue to work actively with Lead Counsel in order to obtain the largest recovery for the Class consistent with good faith and meritorious advocacy.  Lead Plaintiff has fulfilled the Rule 23(a)(4) adequacy requirement.

**5.     Common Questions Of Law Predominate And A
       Class Action Is The Superior Method Of Adjudication**

Here, Lead Plaintiff proposes certification pursuant to Rule 23(b)(3), requiring that in addition to meeting the prerequisites of Rule 23(a), Lead Plaintiff must demonstrate that: (1) common questions of law or fact predominate over individual questions; and (2) a class action is superior to other

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

1   available methods of adjudication.  *Juniper,* 264 F.R.D. at 590 (citing *Zinser v. Accufix Research Inst.,*

2   *Inc.*, 253 F.3d 1180, 1188-89 (9th Cir. 2001)).  As discussed below, common questions of law and fact

3   predominate in this case, and a class action is the superior method to fairly and efficiently litigate this

4   securities action.

5                                    a)      <u>**Common Questions Of Law And Fact Predominate**</u>

6              Here, the Complaint alleges a "common course of conduct" of misrepresentations, omissions

7   and other wrongdoings that affect all members of the Class in the same manner, demonstrating

8   common questions predominate.  *See Blackie*, 524 F.2d at 902-03.  "[T]he predominance requirement

9   of Rule 23(b)(3) is readily met in securities-fraud class actions."  *In re UTStarcom Secs. Litig.*, 2010

10  U.S. Dist. LEXIS 48122, at *30 (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)); *THQ*,

11  2002 U.S. Dist. LEXIS 7753, at *30 ("Plaintiffs' claim – which is based on a series of

12  misrepresentations and market manipulations – clearly satisfies the requirement that common

13  questions predominate over those affecting individual members.").  "When common questions present

14  a significant aspect of the case and they can be resolved for all members of the class in a single

15  adjudication, there is clear justification for handling the dispute on a representative rather than on an

16  individual basis."  *Hanlon*, 150 F.3d at 1022 (citing 7A Charles Alan Wright, Arthur R. Miller and

17  Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986));  *see also LDK Solar*, 255

18  F.R.D. at 530; *In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 51794,

19  at *13 (N.D. Cal. June 30, 2007) (granting motion for class certification where "[t]he predominant

20  questions of law or fact at issue in this case are the alleged misrepresentation [D]efendants made

21  during the [C]lass [P]eriod and are common to the class").

22             Rule 23(b)(3) does not require commonality of all questions of fact or law, but merely

23  predominance.  The critical issues of fact and law raised which predominate in this Action are

24  common to all members of the Class – all regarding alleged false statements disseminated by

25  Defendants that damaged all Class Members.  There are no significant – let alone predominant –

26  individual issues to preclude class certification.

27

28

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

1

2

**b)      A Class Action Is Superior To Other**
**Available Methods For Resolving This Controversy**

3

Rule 23(b)(3) also requires that class resolution be "superior to other available methods for

4   fairly and efficiently adjudicating the controversy."  If Lead Plaintiff and each of the Class Members

5   were to bring individual actions, each would be required to prove the same wrongdoing by Defendants

6   to establish liability.  *See In re Micron Techs., Inc. Sec. Litig.*, 247 F.R.D. 627, 635 (D. Idaho 2007)

7   ("If this action was not certified as a class, each plaintiff would have to establish the same fraudulent

8   scheme.  This repetitive process would 'unnecessarily burden the judiciary.'").  In sum, class

9   certification promotes judicial efficiency by permitting common claims and issues to be tried only

10   once with a binding effect on all parties.  *See, e.g., Juniper,* 264 F.R.D. at 592 ("Where thousands of

11   identical complaints would have to be filed, it is superior to concentrate claims through a class action

12   in a single forum.").  The superiority requirement is met here.

13   In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied.  Thus, there

14   are no issues which would prevent the Court from certifying the Class for settlement purposes.

15   **IV.    SCHEDULE OF SETTLEMENT EVENTS**

16   Lead Plaintiff proposes the schedule set forth below for the Settlement-related events in this

17   case.  The proposed dates in the right column are respectfully requested assuming that preliminary

18   approval is granted on or about October 7, 2010.

19

20

| Event | Proposed Due Date | Date/Deadline |
|---|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class Members[11] ("Notice Date") | 14 business days after entry of Preliminary Approval Order | October 29, 2010 |
| Deadline for publishing Summary Notice[12] | 10 business days after Notice Date | October 28, 2010 |

21

22

23

24

25

26

27   [11]  *See* Exhibits A-1 and A-2 to the Preliminary Approval Order (Exhibit A to the Stipulation).

28   [12]  *See* Exhibit A-3 to the Preliminary Approval Order (Exhibit A to the Stipulation).

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

| Event | Proposed Due Date | Date/Deadline |
|---|---|---|
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 24 business days prior to Settlement Fairness Hearing | December 2, 2010 |
| Deadline for submitting exclusion requests or objections | 14 business days prior to Settlement Fairness Hearing | December 16, 2010 |
| Deadline for filing reply papers | 14 calendar days prior to the Settlement Fairness Hearing | December 23, 2010 |
| Settlement Fairness Hearing | 91 calendar days after filing of Settlement | January 7, 2011 9:00 a.m., per the Court's October 7, 2010 Order |
| Deadline for submitting claim forms | 93 calendar days after the Notice Date | January 31, 2011 |

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF

1   **V.      CONCLUSION**

2          Based on the foregoing, Lead Plaintiff respectfully moves this Court to enter the [Proposed]

3   Preliminary Approval Order submitted herewith.

4                                          Respectfully submitted,

5

6   Dated:  September 28, 2010              JAY W. EISENHOFER

7                                          MICHAEL J. BARRY
                                           GRANT & EISENHOFER P.A.

8

9                                               */s/   Michael J. Barry*

10                                              MICHAEL J. BARRY

11

12                                         *Attorneys for Lead Plaintiff* THE NEW YORK CITY
                                           EMPLOYEES' RETIREMENT SYSTEM

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT
CASE NO. C-06-05208-JF