Exhibit 1

1   GEORGE A. RILEY (State Bar No. 118304)
    O'MELVENY & MYERS LLP
2   Two Embarcadero Center
    28th Floor
3   San Francisco, California  94111-3828
    Telephone:   (415) 984-8700
4   Facsimile:   (415) 984-8701
    E-Mail:       griley@omm.com
5   Attorneys for Defendant APPLE INC.

6   JAY W. EISENHOFER (*admitted pro hac vice*)
    MICHAEL J. BARRY (*admitted pro hac vice*)
7   GRANT & EISENHOFER P.A.
    Chase Manhattan Centre
8   1201 N. Market Street
    Wilmington, Delaware 19801
9   Telephone:   (302) 622-7000
    Facsimile:   (302) 622-7100
10  E-Mail:       jeisenhofer@gelaw.com
                  mbarry@gelaw.com
11  Attorneys for Lead Plaintiff THE NEW YORK CITY EMPLOYEES'
    RETIREMENT SYSTEM
12
    (Additional Counsel Listed on Signature Page)
13

14              **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16                   **SAN JOSE DIVISION**

17  IN RE APPLE INC. SECURITIES          Case No. C-06-5208-JF
    LITIGATION
18                                       CLASS ACTION

19  THIS DOCUMENTS RELATES TO:           **AMENDED STIPULATION AND**
    ALL ACTIONS                          **AGREEMENT OF SETTLEMENT**
20

21

22

23

24

25

26

27

28

## AMENDED STIPULATION AND AGREEMENT OF SETTLEMENT

This Amended Stipulation and Agreement of Settlement dated as of November 12, 2010 (the "Stipulation")[1] is made and entered into by and among the Court-appointed Lead Plaintiff, the New York City Employees' Retirement System ("NYCERS"), plaintiffs Martin Vogel and Kenneth Mahoney, and defendants Apple Inc., Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York,[2] by and through their respective counsel of record in the Action.[3]   The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof.

## I.   BACKGROUND

### A.   Procedural History

1.   *Vogel, et al. v. Jobs, et al.*, Case No. C-06-5208-JF ("*Vogel I*")

On August 24, 2006, plaintiffs Martin Vogel and Kenneth Mahoney filed a purported class action in the U.S. District Court for the Northern District of California against Apple and the following current or former officers and directors: Steven P. Jobs, Fred D. Anderson, Peter Oppenheimer, William V. Campbell, Millard S. Drexler, Albert Gore, Jr., Arthur D. Levinson, and Jerome B. York.   The action, captioned *Vogel, et al. v. Jobs, et al.*, Case No. C-06-5208-JF, alleged violations of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").   On October 24, 2006, NYCERS filed a Motion for Its Appointment as Lead Plaintiff and for Approval of Its Selection of Counsel.   On January 19, 2007, the Court granted NYCERS's motion and appointed Grant & Eisenhofer P.A. as lead counsel.

On March 23, 2007, NYCERS filed a consolidated class action complaint ("Consolidated Complaint") against Apple and the following current or former officers and directors: Steven P. Jobs, Fred D. Anderson, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, Jerome B. York, Gareth C.C. Chang, Peter O. Crisp, Lawrence J. Ellison, B. Jurgen Hintz, Katherine M.

---

[1] This Stipulation amends the Stipulation and Agreement of Settlement dated as of September 28, 2010.
[2]   Mr. York died on March 18, 2010.
[3]   Capitalized terms are defined in Sections IV.1.1 through IV.1.37 below.

1    Hudson, Delano E. Lewis, A.C. Markkula, Jr., and Edgar S. Woolard, Jr.  The Consolidated

2    Complaint alleged violations of Sections 14(a) and 20(a) of the Exchange Act and breach of state

3    law duties of disclosure.  NYCERS did not assert a claim under Section 10(b) of the Exchange

4    Act.  On June 8, 2007, the defendants moved to dismiss the Consolidated Complaint.  On

5    November 14, 2007, the Court dismissed the Consolidated Complaint with leave to amend only

6    as a derivative action.

7         On December 14, 2007, NYCERS filed a motion for leave to file a first amended

8    consolidated class action complaint to assert claims under Sections 10(b) and 20(a) of the

9    Exchange Act, as well as amended versions of the claims asserted in the Consolidated Complaint.

10   On May 14, 2008, the Court denied NYCERS's motion for leave to amend.  On June 12, 2008,

11   the Court entered judgment in favor of the defendants and dismissed NYCERS's claims with

12   prejudice.

13        On June 17, 2008, NYCERS filed a notice of appeal before the U.S. Court of Appeals for

14   the Ninth Circuit.  On January 28, 2010, the Ninth Circuit affirmed the Court's dismissal of

15   NYCERS's claims under Section 14(a) of the Exchange Act and state law.  The Ninth Circuit

16   reversed the Court's May 14, 2008 order and granted NYCERS leave to amend its complaint to

17   assert claims under Sections 10(b) and 20(a) of the Exchange Act.  On March 22, 2010, NYCERS

18   filed a First Amended Consolidated Class Action Complaint alleging violations of Sections 10(b)

19   and 20(a) of the Exchange Act against Apple and the following current or former officers and

20   directors: Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S.

21   Drexler, Arthur D. Levinson, and Jerome B. York.

22              2.    *Vogel, et al. v. Apple Inc., et al.*, Case No. C-08-3123-JF ("*Vogel II*")

23        On June 27, 2008, plaintiffs Vogel and Mahoney filed another purported class action suit

24   in the U.S. District Court for the Northern District of California against Apple and the following

25   current or former officers and directors: Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen,

26   William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York.  This action,

27   captioned *Vogel, et al. v. Apple Inc., et al.*, Case No. C-08-3123-JF, alleged violations of Sections

28   10(b) and 20(a) of the Exchange Act.  On July 22, 2008, the Court stayed all proceedings in *Vogel*

AM. STIPULATION AND AGREEMENT OF
SETTLEMENT - C-06-5208-JF

1  *II* pending the outcome of NYCERS's appeal before the Ninth Circuit in *Vogel I*.

2                        3.      Consolidated Action

3          On April 8, 2010, the Court entered an order consolidating *Vogel I* and *Vogel II*.  The

4  Court designated NYCERS as the Lead Plaintiff and Grant & Eisenhofer P.A. as lead counsel for

5  the consolidated action.  On May 14, 2010, Plaintiffs filed a Corrected First Amended

6  Consolidated Class Action Complaint against Apple and the following current or former officers

7  and directors: Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard

8  S. Drexler, Arthur D. Levinson, and Jerome B. York.  The action, captioned *In re Apple Inc.*

9  *Securities Litigation*, Case No. C-06-5208-JF, alleges violations of Sections 10(b) and 20(a) of

10 the Exchange Act.  Defendants' response obligations have been stayed pending the Court's

11 consideration of the Settlement.  The Court has not previously certified any class in the Action.

12          **B.      Mediation and Settlement Negotiations**

13         Counsel for the Settling Parties have engaged in substantial arm's-length negotiations in

14 an effort to resolve the Action, including mediation sessions with Jonathan B. Marks of

15 MarksADR, LLC on May 19-20, 2010, and numerous in-person meetings and teleconferences.

16 **II.     PLAINTIFFS' CLAIMS AND THE BENEFITS OF THE SETTLEMENT**

17         Plaintiffs assert that their claims have merit and that the evidence of the underlying events

18 and transactions alleged in the Action supports their claims.  Nevertheless, Plaintiffs recognize

19 the significant expense and prolonged proceedings necessary to prosecute the Action against

20 Defendants through trial and, potentially, through appeals.  Plaintiffs have also taken into account

21 the uncertain outcome, risks, difficulties and delays inherent in any litigation, especially in

22 complex actions.  Plaintiffs are also mindful of the problems of proof and possible defenses to the

23 claims asserted in the Action, including without limitation issues with respect to proof of

24 damages, proof of causation of damages, and proof of Defendants' requisite intent.

25         Based on a careful evaluation, Plaintiffs and Plaintiffs' Counsel have determined it is

26 desirable to settle the Action on the terms and conditions set forth in this Stipulation.  Plaintiffs

27 and Plaintiffs' Counsel also have concluded that the terms and conditions of this Stipulation are

28 fair, reasonable and adequate, and that it is in the best interests of the Class to settle the claims

AM. STIPULATION AND AGREEMENT OF
                                       SETTLEMENT - C-06-5208-JF

1   asserted in the Action pursuant to the terms and provisions of this Stipulation.

2   **III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY AND
3          AGREEMENT TO THE SETTLEMENT**

4       Defendants deny that they committed, or attempted to commit, any violations of law or

5   breached any duties owed to Apple, its shareholders or otherwise.  Defendants also deny that

6   Plaintiffs and the Class have suffered any harm as a result of conduct alleged in the Action.  In

7   particular, Defendants deny that Apple's share price was artificially inflated by reason of any

8   alleged misrepresentations or omissions.  Defendants further deny that any harm allegedly

9   suffered by Plaintiffs and the Class was caused by any misrepresentations or omissions.

10  Defendants maintain that they have meritorious defenses to all the claims alleged in the Action.

11      Nonetheless, Defendants believe that further litigation would be protracted, burdensome,

12  expensive, and distracting.  Defendants have also determined that further litigation would divert

13  resources and attention from other activities important to Apple's business and its shareholders'

14  interests.  Thus, Defendants have concluded that it is desirable and beneficial to settle the Action

15  on the terms and conditions set forth in this Stipulation.

16  **IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT**

17      NOW, THEREFORE, in consideration of the promises and agreements, covenants,

18  representations, and warranties set forth herein, intending to be legally bound;

19      IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Parties,

20  through their respective counsel that, subject to approval of the Court pursuant to Rule 23(e) of

21  the Federal Rules of Civil Procedure, that the Released Claims shall be fully, finally, and forever

22  resolved, discharged and settled on the merits and with prejudice and that the Action shall be

23  dismissed with prejudice, as to all Settling Parties, on the following terms and conditions:

24      1.    ***Definitions***

25  As used in this Stipulation, the following capitalized terms have the meanings below:

26      1.1.   "Action" means the consolidated action captioned *In re Apple Inc. Securities*

27  *Litigation*, Case No. C-06-5208, currently pending in the U.S. District Court for the Northern

28  District of California.

AM. STIPULATION AND AGREEMENT OF
                                        SETTLEMENT - C-06-5208-JF

1.2. "Apple" means Apple Inc. (formerly known as "Apple Computer, Inc.") and its past, present, and future parents, subsidiaries, predecessors, successors, agents, affiliates and assigns.

1.3. "Attorneys' Fees and Expenses" means such funds as may be awarded to Plaintiffs' Counsel by the Court, as defined herein, to compensate them for their reasonable fees and expenses incurred in connection with the litigation of the Action.

1.4. "Authorized Claimant" means any member of the Class who is a Claimant, as defined herein, and whose claim for recovery has been authorized pursuant to the terms of this Stipulation.

1.5. "Claimant" means any Class Member who files a Proof of Claim, as defined herein, in such form and manner, and within such time, as the Court shall prescribe.

1.6. "Claims Administrator" means the firm of Epiq Class Action & Claims Solutions, Inc., which shall administer the Settlement.

1.7. "Class" means all purchasers of Apple common stock during the Class Period. Excluded from the Class are Defendants, as defined herein, all current and former directors and officers of Apple, and all employees of Apple and/or its subsidiaries during the Class Period, as defined herein, and any family member, trust, company, entity, or affiliate controlled or owned by any of the excluded persons and entities referenced in this subsection.  Also excluded from the Class are any persons and entities that exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

1.8. "Class Member" means a person or entity that falls within the definition of the Class.

1.9. "Class Period" means the period from August 24, 2001 through June 29, 2006, both dates inclusive.

1.10. "Court" means the U.S. District Court for the Northern District of California.

1.11. "Defendants" means Apple, Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York.

1.12. "Defendants' Counsel" means the law firms of O'Melveny & Myers LLP, Farella

Braun & Martel LLP, and Munger, Tolles & Olson LLP.

1.13.   "Effective Date" means the date upon which the Settlement contemplated by this Stipulation shall become effective, as set forth in Section 10 of this Stipulation.

1.14.   "Escrow Agent" means The Huntington National Bank, which shall administer the Settlement Fund.

1.15.   "Final" means the time when a judgment that has not been reversed, vacated, or modified in any way is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of the passage, without action, of the time for seeking appellate review.  More specifically, it is that situation when: (1) either no appeal has been filed and the time has passed for any notice of appeal to be timely filed in the Action; or (2) an appeal has been filed and a judgment has been affirmed on appeal, and is no longer subject to review upon appeal or review by writ of certiorari, or the appeal has been dismissed and the time for any reconsideration or further appellate review has passed.

1.16.   "Net Settlement Fund" means the Settlement Fund, as defined herein, net of any taxes.

1.17.   "Notice" means the Notice of Proposed Settlement of Class Action, Settlement Fairness Hearing, and Application for Attorneys' Fees and Expenses, which is to be sent to Class Members substantially in the form attached hereto as Exhibit A-1.

1.18.   "Order and Final Judgment" means an order and judgment substantially in the form attached hereto as Exhibit B.

1.19.    "Plaintiffs" means the New York City Employees' Retirement System, Martin Vogel, and Kenneth Mahoney.

1.20.   "Plaintiffs' Counsel" means Plaintiffs' Lead Counsel, as defined herein, and the law firms of Anderlini & Emerick LLP, Stull, Stull & Brody, and Kantrowitz, Goldhamer & Graifman.

1.21.   "Plaintiffs' Lead Counsel" means the law firm of Grant & Eisenhofer P.A.

1.22.   "Preliminary Approval Order" means the [Proposed] Amended Order Preliminarily Approving Settlement, Directing Notice of Settlement, and Scheduling Settlement

Fairness Hearing substantially in the form attached hereto as Exhibit A.

1.23. "Proof of Claim" means the Proof of Claim to be submitted by Claimants substantially in the form attached hereto as Exhibit A-3.

1.24. "Publication Notice" means the Summary Notice of Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Expenses, which is to be published substantially in the form attached hereto as Exhibit A-2.

1.25. "Released Claims" means Released Plaintiffs' Claims and Released Defendants' Claims, as defined herein.

1.26. "Released Defendants" means (1) Defendants, (2) Peter Oppenheimer, Albert Gore, Jr., Gareth C.C. Chang, Peter O. Crisp, Lawrence J. Ellison, B. Jurgen Hintz, Katherine M. Hudson, Delano E. Lewis, A.C. Markkula, Jr., and Edgar S. Woolard, Jr., and (3) their respective predecessors, successors, parents, subsidiaries, affiliates, estates, assigns, heirs, and agents (including without limitation any investment bankers, accountants, insurers, reinsurers, or attorneys, and any past, present, or future officers, directors, and employees of Apple and their predecessors, successors, parents, subsidiaries, affiliates, and agents), and any trusts for which any of them are trustees, settlers, or beneficiaries.

1.27. "Released Defendants' Claims" means all claims, demands, rights, liabilities or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of any nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory, or common law or any other law, rule, or regulation, including the law of any jurisdiction outside the United States, that could have been brought in this proceeding or in the future by Released Defendants against Released Plaintiffs, as defined herein, arising out of the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims; provided however, that Released Defendants shall retain the right to enforce in the Court the terms of the Stipulation. "Released Defendants' Claims" shall also include all claims, demands, rights, liabilities or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of any nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory, or common law or any

other law, rule, or regulation, including the law of any jurisdiction outside the United States, that Apple might have for contribution or otherwise against any other of the Released Defendants arising out of or related to Apple's payment of funds in settlement of this Action.

1.28.   "Released Parties" means Released Plaintiffs, as defined herein, and Released Defendants.

1.29.   "Released Plaintiffs" means Plaintiffs, their attorneys, and their respective predecessors, successors, parents, subsidiaries, affiliates, estates, assigns, heirs, agents, and any trusts for which any of them are trustees, settlers, or beneficiaries.

1.30.   "Released Plaintiffs' Claims" means all claims (including "Unknown Claims" as defined in Section 1.37 of this Stipulation), demands, rights, suits, matters, issues, or causes of action under federal, state, local, foreign law, or any other law, rule, or regulation, whether known or unknown, that were, could have been, or could in the future be asserted against the Released Parties by (1) Plaintiffs, (2) any Class Member, and (3) their respective predecessors, successors, parents, subsidiaries, affiliates, estates, assigns, heirs, and agents, and any trusts for which any of them are trustees, settlers, or beneficiaries, in any court of competent jurisdiction or any other adjudicatory tribunal, in connection with, arising out of, related to, based upon, in whole or in part, directly or indirectly, in any way, to the facts, transactions, events, occurrences, acts, disclosures, oral or written statements, representations, filings, publications, disseminations, press releases, presentations, accounting practices or procedures, compensation practices or procedures, omissions or failures to act which were or which could have been alleged or described in this Action or similar proceedings.

1.31.   "Settlement" means the settlement of the Action as contemplated by this Stipulation.

1.32.   "Settlement Fairness Hearing" means a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, as described in the proposed Preliminary Approval Order, attached hereto as Exhibit A.

1.33.   "Settlement Fund" means the cash deposited into an interest bearing escrow account for the payment of claims made in accordance with this Stipulation, and any interest or

- 9 -

income earned thereon.

1.34.   "Settling Parties" means Plaintiffs and Defendants, each of which may also be referred to herein as a "Settling Party."

1.35.   "Stipulation" means this Amended Stipulation and Agreement of Settlement.

1.36.   "Taxes" means (i) taxes on the interest or income earned on the Settlement Fund and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund (including without limitation expenses of tax attorneys and accountants).

1.37.   "Unknown Claims" shall collectively mean all claims, demands, rights, liabilities, and causes of action of every nature and description which (1) Plaintiffs, (2) any Class Member, or (3) their respective predecessors, successors, parents, subsidiaries, affiliates, estates, assigns, heirs, and agents, and any trusts for which any of them are trustees, settlers, or beneficiaries, does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties, or might have affected his, her, or its decision not to object to this Settlement.  With respect to any and all Released Plaintiffs' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly waive, and each Class Member shall be deemed to have waived, and by operation of the Order and Final Judgment shall have waived, the provisions, rights and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Further, Plaintiffs shall expressly waive, and each Class Member shall be deemed to have expressly waived, and by operation of the Order and Final Judgment shall have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542.  Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Plaintiffs' Claims, but Plaintiffs shall expressly, fully, finally and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to

1    have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever

2    settled and released, any and all Released Plaintiffs' Claims, known or unknown, suspected or

3    unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist,

4    or heretofore have existed, upon any theory of law or equity now existing or coming into

5    existence in the future, including without limitation conduct that is negligent, intentional, with or

6    without malice, and a breach of any duty, law or rule, without regard to the subsequent discovery

7    or existence of such different or additional facts.  Plaintiffs acknowledge, and each Class Member

8    shall be deemed by operation of the Order and Final Judgment to have acknowledged, that the

9    foregoing waiver was separately bargained for and a key element of the Settlement of which this

10   release is a part.

11       2.    ***Settlement Consideration***

12       2.1.    In full and complete settlement of the Released Claims, the Settling Parties agree

13   to the following:

14       2.1.1.   Within ten (10) business days of the entry of the Preliminary Approval

15   Order, or sooner should it so elect, Apple shall pay $16.5 million in cash into the Settlement

16   Fund.

17       2.1.2.   Within thirty (30) business days of the Effective Date, or sooner should it

18   so elect, Apple's Board of Directors shall adopt the amendments to (a) the Amended Bylaws of

19   Apple Inc. in the form attached hereto as Exhibit C; and (b) the Compensation Committee Charter

20   of Apple Inc. in the form attached hereto as Exhibit E.

21       2.1.3.   Within thirty (30) business days of the Effective Date, or sooner should it

22   so elect, Apple shall amend its Insider Trading Policy to include the changes set forth in Exhibit

23   D attached hereto.

24       2.1.4.   Apple agrees that the modification to the Amended Bylaws of Apple Inc.

25   detailed in Exhibit C, the modification to the Compensation Committee Charter of Apple Inc.

26   detailed in Exhibit E, and the modifications to Apple's Insider Trading Policy detailed in Exhibit

27   D shall remain in effect until at least the end of Apple's 2012 fiscal year.  To the extent that any

28   of the terms set forth in Exhibits C or E may in the future come into conflict with any applicable

AM. STIPULATION AND AGREEMENT OF
SETTLEMENT - C-06-5208-JF

state or federal statutes, rules, regulations or controlling case law, then such applicable statutes, rules, regulations or case law will control, and Apple may modify such terms as necessary to comply with such applicable law(s).  Such determination shall be made by a majority of Apple's Board of Directors and shall be disclosed to shareholders in a Form 8-K no less than ten (10) business days before the effective date of such modifications.  With respect to Exhibit D, the parties acknowledge and agree that Apple must have the flexibility to review and modify its Insider Trading Policy in response to, among other things and without limitation, changes in legal, regulatory, or other applicable rules, regulations, and guidelines.

    2.1.5. Apple agrees that the following measures that were adopted pursuant to the Stipulation of Settlement entered on September 4, 2008, to settle pending derivative litigation shall remain in effect until at least May 1, 2013, rather than May 1, 1011, as originally agreed:

        2.1.5.1. The Equity Award Grant Practices Policy in the form set forth in Exhibit F;

        2.1.5.2. The appointment of the Trading Compliance Committee with the purposes, composition, authority and duties set forth in Exhibit G;

        2.1.5.3. The amendments to the charter of the Compensation Committee of the Board of Directors set forth in Exhibit H;

        2.1.5.4. The amendment to Apple's Corporate Governance Guidelines providing that at least one member of the Compensation Committee of the Board of Directors will not simultaneously serve on the Audit and Finance Committee of the Board of Directors;

        2.1.5.5. The Corporate Minutes Procedure in the form set forth in Exhibit I;

        2.1.5.6. The Actions by Unanimous Written Consent Procedure in the form set forth in Exhibit J; and

        2.1.5.7. The director and officer training program set forth in Exhibit K.

    2.1.6. To the extent that any of the terms set forth in Exhibits F, G, and K, the modifications to Apple's Compensation Committee charter in Exhibit H, and the modifications to Apple's Corporate Governance Guidelines detailed in Section 2.1.5.4 above, may in the future

AM. STIPULATION AND AGREEMENT OF
SETTLEMENT - C-06-5208-JF

1   come into conflict with any applicable state or federal statutes, rules, regulations or controlling

2   case law, then such applicable statutes, rules, regulations or case law will control, and Apple may

3   modify such terms as necessary to comply with such applicable law(s).  Such determination shall

4   be made by a majority of the independent members of the Board, and shall be disclosed to

5   shareholders in a Form 8-K no less than ten (10) business days before the effective date of such

6   modification.  With respect to Exhibits I and J, the parties acknowledge and agree that Apple

7   must have the flexibility to review and modify such policies and procedures in response to,

8   among other things and without limitation, technological advancements, changes in governance

9   practices and business needs and changes in accounting, legal, regulatory and other applicable

10  rules, regulations and guidelines.

11        3.   ***Handling and Disbursement of Funds by the Escrow Agent***

12        3.1.   The Net Settlement Fund shall be distributed to the Authorized Claimants as

13  provided in Section 6 of this Stipulation.

14        3.2.   The Escrow Agent shall invest any funds held in escrow exclusively in instruments

15  backed by the full faith and credit of the United States Government or fully insured by the United

16  States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a

17  bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the

18  guaranteed FDIC limit, and shall collect and reinvest all interest accrued thereon.  The Released

19  Defendants are not in any way responsible for such investments and bear no risk whatsoever

20  relating to them.  The parties hereto agree that the Settlement Fund is intended to be a "Qualified

21  Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 and that the Claims

22  Administrator, as administrator of the Settlement Fund within the meaning of Treasury

23  Regulation §1.468B-2(k)(3), shall be responsible for filing tax returns for the Settlement Fund

24  and paying from the Settlement Fund any Taxes owed with respect to the Settlement Fund.  The

25  parties hereto agree that the Settlement Fund shall be treated as a Qualified Settlement Fund from

26  the earliest date possible, and agree to any relation-back election required to treat the Settlement

27  Fund as a Qualified Settlement Fund from the earliest date possible.  Defendants' Counsel agree

28  to provide promptly to the Claims Administrator the statement described in Treasury Regulation §

AM. STIPULATION AND AGREEMENT OF
SETTLEMENT - C-06-5208-JF

1.468B-3(e).

3.3.    All Taxes shall be paid out of the Settlement Fund, shall be considered a cost of administration of the settlement, and shall be timely paid by the Escrow Agent upon the instructions of the Claims Administrator without prior order of the Court.

3.4.    Other than the payment of Taxes as set forth in Section 3.3 of this Stipulation, Apple shall be responsible for the payment of all reasonable documented fees and expenses incurred by or payable to the Escrow Agent relating to the administration of the Settlement Fund as outlined in this Stipulation.  No such administrative fees shall be deemed incurred by or paid out of the Settlement Fund.

3.5.    Defendants and Defendants' Counsel shall have no liability or responsibility for Taxes.  The Escrow Agent shall indemnify and hold each of the Defendants and Defendants' Counsel harmless for Taxes (including without limitation Taxes payable by reason of any such indemnification).

3.6.    The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of Apple's counsel and Plaintiffs' Lead Counsel.

3.7.    Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class as are consistent with the terms of this Stipulation.

3.8.    All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned to the parties who deposited such funds pursuant to this Stipulation and/or further order(s) of the Court.

4.    ***Class Certification***

4.1.    The Settling Parties hereby stipulate to certification of the Class, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, solely for purposes of this Settlement.  The certification of the Class shall be binding only with respect to the Settlement and only if the Order and Final Judgment becomes Final.

AM. STIPULATION AND AGREEMENT OF
SETTLEMENT - C-06-5208-JF

5.     ***Administration***

5.1.     The Claims Administrator shall administer the Settlement subject to the Court's jurisdiction.  Except as provided in this Stipulation, Defendants shall have no responsibility or liability concerning the appointment of the Claims Administrator or any actions taken by the Claims Administrator.

5.2.     Apple shall be responsible for the payment of all reasonable documented administrative fees and expenses incurred by or payable to the Claims Administrator relating to the responsibilities outlined in this Stipulation.  No such administrative fees shall be deemed incurred by or paid out of the Settlement Fund.

5.3.     The Claims Administrator shall be responsible for mailing and publishing the Notice and Publication Notice, respectively.  Apple shall reimburse the Claims Administrator for the reasonable costs incurred to mail and publish the Notice and Publication Notice, respectively.

5.4.     Apple shall direct its transfer agent to provide to the Claims Administrator Apple's shareholder lists solely for purposes of providing notice to the Class.  Plaintiffs and Plaintiffs' Counsel agree that Apple's shareholder lists will not be used for any purposes other than providing notice to the Class as provided in this section and will otherwise not be disclosed to any other persons.  Apple shall have no liability to Plaintiffs or the Class with respect to the provision of such shareholder lists.  Apple shall reimburse the Claims Administrator for the reasonable costs incurred to obtain the shareholder lists from Apple's transfer agent.

5.5.     Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation the extent, if any, to which each Proof of Claim shall be authorized, subject to review by the Court pursuant to subsection 5.5.4 below.  For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an "Authorized Claimant," the following conditions shall apply:

5.5.1.   Each Class Member shall be required to submit a Proof of Claim supported by such documents as are designated therein, including proof of the transactions claimed and such other documents or proof as the Claims Administrator in its discretion may deem acceptable;

5.5.2.   All Proofs of Claim must be submitted in accordance with and by the date

- 15 -

specified in the Notice, unless such period is extended by Court order.  If a Proof of Claim is submitted by mail, it shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if sent by first-class mail postage pre-paid and addressed in accordance with the instructions therein.  If a Proof of Claim is submitted online, it shall be deemed to have been submitted on the date specified in the email confirmation of submission provided by the online filing module;

        5.5.3.   Proofs of Claim that do not meet the submission requirements may be rejected.  Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the Claimant in order to attempt to remedy the curable deficiencies in the Proofs of Claim submitted.  The Claims Administrator shall notify, in a timely fashion and in writing, each Claimant whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Proof of Claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subsection 5.5.4 below;

        5.5.4.   If any Claimant whose Proof of Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days of the date of mailing of the notice required in subsection 5.5.3 above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Proof of Claim cannot be otherwise resolved, Plaintiffs' Lead Counsel shall thereafter present the request for review to the Court; and

        5.5.5.   The administrative determinations of the Claims Administrator accepting and rejecting Proofs of Claim shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in an order (the "Class Distribution Order").

    5.6.   Any Class Member who does not submit a valid Proof of Claim will not be entitled to receive any proceeds from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation, the Settlement, and the Order and Final Judgment, including the releases and injunctions provided for herein and therein.

5.7.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, hers or its Proof of Claim, and such Proof of Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Proof of Claim.  No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of Proofs of Claim.

### 6.     *Distribution to Authorized Claimants*

6.1.     The Court's approval of the "Plan of Allocation" (described in the Notice attached as Exhibit A-1) is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular Plan of Allocation be approved.  The Plan of Allocation and determinations made thereunder shall be considered separately from the Court's consideration of whether the Settlement is fair, reasonable, and adequate and in the best interests of the Class.  Any order or proceedings relating to the Plan of Allocation and determinations thereunder, or any appeal from any order or proceedings relating to the Plan of Allocation or any determinations thereunder, shall not affect or delay the Effective Date and the finality of the Order and Final Judgment.

6.2.     The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim," as set forth in the Notice.

6.3.     Payment pursuant to this Stipulation shall be deemed final and conclusive against all Class Members.  All Class Members whose Proofs of Claim are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation, the Settlement, and the Order and Final Judgment, including the releases and injunctions provided for therein and herein.

6.4.     All proceedings with respect to the administration, processing, and determination of Proofs of Claim described by Sections 5 and 6 of this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Proofs of Claim, shall be subject to the jurisdiction of the Court.

6.5.    The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the Effective Date and after: (i) all Proofs of Claim have been processed, and all Claimants whose Proofs of Claim have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (ii) all objections with respect to all rejected or disallowed Proofs of Claim have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (iii) all matters with respect to attorneys' fees, costs, and disbursements have been resolved by the Court, all appeals therefrom have been resolved or the time therefor has expired; and (iv) all costs of administration have been paid.  Apple shall reimburse the Claims Administrator for the reasonable costs incurred to process Proofs of Claim and distribute the Net Settlement Fund to Authorized Claimants.

6.6.    Except as provided in this Stipulation, Defendants and Defendants' Counsel shall not have any responsibility for, interest in, or liability whatsoever with respect to:

6.6.1.   any act, omission or determination of Plaintiffs' Counsel, the Escrow Agent, or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise;

6.6.2.   the management, investment, or distribution of the Settlement Fund;

6.6.3.   the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund;

6.6.4.   the Plan of Allocation; or

6.6.5.   any losses suffered by, or fluctuations in the value of, the Settlement Fund.

7.    ***Terms of Preliminary Approval Order***

7.1.    Promptly after this Stipulation has been fully executed, Plaintiffs' Lead Counsel and Defendants' Counsel jointly shall apply to the Court for entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.

8.    ***Terms of Order and Final Judgment***

8.1.    If the Settlement contemplated by this Stipulation is approved by the Court, Plaintiffs' Lead Counsel and Defendants' Counsel jointly shall request that the Court enter an

AM. STIPULATION AND AGREEMENT OF
SETTLEMENT - C-06-5208-JF

Order and Final Judgment substantially in the form attached hereto as Exhibit B.

9.     ***Attorneys' Fees and Expenses***

9.1.    Plaintiffs' Lead Counsel will apply to the Court for an award of Attorneys' Fees and Expenses in an amount not to exceed $2.45 million to compensate Plaintiffs' Counsel for their reasonable fees and expenses incurred in connection with the litigation of the Action.  Apple shall pay Plaintiffs' Lead Counsel the amount of Attorneys' Fees and Expenses determined by the Court within five (5) business days of (i) the Effective Date or (ii) the date on which the Court enters an order awarding Attorneys Fees and Expenses, whichever occurs first.

9.2.    Plaintiffs' Lead Counsel agrees to refund to Apple any award of Attorneys' Fees and Expenses paid to Plaintiffs' Lead Counsel in the event the Court's award of Attorneys' Fees and Expenses is reduced or reversed on appeal.  Payment of some or all of the Attorneys' Fees and Expenses shall be made by Plaintiffs' Lead Counsel to Apple within five (5) business days of a Final order by the Court, the U.S. Court of Appeals, or the U.S. Supreme Court directing such reduction or reversal.

9.3.    Apple shall pay any award of Attorneys' Fees and Expenses in addition to and not out of the Settlement Fund identified above in Section 2.1.1.

9.4.    The determination regarding the amount of any award of Attorneys' Fees and Expenses shall be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement.  It is not a condition of this Stipulation or Settlement that any particular amount of Attorneys' Fees and Expenses be awarded by the Court.  Any order or proceedings relating to the amount of any award Attorneys' Fees and Expenses, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation, or affect or delay the finality of the Order and Final Judgment approving this Stipulation and the Settlement.

9.5.    Except as provided in this Stipulation, Released Defendants shall have no responsibility for, and no liability whatsoever with respect to, any payment to Plaintiffs' Counsel and/or any other person or entity who receives payment from the Settlement Fund.

9.6.    The Released Defendants shall have no responsibility for, and no liability

1    whatsoever with respect to, the allocation among Plaintiffs' Lead Counsel, other Plaintiffs'

2    Counsel and/or any other person who may assert some claim thereto, of any award of Attorneys'

3    Fees and Expenses.

4            10.    ***Effective Date of Settlement, Waiver or Termination***

5            10.1.    The "Effective Date" of Settlement shall be the date when all the following shall

6    have occurred:

7            10.1.1. approval by the Court of the Settlement, following notice to the Class and a

8    hearing, as prescribed by Rule 23(e) of the Federal Rules of Civil Procedure; and

9            10.1.2. entry by the Court of an Order and Final Judgment that becomes Final, or,

10   in the event that the Court enters an order and final judgment in a form other than provided in

11   Exhibit B attached hereto (the "Alternative Judgment") and none of the parties hereto elects to

12   terminate this Settlement, the date that the Alternative Judgment becomes Final.

13           10.2.    Defendants' Counsel or Plaintiffs' Lead Counsel shall have the right to terminate

14   the Settlement and this Stipulation by providing written notice of their election to do so (the

15   "Termination Notice") to all other parties hereto within thirty (30) days of: (a) the Court's refusal

16   to approve this Stipulation or any material part of it (including, but not limited to, Section 9.3 or

17   any element of the settlement consideration identified in Section 2.1); (b) the Court's refusal to

18   enter a Preliminary Approval Order substantially in the form set forth in Exhibit A attached

19   hereto; (c) the Court's refusal to enter an Order and Final Judgment substantially in the form set

20   forth in Exhibit B attached hereto; (d) the date on which the Order and Final Judgment is

21   modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme

22   Court; or (e) the date upon which an Alternative Judgment is modified or reversed in any material

23   respect by the U.S. Court of Appeals or the U.S. Supreme Court.

24           10.3.    Lead Plaintiff and Defendants, through their counsel, have executed a

25   "Supplemental Agreement" setting forth certain conditions under which this Stipulation may be

26   withdrawn or terminated if potential Class Members who purchased in excess of a certain number

27   of Apple shares during the Class Period exclude themselves from the Class.  The Supplemental

28   Agreement shall not be filed with the Court unless a dispute arises about its terms or the Court so

AM. STIPULATION AND AGREEMENT OF
SETTLEMENT - C-06-5208-JF

orders.  In the event of a withdrawal from this Stipulation under the Supplemental Agreement, this Stipulation shall become null and void and of no further force and effect, and the provisions of Section 10.4 of this Stipulation shall apply.  Notwithstanding the foregoing, the Stipulation shall not become null and void as a result of Defendants' election to exercise its option to withdraw from the Stipulation until the conditions in the Supplemental Agreement have been satisfied.

10.4.    Except as provided in this Stipulation, in the event the Settlement is terminated, cancelled, or fails to become effective for any reason, then the parties to this Stipulation shall be deemed to have reverted to their respective status in the Action immediately prior to the execution of this Stipulation and, except as otherwise expressly provided, the parties shall proceed in all respects as if this Stipulation and any related orders had not been entered, and the Escrow Agent shall, within ten (10) business days after written notification from Defendants' Counsel of any such event, cause the Settlement Fund to revert to Apple, together with any interest earned thereon, but less any Taxes due with respect to such income.  The costs of providing notice to the Class and administering the Settlement Fund, as provided for in this Stipulation, shall be non-refundable.

11.    ***No Admission of Wrongdoing***

11.1.    This Stipulation, whether or not consummated, and any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement or any negotiation, discussion or proceedings in connection with this Stipulation or the Settlement:

11.1.1. shall not be offered or received against Released Defendants as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Released Defendants with respect to the truth of any fact alleged by any Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of or by Released Defendants;

11.1.2. shall not be offered or received against Released Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect

1    to any statement or written document approved or made by any Released Defendants;

2            11.1.3. shall not be offered or received against Released Defendants as evidence of

3    a presumption, concession, or admission with respect to any liability, negligence, fault or

4    wrongdoing, or in any way referred to for any other reason as against any Released Defendants,

5    in any other civil, criminal, or administrative action or proceeding, other than such proceedings as

6    may be necessary to effectuate the provisions of this Stipulation; provided however, that if this

7    Stipulation is approved by the Court, Released Defendants may refer to it to effectuate the rights

8    and liability protections granted to them hereunder; and

9            11.1.4. shall not be construed against Released Defendants as an admission or

10   concession that the consideration to be given hereunder represents the amount which could be or

11   would have been recovered after trial.

12       12.   ***Miscellaneous Provisions***

13       12.1.   All of the exhibits attached hereto are hereby incorporated by reference as though

14   fully set forth herein.

15       12.2.   This Stipulation may not be modified or amended, nor may any of its provisions

16   be waived, except by a writing executed by all Settling Parties or their respective successors-in-

17   interest, or by authorized counsel for the foregoing entities and individuals.

18       12.3.   The headings herein are used for the purpose of convenience only and are not

19   meant and shall not be construed to have any legal effect.

20       12.4.   The administration and consummation of the Settlement embodied in this

21   Stipulation shall be under the Court's authority, and the Court shall retain jurisdiction for the

22   purpose of entering orders awarding Attorneys' Fees and Expenses and enforcing the terms of

23   this Stipulation.

24       12.5.   The waiver by one party of any breach of this Stipulation by any other party shall

25   not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

26       12.6.   This Stipulation and its exhibits, together with the Supplemental Agreement,

27   constitute the entire agreement among the Settling Parties concerning the Settlement of the

28   Action, and supersede any prior agreements or understandings between the Settling Parties with

respect to the Settlement. No representations, warranties, or inducements have been made by any Settling Party concerning this Stipulation, its exhibits or the Supplemental Agreement, other than those contained and memorialized in such documents.

12.7.   This Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Settling Parties shall exchange among themselves original signed counterparts. Any signature to this Stipulation, to the extent signed and delivered by facsimile, shall be treated in all manners and respects as an original signature and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. At the request of a Settling Party, any other Settling Party so executing and delivering this Stipulation by facsimile shall re-execute original forms thereof and deliver them to the requesting party. No Settling Party shall raise the use of facsimile to deliver or transmit a signature as a defense to the formation or enforceability of this Stipulation, and each such Settling Party forever waives any such defense.

12.8.   This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Released Parties. There are no third-party beneficiaries to this Stipulation.

12.9.   The construction, interpretation, operation, effect and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the laws of the State of California without regard to conflicts of laws, except to the extent that federal law requires that federal law governs. Any dispute concerning the terms of this Settlement, including the implementation of the corporate governance provisions and any payment by Apple, shall first be submitted to Jonathan B. Marks of MarksADR, LLC for resolution, subject to Court review and approval. In the event that Mr. Marks is unavailable, the dispute shall be submitted to a mediator agreed upon by the Settling Parties. If the Settling Parties are unable to agree on a mediator, they will apply to the Court for the appointment of a mediator.

12.10.   This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties. This Stipulation is the result of arm's-length negotiations between

the Settling Parties, and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

12.11.  All counsel and any other person executing this Stipulation and any of its exhibits, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

12.12.  Plaintiffs' Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking prompt Court approval of the Preliminary Approval Order, the Stipulation, and the entry of the Order and Final Judgment, and to promptly agree upon and execute all such other documentation and to take all such other action as may be reasonably required to obtain the Court's final approval of the Settlement and the entry of the Order and Final Judgment.

12.13.  The Settling Parties (i) acknowledge their intent to consummate the Settlement and (ii) agree to cooperate as reasonably necessary to effectuate and implement this Stipulation, and to use their commercially reasonable efforts to accomplish this Stipulation's terms and to consummate its contemplated transactions.

12.14.  The Settling Parties acknowledge, represent, and warrant to each other that the mutual releases and payments hereunder are adequate consideration for the consideration given.

12.15.  Whenever this Settlement requires or contemplates that one party shall or may give notice to another, notice shall be provided by facsimile and/or next-day (excluding weekends and court holidays) express delivery service as follows:

If to Defendants, then to:

George A. Riley, Esq.
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111

Yohance C. Edwards, Esq.
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105

AM. STIPULATION AND AGREEMENT OF
SETTLEMENT - C-06-5208-JF

1   Douglas R. Young, Esq.
    FARELLA BRAUN & MARTEL LLP
2   Russ Building
    235 Montgomery Street, 17th floor
3   San Francisco, California 94104

4   If to Plaintiffs, then to:

5   Michael J. Barry, Esq.
    GRANT & EISENHOFER P.A.
6   Chase Manhattan Centre
    1201 N. Market Street
7   Wilmington, Delaware 19801

8    12.16.  Nothing in this Stipulation, the Settlement, the negotiations and the mediation

9   relating thereto is intended to or shall be deemed to constitute a waiver of any applicable privilege

10  or immunity, including without limitation the attorney-client privilege or work product immunity.

11   12.17.  Plaintiffs' Lead Counsel shall not assign any of its rights or obligations under this

12  Stipulation without Defendants' prior written consent, and any attempted transfer or assignment

13  in violation of this provision shall be null and void.

14   12.18.  The Settling Parties reserve the right, subject to the Court's approval, to make any

15  reasonable extensions of time that might be necessary to carry out any of the provisions of this

16  Stipulation.

17

18  Dated: November 12, 2010    GEORGE A. RILEY
                 O'MELVENY & MYERS LLP

19

20              By: *George A. Riley /VTL*

21                George A. Riley

22             Attorneys for Defendant
               APPLE INC.

23

24

25

26

27

28

1   Dated: November 12, 2010

DOUGLAS R. YOUNG (S.B. #73248)
2   FARELLA BRAUN & MARTEL LLP
Russ Building
3   235 Montgomery Street, 17th floor
San Francisco, California 94104
4   Telephone:   (415) 954-4400
Facsimile:   (415) 954-4480
E-Mail:   dyoung@fbm.com

By:   *Douglas R. Young /ltuw*
               Douglas R. Young

Attorneys for Defendants
STEVEN P. JOBS, WILLIAM V. CAMPBELL,
MILLARD S. DREXLER, ARTHUR D.
LEVINSON and JEROME B. YORK

10   Dated: November 12, 2010

JEROME C. ROTH (S.B. #159483)
11   YOHANCE C. EDWARDS (S.B. #237244)
MUNGER, TOLLES & OLSON LLP
12   560 Mission Street, 27th Floor
San Francisco, California 94105
13   Telephone:   (415) 512-4000
Facsimile:   (415) 512-4077
14   E-Mail:   Jerome.Roth@mto.com
               Yohance.Edwards@mto.com

By:_____
               Yohance C. Edwards

Attorneys for Defendants
FRED D. ANDERSON and NANCY R.
HEINEN

AM. STIPULATION AND AGREEMENT OF
SETTLEMENT - C-06-5208-JF

1    Dated: November 12, 2010

2

3

4

5

6

7

8

9

10   Dated: November 12, 2010

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOUGLAS R. YOUNG (S.B. #73248)
FARELLA BRAUN & MARTEL LLP
Russ Building
235 Montgomery Street, 17th floor
San Francisco, California 94104
Telephone:    (415) 954-4400
Facsimile:    (415) 954-4480
E-Mail:        dyoung@fbm.com


By:_____
              Douglas R. Young

Attorneys for Defendants
STEVEN P. JOBS, WILLIAM V. CAMPBELL,
MILLARD S. DREXLER, ARTHUR D.
LEVINSON and JEROME B. YORK

JEROME C. ROTH (S.B. #159483)
YOHANCE C. EDWARDS (S.B. #237244)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077
E-Mail:        Jerome.Roth@mto.com
               Yohance.Edwards@mto.com


By: _____
              Yohance C. Edwards

Attorneys for Defendants
FRED D. ANDERSON and NANCY R.
HEINEN

- 26 -

1

Dated: November 12, 2010

JAY W. EISENHOFER
2

MICHAEL J. BARRY
LESLEY E. WEAVER
3

GRANT & EISENHOFER P.A.

4

By: _____
Michael J. Barry
5

6

MERRILL GLEN EMERICK (SB# 117248)
ANDERLINI & EMERICK LLP
7

411 Borel Avenue, Suite 501
San Mateo, California 94402
Telephone:   (650) 242-4884
8

Facsimile:    (650) 212-0081

9

Attorneys for Lead Plaintiff
10

THE NEW YORK CITY EMPLOYEES'
RETIREMENT SYSTEM

11

Dated: November 12, 2010

PATRICE L. BISHOP (S.B. #182256)
12

HOWARD T. LONGMAN
STULL, STULL & BRODY
13

10940 Wilshire Boulevard, Suite 2300
Los Angeles, California 90024
Telephone:   (310) 209-2468
14

Facsimile:    (310) 209-2087
Email:         pbishop@ssbla.com

15

16

By: _____
Patrice L. Bishop
17

GARY S. GRAIFMAN
18

KANTROWITZ, GOLDHAMER &
GRAIFMAN
19

747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
20

Telephone: (845) 356-2570
Facsimile: (845) 356-4335
21

Attorneys for Plaintiffs
22

MARTIN VOGEL and KENNETH MAHONEY

23

24

25

26

27

28

AM. STIPULATION AND AGREEMENT OF
SETTLEMENT - C-06-5208-JF

1   Dated: November 12, 2010

JAY W. EISENHOFER
MICHAEL J. BARRY
LESLEY E. WEAVER
GRANT & EISENHOFER P.A.

By: _____
             Michael J. Barry

MERRILL GLEN EMERICK (SB# 117248)
ANDERLINI & EMERICK LLP
411 Borel Avenue, Suite 501
San Mateo, California 94402
Telephone:   (650) 242-4884
Facsimile:    (650) 212-0081

Attorneys for Lead Plaintiff
THE NEW YORK CITY EMPLOYEES'
RETIREMENT SYSTEM

Dated: November 12, 2010

PATRICE L. BISHOP (S.B. #182256)
HOWARD T. LONGMAN
STULL, STULL & BRODY
10940 Wilshire Boulevard, Suite 2300
Los Angeles, California 90024
Telephone:   (310) 209-2468
Facsimile:    (310) 209-2087
Email:        pbishop@ssbla.com

By: _____
             Patrice L. Bishop

GARY S. GRAIFMAN
KANTROWITZ, GOLDHAMER &
GRAIFMAN
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Telephone: (845) 356-2570
Facsimile: (845) 356-4335

Attorneys for Plaintiffs
MARTIN VOGEL and KENNETH MAHONEY

AM. STIPULATION AND AGREEMENT OF
SETTLEMENT - C-06-5208-JF

Exhibit A

1

2

3

4

5

6

7

8

9

10

11

12

13

**UNITED STATES DISTRICT COURT**

14

**NORTHERN DISTRICT OF CALIFORNIA**

15

**SAN JOSE DIVISION**

16

IN RE APPLE INC. SECURITIES
LITIGATION

17

Case No. C-06-5208-JF

<u>CLASS ACTION</u>

18

THIS DOCUMENTS RELATES TO:
ALL ACTIONS

19

**[PROPOSED] AMENDED ORDER
PRELIMINARILY APPROVING
SETTLEMENT, DIRECTING NOTICE
OF SETTLEMENT, AND SCHEDULING
SETTLEMENT FAIRNESS HEARING**

20

21

22

23

24

25

26

27

28

1       WHEREAS, on September 28, 2010, Lead Plaintiff, the New York City Employees'

2   Retirement System, plaintiffs Martin Vogel and Kenneth Mahoney, and defendants Apple Inc.,

3   Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler,

4   Arthur D. Levinson, and Jerome B. York,[1] entered into a Stipulation and Agreement of

5   Settlement setting forth the terms and conditions for the proposed settlement of the Released

6   Claims (the "September 28 Stipulation");[2]

7       WHEREAS, the Court held a hearing on October 7, 2010 and entered the Preliminary

8   Approval Order;

9       WHEREAS, on November 12, 2010, the Settling Parties entered into an Amended

10   Stipulation and Agreement of Settlement (the "Stipulation") restructuring Apple's payment

11   obligations under the Settlement so that, instead of paying $14 million into the Settlement Fund

12   and donating $2.5 million to certain corporate governance programs, Apple will pay $16.5

13   million into the Settlement Fund, and any funds remaining after payment of Class Member claims

14   will be donated to corporate governance programs;

15       WHEREAS, the Settling Parties have requested the Court enter this Amended Preliminary

16   Approval Order to (1) preliminarily approve the Settlement as amended, (2) set forth a revised

17   schedule for the Settlement, and (3) approve the revised Notice, Publication Notice, and Proof of

18   Claim reflecting the terms of the Stipulation and specifying that Proofs of Claim may be

19   submitted online and by nominees;

20       WHEREAS, the Court having read and considered the Stipulation and the exhibits thereto,

21   and finding that substantial and sufficient grounds exist for entering this Order;

22       **NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

23       1.    For the purposes of this Order, the Court adopts all defined terms as set forth in the

24   Stipulation.  Any inconsistencies between the Stipulation and Notice will be controlled by the

25   language of the Stipulation.

26   _____

[1]  Mr. York died on March 18, 2010.

27   [2]  Except as defined below, all capitalized terms contained herein shall have the same meanings
as set forth in the Amended Stipulation and Agreement of Settlement dated as of November 12,

28   2010.

[PROP] AM. PRELIM. APPROVAL ORDER
C-06-5208-JF

1    2.    The Court preliminarily approves the Settlement, as reflected in the Stipulation, as

2  being fair, reasonable and adequate, pending a final hearing on the Settlement.

3    3.    Pending a final determination of whether the Settlement should be approved and

4  the proposed Order and Final Judgment entered, Plaintiffs and all Class Members, whether

5  directly, representatively, or in any other capacity, shall not commence or prosecute, or cause

6  anyone to commence or prosecute, any action or proceeding asserting any of the Released Claims

7  against any of the Released Parties in any court or tribunal.

8                              **CLASS CERTIFICATION**

9    4.    The Action is conditionally certified for settlement purposes as a class action

10  pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class

11  consisting of all persons and entities that purchased Apple common stock during the Class Period.

12  Excluded from the Class are Defendants, all current and former directors and officers of Apple,

13  and all employees of Apple and/or its subsidiaries during the Class Period, and any family

14  member, trust, company, entity, or affiliate controlled or owned by any of the excluded persons

15  and entities referenced above.  Also excluded from the Class are any persons and entities that

16  exclude themselves by filing a request for exclusion in accordance with the requirements set forth

17  in the Notice.

18    5.    The Court has determined preliminarily and for purposes of the Settlement that

19  (a) the Class is so numerous that joinder of all members is impracticable; (b) there are questions

20  of law and fact common to the Class that, as to the Settlement and related matters, predominate

21  over individual questions; (c) Lead Plaintiff's claims are typical of the claims of the Class;

22  (d) Lead Plaintiff will fairly and adequately protect and represent the interests of the Class; and

23  (e) a class action is superior to other available methods for the fair and efficient adjudication of

24  this controversy.

25    6.    Certification of the Class for purposes of the Settlement shall not constitute

26  certification of the Class for any other purpose.

27                                    **NOTICE**

28    7.    The Court approves the form and content of the Notice and Publication Notice

[PROP] AM. PRELIM. APPROVAL ORDER
C-06-5208-JF

1   attached hereto as Exhibits 1 and 2, respectively, and the Proof of Claim attached hereto as

2   Exhibit 3.  Further, the Court finds that the form and content of the Notice, Publication Notice,

3   and Proof of Claim, and the procedures for publication, mailing, and distribution thereof

4   substantially in the manner and form set forth in paragraphs 9 and 10 of this Order, satisfy the

5   requirements of Rule 23 of the Federal Rules of Civil Procedure, 15 U.S.C. § 78u-4(a)(7), and

6   due process, and constitute the best notice practicable under the circumstances.

7       8.      The Court approves the appointment of Epiq Class Action & Claims Solutions,

8   Inc. as the Claims Administrator.  As provided in the Stipulation, Apple shall reimburse the

9   Claims Administrator for the reasonable costs incurred to mail and publish the Notice and

10  Publication Notice, respectively.

11      9.      Within ten (10) business days of the date of this Order (_____), the

12  Claims Administrator shall commence sending copies of the Notice and Proof of Claim by first-

13  class mail, postage pre-paid, to all Class Members at the address of each such person or entity as

14  set forth in the records of Apple or its transfer agent, or who otherwise may be identified through

15  further reasonable effort.  The Claims Administrator shall use reasonable efforts to give notice to

16  nominee purchasers such as brokerage firms and other persons and entities who purchased Apple

17  common stock during the Class Period as record owners but not beneficial owners.  Such

18  nominee purchasers are directed within fourteen (14) days of their receipt of the Notice, to either

19  forward copies of the Notice and Proof of Claim to their beneficial owners, or to provide the

20  Claims Administrator with lists of the names and addresses of the beneficial owners.  The Claims

21  Administrator is ordered to send the Notice and Proof of Claim promptly to such identified

22  beneficial owners.  Nominee purchasers who elect to forward the Notice and Proof of Claim to

23  their beneficial owners shall send a statement to the Claims Administrator confirming that the

24  mailing was made as directed.  At or before the Settlement Fairness Hearing, Plaintiffs' Lead

25  Counsel shall file with the Court proof of mailing of the Notice and Proof of Claim to Class

26  Members.

27      10.     Within ten (10) business days of the date of this Order (_____), the

28  Claims Administrator shall cause the Publication Notice to be published in *Investor's Business*

[PROP] AM. PRELIM. APPROVAL ORDER
C-06-5208-JF

1   *Daily* and transmitted over *Business Wire*.  At or before the Settlement Fairness Hearing,

2   Plaintiffs' Lead Counsel shall file with the Court proof of publication of the Publication Notice.

3                           **SETTLEMENT FAIRNESS HEARING**

4          11.     The Settlement Fairness Hearing before this Court is hereby scheduled for

5   February 18, 2011, at 9:00 a.m., in the U.S. District Court for the Northern District of California,

6   280 South 1st Street, San Jose, California 95113:

7                  a.      to finally determine whether this Action satisfies the applicable

8   prerequisites for class action treatment under Rules 23(a) and (b) of the Federal Rules of Civil

9   Procedure;

10                 b.      to determine whether the Settlement is fair, reasonable, and adequate;

11                 c.      to determine whether the Order and Final Judgment as provided in the

12  Stipulation should be entered, dismissing the Action with prejudice;

13                 d.      to determine whether the release of the Released Claims, as set forth in the

14  Stipulation, should be provided to the Released Parties;

15                 e.      to determine whether the proposed Plan of Allocation for the distribution of

16  the Net Settlement Fund is fair and reasonable;

17                 f.      to consider the application of Plaintiffs' Lead Counsel for an award of

18  Attorneys' Fees and Expenses; and

19                 g.      to hear and rule on such other matters as the Court may deem appropriate.

20         12.     The Court reserves the right to continue the Settlement Fairness Hearing and its

21  consideration of the matters listed above without further notice to Class Members.

22         13.     The Court reserves the right to approve the Settlement at or after the Settlement

23  Fairness Hearing with such modifications as may be consented to by the Settling Parties without

24  further notice to the members of the Class.  The Court further reserves the right to enter its Order

25  and Final Judgment approving the Stipulation regardless of whether the Court has approved the

26  Plan of Allocation or awarded Attorneys' Fees and Expenses.

27         14.     Any Class Member who desires to do so may object to the Settlement or any of its

28  terms, the Plan of Allocation, and/or Plaintiffs' Lead Counsel's application for Attorneys' Fees

1 and Expenses by submitting a written objection that (i) includes the Class Member's name,

2 address, telephone number, and signature; (ii) identifies the date(s), price(s), and number of

3 shares of all purchases and sales of Apple common stock made during the Class Period;

4 (iii) states the reason(s) why the Class Member objects; and (iv) attaches any other documents

5 and writings that the Class Member wants the Court to consider.  The objection must be filed with

6 the Clerk's Office at the U.S. District Court for the Northern District of California, 280 South 1st

7 Street, San Jose, CA, 95113, by no later than <u>January 21, 2011</u>, and served on the same day by

8 first-class mail postage pre-paid to each of the following counsel:

9       George A. Riley, Esq.
      O'MELVENY & MYERS LLP

10       Two Embarcadero Center, 28th Floor
      San Francisco, CA 94111

11       *Attorneys for Defendant Apple Inc.*

12       Jay W. Eisenhofer, Esq.
      Michael J. Barry, Esq.

13       GRANT & EISENHOFER P.A.
      1201 N. Market Street

14       Wilmington, DE 19801
      *Attorneys for Lead Plaintiff New York City Employees' Retirement System*

15

16 Class Members also wishing to attend the Settlement Fairness Hearing and speak in opposition to

17 the Settlement, the Plan of Allocation, and/or Plaintiffs' Lead Counsel's application for

18 Attorneys' Fees and Expenses must state in their written objection(s) that they intend to appear at

19 the Settlement Fairness Hearing.  Any such Class Member may appear in person or arrange, at

20 his, her, or its own expense, for a lawyer to represent them at the Settlement Fairness Hearing.

21       15.     Any person or entity who fails to object in the manner prescribed above in

22 paragraph 14 shall be deemed to have waived such objection in this Action or any related action

23 or proceeding, unless otherwise ordered by the Court.

24       16.     Any Class Member who wishes to be excluded from the Class must set forth in

25 writing his, her or its name, address, and telephone number, state that the Class Member

26 "request[s] exclusion from the Class in *In re Apple Inc. Securities Litigation*, Case No. C-06-

27 5208-JF," and sign the writing.  The Class Member must also provide in the writing the date(s),

28

[PROP] AM. PRELIM. APPROVAL ORDER
C-06-5208-JF

price(s), and number(s) of shares of all purchases and sales of Apple common stock during the Class Period.  Any request for exclusion must be sent by first-class mail postage pre-paid to the Claims Administrator and the counsel for the parties as set forth in paragraph 14 above, postmarked no later than <u>January 21, 2011.</u>

17.     Any Class Member who does not timely and validly request exclusion from the Class shall be bound by all determinations and judgments in the Action, whether favorable or unfavorable, and regardless of whether such Class Member executes and submits a Proof of Claim, unless otherwise ordered by the Court.

18.     All motions and papers in support of final approval of the Settlement, the Plan of Allocation, and Plaintiffs' Counsel's application for Attorneys' Fees and Expenses shall be filed by <u>January 7, 2011.</u>  All reply papers shall be filed by <u>February 4, 2011.</u>

## **OTHER MATTERS**

19.     Any Class Member who wishes to participate in the Settlement must complete and submit a Proof of Claim in accordance with the instructions contained therein.  Unless otherwise ordered by the Court, all Proofs of Claim must be completed and submitted no later than <u>March 15, 2011.</u>  Any Class Member who does not complete and submit a valid Proof of Claim within the time provided by this Order or further order of the Court shall be barred from sharing in the distribution of the Net Settlement Fund.

20.     Any order or proceedings relating to the Plan of Allocation or any rulings the Court may make regarding the amount of Attorneys' Fees and Expenses to be awarded, or any appeal from any orders relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Order and Final Judgment approving the Stipulation and the Settlement of the Action.

21.     Upon the Effective Date, all Released Claims shall be fully, finally, and forever resolved, discharged and settled on the merits and with prejudice, except as otherwise set forth herein.

22.     If the Settlement provided for in the Stipulation is approved by the Court following the Settlement Fairness Hearing, an Order and Final Judgment shall be entered as described in the

[PROP] AM. PRELIM. APPROVAL ORDER
C-06-5208-JF

1    Stipulation.

2           23.     If the Stipulation is not approved by the Court, is terminated or cancelled by any of

3    the Settling Parties in accordance with the Stipulation, or fails to become effective for any other

4    reason, this Action shall proceed without prejudice to any Settling Party as to any matter of law or

5    fact, as if the Stipulation had not been made and had not been submitted to the Court (except as

6    provided in the Stipulation).  The Stipulation, any provision contained in the Stipulation, or any

7    action undertaken pursuant thereto or the negotiation thereof by any Settling Party shall not be

8    deemed a presumption, concession, or admission by any Settling Party of any fault, liability, or

9    wrongdoing as to the facts or claims alleged or asserted in the Action, or any other actions or

10   proceedings, and shall not be offered or received in evidence or otherwise used by any person in

11   the Action or interpreted, construed, deemed, or invoked in any other action or proceeding,

12   whether civil, criminal, or administrative.

13          24.     The Stipulation, the Settlement, and any act performed or document executed

14   pursuant to or in furtherance of the Stipulation or the Settlement (a) is not and may not be deemed

15   to be and may not be used as an admission of, or evidence of, the validity of any Released

16   Claims, or of any wrongdoing or liability of the Released Parties and (b) is not and may not be

17   deemed to be and may not be used as an admission of, or evidence of, any fault or omission of

18   any Released Party in any civil, criminal, or administrative proceeding in any court,

19   administrative agency, or other tribunal.

20          25.     All funds held by the Escrow Agent shall be deemed to be in the custody of the

21   Court and shall remain subject to the Court's jurisdiction until such time as the funds shall be

22   distributed or returned to the parties who deposited such funds pursuant to the Stipulation, the

23   Plan of Allocation, and/or further order(s) of the Court.  The costs of providing notice to the Class

24   and administering the Settlement Fund, as provided for in the Stipulation, shall be non-refundable

25   in the event the Settlement is not approved.

26

27

28

[PROP] AM. PRELIM. APPROVAL ORDER
                                         C-06-5208-JF

26.     The Court hereby retains exclusive jurisdiction to consider all further matters arising out of or connected with the Settlement.

**IT IS SO ORDERED.**

DATED: _____

_____
The Honorable Jeremy Fogel
United States District Judge

Submitted by:

GEORGE A. RILEY (S.B. #118304)
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, California  94111-3828
Telephone:     (415) 984-8700
Facsimile:     (415) 984-8701
E-Mail:        griley@omm.com

Attorneys for Defendant APPLE INC.

DOUGLAS R. YOUNG (S.B. #73248)
FARELLA BRAUN & MARTEL LLP
Russ Building
235 Montgomery Street, 17th floor
San Francisco, California 94104
Telephone:     (415) 954-4400
Facsimile:     (415) 954-4480
E-Mail:        dyoung@fbm.com

Attorneys for Defendants
STEVEN P. JOBS, WILLIAM V. CAMPBELL,
MILLARD S. DREXLER, ARTHUR D.
LEVINSON and JEROME B. YORK

JEROME C. ROTH (S.B. #159483)
YOHANCE C. EDWARDS (S.B. #237244)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077
E-Mail:        Jerome.Roth@mto.com
               Yohance.Edwards@mto.com

Attorneys for Defendants
FRED D. ANDERSON and NANCY R. HEINEN

- 8 -

1   JAY W. EISENHOFER (*admitted pro hac vice*)
    MICHAEL J. BARRY (*admitted pro hac vice*)
2   GRANT & EISENHOFER P.A.
    Chase Manhattan Centre
3   1201 N. Market Street
    Wilmington, Delaware 19801
4   Telephone:      (302) 622-7000
    Facsimile:      (302) 622-7100
5   E-Mail:         jeisenhofer@gelaw.com
                    mbarry@gelaw.com
6
    MERRILL GLEN EMERICK (SB# 117248)
7   ANDERLINI & EMERICK LLP
    411 Borel Avenue, Suite 501
8   San Mateo, California 94402
    Telephone:      (650) 242-4884
9   Facsimile:      (650) 212-0081

10  Attorneys for Lead Plaintiff
    THE NEW YORK CITY EMPLOYEES'
11  RETIREMENT SYSTEM

12  PATRICE L. BISHOP (S.B. #182256)
    HOWARD T. LONGMAN
13  STULL, STULL & BRODY
    10940 Wilshire Boulevard, Suite 2300
14  Los Angeles, California 90024
    Telephone:      (310) 209-2468
15  Facsimile:      (310) 209-2087
    Email:          pbishop@ssbla.com
16
    GARY S. GRAIFMAN
17  KANTROWITZ, GOLDHAMER & GRAIFMAN
    747 Chestnut Ridge Road
18  Chestnut Ridge, New York 10977
    Telephone: (845) 356-2570
19  Facsimile: (845) 356-4335

20  Attorneys for Plaintiffs
    MARTIN VOGEL and KENNETH MAHONEY
21

22

23

24

25

26

27

28

[PROP] AM. PRELIM. APPROVAL ORDER
C-06-5208-JF

Exhibit A-1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Case No. C-06-5208-JF |
| THIS DOCUMENTS RELATES TO:<br>ALL ACTIONS | CLASS ACTION |

# NOTICE OF PROPOSED SETTLEMENT, SETTLEMENT FAIRNESS HEARING, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES

*A FEDERAL COURT AUTHORIZED THIS NOTICE.  THIS IS NOT A SOLICITATION FROM A LAWYER.*
PLEASE READ THIS NOTICE CAREFULLY!

This Notice relates to a proposed settlement of a class action lawsuit (the "Action") filed by the Court-appointed "Lead Plaintiff," the New York City Employees' Retirement System ("NYCERS"), and plaintiffs Martin Vogel and Kenneth Mahoney (together with NYCERS, "Plaintiffs"), against Apple Inc. ("Apple") and the following current or former officers and directors: Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York (together with Apple, "Defendants").

- If you purchased Apple common stock between August 24, 2001, and June 29, 2006, both dates inclusive (the "Class Period"), you may be a "Class Member" and may be eligible for a payment from the proposed settlement described below (the "Settlement"). Payments will be made if the Court approves the Settlement and Plan of Allocation (as defined below) and after any appeals are resolved and completion of claims processing.
- This Notice explains important legal rights you may have. Your legal rights will be affected regardless of whether you do or do not act. These rights, and the deadlines to exercise them, are explained below.

1. **Statement of Plaintiffs' Recovery**: Pursuant to the Settlement, Apple will pay $16.5 million in cash into an interest bearing escrow account (the "Settlement Fund"). Apple also has agreed to implement certain corporate governance measures. The Settlement Fund, less taxes (the "Net Settlement Fund"), will be used to pay the authorized claims of persons and entities that purchased Apple common stock during the Class Period ("Authorized Claimant"). The terms outlined herein are amended from the terms initially presented to the Court on October 7, 2010. Apple's payment obligations under the Settlement have been restructured so that, instead of paying $14 million into the Settlement Fund and donating $2.5 million to the twelve corporate governance programs at universities located throughout the United States, Apple will pay $16.5 million into the Settlement Fund. Any funds remaining in the Net Settlement Fund after payment of Class Members' claims will be donated in accordance with the Plan of Allocation on page 6 to nine corporate governance programs, which were among the twelve programs designated previously.

Plaintiffs' Lead Counsel estimates that owners of approximately 234.8 million shares of Apple common stock may be eligible for potential recovery, with an average per share recovery from the Net Settlement Fund of approximately $0.07. Based on its experience with other cases, Plaintiffs' Lead Counsel believes that the average per share recovery will be greater than $0.07 because typically fewer than 100% of eligible shareholders elect to participate in securities class action settlements. The Plan of Allocation on page 6 has information about an Authorized Claimant's potential recovery and how the Net Settlement Fund will be distributed.

2. **Statement of Potential Outcome of Action**: The parties disagree on both liability and damages and the average amount of damages that would be recoverable if Plaintiffs prevailed. Defendants deny that they are liable to Plaintiffs or the Class and deny that Plaintiffs or the Class have suffered any damage. The issues on which the parties disagree include: (a) whether the complaint's allegations support a federal securities law claim; (b) whether Defendants acted with the requisite state of mind, or scienter; (c) whether Defendants' alleged misstatements or omissions harmed Class Members; (d) whether Defendants' alleged misstatements or omissions were material to investors; (e) the extent to which factors other than the alleged misstatements or omissions affected (if at all) Apple's stock price during the Class Period.

3. **Statement of Attorneys' Fees and Expenses Sought**: Plaintiffs' Counsel (as defined below) intend to apply for an award of fees incurred by Plaintiffs' Counsel in connection with the Action in the amount of $2,000,000, plus expenses not to exceed $450,000. Of this amount, Plaintiffs' Lead Counsel, the law firm of Grant & Eisenhofer P.A., intends to apply for an award for fees in the amount of $1,533,750, which represents 7.5% of the total economic value of the Settlement, plus out of pocket expenses; the law firm of Stull, Stull & Brody, counsel for plaintiffs in Vogel, et al. v. Apple Inc., et al., Case No. C-08-3123-JF (N.D. Cal.) ("Vogel II"), intends to apply for an award of fees in the amount of $466,250, which represents 2.28% of the total economic value of the Settlement, plus out of pocket expenses. Apple has agreed to pay Plaintiffs' Lead Counsel the amount of reasonable attorneys' fees and expenses as may be awarded by the Court ("Attorneys' Fees and Expenses"). Apple will pay these Attorneys' Fees and Expenses separately, and such payment will not affect the amount of the Net Settlement Fund. The term "total economic value of the Settlement," as used herein, includes all payments Apple has agreed to make under the Settlement, including Apple's payment to establish the Settlement Fund, reimbursement of the costs of administering and distributing the Net Settlement Fund, and payment of Attorneys' Fees and Expenses.

4. **Identification of Attorneys' Representatives**: Questions regarding the Settlement may be directed to Plaintiffs' Lead Counsel: Jay W. Eisenhofer and Michael J. Barry, Grant & Eisenhofer P.A., 1201 N. Market Street, Wilmington, DE 19801, (302) 622-7000.

**5.** **Reasons for the Settlement.** Plaintiffs believe that the Settlement provides substantial and immediate benefits to the Class. These benefits must be compared to the risk that the Class may recover a lower amount or nothing after a contested trial and possible appeals that are likely to require several years of expensive litigation. Plaintiffs have further considered the uncertain outcome, risks, difficulties, and delays inherent in any litigation and are mindful of the problems of proof and possible defenses to the claims asserted in the Action.

Defendants deny all allegations of wrongdoing or liability whatsoever and maintain that they have meritorious defenses to all claims alleged in the Action. Defendants believe that further litigation would be protracted, burdensome, expensive, and distracting. Defendants have also determined that further litigation would divert resources and attention from other activities that are important to Apple's business and its shareholders' interests.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a Proof of Claim by March 15, 2011.** | The only way to potentially receive a payment from the Settlement. |
| **Exclude yourself from the Class by January 21, 2011.** | Receive no payment from the Settlement. This is the only option that allows you to retain your right to file a separate lawsuit against Defendants related to the claims at issue in the Action. |
| **Object to the Settlement by January 21, 2011.** | Write to the Court explaining why you do not think the Settlement should be approved and, if you wish to attend and speak at the Settlement Fairness Hearing, indicating your intention to do so. |
| **Attend the Settlement Fairness Hearing on February 18, 2011.** | Submit a valid written objection indicating your intention to attend the Settlement Fairness Hearing and speak in Court about the fairness of the Settlement. |
| **Do nothing.** | Receive no payment from the Settlement. Give up your rights. |

## WHAT THIS NOTICE CONTAINS

WHY DID I GET THIS NOTICE? ................................................................................................ 3

WHAT IS THIS CASE ABOUT? WHAT HAS HAPPENED SO FAR? ........................................ 3

WHAT RECOVERY DOES THE SETTLEMENT PROVIDE? ...................................................... 3

HOW DO I KNOW IF I AM PART OF THIS SETTLEMENT? ..................................................... 3

WHY HAVE PLAINTIFFS AGREED TO THE SETTLEMENT? ................................................... 4

WHY HAVE DEFENDANTS AGREED TO THE SETTLEMENT? ............................................... 4

HOW DO I GET A PAYMENT? ................................................................................................. 4

WHEN WOULD I GET MY PAYMENT? .................................................................................... 4

HOW MUCH WILL MY PAYMENT BE? .................................................................................... 4

WHAT RIGHTS AM I GIVING UP BY AGREEING TO THE SETTLEMENT? ............................. 4

DO I HAVE A LAWYER IN THIS CASE? .................................................................................. 5

HOW WILL THE LAWYERS BE PAID? ..................................................................................... 5

IF I DON'T WANT TO PARTICIPATE IN THE SETTLEMENT, HOW DO I EXCLUDE MYSELF? ................ 5

HOW DO I TELL THE COURT THAT I DO NOT LIKE THE PROPOSED SETTLEMENT? .......................... 5

WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? ........... 6

WHAT HAPPENS IF I DO NOTHING AT ALL? ......................................................................... 6

PLAN OF ALLOCATION ......................................................................................................... 6

CORPORATE REFORM MEASURES........................................................................................ 8

SPECIAL NOTICE TO BROKERS, BANKS AND OTHER NOMINEES ...................................... 8

CAN I SEE THE COURT FILE? WHOM SHOULD I CONTACT IF I HAVE QUESTIONS? ......................... 8

## WHY DID I GET THIS NOTICE?

1.  You are being sent this Notice because you or someone in your family may have acquired Apple common stock during the Class Period. As a potential Class Member, you have a right to know about the proposed Settlement and your options before the Court decides whether to approve the Settlement.

2.  This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. This Notice also is intended to inform you of a hearing at which the Court will consider the Settlement, the Plan of Allocation, the application for Attorneys' Fees and Expenses, and other related matters (the "Settlement Fairness Hearing").

**THE ISSUANCE OF THIS NOTICE IS NOT AN EXPRESSION OF THE COURT'S OPINION ON THE MERITS OF ANY CLAIM IN THE LAWSUIT, AND THE COURT STILL HAS TO DECIDE WHETHER TO APPROVE THE SETTLEMENT.**

## WHAT IS THIS CASE ABOUT?  WHAT HAS HAPPENED SO FAR?

3.  On August 24, 2006, plaintiffs Martin Vogel and Kenneth Mahoney filed a class action lawsuit alleging federal securities laws violations against Apple and certain other defendants in the U.S. District Court for the Northern District of California, captioned Vogel, et al. v. Jobs, et al., Case No. C-06-5208-JF ("Vogel I").

4.  On January 19, 2007, the Court appointed NYCERS as Lead Plaintiff and approved NYCERS's selection of the law firm Grant & Eisenhofer P.A. as Plaintiffs' Lead Counsel.

5.  On March 23, 2007, NYCERS filed a consolidated class action complaint (the "Consolidated Complaint"). On November 14, 2007, the Court dismissed the Consolidated Complaint. On December 14, 2007, NYCERS filed a motion to file an amended complaint. On May 14, 2008, the Court denied NYCERS's motion. On June 12, 2008, the Court entered judgment and dismissed NYCERS's claims with prejudice.

6.  On June 17, 2008, NYCERS filed a notice of appeal before the U.S. Court of Appeals for the Ninth Circuit (the "Ninth Circuit").

7.  On June 27, 2008, plaintiffs Vogel and Mahoney filed another class action lawsuit in the U.S. District Court for the Northern District of California, captioned Vogel, et al. v. Apple Inc., et al., Case No. C-08-3123-JF (Vogel II).

8.  On January 28, 2010, the Ninth Circuit in Vogel I affirmed the Court's dismissal of NYCERS's claims in the Consolidated Complaint, but granted NYCERS leave to file its amended complaint.

9.  On March 22, 2010, NYCERS filed a First Amended Consolidated Class Action Complaint in Vogel I.

10. On April 8, 2010, the Court entered an order consolidating Vogel I and Vogel II, designating NYCERS as Lead Plaintiff and Grant & Eisenhofer P.A. as Plaintiffs' Lead Counsel for the consolidated action. The consolidated action is captioned In re Apple Inc. Securities Litigation, Case No. C-06-5208-JF.

11. On May 14, 2010, Plaintiffs filed the operative complaint in the Action, the Corrected First Amended Class Action Complaint.

12. Plaintiffs allege that Apple issued false and misleading financial statements regarding the amount of compensation paid to Apple executives and its accounting for certain past stock option grants. These alleged misstatements, Plaintiffs claim, artificially inflated Apple's stock price during the Class Period. Plaintiffs seek money damages for alleged violations of federal securities laws. Defendants deny all allegations of wrongdoing or liability whatsoever and maintain that they have meritorious defenses to each claim.

## WHAT RECOVERY DOES THE SETTLEMENT PROVIDE?

13. The Net Settlement Fund consists of $16.5 million in cash, plus interest, less taxes. Apple has also agreed to implement certain corporate governance measures. Attorneys' Fees and Expenses, notification costs, and costs to administer and distribute the Net Settlement Fund will be paid separately by Apple and will not be deducted from the Net Settlement Fund.

14. Plaintiffs' Lead Counsel estimates that owners of approximately 234.8 million shares of Apple common stock may be eligible for potential recovery, with an average per share recovery from the Net Settlement Fund of approximately $0.07. Based on its experience with other cases, Plaintiffs' Lead Counsel believes that the average per share recovery will be greater than $0.07 because typically fewer than 100% of eligible shareholders elect to participate in securities class action settlements.  The Plan of Allocation on page 6 has information about an Authorized Claimant's potential recovery and how the Net Settlement Fund will be distributed.

## HOW DO I KNOW IF I AM PART OF THIS SETTLEMENT?

15. The Class covered by this Settlement consists of all persons and entities that purchased Apple common stock during the Class Period. Excluded from the Class are Defendants, all current and former directors and officers of Apple, all employees of Apple and/or its subsidiaries during the Class Period, and any family member, trust, company, entity, or affiliate controlled or owned by any of the excluded persons and entities referenced above. Also excluded are any persons and entities that exclude themselves by filing a request for exclusion in accordance with the requirements set forth on page 5 ("If I Do Not Want to Participate in the Settlement, How Do I Exclude Myself?").

16. Check your investment records or contact your broker to determine whether you purchased Apple common stock during the Class Period. If you sold Apple common stock during the Class Period, or if one of your mutual funds purchased Apple common stock during the Class Period, that alone does not make you a Class Member.

17. If you are still not sure whether you are included, you may call 1-888-760-4869 or visit www.AppleSecuritiesSettlement.com. You also may fill out and return the Proof of Claim as described in Sections 20, 23 – 25 & 43 – 53 below to determine whether you qualify.

RECEIPT OF THIS NOTICE DOES NOT NECESSARILY MEAN YOU ARE A CLASS MEMBER OR ARE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT. IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT, YOU MUST EITHER SUBMIT YOUR COMPLETED AND SIGNED PROOF OF CLAIM ONLINE AT WWW.APPLESECURITIESSETTLEMENT.COM BY NO LATER THAN MARCH 15, 2011, OR SEND IT TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL POSTAGE PRE-PAID POSTMARKED NO LATER THAN MARCH 15, 2011.

## WHY HAVE PLAINTIFFS AGREED TO THE SETTLEMENT?

18. Plaintiffs believe that the claims alleged in the Action have merit. Nevertheless, Plaintiffs recognize that significant expense and prolonged proceedings will be necessary to prosecute the Action through trial and, potentially, through appeals. Plaintiffs have also taken into account the uncertain outcome, risks, difficulties and delays inherent in any litigation. Plaintiffs are mindful of the problems of proof and possible defenses to the claims asserted in the Action. Based on a careful evaluation, Plaintiffs and Plaintiffs' Counsel have determined that the terms and conditions of the Settlement are fair, reasonable and adequate, and in the best interests of the Class.

## WHY HAVE DEFENDANTS AGREED TO THE SETTLEMENT?

19. Defendants deny all allegations of wrongdoing or liability whatsoever and maintain they have meritorious defenses to each claim. Defendants also deny that Plaintiffs or the Class have suffered any harm as a result of the alleged conduct. In particular, Defendants deny that any harm allegedly suffered by Plaintiffs or the Class was caused by any misrepresentations or omissions or that Apple's share price was artificially inflated by reason of any alleged misrepresentations or omissions. Nonetheless, Defendants believe that further litigation would be protracted, burdensome, expensive, and distracting. Defendants have also determined that further litigation would divert resources and attention from other activities that are important to Apple's business and its shareholders' interests.

## HOW DO I GET A PAYMENT?

20. To qualify for a payment, you must submit the Proof of Claim that accompanies this Notice. You may also get a Proof of Claim by calling 1-888-760-4869 or visiting www.AppleSecuritiesSettlement.com. Read the instructions carefully, fill out the Proof of Claim, include all the documents it asks for, sign it, and either submit it online at www.AppleSecuritiesSettlement.com no later than March 15, 2011, or send it by first-class mail postage pre-paid postmarked no later than March 15, 2011.

21. Each Class Member who submits a Proof of Claim shall be deemed to have submitted to the jurisdiction of the U.S. District Court for the Northern District of California with respect to that Proof of Claim.

## WHEN WOULD I GET MY PAYMENT?

22. The Court will hold a "Settlement Fairness Hearing" on February 18, 2011. The Settlement Fairness Hearing is described in more detail on page 6. If the Court approves the Settlement, there may be appeals. It is uncertain whether the appeals (if any) will be resolved, and resolving them can take time, perhaps more than a year. It also takes time for all Proofs of Claim to be processed. After any appeals are resolved and all Proofs of Claim are processed, Authorized Claimants will be paid. Please be patient.

## HOW MUCH WILL MY PAYMENT BE?

23. You can calculate your "Recognized Claim" in accordance with the Plan of Allocation on page 6.

24. If you qualify for a payment, the amount will depend on a number of factors, including (i) when during the Class Period you purchased shares of Apple common stock; (ii) the purchase price paid for the shares; (iii) whether the shares were held at the end of the Class Period or sold during the Class Period; (iv) if sold, when the shares were sold and the amount received; and (v) the number of Recognized Claims (discussed below).

25. The Court may disallow or adjust any Class Member's claim. The Court also may modify the Plan of Allocation without further notice to the Class. Payments pursuant to the Plan of Allocation, as approved by the Court, will be conclusive against all Authorized Claimants. No person shall have any claim against Defendants, Plaintiffs' Counsel, the Claims Administrator, or other agent designated by Plaintiffs' Lead Counsel based on the distributions made substantially in accordance with any Settlement and/or Plan of Allocation approved by the Court.

## WHAT RIGHTS AM I GIVING UP BY AGREEING TO THE SETTLEMENT?

26. If the Settlement is approved, the Court will enter an Order and Final Judgment dismissing the Action with prejudice. The Order and Final Judgment shall, upon the Effective Date, fully, finally, and forever resolve, discharge and settle all Released Claims on the merits and with prejudice. Except for those Class Members who validly and timely request to be excluded from the Class, the Order and Final Judgment will also forever bar and enjoin Class Members and the Released Parties from instituting, continuing, or prosecuting any action asserting any Released Claims against any Released Party.

27. The precise definitions of the capitalized terms in the paragraph above are in the Amended Stipulation and Agreement of Settlement dated as of November 12, 2010, which is available at www.AppleSecuritiesSettlement.com. In general, the term Released Claims includes, but is not limited to, all claims that were or could be asserted against Apple and its current and former officers and directors by Plaintiffs and any Class Member based on the allegations in this Action or similar proceedings. The term Released Parties generally includes, but is not limited to, Plaintiffs, Apple, and Apple's current and former officers and directors.

DO I HAVE A LAWYER IN THIS CASE?

28. The Court has ordered that the law firm of Grant & Eisenhofer P.A., in Wilmington, Delaware, will represent the interests of all Class Members. You will not be separately charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## HOW WILL THE LAWYERS BE PAID?

29. On January 7, 2011, or at such other time as the Court may direct, "Plaintiffs' Counsel" intend to apply for an award of fees incurred by Plaintiffs' Counsel in connection with the Action in the amount of $2,000,000, plus expenses not to exceed $450,000. Of this amount, Plaintiffs' Lead Counsel intends to apply for an award for fees in the amount of $1,533,750, which represents 7.5% of the total economic value of the Settlement, plus out of pocket expenses; the law firm of Stull, Stull & Brody, counsel for plaintiffs in Vogel II, intends to apply for an award of fees in the amount of $466,250, which represents 2.28% of the total economic value of the Settlement, plus out of pocket expenses.  After it is filed, Plaintiffs' Counsel's application for fees and expenses will be made available at www.AppleSecuritiesSettlement.com. Apple has agreed to pay Plaintiffs' Lead Counsel the amount of reasonable attorneys' fees and expenses as may be awarded by the Court (Attorneys' Fees and Expenses). Apple will pay these Attorneys' Fees and Expenses separately, and such payment will not affect the amount of the Net Settlement Fund. The term "total economic value of the Settlement," as used herein, includes all payments Apple has agreed to make under the Settlement, including Apple's payment to establish the Settlement Fund, reimbursement of the costs of administering and distributing the Net Settlement Fund, and payment of Attorneys' Fees and Expenses. "Plaintiffs' Counsel" includes Plaintiffs' Lead Counsel, and the law firms of Anderlini & Emerick LLP, Stull, Stull & Brody, and Kantrowitz, Goldhamer & Graifman.

30. The fees requested by Plaintiffs' Counsel will compensate them for their efforts in achieving the Settlement for the benefit of the Class, and for their risk in undertaking this representation on a contingency basis.

**THE ISSUANCE OF THIS NOTICE IS NOT AN EXPRESSION OF THE COURT'S OPINION ON ANY AWARD FOR ATTORNEYS' FEES AND EXPENSES.**

## IF I DON'T WANT TO PARTICIPATE IN THE SETTLEMENT, HOW DO I EXCLUDE MYSELF?

31. If the Court approves the Settlement and enters an Order and Final Judgment, each Class Member will be bound by the terms thereof unless such person or entity sends a copy of a written request for exclusion from the Class by first-class mail postage pre-paid, postmarked no later than January 21, 2011, to (1) Claims Administrator, In re Apple Inc. Securities Litigation, PO Box 6809, Portland, OR, 97228-6809, and (2) the following counsel:

| Plaintiffs' Lead Counsel: | Counsel for Apple: |
|---|---|
| Jay W. Eisenhofer | George A. Riley |
| Michael J. Barry | O'Melveny & Myers LLP |
| Grant & Eisenhofer P.A. | Two Embarcadero Ctr., 28th Floor |
| 1201 N. Market Street | San Francisco, CA 94111 |
| Wilmington, DE 19801 | |

32. To be valid, a written request for exclusion MUST (i) include your name, address, telephone number, and your signature, (ii) state that you "request exclusion from the Class in In re Apple Inc. Securities Litigation, Case No. C-06-5208-JF"; and (iii) identify the date(s), price(s), and number of shares of all purchases and sales of Apple common stock you made during the Class Period. Requests for exclusion will not be accepted if the requests do not include all of this required information or if the requests are not sent in accordance with Section 31 above, unless otherwise ordered by the Court.

33. If you are a Class Member and you, or someone acting on your behalf, does not submit a timely and valid written request for exclusion, and the Court approves the Settlement and enters an Order and Final Judgment, you will be bound by the terms thereof.

34. If you are a Class Member and you, or someone acting on your behalf, submits a valid written request to be excluded from the Class, you will not receive any benefits provided for in the Settlement.

## HOW DO I TELL THE COURT THAT I DO NOT LIKE THE PROPOSED SETTLEMENT?

35. If you are a Class Member, you may object to the Settlement or any of its terms, the Plan of Allocation, and/or the application for Attorneys' Fees and Expenses. You may write to the Court setting out your objection. You may give reasons why you think the Court should not approve the Settlement terms or arrangements.

36. To object, you must send a signed letter stating you object to the Settlement. To be valid, an objection MUST (i) include your name, address, telephone number, and signature; (ii) identify the date(s), price(s), and number of shares of all purchases and sales of Apple common stock you made during the Class Period; and (iii) state the reason(s) why you object. If you wish to attend the Settlement Fairness Hearing and speak in opposition to the Settlement, the Plan of Allocation, and/or the application for Attorneys' Fees and Expenses, you must also state in your written objection that you intend to appear at the Settlement Fairness Hearing. The objection may include any other documents and writings you want the Court to consider. Your objection must be filed with the Clerk's Office at the U.S. District Court for the Northern District of California, 280 South 1st Street, San Jose, CA, 95113, by no later than January 21, 2011, and served on the same day by first-class mail postage pre-paid to each of the following counsel:

Jay W. Eisenhofer
Michael J. Barry
Grant & Eisenhofer P.A.
1201 N. Market Street
Wilmington, DE 19801

George A. Riley
O'Melveny & Myers LLP
Two Embarcadero Ctr., 28th Floor
San Francisco, CA 94111

Only valid objection(s) submitted in this manner will be considered at the Settlement Fairness Hearing, unless the Court orders otherwise.

37. Your attendance at the Settlement Fairness Hearing is not necessary to have your written objection considered by the Court. However, if you wish to attend the Settlement Fairness Hearing and speak in opposition to the Settlement, the Plan of Allocation, and/or the application for Attorneys' Fees and Expenses, you must state so in your written objection, filed and served as specified in Section 36 above. You may appear in person or arrange, at your own expense, for a lawyer to represent you at the Settlement Fairness Hearing.

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE SETTLEMENT, THE PLAN OF ALLOCATION, AND THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES.**

## WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

38. The Court will hold the Settlement Fairness Hearing at 9:00 a.m. on February 18, 2011, at the U.S. District Court for the Northern District of California, 280 South 1st Street, San Jose, CA, 95113. At this hearing, the Court will:

   a. Finally determine whether this Action satisfies the applicable prerequisites for class action treatment under Rules 23(a) and (b) of the Federal Rules of Civil Procedure;
   b. Determine whether the Settlement is fair, reasonable, and adequate;
   c. Determine whether an Order and Final Judgment should be entered, dismissing the Action with prejudice;
   d. Determine whether the release of the Released Claims should be provided to the Released Parties;
   e. Determine whether the Plan of Allocation for the distribution of the Net Settlement Fund is fair and reasonable; and
   f. Consider the application for Attorneys' Fees and Expenses.

39. The Settlement Fairness Hearing may be delayed from time to time by the Court without further written notice to the Class. If you intend to attend the Settlement Fairness Hearing, you should confirm the date and time with Plaintiffs' Lead Counsel.

40. You cannot speak at the Settlement Fairness Hearing if you previously excluded yourself from the Class (as provided in Section 31 above), or if you have not provided notice in your written objection(s) of your intention to speak at the Settlement Fairness Hearing in accordance with the procedures set forth in Section 36 above.

## WHAT HAPPENS IF I DO NOTHING AT ALL?

41. If you do nothing, you will get no money from the Settlement. You must submit a valid and timely Proof of Claim in order to possibly share in the Net Settlement Fund.

42. As discussed in Section 26 above, the Order and Final Judgment approving the Settlement will dismiss the Action with prejudice and fully, finally, and forever resolve, discharge and settle all Released Claims on the merits and with prejudice. Unless you validly and timely exclude yourself from the Class, you will be forever barred and enjoined from instituting, continuing, or prosecuting any action asserting any Released Claims against any Released Party.

## PLAN OF ALLOCATION

### GENERAL PROVISIONS

43. The Net Settlement Fund shall be distributed to Authorized Claimants.

44. The Claims Administrator shall determine each Authorized Claimant's pro rata share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim." The Recognized Claim formula is not intended to be an estimate of the amount of what a Class Member might have been able to recover after a trial. Nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionally allocated to Authorized Claimants.

45. Federal securities law provides that Authorized Claimants who sold all of their shares of Apple common stock on or before June 29, 2006, are not eligible for any recovery.

46. Federal securities law also limits the amount of potential recovery for Authorized Claimants who held their shares of Apple common stock after June 29, 2006. The limitation is based on the mean trading price of Apple common stock over or within the 90-day period after June 29, 2006. The mean trading price of Apple common stock over the 90-day period between June 30, 2006, and September 27, 2006, both dates inclusive, is $65.71. The mean trading price of Apple common stock on each trading day between June 30, 2006, and September 27, 2006, is specified in Section 52. below. Authorized Claimants who held their shares of Apple common stock after June 29, 2006, are not eligible for any recovery if they purchased the shares at a price (adjusted for stock splits) equal to or below the applicable mean trading price. Authorized Claimants who held their shares of Apple common stock after June 29, 2006, are eligible for potential recovery if they purchased the shares at a price (adjusted for stock splits) greater than the applicable mean trading price.

47. The Court has ...

48. Class Members who do not submit a valid Proof of Claim will not share in the Settlement. Except for those Class Members who validly and timely request to be excluded from the Class, Class Members who do not submit a valid Proof of Claim will nevertheless be bound by the Settlement and the Order and Final Judgment entered by the Court.

49. Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement. If any funds remain in the Net Settlement Fund by reason of un-cashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed to Class Members who have cashed their initial distributions, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution, up to a maximum distribution of $1.70 per share (the difference between the closing price of Apple common stock on June 29, 2006 ($58.97) and June 30, 2006 ($57.27)). If after six months after such re-distribution any funds shall remain in the Net Settlement Fund, then such balance shall be contributed in nine equal payments to the following nine corporate governance programs:

**Baruch College, City University of New York**
*Robert Zicklin Center for Corporate Integrity*

**Indiana University, Kelly School of Business**
*Institute for Corporate Governance*

**Kennesaw State University College of Business**
*Corporate Governance Center*

**Northwestern University, Kellogg School of Management**
*Corporate Governance Program*

**San Diego State University**
*Corporate Governance Institute*

**Stanford Law School & the Graduate School of Business**
*Rock Center for Corporate Governance*

**University of Texas, Dallas, School of Management**
*Institute for Excellence in Corporate Governance*

**Vanderbilt University Law School**
*Law & Business Program*

**Yale School of Management**
*Millstein Center for Corporate Governance & Performance*

50. Plaintiffs, Defendants, their respective counsel, and all other Released Parties, shall have no responsibility for or liability whatsoever for the investment or distribution of the Net Settlement Fund; the determination, administration, calculation, or payment of any Proof of Claim or non-performance of the Claims Administrator; or the payment or withholding of taxes owed by the Net Settlement Fund or any losses incurred in connection therewith.

## CALCULATION OF RECOGNIZED CLAIM

51. For purposes of calculating a Recognized Claim, the following terms shall apply:
    a. The date of the purchase or sale of Apple common stock is the trade date, not the settlement date.
    b. The first-in, first-out basis will be applied to both purchases and sales.
    c. The price paid or received shall exclude all commissions, taxes, and fees.
    d. Shares originally sold short shall have a Recognized Claim of zero ($0.00).
    e. No cash payment will be made on a Recognized Claim where the distribution amount is less than $5.00.

52. Recognized Claims shall be calculated as follows:
    a. If an Authorized Claimant purchased shares of Apple common stock during the Class Period and sold such shares on or before June 29, 2006, then the Recognized Claim for such shares shall be zero ($0.00).
    b. If an Authorized Claimant purchased shares of Apple common stock during the Class Period and sold such shares between June 30, 2006, and September 27, 2006, both dates inclusive, then:
        i. For shares purchased at a price (adjusted for stock splits) equal to or less than the applicable mean trading price on the date on which such shares were sold (the "Sell Date"), the Recognized Claim shall be zero ($0.00):

| Sale Date | Mean Trading Price | Sale Date | Mean Trading Price | Sale Date | Mean Trading Price | Sale Date | Mean Trading Price | Sale Date | Mean Trading Price |
|---|---|---|---|---|---|---|---|---|---|
| 6/30/06 | $57.27 | 7/20/06 | $54.98 | 8/8/06 | $59.99 | 8/24/06 | $61.90 | 9/12/06 | $63.75 |
| 7/3/06 | $57.61 | 7/21/06 | $55.36 | 8/9/06 | $60.12 | 8/25/06 | $62.07 | 9/13/06 | $63.96 |
| 7/5/06 | $57.40 | 7/24/06 | $55.74 | 8/10/06 | $60.26 | 8/28/06 | $62.19 | 9/14/06 | $64.15 |
| 7/6/06 | $56.99 | 7/25/06 | $56.10 | 8/11/06 | $60.37 | 8/29/06 | $62.29 | 9/15/06 | $64.33 |
| 7/7/06 | $56.67 | 7/26/06 | $56.54 | 8/14/06 | $60.48 | 8/30/06 | $62.40 | 9/18/06 | $64.51 |
| 7/10/06 | $56.39 | 7/27/06 | $56.90 | 8/15/06 | $60.67 | 8/31/06 | $62.53 | 9/19/06 | $64.67 |
| 7/11/06 | $56.29 | 7/28/06 | $57.33 | 8/16/06 | $60.89 | 9/1/06 | $62.66 | 9/20/06 | $64.86 |
| 7/12/06 | $55.87 | 7/31/06 | $57.84 | 8/17/06 | $61.09 | 9/5/06 | $62.85 | 9/21/06 | $65.03 |
| 7/13/06 | $55.47 | 8/1/06 | $58.26 | 8/18/06 | $61.28 | 9/6/06 | $63.00 | 9/22/06 | $65.16 |
| 7/14/06 | $54.99 | 8/2/06 | $58.69 | 8/21/06 | $61.43 | 9/7/06 | $63.21 | 9/25/06 | $65.34 |
| 7/17/06 | $54.75 | 8/3/06 | $59.15 | 8/22/06 | $61.60 | 9/8/06 | $63.40 | 9/26/06 | $65.54 |
| 7/18/06 | $54.59 | 8/4/06 | $59.51 | 8/23/06 | $61.75 | 9/11/06 | $63.58 | 9/27/06 | $65.71 |
| 7/19/06 | $54.56 | 8/7/06 | $59.81 | | | | | | |

  ii. For shares purchased at a price (adjusted for stock splits) greater than mean trading price on the Sell Date, the Recognized Claim shall be the lesser of (a) $1.70 per share or (b) the difference between the purchase price (adjusted for stock splits) and the applicable mean trading price on the Sell Date.

 c. If an Authorized Claimant purchased shares of Apple common stock during the Class Period and such shares were still held as of the close of trading on September 27, 2006, then:

  i. For shares purchased at a price (adjusted for stock splits) equal to or less than the mean trading price of Apple common stock over the 90-day period between June 30, 2006, and September 27, 2006 ($65.71), the Recognized Claim shall be zero ($0.00).

  ii. For shares purchased at a price (adjusted for stock splits) greater than the mean trading price of Apple common stock over the 90-day period between June 30, 2006, and September 27, 2006 ($65.71), the Recognized Claim shall be the lesser of (a) $1.70 per share or (b) the difference between the purchase price (adjusted for stock splits) and $65.71.

53. Example calculations of the Recognized Claim for Authorized Claimants may be viewed at www.AppleSecuritiesSettlement.com.

## CORPORATE REFORM MEASURES

54. Pursuant to the Settlement, Apple has agreed to implement corporate governance measures, including amending its Insider Trading Policy, corporate Bylaws, and the charter of the Board's Compensation Committee. Apple has also agreed to extend to at least May 1, 2013, the term of measures it adopted in 2008 after settling derivative litigation relating to its past stock option practices. These measures include: (1) implementing an Equity Award Grant Practices Policy; (2) appointing a Trading Compliance Committee; (3) amending the charter of the Board's Compensation Committee; (4) amending its Corporate Governance Guidelines; (5) implementing a Corporate Minutes Procedure; and (6) implementing a Unanimous Written Consent Procedure. The details of these measures are set forth in the Stipulation.

## SPECIAL NOTICE TO BROKERS, BANKS AND OTHER NOMINEES

55. Financial institutions and other nominees who purchased or sold Apple common stock on behalf of beneficial owners are directed within fourteen (14) days of their receipt of this Notice to: (a) send a copy of this Notice and Proof of Claim to such beneficial owners; or (b) provide contact information for such beneficial owners to the Claims Administrator, preferably in a Microsoft Excel data table setting forth: (a) title/registration, (b) street address, (c) city/state/zip. Any nominee may also submit a Master Proof of Claim on behalf of multiple clients who are beneficial owners of Apple common stock. The Master Proof of Claim and related instructions are posted on the "Nominees" page at www.AppleSecuritiesSettlement.com. Master Proofs of Claim must be completed and either submitted online at www.AppleSecuritiesSettlement.com by no later than March 15, 2011, or sent by first-class mail postage pre-paid postmarked no later than March 15, 2011. Questions about the Settlement and requests for copies of the documents should be directed to the Claims Administrator at 1-888-760-4869.

## CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

56. For additional details about the Action and the Settlement, you may visit www.AppleSecuritiesSettlement.com and/or inspect the papers on file in the Action, including the Stipulation, during regular office hours at the Office of the Clerk, U.S. District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113.

57. Any inquiries concerning this Notice or the Proof of Claim may be directed to:

| Claims Administrator | Plaintiffs' Lead Counsel |
|---|---|
| In re Apple Inc. Securities Litigation | Jay W. Eisenhofer |
| PO Box 6809 | Michael J. Barry |
| Portland, OR 97228-6809 | Grant & Eisenhofer P.A. |
| 1-888-760-4869 | 1201 N. Market Street |
| www.AppleSecuritiesSettlement.com | Wilmington, DE 19801 |

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF THE COURT REGARDING THIS NOTICE**

Dated: November __, 2010     By Order of the Clerk of the Court
                 U.S. District Court for the Northern District of California

Exhibit A-2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Case No. C-06-5208-JF |
| | CLASS ACTION |
| THIS DOCUMENTS RELATES TO: ALL ACTIONS | |

**SUMMARY NOTICE OF PROPOSED SETTLEMENT, SETTLEMENT FAIRNESS HEARING, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**TO:  ALL PERSONS OR ENTITIES THAT PURCHASED APPLE INC. ("APPLE") COMMON STOCK DURING THE PERIOD BETWEEN AUGUST 24, 2001, AND JUNE 29, 2006, BOTH DATES INCLUSIVE (THE "CLASS"; MEMBERS OF THE CLASS ARE REFERRED TO AS "CLASS MEMBERS").**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and a Court Order, that the above-captioned action has been certified as a class action for purposes of a proposed settlement for $16.5 million in cash, plus interest.  In addition, Apple has agreed to implement certain corporate governance measures.  Apple also has agreed to pay the reasonable costs of administering and distributing the settlement fund and the reasonable attorneys' fees and expenses as may be awarded by the Court to compensate plaintiffs' counsel.

A hearing will be held before the Honorable Jeremy Fogel in the U.S. District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA, at 9:00 a.m., on February 18, 2011, to determine whether the proposed settlement is fair, reasonable, and adequate, to consider the proposed plan of allocation, and to consider the application for attorneys' fees and expenses.

IF YOU ARE A CLASS MEMBER, YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT, AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT FUND.  If you have not yet received the full printed Notice of Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Expenses (the "Notice"), you may obtain a copy of this document by contacting the Claims Administrator:

In re Apple Inc. Securities Litigation
P.O. Box 6809
Portland, OR 97228-6809
1-888-760-4869
www.AppleSecuritiesSettlement.com

To participate in the settlement, you must submit your completed and signed Proof of Claim either online at www.AppleSecuritiesSettlement.com by **no later than March 15, 2011**, or send it by first-class mail postage prepaid postmarked **no later than March 15, 2011**, in the manner and form explained in the Notice. Unless you submit a valid Proof of Claim, you cannot participate in the settlement.

If you desire to be excluded from the Class, you must submit a request for exclusion by first-class mail postage prepaid postmarked **no later than January 21, 2011**, in the manner and form explained in the Notice.  Unless you validly exclude yourself from the Class, you will be bound by any judgment entered in this action whether or not you submit a Proof of Claim.

If you want to object to the proposed settlement, plan of allocation, or the application for attorneys' fees and expenses, you must file your objection with the Court **no later than January 21, 2011**, and send a copy of it on the same day to the parties' counsel by first-class mail postage prepaid, in the manner and form set forth in the Notice.

DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE.  Inquiries, other than requests for the Notice, may be made to Plaintiffs' Lead Counsel:

Michael J. Barry
Grant & Eisenhofer P.A.
1201 N. Market Street
Wilmington, DE 19801
Phone: (302) 622-7000

Dated: Month DD, 20YY

By Order of the Court

Exhibit A-3

# PROOF OF CLAIM

*Type or print in the boxes below in CAPITAL LETTERS; do not use red ink, pencil or staples.*

## CLAIMANT INFORMATION

Beneficial Owner's First Name

Beneficial Owner's Last Name *as it appears on your brokerage statement*

Joint Beneficial Owner's First Name

Joint Beneficial Owner's Last Name *as it appears on your brokerage statement*

Mailing Address, including apartment, unit or box number

City

State

Zip Code

Foreign Province

Foreign Country

Social Security Number     OR     Taxpayer Identification Number

Primary Telephone Number

Email Address

Name of Custodian *if applicable*

## CLAIMANT TYPE

*Specify one*
☐ Individual(s)   ☐ Corporation   ☐ UGMA Custodian   ☐ IRA, Keogh (specify) _____

☐ Partnership   ☐ Estate   ☐ Trust   ☐ Other _____

*Individual(s),* answer the following. If either question applies, state the position(s) held and dates of employment or affiliation.

☐ Yes ☐ No   Were you an employee of Apple Inc. at any time from August 24, 2001 through June 29, 2006, both dates inclusive?

☐ Yes ☐ No   Were you or are you an officer or director of Apple Inc.?

Positions(s)

Dates of Employment / Affiliation
___ – ___ to ___ – ___
M M   Y Y   M M   Y Y

## CLAIMANT CERTIFICATION

1. I have read and understand the contents of the Notice and the Proof of Claim.
2. I purchased share(s) of Apple common stock between August 24, 2001, and June 29, 2006, both dates inclusive.
3. I (a) am not a Defendant, (b) am not a current or former director or officer of Apple, (c) was not an employee of Apple and/or its subsidiaries during the Class Period, and (d) am not a family member, trust, company, entity, or affiliate controlled or owned by any of those categories of persons or entities. I also have not filed a request to be excluded from the Class and do not know of any request to be excluded from the Class that was filed on my behalf.
4. I want to participate in the Settlement described in the Notice, and I agree to the terms and conditions thereof.
5. I have attached copies of sufficient supporting documentation for all transactions listed in the Schedule of Transactions in Apple Common Stock, in accordance with the instructions in this Proof of Claim and the Notice.
6. I understand and acknowledge that the information contained in this Proof of Claim is subject to verification by the Claims Administrator and the Court. I agree to furnish such additional information with respect to this Proof of Claim as the Claims Administrator or the Court may require.
7. I submit to the jurisdiction of the United States District Court for the Northern District of California with respect to this Proof of Claim. I understand that this Proof of Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to my status as a Class Member and the validity and amount of this Proof of Claim.
8. I agree to be bound by the Orders of this Court and the Court's summary determination of the validity and amount of this Proof of Claim.
9. I am NOT subject to backup withholding under the provisions of Section 3406(a)(1)(c) of the Internal Revenue Code. Note: If you have been notified by the Internal Revenue Service (IRS) that you are subject to backup withholding, please strike out the word "NOT."
10. I understand and acknowledge that if the Settlement is approved, the Court will enter an Order and Final Judgment dismissing the Action with prejudice. I further understand and acknowledge that, on and after the Effective Date, without further action, and for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, (a) all Released Claims shall be fully, finally, and forever resolved, discharged and settled on the merits and with prejudice, and (b) I will be forever barred and enjoined from instituting, continuing, or prosecuting any action asserting any Released Claims against any Released Party.
11. I warrant and represent that I am authorized to execute and deliver this Proof of Claim.

**I/we certify under penalty of perjury under the laws of the United States of America that the foregoing information and the supporting documents attached hereto are true, correct, and complete to the best of my/our knowledge, information, and belief.**

Claimant/Beneficial Owner

Joint Claimant/Joint Beneficial Owner

Person Signing on Behalf of Claimant

Date Signed

Print Your Name

Print Your Name

Print Your Name & Capacity *Executor, President, Custodian, etc.*

**You must read and sign the Claimant Certification of each Proof of Claim submitted.**
**Failure to sign the Claimant Certification may result in a delay in processing your claim or the rejection of your claim.**
**PROOF OF CLAIM**, Page 1 of 2

# SCHEDULE OF TRANSACTIONS IN APPLE COMMON STOCK

*Type or print in the boxes below in CAPITAL LETTERS; do not use red ink, pencil or staples.  All shares must be documented.*

1.  The total number of shares of Apple common stock
    owned at the close of trading on August 23, 2001                                     ☐☐ , ☐☐☐ . ☐☐

2.  For every purchase of Apple common stock from August 24, 2001 to June 29, 2006, both dates inclusive, provide:

| Trade Date *List Chronologically* MM · DD · YY | Number of Shares Purchased | Price per Share *Excluding commissions, taxes and fees* | Documentation Attached |
|---|---|---|---|
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |

3.  The total number of shares of Apple common stock purchased
    from June 30, 2006 to September 27, 2006, both dates inclusive        ☐☐ , ☐☐☐ . ☐☐

4.  Please indicate the number of shares, if any, received from the
    stock split on February 28, 2005                                                      ☐☐ , ☐☐☐ . ☐☐

5.  For every sale of Apple common stock from August 24, 2001 to September 27, 2006, both dates inclusive, provide:

| Trade Date *List Chronologically* MM · DD · YY | Number of Shares Sold | Price per Share *Excluding commissions, taxes and fees* | Documentation Attached |
|---|---|---|---|
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |
| ☐☐ – ☐☐ – ☐☐ | ☐☐☐ , ☐☐☐ . ☐☐ | ☐☐☐ . ☐☐☐ | ☐ |

5.  The total number of shares of Apple common stock
    owned at the close of trading on September 27, 2006                   ☐☐ , ☐☐☐ . ☐☐

The **Trade Date** for the purchase or sale of Apple common stock is the date on which the actual trade order was made, not the date on which the funds were transferred in exchange for the shares, also known as the *settlement date*, which generally occurs later.

The **Price per Share** paid or received should exclude all commissions, taxes and fees.

You are required to attach copies of documentation sufficient to verify all identified transactions; documentation may be photocopies of brokerage confirmation slips or monthly statements. If you do not possess such documents, obtain copies or similar documentation from your broker or financial advisor. Failure to supply documentation could delay verification or may result in rejection of your claim.

If your trading activity during the Class Period exceeded fifty (50) transactions, you must provide all required purchase and sale information in an electronic file. For a copy of instructions and the parameters concerning electronic submissions, contact the Claims Administrator toll-free at 1-888-760-4869 or at www.AppleSecuritiesSettlement.com.

If you need additional space, attach separate, numbered sheets with the information provided in the same format as above; print your name and Social Security or Taxpayer Identification Number at the top of each additional sheet.

# PROOF OF CLAIM INSTRUCTIONS

1.  If you purchased common stock of Apple Inc. ("Apple") between August 24, 2001, and June 29, 2006, both dates inclusive (the "Class Period"), you are a member of the Class in this Action and may be entitled to share in the Settlement. Excluded from the Class are Defendants, all current and former directors and officers of Apple, all employees of Apple and/or its subsidiaries during the Class Period, and any family member, trust, company, entity, or affiliate controlled or owned by any of the excluded persons and entities referenced above. Also excluded are persons and entities that exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice of Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Expenses (the "Notice").

2.  It is important that you read and understand the Notice that accompanies this Proof of Claim. The Notice describes the proposed Settlement, how Class Members are affected by it, and how the Net Settlement Fund will be distributed, if the Settlement is approved by the Court. The Notice also contains the definitions of many of the terms (which are indicated by initial capital letters) used in this Proof of Claim. By signing and submitting this Proof of Claim, you will be certifying that you have read and understood the Notice.

3.  **TO PARTICIPATE IN THE SETTLEMENT, YOU MUST EITHER SUBMIT YOUR COMPLETED AND SIGNED PROOF OF CLAIM ONLINE AT WWW.APPLESECURITIESSETTLEMENT.COM BY NO LATER THAN MARCH 15, 2011, OR SEND IT BY FIRST-CLASS MAIL POSTAGE PRE-PAID POSTMARKED NO LATER THAN MARCH 15, 2011, ADDRESSED TO THE CLAIMS ADMINISTRATOR AT:**

    > In re Apple Inc. Securities Litigation
    > P.O. Box 6809
    > Portland, OR 97228-6809

4.  If you fail to submit a timely, properly addressed, and completed Proof of Claim, you will be forever barred from receiving any payments pursuant to the Settlement, but you will nevertheless be bound by any judgment entered in this Action.

5.  Submission of this Proof of Claim does not ensure that you will share in the proceeds of the Settlement Fund. Distributions from the Settlement Fund are governed by the Plan of Allocation that is described in the Notice and is subject to the Court's approval.

6.  If you are not a Class Member, or if you, or someone acting on your behalf, file(s) a request for exclusion from the Class as set forth in the Notice, please do not submit a Proof of Claim.

7.  No cash payment will be made on a Recognized Claim where the distribution amount is less than $5.

8.  If you have questions or need assistance in filling out this Proof of Claim, please contact the Claims Administrator at the address above, toll-free at 1-888-760-4869, or at the website: www.AppleSecuritiesSettlement.com.

9.  This Proof of Claim must be completed by the actual owner ("Beneficial Owner"), or the legal representative of the Beneficial Owner, of Apple common stock upon which this Proof of Claim is based.

10. If you are an individual Beneficial Owner (as opposed to an entity Beneficial Owner), you must complete a separate Proof of Claim in each of the following situations:

    a.  If you own(ed) the share(s) by yourself, list your name as the "Beneficial Owner's Name"; provide your address, other contact information, and your social security number; select the "Individual(s)" box; and check the appropriate box(es) regarding any association with Apple.

    b.  If you own(ed) the shares(s) jointly with someone else, list your name as the "Beneficial Owner's Name"; list the co-owner's name as the "Joint Beneficial Owner's Name"; provide your address, other contact information, and your social security number; select the "Individual(s)" box; and check the appropriate box(es) regarding any association with Apple. Note that all Joint Beneficial Owners must sign the Proof of Claim.

    c.  If you own(ed) the share(s) in an IRA, Keogh, or UGMA custodial account, list your name as the "Beneficial Owner's Name"; provide your address, other contact information, and your social security number; list the name of the custodian of your IRA, Keogh, or UGMA account; select the "UGMA Custodian" or "IRA, Keogh" box; and check the appropriate box(es) regarding any association with Apple.

11. If the Beneficial Owner of the share(s) is an entity (e.g., a corporation, trust, estate, etc.), you should complete one Proof of Claim for the entity. List the name of the entity as the "Beneficial Owner's Name"; provide the address, other contact information, and taxpayer identification number for the entity; and select the appropriate box(es) to describe the type of entity. Note that you must submit a separate Proof of Claim for each entity.

12. If a legal representative of the Beneficial Owner(s), such as an agent, executor, administrator, guardian, conservator, custodian or trustee, completes the Proof of Claim, that representative must (i) identify the Beneficial Owner(s) represented by name, address, telephone number, Social Security or Tax Identification Number; (ii) expressly state the capacity in which the representative is acting on behalf of the Beneficial Owner(s); and (iii) provide proof of authority to act on behalf of the Beneficial Owner(s) (e.g., power of attorney, currently effective letter testamentary, letter of administration).

13. Attention nominees (banks, brokers, financial institutions): Any nominee may submit a Master Proof of Claim on behalf of multiple clients who are beneficial owners of Apple common stock. The Master Proof of Claim and related instructions are posted on the "Nominees" page at www.AppleSecuritiesSettlement.com. Master Proofs of Claim must be completed and either submitted online at www.AppleSecuritiesSettlement.com by no later than March 15, 2011, or sent by first-class mail postage pre-paid postmarked no later than March 15, 2011.

Claims Administrator
**In re Apple Inc. Securities Litigation**
P.O. Box 6809
Portland, OR 97228-6809

---

## REMINDER CHECKLIST

*CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. PLEASE BE PATIENT.*

1. Please sign the Proof of Claim. If you are submitting the Proof of Claim on behalf of Joint Beneficial Owners, all Joint Beneficial Owners must sign.

2. Please do not send originals of securities certificates. Remember to attach only copies of supporting documents, including documentation showing opening and closing balances and transactions in Apple common stock, as set forth in the Schedule of Transactions on page 2.

3. If your address changes in the future, or if these documents were sent to an old or incorrect address, please send us written notification of your new address.

4. Please keep a copy for your records of your completed Proof of Claim and all documentation submitted.

5. You will not receive confirmation that your Proof of Claim has been received, unless you send it via Certified Mail, Return Receipt Requested, or by some other means that provides you with proof of receipt. You will bear all risks of delay or non-delivery of your claim.

6. **If you have any questions or concerns regarding your claim, contact the Claims Administrator at:**

   **Claims Administrator**
   **In re Apple Inc. Securities Litigation**
   **P.O. Box 6809**
   **Portland, OR 97228-6809**
   **1-888-760-4869**
   www.AppleSecuritiesSettlement.com

**To participate in the settlement, you must either submit your completed and signed Proof of Claim online at www.AppleSecuritiesSettlement.com by no later than March 15, 2011, or send it to the address above by first-class mail postage pre-paid postmarked no later than March 15, 2011.**

Exhibit B

1

2

3

4

5

6

7

8

9

10

11

12

13

**UNITED STATES DISTRICT COURT**

14

**NORTHERN DISTRICT OF CALIFORNIA**

15

**SAN JOSE DIVISION**

16

| IN RE APPLE INC. SECURITIES LITIGATION | Case No. C-06-5208-JF |
|---|---|
| | <u>CLASS ACTION</u> |
| THIS DOCUMENTS RELATES TO: ALL ACTIONS | **[PROPOSED] ORDER AND FINAL JUDGMENT** |

17

18

19

20

21

22

23

24

25

26

27

28

On this _____day of _____, 2011, a hearing having been held before this Court to:

(i)      finally determine whether this Action satisfies the applicable prerequisites for class action treatment under Rules 23(a) and (b) of the Federal Rules of Civil Procedure;

(ii)     determine whether the terms and conditions of the Stipulation, which is incorporated herein by reference, is fair, reasonable, and adequate and should be finally approved by the Court;

(iii)    determine whether judgment should be entered dismissing the Action with prejudice;

(iv)     determine whether the release of the Released Claims, as set forth in the Stipulation, should be provided to the Released Parties;

(v)      determine whether the proposed Plan of Allocation for the distribution of the Net Settlement Fund is fair and reasonable, and should be approved by the Court; and

(vi)     consider the application of Plaintiffs' Lead Counsel for an award of Attorneys' Fees and Expenses.

It appearing that a notice of the hearing substantially in the form approved by the Court was mailed to all Class Members reasonably identifiable;

It appearing that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and transmitted over *Business Wire*, in accordance with the Court's Amended Order Preliminarily Approving Settlement, Directing Notice of Settlement, and Scheduling Settlement Fairness Hearing entered on _____, 2010 ("Preliminary Approval Order");

It appearing that due notice of the Settlement Fairness Hearing was given in accordance with the Preliminary Approval Order; the respective parties having appeared by their attorneys of record; the Court having heard and considered evidence in support of the Settlement; the attorneys for the respective parties having been heard; an opportunity having been given to all other persons requesting to be heard in accordance with the Preliminary Approval Order; the Court having determined that Notice to the Class certified in the Action pursuant to the

FINAL JUDGMENT
C-06-5208-JF

1   Preliminary Approval Order was adequate and sufficient; and the Settlement having been

2   considered by the Court; and

3          The Court, having considered all matters submitted to it at the hearing and otherwise

4   having determined the fairness and reasonableness of the Settlement of the claims of the Class

5   Members against the Defendants.

6          NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

7          1.      This Order incorporates by reference the definitions in the parties' Amended

8   Stipulation and Agreement of Settlement dated as of November 12, 2010 ("Stipulation"), and all

9   capitalized terms used herein shall have the same meaning as set forth in the Stipulation.

10          2.      This Court has jurisdiction over the subject matter of the Action and over all

11   parties to the Action, including all Class Members.

12          3.      Each of the provisions of Rule 23(a) of the Federal Rules of Civil Procedure has

13   been satisfied and the Action has been properly maintained according to the provisions of Rule

14   23(b) of the Federal Rules of Civil Procedure.  Based on the record in the Action, the Court finds

15   and orders that (a) the Class as defined in the Preliminary Approval Order is so numerous that

16   joinder of all members is impracticable; (b) there are questions of law and fact common to the

17   Class that, as to the Settlement and related matters, predominate over individual questions;

18   (c) Lead Plaintiff's claims are typical of the claims of the Class; (d) Lead Plaintiff will fairly and

19   adequately protect and represent the interests of the Class; and (e) a class action is superior to

20   other available methods for the fair and efficient adjudication of this controversy.  The Action is

21   certified for settlement purposes as a class action pursuant to Rules 23(a) and 23(b)(3) of the

22   Federal Rules of Civil Procedure on behalf of a class consisting of all persons and entities that

23   purchased Apple common stock during the Class Period.  Excluded from the Class are

24   Defendants, all current and former directors and officers of Apple, and all employees of Apple

25   and/or its subsidiaries during the Class Period, and any family member, trust, company, entity, or

26   affiliate controlled or owned by any of the excluded persons and entities referenced above.  Also

27   excluded from the Class are all the persons and entities listed on Exhibit 1 attached hereto, each

28   of whom filed a valid and timely request for exclusion from the Class.

FINAL JUDGMENT
C-06-5208-JF

4.      The Court finds that the form and content of the Notice, Publication Notice, and Proof of Claim, and the procedures for publication, mailing, and distribution thereof as set forth in the Preliminary Approval Order, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, 15 U.S.C. § 78u-4(a)(7), and due process, and constitute the best notice practicable under the circumstances.  A full opportunity has been offered to Class Members to object to the Settlement, the Plan of Allocation, and Plaintiffs' Lead Counsel's application for an award of Attorneys' Fees and Expenses, to participate in the Settlement Fairness Hearing, and to request exclusion from the Class.  Thus, it is determined that all Class Members who did not validly and timely request to be excluded from the Class as required by the Notice and the Preliminary Approval Order are bound by this Order and Final Judgment.

5.      The adequacy of representation by Lead Plaintiff is consistent with the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and the Private Securities Litigation Reform Act ("PSLRA").

6.      The Settlement is approved as fair, reasonable and adequate, and in the best interests of the Class Members.  The Stipulation and Settlement are finally approved in all respects, and the Settling Parties are directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation.

7.      The Court finds that during the course of the Action, Plaintiffs, Defendants and their respective counsel have at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

8.      The Action is dismissed with prejudice.  The Released Claims are fully, finally, and forever resolved, discharged and settled on the merits and with prejudice.  The Released Parties and Class Members are forever barred and enjoined from instituting, continuing, or prosecuting any action asserting any Released Claims against any Released Party.

9.      The Stipulation and any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement, or any negotiation, discussion or proceedings in connection with the Stipulation or the Settlement:

a.      shall not be offered or received against Released Defendants as evidence of

1   or construed as or deemed to be evidence of any presumption, concession, or admission by any

2   Released Defendants with respect to the truth of any fact alleged by any Plaintiffs or the validity

3   of any claim that has been or could have been asserted in the Action or in any litigation, or the

4   deficiency of any defense that has been or could have been asserted in the Action or in any

5   litigation, or of any liability, negligence, fault, or wrongdoing of or by Released Defendants;

6            b.      shall not be offered or received against Released Defendants as evidence of

7   a presumption, concession, or admission of any fault, misrepresentation, or omission with respect

8   to any statement or written document approved or made by any Released Defendants;

9            c.      shall not be offered or received against Released Defendants as evidence of

10  a presumption, concession, or admission with respect to any liability, negligence, fault or

11  wrongdoing, or in any way referred to for any other reason as against any Released Defendants,

12  in any other civil, criminal, or administrative action or proceeding, other than such proceedings as

13  may be necessary to effectuate the provisions of the Stipulation; provided however, that Released

14  Defendants may refer to the Stipulation to effectuate the rights and liability protections granted to

15  them hereunder; or

16           d.      shall not be construed against Released Defendants as an admission or

17  concession that the consideration to be given hereunder represents the amount which could be or

18  would have been recovered after trial.

19       10.     The Released Parties may file the Stipulation and/or the Order and Final Judgment

20  in any other action that may be brought against them in order to support a defense or counterclaim

21  based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment

22  for or reduction or any theory of claim preclusion or issue preclusion or similar defense or

23  counterclaim.

24       11.     Exclusive jurisdiction is retained over the Settling Parties and the Class Members

25  for all matters relating to this Action, including the administration, interpretation, effectuation or

26  enforcement of the Stipulation and this Order and Final Judgment.

27       12.     The finality of this Order and Final Judgment shall not be affected, in any manner,

28  by rulings that the Court may make on the motion for approval of the Plan of Allocation or

- 4 -

FINAL JUDGMENT
C-06-5208-JF

1   regarding the amount of Attorneys' Fees and Expenses to be awarded pursuant to Plaintiffs' Lead

2   Counsel's application for Attorneys' Fees and Expenses.

3          13.     Apple shall have no obligation to make any payment into the Settlement Fund

4   except as specifically provided in the Stipulation.

5          14.     There shall be no distribution of any of the Settlement Fund to any Authorized

6   Claimant until after the Effective Date and after: (i) all Proofs of Claim have been processed, and

7   all Claimants whose Proofs of Claim have been rejected or disallowed, in whole or in part, have

8   been notified and provided the opportunity to be heard concerning such rejection or disallowance;

9   (ii) all objections with respect to all rejected or disallowed Proofs of Claim have been resolved by

10  the Court, and all appeals therefrom have been resolved or the time therefor has expired; (iii) all

11  matters with respect to attorneys' fees, costs, and disbursements have been resolved by the Court,

12  all appeals therefrom have been resolved or the time therefor has expired; and (iv) all costs of

13  administration have been paid.

14         15.     In the event that the Settlement does not become effective in accordance with the

15  terms of the Stipulation, or the Effective Date does not occur, this Order and Final Judgment shall

16  be rendered null and void and shall be vacated and, in such event, all orders entered and releases

17  delivered in connection herewith shall be null and void, and the Settlement Fund or any portion

18  thereof or interest thereon, shall be returned to Apple as provided in the Stipulation.

19         16.     The Plan of Allocation is approved as fair and reasonable, and the Claims

20  Administrator is directed to administer the Settlement in accordance with the terms and

21  provisions of the Stipulation.

22         17.     Plaintiffs' Counsel are awarded Attorneys' Fees and Expenses in the amount of

23  _____ for reasonable costs and expenses incurred in the representation of the Class.

24  The Court finds that the amount of Attorneys' Fees and Expenses awarded is fair and reasonable.

25  The foregoing award of Attorneys' Fees and Expenses shall be paid by Apple to Plaintiffs' Lead

26  Counsel at the time and in the manner provided in the Stipulation.  The award of Attorneys' Fees

27  and Expenses shall be allocated among Plaintiffs' Counsel in a fashion which, in the opinion of

28  Plaintiffs' Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions

FINAL JUDGMENT
C-06-5208-JF

in the prosecution of the Action.

18.     There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

DATED:  _____

_____
The Honorable Jeremy Fogel
United States District Judge

Submitted by:

GEORGE A. RILEY (S.B. #118304)
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, California  94111-3828
Telephone:   (415) 984-8700
Facsimile:   (415) 984-8701
E-Mail:      griley@omm.com

Attorneys for Defendant APPLE INC.

DOUGLAS R. YOUNG (S.B. #73248)
FARELLA BRAUN & MARTEL LLP
Russ Building
235 Montgomery Street, 17th floor
San Francisco, California 94104
Telephone:   (415) 954-4400
Facsimile:   (415) 954-4480
E-Mail:      dyoung@fbm.com

Attorneys for Defendants
STEVEN P. JOBS, WILLIAM V. CAMPBELL,
MILLARD S. DREXLER, ARTHUR D.
LEVINSON and JEROME B. YORK

- 6 -

1  JEROME C. ROTH (S.B. #159483)
   YOHANCE C. EDWARDS (S.B. #237244)
2  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, 27th Floor
3  San Francisco, California 94105
   Telephone:      (415) 512-4000
4  Facsimile:      (415) 512-4077
   E-Mail:         Jerome.Roth@mto.com
5                  Yohance.Edwards@mto.com

6  Attorneys for Defendants
   FRED D. ANDERSON and NANCY R. HEINEN
7
   JAY W. EISENHOFER (admitted pro hac vice)
8  MICHAEL J. BARRY (admitted pro hac vice)
   GRANT & EISENHOFER P.A.
9  Chase Manhattan Centre
   1201 N. Market Street
10 Wilmington, Delaware 19801
   Telephone:      (302) 622-7000
11 Facsimile:      (302) 622-7100
   E-Mail:         jeisenhofer@gelaw.com
12                 mbarry@gelaw.com

13 MERRILL GLEN EMERICK (SB# 117248)
   ANDERLINI & EMERICK LLP
14 411 Borel Avenue, Suite 501
   San Mateo, California 94402
15 Telephone:      (650) 242-4884
   Facsimile:      (650) 212-0081
16
   Attorneys for Lead Plaintiff
17 THE NEW YORK CITY EMPLOYEES'
   RETIREMENT SYSTEM
18
   PATRICE L. BISHOP (S.B. #182256)
19 HOWARD T. LONGMAN
   STULL, STULL & BRODY
20 10940 Wilshire Boulevard, Suite 2300
   Los Angeles, California 90024
21 Telephone:      (310) 209-2468
   Facsimile:      (310) 209-2087
22 Email:          pbishop@ssbla.com

23 GARY S. GRAIFMAN
   KANTROWITZ, GOLDHAMER & GRAIFMAN
24 747 Chestnut Ridge Road
   Chestnut Ridge, New York 10977
25 Telephone: (845) 356-2570
   Facsimile: (845) 356-4335
26
   Attorneys for Plaintiffs
27 MARTIN VOGEL and KENNETH MAHONEY

28

                                              - 7 -                    FINAL JUDGMENT
                                                                      C-06-5208-JF

Exhibit C

**AMENDED BYLAWS**

**OF**

**APPLE INC.**

**(as of May 27, 2009)**

# TABLE OF CONTENTS

**Page**

**ARTICLE I CORPORATE OFFICES** ......................................................................................... 1

    *1.1*   *Principal Office* ....................................................................................... 1

    *1.2*   *Other Offices* .......................................................................................... 1

**ARTICLE II DIRECTORS** ........................................................................................................ 1

    *2.1*   *Powers* ..................................................................................................... 1

    *2.2*   *Number* .................................................................................................... 1

    *2.3*   *Compensation* ......................................................................................... 2

    *2.4*   *Election and Term of Office* ................................................................... 2

    *2.5*   *Vacancies and Resignations* ................................................................. 2

    *2.6*   *Removal* ................................................................................................... 3

**ARTICLE III OFFICERS** ......................................................................................................... 3

    *3.1*   *Officers* ................................................................................................... 3

    *3.2*   *Appointment of Officers* ......................................................................... 3

    *3.3*   *Subordinate Officers* .............................................................................. 3

    *3.4*   *Term of Office and Compensation* .......................................................... 4

    *3.5*   *Removal or Resignation* ......................................................................... 4

    *3.6*   *Vacancies* ................................................................................................ 4

    *3.7*   *Chairman of the Board* ........................................................................... 4

    *3.8*   *Chief Executive Officer* ........................................................................... 4

    *3.9*   *President* ................................................................................................. 5

    *3.10*   *President Pro Tem* ................................................................................. 5

    *3.11*   *Vice President* ....................................................................................... 5

    *3.12*   *Secretary* ............................................................................................... 6

    *3.13*   *Chief Financial Officer* ......................................................................... 7

    *3.14*   *Officers Appointed by Chief Executive Officer* ...................................... 7

    *3.15*   *Removal of Directors* ............................................................................ 8

**ARTICLE IV COMMITTEES** .................................................................................................. 8

    *4.1*   *Committees of the Board of Directors* ................................................... 8

**ARTICLE V MEETINGS OF SHAREHOLDERS** .................................................................. 9

    *5.1*   *Place of Meetings* ................................................................................... 9

# TABLE OF CONTENTS
(continued)

**Page**

*5.2*  *Annual Meetings* ................................................................................... 10

*5.3*  *Special Meetings* .................................................................................. 10

*5.4*  *Notice of Meetings* .............................................................................. 10

*5.5*  *Manner of Giving Notice; Affidavit of Notice* .................................... 11

*5.6*  *Consent to Shareholders' Meetings* ...................................................... 11

*5.7*  *Quorum* ................................................................................................. 12

*5.8*  *Adjourned Meetings* ............................................................................. 12

*5.9*  *Record Date for Shareholder Notice; Voting; Giving Consents* .......... 12

*5.10*  *Action by Written Consent* ................................................................. 13

*5.11*  *Election of Directors* .......................................................................... 14

*5.12*  *Proxies* ................................................................................................ 14

*5.13*  *Inspectors of Elections* ....................................................................... 15

*5.14*  *Advance Notice of Shareholder Business and Nominations* ............... 16

**ARTICLE VI MEETINGS OF DIRECTORS** .................................................... 19

*6.1*  *Place of Meetings* ................................................................................ 19

*6.2*  *Regular Annual Meeting; Regular Meetings* ....................................... 19

*6.3*  *Special Meetings* .................................................................................. 20

*6.4*  *Notice of Special Meetings* ................................................................. 20

*6.5*  *Quorum* ................................................................................................. 20

*6.6*  *Adjournment* ......................................................................................... 20

*6.7*  *Waiver and Notice of Consent* ............................................................. 20

*6.8*  *Action without a Meeting* ..................................................................... 20

*6.9*  *Committees* ........................................................................................... 21

**ARTICLE VII GENERAL MATTERS** .............................................................. 21

*7.1*  *Record Date for Purposes Other than Notice and Voting* .................... 21

*7.2*  *Instruments in Writing* ......................................................................... 21

*7.3*  *Shares Held by the Corporation* ........................................................... 21

*7.4*  *Certificates for Shares* ......................................................................... 21

*7.5*  *Lost Certificates* .................................................................................. 22

*7.6*  *Certification and Inspection of Bylaws* ............................................... 22

# TABLE OF CONTENTS
(continued)

**Page**

*7.7*   *Interpretation* ............................................................................ 22

*7.8*   *Construction* ............................................................................. 23

**ARTICLE VIII CONSTRUCTION OF BYLAWS WITH REFERENCE TO PROVISIONS OF LAW** ......................................................... 23

*8.1*   *Bylaw Provisions Additional and Supplemental to Provisions of Law* ............... 23

*8.2*   *Bylaw Provisions Contrary to or Inconsistent with Provisions of Law* .............. 23

**ARTICLE IX ADOPTION, AMENDMENT OR REPEAL OF BYLAWS** ...................... 23

*9.1*   *By Shareholders* ........................................................................ 23

*9.2*   *By the Board of Directors* ............................................................. 24

**ARTICLE X INDEMNIFICATION** ................................................................ 24

*10.1*   *Indemnification of Directors and Officers* ........................................... 24

*10.2*   *Indemnification of Others* .............................................................. 24

*10.3*   *Payment of Expenses in Advance* ..................................................... 24

*10.4*   *Indemnification not Exclusive* ......................................................... 25

*10.5*   *Insurance Indemnification* .............................................................. 25

*10.6*   *Conflicts* ................................................................................. 25

# APPLE INC.

# AMENDED BYLAWS

# ARTICLE I

# CORPORATE OFFICES

### 1.1    *Principal Office*

The Board of Directors shall fix the location of the principal executive office of Apple Inc. (the "Corporation") at any place within or outside the State of California.  If the principal executive office is located outside California and the Corporation has one or more business offices in California, then the Board of Directors shall fix and designate a principal business office in California.

### 1.2    *Other Offices*

The Board of Directors may at any time establish branch or subordinate offices at any place or places.

# ARTICLE II

# DIRECTORS

### 2.1    *Powers*

Subject to the provisions of the California Corporation Code (the "Code"), any limitations in the Restated Articles of Incorporation (the "Articles of Incorporation) and these Amended Bylaws (these "Bylaws") relating to action required to be approved by the shareholders or by the outstanding shares, the business and affairs of the Corporation shall be managed and all corporate powers shall be exercised under the direction of the Board of Directors.  The Board of Directors may delegate the management of the day-to-day operation of the business of the Corporation to a management company or other person provided that the business and affairs of the Corporation shall be managed and all corporate powers shall be exercised under the ultimate direction of the Board of Directors.

### 2.2    *Number*

The number of directors of the Corporation shall be not less than five (5) nor more than nine (9).  The exact number of directors shall be eight (8) until changed within the limits specified above, by a bylaw amending this Section 2.2, duly adopted by the Board of Directors or by the shareholders.  The indefinite number of directors may be changed, or a definite number fixed without provision for an indefinite number, by a duly adopted amendment to the Articles of Incorporation or by amendment to these Bylaws duly adopted by the vote or written consent of holders of a majority of the outstanding shares entitled to vote; provided, however, that an amendment reducing the fixed number or the minimum number of directors to a number less

than five (5) cannot be adopted if the votes cast against its adoption at a meeting of the shareholders, or the shares not consenting in the case of action by written consent, are equal to more than sixteen and two-thirds percent (16-2/3%) of the outstanding shares entitled to vote. No amendment may change the stated maximum number of authorized directors to a number greater than two times the stated minimum number of directors minus one.

### 2.3    Compensation

Directors and members of committees may receive such compensation, if any, for their services, and may be reimbursed for expenses, as fixed or determined by resolution of the Board of Directors.  This Section 2.3 shall not be construed to preclude any director from serving the Corporation in any other capacity and receiving compensation for those services.

### 2.4    Election and Term of Office

Each director shall be elected to serve until the annual meeting of shareholders held in the following fiscal year and until his or her successor shall have been duly elected and qualified.

### 2.5    Vacancies and Resignations

(a)    A vacancy or vacancies on the Board of Directors shall be deemed to exist (i) in the event of the death, resignation or removal of any director, (ii) if the authorized number of directors is increased, (iii) if the shareholders fail, at any meeting of shareholders at which any director or directors are elected, to elect the full authorized number of directors to be elected at that meeting or (iv) if the Board of Directors declares vacant the office of a director who has been declared of unsound mind by an order of court or convicted of a felony.

(b)    Except for a vacancy caused by the removal of a director as provided in Section 2.6 of these Bylaws, a vacancy may be filled (i) by a person selected by a majority of the remaining directors then in office, whether or not less than a quorum or (ii) by a sole remaining director.  Vacancies created by the removal of a director shall be filled only by the affirmative vote of shares holding a majority of the voting power represented and voting a duly held meeting at which a quorum is present (which shares voting affirmatively also constitute a least a majority of the voting power required to constitute a quorum), or by the unanimous written consent of all shares entitled to vote thereon.

(c)    The shareholders may elect a director at any time to fill a vacancy or vacancies not filled by the directors, but any such election by written consent, other than to fill a vacancy created by removal, shall require the consent of shares holding a majority of the voting power that are entitled to vote thereon.  A director may not be elected by written consent to fill a vacancy created by removal except by unanimous consent of all shares entitled to vote for the election of directors.

(d)    Any director may resign effective upon giving written notice to the General Counsel and Secretary of the Corporation, unless the notice specifies a later time for the effectiveness of such resignation.  If the resignation of a director is effective at a future time, the Board of Directors may elect a successor to take office when the resignation becomes effective.

A reduction of the authorized number of directors shall not remove any director prior to the expiration of such director's term of office.

### 2.6    Removal

The entire Board of Directors or any individual director may be removed without cause from office by an affirmative vote of a majority of the outstanding shares entitled to vote; provided that, unless the entire Board of Directors is removed, no director shall be removed when the votes cast against removal, or not consenting in writing to such removal, would be sufficient to elect such director if voted cumulatively (without regard to whether such shares may be voted cumulatively) at an election at which the same total number of votes were cast, or, if such action is taken by written consent, all shares entitled to vote were voted, and either the number of directors elected at the most recent annual meeting of shareholders, or if greater, the number of directors for whom removal is being sought, were then being elected. If any or all directors are so removed, new directors may be elected at the same meeting or at a subsequent meeting. If at any time a class or series of shares is entitled to elect one or more directors under authority granted by the Articles of Incorporation, the provisions of this <u>Section 2.6</u> shall apply to the vote of that class or series and not to the vote of the outstanding shares as a whole.

## ARTICLE III

## OFFICERS

### 3.1    Officers

The officers of the Corporation shall be a Chief Executive Officer or a President, a Secretary and a Chief Financial Officer.  The Corporation may also have, at the discretion of the Board of Directors, a Chairman of the Board of Directors, one or more Vice Presidents, a Treasurer, one or more Assistant Secretaries and one or more Assistant Treasurers and such officers as may be appointed in accordance with the provisions of <u>Section 3.3</u> of these Bylaws. Any number of offices may be held by the same person.

### 3.2    Appointment of Officers

The officers of the Corporation, except such officers as may be appointed in accordance with the provisions of <u>Section 3.3</u> of these Bylaws, shall be chosen by the Board of Directors and serve at the pleasure of the Board of Directors, subject to the rights, if any, of an officer under any contract of employment.

### 3.3    Subordinate Officers

The Board of Directors may appoint, or may empower the Chairman of the Board of Directors, the Chief Executive Officer or the President to appoint such other officers as the business of the Corporation may require, each of whom shall hold office for such period, have such authority and perform such duties as are provided in these Bylaws or as the Board of Directors may from time to time determine.

### 3.4    Term of Office and Compensation

The term of office and salary of each of said officers and the manner and time of the payment of such salaries shall be fixed and determined by the Board of Directors and may be altered by the Board of Directors from time to time at its pleasure, subject to the rights, if any, of an officer under any contract of employment.

### 3.5    Removal or Resignation

(a)    Subject to the rights, if any, of an officer under any contract of employment, all officers serve at the pleasure of the Board of Directors and any officer may be removed, either with or without cause, by the Board of Directors at any regular or special meeting of the Board of Directors, or, except in the case of an officer chosen by the Board of Directors, by any officer upon whom such power of removal may be conferred by the Board of Directors.

(b)    Any officer may resign at any time upon written notice to the Corporation, without prejudice to the rights, if any, of the Corporation under any contract to which the officer is a party.  Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice, and, unless otherwise necessary to make it effective, the acceptance of the resignation shall not be necessary to make it effective.

### 3.6    Vacancies

A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed by these Bylaws for regular appointments to that office.

### 3.7    Chairman of the Board

The Chairman of the Board of Directors, if there be one, shall have the power to preside at all meetings of the Board of Directors and shall have such other powers and shall be subject to such other duties as the Board of Directors may from time to time prescribe or as may be prescribed by these Bylaws.  If there is not a President or a Chief Executive Officer, then the Chairman of the Board of Directors shall also be the chief executive officer of the Corporation and shall have the powers and duties prescribed in Section 3.8 of these Bylaws.

### 3.8    Chief Executive Officer

The powers and duties of the Chief Executive Officer are:

(a)    To act as the general manager and chief executive officer of the Corporation and, subject to the control of the Board of Directors, to have general supervision, direction and control of the business and affairs of the Corporation.

(b)    To preside at all meetings of the shareholders and, in the absence of the Chairman of the Board of Directors or if there be no Chairman of the Board of Directors, at all meetings of the Board of Directors.

(c)     To call meetings of the shareholders and meetings of the Board of Directors to be held at such times and, subject to the limitations prescribed by law or by these Bylaws, at such places as he or she shall deem proper.

(d)     To affix the signature of the Corporation to all deeds, conveyances, mortgages, leases, obligations, bonds, certificates and other papers and instruments in writing which have been authorized by the Board of Directors or which, in the judgment of the Chief Executive Officer, should be executed on behalf of the Corporation; to sign certificates for shares of stock of the Corporation; and, subject to the direction of the Board of Directors, to have general charge of the property of the Corporation and to supervise and control all officers, agents and employees of the Corporation.

### 3.9     President

The powers and duties of the President are:

(a)     To act as the general manager of the Corporation and, subject to the control of the Board of Directors, to have general supervision, direction and control of the business and affairs of the Corporation.

(b)     To preside at all meetings of the shareholders and, in the absence of the Chairman of the Board of Directors and the Chief Executive Officer or if there be no Chairman of the Board of Directors or Chief Executive Officer, at all meetings of the Board of Directors.

(c)     To affix the signature of the Corporation to all deeds, conveyances, mortgages, leases, obligations, bonds, certificates and other papers and instruments in writing which have been authorized by the Board of Directors or which, in the judgment of the President, should be executed on behalf of the Corporation; to sign certificates for shares of stock of the Corporation; and, subject to the direction of the Board of Directors, to have general charge of the property of the Corporation and to supervise and control all officers, agents and employees of the Corporation.

### 3.10     President Pro Tem

If neither the Chairman of the Board of Directors, the Chief Executive Officer, the President, nor any Vice President is present at any meeting of the Board of Directors, a President pro tem may be chosen to preside and act at such meeting. If neither the Chief Executive Officer, the President nor any Vice President is present at any meeting of the shareholders, a President pro tem may be chosen to preside at such meeting.

### 3.11     Vice President

The titles, powers and duties of the Vice President or Vice Presidents shall be prescribed by the Board of Directors.  In case of the absence, disability or death of the Chief Executive Officer, the President, the Vice President, or one of the Vice Presidents, shall exercise all his or her powers and perform all his or her duties. If there is more than one Vice President, the order in which the Vice Presidents shall succeed to the powers and duties of the Chief Executive Officer or President shall be as fixed by the Board of Directors.

5

### 3.12    Secretary

The powers and duties of the Secretary are:

(a)    To keep a book of minutes at the principal executive office of the Corporation, or such other place as the Board of Directors may order, of all meetings of its directors and shareholders with the time and place of holding, whether regular or special, and, if special, how authorized, the notice thereof given, the names of those present at directors' meetings, the number of shares present or represented at shareholders' meetings and the proceedings thereof.

(b)    To keep the seal of the Corporation and to affix the same to all instruments which may require it.

(c)    To keep or cause to be kept at the principal executive office of the Corporation, or at the office of the transfer agent or agents, a record of the shareholders of the Corporation, giving the names and addresses of all shareholders and the number and class of shares held by each shareholder, the number and date of certificates issued for shares, appropriate records with respect to uncertificated shares issued, the number and date of cancellation of every certificate surrendered for cancellation and the number and date of every replacement certificate or the appropriate records for uncertificated shares issued for lost, stolen or destroyed certificates.

(d)    To keep a supply of certificates for shares of the Corporation, to fill in all certificates issued or prepare the initial transaction statement or written statements for uncertificated shares, and to make a proper record of each such issuance; provided that so long as the Corporation shall have one or more duly appointed and acting transfer agents of the shares, or any class or series of shares, of the Corporation, such duties with respect to such shares shall be performed by such transfer agent or transfer agents.

(e)    To transfer upon the share books of the Corporation or in book-entry form in accordance with the direct registration system as provided in Section 7.4(b) of these Bylaws any and all shares of the Corporation; provided that so long as the Corporation shall have one or more duly appointed and acting transfer agents of the shares, or any class or series of shares, of the Corporation, such duties with respect to such shares shall be performed by such transfer agent or transfer agents, and the method of transfer of each certificated or uncertificated share shall be subject to the reasonable regulations of the transfer agent to which the certificated or uncertificated shares are presented for transfer and, also, if the Corporation then has one or more duly appointed and acting registrars, subject to the reasonable regulations of the registrar to which a new certificate or a new issuance of uncertificated shares is presented for registration; and provided, further, that no certificate for shares of stock and no uncertificated shares shall be issued, recorded or delivered or, if issued, recorded or delivered, shall have any validity whatsoever until and unless it has been signed or authenticated, as applicable, in the manner provided in Section 7.4 of these Bylaws.

(f)    To make service and publication of all notices that may be necessary or proper and without command or direction from anyone. In case of the absence, disability, refusal or neglect of the Secretary to make service or publication of any notices, then such notices may be served and/or published by the Chief Executive Officer, the President or a Vice President, or by

any person thereunto authorized by either of them or by the Board of Directors or by the holders of a majority of the outstanding shares of the Corporation.

(g)     Generally to do and perform all such duties as pertain to such office and as may be required by the Board of Directors or these Bylaws.

### 3.13    Chief Financial Officer

The powers and duties of the Chief Financial Officer are:

(a)     To supervise and control the keeping and maintaining of adequate and correct accounts of the Corporation's properties and business transactions, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, capital, surplus and shares. The books of account shall at all reasonable times be open to inspection by any director.

(b)     To have the custody of all funds, securities, evidences of indebtedness and other valuable documents of the Corporation and, at his or her discretion, to cause any or all thereof to be deposited for the account of the Corporation with such depository as may be designated from time to time by the Board of Directors.

(c)     To receive or cause to be received, and to give or cause to be given, receipts and acquittances for moneys paid in for the account of the Corporation.

(d)     To disburse, or cause to be disbursed, all funds of the Corporation as may be directed by the Chief Executive Officer, the President or the Board of Directors, taking proper vouchers for such disbursements.

(e)     To render to the Chief Executive Officer, the President or to the Board of Directors, whenever either may require, accounts of all transactions as Chief Financial Officer and of the financial condition of the Corporation.

(f)     Generally to do and perform all such duties as pertain to such office and as may be required by the Board of Directors or these Bylaws.

### 3.14    Officers Appointed by Chief Executive Officer

(a)     The Chief Executive Officer of the Corporation shall have the power, in the exercise of his or her discretion, to appoint additional persons to hold positions and titles such as vice president of the Corporation or a division of the Corporation or president of a division of the Corporation, or similar such titles, as the business of the Corporation may require, subject to such limits in appointment power as the Board of Directors may determine. The Board of Directors shall be advised of any such appointment at a meeting of the Board of Directors, and the appointment shall be noted in the minutes of the meeting. The minutes shall clearly state that such persons are non-corporate officers appointed pursuant to this Section 3.14.

(b)     Each such appointee shall have such title, shall serve in such capacity and shall have such authority and perform such duties as the Chief Executive Officer shall determine. Appointees may hold titles such as "president" of a division or other group within the

Corporation, or "vice president" of the Corporation or of a division or other group within the Corporation. However, any such appointee, absent specific election by the Board of Directors as an elected corporate officer, (i) shall not be considered an officer elected by the Board of Directors pursuant to this <u>Article III</u> and shall not have the executive powers or authority of corporate officers elected pursuant to this <u>Article III</u>, (ii) shall not be considered (a) an "officer" of the Corporation for the purposes of Rule 3b-2 promulgated under the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder (collectively, the "<u>Exchange Act</u>") or an "executive officer" of the Corporation for the purposes of Rule 3b-7 promulgated under the Exchange Act, and similarly shall not be considered an "officer" of the Corporation for the purposes of Section 16 of the Exchange Act (as such persons shall not be given the access to inside information of the Corporation enjoyed by officers of the Corporation) or an "executive officer" of the Corporation for the purposes of Section 14 of the Exchange Act or (b) a "corporate officer" for the purposes of Section 312 of the Code, except in any such case as otherwise required by law, and (iii) shall be empowered to represent himself or herself to third parties as an appointed vice president, etc., only, and shall be empowered to execute documents, bind the Corporation or otherwise act on behalf of the Corporation only as authorized by the Chief Executive Officer or the President or by resolution of the Board of Directors.

(c)     An elected officer of the Corporation may also serve in an appointed capacity hereunder.

### 3.15    *Removal of Directors*

Unless otherwise restricted by statute, by the certificate of incorporation or by these bylaws, any director or the entire board of directors may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors.   No reduction of the authorized number of directors shall have the effect of removing any director prior to the expiration of such director's term of office.

## ARTICLE IV

## COMMITTEES

### 4.1    *Committees of the Board of Directors*

The Board of Directors may, by resolution adopted by a majority of the authorized number of directors, designate one or more committees, each consisting of two (2) or more directors, to serve at the pleasure of the Board of Directors.   The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent member at any meeting of the committee.   The appointment of members or alternate members of a committee requires the vote of a majority of the authorized number of directors. Any such committee shall have authority to act in a manner and to the extent provided in the resolution of the Board of Directors and may have all the authority of the Board of Directors, except with respect to:

(a)     the approval of any action which, under the Code, also requires shareholders' approval or approval of the outstanding shares;

(b)      the filling of vacancies on the Board of Directors or in any committee;

(c)      the fixing of compensation of the director for serving on the Board of Directors or on any committee;

(d)      the amendment or repeal of these Bylaws or the adoption of new bylaws;

(e)      the amendment or repeal of any resolution of the Board of Directors which by its express terms is not so amendable or repealable;

(f)      a distribution to the shareholders of the Corporation, except at a rate, in a periodic amount or within a price range set forth in the Articles of Incorporation or determined by the Board of Directors; and

(g)      the appointment or designation of any other committee of the Board of Directors or the members thereof.

## ARTICLE V

## MEETINGS OF SHAREHOLDERS

### 5.1      *Place of Meetings*

(a)      Meetings (whether regular, special or adjourned) of the shareholders of the Corporation shall be held at the principal executive office for the transaction of business of the Corporation, or at any place within or without the State which may be designated by written consent of all the shareholders entitled to vote thereat, or which may be designated by resolution of the Board of Directors. Any meeting shall be valid wherever held if held by the written consent of all the shareholders entitled to vote thereat, given either before or after the meeting and filed with the Secretary.

(b)      A meeting of the shareholders may be conducted in whole or in part, by electronic transmission by and to the Corporation or by electronic video screen communication if:

(i)      the Corporation implements reasonable measures to provide shareholders (in person or by proxy) a reasonable opportunity to participate in the meeting and to vote on matters submitted to the shareholders; and

(ii)      the Corporation maintains a record of the vote or action and any shareholder votes or other shareholder action is taken at the meeting by means of electronic transmission to the Corporation or electronic video screen communication.

Any request by the Corporation to a shareholder under Section 20(b) of the Code for consent to conduct a meeting of shareholders by electronic transmission must include a notice that absent consent of the shareholder, the meeting will be held at a physical location.

### 5.2    Annual Meetings

An annual meeting of shareholders shall be held each year on a date and at a time designated by the Board of Directors.  The annual meeting shall be held for the purpose of electing directors and for making reports of the affairs of the Corporation.  Any other proper business may be transacted at the annual meeting of shareholders.

### 5.3    Special Meetings

Special meetings of the shareholders for any purpose or purposes whatsoever may be called at any time by the President or by the Board of Directors, or by two or more members thereof, or by one or more holders of shares entitled to cast not less than ten percent (10%) of the votes on the record date established pursuant to Section 5.9 of these Bylaws. Upon request in writing sent by registered mail to the Chief Executive Officer, President, Vice President or Secretary, or delivered to any such officer in person, by any person or persons entitled to call a special meeting of shareholders (such request, if sent by a shareholder or shareholders, to include the information required by Section 5.14 of these Bylaws), it shall be the duty of such officer, subject to the immediately succeeding sentence, to cause notice to be given to the shareholders entitled to vote that a meeting will be requested by the person or persons calling the meeting, the date of which meeting, which shall be set by such officer, to be not less than thirty-five (35) days nor more than sixty (60) days after such request or, if applicable, determination of the validity of such request pursuant to the immediately succeeding sentence. Within seven (7) days after receiving such a written request from a shareholder or shareholders of the Corporation, the Board of Directors shall determine whether shareholders owning not less than ten percent (10%) of the shares as of the record date established pursuant to Section 5.9 of these Bylaws for such request support the call of a special meeting and notify the requesting party or parties of its finding. Nothing contained in this paragraph of this Section 5.3 shall be construed as limiting, fixing or affecting the time when a meeting of shareholders called by action of the Board of Directors may be held.

### 5.4    Notice of Meetings

Notice of any meeting of shareholders shall be given in writing not less than ten (10) nor more than sixty (60) days before the date of the meeting to each shareholder entitled to vote thereat by the Secretary or an Assistant Secretary, or other person charged with that duty, or if there be no such officer or person, or in case of his or her neglect or refusal, by any director or shareholder.  The notice shall state the place, date and hour of the meeting and (a) in the case of a special meeting, the general nature of the business to be transacted, and no other business may be transacted, or (b) in the case of the annual meeting, those matters which the Board of Directors, at the time of the mailing of the notice, intends to present for action by the shareholders, but any proper matter may be presented at the meeting for such action except as otherwise provided by Section 601(f) of the Code.  The notice of any meeting at which directors are to be elected shall include the names of nominees intended at the time of the notice to be presented by management for election.  If the meeting is to be held in whole or in part by electronic transmission, the notice shall state the means of electronic transmission by and to the Corporation to electronic video screen communication, if any, by which shareholders may participate in the meeting.

10

### 5.5 Manner of Giving Notice; Affidavit of Notice

Written notice shall be given by the Corporation to any shareholder, either (a) personally or (b) by mail or other means of written communication (including electronic transmission by the Corporation), charges prepaid, addressed to such shareholder at such shareholder's physical or electronic address appearing on the books of the Corporation or given by such shareholder to the Corporation for the purpose of notice.  If a shareholder gives no address or no such address appears on the books of the Corporation, notice shall be deemed to have been given if sent by mail or other means of written communication addressed to the place where the principal executive office of the Corporation is located, or if published at least once in a newspaper of general circulation in the county in which such office is located.  The notice shall be deemed to have been given at the time when delivered personally or deposited in the United States mail, postage prepaid, or sent by other means of written communication and addressed as hereinbefore provided.  An affidavit of delivery or mailing, or other authorized means of transmitting, of any notice in accordance with the provisions of this Section 5.5, executed by the Secretary, Assistant Secretary or any transfer agent, shall be prima facie evidence of the giving of the notice.  If any notice addressed to the shareholder at the address of such shareholder appearing on the books of the Corporation is returned to the Corporation by the United States Postal Service marked to indicate that the United States Postal Service is unable to deliver the notice to the shareholder at such address, all future notices shall be deemed to have been duly given without further mailing if the same shall be available for the shareholder upon written demand of the shareholder at the principal executive office of the Corporation for a period of one year from the date of the giving of the notice to all other shareholders.  Notice shall not be given by electronic transmission by the Corporation after either one of the following: (i) the Corporation is unable to deliver two consecutive notices to the shareholder by that means or (ii) the inability to so deliver such notices to the shareholder becomes known to the Secretary, any Assistant Secretary, the transfer agent, or other person responsible for the giving of the notice.

### 5.6 Consent to Shareholders' Meetings

The transactions of any meeting of shareholders, however called and noticed, and wherever held, are as valid as though had at a meeting duly held after regular call and notice, if a quorum is present either in person or by proxy, and if, either before or after the meeting, each of the shareholders entitled to vote, not present in person or by proxy, signs a written waiver of notice or a consent to the holding of such meeting or an approval of the minutes thereof. All such waivers, consents or approvals shall be filed with the corporate records or made a part of the minutes of the meeting. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person objects, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened and except that attendance at a meeting is not a waiver of any right to object to the consideration of matters required by law to be included in the notice but not so included, if such objection is expressly made at the meeting. Neither the business to be transacted at nor the purpose of any regular or special meeting of shareholders need be specified in any written waiver of notice, except as to approval of contracts between the Corporation and any of its directors, amendment of the Articles of Incorporation, reorganization of the Corporation or winding up the affairs of the Corporation.

### 5.7     Quorum

The presence in person or by proxy of the holders of a majority of the shares entitled to vote at any meeting of shareholders shall constitute a quorum for the transaction of business. Shares shall not be counted to make up a quorum for a meeting if voting of such shares at the meeting has been enjoined or for any reason they cannot be lawfully voted at the meeting.  The shareholders present at a duly called or held meeting at which a quorum is present may continue to transact business until adjournment notwithstanding the withdrawal of enough shareholders to leave less than a quorum, if any action taken (other than adjournment) is approved by at least a majority of the shares required to constitute a quorum.

### 5.8     Adjourned Meetings

Any shareholders' meeting, whether or not a quorum is present, may be adjourned from time to time by the vote of a majority of the shares, the holders of which are either present in person or represented by proxy thereat, but, except as provided in Section 5.7 of these Bylaws, in the absence of a quorum, no other business may be transacted at such meeting.  When any meeting of shareholders, either annual or special, is adjourned to another time or place, notice need not be given of the adjourned meeting if its time and place (or the means of electronic transmission by and to the Corporation or electronic video screen communication, if any, by which the shareholders may participate) are announced at the meeting at which the adjournment is taken.  When a meeting is adjourned for more than forty-five (45) days or if after adjournment a new record date is fixed for the adjourned meeting, a notice of the time and place adjourned meeting shall be given to each shareholder of record entitled to vote at a meeting.  At any adjourned meeting the shareholders may transact any business which might have been transacted at the original meeting.

### 5.9     Record Date for Shareholder Notice; Voting; Giving Consents

(a)     In order that the Corporation may determine the shareholders entitled to notice of any meeting or to vote, the Board of Directors may fix, in advance, a record date, which shall not be more than sixty (60) days nor less than ten (10) days prior to the date of such meeting nor more than sixty (60) days before any other action.  Only shareholders of record at the close of business on the record date are entitled to notice of, and to vote at, a meeting of shareholders, notwithstanding any transfer of any shares on the books or the Corporation after the record date, except as otherwise provided by in the Articles of Incorporation or the Code. In the absence of any contrary provision in the Articles of Incorporation or in any applicable statute relating to the election of directors or to other particular matters, each such person shall be entitled to one vote for each share.

(b)     A determination of the shareholders of record entitled to notice of, and to vote at, a meeting of shareholders shall apply to any adjournment of the meeting unless the Board of Directors fixes a new record date for the adjourned meeting, but the Board of Directors shall fix a new record date if the meeting is adjourned for more than forty-five (45) days from the date set for the original meeting.

(c)     If the Board of Directors does not so fix a record date:

(i)     the record date for determining shareholder entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the business day next preceding the day on which notice is given or, if notice is waived, at the close of business on the business day next preceding the day on which the meeting is held; and

(ii)     the record date for determining shareholders entitled to given consent to corporate action in writing without a meeting (1) when no prior action by the Board of Directors has been taken, shall be the day on which the first written consent is given, or (2) when prior action by the Board of Directors has been taken, shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto, or the sixtieth (60th) day prior to the date of such other action, whichever is later.

### 5.10     Action by Written Consent

(a)     Any action which may be taken at any annual or special meeting of shareholders may be taken without a meeting and without prior notice, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.

(b)     If the consents of all shareholders entitled to vote have not been solicited in writing, the Secretary shall give prompt notice of any corporate action approved by the shareholders without a meeting by less than unanimous written consent to those shareholders entitled to vote who have not consented in writing.  Such notice shall be given in the manner specified in Section 5.5 of these Bylaws and applicable law.

(c)     In the case of approval of (i) a contract or transaction in which a director has a direct or indirect financial interest, pursuant to Section 310 of the Code, (ii) an amendment of the Articles of Incorporation, pursuant to Section 902 of the Code, (iii) a reorganization of the Corporation, pursuant to Section 1201 of the Code, (iv) a voluntary dissolution of the Corporation pursuant to Section 1900 of the Code or (v) a distribution in dissolution other than in accordance with the rights of any outstanding preferred shares, pursuant to Section 2007 of the Code, the notice shall be given at least ten (10) days before the consummation of any action authorized by that approval, unless the consents of all shareholders entitled to vote have been solicited in writing.

(d)     When written consents are given with respect to any shares, they shall be given by and accepted from the persons in whose names such shares stand on the books of the Corporation at the time such respective consents are given, or any shareholder's proxy holder, or a transferee of the shares or a personal representative of the shareholder or their respective proxy holders, may revoke the consent by a writing received by the Corporation prior to the time that written consents of the number of shares required to authorize the proposed action have been filed with the Secretary, but may not do so thereafter. Such revocation is effective upon its receipt by the Secretary.

(e)     Notwithstanding anything to the contrary, directors may not be elected by written consent except by unanimous written consent of all shares entitled to vote for the election of

directors; provided that the shareholders may elect a director to fill a vacancy not filled by the Board of Directors, other than a vacancy creased by removal, by the written consent of a majority of the outstanding shares entitled to vote.

### 5.11   Election of Directors

In any election of directors, the candidates receiving the highest number of affirmative votes of the shares entitled to be voted for them up to the number of directors to be elected by such shares are elected; votes against the directors and votes withheld with respect to the election of the directors shall have no legal effect. Elections of directors need not be by ballot except upon demand made by a shareholder at the meeting and before the voting begins.

### 5.12   Proxies

(a)      Every person entitled to vote or execute consents shall have the right to do so either in person or by one or more agents authorized by a written proxy executed by such person or such person's duly authorized agent and filed with the Secretary.  No proxy shall be valid (a) after revocation thereof, unless the proxy is specifically made irrevocable and otherwise conforms to this Section 5.12 and applicable law, or (b) after the expiration of eleven (11) months from the date thereof, unless the person executing it specifies therein the length of time for which such proxy is to continue in force. Revocation may be effected by a writing delivered to the Secretary stating that the proxy is revoked or by a subsequent proxy executed by, or by attendance at the meeting and voting in person by, the person executing the proxy. A proxy is not revoked by the death or incapacity of the maker unless, before the vote is counted, a written notice of such death or incapacity is received by the Corporation.

(b)      A proxy which states that it is irrevocable is irrevocable for the period specified therein when it is held by any of the following or a nominee of any of the following: (i) a pledgee, (ii) a person who has purchased or agreed to purchase or holds an option to purchase the shares or a person who has sold a portion of such person's shares in the Corporation to the maker of the proxy, (iii) a creditor or creditors of the Corporation or the shareholder who extended or continued credit to the Corporation or the shareholder in consideration of the proxy if the proxy states that it was given in consideration of such extension or continuation of credit and the name of the person extending and continuing the credit, (iv) a person who has contracted to perform services as an employee of the Corporation, if a proxy is required by the contract of employment and if the proxy states that it was given in consideration of such contract of employment, the name of the employee and the period of employment contracted for, (v) a person designated by or under a close corporation shareholder agreement or a voting trust agreement. In addition, a proxy may be made irrevocable if it is given to secure the performance of a duty or to protect a title, either legal or equitable, until the happening of events which, by its terms, discharge the obligation secured by it.

Notwithstanding the period of irrevocability specified, the proxy becomes revocable when the pledge is redeemed, the option or agreement to purchase is terminated or the seller no longer owns any shares of the Corporation or dies, the debt of the Corporation or the shareholder is paid, the period of employment provided for in the contract of employment has terminated or the close corporation shareholder agreement or the voting trust agreement has terminated. In

14

addition, a proxy may be revoked, notwithstanding a provision making it irrevocable, by a purchaser of shares without knowledge of the existence of the provision unless the existence of the proxy and its irrevocability appears on the certificate representing such shares or, in the case of uncertificated shares, on the initial transaction statement and written statements. Every form of proxy or written consent, which provides an opportunity to specify approval or disapproval with respect to any proposal, shall also contain an appropriate space marked "abstain", whereby a shareholder may indicate a desire to abstain from voting his or her shares on the proposal. A proxy marked "abstain" by the shareholder with respect to a particular proposal shall not be voted either for or against such proposal. In any election of directors, any form of proxy in which the directors to be voted upon are named therein as candidates and which is marked by a shareholder "withhold" or otherwise marked in a manner indicating that the authority to vote for the election of directors is withheld shall not be voted either for or against the election of a director.

### 5.13   Inspectors of Elections

Before any meeting of shareholders, the Board of Directors may appoint any persons other than nominees for office to act as inspectors of election at the meeting or its adjournment. If no inspectors of election are so appointed, the Chairman of the meeting may, and on the request of any shareholder or a shareholder's proxy shall, appoint inspectors of election at the meeting. The number of inspectors shall be either one (l) or three (3). If inspectors are appointed at a meeting on the request of one or more shareholders or proxies, the holders of a majority of shares or their proxies present at the meeting shall determine whether one (l) or three (3) inspectors are to be appointed. If any person appointed as inspector fails to appear or fails or refuses to act, the Chairman of the meeting may, and upon the request of any shareholder or a shareholder's proxy shall, appoint a person to fill that vacancy.  These inspectors shall:

(a)      determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum, and the authenticity, validity, and effect of proxies;

(b)      receive votes, ballots, or consents;

(c)      hear and determine all challenges and questions in any way arising in connection with the right to vote;

(d)      count and tabulate all votes or consents;

(e)      determine when the polls shall close;

(f)      determine the result; and

(g)      do any other acts that may be proper to conduct the election or vote with fairness to all shareholders.

**5.14**    ***Advance Notice of Shareholder Business and Nominations***

(a)    Annual Meetings of Shareholders.

(i)    Nominations of persons for election to the Board of Directors and the proposal of business to be considered by the shareholders may be made at an annual meeting of shareholders only (a) pursuant to the Corporation's notice of meeting (or any supplement thereto), (b) by or at the direction of the Board of Directors or any duly authorized committee thereof, or (c) by any shareholder of the Corporation who was a shareholder of record of the Corporation at the time the notice provided for in this Section 5.14 is delivered to the Secretary of the Corporation, who is entitled to vote at the meeting, and who complies with the notice procedures set forth in this Section 5.14.

(ii)    For nominations or other business to be properly brought before an annual meeting of shareholders by a shareholder, the shareholder must have given timely notice thereof in proper written form to the Secretary of the Corporation and any such proposed business must constitute a proper matter for shareholder action under the Code.  To be timely, a shareholder's notice shall be delivered to the Secretary at the principal executive offices of the Corporation not later than the close of business on the ninetieth (90th) day nor earlier than the close of business on the one hundred twentieth (120th) day prior to the first anniversary of the preceding year's annual meeting (provided, however, that in the event that the date of the annual meeting is more than thirty days before or more than sixty (60) days after such anniversary date, notice by the shareholder must be so delivered not earlier than the close of business on the one hundred twentieth (120th) day prior to such annual meeting and not later than the close of business on the later of the ninetieth (90th) day prior to such annual meeting or the tenth (10th) day following the day on which public announcement of the date of such meeting is first made by the Corporation). In no event shall the public announcement of an adjournment or postponement of an annual meeting of shareholders commence a new time period (or extend any time period) for the giving of a shareholder's notice as described above.  To be in proper written form, a shareholder's notice to the Secretary (whether pursuant to this Section 5.14(a)(ii) or Section 5.14(b)) must set forth:

(A) as to each person, if any, whom the shareholder proposes to nominate for election as a director (x) all information relating to such person that is required to be disclosed in solicitations of proxies for election of directors in an election contest, or is otherwise required, in each case pursuant to and in accordance with Regulation 14A under the Exchange Act and (y) such person's written consent to being named in the proxy statement as a nominee and to serving as a director if elected;

(B) if the notice relates to any business (other than the nomination of persons for election as directors) that the shareholder proposes to bring before the meeting, (w) a brief description of the business desired to be brought before the meeting, (x) the text of the proposal or business (including the text of any resolutions proposed for consideration and in the event that such business includes a proposal to amend the Bylaws of the Corporation, the language of the proposed amendment), (y) the reasons for conducting such business at the meeting, and (z) any material interest in such business of such shareholder and the beneficial owner, if any, on whose behalf the proposal is made; and

(C) as to the shareholder giving the notice and the beneficial owner, if any, on whose behalf the nomination or proposal is made (w) the name and address of such shareholder, as they appear on the Corporation's books, and of such beneficial owner, (x) the class or series and number of shares of capital stock of the Corporation that are, directly or indirectly, owned beneficially and of record by such shareholder and by such beneficial owner, (y) any derivative positions with respect to shares of capital stock of the Corporation held or beneficially held by or on behalf of such shareholder and by or on behalf of such beneficial owner, the extent to which any hedging or other transaction or series of transactions has been entered into with respect to the shares of capital stock of the Corporation by or on behalf of such shareholder and by or on behalf of such beneficial owner, and the extent to which any other agreement, arrangement or understanding has been made, the effect or intent of which is to increase or decrease the voting power of such shareholder and such beneficial owner with respect to shares of capital stock of the Corporation,  (z) a representation that the shareholder is a holder of record of stock of the Corporation entitled to vote at such meeting and intends to appear in person or by proxy at the meeting to propose such business or nomination, and (aa) a representation whether the shareholder or the beneficial owner, if any, intends or is part of a group that intends (bb) to deliver a proxy statement and/or form of proxy to holders of at least the percentage of the Corporation's outstanding capital stock required to approve or adopt the proposal or elect the nominee or (cc) otherwise to solicit proxies from shareholders in support of such proposal or nomination.

The Corporation may require any proposed nominee to furnish such other information as it may reasonably require to determine (x) the eligibility of such proposed nominee to serve as a director of the Corporation, and (y) whether such nominee qualifies as an "independent director" or "audit committee financial expert" under applicable law, securities exchange rule or regulation, or any publicly-disclosed corporate governance guideline or committee charter of the Corporation.

(iii)    Notwithstanding anything in the second sentence of paragraph (a)(ii) of this Section 5.14 to the contrary, in the event that the number of directors to be elected to the Board of Directors of the Corporation at an annual meeting is increased and there is no public announcement by the Corporation naming all of the nominees for director or specifying the size of the increased Board of Directors at least one hundred (100) days prior to the first anniversary of the preceding year's annual meeting, a shareholder's notice required by this Section 5.14 shall also be considered timely, but only with respect to nominees for any new positions created by such increase, if it shall be delivered to the Secretary of the Corporation at the principal executive offices of the Corporation not later than the close of business on the tenth (10th) day following the day on which such public announcement is first made by the Corporation.

(b)     Special Meetings of Shareholders.  Only such business shall be conducted at a special meeting of shareholders as shall have been brought before the meeting pursuant to the Corporation's notice of meeting.  Nominations of persons for election to the Board of Directors may be made at a special meeting of shareholders at which directors are to be elected pursuant to the Corporation's notice of meeting (1) by or at the direction of the Board of Directors or any duly authorized committee thereof or (2) provided that the Board of Directors or any duly authorized committee thereof has determined that directors shall be elected at such meeting, by any shareholder of the Corporation who is a shareholder of record at the time the notice provided for in this Section 5.14 is delivered to the Secretary of the Corporation, who is entitled to vote at the meeting and upon such election, and who complies with the notice procedures set forth in this Section 5.14.  In the event the Corporation calls a special meeting of shareholders for the purpose of electing one or more directors to the Board of Directors, any such shareholder entitled to vote in such election of directors may nominate a person or persons (as the case may be) for election to such position(s) as specified in the Corporation's notice of meeting, if the shareholder's notice in the same form as required by paragraph (a)(ii) of this Section 5.14 shall be delivered to the Secretary at the principal executive offices of the Corporation not earlier than the close of business on the one hundred twentieth (120th) day prior to such special meeting and not later than the close of business on the later of the ninetieth (90th) day prior to such special meeting or the tenth (10th) day following the day on which public announcement is first made of the date of the special meeting and of the nominees proposed by the Board of Directors to be elected at such meeting.  In no event shall the public announcement of an adjournment or postponement of a special meeting commence a new time period (or extend any time period) for the giving of a shareholder's notice as described above.

(c)     General.

(i)     Only such persons who are nominated in accordance with the procedures set forth in this Section 5.14 shall be eligible to be elected at an annual or special meeting of shareholders of the Corporation to serve as directors and only such business shall be conducted at a meeting of shareholders as shall have been brought before the meeting in accordance with the procedures set forth in this Section 5.14.  Except as otherwise provided by law, the chairman of the meeting shall have the power and duty (A) to determine whether a nomination or any business proposed to be brought before the meeting was made or proposed, as the case may be, in accordance with the procedures set forth in this Section 5.14 and (B) if any proposed nomination or business was not made or proposed in compliance with this Section 5.14, to declare that such nomination shall be disregarded or that such proposed business shall not be transacted. Notwithstanding the foregoing provisions of this Section 5.14, unless otherwise required by law, if the shareholder (or a qualified representative of the shareholder) does not appear at the annual or special meeting of shareholders of the Corporation to present a nomination or proposed business, such nomination shall be disregarded and such proposed business shall not be considered, notwithstanding that proxies in respect of such vote may have been received by the Corporation.  For purposes of this Section 5.14, to be considered a qualified representative of the shareholder, a person must be authorized by a writing executed by such shareholder or an electronic transmission delivered by such shareholder to act for such shareholder as proxy at the meeting of shareholders and such person must produce such writing or electronic transmission, or a reliable reproduction of the writing or electronic transmission, at the meeting of shareholders.

(ii)     For purposes of this Section 5.14, "public announcement" shall include disclosure in a press release reported by the Dow Jones News Service, Associated Press, or comparable national news service or in a document publicly filed by the Corporation with the Securities and Exchange Commission pursuant to Section 13, 14, or 15(d) of the Exchange Act.

(iii)     Nothing in this Section 5.14 shall be deemed to affect any rights (a) of shareholders to request inclusion of proposals or nominations in the Corporation's proxy statement pursuant to Rule 14a-8 (or any successor thereto) promulgated under the Exchange Act (and any proposal included in the Corporation's proxy statement pursuant to such Rule shall not be subject to any of the advance notice requirements in this Section 5.14), or (b) of the holders of any series of Preferred Stock to nominate and elect directors pursuant to and to the extent provided in any applicable provisions of the certificate of incorporation.

## ARTICLE VI

## MEETINGS OF DIRECTORS

### 6.1    Place of Meetings

Meetings (whether regular, special or adjourned) of the Board of Directors shall be held at the principal office of the Corporation for the transaction of business, as specified in accordance with Section 1.1 of these Bylaws, or at any other place within or without the State which has been designated from time to time by resolution of the Board or which is designated in the notice of the meeting.  Any meeting (whether regular, special or adjourned) may be held by conference telephone, electronic video screen communication or electronic communication by and to the Corporation.  Participation in a meeting through the use of conference telephone or electronic video screen communication pursuant to this Section 6.1 constitutes presence in person at that meeting so long as all members participating in the meeting are able to hear one another.  Participation in a meeting through electronic transmission by and to the Corporation (other than conference telephone and electronic video screen communication), pursuant to this Section 6.1 constitutes presence in person at that meeting if both of the following apply:

(a)     each member participating in the meeting can communicate with all of the other members concurrently; and

(b)     each member is provided the means of participating in all matters before the Board of Directors, including, without limitation, the capacity to propose, or to interpose an objection to, a specific action to be taken by the Corporation.

### 6.2    Regular Annual Meeting; Regular Meetings

After the adjournment of each annual meeting of the shareholders, the Board of Directors shall hold a regular meeting (which regular directors' meeting shall be designated the "Regular Annual Meeting") and no notice need be given for the Regular Annual Meeting unless the Regular Annual Meeting is not held at the principal place of business provided at Section 1.1 of these Bylaws.  Regular meetings of the Board of Directors may be held without notice if the time and place of such meetings are fixed by the Board of Directors.

### 6.3     Special Meetings

Special meetings of the Board of Directors may be called at any time by the Chairman of the Board, if any, the President or the Chief Executive Officer, any Vice President, the Secretary, or by any two or more directors.

### 6.4     Notice of Special Meetings

Special meetings of the Board of Directors shall be held upon no less than four (4) days' notice by mail or forty-eight (48) hours' notice delivered personally or by telephone to each director.  Commencing on January 1, 2011, special meetings of the Board of Directors shall be held upon no less than four (4) days' notice by mail or forty-eight (48) hours' notice delivered personally or by telephone, including voice messaging system or by electronic transmission by the Corporation.

### 6.5     Quorum

A majority of the authorized number of directors shall constitute a quorum for the transaction of business, except to adjourn as provided by Section 6.6 of these Bylaws.  Every act or decision done or made by a majority of the directors present at a meeting duly held at which a quorum is present is the act of the Board of Directors, subject to the provisions of Section 310 of the Code (as to the approval of contracts or transactions in which a director has a direct or indirect material financial interest), Section 311 of the Code (as to the appointment of committees), Section 317(a) of the Code (as to the indemnification of directors), the Articles of Incorporation or other applicable law.  A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for such meeting.

### 6.6     Adjournment

A majority of the directors present, whether or not a quorum is present, may adjourn any meeting to another time and place.  If the meeting is adjourned for over twenty-four (24) hours, notice of any adjournment to another time and place shall be given prior to the time of the adjourned meeting to the directors who were not present at the time of adjournment.

### 6.7     Waiver and Notice of Consent

Notice of a meeting need not be given to a director who provides a waiver of notice or a consent to holding the meeting, or who attends the meeting without protesting, prior thereto or at its commencement, the lack of notice to such director.  All such waivers, consents and approvals shall be filed with the corporate records or made a part of the minutes of the meeting.

### 6.8     Action without a Meeting

Any action required or permitted by law to be taken by the Board of Directors may be taken without a meeting, if all members of the Board of Directors shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed

with the minutes of the proceedings of the Board of Directors. Such action by written consent shall have the same force and effect as the unanimous vote of such directors.

### 6.9    Committees

The provisions of this <u>Article VI</u> also apply to committees of the Board of Directors and action by such committees, mutatis mutandis.

## ARTICLE VII

## GENERAL MATTERS

### 7.1    Record Date for Purposes Other than Notice and Voting

For purposes of determining the shareholders entitled to receive payment of any dividend or other distribution or allotment of any rights or entitled to exercise any rights in respect of any other lawful action (other than with respect to notice or voting at a shareholders' meeting or action by shareholders by written consent without a meeting), the Board of Directors may fix, in advance, a record date, which shall not be more than sixty (60) days prior to any such action. Only shareholders of record at the close of business on the record date are entitled to receive the dividend, distribution or allotment or rights, or to exercise the rights, as the case may be, notwithstanding any transfer of any shares on the books of the Corporation after the record date, except as otherwise provided for in the Articles of Incorporation or the Code.

### 7.2    Instruments in Writing

All checks, drafts, other orders for payments of money, notes or other evidences of indebtedness of the Corporation, and all written contracts of the Corporation, shall be signed by such officer or officers, agent or agents, as the Board of Directors may from time to time designate. No officer, agent, or employee of the Corporation shall have the power to bind the Corporation by contract or otherwise unless authorized to do so by these Bylaws or by the Board of Directors.

### 7.3    Shares Held by the Corporation

Shares in other corporations standing in the name of the Corporation may be voted or represented and all rights incident thereto may be exercised on behalf of the Corporation by any officer of the Corporation authorized so to do by resolution of the Board of Directors.  The authority herein granted may be exercised either by such person directly or by any other person authorized to do so by proxy or by power of attorney duly executed by such person having the authority.

### 7.4    Certificates for Shares

(a)    Every holder of shares in the Corporation shall be entitled to have a certificate or certificates signed in the name of the Corporation by the Chief Executive Officer or the President and by the Secretary or any Assistant Secretary, certifying the number of shares and the class or series of shares owned by the shareholder.  Any or all of the signatures on the certificate may be

facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate has ceased to be such officer transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were an officer, transfer agent or registrar at the date of issue.

(b)     Notwithstanding clause (a) of this Section 7.4, shares of the Corporation may be evidenced by registration in the holder's name in uncertificated, book-entry form in accordance with the direct registration system approved by the United States Securities and Exchange Commission and by the principal securities exchange on which the stock of the Corporation may from time to time be traded, or as may be otherwise authorized by Section 416(b) of the Code or any successor statute, as any of the foregoing may be approved from time to time by the Board of Directors.  Every holder of uncertificated shares of the Corporation shall be entitled to receive a statement of holdings as evidence of share ownership.  As provided in Section 416(b) of the Code, any direct registration system so implemented shall not become effective as to issued and outstanding certificated securities until the certificates therefor have been surrendered to the Corporation.

### 7.5     Lost Certificates

Except as provided in this Section 7.5, no new stock certificate or uncertificated shares shall be issued to replace a previously issued certificate unless the latter is surrendered to the Corporation or its transfer agent or registrar and cancelled at the same time.  Where the owner of any certificate for shares of the Corporation claims that the certificate has been lost, stolen or destroyed, a new certificate or uncertificated shares, in the Corporation's discretion, shall be issued in place of the original certificate if the owner (a) so requests before the Corporation has notice that the original certificate has been acquired by a bona fide purchaser, (b) files with the Corporation an indemnity bond in such form and in such amount sufficient to protect the Corporation against any claim that may be made against it, including any expense or liability, on account of the alleged loss, theft or destruction of the certificate or the issuance of the replacement certificate or uncertificated shares as shall be approved by the Chief Executive Officer, the President or a Vice President, and (c) satisfies any other reasonable requirements imposed by the Corporation.  The Board of Directors may adopt such other provisions and restrictions with reference to lost certificates, not inconsistent with applicable law, as it shall in its discretion deem appropriate.

### 7.6     Certification and Inspection of Bylaws

The Corporation shall keep at its principal executive or business office the original or a copy of these Bylaws as amended or otherwise altered to date, which shall be open to inspection by the shareholders at all reasonable times during office hours.

### 7.7     Interpretation

Reference in these Bylaws to any provision of the Code shall be deemed to include all amendments thereof.

### 7.8    Construction

Unless the context requires otherwise, the general provisions, rules of construction and definitions in the Code shall govern the construction of these Bylaws.  Without limiting the generality of the provision, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a corporation and a natural person.

## ARTICLE VIII

## CONSTRUCTION OF BYLAWS WITH REFERENCE TO PROVISIONS OF LAW

### 8.1    Bylaw Provisions Additional and Supplemental to Provisions of Law

All restrictions, limitations, requirements and other provisions of these Bylaws shall be construed, insofar as possible, as supplemental and additional to all provisions of law applicable to the subject matter thereof and shall be fully complied with in addition to the said provisions of law unless such compliance shall be illegal.

### 8.2    Bylaw Provisions Contrary to or Inconsistent with Provisions of Law

Any article, section, subsection, subdivision, sentence, clause or phrase of these Bylaws which, upon being construed in the manner provided in Section 8.1 of these Bylaws, shall be contrary to or inconsistent with any applicable provision of law, shall not apply so long as said provisions of law shall remain in effect, but such result shall not affect the validity or applicability of any other portions of these Bylaws, it being hereby declared that these Bylaws, and each article, section, subsection, subdivision, sentence, clause, or phrase thereof, would have been adopted irrespective of the fact that any one or more articles, sections, subsections, subdivisions, sentences, clauses or phrases is or are illegal.

## ARTICLE IX

## ADOPTION, AMENDMENT OR REPEAL OF BYLAWS

### 9.1    By Shareholders

These Bylaws may be adopted, amended or repealed by the vote or written consent of holders of a majority of the outstanding shares entitled to vote.  Any bylaws specifying or changing a fixed number of directors or the maximum or minimum number or changing from a fixed to a variable board or vice versa may only be adopted by the shareholders; provided, however, that a bylaw or amendment of the Articles of Incorporation reducing the number or the minimum number of directors to a number less than five cannot be adopted if the votes cast against its adoption at a meeting or the shares not consenting in the case of action by written consent are equal to more than sixteen and two-thirds percent (16-2/3%) of the outstanding shares entitled to vote.

### 9.2 By the Board of Directors

Subject to the right of shareholders to adopt, amend or repeal these Bylaws, other than a bylaw or amendment thereof specifying or changing a fixed number of directors or the maximum or minimum number or changing from a fixed to a variable board or vice versa, may be adopted, amended or repealed by the Board of Directors. A bylaw adopted by the shareholders may restrict or eliminate the power of the Board of Directors to adopt, amend or repeal these Bylaws.

## ARTICLE X

## INDEMNIFICATION

### 10.1 Indemnification of Directors and Officers

The Corporation shall, to the maximum extent and in the manner permitted by the Code, indemnify each of its directors and officers against expenses (as defined in Section 317(a) of the Code), judgments, fines, settlements, and other amounts actually and reasonably incurred in connection with any proceeding (as defined in Section 317(a) of the Code), arising by reason of the fact that such person is or was an agent of the Corporation. For purposes of this Article X, a "director" or "officer" of the Corporation includes any person (a) who is or was a director or officer of the Corporation, (b) who is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, or (c) who was a director or officer of a corporation which was a predecessor corporation of the Corporation or of another enterprise at the request of such predecessor corporation.

### 10.2 Indemnification of Others

The Corporation shall have the power, to the extent and in the manner permitted by the Code, to indemnify each of its employees and agents (other than directors and officers) against expenses (as defined in Section 317(a) of the Code), judgments, fines, settlements, and other amounts actually and reasonably incurred in connection with any proceeding (as defined in Section 317(a) of the Code), arising by reason of the fact that such person is or was an agent of the Corporation.  For purposes of this Article X, an "employee" or "agent" of the Corporation (other than a director or officer) includes any person (a) who is or was an employee or agent of the Corporation, (b) who is or was serving at the request of the Corporation as an employee or agent of another corporation, partnership, joint venture, trust or other enterprise, or (c) who was an employee or agent of a corporation which was a predecessor corporation of the corporation or of another enterprise at the request of such predecessor corporation.

### 10.3 Payment of Expenses in Advance

Expenses incurred in defending any proceeding for which indemnification is required pursuant to Section 10.1 of these Bylaws or for which indemnification is permitted pursuant to Section 10.2 of these Bylaws following authorization thereof by the Board of Directors, may be advanced by the Corporation prior to the final disposition of the proceeding upon receipt of an undertaking by or on behalf of the indemnified party to repay that amount if it shall be determined ultimately that the indemnified person is not entitled to be indemnified as authorized by this Article X.

### 10.4    Indemnification not Exclusive

The indemnification provided by this Article X for acts, omissions or transactions while acting in the capacity of, or while serving as, a director or officer of the Corporation but not involving a breach of duty to the Corporation and its shareholders shall not be deemed exclusive of any other rights to those seeking indemnification may be entitled under any bylaw, agreement, vote of shareholders or disinterested directors, or otherwise, to the extent the additional rights to indemnification are authorized in the Articles of Incorporation.

### 10.5    Insurance Indemnification

The Corporation shall have the power to purchase and maintain insurance on behalf of any agent of the Corporation against any liability asserted against or incurred by the agent in that capacity or arising out of that agent's status as such whether or not the Corporation would have the power to indemnify the agent against that liability under the provisions of this Article X.

### 10.6    Conflicts

No indemnification or advance shall be made under this Article X, except where the court in which the proceeding is or was pending upon application made by the Corporation or the agent or the attorney or other person rendering services in connection with the defense, whether or not the application by the agent, attorney or other person is opposed by the Corporation:

(a)      that it would be inconsistent with a provision of the Articles of Incorporation, these Bylaws, a resolution of the shareholders or an agreement in effect at the time of the accrual of the alleged cause of the action asserted in the proceeding in which the expenses were incurred or other amounts were paid, which prohibits or otherwise limits indemnification; or

(b)      that it would be inconsistent with any condition expressly imposed by a court in approving a settlement.

# CERTIFICATE OF ADOPTION OF

# AMENDED BYLAWS

# OF

# APPLE INC.

The undersigned hereby certifies that he is the duly elected, qualified and acting Senior Vice President, General Counsel and Secretary of Apple Inc., a California corporation (the "Corporation"), and that the foregoing amended and restated bylaws were adopted as the Corporation's bylaws as of May 27, 2009 by the Corporation's Board of Directors.

The undersigned has executed this Certificate as of May 27, 2009.


/s/ Daniel Cooperman_____
Daniel Cooperman
Senior Vice President, General Counsel and
Secretary

Exhibit D

**APPLE INC.**
**INSIDER TRADING POLICY**
**ENHANCED COMPLIANCE REQUIREMENTS**

Notwithstanding any other terms that may be adopted or amended, Apple's Insider Trading Policy shall include, at a minimum, the following enhanced compliance requirements.

1) **Identity of Mandatory Blackout Individuals:** Certain "mandatory blackout individuals" shall be subject to a regular quarterly trading blackout. These individuals shall include employees and consultants in each of the following categories. Apple may add categories to further expand the scope of the mandatory blackout restriction.

   - ***"Horizontal" restrictions***:
     - Apple's Board of Directors
     - Apple's Executive Officers
     - All director-level and higher employees of the Company, irrespective of function

   - ***"Vertical" restrictions***:
     - All employees and consultants performing a Legal function
     - All employees and consultants performing a Financial Reporting function
     - All employees and consultants performing a Tax function
     - All employees and consultants performing a Corporate Development function
     - All executive support staff for the Company's Executive Officers
     - All employees with access to worldwide sales data through Apple's accounting and reporting systems
     - All members of Apple's Disclosure Committee

2) **Extension of Mandatory Quarterly Blackout:** Apple's General Counsel shall consider, during each quarterly trading blackout, whether Apple's Board of Directors, Executive Officers, and vice president-level and above employees should be placed on an extended blackout period in light of currently non-public information.  If the General Counsel determines to extend the blackout period, such determination, and the duration of the blackout period, shall be conclusive and final.

3) **Post-Termination Blackout:** Any mandatory blackout individual who terminates employment or service with Apple during a blackout period must continue to refrain from trading until the next open trading window.

4)      **Mandatory Pre-Clearance of Section 16 Officer or Director Trades:** During an open trading window, any purchase or sale of Apple securities, establishment of a Rule 10b5-1(c) trading plan, or any other action constituting an investment decision in Apple securities by a Section 16 officer or member of Apple's Board of Directors must be pre-cleared by Apple's General Counsel, whose determination to grant or withhold such pre-clearance shall be conclusive and final.

- *Specificity:* The pre-clearance request must specifically describe the proposed transaction, and the pre-clearance, if granted, shall only apply to such transaction. Blanket pre-clearances are prohibited.
- *No Material Non-Public Information***:** The individual must not be in possession of material nonpublic information at the time of the request and must refrain from trading if they should obtain such information prior to the completion of the pre-cleared transaction.
- *Waiting Period***:** A pre-clearance request must be submitted to the General Counsel no less than two days prior the requested effective date.
- *Limited Duration***:** The pre-clearance will be effective for a maximum of seven days.

5)      **Permanent Investment Advisor and Money Manager Blackout for Section 16 Officers and Directors:** All Section 16 officers and members of Apple's Board of Directors must inform their financial advisors and money managers not to trade in Apple securities under any circumstances.

6)      **Rule 10b5-1(c) Trading Plans:** Section 16 officers, other employees, and members of Apple's Board of Directors may only adopt Rule 10b5-1(c) trading plans in compliance with the following requirements:

- Plans must be reviewed by Apple counsel and acknowledged by the General Counsel, who reserves the right to refuse the adoption of any plan in violation of Apple's Insider Trading Policy.
- Plans may only be adopted during an open trading window and the first trade may not execute until the *next* open trading window following adoption.
- Plans may not be amended for one year following adoption.
- Plans adopted by employees other than Section 16 officers must follow the approved format currently in effect with Apple's dedicated brokerage firms (an "Approved Plan Format").
- The terms of any plan adopted by a Section 16 officer may be more, but not less, restrictive than the terms in the Approved Plan Format.

Exhibit E

# APPLE INC.

## COMPENSATION COMMITTEE CHARTER

There shall be a Committee of the Board of Directors (the "Board") of Apple Inc. (the "Corporation") to be known as the Compensation Committee (the "Committee") with purpose, composition, authority, duties and responsibilities, as follows:

## A.   PURPOSE OF THE COMMITTEE

The purpose of the Committee is to:

1. Establish and modify compensation and incentive plans and programs;

2. Review and approve compensation and awards under compensation and incentive plans and programs for elected officers of the Corporation; and

3. Act as the administering committee for equity compensation plans as designated by the Board.

## B.   COMPOSITION OF THE COMMITTEE

The members of the Committee shall be appointed by the Board.  The Committee will be composed of not less than three Board members. Each member shall be "independent" in accordance with applicable law, including the rules and regulations of the Securities and Exchange Commission and the rules of the NASDAQ Stock Market. Committee members are prohibited from interlocking or insider participation with any member of the board or compensation committee of another company. Committee members shall qualify as "Non-employee Directors" for the purposes of Rule 16b-3 under the Securities Exchange Act of 1934, as amended. At least two of three Committee members shall qualify as "outside directors" for the purposes of Section 162(m) of the Internal Revenue Code. The Chair of the Committee shall be designated by the Board.

Members of the Committee shall serve until their successors are duly elected and qualified or their earlier resignation or removal. The Board may replace any member of the Committee.

## C.   COMMITTEE MEETINGS

The Committee shall meet as often as it deems appropriate, but not less than four times a year, to perform its duties and responsibilities under this charter. The Chair of the Board, any member of the Committee, or the Secretary of the Corporation may call meetings of the Committee. The Chair of the Committee, in consultation with the Committee members and members of management, will determine the frequency and length of Committee meetings and develop the Committee's agenda.  At the beginning of

the year, the Committee will establish a schedule of agenda subjects to be discussed during the year (to the extent these can be foreseen). The Committee shall maintain written minutes of its meetings, which will be filed with the meeting minutes of the Board. The Committee shall ensure that draft minutes of each meeting at which equity award grants are to be considered or approved are promptly prepared following such meeting.

## D.    AUTHORITY AND RESOURCES

The Committee may request any officer or employee of the Corporation or the Corporation's outside counsel to attend a Committee meeting. The Committee shall ensure that the Corporation's counsel attends each meeting at which equity award grants are to be considered or approved. The Committee has the right at any time to obtain advice, reports or opinions from internal and external counsel and expert advisors and has the authority to hire and terminate independent legal, financial and other advisors as it may deem necessary, at the Corporation's expense, without consulting with, or obtaining approval from, any officer of the Corporation in advance.

## E.    DUTIES AND RESPONSIBILITIES

The Committee shall:

1.  Review periodically, and as appropriate approve compensation, incentive, and benefits policies and programs applicable to the Corporation's executive management.

2.  Conduct and review with the Board an annual evaluation of the performance of the Chief Executive Officer (the "CEO");

3.  Coordinate, and review with the CEO, the Board's annual review of the performance of other executive officers.

4.  Review and approve periodically the salaries, bonuses and perquisites of elected officers of the Corporation and its subsidiaries, including the CEO.

5.  Review annually and make recommendations to the Board regarding the compensation of the Board and Board committee members.

6.  At least annually, select and retain an independent compensation consultant to conduct a comparative study of the Corporation's executive compensation policies, practices, and procedures relative to other public companies and prepare and submit to the Committee a report and recommendations.

7.  Act as administering committee of the Corporation's various bonus plans, stock plans and equity arrangements that may be adopted by the Corporation from time to time, with such authority and powers as are set forth in the

respective plans' instruments, including but not limited to establishing performance metrics, determining bonus payouts and the granting of equity awards to employees and executive officers, in each case subject to the provisions of the Corporation's Equity Award Grant Practices Policy and all other applicable policies adopted by the Board.  The Committee shall consider the appropriateness of clawback provisions for every executive grant.

8.   Review for approval or disapproval special hiring or termination packages for elected officers of the Corporation, if it is determined by the members of the Committee that approval by the full Board is not necessary.

9.   To the extent it deems necessary, recommend to the Board the establishment or modification of employee stock-based plans for the Corporation and its subsidiaries, in each case subject to the provisions of the Corporation's Equity Award Grant Practices Policy.

10.  To the extent it deems necessary, review and advise the Board regarding other compensation plans.

11.  Review and comment on management's Compensation Discussion & Analysis and prepare an annual Compensation Committee Report for inclusion in the Corporation's proxy statement, including disclosure of the policy for the timing and rationale of the Corporation's option grants.

12.  Review the Committee's charter, structure, processes, and membership requirements and submit any recommended changes to the Board at least once a year.

13.  Report to the Board concerning the Committee's activities with such recommendations as the Committee deems appropriate at least once a year.

14.  Perform such other functions as assigned by law, the Corporation's charter or bylaws, or the Board.

The Committee can delegate any of its responsibilities to the extent allowed under applicable law, in each case subject to the provisions of the Corporation's Equity Award Grant Practices Policy.  In particular, the authority to grant equity awards or to take any other action with respect to equity awards (other than the performance of ministerial duties) may not be delegated to the Corporation's management or any other person.

## F.   EXCEPTIONS

Notwithstanding any implication to the contrary above:

1.   In making its determination regarding compensation and plans which it is

responsible for administering, the Committee shall take into account compensation received from all sources, including plans or arrangements that it is not responsible to administer.

2.     The Committee shall take into consideration the tax-deductibility requirements of Section 162(m) of the Internal Revenue Code when reviewing and approving compensation for executive officers and, if deemed advisable, have such compensation approved by no less than two Committee members who qualify as outside directors. If the Committee does not have two outside directors as defined in Section 162(m) of the Internal Revenue Code, such compensation should be approved by a majority of the Board members who qualify as outside directors.

3.     The Committee shall not be empowered to approve matters that applicable law, the Corporation's charter, or the Corporation's bylaws require be approved by a vote of the full Board.

Exhibit F

## EXHIBIT A

## APPLE INC.
## 2003 EMPLOYEE STOCK PLAN
## EQUITY AWARD GRANT PRACTICES POLICY

The purpose of this Equity Award Grant Practices Policy (this "Policy") is to establish rules and procedures for the approval of equity-based awards to employees of Apple Inc. (the "Company") under the 2003 Employee Stock Plan (the "Plan"). The goals of this Policy are to:

- Ensure consistent practices in making award grants;

- Standardize the equity compensation process;

- Reduce the possibility of errors or irregularities in grant procedures;

- Facilitate management and timely reporting of grants;

- Ensure compliance with applicable laws, regulations, accounting and reporting requirements and the Plan; and

- Provide an additional channel for the Board of Directors (the "Board") and/or the Compensation Committee of the Board (the "Compensation Committee") to communicate and direct requirements and expectations with regard to equity compensation procedures.

1. _Authority to Make Grants_. Equity awards grants shall be made by the Board, the Compensation Committee or another Board committee to which such grant authority has been properly delegated. (The applicable body authorized to make the grant is referred to in this Policy as the "Administrator.") Although the Company's management may make recommendations to the Administrator regarding the granting of equity awards and carry out other ministerial duties, the authority to grant such awards or to take any other action with respect to such awards shall not be delegated to the Company's management or any other person.

2. _Grant Dates_. The grant date for each equity award (including a stock option) shall be the date formal action is taken by the Administrator (or such later, but not earlier, date as may be specified by the Administrator at the time of taking such action). Such formal action shall be taken at an in-person or telephonic meeting or by unanimous written consent and shall be taken in accordance with applicable law and the Company's bylaws and other governing documents (including the Plan and, if the action is taken by a committee of the Board, the Charter of that committee). If the grant is approved pursuant to an action by unanimous written consent, the formal action shall be considered to have been taken on the date the last approval is received by the Company. The grant date for an award to a newly hired employee shall be the later of the date on which the employee has commenced employment with the Company or the date on which formal action has been taken to approve the grant.

3. _Records of Actions Approving Grants_. The records of the formal action approving a grant (including an action by unanimous written consent) shall include the date of the meeting approving the grant (or in the case of grants approved by unanimous written consent, the dates on which the consent is executed by each director and, if different, the dates on which

the executed signature pages are received by the Company), the names of the recipients to whom awards were granted, the number and type of awards granted to each recipient, the vesting schedule of each award, any applicable purchase or exercise price (or method for determining the exercise price) for the awards, a reference to the plan or other authority under which the awards are granted, as well as the other terms and conditions on which the awards are granted (or a reference to the terms and conditions as set forth in a separate document, such as a form of option agreement presented to or previously approved by the Board or committee). In addition, the records of the formal action should indicate, in the case of grants to employees, the employee's title and job grade. Management shall not make any additions or changes to any of the foregoing information after the formal action is taken approving the grant. If grants are approved at a meeting, the Company's legal counsel shall be present at each meeting in which grants are approved and shall prepare drafts of meeting minutes promptly after the meeting date. The Company shall establish procedures for monitoring the transmission and receipt of unanimous written consents that shall facilitate the auditing of transmission, signature and receipt dates and content, segregation of responsibilities, independent process review, and records retention. The Company shall retain records of the formal action approving any grants of stock options for at least seven years after the expiration date of the option.

4.   <u>Exercise Prices of Option Grants</u>.  The exercise prices of all option grants shall be determined using the method prescribed by the Plan, provided that in all events the exercise price shall not be less than 100% of the fair market value of the Company's common stock on the grant date (or, if the grant date is not a trading day, the most recent trading day prior to the grant date).  For these purposes, the fair market value shall be the closing market price (in regular trading, not after-hours trading) for the Company's common stock on the grant date (as reported in The Wall Street Journal or another widely accepted source as the Board or Compensation Committee deems reliable).  The method for determining the fair market value of the Company's common stock for purposes of setting the exercise price of option grants shall be reviewed from time to time to ensure it is consistent with applicable accounting rules to avoid unintended accounting consequences.

5.   <u>Minimum Vesting Requirements for Option Grants</u>.

(a)  No option grant under the Plan shall vest more rapidly than in monthly installments over the three-year period immediately following the grant date and vesting of any vesting installment of the option grant shall occur only if the recipient is an employee or consultant of the Company or one of its subsidiaries on the date such installment is scheduled to vest.

(b)  However, the Compensation Committee may accelerate or provide in the applicable option agreement for the accelerated vesting of any option grant in connection with one or more of the following:

- a change in control of the recipient's employer (or ultimate parent);
- the termination of the recipient's employment (including a termination of employment due to the recipient's death, disability or retirement, but not including a termination of employment by the recipient's employer for cause); or
- as consideration or partial consideration for a release by the recipient of pending or threatened claims against the Company, the recipient's employer, or any of their respective directors, officers, other employees, affiliates or

agents (regardless of whether the release is given in connection with a termination of employment by the recipient's employer for cause or other circumstances).

(c) The Compensation Committee also may accelerate or provide in the applicable option agreement for the accelerated vesting of any option grant in circumstances not contemplated above and provide for a vesting schedule for such option grant that is shorter than the minimum schedule contemplated above, in such circumstances as the Compensation Committee may deem appropriate as long as the total number of shares subject to the portion of any such option grant and any other award under the Plan that vests earlier than the minimum vesting dates that would apply pursuant to the minimum vesting requirements above (or, as to any accelerated vesting, provides for accelerated vesting other than in the circumstances contemplated above) does not exceed five percent (5%) of the Plan's aggregate share limit.

6.    Communication of Award Grants.  All award grants shall be communicated to award recipients as soon as practicable after the grant date in accordance with the applicable accounting rules.

7.    Internal Review and Oversight of Grant Procedures and Documentation.  The Company's in-house legal, accounting and internal audit departments shall monitor and review grant procedures on an ongoing basis to ensure proper documentation and accounting for all equity award grants and compliance with applicable law, accounting guidelines, the Plan and this Policy. The Company's technical accounting department shall establish criteria and procedures to evaluate the accounting implications of recommended stock option grants. Management shall conduct an annual compliance review of option grants under the Plan and report its findings to the Board.  The Company shall monitor industry and regulatory practices and periodically revise its practices as developments occur and updates are deemed advisable by the Board.

8.    Amendment of Policy.  The Board may, at any time, amend, modify or terminate this Policy or any provision hereof.

Exhibit G

**SUMMARY OF**
**APPLE INC.**
**TRADING COMPLIANCE COMMITTEE**
**PURPOSES, COMPOSITION, AUTHORITY AND DUTIES**

### I. PURPOSE OF THE COMMITTEE:

Develop, monitor and update a comprehensive program designed to ensure compliance with the Company's stock trading policies (the "Trading Compliance Program").

### II. COMPOSITION OF THE COMMITTEE:

- General Counsel and Chief Financial Officer
- Responsible directly to the Audit and Finance Committee

### III. COMMITTEE MEETINGS.

- Meet at least twice a year or more frequently as circumstances dictate.
- Report at least annually to the Audit and Finance Committee outside the presence of any other members of management.

### IV. AUTHORITY AND RESOURCES

- Access to all Company trading records, policies and procedures.
- May request any officer or employee of the Company or the Company's outside counsel or independent auditor to attend a Committee meeting or to meet with any members of, or consultants to, the Committee.
- Audit and Finance Committee may communicate directly with the Committee.
- May conduct or authorize investigations into any matters within the Committee's scope of responsibilities.
- Retain advisors and experts to assist in any investigation or the performance of its functions at the Company's expense.

### V. DUTIES AND RESPONSIBILITIES

A. Develop, monitor and update a Trading Compliance Program, which may include:
- Appointment of an Insider Trading Compliance Officer
- An insider trading policy and procedures, including policies and procedures regarding the following:
  - o  Covered persons
  - o  Trading black-out periods
  - o  Trading Windows
  - o  Trading pre-clearances and reporting
  - o  Rule 10b5-1 trading plan review and approval
- A Section 16 compliance policy and procedures
- An employee communications policy related to trading compliance
- A trading compliance education policy

B. Collaborate with Legal, Finance, Human Resources, Compensation, Security, Technical Accounting, Information Systems & Technology, and Risk Management in developing and ensuring compliance with the above policies and procedures.

C. Monitor industry and regulatory trading compliance practices and periodically revise the Trading Compliance Program as developments occur and updates are deemed advisable by the Committee, the Audit and Finance Committee or the Board.

D. Such other duties as the Audit and Finance Committee may determine from time to time.

Exhibit H

**APPLE INC.**
**COMPENSATION COMMITTEE CHARTER**
(Amend Charter Proposed ~~May 23~~_____, ~~2007~~2008)

There shall be a Committee of the Board of Directors to be known as the Compensation Committee with purpose, composition, duties and responsibilities, as follows:

**Purpose of the Committee.** The Committee shall (i) establish and modify compensation and incentive plans and programs, (ii) review and approve compensation and awards under compensation and incentive plans and programs for elected officers of the Corporation, and (iii) be the administering committee for equity compensation plans as designated by the Board.

**Composition.** The members of the Committee shall be appointed by the Board of Directors. The Committee will be composed of not less than three Board members. Each member shall be "independent" in accordance with applicable law, including the rules and regulations of the Securities and Exchange Commission and the rules of the NASDAQ Stock Market. Committee members are prohibited from interlocking or insider participation with any member of the board or compensation committee of another company. At least two of three Committee members will qualify as "outside directors" under Section 162(m) of the Internal Revenue Code. The Chairman of the Committee shall be designated by the Board of Directors. The Chairman of the Board, any member of the Committee or the Secretary of the Corporation may call meetings of the Committee.

Members of the Committee shall serve until their successors are duly elected and qualified or their earlier resignation or removal. The Board may replace any member of the Committee.

**Authority and Resources.** The Committee may request any officer or employee of the Corporation or the Corporation's outside counsel to attend a Committee meeting. The Committee shall ensure that the Corporation's counsel attends each meeting at which equity award grants are to be considered or approved. The Committee has the right at any time to obtain advice, reports or opinions from internal and external counsel and expert advisors and has the authority to hire and terminate independent legal, financial and other advisors as it may deem necessary, at the Corporation's expense, without consulting with, or obtaining approval from, any officer of the Corporation in advance.

**Meetings.** The Committee shall meet as often as it deems appropriate, but not less than ~~twice~~ four times a year, to perform its duties and responsibilities under this charter. The Committee shall maintain written minutes of its meetings, which will be filed with the meeting minutes of the Board. The Committee shall ensure that draft minutes of each meeting at which equity award grants are to be considered or approved are promptly prepared following such meeting.

**Duties and Responsibilities.** The duties and responsibilities of the Committee shall include the following:

- Review periodically, and as appropriate approve ~~all~~ compensation, incentive, and benefits policies and programs applicable to the Corporation's executive management.

- Conduct and review with the Board of Directors an annual evaluation of the performance of the Chief Executive Officer and review with the CEO and report to the Board annually on the performance of other executive officers.

- Review and approve periodically the salaries, bonuses and perquisites of elected officers of the Corporation and its subsidiaries, including the Chief Executive Officer.

- At least annually, select and retain an independent consultant to conduct a comparative study of the Corporation's executive compensation policies, practices, and procedures relative to other public companies and prepare and submit to the Committee a report and recommendations.

- Act as administering committee of the Corporation's various bonus plans, stock plans and equity arrangements that may be adopted by the Corporation from time to time, with such authority and powers as are set forth in the respective plans' instruments, including but not limited to establishing performance metrics, determining bonus payouts and the granting of equity awards to employees and executive officers, in each case subject to the provisions of the Corporation's Equity Award Grant Practices Policy and all other applicable policies adopted by the Board of Directors.

- Review for approval or disapproval special hiring or termination packages for officers and director-level employees of the Corporation and its subsidiaries that go beyond the Board's adopted criteria for management authority, if it is determined by the members of the Committee that approval by the full Board is not necessary.

- To the extent it deems necessary, recommend to the Board of Directors the establishment or modification of employee stock-based plans for the Corporation and its subsidiaries, in each case subject to the provisions of the Corporation's Equity Award Grant Practices Policy.

- To the extent it deems necessary, review and advise the Board of Directors regarding other compensation plans.

- Review and comment on management's Compensation Discussion & Analysis and prepare an annual Compensation Committee Report for inclusion in the Corporation's proxy statement, including disclosure of the policy for the timing and rationale of the Corporation's option grants.

- Review the Committee charter, structure, process and membership requirements at least once a year.

- Report to the Board of Directors concerning the Committee's activities at least once a year.

- The Committee can delegate any of its responsibilities to the extent allowed under applicable law, in each case subject to the provisions of the Corporation's Equity Award Grant Practices Policy. In particular, the authority to grant equity awards or to take any other action with respect to equity awards (other than the performance of ministerial duties) may not be delegated to the Corporation's management or any other person.

**Exceptions.** Notwithstanding any implication to the contrary above:

- In making its determination regarding compensation and plans which it is responsible for administering, the Committee shall take into account compensation received from all sources, including plans or arrangements which it is not responsible to administer.

- The Committee should take into consideration the tax-deductibility requirements of Section 162(m) of the Internal Revenue Code when reviewing and approving compensation for executive officers and, if deemed advisable, have such compensation approved by no less than two outside Committee members. If the Committee does not have two outside directors as defined in Section 162(m) of the Internal Revenue Code, such compensation should be approved by a majority of the outside Board members.

- The Committee shall not be empowered to approve matters which applicable law, the Corporation's charter, or the Corporation's bylaws require be approved by a vote of the entire Board.

Exhibit I

**APPLE PROCEDURE**

**PROCEDURE NAME:**  Corporate Minutes
**PROCEDURE DATE:**  TBD
**APPROVED BY:**        [CFO AND GENERAL COUNSEL]

## DEFINITION:

Apple maintains minutes of meetings of the Board of Directors and Board Committees in the Corporate Minute Books.  The minute books are the official record of Board and Committee meetings, and they are maintained indefinitely in a secure area within fireproof cabinets.  The Apple Corporate Law Group is the custodian of the Corporate Minute Books.

## PROCEDURE:

Before February 2007, Board and Committee meeting minutes were drafted by the Corporate Law Group following each meeting.  Drafts intended for adoption were included in the materials sent to the Board or Committee before the next scheduled meeting for comment and approval at that next meeting.  If the minutes were approved by the Board or Committee at the next scheduled meeting without changes, Apple's Secretary would sign the approved minutes.  If the minutes required changes in response to comments from the Board or Committee, Apple's Secretary would revise the minutes and sign the revised version without recirculation to the Board or Committee, unless the Board or Committee had specifically requested otherwise.

In February 2007 the process for drafting, approving, and finalizing Board and Committee meeting minutes was revised.  Internal Audit now receives a copy of the Board and Committee meeting materials that are circulated before a scheduled meeting, which includes all Board and Committee draft meeting minutes.  Internal Audit retains exclusive control of and access to its copies of the draft materials in a secure area.

If the draft minutes are approved by the Board or Committee at the next scheduled meeting without changes, Apple's Secretary signs the approved minutes.  If the Board or Committee requests changes to the draft minutes, the minutes are revised and prepared for further review and approval by the Board or Committee at the next meeting.  Apple's Secretary does not sign the revised minutes until they have been re-circulated and approved by the Board or Committee.  If changes were made to the minutes at the request of the Board or Committee, a marked copy of the minutes showing the changes made shall be provided to Internal Audit for safekeeping.

Internal Audit compares all signed minutes with its copy of the initial draft minutes and notes any discrepancies.  Internal Audit reconciles the draft and final minutes before the final minutes are placed in the Corporate Minute Books.  Internal Audit periodically conducts reviews of historic minutes compared to drafts maintained by Internal Audit to ensure the proper maintenance and integrity of Corporate minutes.

## SPECIFIC CONTROL ACTIVITIES:

1. **SEGREGATION OF DUTIES**
   - The Board or Committee reviews and approves draft minutes, and Apple's Secretary does not sign minutes or revised minutes until they have been circulated and approved by the Board or Committee.
   - Internal Audit receives and retains a copy of Board and Committee meeting minutes and reconciles them with executed minutes.
   - Internal Audit periodically conducts reviews of historic minutes compared to drafts maintained by Internal Audit to ensure the proper maintenance and integrity of Corporate minutes.

2. **PROPER AUTHORIZATION & APPROVAL**
   - Draft minutes are approved by the Board or Committee.
   - Revised minutes are prepared for further review and approval by the Board or Committee at the next meeting.
   - Apple's Secretary does not sign minutes or revised minutes until they have been circulated and approved by the Board or Committee.

3. **APPROPRIATE REVIEW & RECONCILIATION**
   - If changes are made to the minutes, a marked copy showing the changes made is provided to Internal Audit for safekeeping.
   - Internal Audit receives and retains a copy of Board and Committee meeting minutes and reconciles them with signed minutes.
   - Internal Audit periodically conducts reviews of historic minutes in the Corporate Minute Books compared to drafts maintained by Internal Audit to ensure the proper maintenance and integrity of Corporate minutes.

4. **PHYSICAL & LOGICAL SECURITY OF ASSETS**
   - Corporate minutes are maintained indefinitely in a secure area within fireproof cabinets.
   - The Corporate Law Group is the custodian of Corporate Minute Books.
   - Internal Audit retains and maintains exclusive control of their draft materials in a locked secure area.

## OWNERSHIP AND ACCOUNTABILITY:

The Corporate Law Group, Corporate Secretary, and Apple Internal Audit are responsible for maintaining and updating this process, and ensuring the control environment is maintained and control activities are in compliance with the procedures.

Exhibit J

**APPLE PROCEDURE**

**PROCEDURE NAME:**  Actions by Unanimous Written Consent
**PROCEDURE DATE:**  TBD
**APPROVED BY:**    [CFO AND GENERAL COUNSEL]

## DEFINITION:

*Unanimous Written Consents Generally.* As permitted by the California Corporations Code, Apple's bylaws and other governing documents, Apple's Board of Directors and Board Committees may take action either at in-person or telephonic meetings or by unanimous written consent ("UWC"). UWCs are an efficient method of taking routine actions if such actions occur on a regular basis and do not require substantial discussion among Board or Committee members. To be effective, a UWC must be signed by each member of the Board or Committee and, as a best practice, should be returned promptly following the distribution of the UWC.

*Routine Option Grants by Unanimous Written Consent.* The Compensation Committee of the Board, as Administrator of Apple's employee stock option plans, has historically processed monthly new hire and promotion/retention option grants through UWCs rather than at quarterly Committee meetings. Such grants are routine, made on a monthly basis according to existing Apple grant guidelines maintained by the Human Resources Department, and have been previously reviewed and recommended by management, and are therefore good candidates for UWC approval.

Consistent with FAS 123R and the 2003 Employee Stock Plan Equity Award Grant Practices Policy, the grant date for an award made pursuant to a UWC shall be considered to be the date that the last approval is received by Apple, except that the grant date for an award to a newly hired employee shall be the later of (i) the date on which the employee has commenced employment with Apple or (ii) the date the last approval is received by Apple.

## PROCEDURE:

Before March 2007, requests for UWCs were sent by fax to each Committee member. The returned fax signature pages were recorded in the Corporate Minute books when they were received. For equity grants, the latest date and time stamp on the fax pages was used to establish the grant date.

Beginning with the March 2007 monthly option grant UWC, Apple implemented a secure electronic approval process. The new process is designed to enforce audit, control, and tracking procedures, and to ensure compliance with the California Corporations Code for electronic approval of documents.

Apple's Information Services and Technology Department ("IS&T") created a new Apple email account (the "UWC Approval Account"). Access to this account is protected by password, and the password for the account is available only to Internal Audit.

The Corporate Law Group sends and receives emails from the UWC Approval Account, but does not have access rights to alter any settings or delete emails. All inbound and outbound messages are automatically copied into an archival audit account accessible only to Internal Audit, and the system sends copies of all inbound and outbound messages to the heads of the Corporate Law Group and Internal Audit. Additionally, IS&T makes a regular backup and archive of the account.

Each Board member has provided a personal email address to Apple and has certified that no other person can access, send, or receive messages from the personal email address provided.

UWC requests are emailed from the UWC Approval Account to each personal Board member account. Typically, attachments to a UWC request include a cover letter, the proposed UWC, and the detailed lists of proposed grants if the UWC is for equity grants, including annotations in all cases where a proposed grant exceeds Apple's employee option grant guidelines (and confirming that recommendations for such grants have been approved by the Vice President of Human Resources). The email and all attachments are automatically copied to the archival audit account and cannot be altered or deleted.

The Board or Committee members respond to the email UWC requests with formalized approval language: "I, [BOARD/COMMITTEE MEMBER], hereby approve the unanimous written consent submitted to me on [___], 200[_] for approval." The approval email reply includes extended time and date information from multiple sources, including the date provided by the Board member and date and time stamps from email networks that processed the email.

Once all approval emails are received they are reviewed by the Corporate Law Group and Internal Audit to confirm appropriate responses and approvals have been received, and to determine the latest approval date for equity grants if applicable. The last date of approval is used to date grants included in UWCs. The approval email replies, including extended time and date information, are stored in the Corporate Minute Books and are periodically reconciled by Internal Audit to ensure the proper maintenance and integrity of Corporate records.

## SPECIFIC CONTROL ACTIVITIES:

1.  **SEGREGATION OF DUTIES**
    - The Board or Committee reviews and approves all UWCs, and Apple's Corporate Law Group records approvals when they were received.
    - Internal Audit receives and retains a copy of UWC approvals and reconciles them with Corporate records.
    - The Corporate Law Group has system access to send UWCs and monitor reply approvals, but the system is maintained by IS&T and access to the UWC Approval Account is limited to Internal Audit.

2.  **PROPER AUTHORIZATION & APPROVAL**
    - UWCs are approved by the Board or Committee.

- Each Board member has certified that no other person can access, send, or receive messages from the personal email address provided.
- Approval email reply includes extended time and date information.
- Access to the UWC account is protected by password, and the password for the account is available only to Internal Audit.

3. **APPROPRIATE REVIEW & RECONCILIATION**
   - The Corporate Law Group and Internal Audit confirm appropriate responses and approvals have been received.
   - Internal Audit receives and retains a copy of outbound UWCs and related approvals received, and periodically reconciles their copies with the copies in the Corporate Minute Books to ensure the proper maintenance and integrity of Corporate records.

4. **PHYSICAL & LOGICAL SECURITY OF ASSETS**
   - All inbound and outbound messages are automatically copied into an archival audit account.
   - The system sends copies of all inbound and outbound messages to the heads of the Corporate Law Group and Internal Audit.
   - IS&T makes a regular backup and archive of the UWC approval account.

## OWNERSHIP AND ACCOUNTABILITY:

The Corporate Law Group, Corporate Secretary, and Apple Internal Audit are responsible for maintaining and updating this process, and ensuring the control environment is maintained and control activities are in compliance with the procedures.

Exhibit K

**APPLE INC.**
## SUMMARY OF DIRECTOR AND OFFICER TRAINING PROGRAM

- The Chief Financial Officer and General Counsel of the Company will arrange for the Board of Directors to undergo professional training in corporate governance matters, typically including best practices in the following areas:

  o  Compliance with applicable laws, including the Sarbanes-Oxley Act and listing standards
  o  Compensation and benefits
  o  Financial controls and auditing
  o  Financial reporting and other disclosures
  o  Ethics
  o  Fiduciary duties
  o  Director independence
  o  Investment community relations
  o  Director nomination process

- The Chief Financial Officer and General Counsel of the Company will arrange for senior management to undergo professional training to enhance awareness and understanding of standards and principles for accounting and financial reporting, particularly those relevant to stock options.

- Management will review all current policies, practices, and controls related to the granting of stock options and provide education and training to those who implement such policies and processes, as needed, including the stock administration function.

- Management shall receive training in the Apple's Principles of Business Conduct, covering at least the following modules:

  o  Ethics
  o  Insider trading
  o  Foreign Corrupt Practices Act
  o  Accuracy of Records and Reports
  o  Conflicts of Interest