THEODORE H. FRANK (SBN 196332)
    tedfrank@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
(703) 203-3848

*Attorney for Objector Patrick Pezzati*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: Apple Inc. Securities Litigation | Case No. C 06-5208 JF |
| This document relates to: ALL ACTIONS | **CLASS ACTION** |
| | **OPPOSITION TO PROPOSED AMENDED PRELIMINARY APPROVAL ORDER** |
| | Judge:     Honorable Jeremy Fogel<br>Date:       November 19, 2010<br>Time:       9:00 a.m.<br>Courtroom: 3, Fifth Floor |

**STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))**

1. Whether the settlement of this action should be granted preliminary approval.

Objector's Answer: No.

2. Whether this action should be certified as a class action for settlement purposes.

Objector's Answer: No.

3. Whether the schedule and notice in the Court's original preliminary approval order should be vacated, as the settling parties wish.

Objector's Answer: Yes.

**INTRODUCTION**

The settling parties have requested that the court enter an Amended Preliminary Approval Order relating to a settlement that has been amended to remove some flaws that would prevent its ultimate approval. Unfortunately, the settlement still contains fatal flaws that preclude final approval; to avoid futile expenses of notice, this Court should refuse to enter the proposed Amended Preliminary Approval Order and vacate the existing Preliminary Approval Order that no longer reflects the parties' bargain.

*First*, the settlement still contains the possibility of a *cy pres* award despite the fact that class members are readily identifiable and will not be fully compensated by the cash component of the settlement, which is between zero and seven cents a share, though the complaint alleges damages of up to over ten dollars a share. *See* Docket No. 105, ¶¶ 463 and XIII(d). This is a breach of the class attorneys' fiduciary responsibility to the class because it values the recovery of a third party over the recovery to the unnamed class members. American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07 (2010) ("*Principles*").

*Second*, the very fact that the settling parties are creating a clause to distribute "leftover" funds to third parties suggests that the parties anticipate that the $16.5 million figure is illusory, because there will not be $16.5 million in claims, perhaps because only a small minority of the class will be permitted to make claims. If the Court is inclined to

grant preliminary approval of the settlement notwithstanding the failure to meet Rule 23(a)(4) requirements, the Court should ask counsel for the settling parties, who are experienced securities litigation counsel that have extensive experience with securities litigation settlement, what the actual expected value of class recovery will be, and then base preliminary settlement approval on that answer and any attorney-fee request on the accuracy of that answer.  This is the only way to ensure that class counsel will attempt to maximize class recovery, given their apparent preference that their clients' money go to unrelated third parties.  The court should also require other disclosures from class counsel to ensure that there are no other conflicts of interest, as there were with the original proposed settlement.

## BACKGROUND

Class member Patrick Pezzati purchased 100 shares (pre-split) of Apple stock at a price of $14.86 on July 30, 2002, and is thus a member of the class entitled to object to the settlement. Mr. Pezzati (144 Dry Hill Rd, Montague, MA 01351, (413) 367-9641) is a current Apple shareholder. The litigation and settlement depletes shareholder assets to pay attorneys and third parties while providing him with no pecuniary recovery.

On October 21, Mr. Pezzati notified the settling parties of his intent to object to the settlement on the grounds that the settlement, *inter alia*, violated Ninth Circuit precedent and American Law Institute standards for *cy pres* distributions.  Pursuant to *In re Mercury Corp. Sec. Litig.*, No. 08-17372, 2010 WL 3239460 (9th Cir. Aug. 18, 2010), Pezzati requested the voluntary disclosure of information relating to possible conflicts of interest, such as whether any of the faculty of the *cy pres* recipients had served as expert witnesses on behalf of the plaintiffs' counsel.

In response, the parties restructured the settlement to remove the most obvious conflicts of interest and to combine the pool of *cy pres* funding and class pecuniary recovery.  On November 10, 2010, counsel for Apple contacted counsel for Mr. Pezzati by telephone and notified him of the amendments; counsel for Mr. Pezzati requested to

see the new settlement so that he could evaluate it. Unfortunately, the settling parties did not provide a copy to the objector; instead, on November 12, the settling parties filed a joint submission with this Court and represented that they had "agreed to amend the Settlement in order to address Mr. Frank's [sic][1] objection." To the extent that this statement intentionally or unintentionally implies that there is no longer an objection to the settlement, it is incorrect. While Mr. Pezzati appreciates that the settlement has materially improved, it still runs afoul of Ninth Circuit and ALI standards with respect to *cy pres*, and presents other problems relating to its ultimate fairness.[2]

## I. A settlement with a *cy pres* component is a breach of fiduciary duty to the class when class members are identifiable and have not been fully compensated.

A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). Where a court is confronted with a settlement-only class certification, the court must look to factors "designed to protect absentees." *Amchem*

---

[1] Mr. Frank is not the class member or the objector. Mr. Pezzati is, and Mr. Frank and the Center for Class Action Fairness act as his attorney.

[2] The settling parties' possible confusion over Mr. Pezzati's satisfaction with the amended settlement perhaps reflects a misunderstanding over the motivations of the Center for Class Action Fairness. A stereotypical for-profit professional objector would likely be sated by the appearance of a substantial enhancement of the settlement because, once the improved settlement is approved by the Court, the objector could seek attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002). But the Center for Class Action Fairness is a non-profit public-interest law firm, and its primary goal is ensuring compliance with Rule 23(e) standards rather than the possibility of attorneys' fees.

*Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "Settlements that take place prior to formal class certification require a higher standard of fairness." *Molski*, 318 F.3d at 953 (*quoting Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)).

Class counsel owes a fiduciary duty to their putative class clients to put the clients' interests first in negotiating a settlement. This is especially true in a shareholder class action, where many of the class members are current shareholders, and thus would be injured by any dissipation of corporate assets to benefit recipients other than class members.

*Cy pres* may be appropriate when the class is not easily ascertainable, or where the transaction costs of distributing a small settlement among many class members is not feasible. *Principles* § 3.07(a). But that is plainly not the case here where the settlement already provides for a structure to distribute funds to class members.

Distribution of any leftover funds is not appropriate under the ALI *Principles*, which states that "the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair." *Id.* § 3.07(b). *Accord Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 435-36 (2d Cir. 2007) (cy pres only appropriate where class members are difficult to identify, when funds involved are too small to distribute economically to class members, or when distributing unclaimed funds to class members would result in windfall). Again, this is not the case: there is no difference in cost between distributing seven cents a share to claimants or nine or ten cents a share to claimants. The increased distribution would not be a windfall: the plaintiffs' complaint alleges approximately $10/share in damages plus pre-judgment interest (Docket No. 105, ¶¶ 463

and XIII(d)), and the current settlement pays $0.07 a share.[3] *Cf. In re Pharmaceutical Industry Avg. Wholesale Price Lit.*, 588 F.3d 24 (1st Cir. 2009) (approving *cy pres* of unclaimed funds because district court ensured full recovery of class members first).

There is no reason to have **any** *cy pres* distribution in this settlement, other than the class counsel's preference to have a few discrete powerful third parties realize hundreds of thousands of dollars of benefit instead of thousands of faceless clients realize only a few dollars of benefit. But the nine corporate governance programs are not the class counsel's clients; the class members are. And the failure of class counsel and the class representative to put the interests of the class first in negotiating this settlement raises severe Rule 23(a)(4) concerns: how can they be said to fairly and adequately represent the class when they are pursuing the interests of third parties at the expense of the class?

The ALI is not alone in noting the inherent conflicts of interest raised by *cy pres* distributions. *See, e.g.*, Martin H. Redish, *et al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010); John Beisner, *et al.*, *Cy Pres: A Not So Charitable Contribution to Class Action Practice* (2010);[4] Sam Yospe, *Cy Pres Distributions in Class Action Settlements*, 2009 COLUMBIA BUS. L. REV. 1014; Theodore H. Frank, *Cy Pres Settlements*, CLASS ACTION WATCH (March 2008); Editorial, *When Judges Get Generous; A better way to donate surpluses from class-action awards*, WASH. POST (Dec. 17, 2007); Adam Liptak, *Doling Out Other*

---

[3] The large discrepancy between the claimed damages and the agreed-upon relief raises a separate Rule 23(a)(4) question whether the class counsel has short-changed the class—or otherwise damaged class-member shareholders by bringing a meritless claim that dissipated shareholder assets to benefit class counsel. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (settlement providing 1% relief is "untenable" and may be grounds for dismissal of case as frivolous).

[4] Mr. Beisner is the former head of the class action department at defendant Apple's counsel, O'Melveny & Myers LLP.

*People's Money*, N.Y. TIMES (Nov. 26, 2007).[5]  The way to avoid these conflicts of interest is to forbid *cy pres* awards except in the narrow circumstance where non-windfall pecuniary relief to the class is not feasible.

Therefore, the proposed settlement is fundamentally defective unless and until the funds that settling parties currently propose to assign to *cy pres* awards is instead directed to individual claiming class members at least up to the point that class members fully recover.

## II.   The "$16.5 million" figure may be illusory.

The settlement is structured so that, though the "Class Period" of shareholders bound by the settlement consists of shareholders who purchased shares during about 1400 trading days between August 2001 and June 2006, only shareholders who have purchased shares during 96 trading days in 2006—a small fraction of the class—are eligible to make claims on the settlement fund.  And not all of the class members who purchased shares during that 96-day period are eligible to make claims.  (Class counsel has not responded to Pezzati's inquiries as to which subclass the class representative belongs to.  The court should require this disclosure before making any preliminary approval.)

Using the parties' estimate of average daily trading volume of 17.5 million shares, and even making the incorrect but generous assumption that all of those shares are eligible to make claims, at seven cents a share, there would have to be a response rate over 14% to exhaust the $16.5 million fund.  Response rates are quite frequently much lower than that.

---

[5] In the interests of disclosure, Mr. Pezzati's counsel, Theodore H. Frank, was elected to ALI in 2008; Mr. Frank participated in the debates and some of the votes over amendments and adoption of the *Principles* at ALI's 2009 annual meeting, but Section 3.07 was already in its current form by that time. Mr. Frank also served as counsel for O'Melveny from 2001 to 2005; is a former Apple shareholder; and was given a free trip to New York by an affiliate of lead plaintiffs' counsel, Grant & Eisenhofer, when Mr. Frank was invited to speak on a panel with lead counsel Jay W. Eisenhofer at the 2008 Institutional Investor Educational Foundation conference.

*In re TJX Co. Retail Sec. Breach Lit.*, 584 F. Supp. 2d 395 (D. Mass. 2008) (*citing* Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 119-20 (2007)); *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005). *See also, e.g.*, *In re Grand Theft Auto Video Game Consumer Litig.,* 251 F.R.D. 139 (S.D.N.Y. 2008) (only 2676 claimants out of 10 million class members); *Moody v. Sears*, 2007 NCBC 13 (N.C. Bus. Ct. May 7, 2007) (337 redemptions in 1.5 million-member class); *Union Life Fidelity Ins. Co. v. McCurdy*, 781 So. 2d 186, 188 (Ala. 2000) (113 redemptions in 104,000-member class). With only seven cents a share at stake, many class members will find it uneconomic to make claims (or objections).

The settling parties, by creating an elaborate mechanism to distribute unclaimed money to third parties, seem to anticipate a low response rate, even as they represent to the court and the class that the settlement is really worth $16.5 million. The settling parties' counsel are experienced securities class action attorneys, and should be required to make a representation to the court what the expected response rate will be given the gerrymandering of class claims and the extent to which the parties' structure of claims-making deters claims by creating artificial hoops to jump through. If the response rate is not expected to exhaust the settlement fund, then that should be grounds for rejecting the settlement as inadequate, because, given the *cy pres* provision, it would be costless to the defendant to restructure the settlement to ensure that class members receive the entirety of the settlement fund.

### III. If the Court grants the settling parties' motion, it should require additional disclosures.

If the Court is inclined to grant preliminary approval, it should require additional disclosures before formal objections are due. As mentioned above, the settling parties have specialized knowledge about likely response rates given the structure of the settlement. At a minimum, this material fact should be disclosed in the class notice. Any

attorneys' fee request should be based on the accuracy of class counsel's representation regarding the response rate to deter "mistaken" overestimates. It is also unclear from the existing docket which subclass the lead plaintiff is in, an important element in determining Rule 23(a)(4) adequacy. *E.g., In re Community Bank of N. Va.*, No. 08-3261 (3d Cir. Sep. 22, 2010); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Lit.*, 55 F. 3d 768, 800 (3d Cir. 1995).

While the parties have erased some conflicts of interest in their amendment to the settlement, it is not clear that they have erased all conflicts of interest. Pezzati requested class counsel disclose whether any faculty at the institutions receiving *cy pres* money served as expert witnesses for the class counsel in prior litigation. It is possible that money is being directed to such experts' institutions instead of the class to reward the faculty members for providing favorable testimony.

(Even if no such relationships exist, there is still a conflict of interest in sending money to academic institutions. The *cy pres* money may have the effect of encouraging faculty to produce scholarship favorable to plaintiffs' attorneys so as to produce more class action settlements that result in money going to schools, and to deter scholarship critical of, say, *cy pres* awards. *Cf. Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2626 n. 17 (2008) (declining to rely on studies because of funding source). If plaintiffs' attorneys are allowed to create slush funds with their clients' money to distribute money to academic institutions of the attorneys' choosing, they can reward and punish those institutions based on their faculty hires and the positions taken by their scholarship. The trial bar is certainly entitled to attempt to do so with donations of their own money, but should not be using their clients' money.)

**CONCLUSION**

If the settling parties made the modification in the belief that the modification would end Mr. Pezzati's objection, this belief was a misunderstanding of Mr. Pezzati's position regarding the *cy pres* component of the settlement. This version of the settlement

cannot receive final approval because it violates Rules 23(a)(4) and 23(e) by putting the interests of third parties ahead of the class through its *cy pres* provisions. The Court should save Apple (and class-member shareholders like Mr. Pezzati) the expense of futile notice by rejecting the settling parties' motion and vacating the existing preliminary approval order.

If the Court is nevertheless inclined to disregard the American Law Institute's guidelines for *cy pres* relief and grant preliminary approval, it should require the requested additional disclosures to ensure that all conflicts of interest have been disclosed and to ensure that the settling parties are not misleading the class and the Court when they describe the settlement benefit as worth $16.5 million.

Dated: November 15, 2010

Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
(703) 203-3848
Attorney for Objector Patrick Pezzati

## PROOF OF SERVICE

I declare that:

I am a resident of the State of Virginia, over the age of 18 years, and not party to the within action; my business address is 1718 M Street, NW, No. 236, Washington, DC 20036.

On November 15, 2010, pursuant to Local Rule 23-2, I served the attached:

OPPOSITION TO PROPOSED AMENDED PRELIMINARY APPROVAL ORDER

by forwarding the document as a PDF file attached to an e-mail sent to the following Designated Internet Site:

> Securities Class Action Clearinghouse
> Stanford University School of Law
> Crown Quadrangle
> Stanford, CA 94305-8612
> scac@law.stanford.edu

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 15, 2010.

/s/ Theodore H. Frank
Theodore H. Frank