JAY W. EISENHOFER (*admitted pro hac vice*)
MICHAEL J. BARRY (*admitted pro hac vice*)
GRANT & EISENHOFER P.A.
1201 N. Market Street
Wilmington, Delaware 19801
Telephone:   (302) 622-7000
Facsimile:    (302) 622-7100
E-Mail:       jeisenhofer@gelaw.com
              mbarry@gelaw.com

*Attorneys for Lead Plaintiff New York City Employees' Retirement System*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | CASE NO. C-06-05208-JF <br><br> CLASS ACTION <br><br> **LEAD PLAINTIFF'S RESPONSE TO OJBECTOR PATRICK PEZZATI'S OPPOSITION TO PROPOSED AMENDED PRELIMINARY APPROVAL ORDER** <br><br> Date:        November 19, 2010 <br> Time:       9:00 a.m. <br> Courtroom: 3, 5th Floor <br> Judge:      Hon. Jeremy Fogel |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT .............................................................................................................. 3

    A. The Objection Is Premature And Objector Fails To Make Any Argument – Let Alone Establish – That The Settling Parties Do Not Satisfy The Standard For Preliminary Approval Of The Amended Settlement .................................................................................. 3

    B. Even If The Objection Was Not Premature, Objector's Contentions Regarding *"Cy Pres"* Awards And The Alleged "Gerrymandering" Of The Class Period Are Without Merit ............................................................... 5

    C. The Additional Disclosure Objector Seeks Is Unwarranted .................................. 8

III. CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ..........................................4

*Hunt v. Imperial Merchant Services.*,
  No. 09-cv-693, 2010 U.S. Dist. LEXIS 111243 (N.D. Cal. Feb. 9, 2010) ............................5, 6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  588 F.3d 24 (1st Cir. 2009) ................................................................................................6, 7

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) ....................................................................................................9

*Powell v. Georgia-Pacific Corp.*,
  119 F.3d 703 (8th Cir. 1997) ...................................................................................................6

*Williams v. Costco Wholesale Corp.*,
  No. O2cv2003 IEG (AJB), 2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ...............................3, 4

**STATUTES**

15 U.S.C. § 78u-4(e)(1) ..................................................................................................................8

**I.   INTRODUCTION**

Lead Plaintiff respectfully submits this memorandum of law in opposition to Objector Patrick Pezzati's ("Objector") Opposition to Proposed Amended Preliminary Approval Order dated November 15, 2010 ("Objector's Br.") and in further support of the Settling Parties' Joint Submission in Support of Amended Preliminary Approval Order (the "Joint Submission") (Dkt. No. 134). Capitalized terms used herein have the same meaning ascribed to them in the Joint Submission.

As stated in the Joint Submission, the Court granted preliminary approval of the original settlement in this action and set a fairness hearing for January 7, 2011. (*See* Dkt. No. 129) Subsequently, the Settling Parties received a written objection from a single Apple shareholder – Objector Patrick Pezzati – expressing concern about certain *cy pres* distributions in the original settlement. While the Settling Parties believed the objection was without merit, they nevertheless agreed to amend the original settlement so that instead of paying $14 million into the Settlement Fund and donating $2.5 million to twelve corporate governance programs, Apple will pay $16.5 million into the Settlement Fund. Thus, whereas the settlement as originally contemplated provided for the outright donation of settlement funds to corporate governance programs, the amended settlement provides that *if and only if* funds *remain* in the Net Settlement Fund *after* payment of the Class Members' claims, such funds will be donated to nine corporate governance programs with which the Parties and their counsel have no affiliation. All other relevant terms of the amended settlement remain the same as in the original settlement that the Court already preliminarily approved.[1] The Joint Submission was thus filed on November 12, 2011, and seeks an order granting preliminary approval of the amended settlement terms, and setting a schedule allowing for, among other things, objections to the amended settlement to be filed by January 21, 2011 and a fairness hearing to be held on February 18, 2011.

On November 15, 2011, Objector filed an objection to the amended settlement terms. *See* Objector's Br. (Dkt. No. 136). In it, Objector purports to take issue with the provision of the amended settlement that provides for distribution of settlement funds that are "leftover" after paying all claims

---

[1] As noted in the Joint Submission, the amended settlement also makes certain ministerial changes to effect suggestions raised by the Claims Administrator. Objector does not raise any objections to these changes (nor could he) and, therefore, these ministerial changes are not addressed herein.

1

LEAD PLAINTIFF'S RESPONSE TO OJBECTOR PATRICK PEZZATI'S OPPOSITION TO PROPOSED AMENDED PRELIMINARY APPROVAL ORDER   CASE NO. C-06-05208-JF

1  submitted by class members – if it even turns out that there are any – to corporate governance programs.
2  Objector also complains about an alleged "gerrymandering" of the Class Period (*see* Objector's Br. at 7)
3  that limits the number of Apple shareholders who will be eligible to make claims on the settlement
4  funds.  Thus, Objector argues that the Court should not grant *preliminary* approval of the amended
5  settlement.  Objector's objection is without merit for two primary reasons.

6        First, it is premature.  The Joint Submission seeks only preliminary approval of the amended
7  settlement.  Objector does not assert – let alone establish – that the liberal standard for *preliminary*
8  approval of a settlement has not been met.  It has been, as it was with respect to the original settlement.
9  Indeed, since the only relevant change to the original settlement for which the Court already found that
10 the standard for preliminary approval was satisfied is the *addition* of $2.5 million to the settlement
11 amount, there is no possible way Objector could establish that the amended settlement does not meet the
12 liberal "falls within the range of possible judicial approval" standard for preliminary approval. *See infra*
13 at 3-5 (discussing standard for preliminary approval).  Rather than contesting whether the standard for
14 *preliminary* approval has been met, Objector's arguments go to whether the Court should grant *final*
15 approval to the amended settlement. *See, e.g.*, Objector's Br. at 1 ("[T]he [amended] settlement still
16 contains fatal flaws that preclude *final* approval…."); *id.* at 8-9 ("This version of the settlement cannot
17 receive *final* approval because it" contains an allegedly inappropriate provision that might result in a
18 small amount of "leftover" funds being paid to corporate governance programs) (emphases added).
19 Such arguments are premature at this time and are only appropriately raised at the fairness hearing at
20 which the Court will consider whether to approve the final settlement.  Therefore, the Court should enter
21 the Proposed Amended Preliminary Approval Order attached to the Joint Submission.

22       Second, even if the objection was not premature, the Objector's arguments concerning the
23 payment of "leftover" amounts, if any, to corporate governance programs and alleged "gerrymandering"
24 of the Class Period are without merit.  The appropriateness of the provision in the amended settlement
25 here, which provides for the payment of all settlement funds to satisfy class member claims and
26 distribution of remaining amounts, if there are any, only after the claims of all class members have been
27 satisfied, is amply supported by case law approving class action settlements with similar provisions,
28 including the very authority Objector cites in support of his claim that the provision is inappropriate.

1  Indeed, class action settlements routinely contain the same or similar provisions respecting "leftover"
2  funds. *See infra* at 5-7. Moreover, contrary to Objector's contention, the limitation on damages and,
3  thus, the number of Apple shareholders who will be eligible to participate in the amended settlement, is
4  the result of application of the "look back" rule in the Private Securities Litigation Reform Act of 1995
5  ("PSLRA"). It is not a consequence of the alleged "gerrymandering" of the Class Period, which is a
6  false and baseless accusation by Objector in any event. Thus, even if Objector's arguments were
7  properly considered in connection with the Court's decision on whether to *preliminarily* approve the
8  amended settlement – which they are not, the Court should nevertheless grant preliminary approval and
9  enter the Proposed Amended Preliminary Approval Order attached to the Joint Submission.

10  Objector also asserts that if the Court grants preliminary approval, additional disclosure should
11  be made regarding "specialized knowledge" that is allegedly within the possession of the Settling Parties
12  about the number of Apple shareholders who intend to participate in the amended settlement. This
13  contention is also without merit. There is no such specialized knowledge in the Settling Parties'
14  possession; Objector's contention that the Settling Parties have some sort of crystal ball that can predict
15  which and how many Apple shareholders will ultimately file proofs of claim in the settlement is
16  unsupported in fact and based on Objector's rank speculation. Indeed, Objector cites no case or other
17  authority purporting to require disclosure of such knowledge even if the Settling Parties somehow
18  possessed it. Thus, no further disclosure is necessary. Therefore, the Court should enter the Proposed
19  Amended Preliminary Approval Order in exactly the form that is attached to the Joint Submission.

20  **II.   ARGUMENT**

21      **A.   The Objection Is Premature And Objector Fails To Make Any Argument – Let Alone Establish – That The Settling Parties Do Not Satisfy The Standard For**
22      **Preliminary Approval Of The Amended Settlement**

23  As was discussed at length in Lead Plaintiff's and Apple's briefs in support of the original
24  settlement (*see* Dkt. Nos. 116 and 118, respectively), the standard for *preliminary* approval of a class
25  action settlement is relatively low. The "Court need only determine whether the proposed settlement
26  appears on its face to be fair" and "falls within the range of possible [judicial] approval." *Williams v.*
27  *Costco Wholesale Corp.*, No. O2cv2003 IEG (AJB), 2010 WL 761122, at *6 (S.D. Cal. Mar. 4, 2010)
28  (preliminary approval order) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). If the

3
LEAD PLAINTIFF'S RESPONSE TO OJBECTOR PATRICK PEZZATI'S OPPOSITION TO PROPOSED AMENDED PRELIMINARY APPROVAL
ORDER   CASE NO. C-06-05208-JF

proposed settlement falls within the range of what could be found "fair, adequate and reasonable," preliminary approval is appropriate, notice may be given to the proposed class and a hearing for final approval can be scheduled. *See id*. "Given that some . . . factors cannot be fully assessed until the Court conducts the Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'" *Id*. at *5. The ultimate determination of whether to approve the settlement finally is made after all class members, after due notice, have the opportunity to review and comment on the settlement and a fairness hearing has been held at which objections to the settlement, if any, can be heard. *See* 5 Moore's Federal Practice 23.83[1] at 23-336.2 to 23-339 (3d ed. 2002).

Accordingly, at the preliminary approval stage, the Court need not answer the ultimate question: whether a settlement is fair, reasonable and adequate. When, at a later point, the Court makes this ultimate determination, the Court will be asked to review the following factors: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; and the reaction of Class Members, such as Objector, to the proposed amended settlement. *Id*.

As was earlier demonstrated in Lead Plaintiffs' brief in support of the original settlement (*see* Dkt. No. 116), and will be detailed further in a subsequent motion for final approval of the amended settlement, a preview of the factors considered by courts in granting final approval of class action settlements demonstrates that the proposed amended settlement is well within the range of possible approval. Ample reason exists to grant preliminary approval to the amended settlement (as the Court did with respect to the original settlement) including the following:

• The amended settlement was vigorously negotiated and is supported by experienced counsel that conducted a sophisticated and extensive investigation into the claims asserted in the Complaint. *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) (courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arm's-length negotiations is entitled to considerable weight); and

4
LEAD PLAINTIFF'S RESPONSE TO OJBECTOR PATRICK PEZZATI'S OPPOSITION TO PROPOSED AMENDED PRELIMINARY APPROVAL ORDER   CASE NO. C-06-05208-JF

- The substantial benefit obtained for the Class supports approval of the amended settlement, especially since the amended settlement provides $2.5 million in additional compensation for the Class and in light of the serious risk of lesser or no recovery.

Nowhere in Objector's Opposition does he dispute any of this. Indeed, Objector's Opposition does not even address the standard for preliminary approval of a settlement, never mind attempt to demonstrate how the Settling Parties fail to meet it. Rather, Objector raises arguments relating to what he characterizes as the "*cy pres*" aspect of the amended settlement (i.e., "leftover" amounts, if there are any) and supposed Class Period "gerrymandering" (discussed below) that are appropriately raised (if at all) at the fairness hearing, not in opposition to preliminary approval of the amended settlement. The Settling Parties are not at this stage seeking final approval of the settlement and there is no valid reason to consider Objector's arguments at this juncture. In short, since the Court preliminarily approved the original settlement, and the amended settlement merely confers an *additional $2.5 million benefit* upon the Class, it is clear that the standard for preliminary approval of the amended settlement has been met. Therefore, the Court should enter the Proposed Amended Preliminary Approval Order attached to the Joint Submission.

**B.  Even If The Objection Was Not Premature, Objector's Contentions Regarding "*Cy Pres*" Awards And The Alleged "Gerrymandering" Of The Class Period Are Without Merit**

Objector argues that distribution of "leftover" funds to corporate governance programs as contemplated by the amended settlement here is not appropriate. *See* Objector's Br. at 3-6. This argument is without merit and is wholly speculative at this time, as there is no way of knowing even if there will be any funds remaining after distribution to the Class.

Courts routinely approve provisions in class action settlements that, as here, provide for payment of any funds that remain after payment of all class members' claims to charitable or other public interest organizations. *See Hunt v. Imperial Merchant Services.*, No. 09-cv-693, 2010 U.S. Dist. LEXIS 111243 (N.D. Cal. Feb. 9, 2010); 3 Newberg on Class Actions § 10:17 (4th ed.) ("The [commonly used] cy pres approach…puts the unclaimed fund[s] to [their] next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class…."); *see id.* (citing legions of cases recognizing the propriety of distributing funds that were unclaimed by class members to charitable and other public interest

organizations for the indirect benefit of the class).  For example, "courts have allowed parties to establish cy pres funds when money remained from the defendant's payout after money for damages had been distributed to class members."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 34 (1st Cir. 2009).  This situation frequently arises where some class members never claim their share.  *Id.*; *see Powell v. Georgia-Pacific Corp.*, 119 F.3d 703, 705-706 (8th Cir. 1997) (refusing, after money in a settlement fund remained, to distribute the remainder to class members because "neither party ha[d] a legal right" to the unclaimed amount).  Indeed, Objector himself acknowledges that *cy pres* is appropriate in numerous circumstances, including when, as here, there is a possibility that unclaimed "funds involved [will be] too small to distribute economically to class members."  Objector's Br. at 4, citing *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007).  This is *precisely* what is contemplated here.  The revised Settlement provides that distribution will be made to the designated academic institutions *only if* any funds remain of the now increased $16.5 million settlement fund after distribution and redistribution to the Class, specifically:

> Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement.  If any funds remain in the Net Settlement Fund by reason of un-cashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution, up to a maximum distribution of $1.70 per share (the difference between the closing price of Apple common stock on June 29, 2006 ($58.97) and June 30, 2006 ($57.27)).  If after six months after such re-distribution any funds shall remain in the Net Settlement Fund, then such balance shall be contributed in nine equal payments to the following nine corporate governance programs …

Notice of Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Expenses, ¶ 49, attached as Exhibit A-1 to the Amended Stipulation and Agreement of Settlement.

The designation of academic corporate governance programs as recipients of any funds remaining after distribution to the Class is also perfectly appropriate.  Courts have approved distributing funds unclaimed after payout to class members to charities that bear a reasonable relationship to plaintiffs' injuries.  *See, e.g., Hunt*, 2010 U.S. Dist. LEXIS 111243, at *3 (approving settlement where "any remaining settlement funds shall be distributed to designated *cy pres* recipients, subject to Court approval"); *Powell*, 119 F.3d 703 (approving *cy pres* distribution of unclaimed funds to establish a

scholarship program). Again, that is precisely the situation here because the corporate governance programs are related to the violations of law alleged to have been committed by Apple in connection with stock options backdating. Indeed, the amended settlement (as with the original) provides for significant corporate governance reforms at Apple to help ensure that failures of corporate governance do not again lead to serious lapses by senior management in company-wide wrongdoing such as backdating.

Even the cases and other authority Objector cites establish that the *cy pres* distributions contemplated here (if they happen) are entirely appropriate. In *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009), a case relied on by Objector (*see* Objector's Opposition Br. at 5), the settlement included a provision for *cy pres* distribution to cancer or patient-related charities. The court found that such a *cy pres* fund was "not taking damages away from the class members" but rather permitted "all plaintiffs to claim and be paid their damages…before any money is paid to charity through cy pres." *In re Pharm. Indus.*, 588 F.3d at 34-35. The plaintiff had argued (as does Objector here) that the class members were entitled to receive any remaining money, not the *cy pres* charities and relied on (as does Objector here) the American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07 (the "ALI *Principles*"). The court soundly rejected this argument noting that "the question before us is not whether the settlement complies with the ALI draft, but whether the district court abused its discretion in approving the cy pres part of the settlement." 588 F.3d at 35. The court addressed the policy concerns expressed in the ALI *Principles* and found that the settlement and the *cy pres* provision were appropriate because the settlement paid class members damages *before* any money was distributed through the *cy pres* fund. *See id*.

Similarly, under the amended settlement no damages will be taken away from the class members. Rather, the amended settlement provides that *if and only if* any funds *remain* in the Net Settlement Fund *after* payment of the Class Members' claims, the funds will be donated to nine corporate governance programs located throughout the country. This settlement provision is perfectly consistent with the ample authority discussed above from both within and outside the Ninth Circuit and is even supported by the authority Objector cites to oppose the provision. Objector's complaints about the *cy pres* aspects of the amended settlement are, therefore, without merit.

Objector also complains that the class claims were allegedly "gerrymandered" by the Settling Parties and, thus, asserts that "only shareholders who have purchased shares during 96 trading days in 2006 – a small fraction of the class – are eligible to make claims on the settlement fund." Objector's Br. at 6. This argument is equally meritless.

The reason there are a limited number of trading days on which Apple's shareholders have recoverable damages has nothing to do with "gerrymandering." The limitation is due to application of the 90-day look back rule in the PSLRA, which severely restricts recovery for claims under Section 10(b). *See* 15 U.S.C. § 78u-4(e)(1); *see* Apple Inc.'s Memorandum of Points and Authorities in Support of Joint Motion for Order Preliminarily Approving Settlement, Directing Notice of Settlement, and Scheduling Fairness Hearing (Dkt. No. 118) at 20-21 (explaining look back rule's limitation on damages). If Objector has complaints about the limitations the look-back rule places on the availability of damages to shareholders in federal securities law cases, those arguments should be addressed to Congress. Such arguments in objections to class action settlements are meritless, whether they are raised prematurely during the preliminary approval phase of the case as Objector has done here or when they are raised at the final approval stage.

**C.     The Additional Disclosure Objector Seeks Is Unwarranted**

Objector also asserts that if the Court grants preliminary approval of the amended settlement, it should require additional disclosures before formal objections are due. Objectors' Br. at 7. Specifically, Objector claims that the Settling Parties "have specialized knowledge about likely response rates" (i.e., about the number of Class Members who are likely to participate in the amended settlement) and that this supposed knowledge "should be disclosed in the class notice." *Id.*; *see also id.* ("The settling parties' counsel are experienced securities class action attorneys, and should be required to make a representation to the court what the expected response rate will be…."). This argument is without merit for two reasons.

First, there is no factual basis for Objector to make such a claim. Neither the Settling Parties (nor their counsel) have "specialized knowledge" concerning which or how many shareholders will


8
LEAD PLAINTIFF'S RESPONSE TO OJBECTOR PATRICK PEZZATI'S OPPOSITION TO PROPOSED AMENDED PRELIMINARY APPROVAL ORDER    CASE NO. C-06-05208-JF

Case 5:06-cv-05208-JF   Document 137   Filed 11/18/10   Page 11 of 13

Objector also complains that the class claims were allegedly "gerrymandered" by the Settling Parties and, thus, asserts that "only shareholders who have purchased shares during 96 trading days in 2006 – a small fraction of the class – are eligible to make claims on the settlement fund." Objector's Br. at 6. This argument is equally meritless.

The reason there are a limited number of trading days on which Apple's shareholders have recoverable damages has nothing to do with "gerrymandering." The limitation is due to application of the 90-day look back rule in the PSLRA, which severely restricts recovery for claims under Section 10(b). *See* 15 U.S.C. § 78u-4(e)(1); *see* Apple Inc.'s Memorandum of Points and Authorities in Support of Joint Motion for Order Preliminarily Approving Settlement, Directing Notice of Settlement, and Scheduling Fairness Hearing (Dkt. No. 118) at 20-21 (explaining look back rule's limitation on damages). If Objector has complaints about the limitations the look-back rule places on the availability of damages to shareholders in federal securities law cases, those arguments should be addressed to Congress. Such arguments in objections to class action settlements are meritless, whether they are raised prematurely during the preliminary approval phase of the case as Objector has done here or when they are raised at the final approval stage.

**C.     The Additional Disclosure Objector Seeks Is Unwarranted**

Objector also asserts that if the Court grants preliminary approval of the amended settlement, it should require additional disclosures before formal objections are due. Objectors' Br. at 7. Specifically, Objector claims that the Settling Parties "have specialized knowledge about likely response rates" (i.e., about the number of Class Members who are likely to participate in the amended settlement) and that this supposed knowledge "should be disclosed in the class notice." *Id.*; *see also id.* ("The settling parties' counsel are experienced securities class action attorneys, and should be required to make a representation to the court what the expected response rate will be…."). This argument is without merit for two reasons.

First, there is no factual basis for Objector to make such a claim. Neither the Settling Parties (nor their counsel) have "specialized knowledge" concerning which or how many shareholders will

8

LEAD PLAINTIFF'S RESPONSE TO OJBECTOR PATRICK PEZZATI'S OPPOSITION TO PROPOSED AMENDED PRELIMINARY APPROVAL ORDER    CASE NO. C-06-05208-JF

participate in the amended settlement. Objector merely speculates, without any valid basis whatsoever for doing so, that the shareholder "response rate" to the settlement will be low and makes the unfounded and unsupported assertion that the Settling Parties are somehow anticipating a low response rate. *See* Objector's Br. at 6-7. Objector makes no attempt, however, to explain how the Settling Parties could possibly possess such knowledge. They cannot know such information. Indeed, such information is as unknowable to the Settling Parties and their counsel, as it is to Objector (and his counsel). Second, Objector provides no case or other citation purporting to require the disclosure of such "specialized knowledge" – even if the Settling Parties had the necessary crystal ball that would enable them to possess such knowledge.[2] As is entirely appropriate and consistent with *cy pres* jurisprudence involving class actions, the Settling Parties prudently provided for distribution of unclaimed funds, if any, to certain corporate governance programs. *See Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) ("Cy Pres means as near as possible, and courts have utilized Cy Pres distributions where…there are unclaimed funds." (internal quotation marks and citations omitted)). Consequently, the Court should enter the Proposed Amended Preliminary Approval Order in the form that is attached to the Joint Submission, without the additional disclosures Objector seeks.

---

[2] While Objector makes certain generalized complaints about *cy pres* awards and attorneys' fees in the section of the Objection which seeks additional disclosure about "specialized knowledge," he does not specify what disclosure, if any, he seeks respecting these matters. *See* Objector's Br. at 7-8. In any event, although these generalized complaints clearly lack merit, they are more appropriately addressed at the fairness hearing and do not merit any additional disclosures or changes to the Proposed Amended Preliminary Approval Order. Similarly, Objector claims that there still may be an alleged conflict of interest because class counsel may have engaged faculty members at the institutions that may receive *cy pres* funds as expert witnesses. Objector's Br. at 8. This is just nit picking. As Objector knows full well, three corporate governance programs with which the Settling Parties or their counsel had affiliations that were scheduled to participate in the original settlement are no longer eligible to receive *cy pres* funds in the amended settlement. Moreover, in the Joint Submission, the Settling Parties have represented that after due inquiry, they do not believe that they or their counsel have affiliations with the remaining nine programs designated in the amended settlement.

### III.   CONCLUSION

Based on the foregoing, Lead Plaintiff respectfully moves this Court to enter the Proposed Amended Preliminary Approval Order.

Dated: November 18, 2010                                Respectfully submitted,


                                                        JAY W. EISENHOFER
                                                        MICHAEL J. BARRY
                                                        GRANT & EISENHOFER P.A.


                                                        */s/  Michael J. Barry*
                                                           MICHAEL J. BARRY


                                                        *Attorneys for Lead Plaintiff* THE NEW YORK CITY
                                                        EMPLOYEES' RETIREMENT SYSTEM