JAY W. EISENHOFER (*admitted pro hac vice*)
MICHAEL J. BARRY (*admitted pro hac vice*)
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, Delaware 19801
Telephone:     (302) 622-7000
Facsimile:     (302) 622-7100
E-Mail:        jeisenhofer@gelaw.com
               mbarry@gelaw.com

*Attorneys for Lead Plaintiff New York City Employees'*
*Retirement System*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | CASE NO. C-06-05208-JF<br><br>CLASS ACTION<br><br>**DECLARATION OF MICHAEL J. BARRY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBIRSEMENT OF EXPENSES**<br><br>Date:         February 18, 2011<br>Time:         9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:        Hon. Jeremy Fogel |

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION AND OVERVIEW ................................................................1

II. THE ALLEGATIONS OF THE ACTION ........................................................5

III. HISTORY OF THE ACTION .........................................................................6

    A. Lead Plaintiffs' Investigation, Filing Of The Consolidated Complaint, And Briefing On Defendants' Motions To Dismiss ................6

    B. Experts ..........................................................................................8

    C. The Risks Faced by Plaintiffs ........................................................8

    D. The Negotiation Of The Settlement .............................................10

IV. CLASS NOTICE ......................................................................................11

V. PLAN OF ALLOCATION ...........................................................................12

VI. THE FEE APPLICATION ...........................................................................13

VII. REIMBURSEMENT OF THE REQUESTED LITIGATION EXPENSES AND COSTS IS FAIR AND REASONABLE .................................16

VIII. CONCLUSION .........................................................................................18

I, MICHAEL J. BARRY, hereby declare as follows:

1.     I am a director of Grant & Eisenhofer P.A. ("G&E"), counsel to the New York City Employees' Retirement System ("NYCERS" or "Lead Plaintiff"), and the Court-appointed Lead Counsel for the Class in the above-captioned action (the "Action").  I have personal knowledge of the matters set forth below based on my active participation in all aspects of the prosecution and settlement of this Action.  I submit this declaration in support of the proposed Settlement that will resolve all the claims in this Action as against Defendants Apple Inc. ("Apple" or the "Company"), and Steven P. Jobs ("Jobs"), Fred D. Anderson ("Anderson"), Nancy R. Heinen ("Heinen"), William V. Campbell ("Campbell"), Millard S. Drexler ("Drexler"), Arthur D. Levinson ("Levinson"), and Jerome B. York ("York", and together the "Individual Defendants" and, collectively with Apple, the "Defendants").

2.     The Settlement was made on behalf of the Class of all persons and entities who purchased or acquired the publicly traded securities of Apple between and including August 24, 2001 and June 29, 2006 (the "Class Period"), and who suffered damages as a result.[1]  This declaration is also submitted in support of the proposed Plan of Allocation for distributing the net Settlement Fund to the Class Members (the "Plan of Allocation") and in support of Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses.

## I.     INTRODUCTION AND OVERVIEW

3.     After more than four years of litigation, Lead Plaintiffs' efforts have achieved an excellent recovery for the Class.  The Settlement provides for the payment of $16.5 million in cash (the "Settlement Amount") plus earned interest ( the "Settlement Fund").  Given the size of the Settlement and the significant risks that Lead Plaintiffs faced in establishing liability and damages, the Settlement is in the best interests of the Class.  Rather than proceed with this litigation and risk obtaining a lesser or no recovery from Defendants, the Settlement provides the

---

[1]     Excluded from the Class are Defendants Apple, Jobs, Anderson, Heinen, Campbell, Drexler, Levinson, and York, all current and former directors and officers of Apple, and all employees of Apple and/or its subsidiaries during the Class Period, and any family member, trust, company, entity, or affiliate controlled or owned by any of the excluded persons and entities.  Also excluded from the Class are any persons and entities that exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

1   Class with the very substantial recovery of $16.5 million in cash – an amount that was deposited

2   into escrow October 22, 2010 ($14 million), and December 9, 2010 ($2.5 million), and, since

3   that date, has been earning interest for the benefit of the Class.

4          4.     As demonstrated below and in the accompanying Lead Plaintiff's Memorandum

5   of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement (the

6   "Settlement Brief"), the proposed Settlement is fair, reasonable, and adequate, and should be

7   approved by the Court.  Additionally, the proposed Plan of Allocation is a fair and reasonable

8   method for distributing the proceeds of the Settlement to the members of the Class and,

9   therefore, also should be approved.

10         5.     Lead Plaintiffs have entered into the Settlement with a thorough understanding of

11  the strengths and weaknesses of the claims asserted in the Action.  As explained in greater detail

12  below, this understanding is based on Lead Counsel's prosecution of the Action for more than

13  four years, which has included, among other things: (1) drafting the detailed Consolidated Class

14  Action Complaint after extensive investigation, review and analysis of the Company's filings

15  with the Securities and Exchange Commission ("SEC"), press releases, other public statements

16  issued by Defendants, media and news reports about the Company, and publicly available

17  trading data relating to the price and volume of Apple common stock; (2) drafting an Amended

18  Complaint and First Amended Consolidated Class Action Complaint; (3) extensive briefing on

19  Defendants' motions to dismiss the Complaint and on appeal to the Court of Appeals for the

20  Ninth Circuit; (4) consulting with experts on issues relating to liability, damages, and materiality;

21  (5) exchanging confidential mediation statements with Defendants; and (6) preparing for, and

22  participating in, mediation before an experienced mediator, and extensive negotiations following

23  the formal mediation session.

24         6.     The Settlement was reached only after hard-fought and protracted settlement

25  negotiations, including an in-person mediation with Jonathan B. Marks and extensive

26  negotiations following mediation, all culminating in the parties' agreement to settle the matter

27  for $14 million payable to the Class, plus an additional $2.5 million payable to twelve different

28  corporate governance programs nationally.  Thereafter, the parties agreed to amend the terms of

1    the Settlement to increase the settlement fund to be distributed to the Class to $16.5 million and

2    to eliminate the separate fund to be distributed to corporate governance programs.

3        7.    Lead Plaintiff believes that the $16.5 million cash recovery for the Class is an

4    outstanding result, particularly when viewed in connection with the total potential damages as

5    well as the risks Lead Plaintiff and the Class faced going forward in this Action, including those

6    relating to establishing liability and damages.  See Declaration of Carolyn Wolpert in Support of

7    Lead Plaintiff's Motion for Final Approval of the Proposed Settlement ("Lead Plaintiff Decl."),

8    ¶ 13, attached hereto as Exhibit ("Ex.") A.

9        8.    As discussed in more detail below, Lead Plaintiff faced significant risks going

10   forward, including, among others, that the Court would not certify a class or would shorten the

11   proposed class period (and, correspondingly, reduce recoverable damages) or that Lead Plaintiff

12   would not be able to prove scienter, loss causation, or reliance.  In addition, even if Lead

13   Plaintiff were to prevail on the merits, there was a risk that the damages determined to be

14   attributable to the alleged misrepresentations and omissions would be less than the Settlement

15   Amount.  Accordingly, while Lead Plaintiff believes that all of its claims have merit, one or

16   more of these arguments or issues may have ultimately proved insurmountable and the Class

17   may have ended up with little or no recovery.  In light of these risks, the Settlement provides the

18   Class with an excellent result.

19       9.    The Settlement is the result of a comprehensive investigation, extensive litigation,

20   and hard-fought negotiations by experienced counsel.  For creating this substantial benefit, Lead

21   Counsel seeks a fee of 7.5% of the total economic value of the Settlement.[2]  This requested fee

22   has been reviewed and approved by Lead Plaintiff, NYCERS, which is a sophisticated

23   institutional investor with experience in securities class actions.  *See* Lead Plaintiff Decl. ¶¶ 15-

24   16.

25

26

_____

27   [2]    The term "total economic value of the Settlement", as used herein, includes all payments
     Apple has agreed to make under the Settlement, including Apple's payment to establish the
28   Settlement Fund, reimbursement of the costs of administering and distributing the Net Settlement
     Fund, and payment of Attorneys' Fees.

10.     Although Lead Counsel has negotiated an increase in the Settlement Amount from $14 million to $16.5 million, Lead Counsel has not increased its fee request.  As set forth below and in the accompanying Lead Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Fee Brief"), Lead Counsel's request is justified by the work performed and the result obtained.

11.     The favorable reaction of the members of the Class further supports the reasonableness of the Settlement, Plan of Allocation, and the fee and expense request. Beginning on December 8, 2010, the Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing, and Motion for Attorney's Fees and Reimbursement of Litigation Expenses (the "Notice") was sent to more than 39,000 potential Class Members or their nominees.  *See* Declaration of Robert Oseas Regarding Notice and Claims Administration ("Oseas Decl."), ¶¶ 10-11, attached hereto as Ex. B.  The Notice (attached as Exhibit B to the Oseas Decl.) advised Class Members of the proposed Settlement, the proposed Plan of Allocation, and the request for an award of attorneys' fees and reimbursement of Litigation Expenses. The Notice further advised Class Members of their right to object or request exclusion from the Class, and it explained that this right needed to be exercised by January 21, 2011. Also included with the Notice was the Request for Exclusion form.  Additionally, a Summary Notice was published in the national edition of *The Investor's Business Daily* and transmitted over *Business Wire* on December 8, 2010.  *Id.* ¶¶ 8-9.  Finally, the Claims Administrator posted the Notice, Proof of Claim form, Amended Stipulation and Agreement of Settlement and Amended Preliminary Approval Order on the website specifically created for this settlement.  *Id.* ¶ 14.

12.     While the deadline for opting out of the Settlement or objecting to any aspect of the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses will expire on January 21, 2011, to date, no Class Member has submitted any objection to any aspect of the Amended Stipulation and Agreement of Settlement, the Plan of Allocation, or the request for attorneys' fees and reimbursement of litigation expenses.

## II.       THE ALLEGATIONS OF THE ACTION

13.     Defendant Apple, headquartered in Cupertino, California, is a worldwide leader in the design, development and manufacture of personal computers, computer software and portable digital music players.

14.     The Individual Defendants were officers and/or directors of Apple during the Class Period.  Jobs co-founded the Company, and was Apple's Chief Executive Officer and a member of the Board throughout the Class Period.  Anderson was Apple's Chief Financial Officer from April 1996 to June 2004 and was a member of the Company's board of directors from 2004 until September 30, 2006 when he was forced to resign due to his involvement with backdating.  During the Class Period until May 2006, Heinen was the Senior Vice President, General Counsel, and Corporate Secretary at Apple.  Campbell has been a director of Apple since 1997, a member of the Audit Committee since at least December 1997, and a member of the Compensation Committee since August 2001.  Drexler has been a member of the Company's board of directors since 1999 and a member of the Compensation Committee since at least March 24, 2003.  Levinson has been a member of the Company's board of directors since 2000, a member of the Audit Committee since fiscal 2000, and was a member of the Compensation Committee from August 2001 to at least March 24, 2003.  York was a director of Apple from August 1997.[3]

15.     Plaintiff alleged in the Corrected First Amended Consolidated Class Action Complaint filed May 14, 2010 (the "Complaint" or "Compl.") that between August 24, 2001, and June 29, 2006, both dates inclusive (the "Class Period"), the Defendants improperly backdated stock option grants, resulting in false and misleading financial statements and inflation of Apple's stock price through out the Class Period.

16.     Following the commencement of the Action, Apple filed a restatement with the SEC in December 2006, which admitted backdating at Apple involving more than 6,400 instances on forty-two separate dates, and resulted in Apple restating more than four years of

---

[3]      Mr. York died on March 18, 2010.

financial statements and recording stock-based compensation expense of $105 million and $84 million on pre-tax and after-tax bases, respectively.

17.     As alleged in the Complaint, Defendants repeatedly backdated options made to current employees, newly hired employees, and non-employee directors, and failed to record compensation expenses for these grants in violation of Generally Accepted Accounting Principles ("GAAP").

## III.     HISTORY OF THE ACTION

18.     The Action was commenced on August 24, 2006, with the filing of a class action complaint against Apple and certain Individual Defendants in the United States District Court for the Northern District of California, San Jose Division (Case No. C-06-05208-JF).  The action was captioned *Vogel, et al. v. Jobs, et al.*, Case No. C-06-5208-JF, and alleged violations of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  This case is referred to as "*Vogel I*."  On October 24, 2006, The New York City Employees' Retirement System ("NYCERS") filed a Motion for Its Appointment as Lead Plaintiff and for Approval of Its Selection of Counsel.  On January 19, 2007, the Court granted NYCERS's motion and appointed Grant & Eisenhofer P.A. ("Grant & Eisenhofer") as lead counsel.

19.     Upon its appointment as Lead Counsel, Grant & Eisenhofer undertook a hard-fought prosecution that lasted until the Settlement was reached.  As described more fully below, Lead Counsel vigorously litigated this Action by, among other things: (1) conducting an extensive investigation into Defendants' alleged wrongful conduct; (2) drafting three detailed, particularized Complaints; (3) contesting Defendants' motions to dismiss; (4) prosecuting an appeal to the Court of Appeals for the Ninth Circuit; and (5) participating in hard fought, arm's-length settlement negotiations, including mediation before an experienced mediator.

### A.     LEAD PLAINTIFFS' INVESTIGATION, FILING OF THE CONSOLIDATED COMPLAINT, AND BRIEFING ON DEFENDANTS' MOTIONS TO DISMISS

20.     Lead Counsel engaged in an intensive investigation to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the heightened pleading standards imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Lead Counsel thoroughly

reviewed and analyzed all publicly available information regarding Apple (including, but not limited to, its SEC filings and financial statements, press releases, reports about the Company in the media, and analyst reports).  Lead Counsel's investigation uncovered substantial information which formed the basis for Lead Plaintiff' allegations.

21.     On March 23, 2007, Lead Plaintiff filed the detailed Complaint asserting claims under Sections 14(a) and 20(a) of the Exchange Act and breach of state law duties of disclosure.  NYCERS did not assert a claim under Section 10(b) of the Exchange Act.

22.     On June 8, 2007, the defendants moved to dismiss the Consolidated Complaint.  On November 14, 2007, the Court dismissed the Consolidated Complaint with leave to amend only as a derivative action.

23.     NYCERS drafted, and on December 14, 2007, filed a motion for leave to file, a first amended consolidated class action complaint to assert claims under Sections 10(b) and 20(a) of the Exchange Act, as well as amended versions of the claims asserted in the Consolidated Complaint.

24.     On May 14, 2008, the Court denied NYCERS's motion for leave to amend.  On June 12, 2008, the Court entered judgment in favor of the defendants and dismissed NYCERS's claims with prejudice.

25.     On June 17, 2008, NYCERS filed a notice of appeal before the U.S. Court of Appeals for the Ninth Circuit.  On January 28, 2010, the Ninth Circuit affirmed the Court's dismissal of NYCERS's claims under Section 14(a) of the Exchange Act and state law.  The Ninth Circuit reversed the Court's May 14, 2008 order and granted NYCERS leave to amend its complaint to assert claims under Sections 10(b) and 20(a) of the Exchange Act.

26.     On March 22, 2010, NYCERS filed a First Amended Consolidated Class Action Complaint against Apple and certain Individual Defendants.  NYCERS's amended complaint alleged violations of Sections 10(b) and 20(a) of the Exchange Act.

27.     On June 27, 2008, plaintiffs Vogel and Mahoney filed another purported class action suit in the U.S. District Court for the Northern District of California against Apple and certain Individual Defendants.  This action was captioned *Vogel, et al. v. Apple Inc., et al.*, Case

No. C-08-3123-JF, and alleged violations of Sections 10(b) and 20(a) of the Exchange Act. This action is referred to as "*Vogel II*." On July 22, 2008, the Court stayed all proceedings in *Vogel II* pending the outcome of NYCERS's appeal before the Ninth Circuit in *Vogel I*.

28.    On April 8, 2010, the Court entered an order consolidating *Vogel I* and *Vogel II*. The Court designated NYCERS as the Lead Plaintiff and Grant & Eisenhofer P.A. as Lead Counsel for the consolidated action.

29.    On May 14, 2010, Plaintiffs filed a Corrected First Amended Consolidated Class Action Complaint ("FACC") against Apple and certain Individual Defendants. The action is captioned *In re Apple Inc. Securities Litigation*, Case No. C-06-5208-JF, and alleges violations of Sections 10(b) and 20(a) of the Exchange Act. Defendants' response to the FACC is due on August 13, 2010. The Court has not previously certified any class in the Action.

30.    On May 19 and 20, 2010, Lead Plaintiff and Defendants participated in a mediation session with Jonathan Marks in New York. After considerable negotiations, the Settling Parties reached an agreement to settle the action.

### B.    EXPERTS

31.    Lead Counsel worked extensively with experts and consultants at different stages of the case to prepare the complaints, analyze documents, prepare for class certification and summary judgment briefing, prepare for mediation, and prepare for settlement negotiations.

32.    Lead Counsel negotiated competitive fee rates for these experts, each of whom played a significant part in the prosecution of this Action.

33.    Lead Counsel retained a consulting expert to assist them in assessing loss causation and damages issues early in the case, as well as in connection with the mediation. Lead Counsel also evaluated issues relating to backdating of options with consulting experts in the accounting and executive compensation fields.

### C.    THE RISKS FACED BY PLAINTIFFS

34.    Lead Plaintiff lost the § 14(a) claims before the District Court and the Ninth Circuit. However, while Lead Plaintiff was successful in prosecuting the §§ 10(b) and 20(a) claims against Defendants and believes that its case is meritorious and supported by strong

evidence, if the litigation had continued, Lead Plaintiff faced substantial risks, including establishing Defendants' liability and the Class' full amount of damages at summary judgment or trial.  Defendants argued throughout the litigation that Plaintiffs would be unable to prove loss causation and reliance as to some or all of the Class Period. They raised these arguments in their motions to dismiss, and would have no-doubt reasserted them at the summary judgment phase and at trial and on appeal.  Specifically, Defendants argued in their motion to dismiss that Plaintiffs failed to sufficiently plead loss causation and reliance.

35.     Defendants also argued that Plaintiffs could not establish damages.  Through Lead Counsel's work with experts and its appeal to the Ninth Circuit, Lead Counsel was able to reinstate the §§ 10(b) and 20(a) claims.  These efforts, in part, led to settlement negotiations, resulting in Lead Counsel obtaining the $16.5 million cash recovery for the Class.  If Defendants had been successful as to even some of their arguments – which they were initially at the motion to dismiss stage– total recoverable damages would have been greatly reduced or eliminated altogether.

36.     Lead Plaintiff further considered that certain contested issues would have been decided by a jury in the event of a trial, including whether Defendants acted with an intent to mislead investors, whether the alleged misrepresentations or omissions were false and material to investors, whether all of the Class Members' losses were caused by the alleged misrepresentations or omissions, and the amount of damages.

37.     Even if Plaintiffs prevailed through summary judgment, risks to the Class would remain.  Even a meritorious case can be lost at trial.  *See, e.g., In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs, the action was dismissed and plaintiffs were ordered to pay defendants the costs of defending the action). Even success at trial does not eliminate the risk.[4]

---

[4]     For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial. The court, however, overturned the verdict, entered judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporate defendant.

38.     If the Settlement had not been reached, the litigation (including any additional appeals) would have likely continued for years, and the ultimate result of further litigation cannot be foreseen. Given the stakes involved in this litigation, an appeal of a successful verdict for plaintiffs would be virtually assured.  Instead of the lengthy, costly, and uncertain course of further litigation with Defendants, the Settlement provides an immediate and certain recovery for the Class. Lead Counsel believes that the substantial benefit provided by the Settlement clearly outweighs the numerous risks associated with lengthy continued litigation.

39.     Lead Plaintiff and Lead Counsel also considered that, even if Lead Plaintiff was to prevail on the merits, the ability to recover as much as the Settlement Amount on a judgment, let alone more than the $16.5 million Settlement Amount, was far from certain.  In sum, given the extensive investigation and litigation in this matter, Lead Plaintiff was able to carefully weigh the risks and benefits to settlement in a fully informed manner before finally agreeing to a settlement on behalf of the Class.

### D.     THE NEGOTIATION OF THE SETTLEMENT

40.     The Settlement is the result of intense, arm's-length negotiations between informed parties, and involved a formal in-person mediation session, as well as further negotiations following mediation.  On May 19 and 20, 2010, Lead Plaintiff and Defendants participated in a mediation session in New York with Jonathan B. Marks of Marks ADR LLC, a noted mediator.  During that mediation, the parties reached an agreement in principle to settle the Action under terms that would require Defendants to establish a fund for distribution to the Class in the amount of $14 million, pay an additional $2.5 million to certain corporate governance programs at designated universities across the country, to pay all administrative fees and attorneys fees separately so as not to reduce the fund to be distributed the Class.  The parties also agreed to continue discussions regarding potential corporate governance reforms to be considered by Apple.   Declaration of Jonathan B. Marks ("Marks Decl."), attached as Exhibit F to the Barry Decl. ¶¶ 15-17.

41.     On September 28, 2010, after considerable negotiations, the Settling Parties entered into a stipulation and agreement to settle the Action under terms that would require

1   Apple to establish a fund for distribution to the Class in the amount of $14 million, establish a

2   fund of $2.5 million to be distributed to certain designated corporate governance programs at

3   twelve universities located across the country, to pay all administrative fees and attorneys fees in

4   an amount to be approved by the Court not to exceed $2 million, and to reimburse Plaintiffs'

5   counsel reasonable out of pocket expenses in an amount to be approved by the Court not to

6   exceed $450,000, and to implement certain corporate governance reforms.

7   　　　　42.　　On November 12, 2010, the Settling Parties entered into an amended stipulation

8   and agreement to settle the Action by increasing the fund established for distribution to the Class

9   by $2.5 million, to $16.5 million in cash to be paid by Apple, by eliminating the separate $2.5

10   million fund to be distributed to designated corporate governance programs, and by providing

11   that any amount remaining in the settlement fund after distribution to the Class would be

12   distributed to nine designated corporate governance programs that were among the twelve

13   previously designated as proposed recipients of the originally contemplated $2.5 million fund.

14   　　　　43.　　Following this Court's preliminary approval of the original terms of Settlement,

15   on October 22, 2010, Apple deposited the $14 million Settlement Fund into an interest bearing

16   account, and following  issuance of the Amended Preliminary Approval Order, on December 9,

17   2010, Apple deposited an additional $2.5 million into the Settlement Fund.  In addition, pursuant

18   to the Court's Amended Preliminary Approval Order, beginning on December 8, 2010, Lead

19   Counsel, through the claims administrator, caused the Notice packet (including the Court-

20   approved Notice, Claim Form and Opt Out Form) to be sent to potential Class Members, and the

21   Summary Notice to be published in *The Investor's Business* Daily and over *Business Wire*.  *See*

22   Oseas Decl. ¶¶ 8-9.

23   **IV.　　CLASS NOTICE**

24   　　　　44.　　The Court's Amended Preliminary Approval Order granted preliminary approval

25   of the Settlement, preliminarily certified the Class, ordered that notice be disseminated to the

26   Class, and set January 21, 2011, as the date by which all objections to the Settlement, the Plan of

27   Allocation and/or the request for attorneys' fees and reimbursement of expenses, or requests for

28   exclusion from the Class, must be received.

45.     Lead Plaintiff, with the Court's approval, retained Epiq Class Action and Claims Solutions, Inc. ("Epiq"), as the Claims Administrator for the Settlement.

46.     Pursuant to the Amended Preliminary Approval Order, Lead Plaintiff, through Epiq, disseminated copies of the Notice, Proof of Claim form, and Request for Exclusion form (the "Notice Packet") to potential Class Members.  A copy of the Notice Packet is attached as Exhibit A to the Oseas Declaration.  The Notice contains a thorough description of the Settlement, the Plan of Allocation, and Class Members' rights to participate in and object to the Settlement, or to exclude themselves from the Class.  *Id.*  As detailed in the Oseas Declaration, Epiq obtained the names and addresses of potential Class Members, and Epiq's proprietary database of names of brokerage firms, banks, institutions and other nominees that it maintains, as well as names provided by banks, brokers and nominees pursuant to the Preliminary Approval Order for purposes of its initial mailing.  *Id.* ¶ 11.

47.     Pursuant to the Amended Preliminary Approval Order, Epiq began disseminating the Notice Packet to potential Class Members on December 8, 2010. In total, over 39,000 copies of the Notice Packet have been disseminated to potential Class Members.  *Id.* ¶¶ 10-11.

48.     In addition, the Court-approved Summary Notice was published in the national edition of *The Investor's Business Daily* and transmitted over *Business Wire* on December 8, 2010.  *Id.* at ¶¶ 8-9.  Information regarding the Settlement, including downloadable copies of the Notice and Proof of Claim form, was posted on the website established by the Claims Administrator specifically for this Settlement (www.applesecuritiessettlement.com).  *Id.* at ¶ 14.

49.     As ordered by the Court and stated in the Notice, all objections to the Settlement, Plan of Allocation, or request for attorneys' fees and reimbursement of expenses or requests for exclusion from the Class are due to be received by no later than January 21, 2011.  To date, there are no objections to the Settlement, the Plan of Allocation, or request for attorneys' fees and reimbursement of expenses.

## V.     PLAN OF ALLOCATION

50.     Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Class Members who wish to participate in the distribution of the Settlement Fund must submit a

Claim Form no later than March 15, 2011.  As provided in the Notice, after deducting all appropriate taxes, administrative costs, attorneys' fees, and reimbursement of Litigation Expenses, the balance of the Settlement Fund (the "Net Settlement Fund") will be distributed according to the Plan of Allocation.

51.     If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Class Members who submit valid Claim Forms. The Plan of Allocation is designed to achieve an equitable distribution of the Net Settlement Fund.

52.     The Plan of Allocation is the product of Lead Counsel's investigation and analysis in this Action.  A "Recognized Claim" will be calculated for each purchase or acquisition of Apple common stock during the Class Period as reflected on the Claim Forms timely submitted by Class Members.

53.     Epiq, as the Claims Administrator for the Settlement, will determine each Authorized Claimant's pro rata share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Loss, calculated in accordance with the Plan of Allocation.  Calculation of the Recognized Loss will depend upon several factors, including when the shares were purchased or acquired, and whether they were held until the conclusion of the Class Period or sold during the Class Period, and if so, when they were sold.

54.     The Plan of Allocation was designed to fairly and rationally allocate the proceeds of the Settlement among Class Members based on the alleged corrective disclosures and resulting estimated damages throughout the Class Period, and was fully explained in the Notice to the Class. Objections to the Plan of Allocation must be filed by no later than January 21, 2011. To date, no objections have been filed.

## VI.    THE FEE APPLICATION

55.     The Notice informed Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in the amount of $1,533,750.00, Stull, Stull & Brody and Kantrowitz, Goldhamer & Graifman's intent to apply for an award of attorneys' fees in the amount of $466,250, and for reimbursement of Litigation Expenses in an amount not to exceed $450,000, plus interest on such fees and expenses at the same rate as earned by the Settlement Amount.

56.     The requested fee of $1.5 million (or approximately 7.5% of the total economic value of the Settlement excluding attorneys' expenses) is far below the 25% "benchmark" fee in the Ninth Circuit, and was reviewed and approved by Lead Plaintiff NYCERS, a sophisticated institutional investor with experience prosecuting securities violations on behalf of investors and serving as lead plaintiff in actions governed by the PSLRA.  *See* Lead Plaintiff Decl. ¶¶ 15-16. In addition, the combined request for fees in the amount of $1,966,250, is 9.61% of the total economic value of the Settlement, and is similarly well below the Ninth Circuit's 25% "benchmark".

57.     As discussed in the Fee Brief, fee awards equal to or greater than the "benchmark" fee award of 25% – a higher percentage than the amount requested here – are frequently approved by courts both within the Ninth Circuit and outside of this Circuit.

58.     The fee requested is also fair, adequate, and reasonable because of the significant risks faced by Lead Counsel in pursuing this Action.  Most obviously, this litigation was undertaken by Lead Counsel on a wholly contingent basis.  Lead Counsel understood that it was embarking on a complex, lengthy, and expensive litigation with no guarantee of ever being compensated for its investment of time and money in the prosecution of this matter.  Indeed, Lead Counsel is aware of numerous cases where plaintiffs' counsel in contingent cases such as this, after expending thousands of hours, have received no compensation for various reasons. Thus, commencement of a class action does not guarantee a settlement and fee award. Nevertheless, Lead Counsel understood that it was obligated to ensure that sufficient attorney resources were dedicated to the prosecution of this case and that sufficient funds were available to cover the significant expenses required to litigate this matter.  As discussed above, liability here was far from assured and there were significant risks concerning the damages recoverable even if liability were established.  As just one example of the litigation risks faced by Lead Counsel, the Court dismissed the § 14(a) claims.

59.     Courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforcing the securities laws.  As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only

occur if private plaintiffs − particularly institutional investors − take an active role in protecting the interests of securities purchasers and obtain representation comparable to that available to large corporate interests. If this important public policy is to be carried out, plaintiffs' counsel must be adequately compensated, taking into account the enormous risks undertaken in prosecuting securities class actions.

60.     The expertise and experience of Lead Counsel is another important factor in setting a fair fee.  Lead Counsel is among the most experienced and skilled practitioners in the securities litigation field, and has a long and successful track records in such cases.  The challenges posed by the size and complexity of this case the underlying subject matter were enormous.  This $16.5 million Settlement was in large part the result of Lead Counsel's specialized skills, hard work, and persistence.  Moreover, the fact that Lead Counsel has demonstrated a willingness and ability to prosecute complex cases such as this was undoubtedly a factor that encouraged Defendants to engage in settlement discussions and to settle this matter. Copies of our firm's biography is attached as Ex. 3 to the Declaration of Michael J. Barry in Support of Lead Counsel's Application for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Barry Fee Decl."), attached hereto as Exhibit C.

61.     As reflected in the attached Fee Declarations,[5] Plaintiffs' Counsel expended over 3,400 hours in the prosecution and investigation of this litigation. The hours invested by Plaintiffs' Counsel are a testament not only to the large scale of the case, but also to Plaintiffs' Counsel's commitment and professional sacrifice to obtain the best possible result for the Class. Thus, the fee requested fairly and reasonably rewards Lead Counsel's effort and performance.

62.     The quality of the work performed by Plaintiffs' Counsel in attaining the Settlement should also be evaluated in light of the quality of opposing counsel.  Counsel for Defendants consisted of a top-tier national firm, which mounted a formidable defense.  In the

---

[5]     "Fee Declarations" refers, collectively, to the Barry Fee Declaration; the Declaration of Patrice L. Bishop in Support of Application for Attorneys' Fees and Expenses (the "Bishop Decl."), attached hereto as Exhibit D, and the Declaration of Gary S. Graifman in Support of Application for Award of Attorneys' Fees and Expenses (the "Graifman Decl."), attached hereto as Exhibit E.

BARRY DECLARATION                            15
CASE NO. C-06-05208-JF

face of this knowledgeable and formidable defense, Lead Counsel was nonetheless able to develop a case that was sufficiently strong to persuade the Defendants to settle the litigation on terms that are favorable to the Class.

63.     Additionally, this Action required Plaintiffs' Counsel to spend over four years intensively litigating this matter, requiring the attorneys to forego work on other matters and requiring Plaintiffs' Counsel to incur significant expenses.   Courts have noted that these circumstances are relevant to the fee determination.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

64.     The fee is also fair, adequate and reasonable when measured based on a lodestar multiplier.  The lodestar multiplier is calculated by (i) dividing the fee requested ($1,966,250.00) by (ii) the number of hours counsel billed to the case multiplied by the counsel's standard hourly rate (the "lodestar").  The lodestar for Lead Counsel is $1,531,935.50.  *See* Barry Fee Decl., Ex. 1.  This represents a multiplier of .98, which represents a 2% *discount* of Lead Counsel's fees. The lodestar for Stull, Stull & Brody and Kantrowitz, Goldhamer & Graifman is $400,346.40. This represents a multiplier of 1.16.  The lodestar for the services performed by all Plaintiffs' Counsel here is $1,932,281.90.  This represents a multiplier of only 1.02.  Courts have frequently approved higher multipliers in securities cases.  *See, e.g., Vizcaino*, 290 F.3d at 1047 (upholding a multiplier of 3.65 on a $96.885 million settlement).   This case was prosecuted on a fully contingent basis, with no assurance of success, and litigated for over four years without any compensation at all.

65.     In addition, in response to over 39,000 Notices being mailed, to date there are no objections to Lead Counsel's fee request.

**VII.    REIMBURSEMENT OF THE REQUESTED LITIGATION EXPENSES AND COSTS IS FAIR AND REASONABLE**

66.     Lead Counsel seeks reimbursement of $350,910.70 in litigation expenses reasonably and actually incurred in connection with commencing and prosecuting the claims against the Defendants, with interest incurred at the same rate earned by the Settlement Fund. *See* Barry Fee Decl., Ex. 2.  Stull, Stull & Brody and Kantrowitz, Goldhamer & Graifman,

counsel for plaintiffs in *Vogel II*, seek combined out of pocket expenses of $44,605.20.  *See* Bishop Decl., Ex. 3; Graifman Decl., Ex. 2.

67.     From the beginning of the case, Lead Counsel was aware that it might not recover any of its expenses, and, at the very least, would not recover anything until the Action was successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate it for the lost use of the funds advanced by them to prosecute this Action.  Therefore, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

68.     The expenses of Plaintiffs' Counsel for which reimbursement is sought are set forth in detail in the respective firms' Fee Declarations, which identify the specific category of expense, e.g., experts' fees, travel costs, photocopying, telephone, fax and postage expenses, and other costs actually incurred.  As set forth in the Fee Declarations, these expenses are reflected on the books and records maintained by Plaintiffs' Counsel and are prepared from expense vouchers, check records, and other source materials, and are an accurate record of the expenses incurred.

69.     A large portion of the litigation expenses for which reimbursement is sought were incurred for professional expert fees.  Of the total amount of expenses, more than $231,000.00, or 66%, was expended on experts in the areas of liability, loss causation, market efficiency, damages, and to assist with the mediation.  The expertise and assistance provided by these experts was critical to the prosecution and successful resolution of this action.

70.     The expenses also include the costs of on-line legal and factual research in the amount of $39,932.66 for Lead Counsel and $6,669.02 for counsel in *Vogel II*.  These are the charges for computerized factual and legal research services such as Lexis-Nexis and Westlaw.  It is standard practice for attorneys to use Lexis-Nexis and Westlaw to assist them in researching legal and factual issues, and, indeed, courts recognize that these tools create efficiencies in litigation and, ultimately, save clients and the class money.

71.     In addition, Lead Counsel was required to travel in connection with prosecuting and mediating this matter and, thus, incurred the related costs of travel tickets, meals, and lodging.

72.     Included in the expense request above is $20,870.36 for out-of-town travel expenses necessarily incurred for the prosecution of this litigation.

73.     The other expenses for which reimbursement is sought are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, long distance telephone and facsimile charges, postage and delivery expenses, filing fees, photocopying, and document management.

74.     All of Plaintiffs' Counsel's litigation expenses for which reimbursement is being sought were necessary to the successful prosecution and resolution of the claims against Defendants.  In addition, the Notice apprised potential Class Members that Lead Counsel would seek reimbursement of expenses in an amount not to exceed $450,000.  The amount now sought – $395,515.90 is significantly less than the amount stated in the Notice.  To date, there are no objections to the request for reimbursement of expenses.

75.     In view of the complex nature of the Action, the Litigation Expenses incurred were reasonable and necessary to pursue the interests of the Class.  Accordingly, Lead Counsel respectfully submits that the expenses are reasonable in amount and should be reimbursed in full.

**VIII.   CONCLUSION**

76.     In view of the substantial recovery to the Class, the risks of this Action, the enormous efforts of Lead Plaintiff and Lead Counsel, the quality of work performed, the contingent nature of the fee, the complexity of the case, and the standing and experience of Lead Counsel, Lead Counsel respectfully submits that the Settlement of $16.5 million should be approved as fair, reasonable and adequate; that the Plan of Allocation should be approved as fair and reasonable; that a fee in the amount of 7.5% of the Settlement Fund excluding attorneys' expenses (or $1.5 million), and Lead Counsel's expenses in the amount of $350,910.70, with interest thereon at the same rate as earned by the Settlement Amount, should be awarded to Lead Counsel.  Similarly, Stull, Stull & Brody and Kantrowitz, Goldhamer & Graifman, counsel for

1   plaintiffs in *Vogel II*, submit that the Court should approve their fees and expenses and award

2   them combined fees in the amount of $466,250, which represents 2.28% of the total economic

3   value of the Settlement, plus combined out of pocket expenses of $44,605.20.

4       I declare under penalty of perjury that the foregoing is true and correct and that this

5   declaration was executed on this 7th day of January, 2011.

6                                    BY:   ____*/s/ Michael J. Barry*____

7                                          MICHAEL J. BARRY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARRY DECLARATION                          19
CASE NO. C-06-05208-JF

Exhibit A

1  JAY W. EISENHOFER (*admitted pro hac vice*)
   MICHAEL J. BARRY (*admitted pro hac vice*)
2  GRANT & EISENHOFER P.A.
   Chase Manhattan Centre
3  1201 N. Market Street
   Wilmington, Delaware 19801
4  Telephone:   (302) 622-7000
   Facsimile:   (302) 622-7100
5  E-Mail:      jeisenhofer@gelaw.com
                mbarry@gelaw.com
6

7  *Attorneys for Lead Plaintiff New York City*
   *Employees' Retirement System*
8

9

10           **UNITED STATES DISTRICT COURT**
             **NORTHERN DISTRICT OF CALIFORNIA**
11                    **SAN JOSE DIVISION**

12
   IN RE APPLE INC. SECURITIES        CASE NO. C-06-05208-JF
13 LITIGATION

14                                     CLASS ACTION

15                                     **DECLARATION OF CAROLYN**
                                       **WOLPERT IN SUPPORT OF LEAD**
16                                     **PLAINTIFF'S MOTION FOR FINAL**
                                       **APPROVAL OF THE PROPOSED**
17                                     **SETTLEMENT**

18                                     Date:       February 18, 2011
                                       Time:        9:00 a.m.
19                                     Courtroom: 3, 5th Floor
                                       Judge:      Hon. Jeremy Fogel
20

21

22

23

24

25

26

27

28

DECLARATION OF CAROLYN WOLPERT
CASE NO.. C-06-05208-JF

I, Carolyn Wolpert, Esquire, hereby declare, under penalty of perjury, as follows:

1.     I am the Deputy Division Chief, Pensions Division of the New York City Law Department.  My duties include providing legal advice to the New York City Employees' Retirement System ("NYCERS"), and since October of 2006 I have provided advice to NYCERS in the above-captioned action (the "Action").  I have represented NYCERS in the prosecution and settlement of this Action and have had regular contact with NYCERS' outside counsel, Grant & Eisenhofer, P.A. ("Grant & Eisenhofer"), regarding the Action.

2.     I submit this Declaration in support of the final approval of: (i) the proposed Settlement; and (ii) an award of attorneys' fees and reimbursement of expenses to Grant & Eisenhofer.  NYCERS takes no position, but does not oppose, the request for an award of fees and reimbursement of expenses made by any other plaintiffs' counsel in the Action.

3.     I make this Declaration based upon my personal knowledge upon information made available to me in my official capacity and upon belief that the information herein is truthful and reliable.

### A.     General Background

4.     The New York City Law Department ("NYC Law Department") is charged with providing legal representation of NYCERS.  In that role, the NYC Law Department oversees and supervises all of the activities of outside law firms representing NYCERS.

5.     I, along with others in the NYC Law Department and the Office of the New York City Comptroller (the "NYC Comptroller's Office"), have been actively involved in all aspects of the prosecution of the Action, and have overseen and supervised the activities of Grant & Eisenhofer on behalf of the NYCERS and the Class.  Among other things, we: (i) reviewed, commented on, revised and approve significant pleadings, briefs and other papers before they were exchanged and/or filed; reviewed significant pleadings, briefs and other papers received from the Defendants in this Action; (iii) had regular telephonic and email communications, as well as in-person meetings, with attorneys from Grant & Eisenhofer regarding strategy and developments in the Action; and (iv) participated in the

1  mediation sessions and subsequent discussions with Defendants on behalf of the NYCERS and the

2  Class.

3        6.     The NYC Law Department also required Grant & Eisenhofer to provide regular status

4  reports concerning the Action, including a general overview of litigation developments and significant

5  strategic decisions.

6        **B.    Settlement Discussions**

7        7.     At various times throughout the course of the Action, the parties had preliminary

8  discussions regarding the possibility of settlement, but NYCERS consistently insisted that any

9  settlement include a significant payment for distribution to Class members and such discussions with

10  Defendants were not fruitful.

11        8.     On May 19 and 20, 2010, the parties in the Action engaged in a formal mediation process

12  facilitated by Jonathan Marks, of Marks ADR LLC, at the offices of O'Melveny & Myers, in New York

13  City.  In addition to myself, Ricardo E. Morales, Deputy Comptroller for Legal Affairs, and Valerie

14  Budzik, First Deputy General Counsel from the NYC Comptroller's Office participated on behalf of

15  NYCERS.

16        9.     Following this mediation session, the parties reached an agreement in principle to settle

17  the Action under terms that would require Apple to establish a fund for distribution to the Class in the

18  amount of $14 million, pay an additional $2.5 million to certain corporate governance programs at

19  designated universities across the country to be designated by NYCERS, to pay all administrative fees

20  and attorneys fees separately so as not to reduce the fund to be distributed the Class.  The parties also

21  agreed to continue discussions regarding potential corporate governance reforms to be considered by

22  Apple.

23        10.    On September 28, 2010, after considerable negotiations, the Settling Parties entered into

24  a stipulation and agreement to settle the Action under terms that would require Apple to establish a fund

25  for distribution to the Class in the amount of $14 million, establish a fund of $2.5 million to be

26  distributed to certain designated corporate governance programs at twelve universities located across the

27  country, to pay all administrative fees and attorneys fees in an amount to be approved by the Court not

28

to exceed $2 million, and to reimburse Plaintiffs' counsel reasonable out of pocket expenses in an amount to be approved by the Court not to exceed $450,000, and to implement certain corporate governance reforms.

11.     On November 12, 2010, the Settling Parties entered into an amended stipulation and agreement to settle the Action by increasing the fund established for distribution to the Class by $2.5 million, bringing the fund to a total of $16.5 million in cash to be paid by Apple, eliminating the separate $2.5 million fund to be distributed to designated corporate governance programs, and providing that any amount remaining in the settlement fund after distribution to the Class would be distributed to nine designated corporate governance programs that were among the twelve previously designated as proposed recipients of the originally contemplated $2.5 million fund.

12.     The NYC Law Department and the NYC Comptroller's Office actively supervised and commented on the terms of the proposed settlement and its memorialization in the Stipulation and Agreement of Settlement and related documents.

13.     Based on our involvement in the prosecution and settlement of this Action, the NYC Law Department endorses the settlement and believes that it provides an excellent result for the Class.

### C.     The Plan of Allocation

14.     Based on the explanation of the analysis of the proposed Plan of Allocation, the NYC Law Department also endorses the proposed Plan of Allocation.  We understand that the Plan represents a fair and reasonable method for valuing claims submitted by class members, and for distributing the net settlement funds to class members who submit valid and timely claim forms.

### D.     Grant & Eisenhofer's Fee and Expense Application

15.     The NYC Law Department endorses the application made by Grant & Eisenhofer for an award of attorneys fees in the amount of $1.5 million.  This amount represents 7.5% of the total economic value of the Settlement (excluding attorneys' expenses), and equals approximately 9.1% of the $16.5 million Settlement Fund to be distributed to the Class (although all attorneys fees and expenses will be paid *in addition to* and not out of the Settlement Fund).

18.     The NYC Law Department has also reviewed the litigation expenses incurred by Grant & Eisenhofer in this case, and the NYC Law Department further believes that the litigation expenses being requested for reimbursement were reasonable and necessary for the prosecution and successful resolution of the Action.

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed this ___ day of January, 2010.

Carolyn Wolpert
Deputy Division Chief
Pensions Division
New York City Law Department

4

Exhibit B

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

IN RE APPLE INC. SECURITIES
LITIGATION

Case No. C06-05208-JF

CLASS ACTION

## DECLARATION OF CLAIMS ADMINISTRATOR ON NOTICE IMPLEMENTATION

I, ROBERT OSEAS, declare as follows:

    1.    I am a Project Manager employed by Epiq Class Action and Claims Solutions Inc., ("Epiq"), f/k/a Poorman-Douglas Corp., the Claims Administrator designated in the Amended Stipulation and Agreement of Settlement in this matter and approved by the Court in its Amended Order Preliminarily Approving Settlement, Directing Notice of Settlement, and Scheduling Settlement Fairness Hearing. *See* Doc. 134-1 at ¶1.6 and Doc. 139 at ¶8.

    2.    I am overseeing and am fully familiar with the notice implementation actions taken by Epiq in connection with the Settlement, as described below.

    3.    This Declaration is based upon my personal knowledge and information provided to me by associates and staff under my supervision and is accurate and truthful to the best of my knowledge.

    4.    Epiq is a firm with more than 40 years of experience in data processing. Epiq's claims administration services include: (a) coordination of all notice requirements; (b) design of direct mail notice; (c) establishment of toll free phone line and fulfillment services; (d) coordination with the U.S. Postal Service; (e) database management; (f) website hosting and

management; (g) claims processing; and (h) preparation of reports to courts overseeing class action settlements describing Epiq's notice and claims administration activities.

5.      Epiq has provided notification and claims administration services in numerous securities matters, including: *In re General Motors Corp. Securities and Derivative Litigation*, MDL No. 1749 (E.D. Mich.); *In re: Parmalat Securities Litigation*, MDL No. 1653 (S.D.N.Y.); *In re Marvell Technology Group Ltd. Securities Litigation*, Case No. 06-6286 (N.D. Cal.); *In re: Brocade Securities Litigation*, Case No. 05-2042 (N.D. Cal.) and the Royal Dutch Shell Non-United States Residents Securities class action settlement under the supervision of the Amsterdam Court of Appeals, Case No. 10610887.

6.      As a Project Manager, I am responsible for coordination of claims administration services for class action settlements.  I oversee a multitude of services, such as document mailing, phone services, voice response units, live operators, website design and maintenance, mail processing, claims processing, distribution, and related reporting.

## OVERVIEW OF EPIQ'S RESPONSIBILITIES

7.      Epiq has been retained in the above matter to undertake numerous activities, including:

(a)      cause the Publication Notice to be published in *Investor's Business Daily* and transmitted over *Business Wire*;

(b)      print the Court-approved Notice and Proof of Claim;

(c)      mail the Notice and Proof of Claim and, where required, re-mail the Notice and Proof of Claim, by first-class mail to Class Members and to brokers, banks and other nominees;

(d)     forward copies of the Notice and Proof of Claim to potential Class Members pursuant to requests submitted by brokers, banks and other nominees;

(e)     use its best efforts to obtain correct addresses and re-mail the Notice and Proof of Claim to individuals or entities whose packages were returned as undeliverable mail;

(f)     develop and maintain a website to provide information regarding the proposed Settlement and to capture online Proof of Claim submissions;

(g)     establish an e-mail address for Class Members and other interested persons to contact the Claims Administrator;

(h)     develop, staff and maintain live operator services and a toll free number with an interactive voice response unit (IVR);

(i)     designate a post office box to receive requests for exclusion, Proofs of Claim and other communications; and

(j)     receive, log, and process requests for exclusion, Proofs of Claim and other communications from Class Members and other interested persons.

## PUBLICATION NOTICE

8.     Epiq caused the Publication Notice to be published on December 8, 2010 in *Investor's Business Daily*, page A-7.  Attached as **Attachment A** is a copy of the Publication Notice as it appeared in *Investor's Business Daily* as well as an affidavit of publication.

9.     Also on December 8, 2010, Epiq caused the Publication Notice to be transmitted over *Business Wire*.

DECLARATION OF CLAIMS ADMINISTRATOR ON NOTICE IMPLEMENTATION

3

## MAILING OF THE NOTICE AND PROOF OF CLAIM

10.     On October 8, 2010, Epiq received 33,448 records from Apple's transfer agent. Epiq imported this data file and removed exact duplicates. On December 8, 2010, Epiq mailed 31,886 copies of the Notice and Proof of Claim to these records by first-class mail. **Attachment B** is a copy of the Notice and Proof of Claim package as it was mailed.

11.     Epiq maintains and updates a list of banks, brokers and other nominees. On December 9, 2010, Epiq mailed 5,804 copies of the Notice and Proof of Claim to known banks, brokers and other nominees in the United States. As a result of that mailing, banks, brokers and other nominees have sent Epiq (i) lists of potential Class Members and/or (ii) requests for quantities of unaddressed notices that the banks, brokers and other nominees forward to potential Class Members. Epiq is fulfilling both types of requests as they are received.

## TOLL FREE TELEPHONE NUMBER, EMAIL ADDRESS AND WEBSITE

12.     Epiq activated a dedicated toll free number for the Settlement on December 7, 2010.  The toll free number provides callers with automated answers to frequently asked questions and the ability to request a copy of the Notice and Proof of Claim by mail.  This automated or "IVR" system is available 24 hours a day, 7 days a week.  An option is available on the toll free number for callers to speak with a live agent.  Epiq has trained agents on how to respond to questions from callers seeking information about the Settlement.  Agents are available Monday through Friday from 9:00 A.M. to 5:00 P.M. Pacific Time (excluding official holidays). During other hours, callers may leave a message for an agent to call them back on the next business day.

13.     Epiq also established an email address, questions@applesecuritiessettlement.com, for Class Members and other interested persons to contact the Claims Administrator.

14.     A settlement website, www.applesecuritiessettlement.com, was established by Epiq which provides general information about the Settlement, answers to frequently asked questions and access to a number of case-related documents. Specifically, visitors to the website can download documents such as the Notice, Proof of Claim, Amended Stipulation and Agreement of Settlement and Amended Preliminary Approval Order, among other documents. This website also has automated functionality for Class Members and nominees to submit Proofs of Claims online.

## POST OFFICE BOX

15.     A post office box address has been designated for the Settlement. This post office box address appears on the Notice and Proof of Claim, and is also available through the toll free number and the website.

16.     Epiq has received, and continues to receive, mail in this post office box, which includes Proofs of Claim.

17.     As of the close of business on January 4, 2011, Epiq has received no requests for exclusion from the Class.  As set forth in the Notice, requests for exclusion must be sent by first-class mail postage pre-paid, postmarked no later than January 21, 2011.

18.     Epiq has received, and continues to receive, Proofs of Claim.  The deadline to submit valid Proofs of Claim, as set forth in the Notice, is March 15, 2011.

## PLAN OF ALLOCATION AND CLAIMS PROCESSING

19.     Epiq has reviewed the Plan of Allocation for distribution of the Net Settlement Fund, which is included in the Notice. Epiq has determined that it is able to administer the Settlement based on the Plan of Allocation, and has administered numerous other securities class action settlements with similar plans of allocation.

20.     Epiq understands that the Plan of Allocation and the Court's Amended Preliminary Approval Order require Class Members to submit valid Proofs of Claim and supporting documentation.     Such supporting documentation typically includes brokerage confirmation slips, or other documentation as sufficiently reliable to establish the transactions in the relevant security while preventing acceptance of fraudulent claims.  If/when Epiq receives Proofs of Claim without sufficient documentation, the claimant or their authorized representative will be advised of the deficiency and we will attempt to work with the claimant in order for them to remedy the deficiency.

21.     Prior to distributing the Net Settlement Fund, pursuant to Section 6 of the Amended Stipulation, I understand Lead Counsel will apply to the Court for a Class Distribution Order which will, among other things, approve of Epiq's administrative determinations concerning the acceptance and rejection of the Proofs of Claim submitted.  Epiq will submit an additional declaration at that time updating the Court on the claims administration process. Pursuant to paragraph 49 of the Notice, I understand that Lead Plaintiff will request that the Court approve of appropriate recipients for cy pres donations of any funds remaining in the Net Settlement Fund following payment of outstanding costs and expenses.

Robert Oseas

Subscribed and sworn to before me this 7th day of January, 2011.

OFFICIAL SEAL
SARA ANN KNUDSEN
NOTARY PUBLIC-OREGON
COMMISSION NO. 434504
MY COMMISSION EXPIRES NOVEMBER 23, 2012

NOTARY PUBLIC

My Commission Expires: 11/23/12

DECLARATION OF CLAIMS ADMINISTRATOR ON NOTICE IMPLEMENTATION

6

# Attachment – A

## Publication Notice and

## Affidavit of Publishing



## INVESTMENT OPPORTUNITY

### — INVESTOR NEEDED —

Must have $210,000 risk capital available before 12-15-10. A chance to double your money. Reply to dss32@aol.com or call David at 818-618-0806 during business hours. Results not guaranteed.

### CAPITAL WANTED

**DVANCED JETS SEEKS $$**
High Demand! Strong, Est'd., Private Aviation Co. expanding, seeks capital only, no equity. 163 Clients(72% Corp.) Clients use Jet Cards.
Allen West 877-303-5387
AWest@AdvancedJets.com

### Notice

If you require additional information n any of the above companies, please ntact your local Chamber of mmerce or Better Business Bureau your area."

Where do the readers of nvestor's Business Daily go when they want to get results?

## THE NATIONAL BUSINESS MARKETPLACE

For information, call
**1-800-423-5515**

# LEGAL NOTICES

LEGAL NOTICE                                                                 LEGAL NOTICE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA SAN JOSE DIVISION**

IN RE APPLE INC. SECURITIES LITIGATION

THIS DOCUMENTS RELATES TO: ALL ACTIONS

Case No. C-06-5208-JF

CLASS ACTION

## SUMMARY NOTICE OF PROPOSED SETTLEMENT, SETTLEMENT FAIRNESS HEARING, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES

**TO: ALL PERSONS OR ENTITIES THAT PURCHASED APPLE INC. ("APPLE") COMMON STOCK DURING THE PERIOD BETWEEN AUGUST 24, 2001, AND JUNE 29, 2006, BOTH DATES INCLUSIVE (THE "CLASS"; MEMBERS OF THE CLASS ARE REFERRED TO AS "CLASS MEMBERS").**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and a Court Order, that the above-captioned action has been certified as a class action for purposes of a proposed settlement for $16.5 million in cash, plus interest. In addition, Apple has agreed to implement certain corporate governance measures. Apple also has agreed to pay the reasonable costs of administering and distributing the settlement fund and the reasonable attorneys' fees and expenses as may be awarded by the Court to compensate plaintiffs' counsel.

A hearing will be held before the Honorable Jeremy Fogel in the U.S. District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA, at 9:00 a.m., on February 18, 2011, to determine whether the proposed settlement is fair, reasonable, and adequate, to consider the proposed plan of allocation, and to consider the application for attorneys' fees and expenses.

IF YOU ARE A CLASS MEMBER, YOUR RIGHTS MAY BE AFFECTED BY THE SETTLEMENT, AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT FUND. If you have not yet received the full printed Notice of Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Expenses (the "Notice"), you may obtain a copy of this document by contacting the Claims Administrator:

In re Apple Inc. Securities Litigation
P.O. Box 6809
Portland, OR 97228-6809
1-888-760-4869
www.AppleSecuritiesSettlement.com

To participate in the settlement, you must submit your completed and signed Proof of Claim either online at www.AppleSecuritiesSettlement.com by no later than March 15, 2011, or send it by first-class mail postage prepaid postmarked no later than March 15, 2011, in the manner and form explained in the Notice. Unless you submit a valid Proof of Claim, you cannot participate in the settlement.

If you desire to be excluded from the Class, you must submit a request for exclusion by first-class mail postage prepaid postmarked no later than January 21, 2011, in the manner and form explained in the Notice. Unless you validly exclude yourself from the Class, you will be bound by any judgment entered in this action whether or not you submit a Proof of Claim.

If you want to object to the proposed settlement, the plan of allocation, or the application for attorneys' fees and expenses, you must file your objection with the Court no later than January 21, 2011, and send a copy of it on the same day to the parties' counsel by first-class mail postage prepaid, in the manner and form set forth in the Notice.

DO NOT CONTACT THE COURT OR THE CLERK'S OFFICE REGARDING THIS NOTICE. Inquiries, other than requests for the Notice, may be made to Plaintiffs' Lead Counsel:

Michael J. Barry
Grant & Eisenhofer P.A.
1201 N. Market Street
Wilmington, DE 19801
Phone: (302) 622-7000

Dated: December 8, 2010

By Order of the Court

## Place Your Ad By Phone: 800-423-5515
## Place Your Ad By Fax: 310-577-7346
## Charge Your Ad:

   

**Deadline:**
Line ads: 12:00PM (PST) 2 weekdays before publication. All sales are final.

## PRECIOUS METALS

At 1% Over Our Costs
# 2010 Silver Eagles

**Why Buy American Silver Eagles?**
The U.S. Silver Eagle is one of the most beautiful American coins ever minted. And they're the only silver bullion coin whose weight, purity and content are guaranteed by the U.S. Government. No one knows how many U.S. Silver Eagle coins will be produced for 2010 so now is the best opportunity to secure this modern classic.
**Recommended Purchase**
$32.99 per coin 2010 Silver Eagle

# INVESTOR'S BUSINESS DAILY

## Affidavit of Publication

Name of Publication:   Investor's Business Daily
Address:               12655 Beatrice Street
City, State, Zip:      Los Angeles, CA 90066
Phone #:               310.448.6700
State of:              California
County of:             Los Angeles

I, Robert de Langre for the publisher of **Investor's Business Daily**, published in the city of __Los Angeles__, state of __California__, county of __Los Angeles__ hereby certify that the attached Notice for Apple inc. Securities Litigation Case No. C-06-5208-JF was printed in said publication on the following date:

### Wednesday 12-8-2010

State of California
County of __Los Angeles__

Subscribed and sworn to (or affirmed) before me on this 8th day of December, 2010

by _____, proved to me on the basis of

satisfactory evidence to be the person(s) who appeared before me.

Signature _____ (Seal)



RICHARD C. BRAND II
Commission # 1727106
Notary Public - California
Los Angeles County
My Comm. Expires Feb 25, 2011

# Attachment – B

## Notice and Proof of Claim Package

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Case No. C-06-5208-JF |
| THIS DOCUMENTS RELATES TO:<br>ALL ACTIONS | CLASS ACTION |

# NOTICE OF PROPOSED SETTLEMENT, SETTLEMENT FAIRNESS HEARING, AND MOTION FOR ATTORNEYS' FEES AND EXPENSES

*A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.*
PLEASE READ THIS NOTICE CAREFULLY!

This Notice relates to a proposed settlement of a class action lawsuit (the "Action") filed by the Court-appointed "Lead Plaintiff," the New York City Employees' Retirement System ("NYCERS"), and plaintiffs Martin Vogel and Kenneth Mahoney (together with NYCERS, "Plaintiffs"), against Apple Inc. ("Apple") and the following current or former officers and directors: Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York (together with Apple, "Defendants").

- If you purchased Apple common stock between August 24, 2001, and June 29, 2006, both dates inclusive (the "Class Period"), you may be a "Class Member" and may be eligible for a payment from the proposed settlement described below (the "Settlement"). Payments will be made if the Court approves the Settlement and Plan of Allocation (as defined below) and after any appeals are resolved and completion of claims processing.

- This Notice explains important legal rights you may have. Your legal rights will be affected regardless of whether you do or do not act. These rights, and the deadlines to exercise them, are explained below.

1. **Statement of Plaintiffs' Recovery**: Pursuant to the Settlement, Apple will pay $16.5 million in cash into an interest bearing escrow account (the "Settlement Fund"). Apple also has agreed to implement certain corporate governance measures. The Settlement Fund, less taxes (the "Net Settlement Fund"), will be used to pay the authorized claims of persons and entities that purchased Apple common stock during the Class Period ("Authorized Claimant"). The terms outlined herein are amended from the terms initially presented to the Court on October 7, 2010. Apple's payment obligations under the Settlement have been restructured so that, instead of paying $14 million into the Settlement Fund and donating $2.5 million to the twelve corporate governance programs at universities located throughout the United States, Apple will pay $16.5 million into the Settlement Fund. Any funds remaining in the Net Settlement Fund after payment of Class Members' claims will be donated in accordance with the Plan of Allocation on page 6 to nine corporate governance programs, which were among the twelve programs designated previously.

Plaintiffs' Lead Counsel estimates that owners of approximately 234.8 million shares of Apple common stock may be eligible for potential recovery, with an average per share recovery from the Net Settlement Fund of approximately $0.07. Based on its experience with other cases, Plaintiffs' Lead Counsel believes that the average per share recovery will be greater than $0.07 because typically fewer than 100% of eligible shareholders elect to participate in securities class action settlements. The Plan of Allocation on page 6 has information about an Authorized Claimant's potential recovery and how the Net Settlement Fund will be distributed.

2. **Statement of Potential Outcome of Action**: The parties disagree on both liability and damages and the average amount of damages that would be recoverable if Plaintiffs prevailed. Defendants deny that they are liable to Plaintiffs or the Class and deny that Plaintiffs or the Class have suffered any damage. The issues on which the parties disagree include: (a) whether the complaint's allegations support a federal securities law claim; (b) whether Defendants acted with the requisite state of mind, or scienter; (c) whether Defendants' alleged misstatements or omissions harmed Class Members; (d) whether Defendants' alleged misstatements or omissions were material to investors; and (e) the extent to which factors other than the alleged misstatements or omissions affected (if at all) Apple's stock price during the Class Period.

3. **Statement of Attorneys' Fees and Expenses Sought**: Plaintiffs' Counsel (as defined below) intend to apply for an award of fees incurred by Plaintiffs' Counsel in connection with the Action in the amount of $2,000,000, plus expenses not to exceed $450,000. Of this amount, Plaintiffs' Lead Counsel, the law firm of Grant & Eisenhofer P.A., intends to apply for an award for fees in the amount of $1,533,750, which represents 7.5% of the total economic value of the Settlement, plus out of pocket expenses; the law firm of Stull, Stull & Brody, counsel for plaintiffs in Vogel, et al. v. Apple Inc., et al., Case No. C-08-3123-JF (N.D. Cal.) ("Vogel II"), intends to apply for an award of fees in the amount of $466,250, which represents 2.28% of the total economic value of the Settlement, plus out of pocket expenses. Apple has agreed to pay Plaintiffs' Lead Counsel the amount of reasonable attorneys' fees and expenses as may be awarded by the Court ("Attorneys' Fees and Expenses"). Apple will pay these Attorneys' Fees and Expenses separately, and such payment will not affect the amount of the Net Settlement Fund. The term "total economic value of the Settlement," as used herein, includes all payments Apple has agreed to make under the Settlement, including Apple's payment to establish the Settlement Fund, reimbursement of the costs of administering and distributing the Net Settlement Fund, and payment of Attorneys' Fees and Expenses.

4. **Identification of Attorneys' Representatives**: Questions regarding the Settlement may be directed to Plaintiffs' Lead Counsel: Jay W. Eisenhofer and Michael J. Barry, Grant & Eisenhofer P.A., 1201 N. Market Street, Wilmington, DE 19801, (302) 622-7000.

5. **Reasons for the Settlement.** Plaintiffs believe that the Settlement will provide substantial immediate benefits to the Class. These benefits must be compared to the risk that the Class may recover a lower amount or nothing after a contested trial and possible appeals that are likely to require several years of expensive litigation. Plaintiffs have further considered the uncertain outcome, risks, difficulties, and delays inherent in any litigation and are mindful of the problems of proof and possible defenses to the claims asserted in the Action.

Defendants deny all allegations of wrongdoing or liability whatsoever and maintain that they have meritorious defenses to all claims alleged in the Action. Defendants believe that further litigation would be protracted, burdensome, expensive, and distracting. Defendants have also determined that further litigation would divert resources and attention from other activities that are important to Apple's business and its shareholders' interests.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a Proof of Claim by March 15, 2011.** | The only way to potentially receive a payment from the Settlement. |
| **Exclude yourself from the Class by January 21, 2011.** | Receive no payment from the Settlement. This is the only option that allows you to retain your right to file a separate lawsuit against Defendants related to the claims at issue in the Action. |
| **Object to the Settlement by January 21, 2011.** | Write to the Court explaining why you do not think the Settlement should be approved and, if you wish to attend and speak at the Settlement Fairness Hearing, indicating your intention to do so. |
| **Attend the Settlement Fairness Hearing on February 18, 2011.** | Submit a valid written objection indicating your intention to attend the Settlement Fairness Hearing and speak in Court about the fairness of the Settlement. |
| **Do nothing.** | Receive no payment from the Settlement. Give up your rights. |

## WHAT THIS NOTICE CONTAINS

WHY DID I GET THIS NOTICE? ................................................................................ 3
WHAT IS THIS CASE ABOUT? WHAT HAS HAPPENED SO FAR? ......................................... 3
WHAT RECOVERY DOES THE SETTLEMENT PROVIDE? .................................................. 3
HOW DO I KNOW IF I AM PART OF THIS SETTLEMENT? ................................................ 3
WHY HAVE PLAINTIFFS AGREED TO THE SETTLEMENT? ............................................... 4
WHY HAVE DEFENDANTS AGREED TO THE SETTLEMENT? .............................................. 4
HOW DO I GET A PAYMENT? ................................................................................... 4
WHEN WOULD I GET MY PAYMENT? .......................................................................... 4
HOW MUCH WILL MY PAYMENT BE? .......................................................................... 4
WHAT RIGHTS AM I GIVING UP BY AGREEING TO THE SETTLEMENT? ................................ 4
DO I HAVE A LAWYER IN THIS CASE? ........................................................................ 5
HOW WILL THE LAWYERS BE PAID? .......................................................................... 5
IF I DON'T WANT TO PARTICIPATE IN THE SETTLEMENT, HOW DO I EXCLUDE MYSELF? ........ 5
HOW DO I TELL THE COURT THAT I DO NOT LIKE THE PROPOSED SETTLEMENT? .................. 5
WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? ........ 6
WHAT HAPPENS IF I DO NOTHING AT ALL? ................................................................ 6
PLAN OF ALLOCATION ......................................................................................... 6
CORPORATE REFORM MEASURES ............................................................................. 8
SPECIAL NOTICE TO BROKERS, BANKS AND OTHER NOMINEES ..................................... 8
CAN I SEE THE COURT FILE? WHOM SHOULD I CONTACT IF I HAVE QUESTIONS? ................ 8

## WHY DID I GET THIS NOTICE?

1. You are being sent this Notice because you or someone in your family may have acquired Apple common stock during the Class Period. As a potential Class Member, you have a right to know about the proposed Settlement and your options before the Court decides whether to approve the Settlement.

2. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. This Notice also is intended to inform you of a hearing at which the Court will consider the Settlement, the Plan of Allocation, the application for Attorneys' Fees and Expenses, and other related matters (the "Settlement Fairness Hearing").

**THE ISSUANCE OF THIS NOTICE IS NOT AN EXPRESSION OF THE COURT'S OPINION ON THE MERITS OF ANY CLAIM IN THE LAWSUIT, AND THE COURT STILL HAS TO DECIDE WHETHER TO APPROVE THE SETTLEMENT.**

## WHAT IS THIS CASE ABOUT?  WHAT HAS HAPPENED SO FAR?

3. On August 24, 2006, plaintiffs Martin Vogel and Kenneth Mahoney filed a class action lawsuit alleging federal securities laws violations against Apple and certain other defendants in the U.S. District Court for the Northern District of California, captioned Vogel, et al. v. Jobs, et al., Case No. C-06-5208-JF ("Vogel I").

4. On January 19, 2007, the Court appointed NYCERS as Lead Plaintiff and approved NYCERS's selection of the law firm Grant & Eisenhofer P.A. as Plaintiffs' Lead Counsel.

5. On March 23, 2007, NYCERS filed a consolidated class action complaint (the "Consolidated Complaint"). On November 14, 2007, the Court dismissed the Consolidated Complaint. On December 14, 2007, NYCERS filed a motion to file an amended complaint. On May 14, 2008, the Court denied NYCERS's motion. On June 12, 2008, the Court entered judgment and dismissed NYCERS's claims with prejudice.

6. On June 17, 2008, NYCERS filed a notice of appeal before the U.S. Court of Appeals for the Ninth Circuit (the "Ninth Circuit").

7. On June 27, 2008, plaintiffs Vogel and Mahoney filed another class action lawsuit in the U.S. District Court for the Northern District of California, captioned Vogel, et al. v. Apple Inc., et al., Case No. C-08-3123-JF (Vogel II).

8. On January 28, 2010, the Ninth Circuit in Vogel I affirmed the Court's dismissal of NYCERS's claims in the Consolidated Complaint, but granted NYCERS leave to file its amended complaint.

9. On March 22, 2010, NYCERS filed a First Amended Consolidated Class Action Complaint in Vogel I.

10. On April 8, 2010, the Court entered an order consolidating Vogel I and Vogel II, designating NYCERS as Lead Plaintiff and Grant & Eisenhofer P.A. as Plaintiffs' Lead Counsel for the consolidated action. The consolidated action is captioned In re Apple Inc. Securities Litigation, Case No. C-06-5208-JF.

11. On May 14, 2010, Plaintiffs filed the operative complaint in the Action, the Corrected First Amended Class Action Complaint.

12. Plaintiffs allege that Apple issued false and misleading financial statements regarding the amount of compensation paid to Apple executives and its accounting for certain past stock option grants. These alleged misstatements, Plaintiffs claim, artificially inflated Apple's stock price during the Class Period. Plaintiffs seek money damages for alleged violations of federal securities laws. Defendants deny all allegations of wrongdoing or liability whatsoever and maintain that they have meritorious defenses to each claim.

## WHAT RECOVERY DOES THE SETTLEMENT PROVIDE?

13. The Net Settlement Fund consists of $16.5 million in cash, plus interest, less taxes. Apple has also agreed to implement certain corporate governance measures. Attorneys' Fees and Expenses, notification costs, and costs to administer and distribute the Net Settlement Fund will be paid separately by Apple and will not be deducted from the Net Settlement Fund.

14. Plaintiffs' Lead Counsel estimates that owners of approximately 234.8 million shares of Apple common stock may be eligible for potential recovery, with an average per share recovery from the Net Settlement Fund of approximately $0.07. Based on its experience with other cases, Plaintiffs' Lead Counsel believes that the average per share recovery will be greater than $0.07 because typically fewer than 100% of eligible shareholders elect to participate in securities class action settlements.  The Plan of Allocation on page 6 has information about an Authorized Claimant's potential recovery and how the Net Settlement Fund will be distributed.

## HOW DO I KNOW IF I AM PART OF THIS SETTLEMENT?

15. The Class covered by this Settlement consists of all persons and entities that purchased Apple common stock during the Class Period. Excluded from the Class are Defendants, all current and former directors and officers of Apple, all employees of Apple and/or its subsidiaries during the Class Period, and any family member, trust, company, entity, or affiliate controlled or owned by any of the excluded persons and entities referenced above. Also excluded are any persons and entities that exclude themselves by filing a request for exclusion in accordance with the requirements set forth on page 5 ("If I Do Not Want to Participate in the Settlement, How Do I Exclude Myself?").

16. Check your investment records or contact your broker to determine whether you purchased Apple common stock during the Class Period. If you sold Apple common stock during the Class Period, or if one of your mutual funds purchased Apple common stock during the Class Period, that alone does not make you a Class Member.

17. If you are still not sure whether you are included, you may call 1-888-760-4869 or visit www.AppleSecuritiesSettlement.com. You also may fill out and return the Proof of Claim as described in Sections 20, 23 – 25 & 43 – 53 below to determine whether you qualify.

**RECEIPT OF THIS NOTICE DOES NOT NECESSARILY MEAN YOU ARE A CLASS MEMBER OR ARE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT. IF YOU WISH TO PARTICIPATE IN THE SETTLEMENT, YOU MUST EITHER SUBMIT YOUR COMPLETED AND SIGNED PROOF OF CLAIM ONLINE AT WWW.APPLESECURITIESSETTLEMENT.COM BY NO LATER THAN MARCH 15, 2011, OR SEND IT TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL POSTAGE PRE-PAID POSTMARKED NO LATER THAN MARCH 15, 2011.**

## WHY HAVE PLAINTIFFS AGREED TO THE SETTLEMENT?

18. Plaintiffs believe that the claims alleged in the Action have merit. Nevertheless, Plaintiffs recognize that significant expense and prolonged proceedings will be necessary to prosecute the Action through trial and, potentially, through appeals. Plaintiffs have also taken into account the uncertain outcome, risks, difficulties and delays inherent in any litigation. Plaintiffs are mindful of the problems of proof and possible defenses to the claims asserted in the Action. Based on a careful evaluation, Plaintiffs and Plaintiffs' Counsel have determined that the terms and conditions of the Settlement are fair, reasonable and adequate, and in the best interests of the Class.

## WHY HAVE DEFENDANTS AGREED TO THE SETTLEMENT?

19. Defendants deny all allegations of wrongdoing or liability whatsoever and maintain they have meritorious defenses to each claim. Defendants also deny that Plaintiffs or the Class have suffered any harm as a result of the alleged conduct. In particular, Defendants deny that any harm allegedly suffered by Plaintiffs or the Class was caused by any misrepresentations or omissions or that Apple's share price was artificially inflated by reason of any alleged misrepresentations or omissions. Nonetheless, Defendants believe that further litigation would be protracted, burdensome, expensive, and distracting. Defendants have also determined that further litigation would divert resources and attention from other activities that are important to Apple's business and its shareholders' interests.

## HOW DO I GET A PAYMENT?

20. To qualify for a payment, you must submit the Proof of Claim that accompanies this Notice. You may also get a Proof of Claim by calling 1-888-760-4869 or visiting www.AppleSecuritiesSettlement.com. Read the instructions carefully, fill out the Proof of Claim, include all the documents it asks for, sign it, and either submit it online at www.AppleSecuritiesSettlement.com no later than March 15, 2011, or send it by first-class mail postage pre-paid postmarked no later than March 15, 2011.

21. Each Class Member who submits a Proof of Claim shall be deemed to have submitted to the jurisdiction of the U.S. District Court for the Northern District of California with respect to that Proof of Claim.

## WHEN WOULD I GET MY PAYMENT?

22. The Court will hold a "Settlement Fairness Hearing" on February 18, 2011. The Settlement Fairness Hearing is described in more detail on page 6. If the Court approves the Settlement, there may be appeals. It is uncertain whether the appeals (if any) will be resolved, and resolving them can take time, perhaps more than a year. It also takes time for all Proofs of Claim to be processed. After any appeals are resolved and all Proofs of Claim are processed, Authorized Claimants will be paid. Please be patient.

## HOW MUCH WILL MY PAYMENT BE?

23. You can calculate your "Recognized Claim" in accordance with the Plan of Allocation on page 6.

24. If you qualify for a payment, the amount will depend on a number of factors, including (i) when during the Class Period you purchased shares of Apple common stock; (ii) the purchase price paid for the shares; (iii) whether the shares were held at the end of the Class Period or sold during the Class Period; (iv) if sold, when the shares were sold and the amount received; and (v) the number of Recognized Claims (discussed below).

25. The Court may disallow or adjust any Class Member's claim. The Court also may modify the Plan of Allocation without further notice to the Class. Payments pursuant to the Plan of Allocation, as approved by the Court, will be conclusive against all Authorized Claimants. No person shall have any claim against Defendants, Plaintiffs' Counsel, the Claims Administrator, or other agent designated by Plaintiffs' Lead Counsel based on the distributions made substantially in accordance with any Settlement and/or Plan of Allocation approved by the Court.

## WHAT RIGHTS AM I GIVING UP BY AGREEING TO THE SETTLEMENT?

26. If the Settlement is approved, the Court will enter an Order and Final Judgment dismissing the Action with prejudice. The Order and Final Judgment shall, upon the Effective Date, fully, finally, and forever resolve, discharge and settle all Released Claims on the merits and with prejudice. Except for those Class Members who validly and timely request to be excluded from the Class, the Order and Final Judgment will also forever bar and enjoin Class Members and the Released Parties from instituting, continuing, or prosecuting any action asserting any Released Claims against any Released Party.

27. The precise definitions of the capitalized terms in the paragraph above are in the Amended Stipulation and Agreement of Settlement dated as of November 12, 2010, which is available at www.AppleSecuritiesSettlement.com. In general, the term Released Claims includes, but is not limited to, all claims that were or could be asserted against Apple and its current and former officers and directors by Plaintiffs and any Class Member based on the allegations in this Action or similar proceedings. The term Released Parties generally includes, but is not limited to, Plaintiffs, Apple, and Apple's current and former officers and directors.

28. The Court has ordered that the law firm of Grant & Eisenhofer P.A., in Wilmington, Delaware, will represent the interests of all Class Members. You will not be separately charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## HOW WILL THE LAWYERS BE PAID?

29. On January 7, 2011, or at such other time as the Court may direct, "Plaintiffs' Counsel" intend to apply for an award of fees incurred by Plaintiffs' Counsel in connection with the Action in the amount of $2,000,000, plus expenses not to exceed $450,000. Of this amount, Plaintiffs' Lead Counsel intends to apply for an award for fees in the amount of $1,533,750, which represents 7.5% of the total economic value of the Settlement, plus out of pocket expenses; the law firm of Stull, Stull & Brody, counsel for plaintiffs in Vogel II, intends to apply for an award of fees in the amount of $466,250, which represents 2.28% of the total economic value of the Settlement, plus out of pocket expenses. After it is filed, Plaintiffs' Counsel's application for fees and expenses will be made available at www.AppleSecuritiesSettlement.com. Apple has agreed to pay Plaintiffs' Lead Counsel the amount of reasonable attorneys' fees and expenses as may be awarded by the Court (Attorneys' Fees and Expenses). Apple will pay these Attorneys' Fees and Expenses separately, and such payment will not affect the amount of the Net Settlement Fund. The term "total economic value of the Settlement," as used herein, includes all payments Apple has agreed to make under the Settlement, including Apple's payment to establish the Settlement Fund, reimbursement of the costs of administering and distributing the Net Settlement Fund, and payment of Attorneys' Fees and Expenses. "Plaintiffs' Counsel" includes Plaintiffs' Lead Counsel, and the law firms of Anderlini & Emerick LLP, Stull, Stull & Brody, and Kantrowitz, Goldhamer & Graifman.

30. The fees requested by Plaintiffs' Counsel will compensate them for their efforts in achieving the Settlement for the benefit of the Class, and for their risk in undertaking this representation on a contingency basis.

**THE ISSUANCE OF THIS NOTICE IS NOT AN EXPRESSION OF THE COURT'S OPINION ON ANY AWARD FOR ATTORNEYS' FEES AND EXPENSES.**

## IF I DON'T WANT TO PARTICIPATE IN THE SETTLEMENT, HOW DO I EXCLUDE MYSELF?

31. If the Court approves the Settlement and enters an Order and Final Judgment, each Class Member will be bound by the terms thereof unless such person or entity sends a copy of a written request for exclusion from the Class by first-class mail postage pre-paid, postmarked no later than January 21, 2011, to (1) Claims Administrator, In re Apple Inc. Securities Litigation, PO Box 6809, Portland, OR, 97228-6809, and (2) the following counsel:

| Plaintiffs' Lead Counsel: | Counsel for Apple: |
|---|---|
| Jay W. Eisenhofer | George A. Riley |
| Michael J. Barry | O'Melveny & Myers LLP |
| Grant & Eisenhofer P.A. | Two Embarcadero Ctr., 28th Floor |
| 1201 N. Market Street | San Francisco, CA 94111 |
| Wilmington, DE 19801 | |

32. To be valid, a written request for exclusion MUST (i) include your name, address, telephone number, and your signature, (ii) state that you "request exclusion from the Class in In re Apple Inc. Securities Litigation, Case No. C-06-5208-JF"; and (iii) identify the date(s), price(s), and number of shares of all purchases and sales of Apple common stock you made during the Class Period. Requests for exclusion will not be accepted if the requests do not include all of this required information or if the requests are not sent in accordance with Section 31 above, unless otherwise ordered by the Court.

33. If you are a Class Member and you, or someone acting on your behalf, does not submit a timely and valid written request for exclusion, and the Court approves the Settlement and enters an Order and Final Judgment, you will be bound by the terms thereof.

34. If you are a Class Member and you, or someone acting on your behalf, submits a valid written request to be excluded from the Class, you will not receive any benefits provided for in the Settlement.

## HOW DO I TELL THE COURT THAT I DO NOT LIKE THE PROPOSED SETTLEMENT?

35. If you are a Class Member, you may object to the Settlement or any of its terms, the Plan of Allocation, and/or the application for Attorneys' Fees and Expenses. You may write to the Court setting out your objection. You may give reasons why you think the Court should not approve the Settlement terms or arrangements.

36. To object, you must send a signed letter stating you object to the Settlement. To be valid, an objection MUST (i) include your name, address, telephone number, and signature; (ii) identify the date(s), price(s), and number of shares of all purchases and sales of Apple common stock you made during the Class Period; and (iii) state the reason(s) why you object. If you wish to attend the Settlement Fairness Hearing and speak in opposition to the Settlement, the Plan of Allocation, and/or the application for Attorneys' Fees and Expenses, you must also state in your written objection that you intend to appear at the Settlement Fairness Hearing. The objection may include any other documents and writings you want the Court to consider. Your objection must be filed with the Clerk's Office at the U.S. District Court for the Northern District of California, 280 South 1st Street, San Jose, CA, 95113, by no later than January 21, 2011, and served on the same day by first-class mail postage pre-paid to each of the following counsel:

Plaintiffs' Lead Counsel
Jay W. Eisenhofer
Michael J. Barry
Grant & Eisenhofer P.A.
1201 N. Market Street
Wilmington, DE 19801

George A. Riley
O'Melveny & Myers LLP
Two Embarcadero Ctr., 28th Floor
San Francisco, CA 94111

Only valid objection(s) submitted in this manner will be considered at the Settlement Fairness Hearing, unless the Court orders otherwise.

37. Your attendance at the Settlement Fairness Hearing is not necessary to have your written objection considered by the Court. However, if you wish to attend the Settlement Fairness Hearing and speak in opposition to the Settlement, the Plan of Allocation, and/or the application for Attorneys' Fees and Expenses, you must state so in your written objection, filed and served as specified in Section 36 above. You may appear in person or arrange, at your own expense, for a lawyer to represent you at the Settlement Fairness Hearing.

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE SETTLEMENT, THE PLAN OF ALLOCATION, AND THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES.**

## WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

38. The Court will hold the Settlement Fairness Hearing at 9:00 a.m. on February 18, 2011, at the U.S. District Court for the Northern District of California, 280 South 1st Street, San Jose, CA, 95113. At this hearing, the Court will:

   a. Finally determine whether this Action satisfies the applicable prerequisites for class action treatment under Rules 23(a) and (b) of the Federal Rules of Civil Procedure;
   b. Determine whether the Settlement is fair, reasonable, and adequate;
   c. Determine whether an Order and Final Judgment should be entered, dismissing the Action with prejudice;
   d. Determine whether the release of the Released Claims should be provided to the Released Parties;
   e. Determine whether the Plan of Allocation for the distribution of the Net Settlement Fund is fair and reasonable; and
   f. Consider the application for Attorneys' Fees and Expenses.

39. The Settlement Fairness Hearing may be delayed from time to time by the Court without further written notice to the Class. If you intend to attend the Settlement Fairness Hearing, you should confirm the date and time with Plaintiffs' Lead Counsel.

40. You cannot speak at the Settlement Fairness Hearing if you previously excluded yourself from the Class (as provided in Section 31 above), or if you have not provided notice in your written objection(s) of your intention to speak at the Settlement Fairness Hearing in accordance with the procedures set forth in Section 36 above.

## WHAT HAPPENS IF I DO NOTHING AT ALL?

41. If you do nothing, you will get no money from the Settlement. You must submit a valid and timely Proof of Claim in order to possibly share in the Net Settlement Fund.

42. As discussed in Section 26 above, the Order and Final Judgment approving the Settlement will dismiss the Action with prejudice and fully, finally, and forever resolve, discharge and settle all Released Claims on the merits and with prejudice. Unless you validly and timely exclude yourself from the Class, you will be forever barred and enjoined from instituting, continuing, or prosecuting any action asserting any Released Claims against any Released Party.

## PLAN OF ALLOCATION

### GENERAL PROVISIONS

43. The Net Settlement Fund shall be distributed to Authorized Claimants.

44. The Claims Administrator shall determine each Authorized Claimant's pro rata share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim." The Recognized Claim formula is not intended to be an estimate of the amount of what a Class Member might have been able to recover after a trial. Nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionately allocated to Authorized Claimants.

45. Federal securities law provides that Authorized Claimants who sold all of their shares of Apple common stock on or before June 29, 2006, are not eligible for any recovery.

46. Federal securities law also limits the amount of potential recovery for Authorized Claimants who held their shares of Apple common stock after June 29, 2006. The limitation is based on the mean trading price of Apple common stock over or within the 90-day period after June 29, 2006. The mean trading price of Apple common stock over the 90-day period between June 30, 2006, and September 27, 2006, both dates inclusive, is $65.71. The mean trading price of Apple common stock on each trading day between June 30, 2006, and September 27, 2006, is specified in Section 52. below. Authorized Claimants who held their shares of Apple common stock after June 29, 2006, are not eligible for any recovery if they purchased the shares at a price (adjusted for stock splits) equal to or below the applicable mean trading price. Authorized Claimants who held their shares of Apple common stock after June 29, 2006, are eligible for potential recovery if they purchased the shares at a price (adjusted for stock splits) greater than the applicable mean trading price.

47. The Court has...

48. Class Members who do not submit a valid Proof of Claim will not share in the Settlement. Except for those Class Members who validly and timely request to be excluded from the Class, Class Members who do not submit a valid Proof of Claim will nevertheless be bound by the Settlement and the Order and Final Judgment entered by the Court.

49. Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement. If any funds remain in the Net Settlement Fund by reason of un-cashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be re-distributed to Class Members who have cashed their initial distributions, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution, up to a maximum distribution of $1.70 per share (the difference between the closing price of Apple common stock on June 29, 2006 ($58.97) and June 30, 2006 ($57.27)). If after six months after such re-distribution any funds shall remain in the Net Settlement Fund, then such balance shall be contributed in nine equal payments to the following nine corporate governance programs:

**Baruch College, City University of New York**
*Robert Zicklin Center for Corporate Integrity*

**Stanford Law School & the Graduate School of Business**
*Rock Center for Corporate Governance*

**Indiana University, Kelly School of Business**
*Institute for Corporate Governance*

**University of Texas, Dallas, School of Management**
*Institute for Excellence in Corporate Governance*

**Kennesaw State University College of Business**
*Corporate Governance Center*

**Vanderbilt University Law School**
*Law & Business Program*

**Northwestern University, Kellogg School of Management**
*Corporate Governance Program*

**Yale School of Management**
*Millstein Center for Corporate Governance & Performance*

**San Diego State University**
*Corporate Governance Institute*

50. Plaintiffs, Defendants, their respective counsel, and all other Released Parties, shall have no responsibility for or liability whatsoever for the investment or distribution of the Net Settlement Fund; the determination, administration, calculation, or payment of any Proof of Claim or non-performance of the Claims Administrator; or the payment or withholding of taxes owed by the Net Settlement Fund or any losses incurred in connection therewith.

## CALCULATION OF RECOGNIZED CLAIM

51. For purposes of calculating a Recognized Claim, the following terms shall apply:
    a. The date of the purchase or sale of Apple common stock is the trade date, not the settlement date.
    b. The first-in, first-out basis will be applied to both purchases and sales.
    c. The price paid or received shall exclude all commissions, taxes, and fees.
    d. Shares originally sold short shall have a Recognized Claim of zero ($0.00).
    e. No cash payment will be made on a Recognized Claim where the distribution amount is less than $5.00.

52. Recognized Claims shall be calculated as follows:
    a. If an Authorized Claimant purchased shares of Apple common stock during the Class Period and sold such shares on or before June 29, 2006, then the Recognized Claim for such shares shall be zero ($0.00).
    b. If an Authorized Claimant purchased shares of Apple common stock during the Class Period and sold such shares between June 30, 2006, and September 27, 2006, both dates inclusive, then:
        i. For shares purchased at a price (adjusted for stock splits) equal to or less than the applicable mean trading price on the date on which such shares were sold (the "Sell Date"), the Recognized Claim shall be zero ($0.00):

| Sell Date | Mean Trading Price | Sell Date | Mean Trading Price | Sell Date | Mean Trading Price | Sell Date | Mean Trading Price | Sell Date | Mean Trading Price |
|---|---|---|---|---|---|---|---|---|---|
| 6/30/06 | $57.27 | 7/20/06 | $54.98 | 8/8/06 | $59.99 | 8/24/06 | $61.90 | 9/12/06 | $63.75 |
| 7/3/06 | $57.61 | 7/21/06 | $55.36 | 8/9/06 | $60.12 | 8/25/06 | $62.07 | 9/13/06 | $63.96 |
| 7/5/06 | $57.40 | 7/24/06 | $55.74 | 8/10/06 | $60.26 | 8/28/06 | $62.19 | 9/14/06 | $64.15 |
| 7/6/06 | $56.99 | 7/25/06 | $56.10 | 8/11/06 | $60.37 | 8/29/06 | $62.29 | 9/15/06 | $64.33 |
| 7/7/06 | $56.67 | 7/26/06 | $56.54 | 8/14/06 | $60.48 | 8/30/06 | $62.40 | 9/18/06 | $64.51 |
| 7/10/06 | $56.39 | 7/27/06 | $56.90 | 8/15/06 | $60.67 | 8/31/06 | $62.53 | 9/19/06 | $64.67 |
| 7/11/06 | $56.29 | 7/28/06 | $57.33 | 8/16/06 | $60.89 | 9/1/06 | $62.66 | 9/20/06 | $64.86 |
| 7/12/06 | $55.87 | 7/31/06 | $57.84 | 8/17/06 | $61.09 | 9/5/06 | $62.85 | 9/21/06 | $65.03 |
| 7/13/06 | $55.47 | 8/1/06 | $58.26 | 8/18/06 | $61.28 | 9/6/06 | $63.00 | 9/22/06 | $65.16 |
| 7/14/06 | $54.99 | 8/2/06 | $58.69 | 8/21/06 | $61.43 | 9/7/06 | $63.21 | 9/25/06 | $65.34 |
| 7/17/06 | $54.75 | 8/3/06 | $59.15 | 8/22/06 | $61.60 | 9/8/06 | $63.40 | 9/26/06 | $65.54 |
| 7/18/06 | $54.59 | 8/4/06 | $59.51 | 8/23/06 | $61.75 | 9/11/06 | $63.58 | 9/27/06 | $65.71 |
| 7/19/06 | $54.56 | 8/7/06 | $59.81 | | | | | | |

    ii.  For shares purchased at a price (adjusted for stock splits) greater than trading price on the Sell Date, the Recognized Claim shall be the lesser of (a) $1.70 per share or (b) the difference between the purchase price (adjusted for stock splits) and the applicable mean trading price on the Sell Date.

  c.  If an Authorized Claimant purchased shares of Apple common stock during the Class Period and such shares were still held as of the close of trading on September 27, 2006, then:

    i.  For shares purchased at a price (adjusted for stock splits) equal to or less than the mean trading price of Apple common stock over the 90-day period between June 30, 2006, and September 27, 2006 ($65.71), the Recognized Claim shall be zero ($0.00).

    ii.  For shares purchased at a price (adjusted for stock splits) greater than the mean trading price of Apple common stock over the 90-day period between June 30, 2006, and September 27, 2006 ($65.71), the Recognized Claim shall be the lesser of (a) $1.70 per share or (b) the difference between the purchase price (adjusted for stock splits) and $65.71.

53. Example calculations of the Recognized Claim for Authorized Claimants may be viewed at www.AppleSecuritiesSettlement.com.

## CORPORATE REFORM MEASURES

54. Pursuant to the Settlement, Apple has agreed to implement corporate governance measures, including amending its Insider Trading Policy, corporate Bylaws, and the charter of the Board's Compensation Committee. Apple has also agreed to extend to at least May 1, 2013, the term of measures it adopted in 2008 after settling derivative litigation relating to its past stock option practices. These measures include: (1) implementing an Equity Award Grant Practices Policy; (2) appointing a Trading Compliance Committee; (3) amending the charter of the Board's Compensation Committee; (4) amending its Corporate Governance Guidelines; (5) implementing a Corporate Minutes Procedure; and (6) implementing a Unanimous Written Consent Procedure. The details of these measures are set forth in the Stipulation.

## SPECIAL NOTICE TO BROKERS, BANKS AND OTHER NOMINEES

55. Financial institutions and other nominees who purchased or sold Apple common stock on behalf of beneficial owners are directed within fourteen (14) days of their receipt of this Notice to: (a) send a copy of this Notice and Proof of Claim to such beneficial owners; or (b) provide contact information for such beneficial owners to the Claims Administrator, preferably in a Microsoft Excel data table setting forth: (a) title/registration, (b) street address, (c) city/state/zip. Any nominee may also submit a Master Proof of Claim on behalf of multiple clients who are beneficial owners of Apple common stock. The Master Proof of Claim and related instructions are posted on the "Nominees" page at www.AppleSecuritiesSettlement.com. Master Proofs of Claim must be completed and either submitted online at www.AppleSecuritiesSettlement.com by no later than March 15, 2011, or sent by first-class mail postage pre-paid postmarked no later than March 15, 2011. Questions about the Settlement and requests for copies of the documents should be directed to the Claims Administrator at 1-888-760-4869.

## CAN I SEE THE COURT FILE? WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

56. For additional details about the Action and the Settlement, you may visit www.AppleSecuritiesSettlement.com and/or inspect the papers on file in the Action, including the Stipulation, during regular office hours at the Office of the Clerk, U.S. District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113.

57. Any inquiries concerning this Notice or the Proof of Claim may be directed to:

<u>Claims Administrator</u>

In re Apple Inc. Securities Litigation
PO Box 6809
Portland, OR 97228-6809
1-888-760-4869
www.AppleSecuritiesSettlement.com

<u>Plaintiffs' Lead Counsel</u>

Jay W. Eisenhofer
Michael J. Barry
Grant & Eisenhofer P.A.
1201 N. Market Street
Wilmington, DE 19801

**DO NOT CALL OR WRITE THE COURT OR THE OFFICE OF THE CLERK OF THE COURT REGARDING THIS NOTICE**

Dated: November 22, 2010

By Order of the Clerk of the Court
U.S. District Court for the Northern District of California

# PROOF OF CLAIM

*Type or print in the boxes below in CAPITAL LETTERS; do not use red ink, pencil or staples.*

## CLAIMANT INFORMATION

Beneficial Owner's First Name

Beneficial Owner's Last Name *as it appears on your brokerage statement*

Joint Beneficial Owner's First Name

Joint Beneficial Owner's Last Name *as it appears on your brokerage statement*

Mailing Address, including apartment, unit or box number

City

State

Zip Code

Foreign Province

Foreign Country

Social Security Number          **OR**          Taxpayer Identification Number

Primary Telephone Number

Email Address

Name of Custodian *if applicable*

## CLAIMANT TYPE

*Specify one*
☐ Individual(s)   ☐ Corporation   ☐ UGMA Custodian   ☐ IRA, Keogh (specify) _____

☐ Partnership   ☐ Estate   ☐ Trust   ☐ Other _____

*Individual(s),* answer the following. If either question applies, state the position(s) held and dates of employment or affiliation.

☐ Yes   ☐ No   Were you an employee of Apple Inc. at any time from August 24, 2001 through June 29, 2006, both dates inclusive?

☐ Yes   ☐ No   Were you or are you an officer or director of Apple Inc.?

Positions(s)

Dates of Employment / Affiliation
M M – Y Y to M M – Y Y

## CLAIMANT CERTIFICATION

1. I have read and understand the contents of the Notice and the Proof of Claim.
2. I purchased share(s) of Apple common stock between August 24, 2001, and June 29, 2006, both dates inclusive.
3. I (a) am not a Defendant, (b) am not a current or former director or officer of Apple, (c) was not an employee of Apple and/or its subsidiaries during the Class Period, and (d) am not a family member, trust, company, entity, or affiliate controlled or owned by any of those categories of persons or entities. I also have not filed a request to be excluded from the Class and do not know of any request to be excluded from the Class that was filed on my behalf.
4. I want to participate in the Settlement described in the Notice, and I agree to the terms and conditions thereof.
5. I have attached copies of sufficient supporting documentation for all transactions listed in the Schedule of Transactions in Apple Common Stock, in accordance with the instructions in this Proof of Claim and the Notice.
6. I understand and acknowledge that the information contained in this Proof of Claim is subject to verification by the Claims Administrator and the Court. I agree to furnish such additional information with respect to this Proof of Claim as the Claims Administrator or the Court may require.
7. I submit to the jurisdiction of the United States District Court for the Northern District of California with respect to this Proof of Claim. I understand that this Proof of Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to my status as a Class Member and the validity and amount of this Proof of Claim.
8. I agree to be bound by the Orders of this Court and the Court's summary determination of the validity and amount of this Proof of Claim.
9. I am NOT subject to backup withholding under the provisions of Section 3406(a)(1)(c) of the Internal Revenue Code. Note: If you have been notified by the Internal Revenue Service (IRS) that you are subject to backup withholding, please strike out the word "NOT."
10. I understand and acknowledge that if the Settlement is approved, the Court will enter an Order and Final Judgment dismissing the Action with prejudice. I further understand and acknowledge that, on and after the Effective Date, without further action, and for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, (a) all Released Claims shall be fully, finally, and forever resolved, discharged and settled on the merits and with prejudice, and (b) I will be forever barred and enjoined from instituting, continuing, or prosecuting any action asserting any Released Claims against any Released Party.
11. I warrant and represent that I am authorized to execute and deliver this Proof of Claim.

**I/we certify under penalty of perjury under the laws of the United States of America that the foregoing information and the supporting documents attached hereto are true, correct, and complete to the best of my/our knowledge, information, and belief.**

Claimant/Beneficial Owner   Joint Claimant/Joint Beneficial Owner   Person Signing on Behalf of Claimant   Date Signed

Print Your Name   Print Your Name   Print Your Name & Capacity *Executor, President, Custodian, etc.*

**You must read and sign the Claimant Certification of each Proof of Claim submitted.**
**Failure to sign the Claimant Certification may result in a delay in processing your claim or the rejection of your claim.**

# SCHEDULE OF TRANSACTIONS IN APPLE COMMON STOCK

*Type or print in the boxes below in CAPITAL LETTERS; do not use red ink, pencil or staples.  <u>All shares must be documented.</u>*

1. The total number of shares of Apple common stock owned at the close of trading on August 23, 2001

2. For every purchase of Apple common stock from August 24, 2001 to June 29, 2006, both dates inclusive, provide:

| Trade Date<br>*List Chronologically*<br>MM · DD · YY | Number of Shares Purchased | Price per Share<br>*Excluding commissions, taxes and fees* | Documentation Attached |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

3. The total number of shares of Apple common stock purchased from June 30, 2006 to September 27, 2006, both dates inclusive

4. Please indicate the number of shares, if any, received from the stock split on February 28, 2005

5. For every sale of Apple common stock from August 24, 2001 to September 27, 2006, both dates inclusive, provide:

| Trade Date<br>*List Chronologically*<br>MM · DD · YY | Number of Shares Sold | Price per Share<br>*Excluding commissions, taxes and fees* | Documentation Attached |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

5. The total number of shares of Apple common stock owned at the close of trading on September 27, 2006

The **Trade Date** for the purchase or sale of Apple common stock is the date on which the actual trade order was made, not the date on which the funds were transferred in exchange for the shares, also known as the *settlement date*, which generally occurs later.

The **Price per Share** paid or received should exclude all commissions, taxes and fees.

You are required to attach copies of documentation sufficient to verify all identified transactions; documentation may be photocopies of brokerage confirmation slips or monthly statements. If you do not possess such documents, obtain copies or similar documentation from your broker or financial advisor. Failure to supply documentation could delay verification or may result in rejection of your claim.

If your trading activity during the Class Period exceeded fifty (50) transactions, you must provide all required purchase and sale information in an electronic file. For a copy of instructions and the parameters concerning electronic submissions, contact the Claims Administrator toll-free at 1-888-760-4869 or at www.AppleSecuritiesSettlement.com.

If you need additional space, attach separate, numbered sheets with the information provided in the same format as above; print your name and Social Security or Taxpayer Identification Number at the top of each additional sheet.

**PROOF OF CLAIM**, Page 2 of 2

# PROOF OF CLAIM INSTRUCTIONS

1.  If you purchased common stock of Apple Inc. ("Apple") between August 24, 2001, and June 29, 2006, both dates inclusive (the "Class Period"), you are a member of the Class in this Action and may be entitled to share in the Settlement. Excluded from the Class are Defendants, all current and former directors and officers of Apple, all employees of Apple and/or its subsidiaries during the Class Period, and any family member, trust, company, entity, or affiliate controlled or owned by any of the excluded persons and entities referenced above. Also excluded are persons and entities that exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice of Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Expenses (the "Notice").

2.  It is important that you read and understand the Notice that accompanies this Proof of Claim. The Notice describes the proposed Settlement, how Class Members are affected by it, and how the Net Settlement Fund will be distributed, if the Settlement is approved by the Court. The Notice also contains the definitions of many of the terms (which are indicated by initial capital letters) used in this Proof of Claim. By signing and submitting this Proof of Claim, you will be certifying that you have read and understood the Notice.

3.  **TO PARTICIPATE IN THE SETTLEMENT, YOU MUST EITHER SUBMIT YOUR COMPLETED AND SIGNED PROOF OF CLAIM ONLINE AT WWW.APPLESECURITIESSETTLEMENT.COM BY NO LATER THAN MARCH 15, 2011, OR SEND IT BY FIRST-CLASS MAIL POSTAGE PRE-PAID POSTMARKED NO LATER THAN MARCH 15, 2011, ADDRESSED TO THE CLAIMS ADMINISTRATOR AT:**

    > In re Apple Inc. Securities Litigation
    > P.O. Box 6809
    > Portland, OR 97228-6809

4.  If you fail to submit a timely, properly addressed, and completed Proof of Claim, you will be forever barred from receiving any payments pursuant to the Settlement, but you will nevertheless be bound by any judgment entered in this Action.

5.  Submission of this Proof of Claim does not ensure that you will share in the proceeds of the Settlement Fund. Distributions from the Settlement Fund are governed by the Plan of Allocation that is described in the Notice and is subject to the Court's approval.

6.  If you are not a Class Member, or if you, or someone acting on your behalf, file(s) a request for exclusion from the Class as set forth in the Notice, please do not submit a Proof of Claim.

7.  No cash payment will be made on a Recognized Claim where the distribution amount is less than $5.

8.  If you have questions or need assistance in filling out this Proof of Claim, please contact the Claims Administrator at the address above, toll-free at 1-888-760-4869, or at the website: www.AppleSecuritiesSettlement.com.

9.  This Proof of Claim must be completed by the actual owner ("Beneficial Owner"), or the legal representative of the Beneficial Owner, of Apple common stock upon which this Proof of Claim is based.

10. If you are an individual Beneficial Owner (as opposed to an entity Beneficial Owner), you must complete a separate Proof of Claim in each of the following situations:

    a.  If you own(ed) the share(s) by yourself, list your name as the "Beneficial Owner's Name"; provide your address, other contact information, and your social security number; select the "Individual(s)" box; and check the appropriate box(es) regarding any association with Apple.

    b.  If you own(ed) the shares(s) jointly with someone else, list your name as the "Beneficial Owner's Name"; list the co-owner's name as the "Joint Beneficial Owner's Name"; provide your address, other contact information, and your social security number; select the "Individual(s)" box; and check the appropriate box(es) regarding any association with Apple. Note that all Joint Beneficial Owners must sign the Proof of Claim.

    c.  If you own(ed) the share(s) in an IRA, Keogh, or UGMA custodial account, list your name as the "Beneficial Owner's Name"; provide your address, other contact information, and your social security number; list the name of the custodian of your IRA, Keogh, or UGMA account; select the "UGMA Custodian" or "IRA, Keogh" box; and check the appropriate box(es) regarding any association with Apple.

11. If the Beneficial Owner of the share(s) is an entity (e.g., a corporation, trust, estate, etc.), you should complete one Proof of Claim for the entity. List the name of the entity as the "Beneficial Owner's Name"; provide the address, other contact information, and taxpayer identification number for the entity; and select the appropriate box(es) to describe the type of entity. Note that you must submit a separate Proof of Claim for each entity.

12. If a legal representative of the Beneficial Owner(s), such as an agent, executor, administrator, guardian, conservator, custodian or trustee, completes the Proof of Claim, that representative must (i) identify the Beneficial Owner(s) represented by name, address, telephone number, Social Security or Tax Identification Number; (ii) expressly state the capacity in which the representative is acting on behalf of the Beneficial Owner(s); and (iii) provide proof of authority to act on behalf of the Beneficial Owner(s) (e.g., power of attorney, currently effective letter testamentary, letter of administration).

13. Attention nominees (banks, brokers, financial institutions): Any nominee may submit a Master Proof of Claim on behalf of multiple clients who are beneficial owners of Apple common stock. The Master Proof of Claim and related instructions are posted on the "Nominees" page at www.AppleSecuritiesSettlement.com. Master Proofs of Claim must be completed and either submitted online at www.AppleSecuritiesSettlement.com by no later than March 15, 2011, or sent by first-class mail postage pre-paid postmarked no later than March 15, 2011.

**Claims Administrator**
**In re Apple Inc. Securities Litigation**
**P.O. Box 6809**
**Portland, OR 97228-6809**

---

## REMINDER CHECKLIST

*CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. PLEASE BE PATIENT.*

1. Please sign the Proof of Claim. If you are submitting the Proof of Claim on behalf of Joint Beneficial Owners, all Joint Beneficial Owners must sign.

2. Please do not send originals of securities certificates. Remember to attach only copies of supporting documents, including documentation showing opening and closing balances and transactions in Apple common stock, as set forth in the Schedule of Transactions on page 2.

3. If your address changes in the future, or if these documents were sent to an old or incorrect address, please send us written notification of your new address.

4. Please keep a copy for your records of your completed Proof of Claim and all documentation submitted.

5. You will not receive confirmation that your Proof of Claim has been received, unless you send it via Certified Mail, Return Receipt Requested, or by some other means that provides you with proof of receipt. You will bear all risks of delay or non-delivery of your claim.

6. **If you have any questions or concerns regarding your claim, contact the Claims Administrator at:**

Claims Administrator
In re Apple Inc. Securities Litigation
P.O. Box 6809
Portland, OR 97228-6809
1-888-760-4869
www.AppleSecuritiesSettlement.com

**To participate in the settlement, you must either submit your completed and signed Proof of Claim online at www.AppleSecuritiesSettlement.com by no later than March 15, 2011, or send it to the address above by first-class mail postage pre-paid postmarked no later than March 15, 2011.**

Exhibit C

JAY W. EISENHOFER (*admitted pro hac vice*)
MICHAEL J. BARRY (*admitted pro hac vice*)
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, Delaware 19801
Telephone:   (302) 622-7000
Facsimile:   (302) 622-7100
E-Mail:      jeisenhofer@gelaw.com
             mbarry@gelaw.com

*Attorneys for Lead Plaintiff New York City
Employees' Retirement System*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | CASE NO. C-06-05208-JF<br><br>CLASS ACTION<br><br>**DECLARATION OF MICHAEL J. BARRY IN SUPPORT OF LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES FILED ON BEHALF OF GRANT & EISENHOFER P.A.**<br><br>Date:        February 18, 2011<br>Time:         9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:       Hon. Jeremy Fogel |

I, MICHAEL J. BARRY, hereby declare as follows:

1.      I am a director of Grant & Eisenhofer P.A. ("G&E"), counsel to the New York City Employees' Retirement System ("NYCERS" or "Lead Plaintiff"), and the Court-appointed Lead Counsel for the Class in the above-captioned action (the "Action"). I have personal knowledge of the matters set forth below based on my active participation in all aspects of the prosecution and settlement of this Action. I submit this declaration in support of the proposed Settlement that will resolve all the claims in this Action as against Defendants Apple Inc. ("Apple" or the "Company"), and Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York (the "Individual Defendants" and, together with Apple, the "Defendants").

2.      My firm was appointed as Co-Lead Counsel in the action. In this capacity, my firm performed the tasks performed in the accompanying Declaration Of Michael J. Barry In Support Of Motion For Final Approval Of Settlement And Plan Of Allocation And Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses (the "Barry Decl.").

3.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in this action and performed the tasks detailed in the Barry Declaration, and the lodestar calculation based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court.

4.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation.

5.      The total number of hours expended on this litigation by my firm through January 7, 2011, is 2,798.20. The total lodestar for my firm is $1,531,935.50.

6.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.      As detailed in Exhibit 2, my firm has incurred a total of $350,910.70 in paid unreimbursed expenses in connection with the prosecution of the action.

8.      The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

9.      With respect to the standing of my firm, attached hereto as Exhibit 3 is a resume of my firm.

I declare, under penalty of perjury, that the foregoing facts are true and correct. Executed on January 7, 2011.


BY:    _/s/ Michael J. Barry___
       MICHAEL J. BARRY

Exhibit C-1

**Apple Inc. Securities Litigation**

**Through January 7, 2011**

| Name | Hours | Rate | Lodestar |
|------|------|------|------|
| Jay W. Eisenhofer (Partner) | 204.00 | $ 845.00 | $ 172,380.00 |
| Stuart M. Grant (Partner) | 1.10 | $ 845.00 | $ 929.50 |
| Geoffrey C. Jarvis (Director) | 0.70 | $ 750.00 | $ 525.00 |
| Megan D. McIntyre (Director) | 1.30 | $ 695.00 | $ 903.50 |
| Stephen G. Grygiel (Director) | 1.00 | $ 695.00 | $ 695.00 |
| Mary S. Thomas (Director) | 1.70 | $ 650.00 | $ 1,105.00 |
| Michael J. Barry (Director) | 684.20 | $ 650.00 | $ 444,730.00 |
| Charles Caliendo (Sr. Counsel) | 582.70 | $ 620.00 | $ 361,274.00 |
| Lesley Weaver (Sr. Counsel) | 42.60 | $ 620.00 | $ 26,412.00 |
| Deborah Elman (Associate) | 462.30 | $ 550.00 | $ 254,265.00 |
| Christine Mackintosh (Associate) | 1.50 | $ 475.00 | $ 712.50 |
| Sharan Nirmul (Associate) | 42.00 | $ 445.00 | $ 18,690.00 |
| Natalia Williams (Associate) | 433.10 | $ 425.00 | $ 184,067.50 |
| Ananda Chaudhuri (Associate) | 2.00 | $ 375.00 | $ 750.00 |
| **Attorney Subtotal** | 2460.20 | | $1,467,439.00 |
| | | | |
| Carolynn A. Nevers (Paralegal) | 1.70 | $ 225.00 | $ 382.50 |
| Kimberly B. Schwartz (Paralegal) | 10.00 | $ 225.00 | $ 2,250.00 |
| Alexandra Carpio (Paralegal) | 2.00 | $ 190.00 | $ 380.00 |
| Beatrice Smith (Paralegal) | 213.20 | $ 190.00 | $ 40,508.00 |
| Mary Swift (Paralegal) | 98.70 | $ 190.00 | $ 18,753.00 |
| Renee Lowder (Paralegal) | 0.30 | $ 190.00 | $ 57.00 |
| Ronald E. Wittman (Paralegal) | 4.70 | $ 190.00 | $ 893.00 |
| S. Lee Sobocinski (Paralegal) | 6.00 | $ 190.00 | $ 1,140.00 |
| Valarie Ziminsky (Paralegal) | 1.40 | $ 95.00 | $ 133.00 |
| **Paralegal Subtotal** | 338.00 | | $ 64,496.50 |
| | | | |
| **TOTAL** | **2798.20** | | **$1,531,935.50** |

Exhibit C-2

**APPLE EXPENSES**

| Expense Type / Vendor | Vendor Total |
|---|---|
| Arbitration Mediation Expense | $ 28,818.00 |
| Duplication Services (.25 per page) | $ 27,741.80 |
| Experts | |
| Winnemac Consulting (damages analysis) | $ 26,350.00 |
| Dubin Research (litigation, mediation & trial consultant) | $ 184,242.58 |
| Philadelphia Investment Banking (damages) | $ 20,780.61 |
| Fax | $ 174.24 |
| Filing Fees | $ 32.88 |
| Postage & Delivery | $ 577.82 |
| Research | $ 39,932.66 |
| Service Fees | $ 920.40 |
| Telephone | $ 373.95 |
| Transcription Services | $ 95.40 |
| Travel | $ 20,870.36 |
| **TOTAL** | **$ 350,910.70** |

Exhibit C-3

## GRANT & EISENHOFER P.A.
## FIRM BIOGRAPHY

Grant & Eisenhofer P.A. ("G&E") is a national litigation boutique with more than 50 attorneys that concentrates on federal securities and corporate governance litigation and other complex class actions. G&E primarily represents domestic and foreign institutional investors, both public and private, who have been damaged by corporate fraud, greed and mismanagement. The firm was named to the National Law Journal's Plaintiffs' Hot List for the last three years and is listed as one of America's Leading Business Lawyers by Chambers and Partners, who reported that G&E "commanded respect for its representation of institutional investors in shareholder and derivative actions, and in federal securities fraud litigation." Based in Delaware, New York and Washington, D.C., G&E routinely represents clients in federal and state courts throughout the country. G&E's clients include the California Public Employees' Retirement System, New York State Common Retirement Fund, Ohio Public Employees' Retirement System, State of Wisconsin Investment Board, Teachers' Retirement System of Louisiana, PIMCO, Franklin Templeton, Trust Company of the West, The Capital Guardian Group and many other public and private domestic and foreign institutions.

G&E was founded in 1997 by Jay W. Eisenhofer and Stuart M. Grant, formerly litigators in the Wilmington office of the nationally prominent firm of Skadden, Arps, Slate, Meagher & Flom LLP. Over the years, the firm's partners have gained national reputations in securities and corporate litigation. G&E has recovered over $12 billion dollars for its clients in the last five years, and has repeatedly been named one of the nation's "Top Ten Plaintiff's Firms" by the National Law Journal. In 2008 and 2009, RiskMetrics Group recognized G&E for winning the highest average investor recovery in securities class actions of any law firm in the U.S.

G&E has been lead counsel in some of the largest securities class action recoveries in U.S. history, including:

> $3.2 billion settlement from Tyco International Ltd.
> $895 million from United Healthcare
> $450 million Pan-European settlement from Royal Dutch Shell
> $448 million settlement from Global Crossing Ltd.
> $420 million from Digex
> $325 million from Delphi Corp
> $303 million settlement from General Motors
> $300 million settlement from DaimlerChrysler Corporation
> $300 million recovery from Oxford Health Plans
> $400 million recovery from Marsh & McLennan
> $276 million judgment & settlement from Safety-Kleen

G&E currently serves as lead counsel in securities class actions involving, among others, Pfizer, Merck, Alstom, Parmalat, Satyam and Refco.

G&E has also achieved landmark results in corporate governance litigation, including:

*In re UnitedHealth Group Inc. Shareholder Derivative Litigation*: G&E represents the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative breach of fiduciary duty action against William W. McGuire, the former CEO of UnitedHealth Group. The case relates to the improper backdating of over 55.4 million (split-adjusted) stock options issued by UnitedHealth from 1996 through 2002, and the issuance of an additional 12.31 million (split adjusted) stock options post-2002 that violated the terms of the applicable shareholder-approved stock option plans. G&E achieved a settlement that has resulted in significant governance reforms and payments in excess of $900 million, the largest settlement in the history of derivative litigation in any jurisdiction.

*In re Digex, Inc. Shareholders Litigation* – G&E initiated litigation alleging that the directors and majority stockholder of Digex, Inc. breached fiduciary duties to the company and its public shareholders by permitting the majority shareholder to usurp a corporate opportunity that belonged to Digex. G&E's efforts in this litigation resulted in an unprecedented settlement of $420 million, the largest settlement in the history of the Delaware Chancery Court.

*Caremark / CVS Merger* - G&E represented institutional shareholders challenging the conduct of the Caremark board in connection with the merger agreement with CVS, and its rejection of a competing proposal. G&E was able to force Caremark to provide additional disclosures to public shareholders and to renegotiate the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and statutory appraisal rights.

*Teachers' Retirement System of Louisiana v. Greenberg, et al. and American International Group, Inc.*: In the largest settlement of shareholder derivative litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a lawsuit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets.

*AFSCME v. AIG* – This historic federal appeals court ruling in favor of G&E's client established the right, under the then-existing proxy rules, for shareholders to place the names of director candidates nominated by shareholders on corporate proxy materials – reversing over 20 years of

adverse rulings from the SEC's Division of Corporate Finance and achieving what had long been considered the "holy grail" for investor activists. Although the SEC took nearly immediate action to reverse the decision, the ruling renewed and intensified the dialogue regarding "proxy access" before the SEC, ultimately resulting in a new rule currently being considered by the SEC that, if implemented, will make "proxy access" mandatory for every publicly traded corporation.

*Unisuper Ltd. v. News Corp., et al.* – G&E forced News Corp. to rescind the extension of its poison pill on the grounds that it was obtained without proper shareholder approval.

*Teachers' Retirement System of Louisiana v. HealthSouth* – G&E negotiated a settlement which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby *shareholders* would nominate their replacements.

*Carmody v. Toll Brothers* – This action initiated by G&E resulted in the seminal ruling that "dead-hand" poison pills are illegal.

In addition, the firm's lawyers are often called upon to testify on behalf of institutional investors before the SEC and various judicial commissions, and they frequently write and speak on securities and corporate governance issues. G&E partners Jay Eisenhofer and Michael Barry are co-authors of the *Shareholder Activism Handbook*, and in 2008, Jay Eisenhofer was named one of the 100 most influential people in the field of corporate governance.

G&E is proud of its success in "fighting for institutional investors" in courts and other forums across the country and throughout the world.

## G&E's Attorneys

**Jay W. Eisenhofer**

Jay Eisenhofer, co-founder and managing director of Grant & Eisenhofer, has been counsel in more multi-hundred million dollar cases than any other securities litigator, including the $3.2 billion settlement in the Tyco case, the $895 million United Healthcare settlement, the $450 million settlement in the Global Crossing case, the historic $450 million pan-European settlement in the Shell case, as well as a $400 million settlement with Marsh McLennan, a $303 million settlement with General Motors and a $300 million settlement with DaimlerChrysler. Mr. Eisenhofer was also the lead attorney in the seminal cases of *American Federation of State, County & Municipal Employees, Employees Pension Plan v. American International Group, Inc.*, where the U.S. Court of Appeals required shareholder proxy access reversing years of SEC no-action letters, and *Carmody v. Toll Brothers*, wherein the Delaware Court of Chancery first ruled that so-called "dead-hand" poison pills violated Delaware law.

Mr. Eisenhofer has served as litigation counsel to many public and private institutional investors, including, among others, California Public Employees Retirement System, Colorado Public Employees Retirement Association, the Florida State Board of Administration, Louisiana State Employees Retirement System, the Teachers' Retirement System of Louisiana, Ohio Public Employee Retirement Systems, State of Wisconsin Investment Board, American Federation of State, County & Municipal Employees, Service Employees International Union, Amalgamated Bank, Lens Investment Management, Inc. and Franklin Advisers, Inc.

Mr. Eisenhofer is consistently ranked as a leading securities and corporate governance litigator in *Chambers USA – America's Leading Business Lawyers*.  In the 2010 edition, Mr. Eisenhofer is hailed a "*master strategists*" and is lauded as an "*outstanding tactician…especially recommended for his strategic guidance.*" Mr. Eisenhofer was recognized by Directorship Magazine in 2008 as one of the 100 most influential people in the field of corporate governance, a list that included figures like Ben Bernanke, Henry Paulson, Barney Frank, and Warren Buffet. In addition, he has been named by Law Dragon to its list of the top 500 lawyers in America. *The National Law Journal* has selected Grant & Eisenhofer as one of the top ten plaintiffs' law firms in the country for the last four years, earning the firm a place in *The National Law Journal's* Plaintiffs Firms Hall Of Fame.   Mr. Eisenhofer serves as a member of the Advisory Boards for the Program on Corporate Governance at Harvard Law School and the Weinberg Center for Corporate Governance at the University of Delaware.

Mr. Eisenhofer has written and lectured widely on securities fraud and insurance coverage litigation, business and employment torts, directors' and officers' liability coverage, and the Delaware law of shareholder rights and directorial responsibilities. Among the publications he has authored: "The Shareholders Activism Handbook" Aspen Publishers; "Proxy Access Takes Center Stage – The Second Circuit's Decision in AFSCME Employees Pension Plan v. American International Group, Inc." *Bloomberg Law Reports*, Vol. 1, No. 5; "Investor Litigation in the U.S. - The System is Working" *Securities Reform Act Litigation Reporter*, Vol. 22, #5; "In re Walt Disney Co. Deriv. Litig. and the Duty of Good Faith Under Delaware Corporate Law" *Bank & Corporate Governance Law Reporter*, Vol. 37, #1; "Institutional Investors As Trend-

Setters In Post-PSLRA Securities Litigation" *Practicing Law Institute*, July, 2006; "In re Cox Communications, Inc.: A Suggested Step in the Wrong Direction," *Bank and Corporate Governance Law Reporter,* Vol. 35, #1; "Does Corporate Governance Matter to Investment Returns?" *Corporate Accountability Report*, Vol. 3, No. 37; "Loss Causation in Light of Dura: Who is Getting it Wrong?" *Securities Reform Act Litigation Reporter*, Vol. 20, #1; "Giving Substance to the Right to Vote: An Initiative to Amend Delaware Law to Require a Majority Vote in Director Elections," *Corporate Governance Advisor*, Vol. 13, #1; "An Invaluable Tool in Corporate Reform: Pension Fund Leadership Improves Securities Litigation Process," *Pensions & Investments*, Nov. 29, 2004; and "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, August 2004.

Mr. Eisenhofer is a graduate of the University of Pittsburgh, and a 1986 *magna cum laude* graduate of Villanova Law School, Order of the Coif. He was a law clerk for the Honorable Vincent A. Cirillo, President Judge of the Pennsylvania Superior Court and thereafter joined the Wilmington office of Skadden Arps Slate Meagher & Flom.  Mr. Eisenhofer was a partner in the Wilmington office of Blank Rome Comisky & McCauley until forming G&E in 1997.

**Stuart M. Grant**

Stuart M. Grant is co-founder and managing director of Grant & Eisenhofer. Mr. Grant is nationally recognized for his representation of institutional investors in securities, regulatory and corporate governance litigation. He serves as litigation counsel to many of the largest public and private institutional investors in the world.

Mr. Grant has extensive knowledge in the areas of Delaware corporate law, fiduciary responsibility, securities and investments, private equity and fixed income, appraisal remedies, valuation, proxy contests and other matters related to protecting and promoting the rights of institutional investors.

Mr. Grant has been consistently ranked as a leading securities and corporate governance litigator in *Chambers USA – America's Leading Business Lawyers*. In the 2008 edition, it is noted that Mr. Grant "really understands the law and the psychology of litigation," and is described by clients as an "extremely talented litigator who possesses deep theoretical knowledge about class actions and corporate governance."  Mr. Grant, who has been recognized as one of the Top 500 Leading Lawyers in America by Lawdragon, is rated AV by Martindale Hubbell.

Mr. Grant has testified on behalf of institutional investors before the SEC and before the Third Circuit Panel on Appointment of Class Counsel. He has successfully argued on behalf of institutional investors in many groundbreaking corporate governance cases including:  *In re Digex Stockholders Litigation*, the largest settlement in Delaware Chancery Court history, which led to the establishment of lead plaintiff provisions in Delaware;  *In re UniSuper Ltd., et al. v. News Corporation, et al*., a landmark case in which the Delaware Chancery Court ruled that shareholders may limit board authority without amending the corporation's charter; *In re Tyson Foods, Inc*., which resulted in historic rulings from the Delaware Court of Chancery clarifying the fiduciary duties of corporate directors in connection with the administration of stock option

plans; *Teachers' Retirement System of Louisiana v. Aidinoff, et al. and American International Group, Inc.,* the largest derivative shareholder litigation settlement in the history of Delaware Chancery Court; *In re HealthSouth*, which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby shareholders would nominate their replacements; *In re Cablevision Systems Corp. Options Backdating Litigation* and *In re Electronics for Imaging, Inc. Shareholder Litigation*, both of which held directors and officers of their respective companies accountable for improperly granting backdated options and, most importantly, required the individual defendants to reach into their own pockets to cover a significant portion of the settlement.

Mr. Grant was the first attorney in the country to argue the provisions of the PSLRA allowing an institutional investor to be appointed as lead plaintiff in a securities class action. The opinion, which appointed the State of Wisconsin Investment Board as lead plaintiff and Grant & Eisenhofer as lead counsel, is widely considered the landmark on the standards applicable to lead plaintiff/lead counsel practice under the PSLRA; and the case, *Gluck, et al. v. Cellstar*, resulted in a class recovery of approximately 56% of the class' actual losses, which was four times the historical average gross recovery for securities fraud litigation.

Mr. Grant's more recent securities litigation representations include: *In re Delphi Corp Securities Litigation*, which resulted in settlement agreements totaling more than $325 million from Delphi Corp, its directors and officers insurance and the company's auditor Deloitte & Touche; *In re Parmalat Securities Litigation*, which resulted in a settlement of approximately $90 million in what the SEC described as "one of the largest and most brazen financial frauds in history;" *In re Refco Inc. Securities Litigation*, which resulted in a $400 million settlement; and *In re Safety-Kleen Securities Corporation Bondholders Litigation*, which, after a six-week securities class action jury trial, resulted in judgments holding the company's CEO and CFO jointly and severally liable for nearly $200 million and settlements with the remaining defendants for $84 million.

Mr. Grant is a frequent speaker at the Practising Law Institute, the Council of Institutional Investors, the Australian Council of Super Investors and several other securities fora across the globe. Mr. Grant has authored a number of articles and published writings. His articles have been cited with approval by the U.S. Supreme Court, U.S. Court of Appeals for the 2nd and 5th Circuits and numerous U.S. District Courts. Mr. Grant's articles include, among others, "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is so Fraught With Uncertainty That They May be Void for Vagueness"; "Class Certification and Section 18 of the Exchange Act"; *"Unisuper v. News Corporation*: Affirmation that Shareholders, Not Directors, Are the Ultimate Holders of Corporate Power"; "Executive Compensation: Bridging the Gap Between What Companies Are Required to Disclose and What Stockholders Really Need to Know"; and a number of annual PLI updates under the heading of "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act."

Mr. Grant serves as a member of the Advisory Board of the Weinberg Center for Corporate Governance at the University of Delaware. Mr. Grant joined the Widener University School of Law faculty as an Adjunct Professor of Law in 1994, where he leads a securities litigation seminar for third-year law students. Mr. Grant is a Certified Teacher for the National Institute of

Trial Advocacy (NITA).  Additionally, he has taught at PricewaterhouseCoopers University of Delaware Directors' College.

Mr. Grant graduated in 1982 *cum laude* from Brandeis University with a B.A. in Economics and received his J.D. from New York University School of Law in 1986. He served as Law Clerk to the Honorable Naomi Reice Buchwald in the United States District Court for the Southern District of New York. Prior to forming Grant & Eisenhofer, Mr. Grant was a partner at Blank, Rome, Comisky & McCauley (1994-97) and an associate at Skadden, Arps, Slate, Meagher & Flom (1987-94).

**Michael J. Barry**

Michael Barry is a director at G&E. His practice focuses on corporate governance and securities litigation. He also advises clients on SEC matters. As a foremost practitioner in these areas, Mr. Barry has been significantly involved in groundbreaking class action recoveries, corporate governance reforms and shareholders rights litigation.

Mr. Barry has been instrumental in landmark corporate governance cases, including *AFSCME v. AIG,* where the Court of Appeals for the Second Circuit recognized the right of shareholders to introduce proxy access proposals; *Bebchuk v. CA, Inc*., which opened the door for shareholders to introduce proposals restricting the ability of boards to enact poison pills; and *CA, Inc. v. AFSCME*, an historic 2008 decision of the Supreme Court of Delaware regarding the authority of shareholders to adopt corporate bylaws. Mr. Barry's case work also includes, among others, *In re Global Crossing Ltd. Securities Litigation*, which resulted in a $450 million settlement; a well-publicized derivative litigation action challenging the terms of the Caremark Rx, Inc. and CVS merger that resulted in a $3.2 billion settlement; and litigation between the Chicago Board of Trade and the Chicago Mercantile Exchange, which produced a $485 million settlement. Each of these cases resulted in substantial reforms to the terms of merger agreements to provide increased consideration and structural benefits to shareholders.

Mr. Barry has spoken widely on corporate governance and related matters. In addition to serving as a frequent guest lecturer at Harvard Law School, he speaks at numerous conferences each year. Mr. Barry has authored numerous published writings, including the *Shareholder Activism Handbook*, a comprehensive guide for shareholders regarding their legal rights as owners of corporations, which he co-authored.

Prior to joining G&E, Mr. Barry practiced at a large Philadelphia-based firm, where he defended the Supreme Court of Pennsylvania, the Pennsylvania Senate and Pennsylvania state court judges in a variety of trial and appellate matters. He is a 1990 graduate of Carnegie Mellon University and graduated *summa cum laude* in 1993 from the University of Pittsburgh School of Law, where he was an Executive Editor of the *University of Pittsburgh Law Review* and a member of the Order of the Coif.

**Daniel L. Berger**

Daniel Berger is a director with Grant & Eisenhofer.  Prior to joining the firm, Mr. Berger was a partner at two major plaintiffs' class action firms in New York, including Bernstein Litowitz

Berger & Grossmann, where he litigated complex securities and discrimination class actions for twenty two years.

While at BLBG, Mr. Berger tried two 10b-5 securities class actions to jury verdicts, among the very few such cases ever tried. He served as principal lead counsel in many of the largest securities litigation cases in history, achieving successful recoveries for classes of investors in cases including *In re Cendant Corp. Securities Litigation* (D. N.J.) ($3.3 billion); *In re Lucent Technologies, Inc. Securities Litigation* (D. N.J.) ($675 million); *In re Bristol-Myers Squibb Securities Litigation,* (S.D.N.Y.) ($300 million); *In re Daimler Chrysler A.G. Securities Litigation,* (D. Del.) ($300 million); *In re Conseco, Inc. Securities Litigation,* (S.D. Ind.) ($120 million); *In re Symbol Technologies Securities Litigation,* (E.D.N.Y.) ($139 million); and *In re OM Group Securities Litigation,* (N.D. Ohio) ($92 million.)

Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott,* 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.,* 919 F.2d 290 (5th Cir. 1990.) In addition, Mr. Berger was lead class counsel in several important discrimination class actions, in particular *Roberts v. Texaco, Inc.* (S.D.N.Y.), where he represented African-American employees of Texaco and achieved the then largest settlement ($175 million) of a race discrimination class action.

Mr. Berger currently serves on the editorial board of Securities Law360. He was a member of the Board of Managers of Haverford College from 2000-2003 and currently serves on the Board of Visitors of Columbia University Law School. He also served on the Board of inMotion, Inc., a non-profit organization providing legal services to victims of domestic violence, for six years, and currently is the Vice President of the Madison Square Park Conservancy.

## Cynthia A. Calder

Cynthia Calder is a director at Grant & Eisenhofer. She concentrates her practice in the areas of corporate governance and securities litigation. She has represented shareholders in such seminal cases in the Delaware Court of Chancery as *UniSuper Ltd. v. News Corp.*, vindicating the shareholders' right to vote; *Carmody v. Toll Brothers*, finding the dead-hand poison pill defensive measure was illegal under Delaware law, *Jackson National Life Insurance Co. v. Kennedy*, breaking new ground in the interpretation of fiduciary duties owed to preferred shareholders; *Haft v. Dart Group Corp.*, resolving a contest for control of a significant public corporation; and *Paramount Communications Inc. v. QVC Network*, obtaining an injunction preventing the closing of a merger to force the board of directors to appropriately consider a competing bid for the corporation.  More recently, Ms. Calder prosecuted a shareholder derivative suit on behalf of American International Group, Inc. against the company's former CEO, Maurice Greenberg, and other former AIG executives.  The action was concluded for a settlement of $115 million – the largest such settlement in the history of the Delaware Court of Chancery.  Ms. Calder was also the Court-appointed representative on the shareholder counsel's committee in the *UnitedHealth Group* derivative litigation, which was settled for more than $900 million – the largest known derivative settlement in any court system.  Ms. Calder also recently prosecuted a shareholder class action, *In re ACS Shareholder Litigation*, which resulted in one of the largest class recoveries in the history of the Court of Chancery.

Ms. Calder graduated *cum laude* from the University of Delaware in 1987 and graduated from the Villanova University School of Law in 1991. Upon graduating from law school, Ms. Calder served as a Judicial Law Clerk in the Delaware Court of Chancery to the Honorable Maurice A. Hartnett, III. Prior to joining Grant & Eisenhofer, Ms. Calder was an associate at Blank Rome LLP. She is a member of the Delaware Bar Association.

Ms. Calder has co-authored numerous articles on corporate governance and securities litigation, including "Options Backdating from the Shareholders' Perspective" Wall Street Lawyer, Vol. 11, No. 3;  "Securities Litigation Against Third Parties: Pre-Central Bank Aiders and Abettors Become Targeted Primary Defendants" Securities Reform Act Litigation Reporter, Vol. 16, No. 2; and "Pleading Scienter After Enron: Has the World Really Changed?" Securities Regulation & Law, Vol. 35, No. 45.

**Robert G. Eisler**

Robert Eisler is a director in the firm's antitrust practice group. Mr. Eisler has been involved in many of the most significant antitrust class action cases in recent years, and has frequently served as court-appointed lead or co-lead counsel.  He is experienced in numerous industries, including pharmaceuticals, paper products, construction materials, industrial chemicals, processed foods, municipal securities, and consumer goods.

Mr. Eisler has served as lead or co-lead counsel in many of the largest antitrust cases litigated in recent years, including, *In re Buspirone Antitrust Litigation*, (which led to a $90 million settlement and in which presiding Judge Koeltl stated that the plaintiffs' attorneys had done "a stupendous job"), *In re Ciprofloxacin Hydrochloride Antitrust Litigation, In re Flat Glass Antitrust Litigation*, *In re Municipal Derivatives Antitrust Litigation*, and *In re Chocolate Confectionary Antitrust Litigation*.

Mr. Eisler has played major roles in a number of other significant antitrust cases, including *In re Linerboard Antitrust Litigation*, *In re Aftermarket Filters Antitrust Litigation*, and *In re Publication Paper Antitrust Litigation.*

Mr. Eisler also has extensive experience in securities, derivative, complex commercial and class action litigation at the trial and appellate levels. He has been involved in numerous securities and derivative litigation matters on behalf of public pension funds, municipalities, mutual fund companies and individual investors in state and federal courts.

**Keith M. Fleischman**

Keith Fleischman is a director at Grant & Eisenhofer, focusing on high profile securities litigation cases. Mr. Fleischman is a nationally recognized litigator and trial lawyer with over 20 years of experience, including serving as a prosecutor in the Investigations and Major Offense Bureau of the Bronx District Attorney's Office, a trial attorney in the Fraud Section of the U.S. Department of Justice, an Assistant United States Attorney in the U.S. Attorney's Office and at large plaintiffs firms.

Mr. Fleischman has served as lead or co-lead counsel and on the executive committee for many notable and successful litigations, including America Online, Ann Taylor, Motorola, Aetna, John Hancock, Bell South and Taser, which collectively resulted in hundreds of millions of dollars in settlements to the respective classes.  Most recently, Mr. Fleischman was co-lead counsel in the Marsh Securities Litigation which resulted in a $400 million settlement to the class. In 1995, Mr. Fleischman was plaintiffs' chief trial counsel in *Robbins v. Koger Properties, Inc.,* in which a federal jury found Deloitte & Touche liable for securities violations and awarded the class over $80 million after a month-long trial. Mr. Fleischman also successfully argued before the Second Circuit the case of *Novak v. Kasaks*, the precedent–setting decision regarding the pleading standard and disclosure of confidential informants under the Private Securities Litigation Reform Act (PSLRA).

During his eight years as prosecutor, Mr. Fleischman tried numerous cases to verdict and served as chief trial counsel in *United States v. Cheng & Heath*, one of the largest savings and loan prosecutions successfully brought by the federal government.  Additionally, he served as a trial practice instructor for the Attorney General's Advocacy Institute, U.S. Department of Justice, as a member of the Dallas and New England Bank Fraud Task Force, and as a member of the Connecticut Bank Fraud Working Group. Mr. Fleischman has received awards from the Director of the FBI and the Attorney General for his work on behalf of the Justice Department.

Mr. Fleischman received his B.A. from the University of Vermont in 1980 and a J.D. from California Western School of Law in 1984.  He has been recognized by both Super Lawyers and Lawdragon.  For the past ten years, Mr. Fleischman has served as the co-chairman of the Practising Law Institute's Annual Conference on Class Actions and lectures in the United States and abroad on the investigation, litigation and prevention of securities fraud.

**Reuben A. Guttman**

Reuben Guttman is a Director at Grant & Eisenhofer. His practice involves complex litigation and class actions.  He has represented clients in claims brought under the federal False Claims Act, securities laws, the Price Anderson Act, Department of Energy (DOE) statutes and regulations, the WARN Act, RICO and various employment discrimination, labor and environmental statutes. He has also litigated and/or tried claims involving fraud, breach of fiduciary duty, antitrust, business interference and other common law torts.

Mr. Guttman has been counsel in some of the largest recoveries under the Federal False Claims Act, including *U.S. ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528 (ED Tex. 1999), where over $300 million were recovered from the oil industry. He also represented one of the six main whistleblowers in litigation resulting in the government's September 2009, $2.3 billion settlement with Pfizer Pharmaceutical.  Litigation brought by Mr. Guttman under the False Claims Act on behalf of a European whistleblower resulted in a $13 million settlement with a Department of Defense contractor.

Mr. Guttman also served as lead counsel in a series of cases resulting in the recovery of more than $30 million under the Federal Fair Labor Standards Act. Litigation brought by Mr. Guttman on behalf of nuclear weapons workers at "Manhattan Project" nuclear weapons sites resulted in

congressional oversight and changes in procurement practices affecting the nation's nuclear weapons complex. In addition, he served as lead counsel in litigation brought on behalf of prison workers in the District of Columbia, which resulted in injunctive relief protecting workers against exposure to blood-borne pathogens. Mr. Guttman served as lead counsel in a mediation before the United States Equal Employment Opportunity Commission, resulting in work place standards and back pay for minority employees at a large Texas oil refinery.

Mr. Guttman is the author and/or editor of numerous articles and technical publications. He is co-author of Gonzalez v. Hewitt, a case file published by the Emory University Law School Center for Advocacy and Dispute Resolution (2010) and used to train law students and practicing attorneys. He has appeared on *ABC Nightly News* and CNN, and has been quoted in major publications including *The Wall Street Journal, The Washington Post, The Los Angeles Times, The Atlanta Journal-Constitution, USA Today, Houston Chronicle, Dallas Morning News* and national wire services including the Associated Press and Reuters.

In addition to his writings, Mr. Guttman has testified before committees of the United States House of Representatives and the United States Senate on the Asbestos Hazard Emergency Response Act (AHERA). In 1992, he advised President-elect Clinton's transition team on labor policy and worker health and safety regulation.

Mr. Guttman earned his law degree at Emory University Law School (1985) and his Bachelor's Degree from the University of Rochester (1981). He is a faculty member at the Emory University School of Law Edison-Kessler Trial Advocacy Program where he Co-Chairs the Advisory Board for the Center for Advocacy and Dispute resolution. Mr. Guttman is a faculty member of the National Institute of Trial Advocacy. He has been a guest lecturer at a number of universities including Jao Tong University in Shanghai, Peking University in Beijing and Renmin University in Beijing. In 2006 he was invited by the Dutch Embassy in China to share his expertise with experts in China about changes to the nation's labor laws.  He is a Co-Founder of Voices for Corporate Responsibility, www.voicesforcorporateresponsibility.com, and founder of www.whistleblowerlaws.com and www.thecorporateinsider.com.

**Stephen G. Grygiel**

Stephen Grygiel, a director with Grant & Eisenhofer, focuses his practice on complex securities, corporate governance and third party payor pharmaceutical cost-recovery cases. Mr. Grygiel has litigated and tried a variety of shareholder dissolution and shareholders' rights actions, adversary proceedings in bankruptcy court, and other corporate and commercial matters. He has litigated issues concerning the validity of stock issued in private companies, minority shareholders' rights under statutes, by-laws and contracts, valuations and requisite consideration for founders' stock, minority discounts and control premiums for valuation purposes, the interplay of security interests and stock ownership rights, secured party seizures of stock, and a bankruptcy estate's ownership of funds fraudulently obtained from banks through a sophisticated check-kiting scheme. Mr. Grygiel has also litigated private cost recovery actions under CERCLA, representing plaintiffs in the *Laurel Park Coalition v. Goodyear* (Connecticut) and *Hanlin v. IMC* (Maine) cases.  Having written and contributed to articles addressing private cost recovery

actions and the intersection of CERCLA and common law rights of action, he has also lectured on those topics to industry professionals.

Mr. Grygiel, who is rated AV by Martindale Hubbell, graduated *magna cum laude* in 1979 from Hamilton College where he was elected to Phi Beta Kappa and won other honors and academic awards.  He graduated from Harvard Law School in 1986.  Following law school, Mr. Grygiel clerked for the Chief Justice of Maine's Supreme Judicial Court.

**Geoffrey C. Jarvis**

Geoffrey Jarvis, a director with Grant & Eisenhofer, focuses on securities litigation for institutional investors. He had a major role in the Oxford Health Plans Securities Litigation and the DaimlerChrysler Securities Litigation, both of which were among the top ten securities settlements in U.S. history at the time they were resolved. Mr. Jarvis also has been involved in a number of actions before the Delaware Chancery Court, including a Delaware appraisal case that resulted in a favorable decision for the firm's client after trial.  At the present time, he has primary responsibility for a number of cases in which Grant & Eisenhofer clients have opted-out of class actions and also has a lead role in class actions pending against Tyco, Alstom and Sprint.

Mr. Jarvis received a B.A. in 1980 from Cornell University, where he was elected to Phi Beta Kappa. He graduated *cum laude* from Harvard Law School in 1984. Until 1986, he served as a staff attorney with the Federal Communications Commission, participating in the development of new regulatory policies for the telecommunications industry. He then became an associate in the Washington office of Rogers & Wells, principally devoted to complex commercial litigation in the fields of antitrust and trade regulations, insurance, intellectual property, contracts and defamation issues, as well in counseling corporate clients in diverse industries on general legal and regulatory compliance matters. Mr. Jarvis was previously associated with a prominent Philadelphia litigation boutique and had first-chair assignments in cases commenced under the Pennsylvania Whistleblower Act and in major antitrust, First Amendment, civil rights, and complex commercial litigation, including several successful arguments before the United States Court of Appeals for the Third Circuit.

Mr. Jarvis authored "State Appraisal Statutes: An Underutilized Shareholder Remedy," *The Corporate Governance Advisor*, May/June 2005, Vol. 13, #3, and co-authored with Jay W. Eisenhofer and James R. Banko, "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, August 2004.

**John C. Kairis**

John Kairis is a director at Grant & Eisenhofer. He represents institutional investors in class action litigation, individual "opt-out" securities litigation and derivative and corporate governance litigation in the Delaware Chancery Court and other courts throughout the country. Mr. Kairis has been a leader of G&E teams that have achieved landmark results for clients, including some of the largest recoveries in securities class action history. He is currently representing British pension fund Hermes Focus Asset Management Europe Ltd. and other purchasers of Parmalat Finanziaria securities in a securities class action against Parmalat. He is

also representing Teachers' Retirement System of Louisiana in a securities class action against Hollinger International, Inc. and its officers, directors and auditors. He represented Stichting Pensioenfonds ABP, the pension fund for government and education authorities in the Netherlands, in an opt-out action against AOL Time Warner, its officers and directors, auditors, investment bankers and business partners.

Mr. Kairis has achieved significant corporate governance improvements for G&E's institutional investor clients, as in the agreement by HealthSouth Corporation to replace its conflicted directors with independent directors approved by a committee including the institutional investor plaintiff.  The groundwork for this case was established through Mr. Kairis's successful prosecution of a books and records case under Section 220 of the Delaware General Corporation Law, which resulted in HealthSouth disclosing documents they had previously refused to produce. Mr. Kairis has mediated and obtained favorable settlements for G&E clients in both major securities cases, including *Wyser-Pratte Management Co. v. Telxon Corp.*, and consumer class actions involving unfair competition and false marketing claims against both Johnson & Johnson and Bausch and Lomb.

Mr. Kairis graduated from the University of Notre Dame in 1984 and received his J.D. in 1987 from the Ohio State University School of Law, where he served as Articles Editor for the Law Review and received the American Jurisprudence Award and the John E. Fallon Memorial Award for scholastic achievement.  He authored "Challenging Mis-representations in Mergers: You May Have More Time Than You Think," *Andrews Litigation Reporter*, Vol. 12, Issue 3, June 14, 2006. He is a member of the Delaware and American Bar Associations and the Delaware Trial Lawyers Association. Mr. Kairis has served on the boards of several nonprofit organizations, including the West-End Neighborhood House, Inc. and the Cornerstone West Development Corporation. He has also served on the Delaware Corporation Law Committee, where he evaluated proposals to amend the Delaware General Corporation Law.

**Megan D. McIntyre**

Megan McIntyre is a director at Grant & Eisenhofer, practicing in the areas of corporate, securities and complex commercial litigation. Among other work, she has represented institutional investors, both public and private, in corporate cases in the Delaware Court of Chancery as well as in securities class actions in federal courts throughout the country that have resulted in significant recoveries. She was a member of the trial team in *In re Safety-Kleen Corp. Bondholders Litigation*, which ended in settlements and judgments totaling approximately $280 million after six weeks of trial in the Spring of 2005. In 2006, she was a member of the litigation team in the landmark case of *UniSuper Ltd. v. News Corporation*, where the Delaware Court of Chancery ruled that shareholders may contractually limit directors' authority without amending the certificate of incorporation. Ms. McIntyre has successfully represented clients in obtaining access to corporate proxy statements for the purpose of presenting proposed shareholder resolutions and has brought and defended actions seeking to enforce shareholders' rights to inspect corporate books and records pursuant to the statutory authority of Section 220 of the Delaware General Corporation Law. She was also the principal author of the firm's amicus curiae brief on behalf of the Council of Institutional Investors (CII), filed in the Delaware Supreme Court in the Walt Disney derivative litigation, urging the Court's adoption as Delaware

law of the CII's standards or criteria for determining director "independence."  She had a lead role in class actions involving Refco and Able Laboratories, in shareholder derivative actions involving Tyson Foods and Cablevision.  At present, she has a lead role in class actions involving Refco and Genzyme, in a shareholder derivative action involving AIG, and in several cases on behalf of clients who have opted out of securities class actions to pursue individual actions.

Ms. McIntyre has appeared as a guest on CNBC's "On the Money," and has authored or co-authored a number of articles involving issues of Delaware corporate law and the federal securities laws, including  "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is So Fraught With Uncertainty That They May Be Void for Vagueness," 1505 PLI/Corp 83 (Sept. 2005); "Class Certification and Section 18 of the Exchange Act," The Review of Securities and Commodities Regulation, Vol. 35, No. 21, *Standard & Poor's* (Dec. 2002); "The Statutory Right of Inspection: An Important But Often Overlooked Tool," *Corporate Governance Advisor*, Vol. 9, No. 2 (May/June 2001); and "Causes of Action Available to Investors Under Delaware Law, Parts I and II," *Insights* (Oct. 1996; Nov. 1996).

Ms. McIntyre graduated from The Pennsylvania State University in 1991 and graduated *magna cum laude* in 1994 from The Dickinson School of Law, where she was an Articles Editor for the *Dickinson Law Review*. Ms. McIntyre is a member of the Delaware State Bar Association. Prior to joining Grant & Eisenhofer, she was associated with the Wilmington offices of both Skadden, Arps, Slate, Meagher & Flom, LLP and Blank, Rome, Comisky & McCauley, in their respective litigation departments.

**Linda P. Nussbaum**

She was selected "Litigator of the Week" by the *AmLaw Litigation Daily* on April 2, 2010 for her role in the trial of *Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals v. Pfizer*. Linda Nussbaum  is a director at Grant & Eisenhofer.  Ms. Nussbaum is nationally recognized for her representation of class and individual litigants in antitrust and pharmaceutical litigation. Her experience prior to Grant & Eisenhofer was as sole or co-lead counsel in many significant antitrust class actions which have resulted in substantial recoveries, many in the realm of hundreds of millions of dollars: *In re Microcrystalline Cellulose Antitrust Litigation; Oncology & Radiation Associates, P.A. v. Bristol-Myers Squibb Co., et al. (Taxol Antitrust Litigation); North Shore Hematology-Oncology Associates, P.C. v.Bristol-Myers Squibb Co. (Platinol Antitrust Litigation)*; *In re Children's Ibuprofen Oral Suspension Antitrust Litigation*; *In re Relafen Antitrust Litigation*; *In re Plastics Additives Antitrust Litigation*; *In re Remeron Antitrust Litigation*; *Meijer, et al. v. Warner Chilcott Holdings Company, III, Ltd., et al. (Ovcon Antitrust Litigation)*; and *In re Lorazepam & Clorazepate Antitrust Litigation*.

Current cases in which Ms. Nussbaum serves as lead counsel include *In re Puerto Rican Cabotage Antitrust Litigation*; *In re DDAVP Direct Purchaser Antitrust Litigation*; *In re Photochromic Lens Antitrust Litigation*; *In re Wellbutrin XL Antitrust Litigation; Meijer, Inc., et al. v. Astrazeneca Pharmaceuticals LP, et al* (Torprol Antitrust Litigation); and *Meijer, Inc., et al. v. Abbott Laboratories* (Norvir Antitrust Litigation). In addition, she represented large

corporate entities in individual actions in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*; *In re Neurontin Marketing and Sales Practices Litigation; In re Chocolate Confectionary Antitrust Litigation*; and *CVS Pharmacy v. American Express Travel Related Services, et al.*

Ms. Nussbaum has lectured and written extensively about various aspects of antitrust law. Her articles include: "The Evolving Challenges of Class Certification" presented at the American Antitrust Institute's Third Annual Symposium on Private Antitrust Enforcement on December 8, 2009; "Daubert 15 Years Later: How Have Economists Fared?" presented at the ABA Section of Antitrust Law Spring Meeting in March 2009; and "The Hatch-Waxman Act 25 Years Later: Successes, Failures and Prescriptions for the Future," presented at a panel on "Lawyers, Drugs and Money, a Prescription for Antitrust Enforcement in the Pharmaceutical Industry" at the University of San Francisco School of Law Antitrust Symposium on September 25, 2009. Ms. Nussbaum is a member of the Advisory Board of the American Antitrust Institute.

Ms. Nussbaum obtained her J.D. from George Washington University and a LL.M. degree in taxation from New York University School of Law.

**James J. Sabella**

James Sabella is a director at Grant & Eisenhofer. He has over thirty years of experience in complex civil litigation, including representing plaintiffs and defendants in class and derivative actions involving trial and appellate work in state and federal courts. He has substantial experience in securities litigation and litigation involving claims against accounting firms and underwriters. He has also handled antitrust litigation and cases involving the fiduciary obligations of trustees under state law.

Prior to joining Grant & Eisenhofer, Mr. Sabella practiced for twenty-eight years at several large Manhattan law firms, most recently as a partner in Sidley, Austin, Brown & Wood LLP, where his practice focused largely on accountants' liability defense, including the defense of actions alleging securities law violations and professional malpractice as well as grand jury investigations and investigations by the American Institute of Certified Public Accountants.

Mr. Sabella is a 1976 graduate of Columbia Law School, where he was a member of the Board of Directors of the *Columbia Law Review*. He received a B.A. *summa cum laude* from Columbia College in 1972 and a B.S. in 1973 from the Columbia School of Engineering, where he was valedictorian.

**Mary S. Thomas**

Mary Thomas is a director at G&E.  Ms. Thomas spent twelve years practicing business litigation with two of Los Angeles' leading law firms before joining Grant & Eisenhofer in 2006. Her experience prior to Grant & Eisenhofer includes trade secret and intellectual property matters, contract actions, employment defense, consumer class action defense, insurance disputes and environmental matters.

At Grant & Eisenhofer, Ms. Thomas has represented institutional investors in class action securities and shareholder derivative litigation.  Ms. Thomas graduated *magna cum laude* from Harvard Law School in 1994 and *magna cum laude* from the University of Delaware in 1991.

She served as a volunteer arbitrator for the L.A. County Bar Association and as a volunteer mediator for the L.A. Superior Court and now serves as a volunteer guardian *ad litem* through Delaware's Office of the Child Advocate.  Ms. Thomas co-authored "California Wage and Hour Laws" (published by the National Legal Center for the Public Interest, January 2005). She was also one of several authors of the 10th and 11th editions of the *California Environmental Law Handbook.*

## William A.K. Titelman

William Titelman is a director at G&E.  His practice focuses on plaintiff's securities litigation, representing public pension funds, union and Taft-Hartley funds.  Prior to joining G&E, Mr. Titelman spent more than six years as a partner in a New York based plaintiffs' securities litigation firm.

He has been actively involved in government, law and public policy throughout his career.  Mr. Titelman is actively involved in *In re Fannie Mae Securities Litigation*, *In re Royal Dutch/Shell Transport Securities Litigation*, *In re Marsh & McLennan Companies, Inc. Securities Litigation*, *In re Cigna Corp. Securities Litigation*, and *In re HealthSouth Stockholder Litigation.*  He organized and served as counsel for Amici Curiae states and public pension funds in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, No. 06-43, and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, No. 06-484, both before the United States Supreme Court, and *In re Dynex Capital Securities Litigation*, No. 06-2902-cv, before the Second Circuit.   The briefs in these three cases were filed on behalf of eight states and five public pension funds concerning critical issues of investor protection and securities litigation.

Mr. Titelman began his career in the early 1970's serving in several key positions in Pennsylvania state government, including Director of Motor Vehicles and Special Assistant to the Governor for Government Management. After graduating from The Dickinson School of Law in 1980, Mr. Titelman led the Pennsylvania Trial Lawyers Association for nearly a decade in its efforts to protect and expand individual rights, including shareholder rights, and drafted key provisions of Pennsylvania's automobile insurance and consumer safety laws. Subsequently, he became a partner at a leading Pennsylvania law firm, where he served on the firm's Board of Directors and chaired both its Harrisburg office and its Administrative Law and Government Affairs Practice Group.  One of his major clients was the Pennsylvania Public School Employees' Retirement System (PSERS).

In 1988, Mr. Titelman led the successful enactment of a new Pennsylvania Business Corporation Law. From 1989 to 1990, he led a national campaign organizing major public pension funds and other institutional investors, shareholder rights activists, former SEC Commissioners, leading economists and deans of business and law schools to oppose and successfully amend Pennsylvania Senate Bill 1310. *The Wall Street Journal* described this legislation as the most

onerous anti-shareholder, management-protection bill ever proposed in the United States.  Mr. Titelman served as General Counsel to both the Pennsylvania Public School Building and Higher Educational Facilities Authorities.  He went to serve on as Executive Vice President of Managed Care and Public Affairs at Rite Aid Corporation, where he suffered substantial losses as a victim of one of the nation's largest securities frauds.  He subsequently brought and settled an individual action for securities fraud against Rite Aid.

### Jeff A. Almeida

Jeff Almeida is senior counsel at Grant & Eisenhofer P.A. practicing in the areas of corporate, securities and complex commercial litigation.  Mr. Almeida has represented domestic and foreign institutional investors in prominent securities fraud actions including, *In re Qwest Comms. Int'l Securities Litigation* (D. Colo); *In re Alstom SA Securities Litigation* (S.D.N.Y.); *In re Refco Inc. Securities Litigation* (S.D.N.Y.); *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* (D.N.J); *In re Pfizer Inc. Securities Litigation* (S.D.N.Y.); and *In re Global Cash Access Holdings Securities Litigation* (D. Nev.).  Mr. Almeida has also been actively engaged in derivative and class litigation in the Delaware Court of Chancery, including the matters *In re Tyson Foods, Inc.*, which resulted in historic rulings clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans; *Louisiana Police Employees Retirement System v. Crawford* ("*Caremark*"), a well-publicized derivative action challenging the terms of the Caremark and CVS merger that resulted in a $3.2 billion settlement; and *In re Genentech Inc. Shareholder Litigation*, where he successfully represented Genentech minority stockholders against Roche's heavy-handed attempt to squeeze out the minority to seize control of Genentech.  In recent years, Mr. Almeida has also represented prominent hedge fund clients in complex commercial litigation involving claims of short-squeeze market manipulation and the marketing and sale of abusive tax shelters.

Prior to joining Grant & Eisenhofer in August 2004, Mr. Almeida was affiliated for seven years as an attorney with a major Philadelphia defense firm, where he practiced in the areas of complex commercial litigation, with a focus on consumer class actions, commercial contract disputes, insurance coverage and bad faith defense.

Mr. Almeida is a 1994 graduate of Trinity College in Hartford, Connecticut, where he captained the varsity basketball team and achieved election to Phi Beta Kappa, and a 1997 graduate of William and Mary Law School in Williamsburg, Virginia.  Mr. Almeida is admitted to practice in Delaware, Pennsylvania, and New Jersey, along with several federal district courts.

### Charles T. Caliendo

Charles Caliendo represents institutional investors in class action securities, opt-out and shareholder derivative litigation. Prior to joining G&E, he served as an Assistant Attorney General in the Investment Protection Bureau of the New York State Attorney General's Office where he prosecuted cases and led investigations related to mutual fund market timing and late trading. Mr. Caliendo practiced at a Manhattan-based law firm in the areas of class action securities, mergers and acquisitions, corporate governance and other commercial litigation.

Mr. Caliendo has written and spoken on issues relating to regulatory enforcement, corporate internal investigations and securities and shareholder litigation. In November 2004 and June 2006, Mr. Caliendo was a speaker at financial services industry seminars sponsored by The Association of the Bar of the City of New York for which he authored articles entitled "The Investment Protection Bureau: An Overview of Financial Markets Regulation and Enforcement in New York" and "Thompson Memo Under A Microscope." In June 2005, Mr. Caliendo spoke before a delegation of Chinese mutual fund CEOs participating in the Penn-China Mutual Fund CEO Leadership Program, University of Pennsylvania Graduate School of Education. Mr. Caliendo co-authored "Who Says The Business Judgment Rule Does Not Apply To Directors Of New York Banks?" 118 *Banking Law Journal* 493 (June 2001) and "Board of Directors' 'Revlon Duties' Come Into Focus," *New York Law Journal*, vol. 222, no. 86, col. 1 (Nov. 1, 1999).

Mr. Caliendo received his B.S. from Cornell University and J.D. from St. John's University School of Law where he was an editor of the *St. John's Law Review* and a Saint Thomas More Scholar.

### John D. Radice

John Radice is senior counsel with Grant & Eisenhofer. Mr. Radice practices in the areas of antitrust focusing on pharmaceutical antitrust, False Claims Act, and other areas of complex civil litigation.

His representative cases include: *In re Tricor Direct Purchaser Antitrust Litigation (w*hich yielded *a* $250 million settlement after the start of trial in case alleging delayed entry of AB-rated generic versions of Tricor); *In re Neurontin Marketing & Sales Litigation (*resulting in a $47 million jury verdict before interest and statutory trebling based on unlawful and fraudulent promotion of Neurontin); *United States ex rel. Piacentile v. Bristol-Myers Squibb Co.* (resulting in $515 million settlement related to unlawful promotion of Abilify); *United States ex rel. Marchese v. Cell Therapeutics, Inc.* (resulting in $10.5 million settlement stemming from unlawful marketing of Trisenox).

Prior to joining the firm, John was associated with major plaintiffs' class action firms in New York and Philadelphia, where he represented clients pursuing antitrust, False Claims Act, and international human rights cases. He has published numerous articles including "Where do we go now? The Hatch-Waxman Act 25 Years Later: Successes, Failures, and Prescriptions for the Future" published in the Rutgers Law Journal; "The False Claims Act: A Public-Private Partnership" in Volume II, in AAJ 2009 Annual Convention: AAJ Education Reference Materials 1497 (Jennifer Adams ed., 2009); and "Daubert and Rule 702 in the Context of Antitrust Economic Experts: A Practitioner's Guide," Daubert 15 Years Later: How Have Economists Fared (ABA Spring Meeting 2009).

Mr. Radice obtained his J.D. from New York University School of Law and graduated *magna cum laude* from Princeton University with a B.A. He clerked for Judge Edith Brown Clement in the U.S. District Court of Appeals for the Fifth Circuit in New Orleans following his graduation from law school. Through the Arthur Garfield Hays Civil Liberties Program at NYU Law, where he was a Palmer Weber Fellow, John pursued internships at the NAACP Legal Defense &

Education Fund, the ACLU, and a prominent civil rights law firm. At Princeton, John was a member of the lightweight crew team. Together with Dr. Lee Shearer, John founded and is president of Insicknessandinhealth.org, a non-profit dedicated to promoting health and well-being in underserved communities.

**Ralph N. Sianni**

Mr. Sianni's practice involves complex commercial litigation, including securities, corporate governance and third-party payor pharmaceutical cost-recovery cases.  He joined Grant & Eisenhofer from another leading national securities litigation firm, where he handled class action securities cases, and cases involving mergers and acquisitions, general corporate law and breach of fiduciary duties.  His experience includes working with a team of lawyers who appealed a pro bono prisoners' civil rights case to the Supreme Court of the United States.

Mr. Sianni co-authored the article,  "Is the Fix In? - Are Hedge Funds Secretly Disenfranchising Shareholders?," *Bloomberg Law Reports - Corporate Governance*, January 2005.

Prior to entering private practice, Mr. Sianni served as a Law Clerk to the Hon. Stephen J. McEwen, Jr., President Judge of Pennsylvania Superior Court.  As a Legislative Intern for the American Civil Liberties Union of Pennsylvania, Mr. Sianni researched and wrote memoranda on First Amendment issues for the Pennsylvania legislature.

Mr. Sianni earned his law degree from the Boston University School of Law and his Masters degree in history from Yale University.  He graduated *cum laude* with distinction in his major (history) from the University of Pennsylvania.

**Brenda F. Szydlo**

Brenda Szydlo focuses on securities litigation on behalf of institutional investors. Ms. Szydlo has more than twenty years of litigation experience in a broad range of matters.

Prior to joining Grant & Eisenhofer, Ms. Szydlo served as counsel in the litigation department of Sidley Austin LLP in New York, and its predecessor, Brown & Wood LLP, where her practice focused on securities litigation and enforcement, accountants' liability defense and general commercial litigation.

Ms. Szydlo is a 1988 graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review.  She received a bachelor's degree in economics from Binghamton University in 1985.

**Hung G. Ta**

Hung Ta is a senior counsel in Grant & Eisenhofer's New York Office, where he focuses on securities litigation and shareholder derivative litigation on behalf of our institutional investor clients.

Prior to joining G&E, Mr. Ta spent more than six years as a litigation associate at a leading New York law firm, where he represented a considerable number of officers and other clients of the firm in securities litigation, white-collar defense work and regulatory investigations.  Mr. Ta also represented other clients of the firm in general commercial litigation matters involving bankruptcy, reinsurance, professional malpractice, mutual fund litigation and ERISA litigation.

Before coming to the United States, Mr. Ta completed his education in Australia, earning a degree in Finance from the University of New South Wales School of Commerce and his Law degree from the University of New South Wales School of Law.  After law school, Mr. Ta clerked with the Honorable Justice Gaudron of the High Court of Australia, Australia's ultimate appellate court.

## Diane Zilka

Diane Zilka is integral to Grant & Eisenhofer's successful efforts to prosecute securities fraud and corporate governance cases on behalf of U.S. and international clients in class and individual actions. She played a key role in achieving significant recoveries for funds managed by U.S. and international institutional investors in such cases as *Parmalat Securities Litigation and Styling Technology Corporation*, and on behalf of public pension funds in *Just For Feet Securities Litigation*, among others. Ms. Zilka was on the trial team in:  *Safety Kleen Bondholder Litigation*, which recovered more than $275 million in judgments and settlements on behalf of investors; *TRSL v. AIG* a derivative shareholder action which resulted in a $115 million settlement, the largest such settlement in the history of Delaware Chancery Court; and *In Re Appraisal of Metromedia Int'l Group, Inc.*, which was only the second appraisal action of preferred shares in the history of Delaware Chancery Court which resulted in a judgment against the company of more than $188 million.  In the corporate governance arena, Ms. Zilka has successfully defended clients before the SEC in "no-action" proxy proposal challenges, and has successfully represented clients in Chancery Court "books and records" actions. She has prosecuted numerous direct and derivative breach of fiduciary duty cases, litigating such cutting-edge issues as the propriety of including derivative securities in "poison pills." Ms. Zilka is a co-author with Stuart Grant of "The Role of Foreign Investors in Federal Securities Class Actions," 1442 PLI/CORP. 91 (2004) and "The Current Role Of Foreign Investors In Federal Securities Class Actions," 1620 PLI/Corp 11 (2007).

Ms. Zilka has concentrated her career in securities, corporate and complex commercial litigation. Before joining G&E, she was a partner in a New York City law firm and a member of its investor protection practice group.  Ms. Zilka also has extensive experience litigating other complex matters such as ERISA and bankruptcy, and she has represented investors in proceedings before the NYSE and the American Arbitration Association.

In her personal time, Ms. Zilka has volunteered with Literacy Volunteers Serving Adults and Big Brothers Big Sisters, and is on the Board of Panetiere Partners, a not-for-profit organization.  She serves as a New Castle County Co-Chair for the annual Combined Campaign For Justice which provides critical funding for Delaware's legal services agencies.

**Stephen K. Benjamin**

Stephen Benjamin brings to G&E an extensive career in law, business, politics, government and civic life. In January 1999, South Carolina Governor Jim Hodges appointed Mr. Benjamin to the Governor's Cabinet. The South Carolina Senate unanimously confirmed his appointment as Director of the South Carolina Department of Probation, Parole and Pardon Services, where he served as Chief Executive of the 950 employee, state law enforcement agency.

Prior to accepting his Cabinet appointment, Mr. Benjamin served as Regional Manager of Public Affairs for International Paper Company, where he managed the company's legislative and public affairs activities in South Carolina, North Carolina, Georgia and Virginia. Prior to joining International Paper, he was Manager of Corporate Affairs at Carolina Power & Light Company and served an Associate in the Administrative and Regulatory practice of the prominent McNair Law Firm in Columbia, South Carolina. He has also served as an assistant prosecutor in South Carolina's 4th Judicial Circuit.

The South Carolina Bar Association named Mr. Benjamin a co-recipient of the 2001 Young Lawyer of the Year and he is a recipient of the 2000 Compleat Lawyer Award given by the University of South Carolina School of Law. In 1999 the National Bar Association named him the National Young Lawyer of the Year and the University of South Carolina recognized him as Young Alumni of the Year. He is the recipient of the Lincoln C. Jenkins, Jr. Award given by the Columbia (SC) Urban League for accomplishments as a young professional and was featured as one of Ebony Magazine's 30 Leaders of the Future.

Mr. Benjamin's community leadership experience is extensive. He sits on the University of South Carolina School of Law Partnership Board, the Board of Directors of the USC Development Foundation, The Columbia Urban League, The Greater Columbia Chamber of Commerce and The South Carolina Chamber of Commerce. He serves as the Chair-Elect of the Midlands Education and Business Alliance and as a Statewide Co-Chair of Choose Children First.

Mr. Benjamin received his B.S. in political science from the University of South Carolina in 1991, and his J.D. from the University of South Carolina School of Law in 1994.

**Richard S. Schiffrin**

Richard S. Schiffrin, retired founding partner of Schiffrin Barroway Topaz & Kessler, LLP, has represented institutional investors and consumers in securities and consumer class actions worldwide.  He is licensed to practice law in Pennsylvania and Illinois and has been admitted to practice before numerous United States District Courts.  Mr. Schiffrin is a graduate of DePaul Law School and attended graduate school at the University of Chicago.  After protecting the civil rights of clients for seven years as an Assistant Public Defender with the Office of the Public Defender of Cook County, where he tried hundreds of cases, Mr. Schiffrin founded Schiffrin & Craig, Ltd., representing consumers and individual investors in actions brought against public companies.

Mr. Schiffrin has been recognized for his expertise in many prominent cases, including *In re Tyco International Ltd. Securities Litigation*, the most complex securities class action in history, which resulted in a record $3.2 billion settlement.  The $2.975 billion payment by Tyco represents the single largest securities class action recovery from a single corporate defendant in history, while the $225 million settlement with PricewaterhouseCoopers (PwC) represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history; *In re AremisSoft Corp. Securities Litigation*, a complex case involving litigation in four countries, resulting in a $250 million settlement providing shareholders with a majority of the equity in the reorganized company after embezzlement by former officers; *In re Tenet Healthcare Corp.*, resulting in a $216.5 million settlement and which led to several important corporate governance improvements; *Henry v. Sears, et al.*, one of the largest consumer class actions in history which resulted in a $156 million settlement distributed without the filing of a single proof of claim form by any class member; *Wanstrath v. Doctor R. Crants, et al.*, a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets to a private entity owned by company insiders, resulting in corporate governance reform in addition to the issuance of over 46 million shares to class members; *Jordan v. State Farm Insurance Company*, resulting in a $225 million settlement and other monetary benefits for current and former State Farm policy-holders; and *In re Sotheby's Holdings, Inc. Derivative Litigation*, resulting in a multi-million dollar settlement and significant governance changes.

Mr. Schiffrin is an internationally renowned speaker and lectures frequently on corporate governance and securities litigation.  His lectures include:  the MultiPensions Conference in Amsterdam, Netherlands; the Public Funds Symposium in Washington, D.C.; the European Pension Symposium in Florence, Italy; and the Pennsylvania Public Employees Retirement Summit (PAPERS) in Harrisburg, Pennsylvania.  Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and served as a faculty member at legal seminars, including the Annual Institute on Securities Regulation, NERA: Finance, Law & Economics - Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC): Ethical Issues in the Practice of Securities Law.

Mr. Schiffrin is well-known in his community for his philanthropic activities, including service on the Board of Directors of the Philadelphia Museum of Art and the Philadelphia Chapter of the ALS Association.  Mr. Schiffrin resides outside of Philadelphia with his wife and two sons.

**Abe Alexander**

Mr. Alexander is an associate at Grant & Eisenhofer. He earned his law degree Order of the Coif from the University of Colorado Law School in 2008, where he was member of the school's award-winning national moot court team.  Prior to joining Grant & Eisenhofer, Mr. Alexander clerked for Justice Michael L. Bender of the Colorado Supreme Court.

Mr. Alexander graduated *cum laude* from New York University in 2003 where he received his B.A. in Analytic Philosophy.

**Peter B. Andrews**

Peter Andrews is an associate with Grant & Eisenhofer.  Mr. Andrews' practice involves complex commercial litigation.  Mr. Andrews represents plaintiffs in a variety of matters, including securities class actions, consumer class actions, and Fair Labor Standards Act collective actions.  Mr. Andrews also represents whistleblowers in Federal False Claims Act litigation.

While at Grant & Eisenhofer, Mr. Andrews has, among others, represented investors against the directors and officers of a failed telecom company for breach of fiduciary duty in *Rahl v. Flag Telecom, Inc.*, S.D.N.Y; represented public pension funds in opt-out securities litigation against the officers and directors of *Enron*; represented former employees of a failed health system in order to secure promised interests in pension benefits (*Burstein v. Allegheny Health System,* E.D. PA); and represented a class of former customers against a major cable television provider in *Baldasarri v. Suburban Cable TV Co. (Comcast Corporation)*.  Mr. Andrews has also been actively engaged in litigation in the Delaware Court of Chancery in shareholder derivative and corporate governance cases such as *CALPERS v. Coulter et al., and Lone Star Steakhouse & Saloon Inc.*

Prior to joining Grant & Eisenhofer in 2004, Mr. Andrews was with a major Philadelphia defense firm where he represented securities brokers and broker-dealers in various disputes, including customer complaint litigation.  Mr. Andrews also represented clients in regulatory proceedings pursued by NYSE, NASD, and SEC, and advised clients as to best practices under federal and state insurance and securities regulations.

Mr. Andrews is a 1992 graduate of Colby College in Waterville, Maine, where he captained the Colby rugby team and a 1998 graduate of the Dickinson School of Law of the Pennsylvania State University.  Upon graduation from Dickinson, Mr. Andrews clerked for the Honorable Alan M. Black of the Court of Common Pleas of Lehigh County, Pennsylvania.

Mr. Andrews is admitted to practice in Delaware and Pennsylvania and numerous federal courts.

**Talyana T. Bromberg**

Talyana Bromberg focuses her practice on complex international and national securities fraud litigation. She previously served as a partner at a prominent law firm in Riga, Latvia, where she focused on commercial litigation and arbitration, real estate and property denationalization.  She also served as in-house counsel for a U.S.-Latvian joint venture in the exporting and manufacturing sector.

Ms. Bromberg received her LL.M. degree from the University of Pennsylvania Law School and her J.D. equivalent from the University of Latvia School of Law in Riga in 1989.  Following law school, Ms. Bromberg clerked for Latvia's Circuit Court Judge for Maskavas District of Riga.

**Traci L. Buschner**

A former state prosecutor, Traci Buschner has spent the last 13 years representing plaintiffs in complex litigation ranging from class actions to government contract fraud under federal and state false claims acts. She has been involved in multi-million dollar recoveries on behalf of workers under the Federal Fair Labor Standards Act and has served as counsel in False Claims actions, bringing tens of millions of dollars to the United States Government.  Ms. Buschner represented one of the six main whistleblowers in False Claims Act litigation against Pfizer, Inc., which resulted in the Government's recovery of $2.3 billion in 2009.

Ms. Buschner's practice has involved representation of some of the nation's largest labor unions and their members. Prior to joining Grant & Eisenhofer, she was an attorney with the Washington, DC office of one of the nation's largest personal injury and labor firms and also practiced with an Austin, Texas firm where she spear-headed litigation on behalf of victims of asbestos exposure.

On behalf of the Oil, Chemical & Atomic Workers International Union (OCAW), AFL-CIO, Ms. Buschner was actively involved in environmental litigation which led to Secretary of Energy, William Richardson, canceling a project to recycle radioactive nickel at the Oak Ridge, Tennessee K-25 Nuclear Weapons Complex. The documentation of her efforts to expose faulty government contracting at Department of Energy Nuclear weapons sites was published in The Environmental Forum, Volume 17, No. 6, November/December 2000.

**Michele S. Carino**

Michele Carino is an associate with Grant & Eisenhofer, focusing on securities and corporate governance litigation. Ms. Carino has experience in a variety of complex commercial cases, including matters involving securities, accountant liability, labor and employment, corporate governance, contracts and torts.

Ms. Carino graduated *magna cum laude* from Georgetown University Law Center in 1999 and received a Bachelor's degree in economics from the State University of New York at Binghamton in 1992. Ms. Carino is an adjunct professor at law at Columbia University School of Law, teaching a legal research and writing workshop for first year law students.

**Ananda N. Chaudhuri**

Ananda Chaudhuri received his law degree in 2005 from the University of Pennsylvania, where he was a member of the Journal of International Law and Policy and a member of the Film, Music & Media Society.  He received his B.A. in journalism and anthropology from New York University.  Mr. Chaudhuri's experience includes positions as a Summer Associate at Adkins, Kelston, Zavez, P.C. in Boston, and research and writing positions at Pennsylvania Employment Law Publishing (Philadelphia), *Self Magazine*, and *Working Woman* magazine in New York City.

**Deborah A. Elman**

Deborah Elman focuses on securities fraud and derivative cases at Grant & Eisenhofer.  Prior to joining Grant & Eisnhofer as an associate, Ms. Elman represented clients before the SEC and participated in numerous appearances before federal and state courts as an associate at Milbank, Tweed, Hadley & McCloy in New York.

Ms. Elman served as a law clerk for the Honorable William L. Standish, United States District Judge, in the United States District Court for the Western District of Pennsylvania, participating in all aspects of federal trial court practice.

Ms. Elman graduated *cum laude* in 2001 from the University of Pittsburgh School of Law, where she was Lead Executive Editor of the *Journal of Law and Commerce* and received the Horowitz Graduate Student Paper Prize, the  National Association of Women Lawyers Law Student Achievement Award and the School of Law Community Service Award. She received a Master of Public Health degree in 1997 from Columbia University, where she graduated *cum laude* with a Bachelor of Arts degree in 1995.

**Lydia Ferrarese**

Lydia Ferrarese focuses on securities litigation on behalf of institutional investors.  Ms. Ferrarese has represented sophisticated institutional investors in high-profile international securities fraud class action, *In re Parmalat Securities* Litigation, and her efforts contributed to the firm's successful settlement against financial institutions and Parmalat in that case.

Prior to joining Grant & Eisenhofer, Ms. Ferrarese (who received her initial law degree in Italy) served as a visiting attorney with several prominent law firms in New York, Boston and Los Angeles. She was also an Associate at international law firms in Milano and Bologna, Italy. Ms. Ferrarese drafted numerous agreements and opinions on corporate issues for major Italian and multi-national corporations, focusing on Mergers and Acquisitions.

Ms. Ferrarese received her LL.M. in Corporate, Banking and Finance Law at Fordham University School of Law in New York City, and her J.D. equivalent from the University of Bologna, Italy in 1993.  She was a contributing writer and editor of the "Guide for the Italian Importer to the United States" by Michael Doland, 2000, and editor of the articles, "Dissolution of a Corporation and Minority Shareholders' Rights" *Le Societa', Ipsoa*, May 2001 and "Rules on class actions: Comparative Analysis between the Italian Law and the U.S. Law, " *La Responsabilita' Civile, Utet*, August 2008.

**Shelly L. Friedland**

Shelly Friedland is an experienced litigator with over ten years of experience practicing both civil and criminal law. Prior to joining Grant & Eisenhofer, she practiced at a national class action firm, prosecuting antitrust cases on behalf of plaintiffs injured by price-fixing and illegal monopolistic practices. Previously, her general litigation practice included several securities-related matters, representing both corporate defendants and third-party plaintiffs.

Ms. Friedland is a *cum laude* graduate of Harvard Law School, where she was an Executive Editor of the Human Rights Law Journal.  She received her bachelor's degree from Columbia College, graduating *summa cum laude*.  She is a member of the New York City Bar Association and the American Bar Association, where she is a member of the Class Action and Derivatives Committee of the Litigation Section.

**Christian Keeney**

Christian Keeney is an associate with Grant & Eisenhofer, focusing on complex litigation issues. Mr. Keeney served as a judicial extern for the Honorable Mary Pat Thynge of the U.S. District Court for the District of Delaware while attending Villanova University School of Law. He also served as a certified legal intern for Villanova's Civil Justice Clinic, representing clients in various civil matters.

Mr. Keeney received his J.D. in 2008 from Villanova University School of Law, where he served as the Summer Competition Coordinator for the Moot Court Board, President of the Sports & Entertainment Law Society and Class Representative for the Student Bar Association. Mr. Keeney also published a scholarly article in the University of Florida's Journal of Technology Law and Policy.  He received a B.A. in Political Science from the University of Kentucky. He also participated in Georgetown University's Washington Semester Program, serving as a columnist for the *Georgetown Voice*.

**Christine M. Mackintosh**

Christine Mackintosh adds depth and experience to Grant & Eisenhofer's complex litigation and trial capabilities.  As a member of the Litigation Practice Group of a large Philadelphia law firm, she gained extensive experience in commercial, insurance recovery, securities and bankruptcy litigation.  She acted as lead counsel in several bankruptcy and commercial litigation cases, and served as lead trial counsel in a case brought before the US Bankruptcy Court for the Eastern District of PA.

A *magna cum laude* graduate of St. Joseph's University in Philadelphia, Ms. Mackintosh earned her law degree at the University of Pennsylvania Law School.  She is the co-author of two articles published by the Practicing Law Institute's *Corporate Law & Practice Course Handbook Series*. "Ethical Issues and Their Impact on Securities Litigation," published in September-October, 2003, was co-authored with Marc J. Sonnenfeld, Viveca D. Parker and Marisel Acosta. "Lessons From Sarbanes-Oxley: The Importance of Independence In Internal Corporate Investigations," published in July, 2003, was co-authored with Alfred J. Lechner, Jr.

Ms. Mackintosh is a member of the Philadelphia and Pennsylvania Bar Associations.

**Alessandra C. Phillips**

Alessandra Phillips is an associate at Grant & Eisenhofer, focusing on derivative shareholder suits and appraisal actions. Prior to joining the firm, she worked as an Assistant Attorney

General for the Delaware Department of Justice in both the civil and criminal divisions and for the Art Crime Team, a joint government venture between the FBI and U.S. Department of Justice.

Ms. Phillips is a 2007 graduate of Temple University School of Law, where she served on the board of the Moot Court Honor Society, was a Rubin Public Interest Fellow and a member of Temple's National Trial Team. She graduated in 1996 with a B.A. in Humanities with distinction from Yale University, where she was awarded the Marshall-Allison Fellowship.

**Susan R. Schwaiger**

Susan Schwaiger is an associate with Grant & Eisenhofer.  Ms. Schwaiger practices in the area of antitrust, with experience in a wide variety of industries, and other areas of complex civil litigation.

Prior to joining Grant & Eisenhofer, she was Of Counsel to several leading New York-based antitrust firms representing plaintiffs in class and individual actions.  She has authored *The Submission of Written Instructions and Statutory Language to New York Criminal Juries*, 56 BROOK. L., REV. 1353, nn.18, 24 & 27 (1991).

Ms. Schwaiger graduated *cum laude* from Brooklyn Law School in 1992 with a J.D.  She obtained her M.A. from the University of Kentucky and a B.S. from the University of Tennessee.

She has played significant roles in a number of major antitrust cases including *In re Microcrystalline Cellulose Antitrust Litigation; In re Plastics Additives Antitrust Litigation*; and *In re Lorazepam & Clorazepate Antitrust Litigation*.   In addition, she has represented large corporate entities in individual actions in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*; *In re Chocolate Confectionary Antitrust Litigation*; and *CVS Pharmacy v. American Express Travel Related Services, et al.*  Ms. Schwaiger's experience also includes representation of Shannon Faulkner and Nancy Mellette in their successful litigation against The Citadel military academy in Charleston, South Carolina, where Shannon Faulkner became the first female cadet admitted to the all-male academy in August 1995.

**David A. Straite**

David Straite represents institutional investors in the United States and Europe in all aspects of investor protection litigation, including corporate governance and shareholder derivative actions, hedge fund disputes, and securities actions, with particular focus on claims against financial institutions.

Representative cases include *ABP v. Bank of America Corp.*, 10-cv-2284 (SDNY), an individual securities action on behalf of the EU's largest pension fund related to Bank of America's acquisition of Merrill Lynch; *International Fund Management v. Citigroup, Inc.*, 09-cv-8755 (SDNY), an individual securities action against Citigroup and other defendants on behalf of European investors; *LV Highland Credit Feeder Fund LLC v. Highland Capital Management, L.P.*, 09-08521 (Dallas County, TX), an action on behalf of a feeder fund and offshore investors related to the wind-down of two hedge funds; *TRSL v. Greenberg*, No. 20106 (Del. Chancery), a

shareholder derivative action on behalf of AIG, which resulted in the largest derivative settlement in the history of the Delaware Court of Chancery; *In re Lehman Brothers Equity/Debt Securities Litigation,* 08-cv-5523 (SDNY), a securities class action on behalf of Lehman investors.

Prior to joining G&E, Mr. Straite was an associate in the Antitrust department in Skadden Arps' New York office, where he represented corporations and investors during the antitrust review of mergers and acquisitions under section 7 of the Clayton Act, HSR premerger notification under section 7A, criminal antitrust grand jury investigations, civil regulatory investigations by the DOJ and FTC, class action antitrust litigation, complex document production and e-discovery, and CFIUS.  Mr. Straite was also a litigation associate in the Philadelphia office of Blank Rome, primarily defending claims against air carriers and avionics components manufacturers, and had a solo practice advising small businesses, negotiating contracts, drafting RFP responses, and acting as outside general counsel to a telecommunications start-up company.

Mr. Straite is a 1996 *magna cum laude* graduate of the Villanova University School of Law, where he was a member of the Order of the Coif, the Federalist Society and the St. Thomas More Society.  In recognition of his efforts as managing editor of the Villanova Law Review, he received the Arthur Pulling Award.  Mr. Straite is a 1993 graduate of the Murphy Institute of Political Economy at Tulane University in New Orleans, where he majored in both Political Economy and Economics.

Mr. Straite recently authored *Netherlands: Amsterdam Court of Appeal Approves Groundbreaking Global Settlements Under the Dutch Act on the Collective Settlement of Mass Claims*, in The International Lawyer's annual "International Legal Developments in Review" (2009); was a contributing author to Dabbah and Lasok's *Merger Control Worldwide* (2005); and contributed to four annual supplements (2002-2005) of the seminal premerger treatise, *Acquisitions Under the Hart-Scott-Rodino Antitrust Improvements Act* by Axinn, Fogg, Stoll & Prager.  He has lectured frequently on topics related to the attorney-client privilege and work product doctrine.  He is also a Member of the ABA Section of International Law (Europe Committee and International Securities and Capital Markets Committee) and ABA Section of Litigation; The Federalist Society; and The Royal Society of St. George.

**Ned C. Weinberger**

Ned Weinberger is an associate with Grant & Eisenhofer, focusing on securities litigation and shareholder derivative litigation on behalf of institutional investor clients.

Mr. Weinberger attended the Louis D. Brandeis School of Law at the University of Louisville, where he served on the *Journal of Law and Education*. During law school, Mr. Weinberger worked for a nationally-recognized law firm in Louisville, Kentucky. He graduated *cum laude* in May 2005 from Miami University with a B.A. in English Literature.

**Marc D. Weinberg**

Prior to joining G&E in 2006, Marc Weinberg gained a fourteen-year track record with two of the nation's leading securities litigation firms.  He focuses on institutional services at Grant & Eisenhofer.

Mr. Weinberg earned his law degree at Widener University in 1992 after graduating from Pennsylvania State University.  He is a member of the Philadelphia and Pennsylvania Bar Associations, and the Moot Court Honor Society.

**Tracy L. Campbell**

Tracy Campbell is an attorney at Grant & Eisenhofer, focusing on complex securities fraud litigation in class action cases. She received her law degree from the University of Houston Law Center in 2003, where she completed an externship at the Methodist Health Care System. Before joining Grant & Eisenhofer, Ms. Campbell focused her practice on the area of health law. Upon graduating from law school, she worked at a mid-sized firm in Houston where she concentrated primarily on asbestos litigation. Subsequently, she worked for a small transactional health law firm in San Antonio, Texas.

Ms. Campbell received her B.S. in Business Administration with a Concentration in International Business Management from Goldey-Beacom College in 1997, where she graduated *magna cum laude*. Prior to entering law school, Ms. Campbell gained business experience as an analyst at JP Morgan. Upon relocating to Texas, she continued to pursue a career in the financial industry while obtaining her law degree. Ms. Campbell is a member of the Delaware Bar Association.

**Alice Y. Cho**

Alice Cho focuses on securities fraud class actions at Grant & Eisenhofer. She graduated from Brooklyn Law School in 2004 after receiving a Bachelor of Arts degree from the University at Albany.

During law school, Ms. Cho interned as a law clerk for the Honorable Frederic Block, United States District Court, Eastern District of New York. She also worked with the New York City Human Rights Commission and the Asian American Legal Defense and Education Fund.

Ms. Cho currently serves as Executive Vice President of the Korean American Lawyers Association of Greater New York (KALAGNY).

**R. Alexander Gartman**

Alexander Gartman concentrates on securities litigation as a staff attorney at Grant & Eisenhofer. He graduated *cum laude* from Temple University School of Law in 2005. He served on the Student Bar Association Budget Committee, and  the Curriculum Committee, working with faculty to revise first year curriculum.

Mr. Gartman received a Bachelor of Business Administration degree in Finance in 1998 from The College of William and Mary, where he double majored in Economics.

**Matthew Hartman**

Matthew Hartman is a staff attorney at Grant & Eisenhofer, where his responsibilities include coordinating the work of document review attorneys, tracking deposition schedules and preparation, proofreading and e-filing legal memoranda. He monitors court dockets, e-files in diverse jurisdictions; checks federal and local rules for filing compliance issues, organizes potential exhibits for depositions, monitors responses to subpoenas and document requests and monitors document conversion work by vendors for uploading to various document review databases.

Mr. Hartman joined Grant & Eisenhofer in 2004 as a document review attorney in a prominent securities case involving mismanagement and falsification of business and stock records. While on that case, he developed a training manual for attorneys joining the team. His previous corporate experience maintaining corporate records and working on securities issuances and acquisitions has provided a valuable knowledge base for business litigation. While working for the Silicon Valley office of an international law firm, he drafted, researched and revised corporate documents, maintained stock and option ledgers, reviewed documents in due diligence projects for mergers, acquisitions and financings, and performed legal research in the area of compliance with state securities regulations.

A graduate of American University with an M.A. in philosophy and social policy, Mr. Hartman earned his law degree from the Duquesne University School of Law in 1997. He also holds a Certificate in International Business Management from the University of California – Irvine.

**Michael A. Morris**

Michael Morris received his law degree from the University of Bridgeport Law School in 1980. He has been a member of the Connecticut Bar since 1980.

He was employed by the City of New Haven as Special Assistant Corporation Counsel where he represented and provided legal counsel for several city departments. He subsequently established his own law practice in New Haven which he maintained until 2000.

Mr. Morris served as Counsel to the Board of Directors for the Greater New Haven Transit District which involved federal and state legal matters in transportation, government contract and grant development, and presenting testimony to the Connecticut State Legislature.

Mr. Morris earned a Master of Business Administration degree from the University of Bridgeport. He also helped organize and became the first president of the University of Bridgeport Law School Alumni Association.

**Joseph P. Neary**

Joseph Nearey focuses on complex securities litigation as a staff attorney at Grant & Eisenhofer. He received his law degree in 2001 from Temple University School of Law, where he was a member of the Temple International and Comparative Law Journal.  He attended the Temple University School of Law Semester in Japan and interned at a prominent Tokyo firm.  He served as a summer intern for the Honorable James R. Cavanaugh of the Superior Court of Pennsylvania.

Mr. Nearey graduated *cum laude* from Hamilton College in 1997 with dual Bachelor degrees in English Literature and Government.

**Lindsay A. Roseler**

Lindsay Roseler concentrates on class action and complex fraud actions brought under the Federal Securities Acts and the False Claims Act. She has actively participated on litigation teams for cases such as In re Parmalat Securities Litigation and In re Delphi Corp. Securities Litigation.

Ms. Roseler received her law degree in 2005 from Syracuse University College of Law, where she was a member of the Syracuse Journal of International Law and Commerce. She is a Certified Mediator and has trained in International Business Mediation and Alternative Dispute Resolution.

Ms. Roseler received a Bachelor of Arts in International Relations and Diplomacy with a minor in International Business Administration from Schiller International University in Europe. While in Europe, she worked for the United States Commercial Department in Madrid, Spain and for the United States Military in London, England and Heidelberg, Germany. Upon graduation, Ms. Roseler returned to the United States and worked with an international development foundation before pursuing her legal education. She is fluent in German and has advanced knowledge of Spanish.

**Raymond Schuenemann**

Raymond Schuenemann focuses on securities litigation as a staff attorney at Grant & Eisenhofer. He is a graduate of the Widener University School of Law and a member of the American Bar Association and the Pennsylvania Bar Association.

Prior to joining Grant & Eisenhofer, Mr. Schuenemann worked as an associate in labor law, nursing home law, sales and use tax law, and real estate law. He also worked as a consultant in the area of sales and use tax.

Mr. Schuenemann received a B.S. in Finance from West Chester University in 1999. He has experience as an investment accountant and internal auditor in the banking and finance sectors.

### Selected Institutional Client Representations

G&E has represented or is currently representing a number of institutional investors in major securities fraud actions, shareholder derivative suits, other breach-of-fiduciary-duty cases and related ancillary proceedings around the country.  Some of our cases include:

**(A)**     **In Securities Fraud Litigation:**

    **(1)**     **Cellstar**

In one of the earliest cases filed after the enactment of PSLRA, the State of Wisconsin Investment Board ("SWIB") was designated lead plaintiff and G&E was appointed lead counsel in Gluck v. CellStar Corp., 976 F.Supp. 542 (N.D.Tex. 1997).  The cited opinion is widely considered the landmark on standards applicable to the lead plaintiff/lead counsel practice under PSLRA. (See, especially, In re Cendant Corp. Litig., 2001 WL 980469, at *40, *43 (3d Cir. Aug. 28, 2001), citing CellStar.)  After the CellStar defendants' motion to dismiss failed and a round of discovery was completed, the parties negotiated a $14.6 million settlement, coupled with undertakings on CellStar's part for significant corporate governance changes as well.  With SWIB's active lead in the case, the class recovery, gross before fees and expenses, was approximated to be 56% of the class' actual loss claims, about 4 times the historical 14% average gross recovery in securities fraud litigation.  Because of the competitive process that SWIB had undertaken in the selection of counsel, resulting in a contingent fee percentage significantly less than the average 31% seen historically, the net recovery to the class after all claims were submitted came to almost 50% of actual losses, or almost 5 times the average net recovery.

    **(2)**     **DaimlerChrysler**

Florida State Board of Administration ("FSBA") was appointed lead plaintiff and G&E co-lead counsel in the PSLRA class action on behalf of shareholders of the former Chrysler Corporation who exchanged their shares for stock in DaimlerChrysler in Chrysler's 1998 business combination with Daimler-Benz AG which was represented at the time as a "merger of equals."  On February 5, 2004, the court granted final approval of a $300 million cash settlement in that case, among the largest securities class action settlements since the enactment of the PSLRA.  In re DaimlerChrysler Securities Litigation, D. Del., C.A. No. 00-0993.

    **(3)**     **Oxford Health Plans**

Public Employees' Retirement Association of Colorado ("ColPERA") engaged G&E to represent it to seek the lead plaintiff designation in the numerous securities fraud actions that were consolidated into In re Oxford Health Plans, Inc., Securities Litig., S.D.N.Y., MDL Docket No. 1222 (CLB).  The court

ordered the appointment of ColPERA as a co-lead plaintiff and G&E as a co-lead counsel.   G&E and its co-leads filed the Consolidated Amended Complaint. Memorandum opinions and orders were entered denying defendants' motions to dismiss (see 51 F.Supp. 2d 290 (May 28, 1999) (denying KPMG motion) and 187 F.R.D. 133 (June 8, 1999) (denying motion of Oxford and individual director defendants)).   The case settled for $300 million, another settlement negotiated by G&E that is among the largest settlements since the enactment of the PSLRA.

(4)      **Dollar General**

The U.S. District Court for the Middle District of Tennessee ordered the appointment of Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL") as lead plaintiffs and G&E as co-lead counsel in a PSLRA and Rule 10b-5 case against the defendant company, its accountants, and individual insiders who allegedly issued false and misleading statements over an alleged 3-year Class Period and failed to disclose adverse facts about the company's financial results.   Settlements were approved involving a cash payment of $162 million from the company and the individual defendants, an additional $10.5 million from Deloitte & Touche, LLP (Dollar General's accountants), and beneficial governance reforms for Dollar General.   In re Dollar General Securities Litigation, M.D. Tenn., No. 3:01-0388, orders dated July 19, 2001 and September 29, 2003.

(5)      **Just For Feet**

G&E represented the State of Wisconsin Investment Board ("SWIB") in a federal securities class action against certain officers and directors of Just For Feet, Inc., and against Just For Feet's auditors, in the Northern District of Alabama.   That action arose out of the defendants' manipulation of the company's accounting practices to materially misstate the company's financial results.   Having been appointed co-lead plaintiff, SWIB and (G&E) as its counsel took primary responsibility for the case.   (SWIB v. Ruttenberg, et al., N.D. Ala., CV 99-BU-3097-S and 99-BU-3129-S, 102 F. Supp. 2d 1280 (N.D. Ala. 2000)).   SWIB obtained a policy limits settlement with the individual defendants' D&O carrier and an additional $7.4 million from Just For Feet's auditor, for a recovery totaling approximately $32 million.

(6)      **Waste Management**

G&E filed a non-class federal securities action against Waste Management, Inc., its former and current directors, and the company's accountants in the Northern District of Florida, on behalf of Lens Investment Management, LLC and Ram Trust Services, Inc.   The complaint alleged that Waste Management had, over a five-year period, issued financial statements and other public statements that were materially false and misleading due to the defendants' fraudulent and improper accounting manipulations.   G&E also filed non-class actions in Illinois state court,

asserting similar claims on behalf of the Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL"). After G&E successfully defeated the defendants' motions to dismiss FSBA's complaint in state court, FSBA's cause of action was transferred to the Northern District of Florida. At the point where there were competing motions for summary judgment pending, G&E successfully negotiated a settlement pursuant to which each plaintiff received several times what it would have received in the class action. Florida State Board of Administration, Ram Trust Services, Inc. and Lens Investment Management, LLC v. Waste Management, Inc., et al., N.D.Fla., No. 4:99CV66-WS, amended complaint filed June 21, 1999; and Teachers' Retirement System of Louisiana v. Waste Management, Inc., et al., Circuit Ct., Cook Co. [Ill.], No. 98 L 06034, complaint filed May 18, 1999.

**(7)    Total Renal Care**

In June 1999, the Louisiana State Employees' Retirement System ("LASERS") and Teachers' Retirement System of Louisiana ("TRSL") were appointed as Lead Plaintiff in a federal securities class action against Total Renal Care ("TRC") and certain of its officers and directors, pending in the U.S. District Court for the Central District of California. G&E was approved as Plaintiffs' Lead Counsel. Plaintiffs filed their Corrected Consolidated Amended Complaint against the defendants, alleging, inter alia, that the defendants manipulated TRC's financial statements so as to materially overstate TRC's revenues, income and assets and to artificially inflate TRC's stock price. G&E negotiated a settlement requiring TRC's payment of $25 million into a settlement fund for the class and the company's adoption of certain internal corporate governance policies and procedures designed to promote the future accountability of TRC's management to its stockholders. At the time of the settlement, this amount represented 33% of the value of the Company's shares. In re Total Renal Care Securities Litigation, C.D. Cal., Master File No. CV-99-01745 CBM.

**(8)    Safety-Kleen**

G&E was sole lead counsel for the plaintiffs in a federal securities class action and a series of related individual actions against former officers, directors, auditors and underwriters of Safety-Kleen Corporation, who are alleged to have made false and misleading statements in connection with the sale and issuance of Safety-Kleen bonds. In re Safety-Kleen Corp. Bondholders Litig., D.S.C., No. 3:00-CV-1145-17, consolidated complaint filed January 23, 2001. In March of 2005, after a jury had been selected for trial, the auditor defendant settled with the class and individual claimants for $48 million. The trial then proceeded against the director and officer defendants. After seven weeks of trial, the director defendants settled for $36 million, and the court entered judgment as a matter of law in favor of the class and against the company's CEO and CFO, awarding damages of over $190 million.

**(9)**   **Styling Technology Corporation**

G&E represented funds managed by Franklin Advisors, Inc., Conseco Capital Management, Inc., Credit Suisse Asset Management, Pilgrim American Funds and Oppenheimer Funds, Inc. in a securities action brought in May 2001, asserting both federal (1933 Act) and state claims brought in the Superior Court of California.   The suit alleged that certain former officers, as well as the independent auditors, of Styling Technology Corporation made false and misleading statements in connection with the sale and issuance of Styling Technology bonds.   Styling Technology filed for bankruptcy protection under Chapter 11 in August 1999.   In October 2000, discovery of accounting irregularities and improperly recognized revenue forced the Company to restate its financial statements for the years 1997 and 1998.   Plaintiffs, owning $66.5 million of the total $100 million in bonds sold in the offering, settled the case for a recovery representing approximately 46% of the losses suffered by the client funds that they manage.   Franklin High Income Trust, et al. v. Richard R. Ross, et al., Cal. Super., San Mateo Co. [Calif.], Case No: 415057, complaint filed November 28, 2000.

**(10)**   **Tyco**

G&E is co-lead counsel representing co-lead plaintiffs Teachers' Retirement System of Louisiana and Louisiana State Employees' Retirement System in a securities class action against Tyco International Ltd. and PricewaterhouseCoopers LLP.   The complaint alleged that the defendants, including Tyco International, Dennis Kozlowski and other former executives and directors of Tyco, and PricewaterhouseCoopers, made false and misleading public statements and omitted material information about Tyco's finances in violation of Sections 10(b), 14, 20A and 20(a) of the Securities Exchange Act of 1934.   Tyco agreed to fund $2.975 billion in cash to settle these claims, representing the single largest payment from any corporate defendant in the history of securities class action litigation.   PricewaterhouseCoopers also agreed to pay $225 million to settle these claims, resulting in a total settlement fund in excess of $3.2 billion.

**(11)**   **Global Crossing**

Ohio Public Employees' Retirement System ("Ohio PERS") and the Ohio Teachers' Retirement System ("STRS") were appointed lead plaintiff and G&E was appointed sole lead counsel in a securities class action against Global Crossing, Ltd. and Asia Global Crossing, Ltd.   In re Global Crossing, Ltd. Securities & "ERISA" Litig., MDL Docket No. 1472.   In November 2004, the Court approved a partial settlement with the Company's former officers and directors, and former outside counsel, valued at approximately $245 million.   In July 2005, the Court approved a $75 million settlement with the Citigroup-related defendants (Salomon Smith Barney and Jack Grubman).   In October 2005, the Court approved a settlement with Arthur Anderson LLP and all Anderson-related

defendants for $25 million.  In October 2006, the Court approved a $99 million settlement with various financial institutions.  In total, G&E has recovered $448 million for investors in Global Crossing.

**(12)**     **Telxon Corporation**

G&E filed a federal securities and common law action against Telxon Corporation, its former officers and directors and its accountants in the Northern District of Ohio on behalf of Wyser-Pratte Management Co., Inc., an investment management firm.  Following mediation, G&E negotiated a settlement of all claims.  <u>Wyser-Pratte Management Co., Inc. v. Telxon Corp., et al.</u>, N.D. Ohio, Case No. 5:02CV1105.

**(13)**     **Hayes Lemmerz**

G&E served as lead counsel to plaintiffs and class members who purchased or acquired over $1 billion in bonds issued by Hayes Lemmerz International, Inc. G&E negotiated a settlement worth $51 million.  <u>Pacholder High Yield Fund, Inc. et al. v. Ranko Cucoz et al.</u>, E.D. Mich., C.A. No. 02-71778.

**(14)**     **Enron/Worldcom**

In 2001, G&E, on behalf of various Ohio public pension funds, filed opt-out actions which remain pending.  <u>Public Employees' Retirement System of Ohio v. Ebbers, et al.</u>, S.D.N.Y. No. 03-Civ-0338; <u>Public Employees' Retirement System of Ohio v. Fustow, et al.</u>, S.D. Tex. No. H-02-4788.

**(15)**     **Asia Pulp and Paper**

On behalf of bondholders of various subsidiaries of Indonesian paper-making giant Asia Pulp and Paper ("APP"), G&E filed an action alleging that the bondholders were defrauded by APP's financial statements which were inflated by nearly $1 billion in fictitious sales.  Defendants' motions to dismiss were denied.  <u>Franklin High Income Trust, et al. v. APP Global Ltd., et al.</u>, N.Y. Sup. Ct., Trial Div., Index No. 02-602567.   The matter was resolved through a confidential settlement several years ago.

**(16)**     **Babcock Borsig**

G&E filed suit against German company Babcock Borsig, AG alleging that Babcock's CEO, in concert with officers of Babcock's largest shareholder, German conglomerate TUI, devised a plan to overstate Babcock's income through improper use of an accounting device relating to a Babcock subsidiary.  The suit was filed on behalf of Wyser-Pratte Management Co., Inc..  Defendants' motions to dismiss were granted and the case had been terminated.   <u>Wyser-Pratte</u>

Management Co., Inc. v. Babcock Borsig, A.G., et al., N.Y.Sup. Ct., Trial Div., Index No. 603364/02.

**(17)   Alstom**

In January 2004, Louisiana State Employees' Retirement System was appointed as co-lead plaintiff and G&E was appointed co-lead counsel in a class action against Alstom SA, a French corporation engaged in power generation, transmission and distribution in France.  The suit alleges that Alstom and other defendants made false and misleading statements concerning the growth and financial performance of its transportation subsidiary.  Motions to dismiss were denied in part and granted in part and an amended complaint has been filed.  In re Alstom SA Sec. Litig., S.D.N.Y. 03-cv-6595.

**(18)   Parmalat**

G&E is co-lead counsel in this securities class action arising out of a multi-billion dollar fraud at Parmalat, which the SEC has described as "one of the largest and most brazen corporate financial frauds in history."  The court has recently denied the motions to dismiss filed by both the company and their auditors.  In re Parmalat Securities Litig., S.D.N.Y. 04-MDL-1653.

**(19)   Marsh & McLennan**

G&E is co-lead counsel for the class of former Marsh & McLennan shareholders in this federal securities class action alleging that the company, its officers, directors, auditors, and underwriters participated in a fraudulent scheme involving, among other things, bid-rigging and secret agreements to steer business to certain insurance companies in exchange for "kick-back" commissions.  In re Marsh & McLennan Companies, Inc. Sec. Litig., S.D.N.Y. 04-cv-8144.

**(20)   Hollinger International**

G&E is co-lead counsel in this securities class action arising out of a company scandal at Hollinger International, Inc. which involves payment of millions of dollars to certain executives, including the company's former CEO, Lord Conrad Black, relating to sales of company assets.  G&E has entered into a tentative settlement with Hollinger that is awaiting approval from the Court.  Hollinger International Securities Litigation, N.D. Ill. 04-C-0834**.**

**(21)   Delphi**

Delphi is an automotive company that was spun off of General Motors.  The company failed as a stand-alone entity, but concealed its failure from investors.  G&E's client is one of the largest pension funds in the world and is a lead plaintiff, and G&E serves as a co-lead counsel in the case.  In re Delphi

<u>Corporation Securities Derivative & ERISA Litigation</u>, E.D. Mich., MDL No. 1725.

**(22)   Refco**

A mere two months after going public, Refco admitted that its financials were unreliable because the company had concealed that hundreds of millions of dollars of uncollectible receivables were owed to the company by an off-balance sheet entity owned by the company's CEO.  G&E serves as a co-lead counsel and G&E's client, PIMCO, is a co-lead plaintiff.   <u>In re Refco, Inc. Securities Litigation</u>, S.D.N.Y., No. 05 Civ. 8626.

**(23)   Sprint**

G&E represented lead plaintiff institutional investor Carlson Capital, L.P. in this class action suit against Sprint Corporation and its former CEO and directors for breach of fiduciary duty in the consolidation of two separate tracking stocks.  In December 2007, a $57.5 million settlement was approved.   <u>In re Sprint Corporation Shareholder Litigation</u>, D. Kan., No. 04 CV 01714.

**(B)   In Derivative and Other Corporate Litigation:**

**(1)   Digex**

This case resulted in a settlement of over $400 million, the largest reported settlement in the history of Delaware corporate litigation.  G&E represented the lead plaintiff, TCW Technology Limited Partnership, in alleging that Digex, Inc.'s  directors and majority stockholder (Intermedia, Inc.) breached their fiduciary duties in connection with WorldCom's proposed $6 billion acquisition of Intermedia.  Among other issues, WorldCom was charged with attempting to usurp a corporate opportunity that belonged to Digex and improperly waiving on Digex's behalf the protections of Delaware's business combination statute.  Following G&E's argument on a motion to preliminarily enjoin the merger, the Court issued an opinion declining to enjoin the transaction but acknowledging plaintiffs' likelihood of success on the merits. <u>In re Digex, Inc. Shareholders Litigation</u>, C.A. No. 18336, 2000 WL 1847679 (Del. Ch. Dec. 13, 2000).  The case settled soon thereafter.

**(2)   Willamette**

In January 2002, at the request of Wyser-Pratte Management Co., Inc. and Franklin Mutual Advisors, G&E filed a shareholder derivative action in Oregon state court claiming that the board of Willamette Industries, Inc. breached its fiduciary duties by attempting to cause Willamette to acquire the asbestos-ridden building products division of Georgia-Pacific Company as part of a scorched-earth effort to defeat a hostile takeover of Willamette by its chief competitor,

Weyerhaeuser Company.  G&E obtained an expedited hearing on its motion for a preliminary injunction and obtained an agreement from Willamette at the hearing not to consummate any deal with Georgia-Pacific without providing prior notice to G&E.  Almost immediately thereafter, and after years of fighting against Weyerhaeuser's take-over attempts, the Willamette board relented and agreed to sell the company to Weyerhaeuser.  Wyser-Pratte Management Co., Inc. & Franklin Mutual Advisors v. Swindells, et al., No. 0201-0085 (Ore. Cir. Ct.).

**(3)**  **Medco Research**

In January 2000, G&E filed a shareholder derivative action on behalf of State of Wisconsin Investment Board against the directors of Medco Research, Inc. in Delaware Chancery Court.  The suit alleged breach of fiduciary duty in connection with the directors' approval of a proposed merger between Medco and King Pharmaceuticals, Inc.  G&E was successful in obtaining a preliminary injunction requiring Medco to make supplemental and corrective disclosures. Because of G&E's efforts, the consideration to Medco's stockholders increased by $4.08 per share, or $48,061,755 on a class-wide basis.  State of Wisconsin Investment Board v. Bartlett, et al., C.A. No. 17727, 2000 WL 193115 (Del. Ch. Feb. 9, 2000).

**(4)**  **Occidental Petroleum**

G&E represented Teachers' Retirement System of Louisiana and served as co-counsel in a shareholders' derivative suit against the directors of Occidental Petroleum Corporation, challenging as corporate waste the company's excessive compensation arrangements with its top executives.  Filed in California state court, the case settled when the company agreed to adopt CalPERS's model principles of corporate governance and undertook to reconstitute its key committees so as to meet the tests of independence under those principles. Teachers' Retirement System of Louisiana v. Irani et al., No. BC1850009 (Cal. Super.).

**(5)**  **Staples, Inc.**

On behalf of Teachers' Retirement System of Louisiana, G&E challenged Staples, Inc.'s proposed "recapitalization" plan to unwind a tracking stock, Staples.com, which it created in 1998.  G&E obtained a preliminary injunction against the deal and the deal terms were ultimately altered resulting in a $15-$20 million gain for shareholders.  Additional disclosures were also required so that shareholders voted on the challenged transaction based on a new proxy statement with substantial additional disclosures.  In re Staples, Inc. Shareholders Litigation, C.A. No. 18784, 2001 WL 640377 (Del. Ch. June 5, 2001).

**(6)**     <u>**SFX/Clear Channel Merger**</u>

G&E filed a class action on behalf of Franklin Advisers, Inc. and other stockholders of SFX, challenging the merger between SFX and Clear Channel. While the SFX charter required that in any acquisition of SFX all classes of common stockholders be treated equally, the merger, as planned, provided for approximately $68 million more in consideration to the two Class B stockholders (who happened to be the senior executives of SFX) than to the public stockholders. The merger was structured so that stockholders who voted for the merger also had to vote to amend the Charter to remove the non-discrimination provisions as a condition to the merger. G&E negotiated a settlement whereby $34.5 million more was paid to the public stockholders upon closing of the merger. This was more than half the damages alleged in the Complaint. <u>Franklin Advisers, Inc., et al. v. Sillerman, et al.</u>, C.A. No. 17878 (Del. Ch.).

**(7)**     <u>**Lone Star Steakhouse & Saloon**</u>

G&E filed a derivative lawsuit on behalf of CalPERS against Lone Star's former CEO, Jamie Coulter, and six other Lone Star directors. The suit alleged that the defendants violated their fiduciary duties in connection with their approval of the company's acquisition of CEI, one of Lone Star's service providers, from Coulter, as well as their approvals of certain employment and compensation arrangements and option repricing programs. Before filing the suit, G&E had assisted in CalPERS in filing a demand for books and records pursuant to Section 220 of the Delaware General Corporation Law. The company's response to that demand revealed the absence of any documentation that the board ever scrutinized transactions between Lone Star and CEI, that the board negotiated the purchase price for CEI, or that the board analyzed or discussed the repricing programs. In August 2005, the Court approved a settlement negotiated by G&E whereby Lone Star agreed to a repricing of options granted to certain of its officers and directors, payments from certain of the officers and directors related to option grants, and a $3 million payment from Lone Star's director and officer insurance policy. Lone Star further acknowledged that the lawsuit was one of the significant factors considered in its adoption of certain corporate governance reforms. <u>California Public Employees' Retirement System v. Coulter, et al.</u>, C.A. No. 19191 (Del. Ch.).

**(8)**     <u>**Siebel**</u>

The issue of excessive executive compensation has been of significant concern for investors, yet their concerns have remained largely unaddressed due to the wide discretion afforded corporate boards in establishing management's compensation. G&E effected a sea change in the compensation policies of Siebel Systems, a leading Silicon Valley-based software developer long considered to be an egregious example of executive compensation run amok, and caused Thomas Siebel, the company's founder and CEO, to cancel 26 million options with a

potential value of $54 million.  Since the company's founding in 1996, Siebel Systems had paid Mr. Siebel nearly $1 billion in compensation, largely in the form of lavish stock options that violated the shareholder-approved stock option plan.  In addition, the company had paid its directors millions of dollars for their service on the board, also in the form of stock options, at levels exponentially higher than that paid to directors on the boards of similar companies.  G&E, on behalf of Teachers' Retirement System of Louisiana, commenced a derivative action challenging the company's compensation practices in September of 2002 even though a prior, similar lawsuit had been dismissed.  Following a hard-fought and acrimonious litigation, G&E successfully negotiated a settlement that, in addition to the options cancellation, included numerous corporate governance reforms.   The company agreed to, inter alia, restructure its compensation committee, disclose more information regarding its compensation policies and decisions, cause its outside auditor to audit its option plans as part of the company's annual audit, and limit the compensation that can be paid to directors.  The Siebel Systems settlement generated considerable favorable press in the industry, as investors and compensation experts anticipated that the reforms adopted by Siebel Systems could affect how other companies deal with compensation issues.  <u>Teachers' Retirement System of Louisiana v. Thomas M. Siebel, et al.</u>, C. A. No. 425796 (Cal. Super.).

**(9)**     **HealthSouth Corporation**

G&E filed a derivative and class action lawsuit on behalf of Teachers' Retirement System of Louisiana against HealthSouth Corporation, its auditors, certain individual defendants, and certain third parties seeking, <u>inter alia</u>, an order forcing the HealthSouth board of directors to hold an annual shareholder meeting for the purpose of electing directors, as no such meeting had been held for over thirteen months.  Following a trial, G&E negotiated a settlement of part of its claims, pursuant to which five of the defendant directors who were alleged to have engaged in improper self-dealing with the company agreed to resign and be replaced by directors selected by a committee comprised in part by institutional investors of HealthSouth.  <u>Teachers' Retirement System of Louisiana v. Scrushy</u>, Del. Ch., C.A. No. 20529 (March 2, 2004).

**(10)**    **NYSE/Archipelago**

G&E served as co-lead counsel in a class action in New York state court, brought on behalf of a class of seat holders of the New York Stock Exchange ("NYSE") challenging the proposed merger between the NYSE and Archipelago Holdings, LLC.  The complaint alleged that the terms of the proposed merger were unfair to the NYSE seat holders, and that by approving the proposed merger, the NYSE board of directors had violated their fiduciary duties of care, loyalty and candor, because the transaction was the result of a process that was tainted by conflicts of interest and the directors failed adequately to inform themselves of the relevant facts.  The court denied the defendants' motion to dismiss, and after expedited

discovery, including over 30 depositions in a five week period, a preliminary injunction evidentiary hearing was held, in which plaintiffs sought to postpone the vote on the merger until a new, current fairness opinion was obtained from an independent financial advisor.  On the second day of the hearing, the defendants agreed to the relief being sought, namely that they would obtain a new, current fairness opinion from an independent financial advisor.  In re New York Stock Exchange/Archipelago Merger Litig., No. 601646/05 (Sup. Ct. N.Y. Co.)

**(11)**   **Caremark / CVS**

G&E represented institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as that board's decision to reject a competing proposal from a different suitor.  Ultimately, through the litigation, G&E was able to force Caremark's board not only to provide substantial additional disclosures to the public shareholders, but also to renegotiate the terms of the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and to ensure Caremark's shareholders had statutory appraisal rights in the deal.  Louisiana Municipal Police Employees' Retirement System, et al. v. Crawford, et al., C.A. No. 2635-N (Del. Ch.).

**(12)**   **AIG**

In the largest settlement of derivative shareholder litigation in the history of Delaware Chancery Court, G&E reached a $115 million settlement in a suit against former executives of AIG for breach of fiduciary duty.  The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets. Teachers' Retirement System of Louisiana v. Greenberg, et al., C. A. No. 20106-VCS (Del. Ch.).

Exhibit D

1   Patrice L. Bishop (182256)
    pbishop@ssbla.com
2   STULL, STULL & BRODY
    10940 Wilshire Blvd., Suite 2350
3   Los Angeles, CA  90024
    Tel:    310-209-2468
4   Fax:    310-209-2087

5   Howard T. Longman
    hlongman@ssbny.com
6   STULL, STULL & BRODY
    6 East 45th Street
7   New York, NY  10017
    Tel:    212-687-7230
8   Fax:    212-490-2022

9   Gary S. Graifman
    ggraifman@kgglaw.com
10  KANTROWITZ, GOLDHAMER &
      GRAIFMAN
11  747 Chestnut Ridge Road
    Chestnut Ridge, NY  10977
12  Tel:    845-356-2570
    Fax:    845-356-4335
13

14  Counsel for Plaintiffs
    Martin Vogel and Kenneth Mahoney
15

16              UNITED STATES DISTRICT COURT

17          FOR THE NORTHERN DISTRICT OF CALIFORNIA

18                   SAN JOSE DIVISION

19  IN RE: APPLE INC.                 )  Master File No. C06-05208-JF
    SECURITIES LITIGATION             )
20                                    )  DECLARATION OF PATRICE L. BISHOP IN
                                      )  SUPPORT OF APPLICATION FOR
21  _____    )  ATTORNEYS' FEES AND EXPENSES
                                      )  FILED ON BEHALF OF STULL, STULL &
22  This Document Relates To:         )  BRODY
                                      )
23      ALL ACTIONS.                  )
                                      )
24  _____    )  DATE:        February 18, 2011
                                      )  TIME:        9:00 a.m.
25                                    )  CRTRM:       3, 5th Floor
                                         JUDGE:       Hon. Jeremy D. Fogel
26

27

28

DECLARATION OF PATRICE L. BISHOP IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES AND
EXPENSES FILED ON BEHALF OF STULL, STULL & BRODY - MASTER FILE NO. C06-05208-JF

I, Patrice L. Bishop, declare and say that:

1.      I am a senior associate with of the law firm of Stull, Stull & Brody and am a member of the State Bar of California and admitted to practice before this Court.  I submit this Declaration in support of my firm's application for an award of attorneys' fees in connection with services rendered in this case, as well as the reimbursement of expenses incurred by my firm in connection with this litigation.

2.      My firm acted as a counsel for plaintiffs Martin Vogel and Kenneth Mahoney in the above-entitled case, and actively worked in its prosecution, including drafting, reviewing and editing pleadings, correspondence and mediation papers, appearing in court, reviewing documents, and participating in detailed settlement negotiations, among other activities.  Attached hereto as Exhibit 1 is a true and correct copy of my firm's resume.

3.      The schedule attached hereto as Exhibit 2 is a detailed summary indicating the amount of time, by category, spent by the attorneys and professional support staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates.  The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court.  Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

4.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 2 are the same as the regular current rates charged for their services in non contingent matters and/or which have been accepted and approved in other securities or shareholder litigation.

5.      The total number of hours expended on this litigation by my firm is 345.96 hours. The total lodestar for my firm is $228,278.40, consisting of $207,749.85 for attorneys' time and $20,528.55 for professional support staff time.

6.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

DECLARATION OF PATRICE L. BISHOP IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES AND EXPENSES FILED ON BEHALF OF STULL, STULL & BRODY - MASTER FILE NO. C06-05208-JF

7.      As detailed in Exhibit 3, my firm has incurred a total of $40,976.26 in unreimbursed expenses in connection with the prosecution of this litigation.

8.      The expenses incurred in this action are reflected on the books and records of my firm.   These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

9.      The above is true of my personal knowledge and if called to do so, I could and would testify competently thereto.   I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

EXECUTED at Los Angeles, California on January 4, 2011.


_____
Patrice L. Bishop
Declarant

DECLARATION OF PATRICE L. BISHOP IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES AND EXPENSES FILED ON BEHALF OF STULL, STULL & BRODY - MASTER FILE NO. C06-05208-JF
- 2 -

# EXHIBIT 1

# STULL, STULL & BRODY
## ATTORNEYS AT LAW

6 EAST 45TH STREET
SUITE 500
NEW YORK, NY  10017
TELEPHONE:  (212) 687-7230
FACSIMILE:  (212) 490-2022

10940 WILSHIRE BOULEVARD
SUITE 2300
LOS ANGELES, CA  90024
TELEPHONE:  (310) 209-2468
FACSIMILE:  (310) 209-2087

# B R I E F   B I O G R A P H Y   O F   S T U L L ,   S T U L L   &   B R O D Y

Over the past 40 years, Stull, Stull & Brody has developed a national reputation for zealously representing plaintiffs in securities class action litigation.  Since 1970, the firm has litigated hundreds of securities class action cases, obtaining over a billion dollars in settlements for aggrieved investors and shareholders.   According the Securities Class Action Services' "SCAS 50" for 2009, which lists the Top 50 Plaintiffs' Law Firms ranked by the total dollar amount of final securities class action settlements occurring in 2009 in which the law firm served as lead or co-lead counsel, Stull, Stull & Brody settled four securities class actions in 2009 for a total of $669,774,996, representing the fifth largest average settlement amount ($167,443,749).[1]

Stull, Stull & Brody has also represented claimants in numerous class actions alleging violations of ERISA.  The firm's current staff includes 15 attorneys and a full complement of secretarial and administrative personnel, enabling Stull, Stull & Brody is capable of effectively prosecuting all types of complex litigations.  Our lawyers possess outstanding credentials and have repeatedly been acknowledged for their achievements in various courts.

Stull, Stull & Brody has offices in New York City and Los Angeles, enabling the firm to efficiently handle class actions on a nationwide basis.  Due to the experience and expertise of its attorneys, including six attorneys who have been with the firm for more than twenty years and an additional five attorneys who have been with the firm for more than ten years, we are able to leverage our vast experience for efficient and effective client advocacy.

The firm's efforts have been recognized by a late member of the United States Congress, the Representative Paul E. Gillmor, Rep. Ohio 5th District.   As The Honorable Paul E. Gillmor wrote to United States District Judge Stanley E. Chesler in connection with the *In re Merck & Co., Inc. Securities, Shareholder Derivative and ERISA Litig.,*,Case No 3:05-CV-01151 (MDL 1658):

> I was one of the court appointed lead plaintiffs in *In re Safety-Kleen Rollins Shareholders Litigation*, Civil Action No. 3:00-CV1343-17, which was pending before Judge Joseph Anderson in the District of South Carolina.  In that case,

---

[1] Data available at http://www.marketwatch.com/story/riskmetrics-group-ranks-top-50-plaintiffs-law-firms-for-2009-2010-04-15?reflink=MW_news_stmp.

which alleged, among other things, violation of the Securities Exchange Act of 1934, I and the other court appointed lead plaintiffs selected Stull, Stull & Brody to be one of the lead counsel for the plaintiffs.  That case resulted in a settlement recovery for the class of a very substantial portion of the money that could have been recovered if the case had gone to trial net of attorneys fees, expenses and administration fees.

During the course of that litigation, which lasted for about five years, Stull, Stull & Brody kept me apprised of all significant developments in the action such as class certification, settlement negotiations, litigation strategy, pending motions, court rulings and trial preparation.  I would regularly speak to counsel by telephone at which time the foregoing topics would typically be discussed and I would have the opportunity to ask questions and provide input.

(Letter of January 2, 2007, Rep. Paul E. Gillmor, annexed hereto)

Stull, Stull & Brody has been recognized by numerous Courts for the high quality of its legal representation and for its excellence in the field of securities as evidenced by the following comments made by judges in cases in which Stull, Stull & Brody has occupied a leading role:

The firms involved, I think we heard from several of them today, the papers that have been submitted, it is clear of the dedication, devotion, professionalism, and in the court's view efficiency of these firms, so there is no question in the court's mind of the quality of the representation.  *In re American Express Fin'l Advisors Sec. Litig., 04* Civ. 1773 (DAB) (S.D.N.Y. July 13, 2007).

* * *

[T]his is one of the largest, if not the largest, securities fraud settlements in this district.  The settlement size is particularly noteworthy as class counsel did not have the benefit of an SEC or other regulatory agency investigation and so prosecuted the case without assistance. . . .  The management of the case was also of extremely high quality. . . . [C]lass counsel is of high caliber and has extensive experience in similar class action litigation.  Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability to prosecute the case effectively and to negotiate credibly. . . .  The submissions

were of consistently high quality, and class counsel has been notably diligent in preparing filings in a timely manner even when under tight deadlines.  *In re Ikon Office Solutions, Inc Securities Litigation*, 2000 U.S. Dist. LEXIS 6510 (E.D. Pa. May 9, 2000).

\* \* \*

I am satisfied that counsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation . . . well prepared, well spoken, []knew their stuff and []were a credit to their profession.  They are the top of the line. *In Re Electro-Catheter Corporation Securities Litigation*, Civ. No. 87-41 (D.N.J. September 7, 1989).

\* \* \*

The court takes note of the competence of both plaintiffs' counsel and defendants' counsel and their extensive experience in litigating securities class actions.  The competence of plaintiffs' counsel resulted in this case being vigorously and efficiently prosecuted against very able opponents over a twenty month period and was a factor in bringing about settlement.  *Schaffer v. Timberland Co.*, 94-634-JD (D.N.H. 1997).

\* \* \*

This case is a "model for how commercial litigation should be conducted and can be resolved."  *Bash v. Diagnostek*, CV 94-794 M (D.N.M.).

\* \* \*

Indeed, I indicate to. . .counsel for plaintiff that they have done an admirable job in this case in bringing it to finality and in bringing back to the shareholders of this corporation some moneys as a result of certain things which occurred during the course of the operation of this corporation which perhaps should not have occurred.  *Finkel v. O'Brien*, Civ. No. 85-2539 (D.N.J. March 27, 1990).

\* \* \*

All the firms involved in this litigation are highly experienced and well respected, particularly in the field of securities law litigation.  The Stull . . . firm [is one] of this area's, if not the

-3-

nation's most active and successful law firms specializing in securities litigation. *Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976).

Stull, Stull & Brody's expertise in the field of securities litigation has also been recognized by the following courts: *In re Frontier Group Insurance, Inc. Securities Litigation*, 172 F.R.D. 31 (E.D.N.Y. 1997); *In re Allegheny International Inc. Shareholder Litigation*, 86-835 (W.D. Pa.) (Order, December 10, 1987, Diamond J.); *Zucker v. United States Steel*, C-1-79-588 (S.D. Ohio) (Order, October 14, 1981, Rubin, C.J.); *Friedman v. Colgate Palmolive*, 80 Civ. 2340 (CPS) (E.D. N.Y.) (Order, June 16, 1981, Sifton, J.); *Zuckerman v. Sparton*, G79-457-C.A. (W.D. Mich.) (Opinion and Order, April 14, 1981, Fox, J.); *Mottoros v. Abrams*, 524 F. Supp. 254 (N.D. Ill. 1981); *Koenig v. Smith*, 79 C 452 (ERN) (E.D.N.Y.) (Memorandum Opinion and Order, December 3, 1980, Neaher, J.); *Koenig v. Kenneally*, 79 Civ. 0487 (LBS) (S.D.N.Y.) (Opinion No. 49289, November 5, 1979, Sand, J.); *In Re Commonwealth Oil-Tesoro Petroleum Securities Litigation*, MDL No. 347 (Order, July 24, 1979, Higginbotham, J.); *Wietschner v. McCulloch*, CV 78-4036-RMT (C.D. Ca.) (Order, June 29, 1979, Takasugi, J.); *Fruchthandler v. LTV Corp.*, 77C 1879 (E.D.N.Y.) (Order, May 10, 1978, Nickerson, J.); *Lewis v. Adikes*, 76 F.R.D. 68 (E.D.N.Y. 1977); *Lewis v. Black*, [1976-77 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,738 (E.D.N.Y. 1976) (Mishler, C.J.); and *Fruchthandler v. Blakely*, 73 F.R.D. 318 (S.D.N.Y. 1976).

## SEMINAL CASES

Throughout its 40 year history, Stull, Stull & Brody has been involved with a number of seminal cases that have significantly affected the landscape of securities litigation.

♦ In *Merck & Co., Inc., v. Reynolds*, No. 08-905, 2010 U.S. LEXIS 3671 (April 27, 2010), a case brought on behalf of investors in Merck securities alleging that they were defrauded due to misrepresentations made by Merck, the United States Supreme Court issued a ruling making it easier for defrauded investors to file actions claiming violation of the Securities Exchange Act of 1934 by holding that the statute of limitations does not begin to run on investors, not only until the time an investor should have known that a false statement was made, but also not until the time that the investor should have known that the statement was either knowingly or recklessly made.

♦ In *Rand v. Monsanto Company*, 926 F.2d 596 (7th Cir. 1991), the firm appeared for the plaintiff in a landmark decision establishing the principle that a representative plaintiff need not be willing to bear all costs of an action to satisfy the adequacy of representation requirement.

♦ In *In re Lucent Technologies, Inc. ERISA Litig.*, Civil Action No. 01-cv-3491 (JAP) (D.N.J. 2005), the firm was largely responsible for a frequently-cited ruling by the District Court dated February 11, 2002, in which the Court denied a motion to stay the ERISA litigation against until a related securities class action was

resolved.  Stull, Stull & Brody's briefing in opposition to motion to the stay action highlighted the significant differences between ERISA and securities class actions, even when the actions involve the same factual issues.  The District Court ultimately ruled that "resolution of the securities class action . . . will not necessarily resolve all issues in this matter" and "[t]he legal issues here will still have to be determined, and a stay or continuance shall not change that fact."

♦   In *Small v. Fritz Companies Inc.*, 30 Cal. 4th 167 (2003), the firm successfully argued before the California Supreme Court that a non-trading shareholder has the right to sue a corporation for damages where the shareholder relies on false financial statements issued by the corporation.  The decision represented a significant change in legal doctrine and was widely heralded as a potent new weapon for investors.

♦   In *Howard v. Everex*, 228 F.3d 1057 (9th Cir. 2000), Stull, Stull & Brody successfully advocated that a corporate officer can be liable in a private antifraud action for signing a document filed with the SEC that he knows (or is reckless in not knowing) contained misrepresentations, even if the officer was not involved in preparing the document.  The 9th Circuit decision was a precursor to Section 302(a) of the Sarbanes-Oxley Act of 2002 which now requires corporate officers that sign documents filed with the SEC to certify the accuracy of information therein.

♦   In *Lewis v. Black*, 74 F.R.D. 1 (E.D.N.Y. 1975), the firm established that neither the personality nor the motive of a proposed class representative was determinative of whether he would provide vigorous advocacy for the class, thereby preventing defendant corporations from compelling representatives to respond to questions regarding motives and actions in past cases.

♦   In *In re Cabletron Systems, Inc. Securities Litig.*, 311 F.3d 11 (1st Cir. 2002), the firm was instrumental in obtaining a reversal of an order dismissing a complaint under the pleading requirements of the Private Securities Litigation Reform Act. This case established in the First Circuit that plaintiffs are not required to provide the names of informants in a complaint.

♦   In *In re Frontier Group Insurance Litig.*, Master File No. 94 Civ. 5213 (E.D.N.Y. 2002), the firm was instrumental in defeating a *Daubert* challenge, thereby enabling the expert to testify as to aggregate damages based on the use of a trading model.

♦   In *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D. Ill. 1988), the firm established the applicability of the fraud-on-the-market theory of reliance for stocks trading on the NASDAQ.

♦   The firm was instrumental in establishing new law on fraud-on-the-market theory in the 5th Circuit decision of *Finkel v. Docutel/Olivetti Corporation*, 817 F.2d 356

(5th Cir. 1987), cert. denied, 485 U.S. 959 (1988), and, in the Northern District of Illinois decision of Mottoros v. Abrams, 524 F. Supp. 254 (N.D. Ill. 1981).

As a lead counsel, Stull, Stull & Brody has successfully litigated hundreds of actions, recovering nearly a billion dollars on behalf of defrauded shareholders. A sampling of cases in which Stull, Stull & Brody has occupied a leading role includes:

♦ *In re Initial Public Offerings Securities Litig.*, MDL No. 1264 (S.D.N.Y. 2009) (Stull, Stull & Brody served as one of six members of Plaintiffs' Executive Committee, which recovered $586 million)

♦ *In re Bankamerica Corp. Securities Litig.*, MDL No. 1264 (E.D. Mo. 2002) (recovery of $333.2 million)

♦ *In re Geodyne Resources, Inc. Securities Litig.* (Harris County Tex.) (recovery of $200 million)

♦ *In re Computer Associates Sec. Litig.*, Master File No. 98-CV-4839 (TCP) (E.D.N.Y. 2003) (recovery of 5.7 million shares estimated at $134 million)

♦ *Spahn v. Edward D. Jones & Co., L.P. et al.*, 04-CV-00086 (E.D. Mo. 2007) (recovery of $72.5 million in credits for current Edward Jones customers and $55 million in cash for former Edward Jones customers. In addition, defendants paid all reasonable costs and expenses of class notice and settlement administration)

♦ *In re Peregrine Systems, Inc. Sec. Litig.*, Civil Action No. 02-CV-870 J (RBB) (S.D. Ca. 2006, S.D. Ca. 2009) (recovery of $117,567,922)

♦ *In re American Express Financial Advisors Sec. Litig.*, 04-CV-1773 (S.D.N.Y.) (recovery of $100 million in cash and implementation of significant remedial measures. In addition, defendants paid all reasonable costs of class notice and settlement administration, which is currently estimated to be $15 to 18 million)

♦ *In re Ikon Office Solutions, Inc. Securities Litig.*, MDL No. 1318 (E.D. Pa. May 9, 2000) (recovery of $111 million)

♦ *In re Salomon Brothers Treasury Litig.*, Consolidated Action No. 91 Civ. 5471 (RPP) (S.D.N.Y. 1994) (recovery of $100 million)

♦ *In re Priceline.com, Inc. Sec. Litig.*, Master File No. 3:00CV01884 (AVC) (D. Conn.) (recovery of $80 million)

♦ *In re Westinghouse Securities Litig.*, Civil Action No. 91-354 (W.D. Pa. 1999) (recovery of $67.25 million)

♦ *In re Thomas & Betts Securities Litig.*, Case No. 00-2127 (W.D. Tenn. 2002), related case *Pifko v. KPMG LLP*, Civ. Action No. 01-CV-2553 (W.D. Tenn. 2004) (recovery of $51.15 million)

♦ *In re Tenneco Inc. Securities Litig.*, Civ. Action No. H-91-2010 (S.D. Tex. 1992) (recovery of $50 million)

♦ *In re Apria Healthcare Group Securities Litig.*, Master File No. 797060 (Superior Court of California, Orange County) (recovery of $42 million)

♦ *Thomas Levitan v. John B. McCoy, Jr., et al.*, Case No. 00 C 5096 (N.D. Ill. 2006) *(recovery of $39.9 million)*

♦ *In re Cannon Group Securities Litig.*, 86-5559-WMB (JRx) (C.D. Ca. 1988) (recovery of $33 million)

♦ *Teichler v. DSC Communications Corporation*, CA 3-85-2005-T (N.D. Tex. 1990) (recovery of $30 million)

♦ *Berger v. Compaq Computer Corp.*, Civ. Action No. 98-1148 (S.D. Tex. 2002) (recovery of $28.65 million)

♦ *In re: Northeast Utilities Securities Litig.*, Civil Action No. 397 CV 00189 AVC (D. Ct.) (recovery of $25 million)

♦ *Lasky v. Brown (United Companies Financial Corporation) Securities Litig.*, Civil Action No. 99-1035-B-M2 (M.D. La. 2002) (recovery of $20.5 million)

♦ *Lasker et al v. Kanas et. al*, Index No. 103557/06 (New York County, NY) (recovery of $20 million and other consideration)

♦ *Feinberg v. Hibernia Corp.*, Civil Action No. 90-4245 (E.D. La. 1995) (recovery of $20 million)

♦ *In re Dreyfus Aggressive Growth Mutual Fund Litig.*, Master File No. 98 Civ. 4318 (HB) (S.D.N.Y.) (recovery of $18.5 million)

♦ *In re Rambus, Inc. Securities Litig.*, Master File No. C-06-4346-JF  (N.D. Cal. 2008) (recovery of $18.33 million)

♦ *In re C.R. Bard, Inc. Securities Litig.*, Master File No. 90-948 (AMW) (D.N.J. 1991) (recovery of $17.9 million)

♦ *Spring v. Continental Illinois Corporation*, 84 C 4648 (N.D. Ill. 1987) (recovery of $17.5 million)

♦ *In re Rhythms Sec. Litig.*, Civil Action No. 02-K-35 (GCL) (D. Co.) (recovery of $17.5 million)

♦ *Morse v. Abbott Laboratories*, C.A. No. 90 C 1982 (N.D. Ill. 1994) (jury verdict of $15 million)

♦ *In re Green Tree Financial Corporation Stock Litig.*, Master File No. 97-2666 (JRT/RLE) (D. Minn. 2003) ($12.45 million)

♦ *In re Elscint Securities Litig.*, Civ. Action No. 85-2662-K (D. Mass. 1989) (recovery of $12 million)

♦ *In re National Medical Enterprises Securities Litig. II*, Case No. CV 93-5224 TJH (Bx) (C.D. Ca.) (recovery of $11.65 million)

♦ *Bash v. Diagnostic, Inc.*, Civil Action No. 94-784 (D.N.M.) (recovery of $10.7 million)

♦ *In re Cybermedia, Inc. Securities Litig.*, Master File No. 98-1811CBM (Ex) (C.D. Ca.) (recovery of $10.5 million)

♦ *In re Cabletron Systems, Inc. Sec. Litig.*, C 97-542 (D.R.I. 2006) (recovery of $10.5 million)

♦ *In re Physicians Corp. of America Sec. Litig.*, Case No. 97-3678-CIV (S.D. Fla. 2003) (recovery of $10.2 million)

♦ *In re Complete Management Inc. Sec. Litig.*, Master File No. 99 Civ. 1454 (NRB) (S.D.N.Y.) (recovery of $10.15 million)

♦ *In re U.S.A. Detergent Securities Litig.,* 97-CV-2459 (D.N.J. 1999) (recovery of $10 million)

♦ *In Re: Biopure Corporation Sec. Litig.*, Docket No. 03-CV-12628 (NG) (D. Mass. 2007) (cash recovery of $10 million)

♦ *In re Nice Systems, Ltd. Securities Litig.*, Master File No. 2:01 CV 737 (Judge Greenaway) (D.N.J. 2003) (recovery of $10 million)

♦ *Harman v. Lyphomed*, 88 C 476 (N.D. Ill. 1989) (recovery of $9.99 million)

♦ *In re Beverly Enterprises, Inc. Securities Litig.*, Master File No. CV 88-01189-RSWL (Tx) (C.D. Ca. 1992) (recovery of $9.975 million)

♦ *Greenfield v. Compuserve Corp.*, Case No. 96-CV-06-4810 (Franklin County, Ohio) (recovery of $9.5 million)

♦ *In re Stratosphere Securities Litig.*, Master File No. CV-S-96-00708-PMP (RLH) (D. Nev.) (recovery of $9 million)

♦ *In re Steven Madden Ltd. Securities Litig.*, No. 00-CV-3676 (JG) (E.D.N.Y. 2002) (recovery of $9 million)

♦ *In re Gibraltar Financial Corporation Securities Litig.*, CV 87-07876 MRP (Gx) (C.D. Ca. 1989) (recovery of $8.5 million)

♦ *In re FHP Securities Litig.*, Master File No. SACV 91-580-GLT (RWRx) (C.D. Ca. 1992) (recovery of $8.25 million)

♦ *Zucker v. Maxicare Health Plans, Inc.*, Case No. 88-02499-LEW (Tx) (C.D. Ca. 1991) (recovery of $8.1 million)

♦ *In re Orion Pictures Corp. Securities Litig.*, Master File No. 91 CV 1903 (CBA) (E.D.N.Y. 1992) (recovery of $8 million)

♦ *Berlinsky v. Alcatel*, 94-CIV-9084 CBM (S.D.N.Y.) (recovery of $8 million)

♦ *In re Triton Energy Corporation Securities Litig.*, Master File No. 3:92-CV-1069-H (N.D. Tex. 1993) (recovery of $8 million)

♦ *Ganesh v. Computer Learning Center* (E.D. Va. 1999) (settlement of $7.5 million for alleged misrepresentations to investors by trade school operator)

♦ *In re Metris Companies, Inc. Sec. Litig.*, Civil Action No. 02-CV-3677 JMR/FLN (D. Minn. 2008) (recovery of $7.5 million)

♦ *In re Cityscape*, CV 97 5668 (E.D.N.Y.) (recovery of $7 million)

♦ *In re Dime Savings Bank of New York Securities Litig.*, MDL Docket No. 846 (E.D.N.Y. 1993) (recovery of $6.8 million)

♦ *In re Western Digital Securities Litig.*, SACV 91-375(A) GLT (RWRx) (C.D. Ca.) (recovery of $6.75 million)

♦ *In re Bank of New England Corporation Class Action and Shareholder Litig.*, C.A. Nos. 89-2582-S, 89-2811-S (D. Mass. 1992) (recovery of $6.5 million)

♦ *Bobbitt v. Andrew J. Filipowski,* No. 06-11072-PBS (D. Mass. 2008) (recovery of $6.3 million)

♦ *In re Berkshire Realty Company, Inc. Shareholder Litig.*, C.A. No. 17242 (Delaware Chancery Court 2004) (recovery of $6.25 million)

♦ *Gerstein v. Micron Technology, Inc.,* Civil No. 89-1262 (D. Id. 1993) (recovery of $6 million)

♦ *In re Ziff-Davis, Inc. Securities Litig.*, Master File No. 98-CIV-7158 (SWK) (S.D.N.Y. 2002) (recovery of $6 million)

♦ *Dynegy Inc., et al. v. Bernard V. Shapiro, No. 2002-00080, in the 129th Judicial District, Harris County, Texas (recovery of $6 million)*

♦ *In re Ascend Communications Securities Litig.*, Case No. 97-9376 MRP (AN) (C.D. Ca. 2002) (recovery of $5.45 million)

♦ *In re Brightpoint, Inc. Securities Litig.*, Case No.  IP 01 1796 C-T/K (recovery of $5.25 million)

♦ *Kushner v. Wang Laboratories*, Civil Action No. 89-1963-Y (D. Mass. 1994) (recovery of $5 million)

♦ *In re SouthEast Banking Corp. Securities Litig.*, Master File No. 90-0760-CIV-MOORE (S.D. Fla. 1993) (recovery of $5 million)

♦ *Wells v. Southmark Corporation,* CA3-85-1518-G (N.D. Tex. 1992) (recovery of $5 million)

♦ *In Re: Interlink Electronics Inc. Sec. Litig.*, 05-CV 08133 (AG) (SH) (C.D. Cal. 2009) (recovery of $5 million)

♦ *In re Regeneron Pharmaceuticals, Inc. Securities Litig.,* Civil Action No. 03 CV 311 (RWS) (S.D.N.Y. 2005) (recovery of $4.7 million)

♦ *In re Sunglass Hut Intl., Inc. Securities Litig.*, Case No. 97-0191-CIV-MOORE (S.D. Fl. 2001) (recovery of $4.5 million)

♦ *Clive T. Miller v. Apropos Technology, Inc.,* No. 01 C 8406 (N.D. Ill. 2004) (recovery of $4.5 million)

♦ *In re Fidelity Holdings Securities Litig.*, Case No. CV 00 5078 (CPS) (VVP) (E.D.N.Y. 2003) (recovery of $4.45 million)

♦ *Adam Burstyn v. Worldwide Xceed Group, Inc., et al.*, Case No. 01 CV 1125 (GEL) (S.D.N.Y. 2005) (recovery of $4.4 million)

♦ *In re NetEase.com Sec. Litig.*, Civil Action No. 01-CV-9405 (RO) (S.D.N.Y. 2003) (recovery of $4.35 million)

♦ *In re Flextronics, Inc. Sec. Litig.*, No. C-03-2102 PJH (N.D. Ca. 2004) (recovery of $4.25 million)

♦ *Schaffer v. Timberland Co.*, 94-634-JD (D.N.H. 1997) (recovery of $4.2 million)

♦ *In re HMO America Securities Litig.*, Civ. No. 92 C 3305 (CPK) (N.D. Ill. 1993) (recovery of $4 million)

♦ *In re Nanophase Technologies Corporation Securities Litig.*, Case No. 98 C 3450 (N.D. Ill.) (recovery of $4 million)

♦ *In re Quintex Securities Litig.*, Master File No. CV-89-6182-R (C.D. Ca. 1990) (recovery of $4 million)

♦ *Walsingham v. Biocontrol Tech. Inc.*, Civil Action No. 96-809 (W.D. Pa.) (recovery of $3.7 million)

◆ *In re Irvine Sensors Corp. Sec. Litig.*, Master File No. SA 02-00159 GLT (MLGx) (C.D. Ca. 1994) (recovery of $3.5 million)

◆ *In re iTurf Inc. Shareholders Litig.*, Consolidated Civil Action No. 18242 NC (Delaware Chancery Court) (recovery of $3.25 million)

◆ *In re Safety Kleen Rollins Shareholder Litig.*, Case No. 3:00-1343-17 (D.S.C. 2005)(recovery of $3.15 million)

◆ *In re Kay Jewelers Securities Litig.*, Civil Action No. 90-1663A (E.D. Va. 1991) (recovery of $3 million)

◆ *Clarkson v. Greyhound Lines, Inc.*, 96-11329-C (Dist. Ct., Dallas County, Tex.) (recovery of $3 million)

◆ *In re TwinLab Corp. Securities Litig.,* Master File No. 00-CV-6975 (DRH) (E.D.N.Y. 2005) (recovery of $3 million)

◆ *In re Spectrian Corp. Securities Litig.*, Master File No. C-97-4672-CW (N.D. Ca.) (recovery of $2.975 million)

◆ *Moriarty v. Molina*, Case No. 99-0255-CIV-MORENO (S.D. Fla. 2003) (recovery of $2.8 million)

◆ *In re Peritus Software Services, Inc. Securities Litig.*, Civ. Action No. 98CV10955 WGY (D. Mass. 2000) (recovery of $2.8 million)

◆ *In re 2TheMart.com, Inc. Sec. Litig.*, Case No. 99-1127 DOC (ANx) (C.D. Ca. 2002) (recovery of $2.7 million)

◆ *McBride v. Vision Twenty-One, Inc.,* Case No. 99-138-CIV-T-25F (M.D. Fl. 2003) (recovery of $2.5 million)

◆ *In re Pharmaprint Inc. Sec. Litig.*, Civ. No. 00-61 (AJL) (D.N.J. 2003) (recovery of $2.3 million)

◆ *In Re: Columbia Entities Litig.*, 04-CV-11704 (D. Mass. 2004) (reduction in the overall rate charged as advisory fees (i.e., "breakpoints) when the mutual funds advised by the advisers reach certain levels of assets under management; enhanced shareholder communications; and $100,000 contribution to research expenses for the benefit of some or all of the settling funds)

## Settled ERISA Class Action Cases

◆ *In re AOL Time Warner ERISA Litig.*, Civil Action No. 02 CV 8853 (SWK) (S.D.N.Y. 2006) (recovery of $100 million in cash to the company's 401(k) plan in what the court noted was "one of the largest ERISA settlements to date")

- *In re Global Crossing Ltd. ERISA Litig.*, Master File No. 02-cv-7453 (GEL) (S.D.N.Y. 2004)  (Stull, Stull & Brody served as liaison counsel for the class in a case which recovered a payment of $79 million to the company's 401(k) plan)

- *Overby v. Tyco International, Ltd.*, Case No. 02-CV-1357-B (D.N.H.) (settlement of $70.525 million in cash; over 80 million pages of discovery documents produced to plaintiffs; and over 250 days of deposition)

- *In re Lucent Technologies, Inc. ERISA Litig.*, Civil Action No. 01-cv-3491 (JAP) (D.N.J. 2005) (recovery of $69 million in cash and stock to the company's 401(k) plan)

- *In re Worldcom, Inc. ERISA Litig.*, Master File No. 02-4816 (DLC) (S.D.N.Y. 2005) (Stull, Stull & Brody served as local counsel for the class in a case which recovered $47.15 million for the company's 401(k) plan)

- *Harrington v. Household International, Inc.*, Civil Action No. 02 C 8257 (SY) (N.D. Ill. 2004) (recovery of $46.5 million in cash to the company's 401(k) plan)

- *In re Cardinal Health, Inc. ERISA Litig.*, No. C2-04-643 (ALM) (S.D. Ohio 2007) (recovery of $40 million in cash to the company's 401(k) plan)

- *Zilhaver v. UnitedHealth Group, Inc.*, Case No. 06-cv-2237 (JMR) (D. Minn.) (a settlement of $17 million cash to the company's 401(k) plan approved in August of 2009)

- *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324 (JWD) (N.D. Ill. 2007) (recovery of $14.5 million in cash to the company's 401(k) plan)

- *Russell v. Conseco Services, LLC* 1:02-cv-1639-LJM (S.D. Ind. 2005) (recovery of $9.975 million in cash to the company's 401(k) plan)

- *In re Sprint Corporation ERISA Litig.*, Master File No. 2:03-CV-02202-JWL (D. Kan. 2006) (recovery of $4 million in cash, as well as benefits to participants in the company's 401(k) plans including: increased vesting of employee accounts; increased company matching of employer contributions; a number of participant-friendly plan amendments; and improved participant communications)

- *In Re Affiliated Computer Services ERISA Litig.*, Master File No. 06-CV-1592 (CBA) (N.D. Tex.  2008) (recovery of $1.5 million in cash, as well as benefits to the participants in the company's 401(k) plans including: participant communications advising of the risk of investing individual accounts solely in ACS stock, matching in cash instead of company stock, lifting restrictions on company matching contributions, additional communications to all participants about the risks of the ACS stock fund)

- *Jones v. Novastar Financial, Inc.*, 4:08-cv-00490-NKL (W.D. Mo.) ($925,000 cash recovered)

♦ *Page v. Impac Mortgage Holdings, Inc.*, 8:07-cv-01447-AG-MLG (C.D. Cal.) (recovery of $300,000 in stock deposited into plan participants retirement accounts)

Stull, Stull & Brody's advocacy in these and other ERISA class actions, which have been brought on behalf of 401(k) retirement plan participants and beneficiaries, has also yielded new law in the ERISA field.  In the *Lucent* ERISA litigation the firm was largely responsible for a frequently-cited ruling by the District Court dated February 11, 2002, in which the Court denied a motion to stay the ERISA litigation against Lucent until resolution of a related securities class action against the company.  Stull, Stull & Brody's briefing on the stay motion pointed out the many significant differences between ERISA and securities class actions, even where the ERISA and securities cases involved the same factual issues.  The District Court ultimately ruled that "resolution of the securities class action . . . will not necessarily resolve all issues in this matter" and "[t]he legal issues here will still have to be determined, and a stay or continuance shall not change that fact."

Various courts have noted Stull, Stull & Brody's abilities in the field of ERISA Class Actions.  *E.g.*, *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 556 (S.D. Ohio 2005)  ("the Court finds that [co-lead counsel and] Stull, Stull & Brody have a high level of ERISA expertise and are willing to commit each firm's resources to this case such that they fairly and adequately represent all parties on their side"); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1270 (D. Kan. 2006) ("The high quality of plaintiffs' counsel's work culminated in the successful resolution of this complex case. This was demonstrated by their successful and commendable prosecution of this case through the motion to dismiss stage and the ultimate settlement of this case under favorable terms."); *id.* at 1260 ("counsel litigated this case during its early phases aggressively and in a manner that demonstrated legal expertise in this area of the law"); *In re AOL Time Warner ERISA Litig.*, 2006 U.S. Dist. LEXIS 70474 (S.D.N.Y. 2006) ("Class counsel are qualified attorneys with considerable ERISA experience. Their prosecution of this lawsuit has secured the substantial Settlement now under consideration. Throughout this litigation, they have shown themselves to be capable and qualified to represent the Class."); *Hill v. Tribune Co.*, 2005 U.S. Dist. LEXIS 23931 (N.D. Ill. 2005) (finding "that the Stull Group has more experience and possibly greater resources" than the other applicant for lead counsel).

## **Settled Derivative Cases**

♦ *Esther Sadowsky Testamentary Trust v. Brendsel (Federal Home Loan Mortgage Corporation)*, 05-cv-2596 (Oct. 27, 2006) (recovery of approximately $100 million as well as significant corporate governance measures)

♦ *In re Bank of New York Corporate Derivative Litigation*, Index No. 604465/99 (Sup. Ct. NY) (recovery of $26.5 million for the company and adoption of significant corporate governance measures)

♦ *In re FirstEnergy Shareholder Derivative Litigation, 03-CV-1826 (N.D. Oh. 2003)* (recovery of approximately $25 million and adoption of significant corporate governance measures)

♦ *In re Hewlett-Packard Company Derivative Litig.*, 1:06-cv-071186 (Cal. Super. Ct., Santa Clara County 2006), 2426-VCN (Delaware Chancery Court 2006) (derivative action stemming from the board of directors' alleged leak of an investigation that ultimately led to the firing/resignation of various high level officers and directors of HP; substantial corporate governance reforms were instituted as part of the settlement, with HP's special litigation committee agreeing to undertake numerous widespread corporate governance changes directed toward HP's code of business ethics and guidelines)

♦ *In re Trump Hotels Shareholder Derivative Litig.*, 98-Civ-7820 (GEL) (S.D.N.Y. 2001) (recovery of assets for corporation valued in the range of $10 million)

♦ *Gallic et al. v. Appelbaum*, 3:06-cv-5523-FLW-TJB (D.N.J. 2005) (repayment of $1,387,471 for backdated stock options; repricing of stock options worth potentially $8,113,847; and significant corporate governance changes designed to strengthen the granting of, and accounting for, stock options)

♦ *In re Foundry Networks, Inc. Deriv. Litig.*, 1:06-cv-068878 (Cal. Super. Ct., Santa Clara County Aug. 9, 2006) (recovery of $2.1 million, repricing of certain allegedly backdated stock options, and significant corporate governance reforms)

♦ *Lasker v. Massengill (In re State Court Western Digital Corp. Deriv. Litig.)*, 06-CC-00159 (Cal. Super. Ct., Orange County Aug. 14, 2006) (derivative litigation challenging certain allegedly backdated stock option grants settled for $522,680 and significant corporate governance changes designed to strengthen the granting of, and accounting for, stock options)

♦ *In re Titan Corporation Derivative Litigation*, GIC 832018 (Cal. Super. Ct., San Diego County 2005) (resulting in increased merger consideration from $22.76 to $23.10 per share of Titan common stock and reduction in the termination fee and additional disclosures relating to the merger)

♦ *Ekas v. Burris, et al. (Citrix Systems, Inc.)*, 07-016114-11, (Fla. Cir. Ct., Broward County 2007) (derivative litigation challenging certain allegedly backdated stock option grants settled for significant corporate governance changes designed to strengthen the granting of, and accounting for, stock options)

♦ *In Re Jabil Circuit Options Backdating Litig.*, 06-CV-01257 (M.D. Fla. 2006) (derivative litigation challenging certain allegedly backdated stock option grants settled for significant corporate governance changes designed to strengthen the granting of, and accounting for, stock options)

♦ *Edelstein v. Brodie,* Case No. 3:07-cv-00596-FLW-JJH (D.N.J. 2007) (derivative litigation challenging certain allegedly backdated stock option grants settled for significant corporate governance changes designed to strengthen the granting of, and accounting for, stock options)

♦ *Soojian et al. v. Jacobs, f/b/o Royal Dutch Petroleum Company*, No. 04- cv-4160 (DNJ 2005) (adoption of significant corporate governance changes)

Stull, Stull & Brody is presently serving as plaintiffs' lead or co-lead counsel in a number of pending actions in various district courts, including:

## Pending Securities Class Action Cases

♦ *Bachman v. AG Edwards, Inc.,* Cause No. 22052-01266-02 (Mo. Cir. Ct.)

♦ *In re Arotech Corp. Securities Litig.*, Master File No. 07-CV-1838 (RJD) (VVP)

♦ *In re FleetBoston Financial Corp. Sec. Litig.*, Civ. No. 02-4561 (WGB) (D.N.J.)

♦ *In re Merck & Co., Inc., Securities, Derivative & "ERISA" Litig., MDL No. 1658 (SRC),* Case No. 2:05-CV-01151-SRC-MF, (D.N.J.); Case No. 2:05-CV-02367-SRC-MF (D.N.J.)

♦ *In re Mutual Funds Investment Litig.*, MDL 1586, Case No. 04-MD-15863 (JFM) (D. Md.); *Parthasarathy v. RS Investment Management, L.P., et al.*, Case No. 04-cv-3798-JFM (D. Md.)

♦ *In re Xerox Sec. Litig.*, Civil Action No. 3:99 CV 2374 (AWT) (D. Conn.)

♦ *In re Herald, Primeo and Thelma Funds Sec.* Litig*., 1:09-cv-00289-RMB (S.D.N.Y.)*

## Pending ERISA Class Action Cases

♦ *In re. Computer Sciences Corporation ERISA Litig.*, Case 2:08-cv-02398-SJO-JWJ (C.D. Cal.) (grant of summary judgment to defendants is currently on appeal)

♦ *Howell et al. v. Koenemann, et al*, Case No. 03-CV-5044 (RRP) (N.D. Ill.) (grant of summary judgment to defendants is currently on appeal)

♦ *In re: Diebold ERISA Litig.*, Case No. 06-cv-00170 (SEL) (N.D. Ohio) (proposed settlement pending)

♦ *Lanfear et al. v. Home Depot,* 07-cv-197 (ODE) (N.D. Ga.)

♦ *National City Corporation Securities, Derivative & ERISA Litig.*, 1:08-cv-07000-PAG (N.D. Ohio)

♦ Leach v. Textron Inc., 09-383-ML-LDA (D. R.I.)

♦ *Obester v. American Express Company et al.*, 1:08-cv-10834-JGK (S.D.N.Y.)

♦ *In re: Int'l Game Tech, ERISA Litig.*, 3:09-cv-00584-ECR-RAM (D. Nev.)

♦ *In Re SunTrust Banks, Inc. ERISA Litig.*, 1:08-cv-03384-RWS (N.D. Ga.)

Stull, Stull & Brody is also prosecuting, but has not been officially appointed as Plaintiffs' Lead or Co-Lead Counsel, in the following ERISA actions:

♦ *In re Boston Scientific Corp. ERISA Litig.*, Master File No. 06-cv-10105 (JLT) (D. Mass.) (Stull, Stull & Brody is serving as counsel for Plaintiffs) (settlement pending)

♦ *Taylor v. Keycorp*, 1:08-cv-01927-DCN (N.D. Ohio)

♦ *Gearren et al. v. The McGraw-Hill Companies, Inc. et al.*, 1:08-cv-07890-RJS (S.D.N.Y.) (dismissed, appeal forthcoming)

♦ *Brown v. Medtronic, Inc. et al.*, 0:08-cv-04904-RHK-AJB (D. Minn.) (dismissed, appeal pending)

♦ *Patten v. Northern Trust Corp. et al.*, 1:08-cv-05912 (N.D. Ill.)

♦ *Fisher v. JP Morgan Chase & Co., et al.*, 03-CV-3252 (SHS) (S.D.N.Y.)

♦ *Kenney v. State Street Corp*, No. 09-10750-PBS (D. Mass.)

♦ *Walter v. Level 3 Communications, Inc.*, 1:09-cv-00658-REB (D. Colo.)

♦ *Yates v. Rosoff,* 2:09-cv-05746-CMR (E.D. PA.) (ERISA action against Advanta Corp.)

♦ *Griffin v. Flagstar Bancorp, Inc.*, 2:10-cv-10610 (E.D. Mich.)

♦ *Ninow v. Hartford Fin Svc Group Inc.*, 3:08-cv-01708-PCD (D. Conn.) (Stull, Stull & Brody is serving as counsel for Plaintiffs)

♦ *Lipman v. Terex Corp.*, 3:10-cv-00006-RNC (D. Conn.)

## Pending Derivative Cases

♦ *Pincus v. Browne (BP p.l.c.)*, 06-cv-6168 (S.D.N.Y. Aug. 14, 2006) (alleging gross mismanagement and breaches of fiduciary duty by BP's Officers and Directors which resulted in the 2005 explosion at BP's Texas City refinery, criminal and civil investigations and fines relating to BP's manipulation of the propane, crude oil and gasoline markets and caused the largest oil spill ever in

Prudhoe Bay, Alaska, which ultimately caused the closing down of Prudhoe Bay's oil production) (appeal of dismissal pending)

♦ *Stoll et al., v. Glenayre Technologies, Inc. et al.*, 07-CV-00608 (S.D.N.Y. 2008)

## Attorneys

Stull, Stull & Brody maintains offices in New York and Los Angeles. The following section sets forth basic educational and experience information for each of Stull, Stull & Brody's attorneys.

## New York Office

**Jules Brody** is a graduate of Brooklyn College, magna cum laude, and received his L.L.B. from the New York University School of Law in 1964. Mr. Brody was named to the Dean's List and was an editor of the Law Review. Mr. Brody was the author of "The Equitable Power to Assess Counsel Fees" which was published in the New York University Intramural Law Review in May 1964. At NYU, Mr. Brody was a John Norton Pomeroy Scholar and received the American Jurisprudence Prize in Commercial Law and graduated in the top 10% of his class. He was admitted to the New York State Bar in 1964. Mr. Brody received his LL.M. in taxation from the graduate division of the NYU School of Law in 1967. Mr. Brody is also admitted to practice before the United States District Court for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second, Fourth and Fifth Circuits, and has been specially admitted to practice before various U.S. District Courts throughout the United States.

**Edwin J. Mills** is Of Counsel to Stull, Stull & Brody. He is a graduate of Fordham University and received his J.D. from Brooklyn Law School in 1977. Mr. Mills was admitted to practice in the State of New York and in the Eastern District of New York in 1978. He has represented classes of purchasers of securities and shareholders for over 20 years in federal and state courts throughout the United States. Mr. Mills has extensive experience in all aspects of securities and ERISA class action litigation, including settlement negotiation and trial, including four class actions tried to verdict. Mr. Mills oversees all of the firm's ERISA Actions, including several large ERISA class action cases brought on behalf of 401(k) retirement plan participants and beneficiaries, including cases involving National City Corporation, Diebold, and Home Depot. Favorable outcomes of cases litigated by Mr. Mills include the 401(k) class actions involving AOL Time Warner ($100,000,000); Tyco International ($70.525 million); Lucent Technologies ($69,000,000) and Cardinal Health ($40,000,000).

**Mark Levine** is a graduate of the University of Maryland and received his J.D. from Brooklyn Law School in 1981. He was admitted to the New York State Bar in 1982 and is admitted to practice before the United States District Courts for the Southern, Western and Eastern Districts of New York and the Northern District of Illinois, the United States Court of Appeals for the Second, Fourth, Sixth, Ninth, Tenth and Eleventh

Circuits, and has been specially admitted to practice before various other state and federal courts.  He has participated in the litigation of securities class actions throughout the United States. Notable cases for which Mr. Levine had substantial responsibility include: *In re American Express Financial Advisors Litigation* (S.D.N.Y. 2007) (Settlement of $100 million for misrepresentations to mutual fund purchasers and misleading practices with respect to sale of American Express financial plans); *Lasker v. Kanas* (Sup. Ct. N. Y. Co. 2007) (settlement of $20 million plus interest on behalf of shareholders of North Fork Bancorporation in connection with its merger with CapitalOne); *In re Computer Associates Sec. Litig* (E.D.N.Y. 2003) (settlement valued at $150 million in securities for corporate misrepresentation of financial results and prospects); *Spahn v. Edward Jones Company* (E.D. Mo. 2007) (settlement valued at over $110 million in cash and credits for misrepresentations in connection with the sale of mutual funds); *In re Northeast Utilities Securities* Litigation, (D. Conn. 2001) (settlement of $25 million for misrepresentations to investors regarding safety of nuclear power plant); *In Re Steven Madden Ltd. Securities Litigation* (E.D.N.Y. 2002) (settlement of $9.0 million for misrepresentation to investors by shoe retailer); *In Re: Regeneron Pharmaceuticals, Securities Litigation* (S.D.N.Y. 2005) (settlement of $4.5 million for misrepresentations to investors regarding pharmaceuticals); *Greenfield v. Compuserve Corp.* (Court of Common Pleas, Franklin County, Ohio 2000) (settlement of $9.5 million for misrepresentations in registration statement of internet company); *In re Thomas & Betts Securities Litigation* (W.D. Tenn. 2002) (settlement of over $50 million for investors for alleged misrepresentations by technology company and its auditors); *Lasky v. Brown* (M.D. La. 2002) (settlement of $20 million for investors for misrepresentations by finance company); *In re Ziff Davis Securities Litigation* (S.D.N.Y. 2001) (settlement of $6 million for alleged misrepresentations to investors in an initial public offering); *In re Trump Hotels Shareholder Litigation* (S.D.N.Y. 2001) (derivative settlement resulting in contribution to the company by its largest shareholder of an asset valued up to $10 million as well as the institution of corporate therapeutics); *In re Cityscape Financial Securities Litigation* (E.D.N.Y. 2001) (settlement of $7 million for alleged misrepresentations to investors by finance company); *In Re Cabletron Systems Securities Litigation* (D.N.H. 2006) (settlement of $10.5 million for alleged misrepresentations to investors by high tech company); *Ganesh v. Computer Learning Center* (E.D. Va. 1999) (settlement of $7.5 million for alleged misrepresentations to investors by trade school operator); *Moriarity v. Molina* (S.D. Fla. 2003) (settlement of $2.8 million for misrepresentations to investors by cell phone retailer); *In re NetEase.com, Inc. Securities Litigation* (S.D.N.Y. 2004) (settlement of $4.35 million for alleged misrepresentation to investors by internet company).

**Howard T. Longman** received his undergraduate degree from the University of Virginia and his J.D. from New York Law School in 1982.  Mr. Longman is a member of the New York State Bar and has also been admitted to practice before the United States District Court for the Southern and Eastern Districts of New York.  Some notable cases in which Mr. Longman had substantial responsibility include: *In Re Peregrine Securities Litigation,* Southern District of California (partial settlement valued at over $56 million), *In Re Rambus Securities Class Action Litigation*, Northern District of California, ($18 million settlement), *In Re Biopure Securities Litigation*, District of Massachusetts

($10 million settlement); *In re Geodyne Securities Litigation,* Harris County Texas and Southern District of New York ($125 million cash settlement plus contingent benefits of additional $75 million); *In Re Dreyfus Aggressive Growth Mutual Fund Litigation*, Southern District of New York ($18.5 million settlement).

**Patrick K. Slyne** received his J.D. from the University of Wyoming in 1988. He is a member of the Colorado, Connecticut and Wyoming state bars, and is admitted to practice before the United States District Courts for Wyoming, Connecticut, Eastern District of New York, and Southern District of New York, and the United States Court of Appeals for the First Circuit and Ninth Circuit.  Notable cases for which Mr. Slyne had substantial responsibility include: *In re Hewlett-Packard Co. Deriv. Litig.*, (Del. 2008) (conferred substantial benefit on HP through corporate governance changes to improve the functioning, interaction and working relationships among senior HP officers and outside members of the HP board of directors); *Sadowsky v. Federal Home Loan Mortgage Corp.*, (S.D.N.Y. 2006) (assisted Freddie Mac in securing $100 million cash from D&O carriers and $9 million cash from certain counter parties for alleged breaches of fiduciary duties in accounting for and reporting of complex multi-billion dollar derivatives transactions); *In re Computer Associates Sec. Litig.*, (E.D.N.Y. 2003) (recovered 5.7 million CA shares worth $150 million for alleged improper revenue recognition on multi-year enterprise software license contracts); *In re IKON Office Solutions, Inc. Sec. Litig.*, (E.D. Pa. 2000) (recovered $111 million cash for alleged misrepresentation of earnings and prospects in office equipment leasing and services business); *In re Westinghouse Sec. Litig.*, (W.D. Pa. 1999) (recovered $67.25 million cash for alleged overstatement of financial position due to unrecognized losses in real estate portfolios); *In re Salomon Brothers Treasury Litig.*, (S.D.N.Y. 1994) (recovered $100 million cash for alleged manipulation of public market prices of U.S. Treasury securities); *In re Tenneco Inc., Sec. Litig.,* (S.D. Tex. 1992) (recovered $50 million cash for alleged overstatement of financial results for failure to mark-to-market dealer inventories of heavy machinery and equipment).

**Melissa R. Emert** received her undergraduate degree from the State University of New York at Stony Brook and her J.D. from Brooklyn Law School in 1988. Ms. Emert is a member of the New York State Bar and has also been admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

**Aaron L. Brody** received his undergraduate degree from Yeshiva University, *summa cum laude*, Class of 1990, and his J.D. from New York University School of Law in 1995.  At NYU, Mr. Brody concentrated on securities law and was a staff editor on the Review of Law and Social Change.  Mr. Brody is a member of the New York State Bar and is admitted to practice before the United States District Court for the Southern and Eastern Districts of New York.  Cases in which Mr. Brody had substantial responsibility include: *In re BankAmerica Corp. Securities Litigation*, MDL No. 1264 (recovery of $333.2 million); *In re Computer Associates Securities Litigation*, Master File No. 98-CV-4839 (E.D.N.Y.) (recovery of 5.7 million shares estimated at $150 million); *Spahn v. Edward D. Jones & Co. L.P.*, 04-CV-00086  (recovery of $127.5 million); *In re American*

*Express Financial Advisors Securities Litigation*, Civil Action No. 04-CV-1773 (S.D.N.Y.) (recovery of $118 million); and *In re Ikon Office Solutions, Inc. Securities Litigation*, MDL No. 1318 (E.D Pa.) (recovery of $111 million).

**Tzivia Brody** received her undergraduate degree from Stern College, magna cum laude, Class of 1992, and her J.D. from the Benjamin M. Cardozo School of Law in 1995.  Ms. Brody is a member of the New York State Bar and is admitted to practice before the United States District Court for the Southern and Eastern Districts of New York.

**Jason D'Agnenica** received his undergraduate degree from Providence College in 1995, B.A., *cum laude*, and his J.D. from St. John's University School of Law in 1998.  While at St John's, Mr. D'Agnenica participated in the Moot Court Honor Society advocacy competition, represented clients in consumer protection matters through St. John's Elder Law Clinic, and interned for Magistrate Judge Timothy M. Boudewyns of the United States District Court for the District of Rhode Island.  Mr. D'Agnenica is a member of the New Jersey State Bar and is admitted to practice before the United States District Court for the District of New Jersey and the Southern and Eastern Districts of New York.

**James Henry Glavin IV** received his undergraduate degree from Boston College, Class of 1999, and his J.D. from Fordham University School of Law in 2002. While at Fordham, Mr. Glavin served as an editor on the Moot Court Board and International Law Journal.  Mr. Glavin is a member of the New York State Bar and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

**Michael J. Klein** received his undergraduate degree in 2001 from Emory University and his J.D., with honors, from the University of Connecticut School of Law in 2004.  While at the University of Connecticut, Mr. Klein served as an executive editor of the Connecticut Law Review.  Mr. Klein is a member of the New York and Connecticut State Bars and is admitted to practice before the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Southern District of New York, the Eastern Districts of New York, the Northern District of Illinois, and the District of Colorado. Cases in which Mr. Klein had substantial responsibility include: *Overby v. Tyco International, Ltd.*, Case No. 02-CV-1357-B (D.N.H.) (settlement of $70.525m in cash; Mr. Klein participated in over eighty days of deposition); *Zilhaver et al. v. UnitedHealth Group, Inc. et al*, Case No. 06-cv-2237 (JMR) (D. Minn.) (a settlement of $17 million cash to the company's 401(k) plan approved in August of 2009); *In Re Affiliated Computer Services ERISA Litig.*, Master File No. 06-CV-1592 (CBA) (N.D. Tex. 2008) (recovery of $1.5 million in cash, plus plan enhancements).

**James E. Lahm** received his undergraduate degree from The Ohio State University and his J.D. from Benjamin N. Cardozo School of Law in 2004.  Mr. Lahm is a member of the New Jersey State Bar and is admitted to practice before the United

States District Court for the Southern and Eastern Districts of New York, the District of Colorado and the District of New Jersey.

**Maksim Fuchs** received his undergraduate degree from Boston University, class of 2003, and his J.D. from Seton Hall School of Law in 2006.  While at Seton Hall Mr. Fuchs finished in the top 16 of the Eugene Gressman Moot Court competition and served as the President of the Jewish Law Society.  Mr. Fuchs is a member of the New York and New Jersey Bars.

## Los Angeles Office

**Patrice L. Bishop** received her undergraduate degree from New York University and her J.D. from Loyola Law School - Los Angeles in 1994.  Ms. Bishop is a member of the California State Bar and is admitted to practice before the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the District of Colorado, the Northern District of Illinois and the United States Court of Appeals for the Eighth and Ninth Circuits.

**Timothy J. Burke** graduated magna cum laude from Suffolk University and received his J.D. from the University of California at Los Angeles in 1995.  Mr. Burke is a member of the California State Bar, and is admitted to practice before the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, and the United States Court of Appeals for the Ninth Circuit.Notable cases in which Mr. Burke had substantial responsibility include *Small v. Fritz Co., Inc.*, 30 Cal. 4th 167 (Cal. 2003) and *In re Complete Management Inc. Sec. Litig.*, 153 F. Supp. 2d 314 (S.D.N.Y 2001)

PAUL E. GILLMOR
5TH DISTRICT, OHIO

COUNTIES: ASHLAND (PART), CRAWFORD,
DEFIANCE, FULTON, HENRY, HURON, LUCAS (PART),
MERCER (PART), PAULDING, PUTNAM, SANDUSKY, SENECA,
VAN WERT, WILLIAMS, WOOD, WYANDOT (PART)

DEPUTY MAJORITY WHIP



COMMITTEE ON ENERGY AND COMMERCE
SUBCOMMITTEES:
ENVIRONMENT AND HAZARDOUS MATERIALS
CHAIRMAN
TELECOMMUNICATIONS AND THE INTERNET
HEALTH
COMMITTEE ON FINANCIAL SERVICES
SUBCOMMITTEES:
CAPITAL MARKETS, INSURANCE AND
GOVERNMENT SPONSORED ENTERPRISES
FINANCIAL INSTITUTIONS AND CONSUMER CREDIT

# Congress of the United States
## House of Representatives
### Washington, DC 20515-3505

January 2, 2007

**Via Federal Express and ECF**
The Honorable Stanley R. Chesler
United States District Judge
Martin Luther King, Jr. Federal Building
    and United States Courthouse
50 Walnut Street
Newark, NJ  08608

Re: <u>In re Merck & Co, Inc., Securities, Shareholder Derivative and ERISA Litig.</u>
(MDL 1658); Case No. 3:05-cv-01151 SRC-MF

Dear Judge Chesler:

I was one of the court appointed lead plaintiffs in *In re Safety-Kleen Rollins Shareholders Litigation*, Civil Action No. 3:00-CV1343-17, which was pending before Judge Joseph Anderson in the District of South Carolina. In that case, which alleged, among other things, violation of the Securities Exchange Act of 1934, I and the other court appointed lead plaintiffs selected Stull, Stull & Brody to be one of the lead counsel for the plaintiffs. That case resulted in a settlement recovery for the class of a very substantial portion of the money that could have been recovered if the case had gone to trial, net of attorneys fees, expenses and administrate fees.

During the course of that litigation, which lasted for about five years, Stull, Stull & Brody kept me apprised of all significant developments in the action such as class certification, settlement negations, litigation strategy, pending motions, court rulings and trial preparation. I would regularly speak to counsel by telephone at which time the foregoing topics would typically be discussed and I would have the opportunity to ask questions and provide input.

Respectfully submitted,

Paul E. Gillmor

WASHINGTON
1203 LONGWORTH HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-3505
202-225-6405

DEFIANCE
613 WEST THIRD STREET
DEFIANCE, OH 43512
419-782-1996

NORWALK
130 SHADY LANE DRIVE
NORWALK, OH 44857
419-668-0206

TIFFIN
55 SOUTH WASHINGTON STREET, SUITE 400
TIFFIN, OH 44883
419-448-9016

http://www.house.gov/gillmor    TOLL FREE IN OHIO 1-800-541-8448    TOLL FREE FAX IN OHIO 1-800-278-8203

# EXHIBIT 2

**In re APPLE INC. SECURITIES LITIGATION**
**STULL, STULL & BRODY TIME & LODESTAR CHART**

A   = Attorney
3L  =  Third Year Law Student
PL = Paralegal

| Name | Hours | Current Hourly Rate | Lodestar |
|------|-------|---------------------|----------|
| Howard T. Longman (A) | 167.00 | $805.00 | $134,435.00 |
| Patrice L. Bishop (A) | 103.10 | $695.00 | $71,654.50 |
| Aaron Brody (A) | 1.00 | $645.00 | $645.00 |
| James Lahm (A) | 0.50 | $595.00 | $297.50 |
| Maksim Fuchs (A) | 1.66 | $385.00 | $639.10 |
| Daniel Vinish (A) | 0.25 | $315.00 | $78.75 |
| David Sheets (PL) | 4.25 | $290.00 | $1,232.50 |
| Melanie Jacobs (PL) | 43.27 | $290.00 | $12,548.30 |
| Paul J. Harrington (PL) | 4.75 | $290.00 | $1,377.50 |
| Graig Russo (3L) | 6.67 | $285.00 | $1,900.95 |
| Karen Williams (PL) | 2.59 | $260.00 | $673.40 |
| Lorraine Chamblee (PL) | 2.25 | $260.00 | $585.00 |
| Maxine Blumenfeld (PL) | 4.34 | $260.00 | $1,128.40 |
| Greta Evans (PL) | 4.33 | $250.00 | $1,082.50 |
| **Totals:** | **345.96** | | **$228,278.40** |

# EXHIBIT 3

**In re APPLE INC. SECURITIES LITIGATION**

**STULL, STULL & BRODY EXPENSE CHART**

**Period:** Inception to January 4, 2011

| CATEGORY | AMOUNT |
|---|---|
| Federal Express Overnight Delivery | $332.16 |
| Lexis Legal Research, Courtlink, Pacer | $3,349.37 |
| Attorney Process Service | $1,648.20 |
| In-Office Copying | $327.50 |
| Faxes | $67.00 |
| Airfare, Hotels, Taxis, Meals | $5,850.03 |
| Malcolm Rosenwald (Accounting Expert) | $24,412.00 |
| John Hammerslough (Damages Expert) | $3,000.00 |
| Press Release | $790.00 |
| Estimated Expenses for Attendance at Settlement Hearing, etc. | $1,200.00 |
| **Total:** | **$40,976.26** |

Exhibit E

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
Fax: 845-356-4335
ggraifman@kgglaw.com

*Co-Counsel for Plaintiffs*
*Martin Vogel and Kenneth Mahoney*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

-----------------------------------------------------------X
IN RE: APPLE INC.,                          :
SECURITIES LITIGATION                       :   Master File No. C06-05208-JF
                                            :
-----------------------------------------------------------X   DATE:     February 18, 2011
This Document Relates to:                   :   TIME:     9:00 a.m.
                                            :   CRTRM:  3, 5th Floor
      ALL ACTIONS                           :   JUDGE:   Hon. Jeremy D. Fogel
-----------------------------------------------------------X

### DECLARATION OF GARY S. GRAIFMAN
### IN SUPPORT OF APPLICATION FOR AWARD OF
### ATTORNEYS' FEES AND EXPENSES FILED
### ON BEHALF OF KANTROWITZ GOLDHAMER & GRAIFMAN, P.C.

GARY S. GRAIFMAN, being duly sworn, hereby declares under the penalties of

perjury as follows:

1.      I am a partner with the firm of Kantrowitz, Goldhamer & Graifman, P.C

("KGG" hereinafter).  I submit this Declaration in support of my firm's application for an

award of attorneys' fees in connection with the services rendered by KGG in the course of

the above-captioned securities class action litigation (the "Litigation").

2.      I am a graduate of New York Law School and have been a practicing attorney

since 1981.  I am admitted to practice before the state and federal courts of New York and

New Jersey.  I have specialized in the field of securities class action and derivative

litigation as well as consumer class action litigation.  My firm and I regularly represent

plaintiffs in federal and state courts in various jurisdictions throughout the United States,

including California. KGG has been appointed lead counsel or co-lead counsel in

numerous cases throughout the country which have successfully resolved in favor of

plaintiffs.  For 2010 and 2011, the last two years, I have been chosen as a *New Jersey*

DECLARATION OF GARY S. GRAIFMAN IN SUPPORT OF APPLICATION FOR
AWARD OF ATTORNEYS' FEES - MASTER FILE NO. C06-05208-JF

1   counsel and I followed the matter's progress very closely since we had initiated the matter

2   and filed the first and operative complaint. In November 2007, the Court granted the

3   defendants' motion to dismiss the complaint. Thereafter, on May 14, 2008, the Court also

4   denied NYCERS' motion to amend the complaint further which sought to reintroduce the

5   claims initially asserted under Sections 10(b) and 20(a) of the Securities Exchange Act of

6   1934 (the "Exchange Act"). As a result, the initial plaintiffs we represented, Mssrs. Vogel

7   and Mahoney through our firm and co-counsel, discussed the re-filing of an action by our

8   respective firms to preserve those Exchange Act claims. As a result, thereafter, in June

9   2007, we researched, drafted and filed another class action complaint which preserved and

10  reasserted the Section 10(b) and 20(a) claims under the Exchange Act. The matter was

11  filed in this Court under the caption styled *Martin Vogel and Kenneth Mahoney v. Apple*

12  *Inc. et al.*, Case No. 5:08-cv-03123-JF (N.D. Cal.) ("*Vogel II*"). *Vogel II* provided a

13  substantial benefit to the class as it preserved viable Exchange Act claims which ultimately

14  contributed to the settlement of the matter. Thereafter, in cooperation with NYCERS' lead

15  counsel we also sought and obtained a stay of the *Vogel II* action pending the determination

16  by the Ninth Circuit Court of Appeals on the appeal pursued by NYCERS relating to the

17  denial of its motion seeking to amend the complaint in *Vogel I* to add in the Exchange Act

18  claims as well. After NYCERS was successful in their appeal, we coordinated our action

19  in *Vogel II* with the NYCERS action in *Vogel I* and had the matters consolidated.

20      4.   Thereafter, we consulted and conferred with counsel for NYCERS, in their role

21  as lead counsel, as they moved the matter forward. In particular, we engaged in various

22  strategy discussions and review of documents concerning the potential settlement

23  negotiations with defendants. My co-counsel also attended the mediation sessions and kept

24  me personally informed throughout. I also conveyed the information to our respective

25  client, Mr. Mahoney and engaged in discussions with him as to the case's progress, the

26  settlement discussions and ultimately, the terms of the proposed settlement. I also

27  received, reviewed and commented upon the settlement agreement and the various

28  settlement documents in the matter.

3

DECLARATION OF GARY S. GRAIFMAN IN SUPPORT OF APPLICATION FOR
AWARD OF ATTORNEYS' FEES - MASTER FILE NO. C06-05208-JF

1    5.    As co-counsel for Plaintiffs, the attorneys of my firm were involved in

2    performing a varied number of tasks including the following, among others: reviewing the

3    public filings of Apple which were implicated in the matter including the various Form 10-

4    K's, Form 10-Q's and various Proxy forms filed by Apple with the SEC; determining

5    which officers, directors and committee members were potentially liable for the

6    complained of issuance of back-dated options; tracking the various options to assert with

7    particularity which allegedly involved backdating; communicating with our expert as to the

8    potential liability and identifying of backdated options and damages; researching

9    reviewing, revising and editing drafts of the initial Class Action Complaint; arranging for

10   notice publication required under the PSLRA, discussing the matter with various

11   shareholders responding to the PSLRA notices; reviewing the Court's decisions on the

12   motion to dismiss and the motion to amend the complaint by NYCERS in *Vogel I*;

13   researching and reviewing the required course of action to preserve the claims under the

14   Exchange Act; drafting and revising the second complaint filed in *Vogel II*; making

15   application for a stay and seeking and drafting documents to consolidate *Vogel II* with

16   *Vogel I*; engaging in various settlement discussions, including the mediation process with

17   lead counsel and defense counsel; assisting in the drafting, reviewing, commenting upon

18   and revising the various settlement documents.

19   6.    The chart attached hereto as Exhibit "1" contains a summary of the time spent

20   by the attorneys, law clerks and paralegals of my firm on the Litigation, and the lodestar

21   calculation based on my firm's current billing rates. The chart includes the name of each

22   attorney, law clerk or paralegal who worked on the Litigation, the hours expended and their

23   current hourly billing rate. The chart was prepared from contemporaneous, daily time

24   records regularly prepared and maintained by my firm. Time spent in preparing this

25   Certification in support of my firm's application for fees and reimbursement of expenses

26   and any other time related to billing or periodic time reporting has not been included in this

27   chart summarizing my firm's hours and lodestar. The total hours incurred by the firm in

28   this litigation is 289 hours. The total lodestar of the firm is $172,068.

4

DECLARATION OF GARY S. GRAIFMAN IN SUPPORT OF APPLICATION FOR
AWARD OF ATTORNEYS' FEES - MASTER FILE NO. C06-05208-JF

7.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit "1" are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder derivative litigation.

8.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

9.      As detailed in Exhibit "2," KGG has incurred a total of $ 3,628.94 in expenses in connection with the prosecution of this Litigation for which the firm has not yet been reimbursed.

10.     The expenses incurred in this action are reflected on the books and records of the firm.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

11.     With respect to the standing of counsel in this case, attached hereto as Exhibit "3" is a brief biography of my firm, as well as a brief biography of the attorneys who were principally involved in this Litigation.

**WHEREFORE,** we respectfully request that the Court approve the application for an award of counsel fees and reimbursement of counsel's expenses.

I declare the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:    January 4, 2011

GARY S. GRAIFMAN

DECLARATION OF GARY S. GRAIFMAN IN SUPPORT OF APPLICATION FOR
AWARD OF ATTORNEYS' FEES - MASTER FILE NO. C06-05208-JF

# EXHIBIT 1

# EXHIBIT 1

## KANTROWITZ ,GOLDHAMER & GRAIFMAN, P.C.
## LODESTAR REPORT FOR
## APPLE COMPUTER OPTIONS BACKDATING CLASS ACTION

| ATTORNEY/PARALEGAL | STATUS | HOURS | RATE/HR | TOTAL |
|---|---|---|---|---|
| Gary S. Graifman | P | 155.30 | $725 | 112,592.50 |
| Michael L. Braunstein | SA | 67.80 | $625 | 42,375.00 |
| Peter L. Benza | A | 15.00 | $550 | 8,250.00 |
| Stella Gilsenan | PL | 39.50 | $175 | 6,912.50 |
| M. Lisa Meyers | PL | 11.40 | $170 | 1,938.00 |
| TOTAL | | 289.0 | | $172,068.00 |

STATUS KEY:   P =   Partner
SA = Senior Associate
A=   Associate
PL= Paralegal

# EXHIBIT 2

**EXHIBIT 2**

**KANTROWITZ ,GOLDHAMER & GRAIFMAN, P.C.**
**EXPENSE REPORT FOR**
**IN RE APPLE, INC. SECURITIES LITIGATION**
**FROM INCEPTION THROUGH DECEMBER 31, 2010**

| Category | Amount |
|---|---|
| Computer Research and Electronic Document Retrieval (Westlaw, Lexis, Nexis, etc.) | $ 3,319.65 |
| Facsimile Fees | $ 67.00 |
| Filing Fees | $ 225.00 |
| L/D Telephone | $ 17.29 |
| **TOTAL** | **$ 3,628.94** |

# EXHIBIT 3

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
**210 Summit Avenue**
**Montvale, New Jersey 07645**
Tel: 201-391-7000
Fax: 201-307-1086
-and-
**747 Chestnut Ridge Road**
**Chestnut Ridge, New York 10977**
Tel: 845-356-2570
Fax: 845-356-4335
website: www.kgglaw.com

## THE FIRM

**KANTROWITZ, GOLDHAMER & GRAIFMAN**, is a full-service law firm (the "Firm") with offices located in Montvale, New Jersey, at 210 Summit Avenue, Montvale, New Jersey 07645 and with offices at 747 Chestnut Ridge Road, Chestnut Ridge, New York.

The Firm is managed by its four (4) partners, PAUL B. GOLDHAMER, BARRY S. KANTROWITZ, GARY S. GRAIFMAN and RANDY J. PERLMUTTER

Among the various areas of law practiced by the Firm, the Firm specializes in commercial litigation and class action litigation, which is managed by Gary S. Graifman of the Firm (see below).

The Firm has a total of twelve (12) attorneys, including the four partners. There are five (5) associates and twelve (12) support personnel (paralegals, secretaries and bookkeeping), as well as three (3) of counsel attorneys at the firm's offices. The biographical information of Gary S. Graifman, partner in charge of this matter, is set forth below.

**Gary S. Graifman, Esq.** is a partner in the firm of **KANTROWITZ, GOLDHAMER & GRAIFMAN**. Prior to joining the firm, he was a partner in the firm of ATLAS & GRAIFMAN in New York City, New York. Mr. Graifman specializes in

the area of commercial litigation and securities and consumer class action litigation. He is admitted to practice before the courts of the State of New York, the State of New Jersey, the United States Federal Courts for the Southern District of New York, the Eastern District of New York, the District of New Jersey, the United States Court of Appeals for the Second Circuit and the Eighth Circuit. He is also a member of the Class Action Committee of the New Jersey State Bar Association. Mr. Graifman has litigated numerous cases involving complex business litigation and employment law. He has litigated a number of cases resulting in reported decisions, including cases of first impression. Mr. Graifman has recently been selected as a *New Jersey Super Lawyer* by Super Lawyers Magazine in its 2010 Edition, based upon his class action litigation expertise.

In a recent settlement in New Jersey Superior Court, Monmouth County, of a nationwide consumer fraud class action on behalf of 11,000 businesses which had been defrauded by the telephone company, Norvergence, and various equipment leasing companies, the New Jersey Superior Court approved a partial settlement with CIT Technology Financing, U.S. Bancorp, De Lage Laden Leasing and two other leasing companies on June 30, 2006. The firm, Kantrowitz Goldhamer & Graifman, was Co-Lead Counsel.

The presiding Judge, Judge Robert Coogan stated that: "The class counsel at bar ...are well qualified, they are experienced in class action litigation. Counsel have vigorously pursued this litigation in this court, and although it's a rounded number, it has been two years, almost. [W]hat was shown here and what leads me to acknowledge this is the dimension, the worthiness, the scope of the advocacy, and the overall professional presentation, both in terms of the pleadings and here in the courtroom. There's also one

other thing that I think as a jurist we judges fail to take note of, but now is the appropriate time to do it, it's the concept of collegiality.  Collegiality amongst yourselves, collegiality of yourselves to the Court.  And then I say collegiality amongst yourselves I mean that without there being one ounce of sacrifice of the responsibility that each of you have as a litigator to advocate.  There has been full advocacy here, but it's been done with a recognition of that other asset, which is collegiality.  The record will confirm counsel have done it this morning, that this pursuit has been vigorous.  There has been extensive document discovery conducted here, depositions were conducted.  And all of that to a point prior, prior to the time of beginning the time to, process of trying to resolve the case. ... I'm satisfied that counsel who have accepted the responsibility of appearing on behalf of the named plaintiffs have fairly and adequately represented the interest of the class.  Adequately I use only because that's the standard.  The reality here is that it was superior work."

In another settlement in New Jersey Superior Court, Bergen County, of a nationwide class action against the vehicle manufacturer DaimlerChrysler, alleging defective brake assemblies for Jeep Grand Cherokees, Mr. Graifman served as co-lead counsel for the class.  In approving the settlement, the Court (Hon. Jonathan N. Harris, New Jersey Super. Ct., Bergen Co.) stated: "[P]laintiffs' counsel engaged in careful and extensive research, investigation, and analysis of the facts and circumstances surrounding the conduct of defendants' business practices.  I conclude that class counsel have a sufficient basis upon which to assess the strengths and weaknesses of the claims and the terms of the settlement."

Furthermore, in a matter recently settled in the U.S. District Court for the Northern District of California, in which Mr. Graifman and the Firm were co-lead counsel (entitled *In re Rambus Inc. Securities Litigation*, 06-cv-4346 (N.D. Ca.)), and which involved an $18 million settlement approved by the Court in a securities fraud matter involving backdated options, U.S. District Court Judge, Jeremy Fogel, stated in approving the settlement that "[i]t appears that the class will receive more money than is typical in these types of cases, certainly in backdating cases. This is a substantial settlement. So, I am satisfied in terms of an independent review and adequacy of the settlement that it is fair and adequate." (From Transcript of Final Approval Hearing, dated May 14, 2008).

The following represent examples of class action, complex business litigation and reported cases of note **Mr. Graifman** and the firm have taken an active role in:

1. **In re Rambus Securities Inc. Litigation.**, 06-c-v4346-JF (N.D. Cal.) **Mr. Graifman** and the Firm served as Co-Lead Counsel for the class in this securities class action involving allegations of backdating of options. The matter was settled for $18.33 million and approved on May 14, 2008.

2. **Heverly v. Symantec Corp.**, 1-05-cv-053711, Santa Clara Co., Cal. (Komar, J.). **Mr. Graifman** and the firm served as Co-Lead Counsel in a nationwide class action settlement, approved October 8, 2009, involving reimbursement of tens of thousands of Norton internet antivirus customers whose subscriptions were unduly shortened upon selecting an upgraded subscription. Settlement also involved substantial remedial relief as to the Company's disclosure of policy.

3. **Lubitz, et al. v. DaimlerChrysler Corp.**, BER-L-4883-04 (New Jersey Superior Court, Bergen Co.) **Mr. Graifman** and the Firm served as Co-Lead Counsel for the class in this consumer action against DaimlerChrysler Corp. The Court certified a nationwide settlement class and approved a settlement valued at $14.5 million to owners of Jeep Grand Cherokees, model years 1999 through 2004.

4. **In re: Painewebber Limited Partnership Litigation**, 94 Civ. 8547 (SHS) (S.D.N.Y.) Court approved a settlement involving a fund of approximately $200 million dollars. This suit was first initiated by KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C. and two other firms in Texas. The case later expanded to cover a multitude of other claims and was settled in a consolidated New York action.

5. **In re NICE Systems, Ltd. Securities Litigation**, Master File No. 2:01cv737 (JAG)(U.S. District Ct., D. New Jersey). **Mr. Graifman** and the Firm served as Liaison Counsel for the class in this securities fraud class action litigation which settled for $ 10 million dollars and was approved by the Court on April 7, 2003.

6. **MARTINEZ v DISTRICT 1199J NEW JERSEY BENEFIT FUND**, et al., Docket No. 97cv3381 (WJM) (U.S. District Court D. New Jersey). **Mr. Graifman** and the Firm served as Lead Counsel in certified class action against Union Benefit Fund in which claims alleging violation of ERISA were upheld. The case was fully litigated to final judgment for the plaintiff class and thereafter, upon execution on the judgment was satisfied with full payment being made to reimburse class members 100% of their losses (Union Members received full reimbursement for all medical bills paid out-of-pocket during the class period).

7. **In re PHARMAPRINT, Inc. Securities Litigation**, Master File No. 00cv61 (JAP) (U.S. District Ct., D. New Jersey). Firm was Co-Lead Counsel for the plaintiff class in this securities fraud class action which settled for $ 2.3 million dollars in connection with claims against this out of business company.

8. **Birenbaum v. John Hancock Mutual Life Ins. Co.**, L-1957-96 (N.J. Superior Court, Essex Co.). **Mr. Graifman** and the Firm served as Co-Counsel for the class in this securities fraud class action certified and settled as a nationwide class action in New Jersey State Court.

9. **Maizes & Maizes, et al. v. Apple Computer, Inc.**, et al. L-13780-95 (N.J. Superior Court, Essex Co.). **Mr. Graifman** and the Firm served as Liaison Counsel in consumer fraud class action pending in New Jersey State Court alleging misrepresentation in the sale of computer monitors by various computer monitor distributors. The action was related to In re: Computer Monitor, Proceeding No. 3158, pending in California Superior, San Francisco County. Joint efforts of negotiation resulted in a settlement which was approved by the California Court. The settlement was valued in excess of $15 million dollars.

10. **Goldberg v. IDM Environmental**, L-11783-96 (N.J. Superior Court, Middlesex Co. 1966) Securities fraud class action in New Jersey state court. Settlement included payment of $1.125 million to nationwide claims of shareholders.

11.    **Amplidyne, Inc. Securities Litigation**, 99-4468 (D. New Jersey). Securities fraud class action litigation settled, alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934.

12.    **In re: Anadigics Securities Litigation**, 98 Civ. 917 (MLC) (D.N.J.) Securities fraud class action litigation alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934. The action was settled for approximate $11.75 million dollars.

13.    **In re: Interactive Network, Inc. Securities Litigation** (Civ. Action No. 95-0026 (DLJ) (N.D. Cal.). Securities fraud class action litigation alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934. Nationwide class certified in connection with settlement in the sum of $1.9 million dollars.

14.    **In re: Delgratia Mining Corp. Securities Litigation**, MDL Dock. No. 1201 (D. Nev.). Securities fraud class action litigation alleging violations of Section 10(b) and Section 20 of the Exchange Act of 1934. Nationwide class action settled for stock of defendant and distribution of a cash payment.

15.    **Feiner v. Orange & Rockland Utilities, Inc.**, 862 F. Supp. 1084, RICO Bus. Disp. Guide 8672 (S.D.N.Y., Sept. 8, 1994) (No. 93 Civ. 5796 (CLB) (filed as class action on behalf of ratepayers of utility) (settled on appeal before the Second Circuit).

16.    **Dakota Industries, Inc. v. Ever Best Ltd.**, 38 F.3d 910, 31 U.S.P.Q.2d 1355 (8th Cir. (S.D.), July 8, 1994) (No. 93-2723, 93-2765). In this trademark infringement matter, **Mr. Graifman** and the Firm served as lead trial counsel for the defendant, a nationwide jeans distributor. After a three week trial in Sioux Falls, South Dakota, the jury returned a verdict for defendant.

17.    **Nu-Life Const. Corp. v. Board of Educ. of City of New York**, 809 F.Supp. 171, 80 Ed. Law Rep. 568 (E.D.N.Y., Nov. 14, 1992) (No. Civ-86-0807) (ADS)). In this major RICO action based on wire fraud, mail fraud and violations of the Hobbs Act, **Mr. Graifman** and the Firm served as sole trial counsel for plaintiffs who alleged that they were subjected to extortion demands by various school construction authority supervisors and inspectors. After a six week jury trial before Judge Spatt, one plaintiff procured a partial settlement and the other received a verdict on their RICO claims against the respective school inspectorial staff members and an award of counsel fees.

18.    **Nu-Life Const. Corp. v. Board of Educ. of City of New York, Div. of School Bldgs. of Bd. of Educ. of City of New York**, 795 F.Supp. 602, RICO Bus. Disp. Guide 8035 (E.D.N.Y., June 16, 1992) (No. CV-86-0807 (ADS)). See above description.

19. **Nu-Life Const. Corp. v. Board of Educ. of City of New York**, 789 F.Supp. 103, 75 Ed. Law Rep. 1009, RICO Bus. Disp. Guide 7885 (E.D.N.Y., Dec. 2, 1991) (No. CV-86-0807 (ADS)).  See above description.

20. **Dakota Industries, Inc. v. Ever Best Ltd.,** 944 F.2d 438, 20 U.S.P.Q.2d 1158 (8th Cir. (S.D.), Sept. 12, 1991) (No. 91-1036).

21. **Elliot Gould v. Ladenberg Thalman**, 1990 WL 209641, Fed. Sec. L. Rep. P. 95, 667 (S.D.N.Y., Dec. 17, 1990) (No. 90 Civ. 4140 (MBM)).  Securities fraud claims litigated on behalf of Elliot Gould against former financial advisors.  Case settled before trial.

22. **Sablosky v. Edward S. Gordon Co., Inc.,** 73 N.Y.2d 133, 535 N.E.2d 643, 538 N.Y.S.2d 513, 4 IER Cases 1315 (N.Y., Feb. 21, 1989) (No. 32).  Reported case decided by New York Court of Appeals which concerned the scope of contractual obligations and enforcement thereof.

23. **SSH Co., Ltd. v. Shearson Lehman Bros. Inc.,** 678 F.Supp. 1055, Blue Sky L. Rep. P. 72, 695, Fed. Sec. L. Rep. P. 93, 647 (S.D.N.Y., Dec. 24, 1987) (No. 86 Civ 5981 (PNL)).

24. **Stephano v. News Group Publications, Inc.,** 64 N.Y.2d 174, 474 N.E.2d 580, 485 N.Y.S.2d 220, 11 Media L. Rep. 1303 (N.Y., Dec. 20, 1984).  **Mr. Graifman** litigated this case defining the parameters of right of privacy and right of publicity in the State of New York.

25. **Brooke Shields v. Garry Gross**, 58 N.Y.2d 338, 448 N.E.2d 108, 461 N.Y.S.2d 254, 9 Media L. Rep. 1466 (N.Y., Mar. 29, 1983).  **Mr. Graifman** represented fashion photographer, Gary Gross, sued by Brooke Shields relating to scope of the right of privacy and right of publicity in New York.  This case of first impression was decided by the New York Court of Appeals, which affirmed the original trial court judgment in favor of photographer.

### IX.   Articles and Publications
*Arbitration Clauses and Class Action Bans: Should Defendants Be Careful Of What They Wish For*? by Gary S. Graifman, Alan E. Kraus and Joan E. Karn; (N.J. Institute for Continuing Legal Education 2007) Handout Materials for "Hot Topics In Class Actions" seminar for New Jersey ICLE;

*Negotiating A Commercial Lease-- From the Tenant's Vantage*, Gary S. Graifman, "The Rockland Business Digest," Vol 1, Issue 5, April 2007;

*CCA Treated Wood-- An Emerging Toxic Tort?* By Gary S. Graifman (American Conference Institute 2003) Handout Materials for "Toxic Tort Litigation, Successful Claims and Litigation Strategy" Seminars Conducted March 2003 by American Conference Institute;

*Dealing With Infants In The Modeling Industry-- A Primer for Adults*, by Gary S. Graifman, "Journal of Art And The Law Journal," Vol. 8, No. 1, 1983 (Jointly Published by Columbia University School of Law and Volunteer Lawyers for the Arts).

**Randy J. Perlmutter, Esq.** is an associate with the firm of **KANTROWITZ, GOLDHAMER & GRAIFMAN.** Mr. Perlmutter is a graduate of the University of Massachusetts at Amherst and New York Law School, where he was an Articles Editor for the New York Law School of International Comparative Law Journal of International Comparative Law and a member of the Moot Court Association. Mr. Perlmutter returns to New York Law School annually as a Judge of various moot court competitions including the Robert Wagner Labor & Employment National Competition. Mr. Perlmutter started his career as a Regional Director and Human Resources Manager of a large retail corporation. Mr. Perlmutter also worked for in-house counsel at a high end women's fashion company where he regularly advised upper management and field management on policies, practices and procedures related to employment matters. Mr. Perlmutter practices in the areas of commercial litigation and employment law. He is a member of the Human Resources Committee with the Commerce and Industry Association of New Jersey, where he has been a recent lecturer.

**Reginald H. Rutishauser, Esq.,** is a senior associate in the firm of **KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.** Mr. Rutishauser is primarily a litigator and appellate advocate at the firm who has assisted in the prosecution of various class actions and complex litigation. He is admitted to practice before the Courts of New York State, New Jersey, and the United States District Courts for the Eastern District of New York, the Southern District of New York, and the District of New Jersey, as well as the United States Court of Appeals for the Second Circuit. Mr. Rutishauser was admitted as a Certified

Public Accountant in the State of New Jersey. He has a Masters of Science Degree in Taxation from Pace University, and a Bachelors of Arts degree from Colgate University. He is a member of the Rockland County Bar Association

**William T. Schiffman, Esq.**, received his J.D. degree from Brooklyn Law School, 1974 and is admitted to practice in New York (1975), Texas (1976), and New Jersey (1981).

Mr. Schiffman was Law Clerk to the Honorable Woodrow Seals, United States District Judge, Southern District of Texas from 1974-1977. In that position Mr. Schiffman was responsible for preparing decisions and orders on motions as well as observing trials and assisting Judge Seals in preparing finds of fact and conclusions of law.

From 1977-1979, Mr. Schiffman was associated with the law firm of Urban & Coolidge in Houston Texas. Mr. Schiffman's principal practice area was commercial litigation.

From 1979 to 1985, Mr. Schiffman was an attorney for AT&T, first in the Long Lines Department in Atlanta, Georgia, and then in company headquarters in New Jersey. Mr. Schiffman's responsibilities principally in the area of general litigation and the AT&T antitrust litigation prior to divestiture.

From 1985 to 1993, Mr. Schiffman was with the law firm of Jacob & Meyers, first as the managing attorney of several offices, then as New Jersey resident partner in charge of the northern New Jersey offices. The practice was principally in the area of litigation.

From 1993 to date, Mr. Schiffman has been associated with Kantrowitz & Goldhamer, P.C., in New York, and its affiliate, Kantrowitz & Goldhamer in New Jersey. Mr. Schiffman's responsibilities are principally in the area of litigation including securities and employment class action, as well as complex contested matrimonial and general commercial litigation.

**Michael L. Braunstein, Esq.** is a senior associate in the firm of Kantrowitz, Goldhamer & Graifman, P.C.  Mr. Braunstein is a graduate of the University of Maryland and St. John's School of Law and is admitted to practice before the New York and New Jersey State Courts and the United States District Courts for the Eastern District of New York, Southern District of New York and the District of New Jersey.

Mr. Braunstein has worked on several significant cases including the collapse of 7 World Trade Center following 9/11, the constitutionality of a New York City's Adult Establishment zoning ordinance, as well as numerous catastrophic injury and wrongful death cases and multi-million dollar property damage cases.  He is the lead attorney in the ongoing Best Buy Price Match Class Action litigation, in which he recently secured class certification of a consumer class in the U.S. District Court for the Southern District of New York.

Mr. Braunstein's practice is focused in the areas of complex litigation, including securities and consumer class actions, business law and personal injury litigation.  Mr. Braunstein also devotes a significant portion of his practice to representing clients in the areas of Mortgage Industry Regulatory compliance, RESPA regulations, HUD representation and related matters.

**Risa K. Jameson, Esq.**  Risa K. Jameson, Esq., was an associate with the Firm during the Litigation, practicing in the area of commercial litigation, matrimonial law and criminal law.  She is the chair of the Young Attorney's Committee of the Rockland County Bar Association (RCBA) and is a past board member of the RCBA.  Risa is admitted to practice in New York, New Jersey and the United States Supreme Court.  She

proudly serves as a member of the New York Bar Association, Rockland County Bar Association and the Rockland County Women's Bar Association.

Ms. Jameson received her J.D. degree from City University of New York Law School at Queens College. During her law school education she was actively involved in trial practice clinics and was a teaching assistant on civil procedure. Ms. Jameson was born in Rockland County, New York and received her Bachelors of Science in Biology from the University Colorado at Boulder. After college, Risa conducted research in Central America, studying anthroprogenic stress on eco-systems and the cultural, environmental and political realities affecting the Belizian government. Her work in Belize led to the adoption of a management plan for the surrounding cayes of the country.

Exhibit F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| IN RE: APPLE, INC. PSLRA BACKDATING LITIGATION | Case No.: C-06-05208-JF Honorable Jeremy Fogel |
|---|---|
| | |

## DECLARATION OF JONATHAN B. MARKS

1.      I am Jonathan B. Marks, a Mediator and Arbitrator at MARKSADR, LLC, in Bethesda, Maryland.

2.      I received my B.A. Cum Laude from Harvard College in 1966 and my J.D. Cum Laude from Harvard Law School in 1972. At Harvard Law School, I was an editor and then President of the Harvard Law Review.

3.      I began my legal career as an Assistant United States Attorney for the District of Columbia. Following this, I was an Associate and Partner at Munger, Tolles & Olson in Los Angeles. My practice primarily involved corporate and commercial litigation. I left private practice in 1979 to serve as Counsel and Associate Director for Planning and Evaluation for the Peace Corps, and then as General Counsel of the United States International Development Cooperation Agency.

4.      In 1981, I co-founded and served as Chairman of Endispute, which provided mediation, arbitration and other dispute resolution services. In August, 1994, Endispute merged with Judicial Arbitration and Mediation Services to form J·A·M·S/Endispute. I served as Vice-Chairman of the Board of Directors of J·A·M·S/Endispute and Chairman of the firm's Executive Committee, which oversaw professional practice issues, until September, 1999, when I formed MARKSADR, LLC. I devote all my professional time to serving as a mediator and arbitrator.

5.      I have extensive experience in mediation, arbitration and other dispute resolution assistance in litigation or pre-litigation disputes arising out of, for example, disputes involving the sale and acquisition of businesses; commercial activities; all aspects of construction; professional malpractice; securities disputes; consumer class actions; ERISA-related disputes; claims against officers and directors of financial institutions and other corporations; insurance coverage; environmental claims; government contract claims; and high stakes personal injury and product liability claims and lawsuits.

6.      The Parties retained me in April, 2010, to mediate the above-referenced case.

7.      The mediation process was confidential, but the Parties have authorized me to inform the Court of the matters presented in this declaration. I make this declaration based on personal knowledge and am competent to testify to the matters set out herein.

8.      The purpose of the mediation was to work with the Parties to explore whether they could reach a settlement of this complex matter, based on a joint and separate evaluation of the risks and costs each side faced in continued litigation.

9.      On April 7, 2010, I had a joint telephone conference with counsel in order to understand the nature and status of the case. Based on these discussions, I proposed, and the Parties agreed to, a mediation process aimed at allowing me and each Party to better understand the strengths and weaknesses of each side's case and the risks attendant to trial and appeal, as well as to explore appropriate monetary and non-monetary relief.

10.     I requested and received a substantial amount of pre-existing materials relating to the case.

11.     On May 5 and 6, 2010, the Parties exchanged and provided me with extensive mediation submissions, including exhibits and case law.

12.     On May 7, 2010, I conducted *ex parte* pre-mediation telephone conferences with each side.

13.     On May 13, 2010, the Parties exchanged and provided me with responsive mediation submissions, including exhibits and case law.

14.     Before and after these *ex parte* discussions, I spent a considerable amount of time reviewing the substantive materials that each of the Parties had provided me, in preparation for a scheduled mediation session.

15.     I convened a two-day mediation session in New York City on May 19-20, 2010. In attendance were class counsel and senior NYC Law Department and Comptroller's Office officials, along with a Research and Consulting expert, as well as Apple's Senior Vice President and Chief Financial Officer and outside counsel.

16.     During the mediation session, each side made detailed presentations to the other side and me about key issues that each contended would be relevant to the likely outcome of the case if settlement were not reached.

17.     Substantial progress was made during the mediation session, and agreement was reached on most material terms of the settlement.

18.     There followed a joint conference call on June 3, 2010, in which I participated, and another joint call on June 9, 2010, to which my Associate Mediator, Barbara Wally, listened.

19.     Thereafter, the Parties worked together without my involvement to further hone settlement terms and to prepare appropriate papers to begin the process of seeking court approval.

20.     Throughout the entire mediation process, it has been clear to me that each of the Parties is represented by experienced and highly competent counsel, willing, if necessary, to litigate the matter to conclusion.

21.     The settlement effort at the mediation session included extensive exchanges of view on the merits and difficult, arms-length negotiations, in which each side worked to persuade the other to modify positions based on reevaluation of risks faced if the case did not settle.

22.     Counsel for each Party were effective advocates for their clients and effective participants in the effort to reach a settlement that fairly valued the risks and opportunities of each Party in the litigation.

23.     It is my view that counsel were motivated in seeking a resolution by their clients' best interests and that their negotiating positions were informed by that motivation. I observed nothing that suggested any collusion or other untoward behavior on the part of counsel for any Party. In fact, it was apparent that this was not the case.

24.     The ultimate terms of the settlement did represent a compromise of the Parties' initial positions, but these compromises were the product of the Parties' assessment of the perceived relative strengths and weaknesses of their positions, and the risks inherent in continued litigation.

25.     Based on my detailed review of case exhibits, the Parties' multiple mediation submissions, the Parties' adversarial mediation presentations, and the extensive substantive dialogue that I facilitated and participated in, it is my view that the settlement reached by the Parties is a fair and reasonable one. It is consistent with the judgments I reached about the strengths and weaknesses of the Parties' cases.

Dated: January 6, 2011

_____

JONATHAN B. MARKS

State of _Maryland_                }

                                   } SS

County of _Montgomery_             }

On this the _6th_ day of _January, 2011_, before me, _Maureen R. Hamilton_ the undersigned Notary Public, personally appeared _Jonathan B. Marks_, personally known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same for the purposes therein stated.

WITNESS my hand and official seal.

_____

Signature of Notary Public

MAUREEN R. HAMILTON
Notary Public
Montgomery County
Maryland
My Commission Expires Mar 15, 2014

4