JAY W. EISENHOFER (*admitted pro hac vice*)
MICHAEL J. BARRY (*admitted pro hac vice*)
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, Delaware 19801
Telephone:     (302) 622-7000
Facsimile:     (302) 622-7100
E-Mail:        jeisenhofer@gelaw.com
               mbarry@gelaw.com

*Attorneys for Lead Plaintiff New York City
Employees' Retirement System*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | CASE NO. C-06-05208-JF <br><br> CLASS ACTION <br><br> **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:        February 18, 2011 <br> Time:        9:00 a.m. <br> Courtroom: 3, 5th Floor <br> Judge:      Hon. Jeremy Fogel |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION ............................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3)) ......................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 2

    I.      INTRODUCTION ........................................................................................ 2

    II.     PROCEDURAL BACKGROUND.................................................................... 4

    III.    ARGUMENT ............................................................................................. 7

          A.    The Standards For Judicial Approval Of Class Action Settlements ........... 7

          B.    The Settlement Meets The Ninth Circuit Standard For Approval .............. 9

               1.    Lead Plaintiff's Case Was Strong, But Entailed Risks ................... 9

               2.    The Expense, Complexity, And Likely Duration of Further Litigation.................................................................................. 10

               3.    The Amount Obtained In Settlement ........................................... 11

               4.    The Extent Of Discovery Completed, And The Stage Of The Proceedings........................................................................... 12

               5.    The Experience And Views Of Lead Counsel And Lead Plaintiff ............................................................................... 13

               6.    Reaction Of The Class Members To The Proposed Settlement ..................................................................... 15

          C.    The Settlement Provided Adequate Notice To The Class ....................... 15

          D.    The Plan Of Allocation Is Fair And Reasonable And Should Be Approved............................................................................................ 16

    IV.   CONCLUSION......................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abab Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ...................................................................................7

*In re Apple Computer Sec. Litig.*,
   No. C-84-20148(A), 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .........................10

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) .......................................................................13

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...............................................................................17

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................................9

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980).............................................................................13

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) .................................13

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ...........................10

*Glass v. UBS Fin. Servs., Inc.*,
   No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*,
   331 Fed. Appx. 452 (9th Cir. 2009)..............................................................13, 17, 18

*Granada Invest., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ...............................................................................12

*In re Heritage Bond Litig.*,
   Nos. 02-ML-1475-DT(RCX), *et seq.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............13

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) .................................................................................9

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)...................................................................16

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ..........................10

*Lundell v. Dell, Inc.*,
    No. CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006)............................14

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ......................................................................................12, 18

*Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................11, 14

*In re Nat'l Student Mktg. Litig.*,
    68 F.R.D. 151 (D.D.C. 1974)...........................................................................................11

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)..............................................................................................11

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ......................................................................................7, 8, 10

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................................ passim

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ..........................................................................................7, 13

*Petrovic v. AMOCO Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ..........................................................................................18

*In re Portal Software, Inc. Sec. Litig.*,
    No.C-03-5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............................................16

*In re Rambus Inc. Deriv. Litig.*,
    No. C06-3513, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ..............................8, 12, 13, 15

*Republic Nat'l Life Ins. Co. v. Beasley*,
    73 F.R.D. 658 (S.D.N.Y. 1977) ........................................................................................12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................................16

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ......................................................................................10

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 CIV. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ......................................10

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ...................................................................................7

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    718 F. Supp. 1099 (S.D.N.Y. 1989)......................................................................12

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989) .........................................................................8

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)......................................................................................8

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) ................................................................................................7

*Woo v. Home Loan Group, L.P.*,
    No. 07-CV-202, 2008 WL 3925854 (S.D. Cal. Aug. 25, 2008) ..........................7, 8

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................18

**OTHER AUTHORITIES**

4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008) ...................7

Federal Rule of Civil Procedure 23 ...................................................................3, 7, 16

H.R. CONF. REP. 104-369 (1995) ...............................................................................15

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on February 18, 2011, at 9:00 a.m., before the Honorable Jeremy Fogel of the United States District Court for the Northern District of California, San Jose, California, Lead Plaintiff The New York City Employees' Retirement System ("Lead Plaintiff") will and hereby does move the Court for an order, pursuant to Fed. R. Civ. P. 23(e) and the Court's Amended Order Preliminarily Approving Settlement, Directing Notice of Settlement, and Scheduling Settlement Fairness Hearing (Docket No. 139), for final approval of the proposed settlement of this action for $16.5 million in cash and proposed Plan of Allocation for distribution of the net settlement proceeds.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in Support Thereof, the Amended Stipulation and Agreement of Settlement dated November 12, 2010 (Docket No. 134), all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

## STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

1.   Whether the Settlement of this action should be granted final approval.

Lead Plaintiff's Answer:  Yes.

2.   Whether the Plan of Allocation for distribution of the net settlement fund should be approved.

Lead Plaintiff's Answer:  Yes.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff The New York City Employees' Retirement System ("Lead Plaintiff") respectfully submits this Memorandum of Points and Authorities in support of its motion for final approval of the Settlement in the above-captioned class action. Specifically, Lead Plaintiff requests that the Court: (i) grant final approval of the proposed class action settlement on the terms set forth in the Amended Stipulation and Agreement of Settlement dated November 12, 2010 (the "Stipulation" or "Settlement"); (ii) approve of the Plan of Allocation for distributing the net settlement fund to Class Members; and (iii) grant final certification of the Class as certified in this court's Amended Order Preliminarily Approving Settlement, Directing Notice of Settlement, and Scheduling Settlement Fairness Hearing ("Amended Preliminary Approval Order", Docket No. 139).[1]

## I.    INTRODUCTION

This is a securities fraud class action alleging false and misleading statements and omissions in violation of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5, and control person liability under § 20(a) of the Exchange Act. Following over four years of litigation and extensive arm's-length settlement negotiations overseen by the mediator, Jonathan B. Marks, Lead Plaintiff, along with Plaintiffs Martin Vogel ("Vogel") and Kenneth Mahoney ("Mahoney" collectively, with Lead Plaintiff, "Plaintiffs"), has succeeded in reaching a proposed settlement for $16.5 million in cash. Fourteen million dollars was deposited into an escrow account on October 22, 2010, and $2.5 million was deposited into an escrow account on December 9, 2010, and the funds have been earning interest for the benefit of the Class.  In addition, Lead Plaintiff

---

[1]    All capitalized terms that are not defined herein are defined in the Amended Stipulation and Agreement of Settlement dated November 12, 2010  (Docket No. 134, Ex. 1).  The "Class," as certified in the Court's Preliminary Approval Order is defined as all purchasers of Apple common stock during the Class Period. Excluded from the Class are Defendants Apple, and Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York (the "Individual Defendants"), all current and former directors and officers of Apple, and all employees of Apple and/or its subsidiaries during the Class Period, and any family member, trust, company, entity, or affiliate controlled or owned by any of the excluded persons and entities.  Also excluded from the Class are any persons and entities that exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

and Lead Counsel negotiated significant corporate governance reforms for the benefit of Apple's shareholders, so that the alleged corporate wrongdoing at issue will not be repeated in the future.

Lead Plaintiff submits this motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  If approved, the Settlement will resolve all claims against Apple Inc. ("Apple" or the "Company") and the Individual Defendants.  Lead Plaintiff and Lead Counsel — based upon their evaluation of the facts, applicable law, and the decisions in this case — submit that the proposed Settlement is in the best interests of the Class and provides an excellent recovery for the Class now.[2]

As discussed below, in reaching the Settlement, Plaintiffs and their counsel considered the numerous risks in continued litigation against Defendants.  In addition, litigating this complex securities fraud class action to completion would result in significant expense and delay.  Even though Plaintiffs and their counsel believe that the action has substantial merit, they acknowledge that the case  involved complex legal and factual issues that raised risks for summary judgment and at trial and that the monetary benefits the Settlement provides to the Class outweigh the risks of continued and protracted litigation in which the result is inherently uncertain.

On October 17, 2010, following a hearing, the Court granted preliminary approval of the Settlement.  On November 15, 2010, a written objection was filed by a single Apple shareholder – Objector Patrick Pezzati – expressing concern about certain *cy pres* distributions in the original settlement.  On November 22, 2010, the Court granted preliminary approval of the Amended Settlement.  Pursuant to the Amended Preliminary Approval Order, beginning on December 8, 2010, Lead Counsel, through the Court-appointed claims administrator Epiq Class Action and Claims Solutions, Inc. ("Epiq"), caused the Court-approved Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses

---

[2]     *See* Michael J. Barry Declaration in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Motion for An Award of Attorneys' Fees and Reimbursement of Expenses ("Barry Decl."), submitted herewith; *see also* Declaration of Carolyn Wolpert in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement ("Lead Plaintiff Decl."), ¶13, attached as Exhibit ("Ex.") A to the Barry Decl.

(the "Notice") to be sent to potential Class Members.  *See* Declaration of Claims Administrator on Notice Implementation ("Oseas Decl."), ¶10, attached as Ex. B to the Barry Declaration.  In addition, the Court-approved Summary Notice was published in *The Investor's Business Daily* and transmitted over *Business Wire* on December 8, 2010.  *Id.* ¶¶8-9.

Pursuant to the Amended Preliminary Approval Order, the deadline for Class Members to file objections to the Settlement, Plan of Allocation or the fee and expense application, or to seek exclusion from the Class, will expire on January 21, 2011.  As of January 7, 2011, over 39,000 Notices have been sent to potential Class Members.  *Id.* ¶¶10-11.   Beyond one lone shareholder who objected to preliminary approval, which objection was overruled, no Apple shareholder has submitted any objection to final approval of the Settlement.[3]  While the deadline for submitting claim forms does not expire until March 15, 2011, Epiq has received, and continues to receive, Proofs of Claim.  *Id.* ¶18.

## II.    PROCEDURAL BACKGROUND

A detailed description of the procedural history of the litigation, the investigation, the negotiation and substance of the Settlement, and the substantial risks and uncertainties of the litigation is contained in the accompanying Barry Declaration. A summary description is provided below.

On August 24, 2006, plaintiffs Martin Vogel and Kenneth Mahoney filed a class action in the U.S. District Court for the Northern District of California against Apple and certain Individual Defendants.  The action was captioned *Vogel, et al. v. Jobs, et al.*, Case No. C-06-5208-JF, and alleged violations of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  This case is referred to as "*Vogel I*."  On October 24, 2006, The New York City Employees' Retirement System ("NYCERS") filed a Motion for Its Appointment as Lead Plaintiff and for Approval of Its Selection of Counsel.  No other complaint had been filed when, on January 19, 2007, the Court granted NYCERS's motion and appointed Grant & Eisenhofer P.A. as lead counsel.

---

[3]    In addition, as of the close of business on January 4, 2011, the claims administrator had received no exclusion requests.  Oseas Decl. ¶17.

On March 23, 2007, NYCERS filed a consolidated class action complaint ("Consolidated Complaint") against Apple and certain Individual Defendants. The Consolidated Complaint alleged violations of Sections 14(a) and 20(a) of the Exchange Act and breach of state law duties of disclosure. NYCERS did not assert a claim under Section 10(b) of the Exchange Act. On June 8, 2007, the Defendants moved to dismiss the Consolidated Complaint. On November 14, 2007, the Court dismissed the Consolidated Complaint with leave to amend only as a derivative action. On December 14, 2007, NYCERS filed a motion for leave to file a first amended consolidated class action complaint to assert claims under Sections 10(b) and 20(a) of the Exchange Act, as well as amended versions of the claims asserted in the Consolidated Complaint. On May 14, 2008, the Court denied NYCERS's motion for leave to amend. On June 12, 2008, the Court entered judgment in favor of the defendants and dismissed NYCERS's claims with prejudice.

On June 17, 2008, NYCERS filed a notice of appeal before the U.S. Court of Appeals for the Ninth Circuit. On January 28, 2010, the Ninth Circuit affirmed the Court's dismissal of NYCERS's claims under Section 14(a) of the Exchange Act and state law. The Ninth Circuit reversed the Court's May 14, 2008 order and granted NYCERS leave to amend its complaint to assert claims under Sections 10(b) and 20(a) of the Exchange Act. On March 22, 2010, NYCERS filed a First Amended Consolidated Class Action Complaint against Apple and certain Individual Defendants. NYCERS's amended complaint alleged violations of Sections 10(b) and 20(a) of the Exchange Act.

On June 27, 2008, plaintiffs Vogel and Mahoney filed another class action suit in the U.S. District Court for the Northern District of California against Apple and certain Individual Defendants. This action was captioned *Vogel, et al. v. Apple Inc., et al.*, Case No. C-08-3123-JF, and alleged violations of Sections 10(b) and 20(a) of the Exchange Act. This action is referred to as "*Vogel II*." On July 22, 2008, the Court stayed all proceedings in *Vogel II* pending the outcome of NYCERS's appeal before the Ninth Circuit in *Vogel I*.

On April 8, 2010, the Court entered an order consolidating *Vogel I* and *Vogel II*. The Court designated NYCERS as the Lead Plaintiff and Grant & Eisenhofer P.A. as Lead Counsel for the consolidated action. On May 14, 2010, Plaintiffs filed a Corrected First Amended Consolidated Class

Action Complaint against Apple and certain Individual Defendants captioned *In re Apple Inc. Securities Litigation*, Case No. C-06-5208-JF, alleging violations of Sections 10(b) and 20(a) of the Exchange Act.

On May 19 and 20, 2010, Lead Plaintiff and Defendants participated in a mediation session in New York with Jonathan B. Marks of Marks ADR LLC, a noted mediator.  During that mediation, the parties reached an agreement in principle to settle the Action under terms that would require Defendants to establish a fund for distribution to the Class in the amount of $14 million, pay an additional $2.5 million to certain corporate governance programs at designated universities across the country, to pay all administrative fees and attorneys fees separately so as not to reduce the fund to be distributed the Class. The parties also agreed to continue discussions regarding potential corporate governance reforms to be considered by Apple.

On September 28, 2010, after considerable negotiations, the Settling Parties entered into a stipulation and agreement to settle the Action under terms that would require Apple to establish a fund for distribution to the Class in the amount of $14 million, establish a fund of $2.5 million to be distributed to certain designated corporate governance programs at twelve universities located across the country, to pay all administrative fees and attorneys fees in an amount to be approved by the Court not to exceed $2 million, and to reimburse Plaintiffs' counsel reasonable out of pocket expenses in an amount to be approved by the Court not to exceed $450,000, and to implement certain corporate governance reforms.  On November 12, 2010, the Settling Parties entered into an amended stipulation and agreement to settle the Action by increasing the fund established for distribution to the Class by $2.5 million, to $16.5 million in cash to be paid by Apple, by eliminating the separate $2.5 million fund to be distributed to designated corporate governance programs, and by providing that any amount remaining in the settlement fund after distribution to the Class would be distributed to nine designated corporate governance programs that were among the twelve previously designated as proposed recipients of the originally contemplated $2.5 million fund.

Following this Court's preliminary approval of the original terms of Settlement, on October 22, 2010, Apple deposited the $14 million Settlement Fund into an interest bearing account, and following issuance of the Amended Preliminary Approval Order, on December 9, 2010, Apple deposited an

additional $2.5 million into the Settlement Fund.  *See* Barry Decl. ¶3.  In addition, pursuant to the Court's Amended Preliminary Approval Order, beginning on December 8, 2010, Lead Counsel, through the claims administrator, caused the Notice packet (including the Court-approved Notice and Claim Form) to be sent to potential Class Members, and the Summary Notice to be published in *The Investor's Business Daily* and over *Business Wire*.  *See* Oseas Decl. ¶¶8-10.

## III.   ARGUMENT

### A.   The Standards For Judicial Approval Of Class Action Settlements

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in class action lawsuits.[4]  Indeed, class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."[5]  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action may be settled upon notice of the proposed settlement to class members, and a court finding, after a hearing, that it is fair, reasonable and adequate. *See also Woo v. Home Loan Group, L.P.*, No. 07-CV-202, 2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008).  On a motion for approval of a class action settlement, "the Court must determine whether the interests of the class[] will be better served by resolution of the litigation than by

---

[4]     *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").

[5]     *Abab Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  The law always favors the compromise of disputed claims, including those asserted in stockholder class actions. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

1    continuation of it." *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387

2    (D. Ariz. 1989).

3    A court's role in settlement approval is essentially twofold, determining whether the settlement:

4    (i) is tainted by fraud or collusion; and (ii) is fair, reasonable and adequate. *See Officers for Justice*, 688

5    F.2d at 625.  In exercising its discretion to approve the settlement of a class action, a district court

6    should consider the following factors: (1) "the strength of the plaintiff's case"; (2) "the risk, expense,

7    complexity, and likely duration of further litigation"; (3) "the risk of maintaining a class action

8    throughout the trial"; (4) "the amount offered in settlement"; (5) "the extent of discovery completed and

9    the stage of the proceedings"; (6) "the experience and views of counsel"; and (7) "the reaction of the

10   class members to the proposed settlement." *In re Rambus Inc. Deriv. Litig.*, No. C06-3513, 2009 WL

11   166689, at *2 (N.D. Cal. Jan. 20, 2009) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th

12   Cir. 2000)); *see also Omnivision*, 559 F. Supp. 2d at 1041; *Home Loan Group*, 2008 WL 3925854, at *3

13   (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

14   "The relative degree of importance to be attached to any particular factor will depend upon and

15   be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and

16   circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

17   In exercising its sound discretion, a district court should not adjudicate the merits of the case. As

18   the Ninth Circuit has noted:

19           [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on
             the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the
20           contested issues of fact and law which underlie the merits of the dispute, for it is the very
             uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation
21           that induce consensual settlements. The proposed settlement is not to be judged against a
             hypothetical or speculative measure of what ***might*** have been achieved by the
22           negotiators.

23   *Officers for Justice*, 688 F.2d at 625 (bold emphasis added); *see also Weinberger v. Kendrick*, 698

24   F.2d 61, 74 (2d Cir. 1982) ("in order to avoid a trial, the judge must [not] in effect conduct one").

25   The presumption of reasonableness in this action is fully warranted because the Settlement is the

26   product of arm's-length negotiations presided over by an experienced mediator.  *See* Barry Decl., ¶40;

27   Marks Decl. ¶¶15-17.  It is the considered judgment of Lead Plaintiff, Lead Counsel, and also of counsel

28

---

1   for plaintiff Vogel and Mahoney, that this Settlement is a fair, reasonable, and adequate resolution of the

2   litigation and warrants this Court's approval.  *See* Barry Decl., ¶4; Lead Plaintiff Decl., ¶13, attached.

**B.     The Settlement Meets The Ninth Circuit Standard For Approval**

**1.     Lead Plaintiff's Case Was Strong, But Entailed Risks**

Lead Plaintiff's case involves federal securities claims asserted against Defendants under §§ 10(b) and 20(a) of the Exchange Act.  To prevail on a § 10(b) claim, Lead Plaintiff would have the burden of establishing that: (1) Defendants made a material misrepresentation or omission; (2) the misrepresentation or omission was in connection with the purchase or sale of a security; (3) the misrepresentation caused plaintiff's loss; (4) plaintiff relied on the misrepresentation or omission; (5) Defendants acted with scienter; and (6) plaintiff suffered damages.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  A § 20(a) control person claim requires that Lead Plaintiff establish: (1) an underlying primary violation of the securities laws; and (2) the defendant exercised actual power and control over the primary violator.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

While Lead Plaintiff believes that its case is meritorious and supported by strong evidence, if the litigation had continued, Plaintiffs faced substantial risks, including establishing Defendants' liability and the Class' full amount of damages at summary judgment or trial.  Defendants argued throughout the litigation that Plaintiffs would be unable to prove loss causation and reliance as to some or all of the Class Period.  They raised these arguments in their motions to dismiss, and would have no-doubt reasserted them at the summary judgment phase and at trial and on appeal. Specifically, Defendants argued in their motion to dismiss that Plaintiffs failed to sufficiently plead loss causation, reliance and damages.  If Defendants had been successful as to even some of their arguments, total recoverable damages would have been greatly reduced or eliminated altogether.  *See* Barry Decl. ¶36.

Even if Plaintiffs prevailed through summary judgment, risks to the Class remain.  Plaintiffs considered that certain contested issues would have been decided by a jury in the event of a trial, including whether Defendants acted with an intent to mislead investors, whether the alleged

misrepresentations or omissions were false and material to investors, whether all of the Class Members' losses were caused by the alleged misrepresentations or omissions, and the amount of damages. Even a meritorious case can be lost at trial. *See In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs, the action was dismissed and plaintiffs were ordered to pay defendants the costs of defending the action). Even success at trial does not eliminate the risk.[6]

### 2. The Expense, Complexity, And Likely Duration Of Further Litigation

The certainty of an immediate substantial recovery for Class Members weighs in favor of settlement given the costs, delays and risks of possibly achieving a larger recovery at some point in the future. *See, e.g., Officers for Justice*, 688 F.2d at 626. The established policy favoring settlement of disputed claims is even stronger for class actions due to the associated expense, complexity, and delays. *See In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008). Indeed, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Id.*

In this particular area of law, courts recognize that "[s]ecurities class actions are generally complex and expensive to prosecute." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007). Thus, "in evaluating the settlement of a securities class action, federal courts . . . 'have long recognized that such litigation is notably difficult and notoriously uncertain.'" *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (citations omitted).

There is no doubt that this securities class action involves complex factual and legal issues. As detailed in the Barry Declaration, the various risks and obstacles confronting the Class – including, for example, establishing loss causation and damages – would necessarily "flow from the complexities and

---

[6]     For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148(A), 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial. The court, however, overturned the verdict, entered judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporate defendant.

1    difficulties inherently involved in shareholder securities fraud litigation." *In re Nat'l Student Mktg.*

2    *Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974).

3         If this Settlement had not been achieved, the action would likely have continued for years and

4    the ultimate result of further litigation cannot be foreseen.  Given the stakes involved in this litigation,

5    an appeal is virtually assured regardless of the result of trial.  Instead of the lengthy, costly, and

6    uncertain course of further litigation with Defendants, the Settlement provides an immediate and certain

7    recovery for the Class.  The Settlement clearly outweighs the substantial risks associated with lengthy

8    continued litigation.  *See* Barry Decl. ¶38.

9                          **3.      The Amount Obtained In Settlement**

10        As set forth above, the Settlement provides for the recovery of $16.5 million in cash plus interest

11   allocated among Class Members after deduction for Court-approved fees and expenses.  As noted above,

12   the settlement amount was obtained as a result of arm's-length negotiations, including an in-person

13   mediation session with the Mediator. *See* Barry Decl. ¶40; Declaration of Jonathan B. Marks ("Marks

14   Decl."), attached as Exhibit F to the Barry Decl. ¶¶15-17.  The $16.5 million was deposited into an

15   escrow account October 22, 2010 ($14 million), and December 9, 2010 ($2.5 million), and has been

16   earning interest for the benefit of the Class.  *See id.* ¶3.

17        As discussed above, there were substantial risks with respect to establishing loss causation and

18   the Class' full amount of damages. In addition, litigating this complex securities fraud class action to

19   completion would result in significant expense and delay.  This recovery, obtained in the face of the risk

20   of no recovery at all, is particularly supportive of approval of the Settlement.

21        The determination of a "reasonable" settlement is not susceptible to a mathematical equation

22   yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a

23   settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  In fact, a proposed settlement may be

24   acceptable even though it amounts to only a fraction of the potential recovery that might be available to

25   the class members at trial.  *See Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527

26   (C.D. Cal. 2004) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)

27   (citations omitted)).  Here the substantial amount of the Settlement clearly falls within the "range of

28

reasonableness" and provides a tremendous benefit to the Class considering, *inter alia*, the limitations on the Class' claims and other litigation risks.

While contested issues over damages might have yielded a smaller recovery after trial or none at all, even the possibility that the Class "might have received more if the case had been fully litigated is no reason not to approve the settlement."[7]  Indeed, "[t]he dollar amount of the settlement by itself is not decisive in the fairness determination . . . Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (citation and internal quotes omitted).

Here, the Settlement confers an immediate and valuable cash benefit to Class Members. Given the complexities of the litigation and the continued risks if the parties were to proceed throughout dispositive motions and trial, the Settlement presents a reasonable resolution of this action and eliminates the risk that the Class might not otherwise recover.

### 4.  The Extent Of Discovery Completed, And The Stage Of The Proceedings

The stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case is one factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See Mego Fin.*, 213 F.3d at 459; *Rambus*, 2009 WL 166689, at *2.  As detailed in the Barry Declaration, Plaintiffs' Counsel conducted an extensive investigation and analysis of the claims.  Its efforts included, but were not limited to: (1) an exhaustive factual investigation into the events and circumstances underlying the claims, including reviewing and analyzing all relevant publicly available media, analyst reports, and SEC filings and public statements; (2) drafting of a detailed consolidated complaint and amended consolidated complaint; (3) extensive

---

[7]    *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y. 1977) ("In evaluating the proposed settlement, the Court is not to compare its terms with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion.").

briefing on Defendants' motions to dismiss and an appeal to the Ninth Circuit; and (4) preparing for and participating in mediation. *See* Barry Decl. ¶5.

Lead Counsel also retained and conferred with experts, including an experienced damages consultant regarding loss causation and damages.  As a result, Lead Counsel gained a comprehensive understanding of the strengths and weaknesses of the case and possible recoverable damages.  *Id.*

This Settlement is based upon adequate information and a sufficient investigation for an in-depth analysis of the Class' claims.

## 5. The Experience And Views Of Plaintiffs and Plaintiffs' Counsel

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arm's-length negotiations is entitled to considerable weight.[8]  This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation."[9]  This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Pac. Enters.*, 47 F.3d at 378.  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage Bond*, Nos. 02-ML-1475-DT(RCX), *et seq.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (internal citation omitted).

Here, the parties have been actively litigating this case for over four years since its commencement in August 2006.  Plaintiffs' Counsel have many years of experience in litigating

---

[8]     *See, e.g., Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *see also Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (quoting *Boyd*, 485 F. Supp. at 622).

[9]     *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (citations omitted); *Rambus*, 2009 WL 166689, at *3; *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009) (unpubl.).

securities fraud actions throughout the country, and in assessing the relevant merits of each side's case.[10] As discussed above and in the Barry Declaration, Lead Counsel conducted a sophisticated and extensive investigation into the claims asserted in the Complaint, including but not limited to review of publicly available documents. Thus, by the time settlement discussions began, Lead Counsel had a solid understanding of the strengths and weaknesses of the claims, both factually and legally, and were able to engage in a rigorous negotiation process with Defendants.

Additionally, throughout the litigation and settlement negotiations, Defendants have been represented by experienced counsel from prominent law firms – O'Melveny & Myers LLP and Munger Tolles & Olson – firms with substantial experience in this type of litigation.  The representation of the Defendants was no less rigorous than Lead Counsel's representation of the Class.

As a result, the parties' settlement negotiations were hard-fought. The negotiations required not only a formal mediation session — conducted under the direction of Jonathan B. Marks, a well-regarded mediator with extensive experience in the mediation of complex actions — but also extensive negotiations following the mediation session.  *See* Barry Decl. ¶40; Marks Decl. ¶¶15-17.

With this background, there is no doubt that the Settlement was reached without collusion and after good-faith bargaining among the parties, and this factor supports a finding that the Settlement is fair, adequate, and reasonable.  *See Lundell v. Dell, Inc.*, No. CIVA C05-3970 JWRS, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case").

Moreover, under the regime put in place with the enactment of the Public Securities Litigation Reform Act of 1995 (the " PSLRA"), the Lead Plaintiff's approval of a settlement should be accorded "special weight because [the Lead Plaintiff] may have a better understanding of the case than most members of the class."  *DIRECTV*, 221 F.R.D. at 528 (quoting MANUAL FOR COMPLEX LITIGATION

---

[10]     *See* Firm Biographies of Grant & Eisenhofer, P.A. and Stull, Stull & Brody, attached as Ex. C.1 to the Barry Declaration and Ex. 1 to the Declaration of Patrice L. Bishop in Support of Application for Attorneys' Fees and Expenses, respectively.

1   (THIRD) § 30.44 (1995)).   Congress enacted the PSLRA in large part to encourage sophisticated

2   institutional investors to take control of securities class actions and "increase the likelihood that parties

3   with significant holdings in issuers, whose interests are more strongly aligned with the class of

4   shareholders, will participate in the litigation and exercise control over the selection and actions of

5   plaintiff's counsel."  H.R. CONF. REP. 104-369, at *32 (1995).

6        Here, the Lead Plaintiff is a sophisticated institutional investor, and its active participation in the

7   prosecution of this case and the approval of the Settlement is compelling evidence that the Settlement is

8   fair, reasonable and adequate.  *See* Lead Plaintiff Decl. ¶12.

9                    **6.      Reaction Of The Class Members To The Proposed**
                              **Settlement**
10

11        As courts have noted, the reaction of the class to the proffered settlement is weighed in

12   considering its adequacy.  *See Rambus*, 2009 WL 166689, at *3 (citation omitted).  Indeed, courts have

13   explained that "the absence of a large number of objections to a proposed class action settlement raises a

14   strong presumption that the terms of a proposed class settlement action are favorable to the class

15   members."  *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).  Pursuant to the Amended

16   Preliminary Approval Order, the deadline for Class Members to object to any aspect of the Settlement,

17   the proposed Plan of Allocation or Lead Counsel's fee and expense request will expire on January 21,

18   2011.   In response to over 39,000 Notices being sent to potential Class Members, to date no Class

19   Member has objected to the Amended Preliminary Approval Order.  The favorable reaction of the Class

20   further supports approval of the Settlement.

21        **C.      The Settlement Provided Adequate Notice To The Class**

22        As required by the Court's Amended Preliminary Approval Order, beginning on December 8,

23   2010, Lead Plaintiff (through the claims administrator) notified potential Class Members of the

24   Settlement by mailing a copy of the Notice packet to all persons (as stated in Apple's transfer agent's

25   records) who purchased or acquired Apple common stock during the Class Period and known U.S.

26   nominees.  *See* Oseas Decl. ¶10.  In addition, a Summary Notice was published in the national edition of

27   *The Investor's Business Daily* and transmitted over *Business Wire* on December 8, 2010, 2010.  *Id.* ¶¶8-

28

9.  The Notice and the Summary Notice also referenced the Internet websites for Lead Counsel and the Claims Administrator where investors could view and download the Notice, Proof of Claim form, and Opt Out form.  *Id.* ¶14.  This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1).

The Notice packet (attached as Ex. B to the Oseas Decl.) advises Class Members of the essential terms of the Settlement, sets forth the procedure for objecting to the Settlement, and provides specifics on the date, time and place of the final approval hearing.  It also provides instructions for opting out of the Class, and provides the Court-approved Opt Out form.  The Notice also contains information regarding Lead Counsel's fee application and the proposed plan of allocating the settlement proceeds among Class Members.  Thus, the Notice provided the necessary information for Class Members to make an informed decision regarding the proposed Settlement.  The Notice fairly apprises Class Members of their rights with respect to the Settlement and therefore is the best notice practicable under the circumstances and complies with the Court's Amended Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.  *See In re Portal Software, Inc. Sec. Litig.*, No.C-03-5138, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice regimen); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'") (citations omitted).

### D.    The Plan Of Allocation Is Fair And Reasonable And Should Be Approved

Plaintiffs have proposed a plan to allocate the proceeds of the Settlement among Class Members who submit valid Proofs of Claim.  The objective of the proposed Plan of Allocation is to equitably distribute the Settlement proceeds to those Class Members who suffered economic losses as a result of the alleged false and misleading statements and omissions set forth in the Complaint.  While all Class Members' claims arise from the same false or misleading statements, the amount of such potential

damages varies.  Differences of this nature among class members are common in securities litigation and are commonly addressed by a plan of allocation in class actions. *Cf. Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 455 (9th Cir. 2009) (unpubl.) (affirming plan for distributing settlement proceeds that treats various class members differently based on differences in recoverable damages).

Lead Plaintiff considered different approaches for allocating the recovery to claimants. For the purpose of allocation, as explained in the Class Notice, a "Recognized Claim" will be calculated for each purchase or acquisition of Apple common stock during the Class Period as reflected on the Claim Forms timely submitted by Class Members.  The calculation of the Recognized Loss will depend upon several factors, including how many shares were purchased, when and at what price they were purchased or otherwise acquired, and when and at what price they were sold.[11]

Assessment of the adequacy of a plan of allocation in a class action is governed by the same standards of review applicable to the settlement as a whole – the plan need be only fair, reasonable and adequate.  *See Omnivision*, 559 F. Supp. 2d at 1045; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284- 85 (9th Cir. 1992).  "An allocation formula need only have a reasonable, rational basis, particularly if

---

[11]     As explained in the Oseas Declaration, Epiq reviewed the Plan of Allocation. Epiq determined that it is able to administer the settlement based on the Plan of Allocation, and has administered numerous other securities class action settlements with similar plans of allocation that are based on the amount of calculated artificial inflation in the stock price during the relevant class period. *See* Oseas Decl. ¶19.  Pursuant to the Court's Amended Preliminary Approval Order, Class Members are required to submit valid Proof of Claim forms and supporting documentation in order to be potentially eligible to participate in the distribution of the settlement funds.  Such supporting documentation typically includes brokerage confirmation slips, or other documentation as sufficiently reliable to establish the transactions in the relevant security while preventing acceptance of fraudulent claims.  If or when Epiq receives Proof of Claim forms without sufficient documentation, the claimant will be advised of the deficiency and we will attempt to work with the claimant in order for them to remedy the deficiency. *Id.* ¶20.  Prior to distributing the net settlement fund, pursuant to paragraph 5.5.5 of the Stipulation, Lead Counsel will apply to the Court for a Class Distribution Order which will, among other things, approve of Epiq's administrative determinations concerning the acceptance and rejection of the Claims submitted, and approve of payment of Epiq's expenses for the notice and claims administration process. Epiq will submit an additional declaration at that time updating the Court on the claims administration process.  In the event that the Court approves of one or more distribution of the net settlement fund, and distributions are completed to the point where it is no longer economically feasible to continue making distributions, Lead Plaintiff will request that the Court approve of an appropriate recipient for a *cy pres* donation for the remaining amount following payment of all outstanding costs and expenses. *Id.* ¶21.

---

recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted).

The goal of an equitable plan of allocation is fairness to the class as a whole, taking into consideration the strengths of claims based upon available facts and evidence, as well as the size of the fund to be distributed.  A plan of allocation that allocates settlement funds to class members based on the extent of their injuries or the strength of their claims is reasonable.  *See Omnivision*, 559 F. Supp. 2d at 1045; *see also Glass*, 331 Fed. Appx. at 454; *Mego Fin.*, 213 F.3d at 461; *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members received different levels of compensation and finding that no subgroup was treated unfairly).

The proposed Plan of Allocation in this case is based on such principles and therefore falls within the mainstream of allocation plans routinely approved by courts.  It was prepared in consultation with Lead Plaintiff's damages consultant, tracks the theory of damages asserted, and is fair, reasonable and adequate to the Class as a whole.  *See* Declaration of Jonathan B. Marks ("Marks Decl."), attached as Exhibit F to the Barry Decl.  ¶25; Lead Plaintiff Decl. ¶14.

In addition, the proposed Plan of Allocation was adequately explained in the Notice sent to Class Members. Notably, in response to over 39,000 Notices, as of the date of this filing, there have been no objections to the proposed Plan of Allocation.  *See* Oseas Decl. ¶¶10-11.

1  **IV.     CONCLUSION**

2          Based on the foregoing, Lead Plaintiff respectfully requests that the Court grant final approval of

3  the Settlement and Plan of Allocation.

4  Dated:  January 7, 2011                        Respectfully submitted,

5                                                 **GRANT & EISENHOFER P.A.**

6                                                 _____/s/ Michael J. Barry_____
7                                                      MICHAEL J. BARRY

8                                                 JAY W. EISENHOFER
                                                   MICHAEL J. BARRY
9                                                 Chase Manhattan Centre
                                                   1201 N. Market Street
10                                                 Wilmington, Delaware 19801
                                                   Telephone:     (302) 622-7000
11                                                 Facsimile:     (302) 622-7100

12                                                 *Attorneys for Lead Plaintiff New York City Employees'*
13                                                 *Retirement System*

14                                                 PATRICE L. BISHOP (CSB. No. 182256)
                                                   STULL, STULL & BRODY
15                                                 10940 Wilshire Blvd., Suite 2350
                                                   Los Angeles, CA  90024
16                                                 Telephone:     (310) 209-2468
                                                   Facsimile:     (310) 209-2087
17
                                                   HOWARD T. LONGMAN
18                                                 STULL, STULL & BRODY
                                                   6  East 45th Street, Suite 500
19                                                 New York, N.Y. 10017
                                                   Telephone:     (212) 687-7230
20                                                 Facsimile:     (212) 490-2022

21
                                                   GARY S. GRAIFMAN
22                                                 KANTROWITZ GOLDHAMER & GRAIFMAN
                                                   747 Chestnut Ridge Road
23                                                 Chestnut Ridge, New York 10977
                                                   Telephone:  (845) 356-2560
24                                                 Facsimile:  (845) 356-3445

25                                                 *Attorneys for Plaintiffs*
                                                   *Martin Vogel and Kenneth Mahoney*
26

27

28