JAY W. EISENHOFER (*admitted pro hac vice*)
MICHAEL J. BARRY (*admitted pro hac vice*)
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, Delaware 19801
Telephone:     (302) 622-7000
Facsimile:     (302) 622-7100
E-Mail:        jeisenhofer@gelaw.com
               mbarry@gelaw.com

*Attorneys for Lead Plaintiff New York City Employees'*
*Retirement System*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | CASE NO. C-06-05208-JF<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        February 18, 2011<br>Time:        9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:       Hon. Jeremy Fogel |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ iii

STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3)) ........................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

I.     INTRODUCTION ................................................................................................. 2

II.    PROCEDURAL BACKGROUND ....................................................................... 5

III.   ARGUMENT ......................................................................................................... 7

    A.   THE REQUESTED FEES ARE FAIR AND REASONABLE ................................................ 7

        1.   A Reasonable Percentage Of The Fund Recovered Is An Appropriate Approach To Awarding Attorneys' Fees In Common Fund Cases ................................................................................. 7

        2.   Lead Counsel's Fee Of 7.5% Of The Total Economic Value Of The Settlement  Less Costs Is Reasonable .................................................. 8

        3.   Other Plaintiffs' Counsel's Fee of 2.28% Of The Total Economic Value Of The Settlement  Is Also Reasonable ........................................... 8

        4.   Examination Of The Relevant Ninth Circuit Factors Supports A Combined Fee Award Of 9.61% ................................................................. 10

            a.   The Results Achieved ................................................................. 10

            b.   Risks Of Litigation .................................................................... 12

            c.   The Skill Required And Quality Of The Work Performed .......... 13

            d.   The Contingent Nature Of The Fee And Financial Burden Carried By Counsel ...................................................................... 15

            e.   Awards Made In Similar Cases .................................................. 16

            f.   Reaction Of The Class Supports The Requested Fees And Expenses ..................................................................................... 19

            g.   The Lodestar Crosscheck Confirms The Reasonableness Of The Requested Fee ...................................................................... 20

    B.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED FOR THE CLASS ......................... 22

C.    OTHER PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED FOR THE CLASS ............................................................................................... 24

IV.    CONCLUSION.................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Activision Sec. Litig.,*
  723 F. Supp. 1373 (N.D. Cal. 1989) ..........................................................................8

*In re Bisys Sec. Litig.,*
  No. 04 CIV 3840, 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ................................21

*Blum v. Stenson,*
  465 U.S. 886 (1984) ................................................................................................ 18

*In re Comverse Sec. Litig.,*
  No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...............4, 22

*In re Cont'l Ill. Sec. Litig.,*
  962 F.2d 566 (7th Cir. 1992) ...................................................................................23

*In re CV Therapeutics, Inc. Sec. Litig.,*
  No. C 03-3709 SI, 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007).............................17

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
  MDL No. 1486, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007)..............................15

*In re Equity Funding Corp. Sec. Litig.,*
  438 F. Supp. 1303 (C.D. Cal. 1977) .......................................................................15

*Gerstein v. Micron Tech. Inc.,*
  Civ. No. 89-1262, 1993 U.S. Dist. LEXIS 21215 (D. Idaho Sept. 10, 1993)...........................8

*Glass v. UBS Fin. Servs., Inc.,*
  331 Fed. Appx. 452 (9th Cir. 2009).................................................................7, 8, 20

*Gustafson v. Valley Ins. Co.,*
  No. CV 01-1575-BR, 2004 WL 2260605 (D. Or. Oct. 6, 2004) .............................13

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ...................................................................................8

*Harris v. Marhoefer,*
  24 F.3d 16 (9th Cir. 1994) .................................................................................23, 24

*In re Heritage Bond Litig.,*
  Nos. 02-ML-1475-DT(RCX), *et seq.*, 2005 WL 1594389 (C.D. Cal. June 10, 2005) ......12, 14

*Hunt v. Imperial Merchant Services.,*
  No. C-05-04993, 2010 U.S. Dist. LEXIS 111243 (N.D. Cal. Feb. 9, 2010) ...........................20

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000).................................................................................12, 18

*In re Immunex Sec. Litig.*,
   864 F. Supp. 142 (W.D. Wash. 1994)......................................................................20

*In re Informix Corp. Sec. Litig.*,
   No. C 97-1289 CRB, 1999 U.S. Dist. LEXIS 23579 (N.D. Cal. Nov. 23, 1999)....................17

*In re Infospace, Inc.*,
   330 F. Supp. 2d 1203 (W.D. Wash. 2004).................................................................21

*In re Interpublic Sec. Litig.*,
   Nos. 02 Civ.6527(DLC), 03 Civ.1194(DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004).21

*In re JDS Uniphase Corp. Sec. Litig.*,
   No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...........................16

*In re Juniper Deriv. Actions*,
   No. 5:06-cv-03396-JW, 2008 U.S. Dist. LEXIS 109858 (N.D. Cal. Nov. 13, 2008)...........4, 17

*Keith v. Volpe*,
   501 F. Supp. 403 (C.D. Cal. 1980) ..........................................................................21

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ..............................................................................7, 18

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .....................................17, 19, 20

*Kurzweil v. Philip Morris Cos., Inc.*,
   Nos. 94 Civ. 2373, 2546, 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999)...............................21

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
   487 F.2d 161 (3d Cir. 1973), *subsequently amended* 540 F.2d 102 (3d Cir. 1976) (*en banc*) ...21

*In re M.D.C. Holdings Sec. Litig.*,
   No. CV89-0090 E, 1990 WL 454747 (S.D. Cal. Aug. 30, 1990)......................................18

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................................21

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1996) ........................................................................23

*In re Medical X-Ray Film Antitrust Litig.*,
   No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998).........................................21

*In re NVIDIA Corp. Deriv. Litig.*,
   C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009).............4, 17

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................... *passim*

*Paul, Johnson, Alston & Hunt v. Graulty,*
   886 F.2d 268 (9th Cir. 1989) .......................................................................7

*Phemister v. Harcourt Brace Jovanovich, Inc.,*
   No. 77 C 39, 1984 WL 21981 (N.D. Ill. Sept. 14, 1984) ................................. 18

*In re Pub. Service Co. of New Mexico,*
   No. 91-0536M, 1992 WL 278452 (S.D. Cal. July 28, 1992)............................. 18

*Rabin v. Concord Assets Group, Inc.,*
   No. 89 CIV 6130, 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991)........................21

*In Re Rambus Derivative Litig.,*
   C 06 3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan 20, 2009)....................18

*In re Rite Aid Corp. Sec. Litig.,*
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ..............................................................21

*In re RJR Nabisco, Inc. Sec. Litig.,*
   MDL No. 818, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ............................18

*Ryan v. Gifford,*
   CA. No. 2213-CC, 2009 WL 18143 (Del. Ch. Jan. 2, 2009) .....................4, 17

*Six Mexican Workers v. Arizona Citrus Growers,*
   904 F.2d 1301 (9th Cir. 1990) ........................................................................7

*In re Synthroid Mktg. Litig.,*
   264 F.3d 712 (7th Cir. 2001) .........................................................................18

*In re Synthroid Mktg. Litig.,*
   325 F.3d 974 (7th Cir. 2003) .........................................................................18

*Torrisi v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) ............................................................................7

*In re United States Bioscience Sec. Litig.,*
   155 F.R.D. 116 (E.D. Pa. 1994)......................................................................18

*Van Vranken v. Atlantic Richfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995)..................................................................21

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002) ............................................................... *passim*

*Wal-Mart Stores, Inc. v. VISA USA, Inc.,*
   396 F.3d 96 (2d Cir. 2005) .............................................................................21

1

2

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994) ......................................................................12, 15, 20

3

*In re WorldCom Inc. Sec. Litig.,*
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................... 21

4

5

*In re Zoran Corp. Deriv. Litig.,*
    C 06-05503, 2008 WL 4104517 (N.D. Cal. Sept. 2, 2008)............................. 4, 17

6

**OTHER AUTHORITIES**

7

Fed. R. Civ. P. 23(e) and (h) ...........................................................................1

8

9

Ronald I. Miller, et al., *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?,* at 4 (NERA Apr. 20, 2006)..........................................12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 23(e) and (h) and the Court's Amended Order Preliminarily Approving Settlement, Directing Notice of Settlement, and Scheduling Settlement Fairness Hearing (Docket No. 139), on February 18, 2011, at 9:00 a.m., before the Honorable Jeremy Fogel of the United States District Court for the Northern District of California, San Jose, California, Lead Counsel Grant & Eisenhofer P.A. will and hereby do move for entry of an order awarding attorneys' fees and reimbursement of litigation expenses relating to Lead Counsel's prosecution of the claims by Lead Plaintiff the New York City Employees' Retirement System ("NYCERS"), acting on behalf of itself and all Class Members in the above-titled action, against Defendants Apple, Inc. ("Apple") and Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson and Jerome York, and other Plaintiffs' Counsel's (as defined herein) prosecution of *Vogel, et al. v. Apple Inc., et al*, Case No. C-08-3123-JF (N.D. Cal.) ("*Vogel II*"), which was consolidated into this action.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Amended Stipulation and Agreement of Settlement dated as of November 12, 2010 (Docket No. 134, Ex. 1), all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

## STATEMENT OF ISSUES TO BE DECIDED (CIVIL L.R. 7-4(A)(3))

1.     Whether the application for attorneys' fees and reimbursement of litigation expenses should be granted.

Lead Plaintiff's Answer: Yes.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Settlement in this case calls for the payment by Apple of $16.5 million in cash for distribution to Class members.  Plaintiffs also negotiated substantial corporate governance reforms that will redound to the benefit of Apple's shareholders in the future so that the alleged corporate wrongdoing at issue will not be repeated in the future.  The substantial monetary recovery and corporate governance reforms obtained for the Class were achieved after over four years of hard-fought litigation, through the skill, work, tenacity, and effective advocacy of Lead Counsel and other Plaintiffs' Counsel (as defined below).[1]   As detailed in the accompanying Declaration of Lead Counsel, Grant & Eisenhofer, and other Plaintiffs' Counsel's (as defined below),[2] efforts included: (i) conducting an extensive pre-filing investigation; (ii) completing an extensive review and analysis of Apple's Securities and Exchange Commission ("SEC") filings and other documents related to the alleged false and misleading statements as alleged in the Corrected First Amended Class Action Complaint and prior pleadings in this action, including proxy statements, annual reports and press releases; (iii) defending motions to dismiss contending that the pleadings in the action, among other things, failed to state a claim for relief under §§ 14(a) and 20(a) of the of the Securities Exchange Act of 1934 ("Exchange Act") and otherwise failed to satisfy the pleading requirements of the Private Securities Litigation Reform Act of

---

[1]   Pursuant to the Court's Amended Order Preliminarily Approving Settlement, Directing Notice of Settlement and Scheduling Settlement Fairness Hearing ("Preliminary Approval Order," Docket No. 139), the Class is defined as follows:  all person and entities that purchased Apple common stock during the Class Period, which is August 24, 2001 through June 29, 2006, both dates inclusive, and who were damaged thereby.  Defendants and certain others, as well as those who opt out of the Settlement, are excluded from the Class.  Defendants are Apple, Inc. ("Apple") and Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson and Jerome York.  All terms not otherwise defined herein shall the meaning given them in the Amended Stipulation and Agreement of Settlement ("Stipulation") dated as of November 12, 2010, and previously filed with the Court  (Docket No. 134, Ex. 1).

[2]   Plaintiffs' Counsel includes Lead Counsel and the firms Stull, Stull & Brody and Kantrowitz, Goldhamer & Graifman (counsel in the *Vogel II* action).  *See* Exhibit C.1 to the Declaration of Michael J. Barry in Support of Motion for Final Approval of Settlement and Plan of Allocation and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Barry Decl."), Declaration of Patrice Bishop in Support of Motion for Final Approval of Settlement and Plan of Allocation and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Bishop Decl."), attached as Exhibit F to the Barry Decl. and Declaration of Gary Graifman in Support of Motion for Final Approval of Settlement and Plan of Allocation and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Graifman Decl."), attached as Exhibit G to the Barry Decl.

1995 ("PSLRA"); (iv) prosecuting a successful appeal of the dismissal of the case to the U.S. Court of Appeals for the Ninth Circuit, in which the Ninth Circuit reversed the Court's denial of leave to amend the pleadings to assert securities fraud claims under §§ 10(b) and 20(a) of the Exchange Act; (v) retaining and consulting with experts; (vi) exchanging confidential mediation statements with Defendants; and (vii) preparing for, and participating in, mediation before an experienced mediator and extensive negotiations following the formal mediation session.  *See* Barry Decl. ¶¶18-30.

Plaintiffs' Counsel undertook the prosecution of this action on an entirely contingent basis.  As compensation for the efforts expended to achieve the recovery for the Class (including plaintiffs Vogel and Mahoney in the *Vogel II* action), Plaintiffs' Counsel is applying for fees in the amount of $1,966,250.00, plus expenses of $395,515.90.  Of this amount, Lead Counsel is applying for an award of fees in the amount of $1.5 million, which represents 7.5% of the total economic value of the Settlement (excluding attorneys' expenses), plus out of pocket expenses of $350,910.70.[3]  Stull, Stull & Brody ("SSB") and Kantrowitz, Goldhamer & Graifman ("KGG"), counsel for plaintiffs in *Vogel II*, are applying for an award of fees in the amount of $466,250, which represents 2.28% of the total economic value of the Settlement, plus out of pocket expenses of $44,605.20.  Apple has agreed to pay Plaintiffs' Counsel the amount of reasonable attorneys' fees and expenses as may be awarded by the Court.  Apple will pay these attorneys' fees and expenses separately, and such payment will not affect the amount of the Net Settlement Fund.  The fee requested amounts to a combined total of the total economic value of the Settlement of only 9.61%.[4]

The requested fee percentage is well below the 25% benchmark established by the Ninth Circuit, and also below fee awards granted in other similar backdating securities class actions.  *See Vizcaino v.*

---

[3]    This fee is consistent with the fees that Lead Plaintiff, a sophisticated institutional investor with experience in prosecuting securities class actions under the PSLRA, negotiated with Lead Counsel at the outset of the litigation, and is considered fair and reasonable by noted mediator Jonathan B. Marks.  See Declaration of Carolyn Wolpert in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement ("Lead Plaintiff Decl."), ¶16, attached as Exhibit ("Ex.") A to the Barry Decl; *see also* Declaration of Jonathan B. Marks ("Marks Decl."), attached as Exhibit F to the Barry Decl. ¶25.

[4]    The term "total economic value of the Settlement", as used herein, includes all payments Apple has agreed to make under the Settlement, including Apple's payment to establish the Settlement Fund, reimbursement of the costs of administering and distributing the Net Settlement Fund, and payment of Attorneys' Fees and Expenses.

*Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002) (recognizing 25% benchmark); *see also In re Brocade Sec. Litig.,* 05-cv-02042, Docket No. 496 (N.D. Cal. Jan. 26, 2009) (awarding 25% fee on $160 million settlement); *In re Monster Worldwide, Inc. Sec. Litig.,* 07- CV-02237, Docket No. 139 (S.D.N.Y. Nov. 25, 2008) (awarding 25% of the $47 5 million recovery); *In re Comverse Sec. Litig.,* No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) (awarding 25% fee on a $225 million settlement, observing "an improperly calibrated fee would provide a disincentive to future counsel to take risks and pursue large class settlements that the SEC cannot"); *In re Marvell Tech. Group Ltd Sec. Litig.,* 06-06286, Docket No. 292 (N.D. Cal. Nov. 13, 2009) (awarding 20.5% fee on a $72 million settlement); *In re Broadcom Corp. Class Action Litig.,* No. 06-cv-05036, Docket No. 355 (C.D. Cal. Aug. 11, 2010) (awarding 18.5% fee on a $160.5 million settlement).[5]

The reaction thus far from Class Members further supports Plaintiffs' Counsel's request for attorneys' fees and expenses.  Beginning on December 8, 2010, the Court-approved Class Notice was sent to more than 39,000 potential Class Members and informed them of Plaintiffs' Counsel's proposed fee application. *See* Declaration of Robert Oseas Re: Notice Dissemination and Publication ("Oseas Decl."), ¶¶10-11, attached as Ex. B to the Barry Decl.  In addition, the Summary Notice was published in the national edition of *The Investor's Business Daily* and transmitted over *Business Wire* on December 8, 2010.  Oseas Decl., ¶¶8-9.

The deadline for Class Members to object to the Settlement and/or Lead Counsel's fee application, or to seek exclusion from the Class, expires on January 21, 2011.  To date, only one Class Member has objected to any aspect of the Settlement and, as discussed below, that objection was filed in

---

[5]      It is also below the fee percentages granted in options backdating cases that were brought derivatively. *See, e.g., Ryan v. Gifford,* CA. No. 2213-CC,  2009 WL 18143 (Del. Ch. Jan. 2, 2009) (awarding 33% of the cash recovery); *In re Zoran Corp. Deriv. Litig.,* C 06-05503, 2008 WL 4104517 (N.D. Cal. Sept. 2, 2008) (awarding 38% of the cash recovery); *In re Marvel Tech. Group Ltd Deriv. Litig.,* 06-03894, Docket No. 108 (N.D. Cal. Aug. 11, 2009) (awarding 29% of the cash recovery); *In re NVIDIA Corp. Deriv. Litig.,* C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009) (awarding $7.25 million, equal to 45.8% of the $15.8 million cash recovery); *In re Juniper Deriv. Actions,* 2008 U.S. Dist. LEXIS 109858 (N.D. Cal. Nov. 13, 2008) (awarding $9 million, equal to 39.6% of the $22 7 million cash recovery); *In re Activision, Inc. S'holder Deriv. Litig.,* CV-06-04771-MRP, Docket No. 84 (C.D. Cal. July 21, 2008) (awarding $10.75 million, equal to 44.2% of the $24 3 million cash recovery).

1   connection with the Court's consideration of preliminary approval of the Settlement.  It does not relate

2   directly to Plaintiffs' Counsel's fees and expenses and is otherwise without merit.

3   **II.   PROCEDURAL BACKGROUND**

4         A detailed description of the procedural history of the litigation, the investigation, motion

5   practice, appellate briefing and argument, the negotiation and substance of the Settlement, and the

6   substantial risks and uncertainties of the litigation is contained in the accompanying Barry Declaration.

7   A summary description is provided below.

8         On August 24, 2006, plaintiffs Martin Vogel and Kenneth Mahoney (Lead Plaintiff with

9   plaintiffs Vogel and Mahoney are hereinafter referred to collectively as "Plaintiffs") filed a class action

10  complaint in the U.S. District Court for the Northern District of California against Apple and certain

11  Individual Defendants captioned *Vogel, et. al. v. Jobs, et. al.*, Case No. C-06-5208-JF, and alleged

12  violations of §§ 10(b), 14(a), and 20(a) of the Exchange Act.  ("*Vogel I*").  No other complaint was filed.

13  On October 24, 2006, The New York City Employees' Retirement System ("NYCERS") filed a Motion

14  for Its Appointment as Lead Plaintiff and for Approval of Its Selection of Counsel.  On January 19,

15  2007, the Court granted NYCERS's motion and appointed Grant & Eisenhofer as lead counsel.

16        On March 23, 2007, NYCERS filed a consolidated class action complaint ("Consolidated

17  Complaint") against Apple and certain Individual Defendants, alleging violations of §§ 14(a) and 20(a)

18  of the Exchange Act and breach of state law duties of disclosure.  NYCERS did not assert a claim under

19  Section 10(b) of the Exchange Act.  On June 8, 2007, the Defendants moved to dismiss the Consolidated

20  Complaint.  On November 14, 2007, the Court dismissed the Consolidated Complaint with leave to

21  amend only as a derivative action.  On December 14, 2007, NYCERS filed a motion for leave to file a

22  first amended consolidated class action complaint to assert claims under §§ 10(b) and 20(a) of the

23  Exchange Act, as well as amended versions of the claims asserted in the Consolidated Complaint.  On

24  May 14, 2008, the Court denied NYCERS's motion for leave to amend.  On June 12, 2008, the Court

25  entered judgment in favor of the Defendants and dismissed NYCERS's claims with prejudice.

26        On June 17, 2008, NYCERS filed a notice of appeal before the U.S. Court of Appeals for the

27  Ninth Circuit.  On January 28, 2010, the Ninth Circuit affirmed the Court's dismissal of NYCERS's

28  claims under § 14(a) of the Exchange Act and state law.  The Ninth Circuit reversed the Court's May 14,

2008 order and granted NYCERS leave to amend its complaint to assert claims under §§ 10(b) and 20(a) of the Exchange Act.  On March 22, 2010, NYCERS filed a First Amended Consolidated Class Action Complaint against Apple and certain Individual Defendants.  NYCERS's amended complaint alleged violations of §§ 10(b) and 20(a) of the Exchange Act.

On June 27, 2008, plaintiffs Vogel and Mahoney filed another class action suit in the U.S. District Court for the Northern District of California against Apple and certain Individual Defendants captioned *Vogel, et al. v. Apple Inc., et al.*, Case No. C-08-3123-JF, alleging violations of §§ 10(b) and 20(a) of the Exchange Act.  ("*Vogel II*").  On July 22, 2008, the Court stayed all proceedings in *Vogel II* pending the outcome of NYCERS's appeal before the Ninth Circuit in *Vogel I*.

On April 8, 2010, the Court entered an order consolidating *Vogel I* and *Vogel II*, designating NYCERS as the Lead Plaintiff and Grant & Eisenhofer as Lead Counsel for the consolidated action.  On May 14, 2010, Plaintiffs filed a Corrected First Amended Consolidated Class Action Complaint against Apple and certain Individual Defendants captioned *In re Apple Inc. Securities Litigation*, Case No. C-06-5208-JF, alleging violations of §§ 10(b) and 20(a) of the Exchange Act.

On May 19 and 20, 2010, Lead Plaintiff and Defendants participated in a mediation session with Jonathan B. Marks, noted mediator, in New York.  The parties reached an impasse during the in-person mediation, however, and did not agree to a settlement.

On September 28, 2010, after considerable negotiations, the Settling Parties entered into a stipulation and agreement to settle the Action for $14 million in cash to be paid by Apple.  On November 12, 2010, the Settling Parties entered into an amended stipulation and agreement to settle the Action for $16.5 million in cash to be paid by Apple.

Following this Court's issuance of the Amended Preliminary Approval Order, on November 22, 2010, the Settlement Fund was deposited into an interest-bearing escrow account.  *See* Barry Decl. ¶3. In addition, pursuant to the Court's Amended Preliminary Approval Order, beginning on December 8, 2010, Lead Counsel, through the claims administrator, caused the Notice packet (including the Court-approved Notice, Claim Form and Opt Out Form) to be sent to potential Class Members, and the Summary Notice to be published in *The Investor's Business Daily* and transmitted over *Business Wire*. *See* Oseas Decl. ¶¶8-9.

## III.   ARGUMENT

### A.   THE REQUESTED FEES ARE FAIR AND REASONABLE

#### 1.   A Reasonable Percentage Of The Fund Recovered Is An Appropriate Approach To Awarding Attorneys' Fees In Common Fund Cases

Plaintiffs' Counsel seek a reasonable percentage of the common fund recovered for the benefit of the Class.   The Ninth Circuit has recently confirmed its approval of the percentage-of-recovery approach, and this approach has become the prevailing method for awarding fees in common fund cases in the Ninth Circuit.   *See Glass v. UBS Fin. Servs., Inc.,* 331 Fed. Appx. 452, 456-57 (9th Cir. 2009) (unpubl.) (affirming 25% fee award, overruling objection based on use of percentage-of-the-fund approach); *see also Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989); *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993); *Vizcaino,* 290 F.3d at 1043; *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citations omitted).

The percentage method is desirable because it most fairly correlates the compensation of counsel with the benefit conferred upon the class.   *See Omnivision,* 559 F. Supp. 2d at 1046 (citing authorities that have "described thoroughly" the advantages of using the percentage method).   First, it closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[6]   Second, the percentage method decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis and assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement.   *See Gerstein v.*

---

[6]   The court in *Kirchoff v. Flynn,* 786 F.2d 320, 325-26 (7th Cir. 1986), identified the aligning of lawyers' and clients' interest as among the merits of the percentage approach:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants… .At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

1  *Micron Tech. Inc.*, Civ. No. 89-1262, 1993 U.S. Dist. LEXIS 21215, at *14 (D. Idaho Sept. 10, 1993)

2  ("This court favors the percentage approach [in common fund cases] because it conserves scarce judicial

3  resources by saving the court from having to make a series of largely judgmental decisions with respect

4  to the actual fees claimed."); *see also In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1377-78 (N.D. Cal.

5  1989).  It is also consistent with the practice in the private marketplace where contingent-fee attorneys

6  are customarily compensated by a percentage of the recovery, and with the PSLRA's mandate that

7  attorneys' fees "shall not exceed a ***reasonable percentage***" of the class recovery.  15 U.S.0 § 78u-

8  4(a)(6) (emphasis added).

### 2.   Lead Counsel's Fee Of 7.5% Of The Total Economic Value Of The Settlement  Less Costs Is Reasonable

11  After the decision is made to use the percentage method for fee determination, courts must

12  determine what percentage to apply.  The Ninth Circuit has recognized 25% of the settlement amount as

13  the appropriate benchmark for attorneys' fees awarded under the percentage method.  *See, e.g., Glass,*

14  331 Fed. Appx. at 457; *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998) (referring to 25%

15  in attorneys' fees as a "benchmark award").

16  Here, in view of, among other circumstances, the litigation risks faced, the result achieved, the

17  legal skill required and quality of the representation, and the lack of significant objection from the Class,

18  Lead Counsel's request for an award of 7.5% of the of the Settlement Fund (less counsel's costs) — far

19  less than the 25% benchmark — is reasonable.

### 3.   Other Plaintiffs' Counsel's Fee Of 2.28% Of The Total Economic Value Of The Settlement  Is Also Reasonable

23  Attorneys for plaintiffs Martin Vogel and Kenneth Mahoney, SSB and KGG, after the review

24  and analyses of contemporaneously available public information, which included working with an

25  accounting expert, crafted the initial complaint ("Initial Complaint") (*See* Docket No. 1) in this action,

26  which was filed on August 24, 2006.  The Initial Complaint, which contained claims for fraud and

27  misrepresentation under Section 10(b), claims for misrepresentation made in a proxy under Section

28  14(a), and control person allegations under Section 20(a) of the Exchange Act, alleged in detail how

1   various Apple executives received grants of backdated stock options for the purchase of Apple common

2   shares, which caused the reported earnings of Apple during the class period to be artificially inflated.

3   The Initial Complaint further details the sales of Apple shares made by these executives, along with the

4   sales of Apples shares by various persons sitting on Apple's Board, made during the class period, and

5   why these sales constituted insider trading as they were made while these executives and Board

6   members were in possession of the materially adverse information that Apple's earnings were overstated

7   as a result of the granting of backdated stock options to Apple executives in significant and material

8   amounts.  Subsequently, as required by the PSLRA, SSB and KGG each issued press releases advising

9   potential class members of their rights to seek to be appointed lead plaintiff and fielded calls from

10   interested investors. The Initial Complaint was the sole predicate for this action and the only complaint

11   filed during the PSLRA mandated 60 day period for applications for lead plaintiff to be made.

12   Therefore, without the efforts of SSB and KGG, it is safe to say there would have been no recovery at

13   all.

14       After the appointment of Lead Plaintiff and Lead Counsel, SSB and KGG continued to work

15   cooperatively with the Lead Counsel appointed by this Court, Grant & Eisenhofer, in prosecuting this

16   action. After the Amended Consolidated Complaint had been dismissed by this Court (Docket No. 69)

17   and after the motion of Lead Plaintiff NYCERS to Amend or Correct their complaint to include claims

18   under Section 10(b) of the Exchange Act was denied, (Docket No. 85),  SSB and KGG, on behalf of

19   plaintiffs Vogel and Mahoney, on June 27, 2008, filed a second complaint (Docket No.1)  in a new

20   action, bearing docket number 08-cv-03123 ("*Vogel II*").  This second complaint, which timely pleaded

21   claims for violations of Section 10(b) of the Exchange Act which this Court had not permitted NYCERS

22   to do in a second amended pleading, was brought by plaintiffs Vogel and Mahoney on behalf of the

23   Class.  After NYCERS's appeal to the Ninth Circuit Court of Appeals on the issue of denial of leave to

24   file a complaint containing Section 10(b) claims, among others, was decided and the case remanded to

25   this Court, *Vogel II*, which had been stayed during the pendency of NYCERS' appeal, was

26   administratively closed and consolidated with the within action. (Docket No. 104)

27       SSB and/or KGG subsequently reviewed and made revisions to the Corrected First Amended

28   Consolidated Complaint, for which Messrs. Vogel and Mahoney were named plaintiffs, and thereafter

participated in all aspects of settlement discussions which took place.  This included being present at and participating in the two day mediation session which took place in New York City on May 19 and 20, 2010, and review and revision of Plaintiffs' mediation statement and reply in support thereof as presented to the mediator.  After broad agreement in principle had been reached between the parties, counsel for plaintiffs Vogel and Mahoney participated in numerous additional negotiations with Lead Counsel and  counsel for Defendants regarding additional settlement terms and participated in drafting and editing the Stipulation of Settlement, to which they were, by counsel, signatories, and other papers filed in connection with preliminary approval, as well as participating in further discussions which resulted, *inter alia*, in the cash portion of the Settlement Fund being increased, as reflected in the Amended Order Preliminarily Approving the Settlement, Directing Notice of Settlement and Scheduling Settlement Fairness Hearing (Docket No. 139).

SSB and KGG, counsel for plaintiffs in *Vogel II*, request an award of fees in the amount of $466,250, which represents 2.28% of the total economic value of the Settlement.  This too is far less than the 25% benchmark and is reasonable.

### 4.   Examination Of The Relevant Ninth Circuit Factors Supports A Combined Fee Award Of 9.61%

The ultimate task for this Court in awarding attorneys' fees is to ensure that Plaintiffs' Counsel is fairly compensated for the work they performed and the results they achieved.  Courts in this Circuit consider the following factors:  (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class to the proposed fee and expense request; and (7) the amount of a lodestar cross-check.  *See Vizcaino,* 290 F.3d at 1048-50; *Omnivision,* 559 F. Supp. 2d at 1046-48.  As discussed below, application of these factors here confirms that the 9.78% fee is justified.

#### a.   The Results Achieved

Plaintiffs' Counsel have succeeded in obtaining a $16.5 million cash Settlement for the Class in the face of significant risks on dispositive legal issues. This achievement was the result of Plaintiffs' Counsel's vigorous prosecution, skillful presentation of issues, and artful settlement negotiations.  The

Class will receive immediate compensation for its losses due to the alleged federal securities laws violations by Defendants.  The immediate Settlement will avoid the substantial risks of lesser or no recovery due to the defenses to liability and limitations on the recoverable damages.

Lead Plaintiff and Lead Counsel also negotiated substantial corporate governance reforms that will redound to the benefit of Apple's shareholders in the future so that the alleged corporate wrongdoing at issue will not be repeated in the future.  As explained more fully in the Barry Declaration, Apple has agreed to implement corporate governance measures, including amending its Insider Trading Policy, corporate Bylaws, and the charter of the Board's compensation committee.  Apple has also agreed to extend to at least May 1, 2013, the term of measures it adopted in 2008 after settling derivative litigation relating to past stock option backdating practices.  These measures include: (1) implementing an Equity Award Grant Practices Policy; (2) appointing a Trading Compliance Committee; (3) amending the charter of the Board's Compensation Committee; (4) amending its Corporate Governance Guidelines; (5) implementing a Corporate Minutes Procedure; and (6) implementing a Unanimous Written Consent Procedure.

Courts consistently have recognized that the settlement achieved is a major and perhaps the most important factor to be considered in determining an appropriate fee award.  *See Omnivision,* 559 F. Supp. 2d at 1046 (citation omitted).

As detailed in the Barry Declaration and below, Plaintiffs faced numerous obstacles in this litigation, including in particular, establishing loss causation and damages. The expense and length of continued proceedings necessary to prosecute the action through further motion practice, discovery, trial and appeals would be substantial.  Lead Plaintiff, aided by Lead Counsel and by other Plaintiffs' Counsel, carefully considered the likelihood of success against Defendants, the potential total damages that could be recovered against Defendants, as well as the uncertain outcome and risk of any litigation, especially in complex actions such as this, and the difficulties and delays inherent in such litigation.  *See* Barry Decl. ¶¶34-39.  Particularly in light of these circumstances, the amount obtained is a substantial achievement on behalf of the Class, and weighs in favor of granting the requested 9.61% fee.

### b.      Risks Of Litigation

Risk that further litigation might result in plaintiffs not recovering at all is an important factor in determining a fair fee award. *See, e.g., Omnivision,* 559 F. Supp. 2d at 1047; *In re Washington Pub. Power Supply Sys. Sec. Litig., ("WPPSS"),* 19 F.3d 1291, 1299-1301 (9th Cir. 1994); *see also In re Heritage Bond Litig.,* Nos. 02-ML-1475-DT(RCX), *et seq.*, 2005 WL 1594389, at \*14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly. Courts have noted that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000).  According to an April 2006 NERA study, dismissal rates have doubled since the PSLRA, accounting for 40.3% of dispositions. *See* Ronald I. Miller, et al., *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlements, is Stabilization Ahead?,* at 4 (NERA Apr. 20, 2006).

In this action, Lead Counsel and other Plaintiffs' Counsel, like the Class Members, faced the substantial risk of lesser or no recovery. Defendants argued throughout the litigation that Plaintiffs would be unable to prove economic loss and loss causation as to the Section 14(a) claims and that the Section 14(a) claims could only be pursued derivatively.  Indeed, Defendants successfully moved to dismiss the Consolidated Complaint and the Court granted leave to amend only to assert the Section 14(a) claims in a derivative action.  Due to the substantial risks relating to prosecution of a Section 14(a) claim, on December 14, 2007, NYCERS filed a motion for leave to file a first amended consolidated class action complaint to assert claims under §§ 10(b) and 20(a) of the Exchange Act, as well as amended versions of the claims asserted in the Consolidated Complaint.  On May 14, 2008, the Court denied NYCERS's motion for leave to amend.  On June 12, 2008, the Court entered judgment in favor of the defendants and dismissed NYCERS's claims with prejudice.  Lead Counsel successfully prosecuted an appeal to the Ninth Circuit.  While the Ninth Circuit affirmed the Court's dismissal of NYCERS's claims under Section 14(a) of the Exchange Act and state law, the Ninth Circuit reversed the

Court's May 14, 2008 order and granted NYCERS leave to amend its complaint to assert claims under §§ 10(b) and 20(a) of the Exchange Act.  Thus, the Class's securities fraud claims remained alive.

There was still substantial risk, however.  Defendants would no doubt argue, as they had with respect to the Section 14(a) claims (and in the mediation), that there was no loss causation or economic loss with respect to the Section 10(b) claims.  In the mediation, Lead Counsel anticipated these arguments and worked with a damages expert to counter Defendants' contentions that loss causation could not be established and damages could not be proved.  These efforts, in part, led to Plaintiffs' Counsel obtaining the $16.5 million cash recovery for the Class, in addition to substantial corporate governance reforms.  While Lead Counsel developed persuasive evidence and strong legal arguments supporting the surviving claims against Defendants, Lead Counsel also recognized that if Defendants were successful in their loss causation arguments at any further stage of the litigation — motion to dismiss, class certification, summary judgment, trial, or appeal — total recoverable damages for the Class would have been greatly reduced or eliminated altogether.  Indeed, given the application of the PSLRA's "look back" provision and Apple's rising share price after the Class Period, there were very few days during the Class Period on which shareholders could prove legally cognizable damages. Moreover, Defendants would have been highly likely to raise other arguments on a motion to dismiss the surviving pleading based on, among other things, the heightened pleading requirements of the PSLRA and the difficulties of pleading scienter in a PSLRA litigation.

In the face of these risks, Plaintiffs' Counsel achieved a $16.5 recovery for the Class. Under these circumstances, the requested fee is fully justified.

### c.     The Skill Required And Quality Of The Work Performed

The third factor to consider in determining what fee to award is the skill required and quality of work performed. *See Gustafson v. Valley Ins. Co.,*  No. CV 01-1575-BR, 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004). "The 'prosecution and management of a complex national class action requires unique legal skills and abilities.' [citation omitted]. This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision,* 559 F. Supp. 2d at 1047; *see also Heritage Bond,* 2005 WL 1594389, at *12 ("The experience of counsel is also a factor in determining the appropriate fee award.").

Here, the attorneys at Grant & Eisenhofer are among the most experienced and skilled practitioners in the securities litigation field, and has a long and successful track record in such cases.[7] From the outset, Lead Counsel engaged in a concentrated effort to obtain the maximum recovery for the Class. Lead Counsel demonstrated that they would work to develop sufficient evidence to support a convincing case, whether it be non-fraud claims under Section 14(a) or fraud claims under Section 10(b). As detailed in the Barry Declaration, Lead Plaintiff was able to plead detailed allegations concerning stock options backdating based on their investigation, prosecute a successful Ninth Circuit appeal, file an amended complaint with highly-detailed facts alleging securities fraud under Section 10(b), and ultimately obtain a $16.5 million settlement on behalf of the Class and substantial corporate governance reforms. *See* Barry Decl. ¶¶5-6. Similarly, SSB and other Plaintiffs' counsel persisted in the efforts also, including commencing the case and pleading detailed securities fraud claims against Defendants as well as participating in most aspects of settlement negotiations. *See* Bishop Decl. ¶2; Graifman Decl. ¶¶2-5. Lead Counsel's skill and experience was also key in communicating with damages experts they necessarily retained in this complicated securities class action for purposes of conducting the mediation and otherwise. *See* Barry Decl. ¶60.

The fact that Plaintiffs' Counsel has demonstrated a willingness and ability to prosecute complex cases such as this throughout trial and appeals was undoubtedly a factor that encouraged Defendants to engage in settlement discussions, and added valuable leverage in the negotiations, ultimately resulting in the recovery for the Class.

As a result of Plaintiffs' Counsel's skill and efforts, by the time the Settlement was reached, Lead Counsel and Lead Plaintiff, and other Plaintiffs' Counsel and their clients, had a thorough understanding of the strengths and weaknesses of the claims asserted in the case. Lead Counsel and other Plaintiffs' Counsel engaged in hard-fought settlement negotiations and eventually achieved the settlement. *See* Barry Decl. ¶40. Plaintiffs' Counsel's extensive efforts and skill leading to the settlement strongly support the requested percentage fee.

---

[7] *See* Firm Biographies of Grant & Eisenhofer, Stull, Stull & Brody and Kantrowitz, Goldhamer & Graifman, attached, respectively, as Ex. 3 to the Barry Fee Decl., Ex. 1 to the Bishop Decl. and Ex. 3 to the Graifman Decl.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Plaintiffs' Counsel. *See, e.g., In re Equity Funding Corp. Sec. Litig.,* 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).  Defendants have been represented by experienced counsel from the prominent law firms, O'Melveny & Myers LLP and Munger Tolles & Olson, firms with substantial experience in this type of litigation.  The representation of the Defendants was no less rigorous than Lead Counsel's representation of the Class and other Plaintiffs' Counsel's representation of named Plaintiffs Vogel and Mahoney.  The fact that Plaintiffs' Counsel achieved this Settlement for the Class in the face of formidable legal opposition further evidences the quality of their work.

### d.     The Contingent Nature Of The Fee And Financial Burden Carried By Counsel

The Ninth Circuit has stated that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.[8]

Here, Lead Counsel received no compensation during the course of this action and invested 2798.2 hours in time, and incurred expenses totaling $350,910.70 in obtaining the Settlement for the benefit of the Class.  *See* Barry Decl. ¶66.  Similarly, SSB and KGG invested a combined 634.96 hours in time, and incurred expenses totaling $44,605.20 in obtaining the Settlement.  *See* Bishop Decl. ¶7; Graifman Decl. ¶2.  In addition to the advancement of costs, lawyers working on the case have forgone the business opportunity to devote time to other cases.  *See Vizcaino,* 290 F.3d at 1050.  Any fee award

---

[8]      *WPPSS,* 19 F.3d at 1299; *see In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* MDL No. 1486, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007) ("Plaintiffs' counsel risked time and effort and advanced costs and expenses with no ultimate guarantee of compensation."); *see also Omnivision,* 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.") (citations omitted).

1  has always been at risk, and completely contingent on the result achieved and on this Court's discretion

2  in awarding fees and expenses.

3        Indeed, the risk of no recovery in complex cases is very real.  Lead Counsel knows from

4  personal experience that, despite the most vigorous and competent efforts, its success in contingent

5  litigation such as this is never guaranteed.  The commencement of a class action is no guarantee of

6  success. These cases are not always settled, nor are plaintiffs' lawyers always successful. *See, e.g., In re*

7  *JDS Uniphase Corp. Sec. Litig.,* No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27,

8  2007).  Diligent work by skilled counsel is required to develop facts and theories to prosecute a case or

9  persuade defendants to settle on terms favorable to the Class.

10        **e.**    **Awards Made In Similar Cases**

11        Lead Counsel is applying for an award of fees in the amount of $1.5 million, which represents

12  7.5% of the total economic value of the Settlement (excluding attorneys' expenses), and 9.1% of the

13  $16.5 million fund payable to the Class.  SSB and KGG, counsel for plaintiffs in *Vogel II*, are applying

14  for an award of fees in the amount of $466,250, which represents 2.28% of the total economic value of

15  the Settlement, and 2.82% of the $16.5 million fund payable to the Class.  Plaintiffs' Counsel, therefore,

16  seek a combined fee of 9.61% of the total economic value of the Settlement (which represents an

17  amount equal to 11.9% of the $16.5 million settlement fund, although the fees are being paid *in addition*

18  *to* and not *out of* that fund) — far less than the Ninth Circuit's 25% benchmark for common fund cases,

19  and, indeed, less than the $8 million counsel in the derivative action based on the Defendants'

20  backdating scheme were awarded on a lower recovery of $14 million.  *Apple,* 2008 WL 4820784

21  (awarding $8.85 million, equal to 63% of the $14 million cash recovery).  Indeed, "in most common

22  fund cases, the award exceeds that benchmark."  *Omnivision,* 559 F. Supp. 2d at 1047 (approving 28%

23  fee award in securities class action) (citing *Activision,* 723 F. Supp. at 1377-78 (surveying securities

24  cases nationwide and noting, "This court's review of recent reported cases discloses that nearly all

25  common fund awards range around 30%")); *see also In re THQ, Inc. Sec. Litig.,* CV-00-01783 (C.D.

26  Cal.), Order Awarding Lead Counsel's Attorneys' Fees And Reimbursement Of Expenses filed June 30,

27  2003, Docket No. 128 (granting fees equaling 30% of the settlement amount in a securities class action);

28  *In re CV Therapeutics, Inc. Sec. Litig.,* No. C 03-3709 SI, 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007)

(approving 30% fee award in securities class action); *In re Informix Corp. Sec. Litig.,* No. C 97-1289 CRB, 1999 U.S. Dist. LEXIS 23579, at *6 (N.D. Cal. Nov. 23, 1999) (awarding 30% of $132 million settlement fund in securities class action); *see also Silva v. Banco Popular North America,* Case No. CV 08-06300 (C.D. Cal.), Order Granting Final Approval Of Settlement And Awarding Fees And Costs filed June 22, 2009, Docket No. 42 (granting fees equaling 28% of the class settlement fund); *Knight v. Red Door Salons, Inc.,* No. 08-01520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) (approving 30% fee award).

This fee percentage is also less than the fee percentages typically awarded in backdating securities class actions as set forth below:

| Backdating Securities Class Action Settlement | Settlement Amount | Fee Percentage Granted |
|---|---|---|
| *In re Brocade Sec. Litig.,* 05-cv-02042 (N.D. Cal. Jan. 26, 2009) | $160 million | 25% |
| *In re Monster Worldwide, Inc. Sec. Litig.,* 07-CV-02237, Docket No. 139 (S.D.N.Y. Nov. 25, 2008) | $47 5 million | 25% |
| *In re Converse Sec. Litig.,* 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) | $225 million | 25% |
| *In re Marvell Tech. Group Ltd. Sec. Litig.,* 06-06286 (N.D. Cal. Nov. 13, 2009) | $72 million | 20.5% |
| *In re Broadcom Corp. Class Action Litig.,* 06- cv-05036, Docket No. 355 (C.D. Cal. Aug. 11, 2010) | $160 5 million | 18.5% |
| *In re KLA-Tencor Corp.,* 06-4065, Docket No. 226 (N.D. Cal. September 26, 2008) | $65 million | 16.4% |
| *In Re Rambus Sec. Litig.*, 06 cv 4346 (N.D. Cal. May 14, 2008) | $18 million | 25% |

The fee percentage requested is also well below the fee percentages granted in other options backdating cases that were brought derivatively.  *See Ryan,* 2009 WL 18143 (awarding 33% of the cash recovery); *see also Zoran,* 2008 WL 4104517 (awarding 38% of the cash recovery); *In re Marvell Tech. Group Ltd Deriv. Litig.,* C-06-03894, Docket No. 108 (N.D. Cal. Aug. 11, 2009) (awarding 29% of the cash recovery); *NVIDIA,* 2009 U.S. Dist. LEXIS 24973 (awarding $7.25 million, equal to 45.8% of the $15.8 million cash recovery); *In re Juniper Deriv. Actions,* No. 5:06-cv-03396-JW, 2008 U.S. Dist. LEXIS 109858 (N.D. Cal. Nov. 13, 2008) (awarding $9 million, equal to 39.6% of the $22 7 million cash recovery); *In re Activision, Inc. S 'holder Deriv. Litig.,* CV-06-04771, Docket No. 84 (C.D. Cal. July 21, 2008) (awarding $10.75 million, equal to 44.2% of the $24.3 million cash recovery); *McAfee,* 2009 U.S.

Dist. LEXIS 29246 (awarding $13.75 million, equal to 45.8% of the $30 million cash recovery); *Apple,* 2008 WL 4820784 (awarding $8.85 million, equal to 63% of the $14 million cash recovery).  *See also In Re Rambus Derivative Litig.,*, C 06 3513 JF (HRL), 2009 WL 166689 (N.D. Cal Jan, 20, 2009.) (awarding attorney's fee of $2 million for corporate governance reforms only).

In addition, many courts weigh the customary fee in the marketplace for non-class action contingency cases as a significant measure in approving fees.  *See e.g., In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."); *In re RJR Nabisco, Inc. Sec. Litig.,* MDL No. 818, 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992) ("What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases"); *In re Synthroid Mktg. Litig.,* 325 F.3d 974, 975 (7th Cir. 2003) ("A court must give counsel the market rate for legal services . . . .").

Although the Ninth Circuit has not adopted the marketplace analogy as a factor to consider in setting fees in class actions, the Circuit expressly recognized it as at least "probative" of what fee is reasonable.  *Vizcaino,* 290 F.3d at 1049.  If this was a non-class action litigation, the customary contingent fee would likely range between 30 and 40 percent of the recovery.[9]

Plaintiffs' Counsel's work was performed, and the results achieved, on a wholly contingent basis in the face of determined opposition. Under these circumstances, it necessarily follows that Plaintiffs'

---

[9]  *See, e.g., Ikon,* 194 F.R.D. at 194 ("in private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"); *accord Blum v. Stenson,* 465 U.S. 886, 904 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (concurring opinion); *In re United States Bioscience Sec. Litig.,* 155 F.R.D. 116, 119 (E.D. Pa. 1994) (adopting Special Master's conclusion that 30% would likely have been negotiated in securities action); *see also Kirchoff,* 786 F.2d at 323 (observing that 40% is the customary fee in tort litigation); *In re Pub. Service Co. of New Mexico,* No. 91-0536M, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992); ("[i]f this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery"); *In re M.D.C. Holdings Sec. Litig.,* No. CV89-0090 E, 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("[i]n private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery"); *Phemister v. Harcourt Brace Jovanovich, Inc.,* No. 77 C 39, 1984 WL 21981, at *15 (N.D. Ill. Sept. 14, 1984) ("[t]he percentages agreed on [in non-class-action damage lawsuits] vary, with one-third being particularly common").

1   Counsel are entitled to the award of a reasonable percentage fee based on the benefit conferred and the

2   common fund obtained.  Under all of the circumstances present here, a 9.61% fee is fair and reasonable.

### f.        Reaction Of The Class Supports The Requested Fees And Expenses

4            The reaction of the Class to a proposed settlement and fee request is a relevant factor in

5   approving fees. *See Red Door Salons,* 2009 WL 248367, at *7; *Omnivision,* 559 F. Supp. 2d at 1048.

6   Here, beginning on December 8, 2010, the Notice was sent to over 37,600 potential Class Members and

7   the Summary Notice was published in the *The Investor's Business Daily* and transmitted over *Business*

8   *Wire*.   *See* Oseas Decl. ¶¶8-9.  The Court-approved Notice (attached as Ex. B to the Oseas Decl.)

9   informed Class Members that Plaintiffs' Counsel intend to apply to the Court for an award of attorneys'

10  fees from the Settlement Fund in an amount not to exceed $2 million, plus expenses not to exceed

11  $450,000.  The Notice further advised Class Members of their right to opt out of the Settlement or to

12  object to the Settlement, the Plan of Allocation or the request for attorneys' fees and expenses.  While

13  the deadline for submitting any objections does not expire until January 21, 2011, to date, only one Class

14  Member has filed an objection (which was to the preliminary approval of the settlement), and this

15  objection has no merit.[10]   This factor further supports the requested award of 9.61% of the total

16

17  [10]  As discussed more fully in the Barry Decl., subsequent to the Court granting preliminary approval of
18  the original settlement, *see* Dkt. No. 129, the Settling Parties received a written objection from a single
    Apple shareholder – Objector Patrick Pezzati – expressing concern about certain *cy pres* distributions in
19  the original settlement.   While the Settling Parties believed the objection was without merit, they
    nevertheless agreed to amend the original settlement so that instead of paying $14 million into the
20  Settlement Fund and donating $2.5 million to twelve corporate governance programs, Apple will pay
    $16.5 million into the Settlement Fund.   Thus, whereas the settlement as originally contemplated
21  provided for the outright donation of settlement funds to corporate governance programs, the amended
    settlement provides that *if and only if* funds *remain* in the Net Settlement Fund *after* payment of the
22  Class Members' claims, such funds will be donated to nine corporate governance programs with which
    the Parties and their counsel have no affiliation.  *See* Barry Decl. ¶42.  All other relevant terms of the
23  amended settlement remain the same as in the original settlement.   Subsequently, on November 15,
    2011, Objector filed an objection to the amended settlement and purported to take issue with the
24  provision of the amended settlement that provides for distribution of settlement funds that are "leftover"
    after paying all claims submitted by class members –  if it even turns out that there are any – to
25  corporate governance programs and also complained about an alleged "gerrymandering" of the Class
    Period that limits the number of Apple shareholders who will be eligible to make claims on the
26  settlement funds.   The Court rejected the Objector's argument that the Court should not grant
    *preliminary* approval of the amended settlement, and granted such preliminary approval.   While
27  Objector may renew his *cy pres* and "gerrymandering" objections in connection with the Court's
28  consideration of the final settlement (but has not yet done so), it is clear that Objector's arguments are

economic value of the Settlement.  *See Silva v. Banco Popular North America,* Case No. CV 08-06300 (C.D. Cal.), Order Granting Final Approval Of Settlement And Awarding Fees And Costs filed June 22, 2009, Docket No. 29 (awarding 28% based in part on no objections); *Red Door Salons,* 2009 WL 248367, at *7 (no objection supports 30% award); *Omnivision,* 559 F. Supp. 2d at 1048 (only three objections supports 28% award).

### g.    The Lodestar Crosscheck Confirms The Reasonableness Of The Requested Fee

Although courts in this Circuit typically apply the percentage approach to determine attorneys' fees in common-fund cases, courts may use a lodestar analysis as a "cross-check" on the percentage method. *See Glass,* 331 Fed. Appx. at 456; *In re Immunex Sec. Litig.,* 864 F. Supp. 142, 144 (W.D. Wash. 1994); *WPPSS,* 19 F.3d at 1296-98.  Here, such a "cross-check" confirms that the requested fee amount is reasonable.

In *Vizcaino,* the Ninth Circuit noted that:

> courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. . . . This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. . . . In common fund cases, "attorneys whose compensation depends on their winning the case [] must make up in compensation in the cases they win for the lack of compensation in the cases they lose."

without merit.  The appropriateness of the provision in the amended settlement here, which provides for the payment of all settlement funds to satisfy class member claims and distribution of remaining amounts, if there are any, only after the claims of all class members have been satisfied, is amply supported by case law approving class action settlements with similar provisions.  Indeed, class action settlements routinely contain the same or similar provisions respecting "leftover" funds.  *See, e.g., Hunt v. Imperial Merchant Services.*, No. C-05-04993, 2010 U.S. Dist. LEXIS 111243 (N.D. Cal. Feb. 9, 2010); 3 Newberg on Class Actions § 10:17 (4th ed.) ("The [commonly used] cy pres approach…puts the unclaimed fund[s] to [their] next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class….").  Moreover, contrary to Objector's contention, the limitation on damages and, thus, the number of Apple shareholders who will be eligible to participate in the amended settlement, is the result of application of the "look back" rule in the PSLRA.  It is not a consequence of the alleged "gerrymandering" of the Class Period, which is a false and baseless accusation by Objector in any event.

290 F.3d at 1051 (quoting *WPPSS,* 19 F.3d at 1300-01).   There, the Ninth Circuit affirmed a fee awarded in this District that equaled 28% of the settlement fund and a multiplier of 3.65.[11]

### (1)   Lead Counsel's Lodestar

Here, Lead Counsel's lodestar is $1,531,935.50.   *See* Barry Decl. ¶64.   Thus, Lead Counsel's request for an award of $1.5 million amounts to a multiplier of .98, or a 2% discount on fees incurred. Courts have routinely held that larger multipliers are fair and reasonable.   *See, e.g., Vizcaino,* 290 F.3d 1043 (affirming fee award equaling 28% of the settlement fund, resulting in a 3.65 multiplier).   Indeed, "multipliers of between 3 and 4.5 have been common.'"[12]

Moreover, the resulting multiplier here is entirely consistent with the resulting multipliers in fees awarded in other backdating securities cases. *See, e.g., In re Brocade Sec. Litig.,* 05-cv-02042, Docket

---

[11]   Under the lodestar method, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorney's work.  *See, e.g., Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167-69 (3d Cir. 1973), *subsequently amended,* 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*).  Courts are encouraged to award a multiplier because calculation of the lodestar is "simply the beginning of the analysis." *In re Medical X-Ray Film Antitrust Litig.,* No. CV-93-5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (quoting *In re Warner Communc'ns Sec. Litig.,* 618 F. Supp. 735, 747 (S.D.N.Y. 1985)).

[12]   *Rabin v. Concord Assets Group, Inc.,* No. 89 CIV 6130, 1991 WL 275757, at *2 (S.D.N.Y. Dec. 19, 1991) (multiplier of 4.4); *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *Keith v. Volpe,* 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *In re Brocade Sec. Litig.,* 05-CV-2042-CRB, Final Order and Judgment, at 13 (N.D. Cal. Jan. 26, 2009) (Docket No. 496) (awarding 25% of $160 million settlement fund, resulting in a 3.5 multiplier); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706 (E.D. Pa. 2001) (multipliers of 4.5-8.5); *In re Infospace, Inc.,* 330 F. Supp. 2d 1203 (W.D. Wash. 2004) (awarding multiplier of 3.5 on a $34.4 million settlement fund); *In re NASDAQ Market-Makers Anti-Trust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding a 3.97 multiplier on a $1.0 billion settlement and finding fee awards of 3 to 4.5 to be "common"); *Kurzweil v. Philip Morris Cos., Inc.,* 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999) (recognizing that multipliers of between 3 and 4.5 are common in federal securities cases); *Wal-Mart Stores, Inc. v. VISA USA, Inc.,* 396 F.3d 96 (2d Cir. 2005) (affirming fee award equaling a 3.5 multiplier); *Maley v. Del Global Tech. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 33 1/3% of the common fund, equaling a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Interpublic Sec. Litig.,* Nos. 02 Civ.6527(DLC), 03 Civ.1194(DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (approving fee representing multiplier of 3.96 times lodestar and noting that "In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *In re WorldCom Inc. Sec. Litig.,* 388 F. Supp. 2d 319 (S.D.N.Y. 2005) (approving fee award equaling 4.0 multiplier); *In re Bisys Sec. Litig.,* No. 04 CIV 3840, 2007 WL 2049726 (S.D.N.Y. July 16, 2007) (approving fee award of 30%, equaling 2.99 multiplier).

No. 496 (N.D. Cal. Jan. 26, 2009) (awarding 25% fee, resulting in 3.5 multiplier); *In re Marvell Tech. Group Ltd Sec. Litig.,* 06-06286, Docket No. 292 (N.D. Cal. Nov. 13, 2009) (awarding 20.5% fee, resulting in 3.36 multiplier); *Comverse,* 2010 WL 2653354, at *6 (awarding 25% fee, resulting in a multiplier of approximately 3).

Further, Lead Counsel's lodestar does not account for the additional time that will be required of Lead Counsel to participate in the final approval process and to oversee the claims administration process and the distribution of the net settlement funds to eligible claimants.

### (2)    Other Plaintiffs' Counsel's Lodestar

The combined lodestar for SSB and KGG, counsel for plaintiffs in *Vogel II,* is $400,346.40.  *See* Bishop Decl. ¶5; Graifman Decl. ¶6.   Thus, Other Plaintiffs' Counsel's request for an award of $466,250.00 (just 2.28% of the total economic value of the set) amounts to a multiplier of just 1.16. This too is substantially below what Courts routinely hold to be fair and reasonable. *See, e.g., Vizcaino,* 290 F.3d 1043 (affirming fee award equaling 28% of the settlement fund, resulting in a 3.65 multiplier).

### (3)    Total Lodestar Analysis

In total, the combined lodestar for all Plaintiffs' Counsel is $1,932,281.90.  The combined fee request of $1,966,250.00 represents a multiplier of 1.02, again well below what has been considered fair and reasonable.  *Id.*

### B.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED FOR THE CLASS

Lead Counsel also requests that the Court grant their application for a total of $350,910.70 to reimburse their incurred costs in connection with the prosecution of this litigation.  *See* Barry Decl. ¶66. The appropriate analysis to apply in deciding whether expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See, e.g., Omnivision,* 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."); *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.") (citations omitted).

From the beginning of the case, Lead Counsel was aware that it might not recover any of their expenses, and, at the very least, would not recover anything until the action was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate it for the lost use of the funds advanced to prosecute this action. Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the action. *See* Barry Decl. ¶67.

The expenses which Plaintiffs' Counsel seek are the type of expenses routinely charged to hourly paying clients. For example, a significant portion of the litigation expenses for which reimbursement is sought were incurred for professional expert fees. Of the total amount of expenses, more than $230,000, or nearly 66%, was expended on experts in the area of damages. The expertise and assistance provided by these experts was critical to successful resolution of this action. *See id.* ¶69.

The expenses also include the costs of on-line legal and factual research in the total amount of $37,333.23. *See* Barry Decl. ¶70. These are the charges for computerized factual and legal research services such as *Lexis-Nexis* and *Westlaw*. It is standard practice for attorneys to use *Lexis-Nexis* and *Westlaw* to assist them in researching legal and factual issues. *See In re Media Vision Tech. Sec. Litig.,* 913 F. Supp. 1362, 1371 (N.D. Cal. 1996). Indeed, courts recognize that these tools create efficiencies in litigation and, ultimately, save clients and the class money. *See, e.g., In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 570 (7th Cir. 1992). In approving expenses for computerized research, the court in *Gottlieb v. Wiles* underscored the time-saving attributes of computerized research as a reason reimbursement should be encouraged. 150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd and remanded on other grounds sub nom. Gottlieb v. Barry,* 43 F.3d 474 (10th Cir. 1994).

Further, Lead Counsel were required to travel in connection with prosecuting and mediating this matter and arguing motions and appeals and, thus, incurred the related costs of travel tickets, meals, and lodging. Included in the expense request is $19,370.36 for out-of-town travel expenses necessarily incurred for the prosecution of this Litigation. *See* Barry Decl. ¶72. The expenses in this category are reasonable in amount, and are properly charged against the fund created. The other expenses for which reimbursement is sought are the types of expenses that are necessarily incurred in litigation and

1   routinely charged to clients billed by the hour. These expenses include, among others, long distance

2   telephone and facsimile charges, postage and delivery expenses, filing fees, photocopying, and

3   document/litigation support.

4       And finally, the Court-approved Notice provided to potential Class Members informed them that

5   Plaintiff's Counsel intends to apply for the reimbursement of litigation expenses in an amount not to

6   exceed $450,000. The combined amount of expenses now sought together with those sought by Other

7   Plaintiffs' Counsel (see below) — $395,515.90 — is *less than* the amount stated in the Notice. The

8   deadline for objecting to the fee and expense application or opting out of the Settlement expires on

9   January 21, 2011. To date, there has been only one objection to preliminary approval of the Settlement,

10  and that objection is, as discussed above, entirely without merit.

11  ### C.   OTHER PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED FOR THE CLASS

12

13      SSB and KGG, counsel for plaintiffs in *Vogel II*, also request that the Court grant their

14  application for a total of $44,605.20 to reimburse their incurred costs in connection with the prosecution

15  of this litigation. *See* Bishop Decl. ¶7; Graifman Decl. ¶9. The expenses of these firms are also costs

16  are of the type typically billed by attorneys to paying clients in the marketplace. *See, e.g., Omnivision,*

17  559 F. Supp. 2d at 1048; *Harris,* 24 F.3d at 19. Like Lead Counsel, SSB and KGG were aware that they

18  might not recover any of their expenses, would not recover anything until the action was successfully

19  resolved and, even assuming a successful outcome, an award of expenses would not compensate them

20  for the lost use of funds advanced to prosecute this action. Thus, SSB and KGG also took significant

21  steps to minimize expenses whenever practicable without jeopardizing efficient prosecution of the

22  action.

23      Moreover, the expenses which SSB and KGG seek are similarly the type of expenses routinely

24  charged to hourly paying clients. For example, the expenses include the costs of on-line legal and factual

25  research in the total amount of $6,669.02, which as discussed above, courts recognize that these tools

26  create efficiencies in litigation and, ultimately, save clients and the class money. The other expenses for

27  which reimbursement is sought are the types of expenses that are necessarily incurred in litigation and

28  routinely charged to clients billed by the hour. These expenses include, among others, long distance

telephone and facsimile charges, postage and delivery expenses, filing fees, photocopying, and document/litigation support.  *See* Bishop Decl. Ex. 3; Graifman Decl. Ex. 2.  Therefore, the Court should also approve the expenses sought by SSB and KGG.

## IV.     CONCLUSION

From the beginning of this litigation, Plaintiffs have faced determined adversaries represented by experienced counsel.  With no assurance of success, Plaintiffs and Plaintiffs' Counsel pursued the action, and successfully obtained a $16.5 million cash Settlement.  The Settlement reflects Plaintiffs' Counsel's efforts in the face of significant risk.  Accordingly, Lead Counsel respectfully submits that the Court should approve its fee and expense application and award Lead Counsel $1.5 million, which represents 7.5% of the total economic value of the Settlement (excluding attorneys' expenses), plus out of pocket expenses of $350,910.70.  Similarly, SSB and KGG, counsel for plaintiffs in *Vogel II*, submit that the Court should approve their fees and expenses and award them combined fees in the amount of $466,250, which represents 2.28% of the total economic value of the Settlement, plus combined out of pocket expenses of $44,605.20.

Dated:  January 7, 2011                        Respectfully submitted,

                                               **GRANT & EISENHOFER P.A.**

                                                  */s/ Michael J. Barry*
                                               MICHAEL J. BARRY

                                               JAY W. EISENHOFER
                                               MICHAEL J. BARRY
                                               Chase Manhattan Centre
                                               1201 N. Market Street
                                               Wilmington, Delaware 19801
                                               Telephone:     (302) 622-7000
                                               Facsimile:     (302) 622-7100

1    *Attorneys for Lead Plaintiff New York City Employees'*
     *Retirement System*

2

3    PATRICE L. BISHOP (CSB. No. 182256)
     STULL, STULL & BRODY

4    10940 Wilshire Blvd., Suite 2350
     Los Angeles, CA  90024

5    Telephone:     (310) 209-2468
     Facsimile:     (310) 209-2087

6

7    HOWARD T. LONGMAN
     STULL, STULL & BRODY

8    6  East 45th Street, Suite 500
     New York, N.Y. 10017

9    Telephone:    (212) 687-7230
     Facsimile:     (212) 490-2022

10

11   GARY S. GRAIFMAN
     KANTROWITZ GOLDHAMER & GRAIFMAN

12   747 Chestnut Ridge Road
     Chestnut Ridge, New York 10977

13   Telephone:  (845) 356-2560
     Facsimile:  (845) 356-3445

14   *Attorneys for Plaintiffs*
     Martin Vogel and Kenneth Mahoney

15

16

17

18

19

20

21

22

23

24

25

26

27

28