JAY W. EISENHOFER (*admitted pro hac vice*)
MICHAEL J. BARRY (*admitted pro hac vice*)
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, Delaware 19801
Telephone:     (302) 622-7000
Facsimile:      (302) 622-7100
E-Mail:         jeisenhofer@gelaw.com
                mbarry@gelaw.com

*Attorneys for Lead Plaintiff New York City Employees'*
*Retirement System*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | CASE NO. C-06-05208-JF<br><br>CLASS ACTION<br><br>**DECLARATION OF MICHAEL J. BARRY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBIRSEMENT OF EXPENSES**<br><br>Date:       February 18, 2011<br>Time:       9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:      Hon. Jeremy Fogel |

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION AND OVERVIEW ................................................................1

II.   THE ALLEGATIONS OF THE ACTION ..........................................................5

III.  HISTORY OF THE ACTION ............................................................................6

    A.    Lead Plaintiffs' Investigation, Filing Of The Consolidated
          Complaint, And Briefing On Defendants' Motions To Dismiss ................6

    B.    Experts ..............................................................................................8

    C.    The Risks Faced by Plaintiffs ....................................................................8

    D.    The Negotiation Of The Settlement ..........................................................10

IV.   CLASS NOTICE ..............................................................................................11

V.    PLAN OF ALLOCATION ................................................................................12

VI.   THE FEE APPLICATION ................................................................................13

VII.  REIMBURSEMENT OF THE REQUESTED LITIGATION
       EXPENSES AND COSTS IS FAIR AND REASONABLE..................................16

VIII. CONCLUSION..................................................................................................18

1    I, MICHAEL J. BARRY, hereby declare as follows:

2          1.      I am a director of Grant & Eisenhofer P.A. ("G&E"), counsel to the New York

3    City Employees' Retirement System ("NYCERS" or "Lead Plaintiff"), and the Court-appointed

4    Lead Counsel for the Class in the above-captioned action (the "Action").  I have personal

5    knowledge of the matters set forth below based on my active participation in all aspects of the

6    prosecution and settlement of this Action.  I submit this declaration in support of the proposed

7    Settlement that will resolve all the claims in this Action as against Defendants Apple Inc.

8    ("Apple" or the "Company"), and Steven P. Jobs ("Jobs"), Fred D. Anderson ("Anderson"),

9    Nancy R. Heinen ("Heinen"), William V. Campbell ("Campbell"), Millard S. Drexler

10   ("Drexler"), Arthur D. Levinson ("Levinson"), and Jerome B. York ("York", and together the

11   "Individual Defendants" and, collectively with Apple, the "Defendants").

12         2.      The Settlement was made on behalf of the Class of all persons and entities who

13   purchased or acquired the publicly traded securities of Apple between and including August 24,

14   2001 and June 29, 2006 (the "Class Period"), and who suffered damages as a result.[1]  This

15   declaration is also submitted in support of the proposed Plan of Allocation for distributing the net

16   Settlement Fund to the Class Members (the "Plan of Allocation") and in support of Lead

17   Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses.

18   **I.     INTRODUCTION AND OVERVIEW**

19         3.      After more than four years of litigation, Lead Plaintiffs' efforts have achieved an

20   excellent recovery for the Class.  The Settlement provides for the payment of $16.5 million in

21   cash (the "Settlement Amount") plus earned interest ( the "Settlement Fund").  Given the size of

22   the Settlement and the significant risks that Lead Plaintiffs faced in establishing liability and

23   damages, the Settlement is in the best interests of the Class.  Rather than proceed with this

24   litigation and risk obtaining a lesser or no recovery from Defendants, the Settlement provides the

25   ───────────────

26   [1]     Excluded from the Class are Defendants Apple, Jobs, Anderson, Heinen, Campbell, Drexler, Levinson, and York, all current and former directors and officers of Apple, and all

27   employees of Apple and/or its subsidiaries during the Class Period, and any family member, trust, company, entity, or affiliate controlled or owned by any of the excluded persons and

28   entities.  Also excluded from the Class are any persons and entities that exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

BARRY DECLARATION         1
CASE NO. C-06-05208-JF

1   Class with the very substantial recovery of $16.5 million in cash – an amount that was deposited

2   into escrow October 22, 2010 ($14 million), and December 9, 2010 ($2.5 million), and, since

3   that date, has been earning interest for the benefit of the Class.

4        4.    As demonstrated below and in the accompanying Lead Plaintiff's Memorandum

5   of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement (the

6   "Settlement Brief"), the proposed Settlement is fair, reasonable, and adequate, and should be

7   approved by the Court.  Additionally, the proposed Plan of Allocation is a fair and reasonable

8   method for distributing the proceeds of the Settlement to the members of the Class and,

9   therefore, also should be approved.

10        5.    Lead Plaintiffs have entered into the Settlement with a thorough understanding of

11   the strengths and weaknesses of the claims asserted in the Action.  As explained in greater detail

12   below, this understanding is based on Lead Counsel's prosecution of the Action for more than

13   four years, which has included, among other things: (1) drafting the detailed Consolidated Class

14   Action Complaint after extensive investigation, review and analysis of the Company's filings

15   with the Securities and Exchange Commission ("SEC"), press releases, other public statements

16   issued by Defendants, media and news reports about the Company, and publicly available

17   trading data relating to the price and volume of Apple common stock; (2) drafting an Amended

18   Complaint and First Amended Consolidated Class Action Complaint; (3) extensive briefing on

19   Defendants' motions to dismiss the Complaint and on appeal to the Court of Appeals for the

20   Ninth Circuit; (4) consulting with experts on issues relating to liability, damages, and materiality;

21   (5) exchanging confidential mediation statements with Defendants; and (6) preparing for, and

22   participating in, mediation before an experienced mediator, and extensive negotiations following

23   the formal mediation session.

24        6.    The Settlement was reached only after hard-fought and protracted settlement

25   negotiations, including an in-person mediation with Jonathan B. Marks and extensive

26   negotiations following mediation, all culminating in the parties' agreement to settle the matter

27   for $14 million payable to the Class, plus an additional $2.5 million payable to twelve different

28   corporate governance programs nationally.  Thereafter, the parties agreed to amend the terms of

the Settlement to increase the settlement fund to be distributed to the Class to $16.5 million and to eliminate the separate fund to be distributed to corporate governance programs.

7.     Lead Plaintiff believes that the $16.5 million cash recovery for the Class is an outstanding result, particularly when viewed in connection with the total potential damages as well as the risks Lead Plaintiff and the Class faced going forward in this Action, including those relating to establishing liability and damages.  See Declaration of Carolyn Wolpert in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement ("Lead Plaintiff Decl."), ¶ 13, attached hereto as Exhibit ("Ex.") A.

8.     As discussed in more detail below, Lead Plaintiff faced significant risks going forward, including, among others, that the Court would not certify a class or would shorten the proposed class period (and, correspondingly, reduce recoverable damages) or that Lead Plaintiff would not be able to prove scienter, loss causation, or reliance.  In addition, even if Lead Plaintiff were to prevail on the merits, there was a risk that the damages determined to be attributable to the alleged misrepresentations and omissions would be less than the Settlement Amount.  Accordingly, while Lead Plaintiff believes that all of its claims have merit, one or more of these arguments or issues may have ultimately proved insurmountable and the Class may have ended up with little or no recovery.  In light of these risks, the Settlement provides the Class with an excellent result.

9.     The Settlement is the result of a comprehensive investigation, extensive litigation, and hard-fought negotiations by experienced counsel.  For creating this substantial benefit, Lead Counsel seeks a fee of 7.5% of the total economic value of the Settlement.[2]  This requested fee has been reviewed and approved by Lead Plaintiff, NYCERS, which is a sophisticated institutional investor with experience in securities class actions.  *See* Lead Plaintiff Decl. ¶¶ 15-16.

---

[2]     The term "total economic value of the Settlement", as used herein, includes all payments Apple has agreed to make under the Settlement, including Apple's payment to establish the Settlement Fund, reimbursement of the costs of administering and distributing the Net Settlement Fund, and payment of Attorneys' Fees.

1    10.    Although Lead Counsel has negotiated an increase in the Settlement Amount

2    from $14 million to $16.5 million, Lead Counsel has not increased its fee request.  As set forth

3    below and in the accompanying Lead Plaintiffs' Motion for Attorneys' Fees and Reimbursement

4    of Litigation Expenses (the "Fee Brief"), Lead Counsel's request is justified by the work

5    performed and the result obtained.

6    11.    The favorable reaction of the members of the Class further supports the

7    reasonableness of the Settlement, Plan of Allocation, and the fee and expense request.

8    Beginning on December 8, 2010, the Notice of Pendency of Class Action and Proposed

9    Settlement, Final Approval Hearing, and Motion for Attorney's Fees and Reimbursement of

10   Litigation Expenses (the "Notice") was sent to more than 39,000 potential Class Members or

11   their nominees.  *See* Declaration of Robert Oseas Regarding Notice and Claims Administration

12   ("Oseas Decl."), ¶¶ 10-11, attached hereto as Ex. B.  The Notice (attached as Exhibit B to the

13   Oseas Decl.) advised Class Members of the proposed Settlement, the proposed Plan of

14   Allocation, and the request for an award of attorneys' fees and reimbursement of Litigation

15   Expenses. The Notice further advised Class Members of their right to object or request exclusion

16   from the Class, and it explained that this right needed to be exercised by January 21, 2011. Also

17   included with the Notice was the Request for Exclusion form.  Additionally, a Summary Notice

18   was published in the national edition of *The Investor's Business Daily* and transmitted over

19   *Business Wire* on December 8, 2010.  *Id.* ¶¶ 8-9.  Finally, the Claims Administrator posted the

20   Notice, Proof of Claim form, Amended Stipulation and Agreement of Settlement and Amended

21   Preliminary Approval Order on the website specifically created for this settlement.  *Id.* ¶ 14.

22   12.    While the deadline for opting out of the Settlement or objecting to any aspect of

23   the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses will expire

24   on January 21, 2011, to date, no Class Member has submitted any objection to any aspect of the

25   Amended Stipulation and Agreement of Settlement, the Plan of Allocation, or the request for

26   attorneys' fees and reimbursement of litigation expenses.

27

28

## II.     THE ALLEGATIONS OF THE ACTION

13.     Defendant Apple, headquartered in Cupertino, California, is a worldwide leader in the design, development and manufacture of personal computers, computer software and portable digital music players.

14.     The Individual Defendants were officers and/or directors of Apple during the Class Period.  Jobs co-founded the Company, and was Apple's Chief Executive Officer and a member of the Board throughout the Class Period.  Anderson was Apple's Chief Financial Officer from April 1996 to June 2004 and was a member of the Company's board of directors from 2004 until September 30, 2006 when he was forced to resign due to his involvement with backdating.  During the Class Period until May 2006, Heinen was the Senior Vice President, General Counsel, and Corporate Secretary at Apple.  Campbell has been a director of Apple since 1997, a member of the Audit Committee since at least December 1997, and a member of the Compensation Committee since August 2001.  Drexler has been a member of the Company's board of directors since 1999 and a member of the Compensation Committee since at least March 24, 2003.  Levinson has been a member of the Company's board of directors since 2000, a member of the Audit Committee since fiscal 2000, and was a member of the Compensation Committee from August 2001 to at least March 24, 2003.  York was a director of Apple from August 1997.[3]

15.     Plaintiff alleged in the Corrected First Amended Consolidated Class Action Complaint filed May 14, 2010 (the "Complaint" or "Compl.") that between August 24, 2001, and June 29, 2006, both dates inclusive (the "Class Period"), the Defendants improperly backdated stock option grants, resulting in false and misleading financial statements and inflation of Apple's stock price through out the Class Period.

16.     Following the commencement of the Action, Apple filed a restatement with the SEC in December 2006, which admitted backdating at Apple involving more than 6,400 instances on forty-two separate dates, and resulted in Apple restating more than four years of

---

[3]     Mr. York died on March 18, 2010.

financial statements and recording stock-based compensation expense of $105 million and $84 million on pre-tax and after-tax bases, respectively.

17.    As alleged in the Complaint, Defendants repeatedly backdated options made to current employees, newly hired employees, and non-employee directors, and failed to record compensation expenses for these grants in violation of Generally Accepted Accounting Principles ("GAAP").

**III.    HISTORY OF THE ACTION**

18.    The Action was commenced on August 24, 2006, with the filing of a class action complaint against Apple and certain Individual Defendants in the United States District Court for the Northern District of California, San Jose Division (Case No. C-06-05208-JF).  The action was captioned *Vogel, et al. v. Jobs, et al.*, Case No. C-06-5208-JF, and alleged violations of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  This case is referred to as "*Vogel I*."  On October 24, 2006, The New York City Employees' Retirement System ("NYCERS") filed a Motion for Its Appointment as Lead Plaintiff and for Approval of Its Selection of Counsel.  On January 19, 2007, the Court granted NYCERS's motion and appointed Grant & Eisenhofer P.A. ("Grant & Eisenhofer") as lead counsel.

19.    Upon its appointment as Lead Counsel, Grant & Eisenhofer undertook a hard-fought prosecution that lasted until the Settlement was reached.  As described more fully below, Lead Counsel vigorously litigated this Action by, among other things: (1) conducting an extensive investigation into Defendants' alleged wrongful conduct; (2) drafting three detailed, particularized Complaints; (3) contesting Defendants' motions to dismiss; (4) prosecuting an appeal to the Court of Appeals for the Ninth Circuit; and (5) participating in hard fought, arm's-length settlement negotiations, including mediation before an experienced mediator.

**A.    LEAD PLAINTIFFS' INVESTIGATION, FILING OF THE CONSOLIDATED COMPLAINT, AND BRIEFING ON DEFENDANTS' MOTIONS TO DISMISS**

20.    Lead Counsel engaged in an intensive investigation to satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure and the heightened pleading standards imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Lead Counsel thoroughly

reviewed and analyzed all publicly available information regarding Apple (including, but not limited to, its SEC filings and financial statements, press releases, reports about the Company in the media, and analyst reports).  Lead Counsel's investigation uncovered substantial information which formed the basis for Lead Plaintiff' allegations.

21.     On March 23, 2007, Lead Plaintiff filed the detailed Complaint asserting claims under Sections 14(a) and 20(a) of the Exchange Act and breach of state law duties of disclosure. NYCERS did not assert a claim under Section 10(b) of the Exchange Act.

22.     On June 8, 2007, the defendants moved to dismiss the Consolidated Complaint. On November 14, 2007, the Court dismissed the Consolidated Complaint with leave to amend only as a derivative action.

23.     NYCERS drafted, and on December 14, 2007, filed a motion for leave to file, a first amended consolidated class action complaint to assert claims under Sections 10(b) and 20(a) of the Exchange Act, as well as amended versions of the claims asserted in the Consolidated Complaint.

24.     On May 14, 2008, the Court denied NYCERS's motion for leave to amend.  On June 12, 2008, the Court entered judgment in favor of the defendants and dismissed NYCERS's claims with prejudice.

25.     On June 17, 2008, NYCERS filed a notice of appeal before the U.S. Court of Appeals for the Ninth Circuit.  On January 28, 2010, the Ninth Circuit affirmed the Court's dismissal of NYCERS's claims under Section 14(a) of the Exchange Act and state law.  The Ninth Circuit reversed the Court's May 14, 2008 order and granted NYCERS leave to amend its complaint to assert claims under Sections 10(b) and 20(a) of the Exchange Act.

26.     On March 22, 2010, NYCERS filed a First Amended Consolidated Class Action Complaint against Apple and certain Individual Defendants.  NYCERS's amended complaint alleged violations of Sections 10(b) and 20(a) of the Exchange Act.

27.     On June 27, 2008, plaintiffs Vogel and Mahoney filed another purported class action suit in the U.S. District Court for the Northern District of California against Apple and certain Individual Defendants.  This action was captioned *Vogel, et al. v. Apple Inc., et al.*, Case

BARRY DECLARATION                                    7
CASE NO. C-06-05208-JF

No. C-08-3123-JF, and alleged violations of Sections 10(b) and 20(a) of the Exchange Act. This action is referred to as "*Vogel II*." On July 22, 2008, the Court stayed all proceedings in *Vogel II* pending the outcome of NYCERS's appeal before the Ninth Circuit in *Vogel I*.

28.    On April 8, 2010, the Court entered an order consolidating *Vogel I* and *Vogel II*. The Court designated NYCERS as the Lead Plaintiff and Grant & Eisenhofer P.A. as Lead Counsel for the consolidated action.

29.    On May 14, 2010, Plaintiffs filed a Corrected First Amended Consolidated Class Action Complaint ("FACC") against Apple and certain Individual Defendants. The action is captioned *In re Apple Inc. Securities Litigation*, Case No. C-06-5208-JF, and alleges violations of Sections 10(b) and 20(a) of the Exchange Act. Defendants' response to the FACC is due on August 13, 2010. The Court has not previously certified any class in the Action.

30.    On May 19 and 20, 2010, Lead Plaintiff and Defendants participated in a mediation session with Jonathan Marks in New York. After considerable negotiations, the Settling Parties reached an agreement to settle the action.

**B.    EXPERTS**

31.    Lead Counsel worked extensively with experts and consultants at different stages of the case to prepare the complaints, analyze documents, prepare for class certification and summary judgment briefing, prepare for mediation, and prepare for settlement negotiations.

32.    Lead Counsel negotiated competitive fee rates for these experts, each of whom played a significant part in the prosecution of this Action.

33.    Lead Counsel retained a consulting expert to assist them in assessing loss causation and damages issues early in the case, as well as in connection with the mediation. Lead Counsel also evaluated issues relating to backdating of options with consulting experts in the accounting and executive compensation fields.

**C.    THE RISKS FACED BY PLAINTIFFS**

34.    Lead Plaintiff lost the § 14(a) claims before the District Court and the Ninth Circuit. However, while Lead Plaintiff was successful in prosecuting the §§ 10(b) and 20(a) claims against Defendants and believes that its case is meritorious and supported by strong

BARRY DECLARATION                              8
CASE NO. C-06-05208-JF

evidence, if the litigation had continued, Lead Plaintiff faced substantial risks, including establishing Defendants' liability and the Class' full amount of damages at summary judgment or trial. Defendants argued throughout the litigation that Plaintiffs would be unable to prove loss causation and reliance as to some or all of the Class Period. They raised these arguments in their motions to dismiss, and would have no-doubt reasserted them at the summary judgment phase and at trial and on appeal. Specifically, Defendants argued in their motion to dismiss that Plaintiffs failed to sufficiently plead loss causation and reliance.

35. Defendants also argued that Plaintiffs could not establish damages. Through Lead Counsel's work with experts and its appeal to the Ninth Circuit, Lead Counsel was able to reinstate the §§ 10(b) and 20(a) claims. These efforts, in part, led to settlement negotiations, resulting in Lead Counsel obtaining the $16.5 million cash recovery for the Class. If Defendants had been successful as to even some of their arguments – which they were initially at the motion to dismiss stage– total recoverable damages would have been greatly reduced or eliminated altogether.

36. Lead Plaintiff further considered that certain contested issues would have been decided by a jury in the event of a trial, including whether Defendants acted with an intent to mislead investors, whether the alleged misrepresentations or omissions were false and material to investors, whether all of the Class Members' losses were caused by the alleged misrepresentations or omissions, and the amount of damages.

37. Even if Plaintiffs prevailed through summary judgment, risks to the Class would remain. Even a meritorious case can be lost at trial. *See, e.g., In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs, the action was dismissed and plaintiffs were ordered to pay defendants the costs of defending the action). Even success at trial does not eliminate the risk.[4]

---

[4]    For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial. The court, however, overturned the verdict, entered judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporate defendant.

BARRY DECLARATION
CASE NO. C-06-05208-JF

9

38.     If the Settlement had not been reached, the litigation (including any additional appeals) would have likely continued for years, and the ultimate result of further litigation cannot be foreseen. Given the stakes involved in this litigation, an appeal of a successful verdict for plaintiffs would be virtually assured.  Instead of the lengthy, costly, and uncertain course of further litigation with Defendants, the Settlement provides an immediate and certain recovery for the Class. Lead Counsel believes that the substantial benefit provided by the Settlement clearly outweighs the numerous risks associated with lengthy continued litigation.

39.     Lead Plaintiff and Lead Counsel also considered that, even if Lead Plaintiff was to prevail on the merits, the ability to recover as much as the Settlement Amount on a judgment, let alone more than the $16.5 million Settlement Amount, was far from certain.  In sum, given the extensive investigation and litigation in this matter, Lead Plaintiff was able to carefully weigh the risks and benefits to settlement in a fully informed manner before finally agreeing to a settlement on behalf of the Class.

### D.     THE NEGOTIATION OF THE SETTLEMENT

40.     The Settlement is the result of intense, arm's-length negotiations between informed parties, and involved a formal in-person mediation session, as well as further negotiations following mediation.  On May 19 and 20, 2010, Lead Plaintiff and Defendants participated in a mediation session in New York with Jonathan B. Marks of Marks ADR LLC, a noted mediator.  During that mediation, the parties reached an agreement in principle to settle the Action under terms that would require Defendants to establish a fund for distribution to the Class in the amount of $14 million, pay an additional $2.5 million to certain corporate governance programs at designated universities across the country, to pay all administrative fees and attorneys fees separately so as not to reduce the fund to be distributed the Class.  The parties also agreed to continue discussions regarding potential corporate governance reforms to be considered by Apple.   Declaration of Jonathan B. Marks ("Marks Decl."), attached as Exhibit F to the Barry Decl. ¶¶ 15-17.

41.     On September 28, 2010, after considerable negotiations, the Settling Parties entered into a stipulation and agreement to settle the Action under terms that would require

1    Apple to establish a fund for distribution to the Class in the amount of $14 million, establish a

2    fund of $2.5 million to be distributed to certain designated corporate governance programs at

3    twelve universities located across the country, to pay all administrative fees and attorneys fees in

4    an amount to be approved by the Court not to exceed $2 million, and to reimburse Plaintiffs'

5    counsel reasonable out of pocket expenses in an amount to be approved by the Court not to

6    exceed $450,000, and to implement certain corporate governance reforms.

7         42.    On November 12, 2010, the Settling Parties entered into an amended stipulation

8    and agreement to settle the Action by increasing the fund established for distribution to the Class

9    by $2.5 million, to $16.5 million in cash to be paid by Apple, by eliminating the separate $2.5

10   million fund to be distributed to designated corporate governance programs, and by providing

11   that any amount remaining in the settlement fund after distribution to the Class would be

12   distributed to nine designated corporate governance programs that were among the twelve

13   previously designated as proposed recipients of the originally contemplated $2.5 million fund.

14        43.    Following this Court's preliminary approval of the original terms of Settlement,

15   on October 22, 2010, Apple deposited the $14 million Settlement Fund into an interest bearing

16   account, and following  issuance of the Amended Preliminary Approval Order, on December 9,

17   2010, Apple deposited an additional $2.5 million into the Settlement Fund.  In addition, pursuant

18   to the Court's Amended Preliminary Approval Order, beginning on December 8, 2010, Lead

19   Counsel, through the claims administrator, caused the Notice packet (including the Court-

20   approved Notice, Claim Form and Opt Out Form) to be sent to potential Class Members, and the

21   Summary Notice to be published in *The Investor's Business* Daily and over *Business Wire*.  *See*

22   Oseas Decl. ¶¶ 8-9.

23   **IV.    CLASS NOTICE**

24        44.    The Court's Amended Preliminary Approval Order granted preliminary approval

25   of the Settlement, preliminarily certified the Class, ordered that notice be disseminated to the

26   Class, and set January 21, 2011, as the date by which all objections to the Settlement, the Plan of

27   Allocation and/or the request for attorneys' fees and reimbursement of expenses, or requests for

28   exclusion from the Class, must be received.

45.     Lead Plaintiff, with the Court's approval, retained Epiq Class Action and Claims Solutions, Inc. ("Epiq"), as the Claims Administrator for the Settlement.

46.     Pursuant to the Amended Preliminary Approval Order, Lead Plaintiff, through Epiq, disseminated copies of the Notice, Proof of Claim form, and Request for Exclusion form (the "Notice Packet") to potential Class Members.   A copy of the Notice Packet is attached as Exhibit A to the Oseas Declaration.   The Notice contains a thorough description of the Settlement, the Plan of Allocation, and Class Members' rights to participate in and object to the Settlement, or to exclude themselves from the Class.  *Id.*  As detailed in the Oseas Declaration, Epiq obtained the names and addresses of potential Class Members, and Epiq's proprietary database of names of brokerage firms, banks, institutions and other nominees that it maintains, as well as names provided by banks, brokers and nominees pursuant to the Preliminary Approval Order for purposes of its initial mailing.  *Id.* ¶ 11.

47.     Pursuant to the Amended Preliminary Approval Order, Epiq began disseminating the Notice Packet to potential Class Members on December 8, 2010. In total, over 39,000 copies of the Notice Packet have been disseminated to potential Class Members.  *Id.* ¶¶ 10-11.

48.     In addition, the Court-approved Summary Notice was published in the national edition of *The Investor's Business Daily* and transmitted over *Business Wire* on December 8, 2010.  *Id.* at ¶¶ 8-9.  Information regarding the Settlement, including downloadable copies of the Notice and Proof of Claim form, was posted on the website established by the Claims Administrator specifically for this Settlement (www.applesecuritiessettlement.com).  *Id.* at ¶ 14.

49.     As ordered by the Court and stated in the Notice, all objections to the Settlement, Plan of Allocation, or request for attorneys' fees and reimbursement of expenses or requests for exclusion from the Class are due to be received by no later than January 21, 2011.  To date, there are no objections to the Settlement, the Plan of Allocation, or request for attorneys' fees and reimbursement of expenses.

**V.     PLAN OF ALLOCATION**

50.     Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Class Members who wish to participate in the distribution of the Settlement Fund must submit a

Claim Form no later than March 15, 2011.  As provided in the Notice, after deducting all appropriate taxes, administrative costs, attorneys' fees, and reimbursement of Litigation Expenses, the balance of the Settlement Fund (the "Net Settlement Fund") will be distributed according to the Plan of Allocation.

51.     If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Class Members who submit valid Claim Forms. The Plan of Allocation is designed to achieve an equitable distribution of the Net Settlement Fund.

52.     The Plan of Allocation is the product of Lead Counsel's investigation and analysis in this Action.  A "Recognized Claim" will be calculated for each purchase or acquisition of Apple common stock during the Class Period as reflected on the Claim Forms timely submitted by Class Members.

53.     Epiq, as the Claims Administrator for the Settlement, will determine each Authorized Claimant's pro rata share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Loss, calculated in accordance with the Plan of Allocation.  Calculation of the Recognized Loss will depend upon several factors, including when the shares were purchased or acquired, and whether they were held until the conclusion of the Class Period or sold during the Class Period, and if so, when they were sold.

54.     The Plan of Allocation was designed to fairly and rationally allocate the proceeds of the Settlement among Class Members based on the alleged corrective disclosures and resulting estimated damages throughout the Class Period, and was fully explained in the Notice to the Class. Objections to the Plan of Allocation must be filed by no later than January 21, 2011. To date, no objections have been filed.

## VI.     THE FEE APPLICATION

55.     The Notice informed Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in the amount of $1,533,750.00, Stull, Stull & Brody and Kantrowitz, Goldhamer & Graifman's intent to apply for an award of attorneys' fees in the amount of $466,250, and for reimbursement of Litigation Expenses in an amount not to exceed $450,000, plus interest on such fees and expenses at the same rate as earned by the Settlement Amount.

56.     The requested fee of $1.5 million (or approximately 7.5% of the total economic value of the Settlement excluding attorneys' expenses) is far below the 25% "benchmark" fee in the Ninth Circuit, and was reviewed and approved by Lead Plaintiff NYCERS, a sophisticated institutional investor with experience prosecuting securities violations on behalf of investors and serving as lead plaintiff in actions governed by the PSLRA.  *See* Lead Plaintiff Decl. ¶¶ 15-16. In addition, the combined request for fees in the amount of $1,966,250, is 9.61% of the total economic value of the Settlement, and is similarly well below the Ninth Circuit's 25% "benchmark".

57.     As discussed in the Fee Brief, fee awards equal to or greater than the "benchmark" fee award of 25% – a higher percentage than the amount requested here – are frequently approved by courts both within the Ninth Circuit and outside of this Circuit.

58.     The fee requested is also fair, adequate, and reasonable because of the significant risks faced by Lead Counsel in pursuing this Action.  Most obviously, this litigation was undertaken by Lead Counsel on a wholly contingent basis.  Lead Counsel understood that it was embarking on a complex, lengthy, and expensive litigation with no guarantee of ever being compensated for its investment of time and money in the prosecution of this matter.  Indeed, Lead Counsel is aware of numerous cases where plaintiffs' counsel in contingent cases such as this, after expending thousands of hours, have received no compensation for various reasons. Thus, commencement of a class action does not guarantee a settlement and fee award. Nevertheless, Lead Counsel understood that it was obligated to ensure that sufficient attorney resources were dedicated to the prosecution of this case and that sufficient funds were available to cover the significant expenses required to litigate this matter.  As discussed above, liability here was far from assured and there were significant risks concerning the damages recoverable even if liability were established.  As just one example of the litigation risks faced by Lead Counsel, the Court dismissed the § 14(a) claims.

59.     Courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforcing the securities laws.  As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only

occur if private plaintiffs − particularly institutional investors − take an active role in protecting the interests of securities purchasers and obtain representation comparable to that available to large corporate interests. If this important public policy is to be carried out, plaintiffs' counsel must be adequately compensated, taking into account the enormous risks undertaken in prosecuting securities class actions.

60.    The expertise and experience of Lead Counsel is another important factor in setting a fair fee.  Lead Counsel is among the most experienced and skilled practitioners in the securities litigation field, and has a long and successful track records in such cases.   The challenges posed by the size and complexity of this case the underlying subject matter were enormous.   This $16.5 million Settlement was in large part the result of Lead Counsel's specialized skills, hard work, and persistence.   Moreover, the fact that Lead Counsel has demonstrated a willingness and ability to prosecute complex cases such as this was undoubtedly a factor that encouraged Defendants to engage in settlement discussions and to settle this matter. Copies of our firm's biography is attached as Ex. 3 to the Declaration of Michael J. Barry in Support of Lead Counsel's Application for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Barry Fee Decl."), attached hereto as Exhibit C.

61.    As reflected in the attached Fee Declarations,[5] Plaintiffs' Counsel expended over 3,400 hours in the prosecution and investigation of this litigation. The hours invested by Plaintiffs' Counsel are a testament not only to the large scale of the case, but also to Plaintiffs' Counsel's commitment and professional sacrifice to obtain the best possible result for the Class. Thus, the fee requested fairly and reasonably rewards Lead Counsel's effort and performance.

62.    The quality of the work performed by Plaintiffs' Counsel in attaining the Settlement should also be evaluated in light of the quality of opposing counsel.  Counsel for Defendants consisted of a top-tier national firm, which mounted a formidable defense.  In the

---

[5]    "Fee Declarations" refers, collectively, to the Barry Fee Declaration; the Declaration of Patrice L. Bishop in Support of Application for Attorneys' Fees and Expenses (the "Bishop Decl."), attached hereto as Exhibit D, and the Declaration of Gary S. Graifman in Support of Application for Award of Attorneys' Fees and Expenses (the "Graifman Decl."), attached hereto as Exhibit E.

BARRY DECLARATION                    15
CASE NO. C-06-05208-JF

1   face of this knowledgeable and formidable defense, Lead Counsel was nonetheless able to

2   develop a case that was sufficiently strong to persuade the Defendants to settle the litigation on

3   terms that are favorable to the Class.

4          63.    Additionally, this Action required Plaintiffs' Counsel to spend over four years

5   intensively litigating this matter, requiring the attorneys to forego work on other matters and

6   requiring Plaintiffs' Counsel to incur significant expenses.   Courts have noted that these

7   circumstances are relevant to the fee determination.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290

8   F.3d 1043, 1050 (9th Cir. 2002).

9          64.    The fee is also fair, adequate and reasonable when measured based on a lodestar

10  multiplier.  The lodestar multiplier is calculated by (i) dividing the fee requested ($1,966,250.00)

11  by (ii) the number of hours counsel billed to the case multiplied by the counsel's standard hourly

12  rate (the "lodestar").  The lodestar for Lead Counsel is $1,531,935.50.   *See* Barry Fee Decl., Ex.

13  1.  This represents a multiplier of .98, which represents a 2% *discount* of Lead Counsel's fees.

14  The lodestar for Stull, Stull & Brody and Kantrowitz, Goldhamer & Graifman is $400,346.40.

15  This represents a multiplier of 1.16.  The lodestar for the services performed by all Plaintiffs'

16  Counsel here is $1,932,281.90.  This represents a multiplier of only 1.02.  Courts have frequently

17  approved higher multipliers in securities cases.  *See, e.g., Vizcaino*, 290 F.3d at 1047 (upholding

18  a multiplier of 3.65 on a $96.885 million settlement).   This case was prosecuted on a fully

19  contingent basis, with no assurance of success, and litigated for over four years without any

20  compensation at all.

21         65.    In addition, in response to over 39,000 Notices being mailed, to date there are no

22  objections to Lead Counsel's fee request.

23  **VII.    REIMBURSEMENT OF THE REQUESTED LITIGATION EXPENSES AND
            COSTS IS FAIR AND REASONABLE**

24

25         66.    Lead Counsel seeks reimbursement of $350,910.70 in litigation expenses

26  reasonably and actually incurred in connection with commencing and prosecuting the claims

27  against the Defendants, with interest incurred at the same rate earned by the Settlement Fund.

28  *See* Barry Fee Decl., Ex. 2.  Stull, Stull & Brody and Kantrowitz, Goldhamer & Graifman,

BARRY DECLARATION                    16
CASE NO. C-06-05208-JF

1   counsel for plaintiffs in *Vogel II*, seek combined out of pocket expenses of $44,605.20. *See*

2   Bishop Decl., Ex. 3; Graifman Decl., Ex. 2.

3           67.     From the beginning of the case, Lead Counsel was aware that it might not recover

4   any of its expenses, and, at the very least, would not recover anything until the Action was

5   successfully resolved. Lead Counsel also understood that, even assuming that the case was

6   ultimately successful, reimbursement for expenses would not compensate it for the lost use of the

7   funds advanced by them to prosecute this Action. Therefore, Lead Counsel was motivated to,

8   and did, take significant steps to minimize expenses whenever practicable without jeopardizing

9   the vigorous and efficient prosecution of the case.

10          68.     The expenses of Plaintiffs' Counsel for which reimbursement is sought are set

11  forth in detail in the respective firms' Fee Declarations, which identify the specific category of

12  expense, e.g., experts' fees, travel costs, photocopying, telephone, fax and postage expenses, and

13  other costs actually incurred. As set forth in the Fee Declarations, these expenses are reflected

14  on the books and records maintained by Plaintiffs' Counsel and are prepared from expense

15  vouchers, check records, and other source materials, and are an accurate record of the expenses

16  incurred.

17          69.     A large portion of the litigation expenses for which reimbursement is sought were

18  incurred for professional expert fees. Of the total amount of expenses, more than $231,000.00,

19  or 66%, was expended on experts in the areas of liability, loss causation, market efficiency,

20  damages, and to assist with the mediation. The expertise and assistance provided by these

21  experts was critical to the prosecution and successful resolution of this action.

22          70.     The expenses also include the costs of on-line legal and factual research in the

23  amount of $39,932.66 for Lead Counsel and $6,669.02 for counsel in *Vogel II*. These are the

24  charges for computerized factual and legal research services such as Lexis-Nexis and Westlaw.

25  It is standard practice for attorneys to use Lexis-Nexis and Westlaw to assist them in researching

26  legal and factual issues, and, indeed, courts recognize that these tools create efficiencies in

27  litigation and, ultimately, save clients and the class money.

28

BARRY DECLARATION                           17
CASE NO. C-06-05208-JF

71.     In addition, Lead Counsel was required to travel in connection with prosecuting and mediating this matter and, thus, incurred the related costs of travel tickets, meals, and lodging.

72.     Included in the expense request above is $20,870.36 for out-of-town travel expenses necessarily incurred for the prosecution of this litigation.

73.     The other expenses for which reimbursement is sought are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, long distance telephone and facsimile charges, postage and delivery expenses, filing fees, photocopying, and document management.

74.     All of Plaintiffs' Counsel's litigation expenses for which reimbursement is being sought were necessary to the successful prosecution and resolution of the claims against Defendants.  In addition, the Notice apprised potential Class Members that Lead Counsel would seek reimbursement of expenses in an amount not to exceed $450,000.  The amount now sought – $395,515.90 is significantly less than the amount stated in the Notice.  To date, there are no objections to the request for reimbursement of expenses.

75.     In view of the complex nature of the Action, the Litigation Expenses incurred were reasonable and necessary to pursue the interests of the Class. Accordingly, Lead Counsel respectfully submits that the expenses are reasonable in amount and should be reimbursed in full.

## VIII.   CONCLUSION

76.     In view of the substantial recovery to the Class, the risks of this Action, the enormous efforts of Lead Plaintiff and Lead Counsel, the quality of work performed, the contingent nature of the fee, the complexity of the case, and the standing and experience of Lead Counsel, Lead Counsel respectfully submits that the Settlement of $16.5 million should be approved as fair, reasonable and adequate; that the Plan of Allocation should be approved as fair and reasonable; that a fee in the amount of 7.5% of the Settlement Fund excluding attorneys' expenses (or $1.5 million), and Lead Counsel's expenses in the amount of $350,910.70, with interest thereon at the same rate as earned by the Settlement Amount, should be awarded to Lead Counsel.  Similarly, Stull, Stull & Brody and Kantrowitz, Goldhamer & Graifman, counsel for

1  plaintiffs in *Vogel II*, submit that the Court should approve their fees and expenses and award

2  them combined fees in the amount of $466,250, which represents 2.28% of the total economic

3  value of the Settlement, plus combined out of pocket expenses of $44,605.20.

4         I declare under penalty of perjury that the foregoing is true and correct and that this

5  declaration was executed on this 7th day of January, 2011.

6                                       BY:    ____/s/ Michael J. Barry____

7                                              MICHAEL J. BARRY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28