# Exhibit C

JAY W. EISENHOFER (*admitted pro hac vice*)
MICHAEL J. BARRY (*admitted pro hac vice*)
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, Delaware 19801
Telephone:   (302) 622-7000
Facsimile:   (302) 622-7100
E-Mail:       jeisenhofer@gelaw.com
              mbarry@gelaw.com

*Attorneys for Lead Plaintiff New York City
Employees' Retirement System*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | CASE NO. C-06-05208-JF<br><br>CLASS ACTION<br><br>**DECLARATION OF MICHAEL J. BARRY IN SUPPORT OF LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES FILED ON BEHALF OF GRANT & EISENHOFER P.A.**<br><br>Date:        February 18, 2011<br>Time:         9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge:       Hon. Jeremy Fogel |

I, MICHAEL J. BARRY, hereby declare as follows:

1.      I am a director of Grant & Eisenhofer P.A. ("G&E"), counsel to the New York City Employees' Retirement System ("NYCERS" or "Lead Plaintiff"), and the Court-appointed Lead Counsel for the Class in the above-captioned action (the "Action").  I have personal knowledge of the matters set forth below based on my active participation in all aspects of the prosecution and settlement of this Action.  I submit this declaration in support of the proposed Settlement that will resolve all the claims in this Action as against Defendants Apple Inc. ("Apple" or the "Company"), and Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York (the "Individual Defendants" and, together with Apple, the "Defendants").

2.      My firm was appointed as Co-Lead Counsel in the action. In this capacity, my firm performed the tasks performed in the accompanying Declaration Of Michael J. Barry In Support Of Motion For Final Approval Of Settlement And Plan Of Allocation And Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses (the "Barry Decl.").

3.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and professional support staff of my firm who was involved in this action and performed the tasks detailed in the Barry Declaration, and the lodestar calculation based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court.

4.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been accepted in other securities or shareholder litigation.

5.      The total number of hours expended on this litigation by my firm through January 7, 2011, is 2,798.20. The total lodestar for my firm is $1,531,935.50.

6.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.     As detailed in Exhibit 2, my firm has incurred a total of $350,910.70 in paid unreimbursed expenses in connection with the prosecution of the action.

8.     The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

9.     With respect to the standing of my firm, attached hereto as Exhibit 3 is a resume of my firm.

I declare, under penalty of perjury, that the foregoing facts are true and correct. Executed on January 7, 2011.


BY:    _/s/ Michael J. Barry_
       MICHAEL J. BARRY

Exhibit C-1

**Apple Inc. Securities Litigation**

**Through January 7, 2011**

| Name | Hours | Rate | Lodestar |
|---|---|---|---|
| Jay W. Eisenhofer (Partner) | 204.00 | $ 845.00 | $ 172,380.00 |
| Stuart M. Grant (Partner) | 1.10 | $ 845.00 | $ 929.50 |
| Geoffrey C. Jarvis (Director) | 0.70 | $ 750.00 | $ 525.00 |
| Megan D. McIntyre (Director) | 1.30 | $ 695.00 | $ 903.50 |
| Stephen G. Grygiel (Director) | 1.00 | $ 695.00 | $ 695.00 |
| Mary S. Thomas (Director) | 1.70 | $ 650.00 | $ 1,105.00 |
| Michael J. Barry (Director) | 684.20 | $ 650.00 | $ 444,730.00 |
| Charles Caliendo (Sr. Counsel) | 582.70 | $ 620.00 | $ 361,274.00 |
| Lesley Weaver (Sr. Counsel) | 42.60 | $ 620.00 | $ 26,412.00 |
| Deborah Elman (Associate) | 462.30 | $ 550.00 | $ 254,265.00 |
| Christine Mackintosh (Associate) | 1.50 | $ 475.00 | $ 712.50 |
| Sharan Nirmul (Associate) | 42.00 | $ 445.00 | $ 18,690.00 |
| Natalia Williams (Associate) | 433.10 | $ 425.00 | $ 184,067.50 |
| Ananda Chaudhuri (Associate) | 2.00 | $ 375.00 | $ 750.00 |
| **Attorney Subtotal** | 2460.20 | | $1,467,439.00 |
| | | | |
| Carolynn A. Nevers (Paralegal) | 1.70 | $ 225.00 | $ 382.50 |
| Kimberly B. Schwartz (Paralegal) | 10.00 | $ 225.00 | $ 2,250.00 |
| Alexandra Carpio (Paralegal) | 2.00 | $ 190.00 | $ 380.00 |
| Beatrice Smith (Paralegal) | 213.20 | $ 190.00 | $ 40,508.00 |
| Mary Swift (Paralegal) | 98.70 | $ 190.00 | $ 18,753.00 |
| Renee Lowder (Paralegal) | 0.30 | $ 190.00 | $ 57.00 |
| Ronald E. Wittman (Paralegal) | 4.70 | $ 190.00 | $ 893.00 |
| S. Lee Sobocinski (Paralegal) | 6.00 | $ 190.00 | $ 1,140.00 |
| Valarie Ziminsky (Paralegal) | 1.40 | $ 95.00 | $ 133.00 |
| **Paralegal Subtotal** | 338.00 | | $ 64,496.50 |
| | | | |
| **TOTAL** | **2798.20** | | **$1,531,935.50** |

Exhibit C-2

**APPLE EXPENSES**

| Expense Type / Vendor | Vendor Total |
|---|---|
| Arbitration Mediation Expense | $ 28,818.00 |
| Duplication Services (.25 per page) | $ 27,741.80 |
| Experts | |
| Winnemac Consulting (damages analysis) | $  26,350.00 |
| Dubin Research (litigation, mediation & trial consultant) | $ 184,242.58 |
| Philadelphia Investment Banking (damages) | $  20,780.61 |
| Fax | $      174.24 |
| Filing Fees | $       32.88 |
| Postage & Delivery | $      577.82 |
| Research | $  39,932.66 |
| Service Fees | $      920.40 |
| Telephone | $      373.95 |
| Transcription Services | $       95.40 |
| Travel | $  20,870.36 |
| **TOTAL** | **$ 350,910.70** |

Exhibit C-3

**GRANT & EISENHOFER P.A.**
**FIRM BIOGRAPHY**

Grant & Eisenhofer P.A. ("G&E") is a national litigation boutique with more than 50 attorneys that concentrates on federal securities and corporate governance litigation and other complex class actions.  G&E primarily represents domestic and foreign institutional investors, both public and private, who have been damaged by corporate fraud, greed and mismanagement. The firm was named to the National Law Journal's Plaintiffs' Hot List for the last three years and is listed as one of America's Leading Business Lawyers by Chambers and Partners, who reported that G&E "commanded respect for its representation of institutional investors in shareholder and derivative actions, and in federal securities fraud litigation."  Based in Delaware, New York and Washington, D.C., G&E routinely represents clients in federal and state courts throughout the country.  G&E's clients include the California Public Employees' Retirement System, New York State Common Retirement Fund, Ohio Public Employees' Retirement System, State of Wisconsin Investment Board, Teachers' Retirement System of Louisiana, PIMCO, Franklin Templeton, Trust Company of the West, The Capital Guardian Group and many other public and private domestic and foreign institutions.

G&E was founded in 1997 by Jay W. Eisenhofer and Stuart M. Grant, formerly litigators in the Wilmington office of the nationally prominent firm of Skadden, Arps, Slate, Meagher & Flom LLP.  Over the years, the firm's partners have gained national reputations in securities and corporate litigation.  G&E has recovered over $12 billion dollars for its clients in the last five years, and has repeatedly been named one of the nation's "Top Ten Plaintiff's Firms" by the National Law Journal. In 2008 and 2009, RiskMetrics Group recognized G&E for winning the highest average investor recovery in securities class actions of any law firm in the U.S.

G&E has been lead counsel in some of the largest securities class action recoveries in U.S. history, including:

> $3.2 billion settlement from Tyco International Ltd.
> $895 million from United Healthcare
> $450 million Pan-European settlement from Royal Dutch Shell
> $448 million settlement from Global Crossing Ltd.
> $420 million from Digex
> $325 million from Delphi Corp
> $303 million settlement from General Motors
> $300 million settlement from DaimlerChrysler Corporation
> $300 million recovery from Oxford Health Plans
> $400 million recovery from Marsh & McLennan
> $276 million judgment & settlement from Safety-Kleen

G&E currently serves as lead counsel in securities class actions involving, among others, Pfizer, Merck, Alstom, Parmalat, Satyam and Refco.

G&E has also achieved landmark results in corporate governance litigation, including:

*In re UnitedHealth Group Inc. Shareholder Derivative Litigation*: G&E represents the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative breach of fiduciary duty action against William W. McGuire, the former CEO of UnitedHealth Group. The case relates to the improper backdating of over 55.4 million (split-adjusted) stock options issued by UnitedHealth from 1996 through 2002, and the issuance of an additional 12.31 million (split adjusted) stock options post-2002 that violated the terms of the applicable shareholder-approved stock option plans. G&E achieved a settlement that has resulted in significant governance reforms and payments in excess of $900 million, the largest settlement in the history of derivative litigation in any jurisdiction.

*In re Digex, Inc. Shareholders Litigation* – G&E initiated litigation alleging that the directors and majority stockholder of Digex, Inc. breached fiduciary duties to the company and its public shareholders by permitting the majority shareholder to usurp a corporate opportunity that belonged to Digex. G&E's efforts in this litigation resulted in an unprecedented settlement of $420 million, the largest settlement in the history of the Delaware Chancery Court.

*Caremark / CVS Merger* - G&E represented institutional shareholders challenging the conduct of the Caremark board in connection with the merger agreement with CVS, and its rejection of a competing proposal. G&E was able to force Caremark to provide additional disclosures to public shareholders and to renegotiate the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and statutory appraisal rights.

*Teachers' Retirement System of Louisiana v. Greenberg, et al. and American International Group, Inc.*: In the largest settlement of shareholder derivative litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a lawsuit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets.

*AFSCME v. AIG* – This historic federal appeals court ruling in favor of G&E's client established the right, under the then-existing proxy rules, for shareholders to place the names of director candidates nominated by shareholders on corporate proxy materials – reversing over 20 years of

adverse rulings from the SEC's Division of Corporate Finance and achieving what had long been considered the "holy grail" for investor activists. Although the SEC took nearly immediate action to reverse the decision, the ruling renewed and intensified the dialogue regarding "proxy access" before the SEC, ultimately resulting in a new rule currently being considered by the SEC that, if implemented, will make "proxy access" mandatory for every publicly traded corporation.

*Unisuper Ltd. v. News Corp., et al*. – G&E forced News Corp. to rescind the extension of its poison pill on the grounds that it was obtained without proper shareholder approval.

*Teachers' Retirement System of Louisiana v. HealthSouth* – G&E negotiated a settlement which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby *shareholders* would nominate their replacements.

*Carmody v. Toll Brothers* – This action initiated by G&E resulted in the seminal ruling that "dead-hand" poison pills are illegal.

In addition, the firm's lawyers are often called upon to testify on behalf of institutional investors before the SEC and various judicial commissions, and they frequently write and speak on securities and corporate governance issues. G&E partners Jay Eisenhofer and Michael Barry are co-authors of the *Shareholder Activism Handbook*, and in 2008, Jay Eisenhofer was named one of the 100 most influential people in the field of corporate governance.

G&E is proud of its success in "fighting for institutional investors" in courts and other forums across the country and throughout the world.

## **G&E's Attorneys**

**Jay W. Eisenhofer**

Jay Eisenhofer, co-founder and managing director of Grant & Eisenhofer, has been counsel in more multi-hundred million dollar cases than any other securities litigator, including the $3.2 billion settlement in the Tyco case, the $895 million United Healthcare settlement, the $450 million settlement in the Global Crossing case, the historic $450 million pan-European settlement in the Shell case, as well as a $400 million settlement with Marsh McLennan, a $303 million settlement with General Motors and a $300 million settlement with DaimlerChrysler. Mr. Eisenhofer was also the lead attorney in the seminal cases of *American Federation of State, County & Municipal Employees, Employees Pension Plan v. American International Group, Inc.*, where the U.S. Court of Appeals required shareholder proxy access reversing years of SEC no-action letters, and *Carmody v. Toll Brothers*, wherein the Delaware Court of Chancery first ruled that so-called "dead-hand" poison pills violated Delaware law.

Mr. Eisenhofer has served as litigation counsel to many public and private institutional investors, including, among others, California Public Employees Retirement System, Colorado Public Employees Retirement Association, the Florida State Board of Administration, Louisiana State Employees Retirement System, the Teachers' Retirement System of Louisiana, Ohio Public Employee Retirement Systems, State of Wisconsin Investment Board, American Federation of State, County & Municipal Employees, Service Employees International Union, Amalgamated Bank, Lens Investment Management, Inc. and Franklin Advisers, Inc.

Mr. Eisenhofer is consistently ranked as a leading securities and corporate governance litigator in *Chambers USA – America's Leading Business Lawyers*. In the 2010 edition, Mr. Eisenhofer is hailed a "*master strategists*" and is lauded as an "*outstanding tactician…especially recommended for his strategic guidance.*" Mr. Eisenhofer was recognized by Directorship Magazine in 2008 as one of the 100 most influential people in the field of corporate governance, a list that included figures like Ben Bernanke, Henry Paulson, Barney Frank, and Warren Buffet. In addition, he has been named by Law Dragon to its list of the top 500 lawyers in America. *The National Law Journal* has selected Grant & Eisenhofer as one of the top ten plaintiffs' law firms in the country for the last four years, earning the firm a place in *The National Law Journal's* Plaintiffs Firms Hall Of Fame. Mr. Eisenhofer serves as a member of the Advisory Boards for the Program on Corporate Governance at Harvard Law School and the Weinberg Center for Corporate Governance at the University of Delaware.

Mr. Eisenhofer has written and lectured widely on securities fraud and insurance coverage litigation, business and employment torts, directors' and officers' liability coverage, and the Delaware law of shareholder rights and directorial responsibilities. Among the publications he has authored: "The Shareholders Activism Handbook" Aspen Publishers; "Proxy Access Takes Center Stage – The Second Circuit's Decision in AFSCME Employees Pension Plan v. American International Group, Inc." *Bloomberg Law Reports*, Vol. 1, No. 5; "Investor Litigation in the U.S. - The System is Working" *Securities Reform Act Litigation Reporter*, Vol. 22, #5; "In re Walt Disney Co. Deriv. Litig. and the Duty of Good Faith Under Delaware Corporate Law" *Bank & Corporate Governance Law Reporter*, Vol. 37, #1; "Institutional Investors As Trend-

Setters In Post-PSLRA Securities Litigation" *Practicing Law Institute*, July, 2006; "In re Cox Communications, Inc.: A Suggested Step in the Wrong Direction," *Bank and Corporate Governance Law Reporter,* Vol. 35, #1; "Does Corporate Governance Matter to Investment Returns?" *Corporate Accountability Report*, Vol. 3, No. 37; "Loss Causation in Light of Dura: Who is Getting it Wrong?" *Securities Reform Act Litigation Reporter*, Vol. 20, #1; "Giving Substance to the Right to Vote: An Initiative to Amend Delaware Law to Require a Majority Vote in Director Elections," *Corporate Governance Advisor*, Vol. 13, #1; "An Invaluable Tool in Corporate Reform: Pension Fund Leadership Improves Securities Litigation Process," *Pensions & Investments*, Nov. 29, 2004; and "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, August 2004.

Mr. Eisenhofer is a graduate of the University of Pittsburgh, and a 1986 *magna cum laude* graduate of Villanova Law School, Order of the Coif. He was a law clerk to the Honorable Vincent A. Cirillo, President Judge of the Pennsylvania Superior Court and thereafter joined the Wilmington office of Skadden Arps Slate Meagher & Flom.  Mr. Eisenhofer was a partner in the Wilmington office of Blank Rome Comisky & McCauley until forming G&E in 1997.

**Stuart M. Grant**

Stuart M. Grant is co-founder and managing director of Grant & Eisenhofer. Mr. Grant is nationally recognized for his representation of institutional investors in securities, regulatory and corporate governance litigation. He serves as litigation counsel to many of the largest public and private institutional investors in the world.

Mr. Grant has extensive knowledge in the areas of Delaware corporate law, fiduciary responsibility, securities and investments, private equity and fixed income, appraisal remedies, valuation, proxy contests and other matters related to protecting and promoting the rights of institutional investors.

Mr. Grant has been consistently ranked as a leading securities and corporate governance litigator in *Chambers USA – America's Leading Business Lawyers*. In the 2008 edition, it is noted that Mr. Grant "really understands the law and the psychology of litigation," and is described by clients as an "extremely talented litigator who possesses deep theoretical knowledge about class actions and corporate governance."  Mr. Grant, who has been recognized as one of the Top 500 Leading Lawyers in America by Lawdragon, is rated AV by Martindale Hubbell.

Mr. Grant has testified on behalf of institutional investors before the SEC and before the Third Circuit Panel on Appointment of Class Counsel. He has successfully argued on behalf of institutional investors in many groundbreaking corporate governance cases including:  *In re Digex Stockholders Litigation*, the largest settlement in Delaware Chancery Court history, which led to the establishment of lead plaintiff provisions in Delaware;  *In re UniSuper Ltd., et al. v. News Corporation, et al*., a landmark case in which the Delaware Chancery Court ruled that shareholders may limit board authority without amending the corporation's charter; *In re Tyson Foods, Inc*., which resulted in historic rulings from the Delaware Court of Chancery clarifying the fiduciary duties of corporate directors in connection with the administration of stock option

plans; *Teachers' Retirement System of Louisiana v. Aidinoff, et al. and American International Group, Inc.,* the largest derivative shareholder litigation settlement in the history of Delaware Chancery Court; *In re HealthSouth*, which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby shareholders would nominate their replacements; *In re Cablevision Systems Corp. Options Backdating Litigation* and *In re Electronics for Imaging, Inc. Shareholder Litigation*, both of which held directors and officers of their respective companies accountable for improperly granting backdated options and, most importantly, required the individual defendants to reach into their own pockets to cover a significant portion of the settlement.

Mr. Grant was the first attorney in the country to argue the provisions of the PSLRA allowing an institutional investor to be appointed as lead plaintiff in a securities class action. The opinion, which appointed the State of Wisconsin Investment Board as lead plaintiff and Grant & Eisenhofer as lead counsel, is widely considered the landmark on the standards applicable to lead plaintiff/lead counsel practice under the PSLRA; and the case, *Gluck, et al. v. Cellstar*, resulted in a class recovery of approximately 56% of the class' actual losses, which was four times the historical average gross recovery for securities fraud litigation.

Mr. Grant's more recent securities litigation representations include:  *In re Delphi Corp Securities Litigation*, which resulted in settlement agreements totaling more than $325 million from Delphi Corp, its directors and officers insurance and the company's auditor Deloitte & Touche;  *In re Parmalat Securities Litigation*, which resulted in a settlement of approximately $90 million in what the SEC described as "one of the largest and most brazen financial frauds in history;" *In re Refco Inc. Securities Litigation*, which resulted in a $400 million settlement; and *In re Safety-Kleen Securities Corporation Bondholders Litigation*, which, after a six-week securities class action jury trial, resulted in judgments holding the company's CEO and CFO jointly and severally liable for nearly $200 million and settlements with the remaining defendants for $84 million.

Mr. Grant is a frequent speaker at the Practising Law Institute, the Council of Institutional Investors, the Australian Council of Super Investors and several other securities fora across the globe. Mr. Grant has authored a number of articles and published writings. His articles have been cited with approval by the U.S. Supreme Court, U.S. Court of Appeals for the 2nd and 5th Circuits and numerous U.S. District Courts. Mr. Grant's articles include, among others, "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is so Fraught With Uncertainty That They May be Void for Vagueness"; "Class Certification and Section 18 of the Exchange Act";  "*Unisuper v. News Corporation*: Affirmation that Shareholders, Not Directors, Are the Ultimate Holders of Corporate Power"; "Executive Compensation:  Bridging the Gap Between What Companies Are Required to Disclose and What Stockholders Really Need to Know"; and a number of annual PLI updates under the heading of "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act."

Mr. Grant serves as a member of the Advisory Board of the Weinberg Center for Corporate Governance at the University of Delaware.  Mr. Grant joined the Widener University School of Law faculty as an Adjunct Professor of Law in 1994, where he leads a securities litigation seminar for third-year law students. Mr. Grant is a Certified Teacher for the National Institute of

Trial Advocacy (NITA).  Additionally, he has taught at PricewaterhouseCoopers University of Delaware Directors' College.

Mr. Grant graduated in 1982 *cum laude* from Brandeis University with a B.A. in Economics and received his J.D. from New York University School of Law in 1986. He served as Law Clerk to the Honorable Naomi Reice Buchwald in the United States District Court for the Southern District of New York. Prior to forming Grant & Eisenhofer, Mr. Grant was a partner at Blank, Rome, Comisky & McCauley (1994-97) and an associate at Skadden, Arps, Slate, Meagher & Flom (1987-94).

**Michael J. Barry**

Michael Barry is a director at G&E. His practice focuses on corporate governance and securities litigation. He also advises clients on SEC matters. As a foremost practitioner in these areas, Mr. Barry has been significantly involved in groundbreaking class action recoveries, corporate governance reforms and shareholders rights litigation.

Mr. Barry has been instrumental in landmark corporate governance cases, including *AFSCME v. AIG*, where the Court of Appeals for the Second Circuit recognized the right of shareholders to introduce proxy access proposals; *Bebchuk v. CA, Inc.*, which opened the door for shareholders to introduce proposals restricting the ability of boards to enact poison pills; and *CA, Inc. v. AFSCME*, an historic 2008 decision of the Supreme Court of Delaware regarding the authority of shareholders to adopt corporate bylaws. Mr. Barry's case work also includes, among others, *In re Global Crossing Ltd. Securities Litigation*, which resulted in a $450 million settlement; a well-publicized derivative litigation action challenging the terms of the Caremark Rx, Inc. and CVS merger that resulted in a $3.2 billion settlement; and litigation between the Chicago Board of Trade and the Chicago Mercantile Exchange, which produced a $485 million settlement. Each of these cases resulted in substantial reforms to the terms of merger agreements to provide increased consideration and structural benefits to shareholders.

Mr. Barry has spoken widely on corporate governance and related matters. In addition to serving as a frequent guest lecturer at Harvard Law School, he speaks at numerous conferences each year. Mr. Barry has authored numerous published writings, including the *Shareholder Activism Handbook*, a comprehensive guide for shareholders regarding their legal rights as owners of corporations, which he co-authored.

Prior to joining G&E, Mr. Barry practiced at a large Philadelphia-based firm, where he defended the Supreme Court of Pennsylvania, the Pennsylvania Senate and Pennsylvania state court judges in a variety of trial and appellate matters. He is a 1990 graduate of Carnegie Mellon University and graduated *summa cum laude* in 1993 from the University of Pittsburgh School of Law, where he was an Executive Editor of the *University of Pittsburgh Law Review* and a member of the Order of the Coif.

**Daniel L. Berger**

Daniel Berger is a director with Grant & Eisenhofer.  Prior to joining the firm, Mr. Berger was a partner at two major plaintiffs' class action firms in New York, including Bernstein Litowitz

Berger & Grossmann, where he litigated complex securities and discrimination class actions for twenty two years.

While at BLBG, Mr. Berger tried two 10b-5 securities class actions to jury verdicts, among the very few such cases ever tried. He served as principal lead counsel in many of the largest securities litigation cases in history, achieving successful recoveries for classes of investors in cases including *In re Cendant Corp. Securities Litigation* (D. N.J.) ($3.3 billion); *In re Lucent Technologies, Inc. Securities Litigation* (D. N.J.) ($675 million); *In re Bristol-Myers Squibb Securities Litigation,* (S.D.N.Y.) ($300 million); *In re Daimler Chrysler A.G. Securities Litigation,* (D. Del.) ($300 million); *In re Conseco, Inc. Securities Litigation,* (S.D. Ind.) ($120 million); *In re Symbol Technologies Securities Litigation,* (E.D.N.Y.) ($139 million); and *In re OM Group Securities Litigation,* (N.D. Ohio) ($92 million.)

Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott,* 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.,* 919 F.2d 290 (5th Cir. 1990.) In addition, Mr. Berger was lead class counsel in several important discrimination class actions, in particular *Roberts v. Texaco, Inc.* (S.D.N.Y.), where he represented African-American employees of Texaco and achieved the then largest settlement ($175 million) of a race discrimination class action.

Mr. Berger currently serves on the editorial board of Securities Law360. He was a member of the Board of Managers of Haverford College from 2000-2003 and currently serves on the Board of Visitors of Columbia University Law School. He also served on the Board of inMotion, Inc., a non-profit organization providing legal services to victims of domestic violence, for six years, and currently is the Vice President of the Madison Square Park Conservancy.

## Cynthia A. Calder

Cynthia Calder is a director at Grant & Eisenhofer. She concentrates her practice in the areas of corporate governance and securities litigation. She has represented shareholders in such seminal cases in the Delaware Court of Chancery as *UniSuper Ltd. v. News Corp.*, vindicating the shareholders' right to vote; *Carmody v. Toll Brothers*, finding the dead-hand poison pill defensive measure was illegal under Delaware law, *Jackson National Life Insurance Co. v. Kennedy*, breaking new ground in the interpretation of fiduciary duties owed to preferred shareholders; *Haft v. Dart Group Corp.*, resolving a contest for control of a significant public corporation; and *Paramount Communications Inc. v. QVC Network*, obtaining an injunction preventing the closing of a merger to force the board of directors to appropriately consider a competing bid for the corporation.  More recently, Ms. Calder prosecuted a shareholder derivative suit on behalf of American International Group, Inc. against the company's former CEO, Maurice Greenberg, and other former AIG executives.  The action was concluded for a settlement of $115 million – the largest such settlement in the history of the Delaware Court of Chancery.  Ms. Calder was also the Court-appointed representative on the shareholder counsel's committee in the *UnitedHealth Group* derivative litigation, which was settled for more than $900 million – the largest known derivative settlement in any court system.  Ms. Calder also recently prosecuted a shareholder class action, *In re ACS Shareholder Litigation*, which resulted in one of the largest class recoveries in the history of the Court of Chancery.

Ms. Calder graduated *cum laude* from the University of Delaware in 1987 and graduated from the Villanova University School of Law in 1991. Upon graduating from law school, Ms. Calder served as a Judicial Law Clerk in the Delaware Court of Chancery to the Honorable Maurice A. Hartnett, III. Prior to joining Grant & Eisenhofer, Ms. Calder was an associate at Blank Rome LLP. She is a member of the Delaware Bar Association.

Ms. Calder has co-authored numerous articles on corporate governance and securities litigation, including "Options Backdating from the Shareholders' Perspective" Wall Street Lawyer, Vol. 11, No. 3;  "Securities Litigation Against Third Parties: Pre-Central Bank Aiders and Abettors Become Targeted Primary Defendants" Securities Reform Act Litigation Reporter, Vol. 16, No. 2; and "Pleading Scienter After Enron: Has the World Really Changed?" Securities Regulation & Law, Vol. 35, No. 45.

**Robert G. Eisler**

Robert Eisler is a director in the firm's antitrust practice group. Mr. Eisler has been involved in many of the most significant antitrust class action cases in recent years, and has frequently served as court-appointed lead or co-lead counsel.  He is experienced in numerous industries, including pharmaceuticals, paper products, construction materials, industrial chemicals, processed foods, municipal securities, and consumer goods.

Mr. Eisler has served as lead or co-lead counsel in many of the largest antitrust cases litigated in recent years, including, *In re Buspirone Antitrust Litigation*, (which led to a $90 million settlement and in which presiding Judge Koeltl stated that the plaintiffs' attorneys had done "a stupendous job"), *In re Ciprofloxacin Hydrochloride Antitrust Litigation, In re Flat Glass Antitrust Litigation*, *In re Municipal Derivatives Antitrust Litigation*, and *In re Chocolate Confectionary Antitrust Litigation*.

Mr. Eisler has played major roles in a number of other significant antitrust cases, including *In re Linerboard Antitrust Litigation*, *In re Aftermarket Filters Antitrust Litigation*, and *In re Publication Paper Antitrust Litigation.*

Mr. Eisler also has extensive experience in securities, derivative, complex commercial and class action litigation at the trial and appellate levels. He has been involved in numerous securities and derivative litigation matters on behalf of public pension funds, municipalities, mutual fund companies and individual investors in state and federal courts.

**Keith M. Fleischman**

Keith Fleischman is a director at Grant & Eisenhofer, focusing on high profile securities litigation cases. Mr. Fleischman is a nationally recognized litigator and trial lawyer with over 20 years of experience, including serving as a prosecutor in the Investigations and Major Offense Bureau of the Bronx District Attorney's Office, a trial attorney in the Fraud Section of the U.S. Department of Justice, an Assistant United States Attorney in the U.S. Attorney's Office and at large plaintiffs firms.

Mr. Fleischman has served as lead or co-lead counsel and on the executive committee for many notable and successful litigations, including America Online, Ann Taylor, Motorola, Aetna, John Hancock, Bell South and Taser, which collectively resulted in hundreds of millions of dollars in settlements to the respective classes.  Most recently, Mr. Fleischman was co-lead counsel in the Marsh Securities Litigation which resulted in a $400 million settlement to the class. In 1995, Mr. Fleischman was plaintiffs' chief trial counsel in *Robbins v. Koger Properties, Inc.,* in which a federal jury found Deloitte & Touche liable for securities violations and awarded the class over $80 million after a month-long trial. Mr. Fleischman also successfully argued before the Second Circuit the case of *Novak v. Kasaks*, the precedent–setting decision regarding the pleading standard and disclosure of confidential informants under the Private Securities Litigation Reform Act (PSLRA).

During his eight years as prosecutor, Mr. Fleischman tried numerous cases to verdict and served as chief trial counsel in *United States v. Cheng & Heath*, one of the largest savings and loan prosecutions successfully brought by the federal government.  Additionally, he served as a trial practice instructor for the Attorney General's Advocacy Institute, U.S. Department of Justice, as a member of the Dallas and New England Bank Fraud Task Force, and as a member of the Connecticut Bank Fraud Working Group. Mr. Fleischman has received awards from the Director of the FBI and the Attorney General for his work on behalf of the Justice Department.

Mr. Fleischman received his B.A. from the University of Vermont in 1980 and a J.D. from California Western School of Law in 1984.  He has been recognized by both Super Lawyers and Lawdragon.  For the past ten years, Mr. Fleischman has served as the co-chairman of the Practising Law Institute's Annual Conference on Class Actions and lectures in the United States and abroad on the investigation, litigation and prevention of securities fraud.

**Reuben A. Guttman**

Reuben Guttman is a Director at Grant & Eisenhofer. His practice involves complex litigation and class actions.  He has represented clients in claims brought under the federal False Claims Act, securities laws, the Price Anderson Act, Department of Energy (DOE) statutes and regulations, the WARN Act, RICO and various employment discrimination, labor and environmental statutes. He has also litigated and/or tried claims involving fraud, breach of fiduciary duty, antitrust, business interference and other common law torts.

Mr. Guttman has been counsel in some of the largest recoveries under the Federal False Claims Act, including *U.S. ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528 (ED Tex. 1999), where over $300 million were recovered from the oil industry. He also represented one of the six main whistleblowers in litigation resulting in the government's September 2009, $2.3 billion settlement with Pfizer Pharmaceutical.  Litigation brought by Mr. Guttman under the False Claims Act on behalf of a European whistleblower resulted in a $13 million settlement with a Department of Defense contractor.

Mr. Guttman also served as lead counsel in a series of cases resulting in the recovery of more than $30 million under the Federal Fair Labor Standards Act. Litigation brought by Mr. Guttman on behalf of nuclear weapons workers at "Manhattan Project" nuclear weapons sites resulted in

congressional oversight and changes in procurement practices affecting the nation's nuclear weapons complex. In addition, he served as lead counsel in litigation brought on behalf of prison workers in the District of Columbia, which resulted in injunctive relief protecting workers against exposure to blood-borne pathogens. Mr. Guttman served as lead counsel in a mediation before the United States Equal Employment Opportunity Commission, resulting in work place standards and back pay for minority employees at a large Texas oil refinery.

Mr. Guttman is the author and/or editor of numerous articles and technical publications. He is co-author of Gonzalez v. Hewitt, a case file published by the Emory University Law School Center for Advocacy and Dispute Resolution (2010) and used to train law students and practicing attorneys. He has appeared on *ABC Nightly News* and CNN, and has been quoted in major publications including *The Wall Street Journal, The Washington Post, The Los Angeles Times, The Atlanta Journal-Constitution, USA Today, Houston Chronicle, Dallas Morning News* and national wire services including the Associated Press and Reuters.

In addition to his writings, Mr. Guttman has testified before committees of the United States House of Representatives and the United States Senate on the Asbestos Hazard Emergency Response Act (AHERA). In 1992, he advised President-elect Clinton's transition team on labor policy and worker health and safety regulation.

Mr. Guttman earned his law degree at Emory University Law School (1985) and his Bachelor's Degree from the University of Rochester (1981). He is a faculty member at the Emory University School of Law Edison-Kessler Trial Advocacy Program where he Co-Chairs the Advisory Board for the Center for Advocacy and Dispute resolution. Mr. Guttman is a faculty member of the National Institute of Trial Advocacy. He has been a guest lecturer at a number of universities including Jao Tong University in Shanghai, Peking University in Beijing and Renmin University in Beijing. In 2006 he was invited by the Dutch Embassy in China to share his expertise with experts in China about changes to the nation's labor laws.  He is a Co-Founder of Voices for Corporate Responsibility, www.voicesforcorporateresponsibility.com, and founder of www.whistleblowerlaws.com and www.thecorporateinsider.com.

**Stephen G. Grygiel**

Stephen Grygiel, a director with Grant & Eisenhofer, focuses his practice on complex securities, corporate governance and third party payor pharmaceutical cost-recovery cases. Mr. Grygiel has litigated and tried a variety of shareholder dissolution and shareholders' rights actions, adversary proceedings in bankruptcy court, and other corporate and commercial matters. He has litigated issues concerning the validity of stock issued in private companies, minority shareholders' rights under statutes, by-laws and contracts, valuations and requisite consideration for founders' stock, minority discounts and control premiums for valuation purposes, the interplay of security interests and stock ownership rights, secured party seizures of stock, and a bankruptcy estate's ownership of funds fraudulently obtained from banks through a sophisticated check-kiting scheme. Mr. Grygiel has also litigated private cost recovery actions under CERCLA, representing plaintiffs in the *Laurel Park Coalition v. Goodyear* (Connecticut) and *Hanlin v. IMC* (Maine) cases.  Having written and contributed to articles addressing private cost recovery

actions and the intersection of CERCLA and common law rights of action, he has also lectured on those topics to industry professionals.

Mr. Grygiel, who is rated AV by Martindale Hubbell, graduated *magna cum laude* in 1979 from Hamilton College where he was elected to Phi Beta Kappa and won other honors and academic awards.  He graduated from Harvard Law School in 1986.  Following law school, Mr. Grygiel clerked for the Chief Justice of Maine's Supreme Judicial Court.

## Geoffrey C. Jarvis

Geoffrey Jarvis, a director with Grant & Eisenhofer, focuses on securities litigation for institutional investors. He had a major role in the Oxford Health Plans Securities Litigation and the DaimlerChrysler Securities Litigation, both of which were among the top ten securities settlements in U.S. history at the time they were resolved. Mr. Jarvis also has been involved in a number of actions before the Delaware Chancery Court, including a Delaware appraisal case that resulted in a favorable decision for the firm's client after trial.  At the present time, he has primary responsibility for a number of cases in which Grant & Eisenhofer clients have opted-out of class actions and also has a lead role in class actions pending against Tyco, Alstom and Sprint.

Mr. Jarvis received a B.A. in 1980 from Cornell University, where he was elected to Phi Beta Kappa. He graduated *cum laude* from Harvard Law School in 1984. Until 1986, he served as a staff attorney with the Federal Communications Commission, participating in the development of new regulatory policies for the telecommunications industry. He then became an associate in the Washington office of Rogers & Wells, principally devoted to complex commercial litigation in the fields of antitrust and trade regulations, insurance, intellectual property, contracts and defamation issues, as well in counseling corporate clients in diverse industries on general legal and regulatory compliance matters. Mr. Jarvis was previously associated with a prominent Philadelphia litigation boutique and had first-chair assignments in cases commenced under the Pennsylvania Whistleblower Act and in major antitrust, First Amendment, civil rights, and complex commercial litigation, including several successful arguments before the United States Court of Appeals for the Third Circuit.

Mr. Jarvis authored "State Appraisal Statutes: An Underutilized Shareholder Remedy," *The Corporate Governance Advisor*, May/June 2005, Vol. 13, #3, and co-authored with Jay W. Eisenhofer and James R. Banko, "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, August 2004.

## John C. Kairis

John Kairis is a director at Grant & Eisenhofer. He represents institutional investors in class action litigation, individual "opt-out" securities litigation and derivative and corporate governance litigation in the Delaware Chancery Court and other courts throughout the country. Mr. Kairis has been a leader of G&E teams that have achieved landmark results for clients, including some of the largest recoveries in securities class action history. He is currently representing British pension fund Hermes Focus Asset Management Europe Ltd. and other purchasers of Parmalat Finanziaria securities in a securities class action against Parmalat. He is

also representing Teachers' Retirement System of Louisiana in a securities class action against Hollinger International, Inc. and its officers, directors and auditors. He represented Stichting Pensioenfonds ABP, the pension fund for government and education authorities in the Netherlands, in an opt-out action against AOL Time Warner, its officers and directors, auditors, investment bankers and business partners.

Mr. Kairis has achieved significant corporate governance improvements for G&E's institutional investor clients, as in the agreement by HealthSouth Corporation to replace its conflicted directors with independent directors approved by a committee including the institutional investor plaintiff.  The groundwork for this case was established through Mr. Kairis's successful prosecution of a books and records case under Section 220 of the Delaware General Corporation Law, which resulted in HealthSouth disclosing documents they had previously refused to produce. Mr. Kairis has mediated and obtained favorable settlements for G&E clients in both major securities cases, including *Wyser-Pratte Management Co. v. Telxon Corp.*, and consumer class actions involving unfair competition and false marketing claims against both Johnson & Johnson and Bausch and Lomb.

Mr. Kairis graduated from the University of Notre Dame in 1984 and received his J.D. in 1987 from the Ohio State University School of Law, where he served as Articles Editor for the Law Review and received the American Jurisprudence Award and the John E. Fallon Memorial Award for scholastic achievement.  He authored "Challenging Mis-representations in Mergers: You May Have More Time Than You Think," *Andrews Litigation Reporter*, Vol. 12, Issue 3, June 14, 2006. He is a member of the Delaware and American Bar Associations and the Delaware Trial Lawyers Association. Mr. Kairis has served on the boards of several nonprofit organizations, including the West-End Neighborhood House, Inc. and the Cornerstone West Development Corporation. He has also served on the Delaware Corporation Law Committee, where he evaluated proposals to amend the Delaware General Corporation Law.

**Megan D. McIntyre**

Megan McIntyre is a director at Grant & Eisenhofer, practicing in the areas of corporate, securities and complex commercial litigation. Among other work, she has represented institutional investors, both public and private, in corporate cases in the Delaware Court of Chancery as well as in securities class actions in federal courts throughout the country that have resulted in significant recoveries. She was a member of the trial team in *In re Safety-Kleen Corp. Bondholders Litigation*, which ended in settlements and judgments totaling approximately $280 million after six weeks of trial in the Spring of 2005. In 2006, she was a member of the litigation team in the landmark case of *UniSuper Ltd. v. News Corporation*, where the Delaware Court of Chancery ruled that shareholders may contractually limit directors' authority without amending the certificate of incorporation. Ms. McIntyre has successfully represented clients in obtaining access to corporate proxy statements for the purpose of presenting proposed shareholder resolutions and has brought and defended actions seeking to enforce shareholders' rights to inspect corporate books and records pursuant to the statutory authority of Section 220 of the Delaware General Corporation Law. She was also the principal author of the firm's amicus curiae brief on behalf of the Council of Institutional Investors (CII), filed in the Delaware Supreme Court in the Walt Disney derivative litigation, urging the Court's adoption as Delaware

law of the CII's standards or criteria for determining director "independence." She had a lead role in class actions involving Refco and Able Laboratories, in shareholder derivative actions involving Tyson Foods and Cablevision. At present, she has a lead role in class actions involving Refco and Genzyme, in a shareholder derivative action involving AIG, and in several cases on behalf of clients who have opted out of securities class actions to pursue individual actions.

Ms. McIntyre has appeared as a guest on CNBC's "On the Money," and has authored or co-authored a number of articles involving issues of Delaware corporate law and the federal securities laws, including "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is So Fraught With Uncertainty That They May Be Void for Vagueness," 1505 PLI/Corp 83 (Sept. 2005); "Class Certification and Section 18 of the Exchange Act," The Review of Securities and Commodities Regulation, Vol. 35, No. 21, *Standard & Poor's* (Dec. 2002); "The Statutory Right of Inspection: An Important But Often Overlooked Tool," *Corporate Governance Advisor*, Vol. 9, No. 2 (May/June 2001); and "Causes of Action Available to Investors Under Delaware Law, Parts I and II," *Insights* (Oct. 1996; Nov. 1996).

Ms. McIntyre graduated from The Pennsylvania State University in 1991 and graduated *magna cum laude* in 1994 from The Dickinson School of Law, where she was an Articles Editor for the *Dickinson Law Review*. Ms. McIntyre is a member of the Delaware State Bar Association. Prior to joining Grant & Eisenhofer, she was associated with the Wilmington offices of both Skadden, Arps, Slate, Meagher & Flom, LLP and Blank, Rome, Comisky & McCauley, in their respective litigation departments.

**Linda P. Nussbaum**

She was selected "Litigator of the Week" by the *AmLaw Litigation Daily* on April 2, 2010 for her role in the trial of *Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals v. Pfizer*. Linda Nussbaum is a director at Grant & Eisenhofer. Ms. Nussbaum is nationally recognized for her representation of class and individual litigants in antitrust and pharmaceutical litigation. Her experience prior to Grant & Eisenhofer was as sole or co-lead counsel in many significant antitrust class actions which have resulted in substantial recoveries, many in the realm of hundreds of millions of dollars: *In re Microcrystalline Cellulose Antitrust Litigation; Oncology & Radiation Associates, P.A. v. Bristol-Myers Squibb Co., et al. (Taxol Antitrust Litigation); North Shore Hematology-Oncology Associates, P.C. v.Bristol-Myers Squibb Co. (Platinol Antitrust Litigation); In re Children's Ibuprofen Oral Suspension Antitrust Litigation; In re Relafen Antitrust Litigation; In re Plastics Additives Antitrust Litigation; In re Remeron Antitrust Litigation; Meijer, et al. v. Warner Chilcott Holdings Company, III, Ltd., et al. (Ovcon Antitrust Litigation)*; and *In re Lorazepam & Clorazepate Antitrust Litigation.*

Current cases in which Ms. Nussbaum serves as lead counsel include *In re Puerto Rican Cabotage Antitrust Litigation; In re DDAVP Direct Purchaser Antitrust Litigation; In re Photochromic Lens Antitrust Litigation; In re Wellbutrin XL Antitrust Litigation; Meijer, Inc., et al. v. Astrazeneca Pharmaceuticals LP, et al* (Torprol Antitrust Litigation); and *Meijer, Inc., et al. v. Abbott Laboratories* (Norvir Antitrust Litigation). In addition, she represented large

corporate entities in individual actions in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*; *In re Neurontin Marketing and Sales Practices Litigation; In re Chocolate Confectionary Antitrust Litigation*; and *CVS Pharmacy v. American Express Travel Related Services, et al.*

Ms. Nussbaum has lectured and written extensively about various aspects of antitrust law. Her articles include: "The Evolving Challenges of Class Certification" presented at the American Antitrust Institute's Third Annual Symposium on Private Antitrust Enforcement on December 8, 2009; "Daubert 15 Years Later: How Have Economists Fared?" presented at the ABA Section of Antitrust Law Spring Meeting in March 2009; and "The Hatch-Waxman Act 25 Years Later: Successes, Failures and Prescriptions for the Future," presented at a panel on "Lawyers, Drugs and Money, a Prescription for Antitrust Enforcement in the Pharmaceutical Industry" at the University of San Francisco School of Law Antitrust Symposium on September 25, 2009. Ms. Nussbaum is a member of the Advisory Board of the American Antitrust Institute.

Ms. Nussbaum obtained her J.D. from George Washington University and a LL.M. degree in taxation from New York University School of Law.

**James J. Sabella**

James Sabella is a director at Grant & Eisenhofer. He has over thirty years of experience in complex civil litigation, including representing plaintiffs and defendants in class and derivative actions involving trial and appellate work in state and federal courts. He has substantial experience in securities litigation and litigation involving claims against accounting firms and underwriters. He has also handled antitrust litigation and cases involving the fiduciary obligations of trustees under state law.

Prior to joining Grant & Eisenhofer, Mr. Sabella practiced for twenty-eight years at several large Manhattan law firms, most recently as a partner in Sidley, Austin, Brown & Wood LLP, where his practice focused largely on accountants' liability defense, including the defense of actions alleging securities law violations and professional malpractice as well as grand jury investigations and investigations by the American Institute of Certified Public Accountants.

Mr. Sabella is a 1976 graduate of Columbia Law School, where he was a member of the Board of Directors of the *Columbia Law Review*. He received a B.A. *summa cum laude* from Columbia College in 1972 and a B.S. in 1973 from the Columbia School of Engineering, where he was valedictorian.

**Mary S. Thomas**

Mary Thomas is a director at G&E.  Ms. Thomas spent twelve years practicing business litigation with two of Los Angeles' leading law firms before joining Grant & Eisenhofer in 2006. Her experience prior to Grant & Eisenhofer includes trade secret and intellectual property matters, contract actions, employment defense, consumer class action defense, insurance disputes and environmental matters.

At Grant & Eisenhofer, Ms. Thomas has represented institutional investors in class action securities and shareholder derivative litigation.  Ms. Thomas graduated *magna cum laude* from Harvard Law School in 1994 and *magna cum laude* from the University of Delaware in 1991.

She served as a volunteer arbitrator for the L.A. County Bar Association and as a volunteer mediator for the L.A. Superior Court and now serves as a volunteer guardian *ad litem* through Delaware's Office of the Child Advocate.  Ms. Thomas co-authored "California Wage and Hour Laws" (published by the National Legal Center for the Public Interest, January 2005). She was also one of several authors of the 10th and 11th editions of the *California Environmental Law Handbook*.

## William A.K. Titelman

William Titelman is a director at G&E.  His practice focuses on plaintiff's securities litigation, representing public pension funds, union and Taft-Hartley funds.  Prior to joining G&E, Mr. Titelman spent more than six years as a partner in a New York based plaintiffs' securities litigation firm.

He has been actively involved in government, law and public policy throughout his career.  Mr. Titelman is actively involved in *In re Fannie Mae Securities Litigation*, *In re Royal Dutch/Shell Transport Securities Litigation*, *In re Marsh & McLennan Companies, Inc. Securities Litigation*, *In re Cigna Corp. Securities Litigation*, and *In re HealthSouth Stockholder Litigation.*  He organized and served as counsel for Amici Curiae states and public pension funds in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, No. 06-43, and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, No. 06-484, both before the United States Supreme Court, and *In re Dynex Capital Securities Litigation*, No. 06-2902-cv, before the Second Circuit.   The briefs in these three cases were filed on behalf of eight states and five public pension funds concerning critical issues of investor protection and securities litigation.

Mr. Titelman began his career in the early 1970's serving in several key positions in Pennsylvania state government, including Director of Motor Vehicles and Special Assistant to the Governor for Government Management. After graduating from The Dickinson School of Law in 1980, Mr. Titelman led the Pennsylvania Trial Lawyers Association for nearly a decade in its efforts to protect and expand individual rights, including shareholder rights, and drafted key provisions of Pennsylvania's automobile insurance and consumer safety laws. Subsequently, he became a partner at a leading Pennsylvania law firm, where he served on the firm's Board of Directors and chaired both its Harrisburg office and its Administrative Law and Government Affairs Practice Group.  One of his major clients was the Pennsylvania Public School Employees' Retirement System (PSERS).

In 1988, Mr. Titelman led the successful enactment of a new Pennsylvania Business Corporation Law. From 1989 to 1990, he led a national campaign organizing major public pension funds and other institutional investors, shareholder rights activists, former SEC Commissioners, leading economists and deans of business and law schools to oppose and successfully amend Pennsylvania Senate Bill 1310. *The Wall Street Journal* described this legislation as the most

onerous anti-shareholder, management-protection bill ever proposed in the United States.  Mr. Titelman served as General Counsel to both the Pennsylvania Public School Building and Higher Educational Facilities Authorities.  He went to serve on as Executive Vice President of Managed Care and Public Affairs at Rite Aid Corporation, where he suffered substantial losses as a victim of one of the nation's largest securities frauds.  He subsequently brought and settled an individual action for securities fraud against Rite Aid.

## Jeff A. Almeida

Jeff Almeida is senior counsel at Grant & Eisenhofer P.A. practicing in the areas of corporate, securities and complex commercial litigation.  Mr. Almeida has represented domestic and foreign institutional investors in prominent securities fraud actions including, *In re Qwest Comms. Int'l Securities Litigation* (D. Colo); *In re Alstom SA Securities Litigation* (S.D.N.Y.); *In re Refco Inc. Securities Litigation* (S.D.N.Y.); *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* (D.N.J); *In re Pfizer Inc. Securities Litigation* (S.D.N.Y.); and *In re Global Cash Access Holdings Securities Litigation* (D. Nev.).  Mr. Almeida has also been actively engaged in derivative and class litigation in the Delaware Court of Chancery, including the matters *In re Tyson Foods, Inc.*, which resulted in historic rulings clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans; *Louisiana Police Employees Retirement System v. Crawford* ("*Caremark*"), a well-publicized derivative action challenging the terms of the Caremark and CVS merger that resulted in a $3.2 billion settlement; and *In re Genentech Inc. Shareholder Litigation*, where he successfully represented Genentech minority stockholders against Roche's heavy-handed attempt to squeeze out the minority to seize control of Genentech.  In recent years, Mr. Almeida has also represented prominent hedge fund clients in complex commercial litigation involving claims of short-squeeze market manipulation and the marketing and sale of abusive tax shelters.

Prior to joining Grant & Eisenhofer in August 2004, Mr. Almeida was affiliated for seven years as an attorney with a major Philadelphia defense firm, where he practiced in the areas of complex commercial litigation, with a focus on consumer class actions, commercial contract disputes, insurance coverage and bad faith defense.

Mr. Almeida is a 1994 graduate of Trinity College in Hartford, Connecticut, where he captained the varsity basketball team and achieved election to Phi Beta Kappa, and a 1997 graduate of William and Mary Law School in Williamsburg, Virginia.  Mr. Almeida is admitted to practice in Delaware, Pennsylvania, and New Jersey, along with several federal district courts.

## Charles T. Caliendo

Charles Caliendo represents institutional investors in class action securities, opt-out and shareholder derivative litigation. Prior to joining G&E, he served as an Assistant Attorney General in the Investment Protection Bureau of the New York State Attorney General's Office where he prosecuted cases and led investigations related to mutual fund market timing and late trading. Mr. Caliendo practiced at a Manhattan-based law firm in the areas of class action securities, mergers and acquisitions, corporate governance and other commercial litigation.

Mr. Caliendo has written and spoken on issues relating to regulatory enforcement, corporate internal investigations and securities and shareholder litigation. In November 2004 and June 2006, Mr. Caliendo was a speaker at financial services industry seminars sponsored by The Association of the Bar of the City of New York for which he authored articles entitled "The Investment Protection Bureau:  An Overview of Financial Markets Regulation and Enforcement in New York" and "Thompson Memo Under A Microscope." In June 2005, Mr. Caliendo spoke before a delegation of Chinese mutual fund CEOs participating in the Penn-China Mutual Fund CEO Leadership Program, University of Pennsylvania Graduate School of Education. Mr. Caliendo co-authored "Who Says The Business Judgment Rule Does Not Apply To Directors Of New York Banks?" 118 *Banking Law Journal* 493 (June 2001) and "Board of Directors' 'Revlon Duties' Come Into Focus," *New York Law Journal*, vol. 222, no. 86, col. 1 (Nov. 1, 1999).

Mr. Caliendo received his B.S. from Cornell University and J.D. from St. John's University School of Law where he was an editor of the *St. John's Law Review* and a Saint Thomas More Scholar.

## John D. Radice

John Radice is senior counsel with Grant & Eisenhofer.  Mr. Radice practices in the areas of antitrust focusing on pharmaceutical antitrust, False Claims Act, and other areas of complex civil litigation.

His representative cases include: *In re Tricor Direct Purchaser Antitrust Litigation (w*hich yielded *a* $250 million settlement after the start of trial in case alleging delayed entry of AB-rated generic versions of Tricor); *In re Neurontin Marketing & Sales Litigation (*resulting in a $47 million jury verdict before interest and statutory trebling based on unlawful and fraudulent promotion of Neurontin); *United States ex rel. Piacentile v. Bristol-Myers Squibb Co.* (resulting in $515 million settlement related to unlawful promotion of Abilify); *United States ex rel. Marchese v. Cell Therapeutics, Inc.* (resulting in $10.5 million settlement stemming from unlawful marketing of Trisenox).

Prior to joining the firm, John was associated with major plaintiffs' class action firms in New York and Philadelphia, where he represented clients pursuing antitrust, False Claims Act, and international human rights cases.  He has published numerous articles including "Where do we go now? The Hatch-Waxman Act 25 Years Later: Successes, Failures, and Prescriptions for the Future" published in the Rutgers Law Journal; "The False Claims Act: A Public-Private Partnership" in Volume II, in AAJ 2009 Annual Convention: AAJ Education Reference Materials 1497 (Jennifer Adams ed., 2009); and "Daubert and Rule 702 in the Context of Antitrust Economic Experts: A Practitioner's Guide," Daubert 15 Years Later: How Have Economists Fared (ABA Spring Meeting 2009).

Mr. Radice obtained his J.D. from New York University School of Law and graduated *magna cum laude* from Princeton University with a B.A.   He clerked for Judge Edith Brown Clement in the U.S. District Court of Appeals for the Fifth Circuit in New Orleans following his graduation from law school. Through the Arthur Garfield Hays Civil Liberties Program at NYU Law, where he was a Palmer Weber Fellow, John pursued internships at the NAACP Legal Defense &

Education Fund, the ACLU, and a prominent civil rights law firm. At Princeton, John was a member of the lightweight crew team. Together with Dr. Lee Shearer, John founded and is president of Insicknessandinhealth.org, a non-profit dedicated to promoting health and well-being in underserved communities.

**Ralph N. Sianni**

Mr. Sianni's practice involves complex commercial litigation, including securities, corporate governance and third-party payor pharmaceutical cost-recovery cases. He joined Grant & Eisenhofer from another leading national securities litigation firm, where he handled class action securities cases, and cases involving mergers and acquisitions, general corporate law and breach of fiduciary duties. His experience includes working with a team of lawyers who appealed a pro bono prisoners' civil rights case to the Supreme Court of the United States.

Mr. Sianni co-authored the article, "Is the Fix In? - Are Hedge Funds Secretly Disenfranchising Shareholders?," *Bloomberg Law Reports - Corporate Governance*, January 2005.

Prior to entering private practice, Mr. Sianni served as a Law Clerk to the Hon. Stephen J. McEwen, Jr., President Judge of Pennsylvania Superior Court. As a Legislative Intern for the American Civil Liberties Union of Pennsylvania, Mr. Sianni researched and wrote memoranda on First Amendment issues for the Pennsylvania legislature.

Mr. Sianni earned his law degree from the Boston University School of Law and his Masters degree in history from Yale University. He graduated *cum laude* with distinction in his major (history) from the University of Pennsylvania.

**Brenda F. Szydlo**

Brenda Szydlo focuses on securities litigation on behalf of institutional investors. Ms. Szydlo has more than twenty years of litigation experience in a broad range of matters.

Prior to joining Grant & Eisenhofer, Ms. Szydlo served as counsel in the litigation department of Sidley Austin LLP in New York, and its predecessor, Brown & Wood LLP, where her practice focused on securities litigation and enforcement, accountants' liability defense and general commercial litigation.

Ms. Szydlo is a 1988 graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review. She received a bachelor's degree in economics from Binghamton University in 1985.

**Hung G. Ta**

Hung Ta is a senior counsel in Grant & Eisenhofer's New York Office, where he focuses on securities litigation and shareholder derivative litigation on behalf of our institutional investor clients.

Prior to joining G&E, Mr. Ta spent more than six years as a litigation associate at a leading New York law firm, where he represented a considerable number of officers and other clients of the firm in securities litigation, white-collar defense work and regulatory investigations.  Mr. Ta also represented other clients of the firm in general commercial litigation matters involving bankruptcy, reinsurance, professional malpractice, mutual fund litigation and ERISA litigation.

Before coming to the United States, Mr. Ta completed his education in Australia, earning a degree in Finance from the University of New South Wales School of Commerce and his Law degree from the University of New South Wales School of Law.  After law school, Mr. Ta clerked with the Honorable Justice Gaudron of the High Court of Australia, Australia's ultimate appellate court.

## Diane Zilka

Diane Zilka is integral to Grant & Eisenhofer's successful efforts to prosecute securities fraud and corporate governance cases on behalf of U.S. and international clients in class and individual actions. She played a key role in achieving significant recoveries for funds managed by U.S. and international institutional investors in such cases as *Parmalat Securities Litigation and Styling Technology Corporation*, and on behalf of public pension funds in *Just For Feet Securities Litigation*, among others. Ms. Zilka was on the trial team in:  *Safety Kleen Bondholder Litigation*, which recovered more than $275 million in judgments and settlements on behalf of investors; *TRSL v. AIG* a derivative shareholder action which resulted in a $115 million settlement, the largest such settlement in the history of Delaware Chancery Court; and *In Re Appraisal of Metromedia Int'l Group, Inc.*, which was only the second appraisal action of preferred shares in the history of Delaware Chancery Court which resulted in a judgment against the company of more than $188 million.  In the corporate governance arena, Ms. Zilka has successfully defended clients before the SEC in "no-action" proxy proposal challenges, and has successfully represented clients in Chancery Court "books and records" actions. She has prosecuted numerous direct and derivative breach of fiduciary duty cases, litigating such cutting-edge issues as the propriety of including derivative securities in "poison pills." Ms. Zilka is a co-author with Stuart Grant of "The Role of Foreign Investors in Federal Securities Class Actions," 1442 PLI/CORP. 91 (2004) and "The Current Role Of Foreign Investors In Federal Securities Class Actions," 1620 PLI/Corp 11 (2007).

Ms. Zilka has concentrated her career in securities, corporate and complex commercial litigation. Before joining G&E, she was a partner in a New York City law firm and a member of its investor protection practice group.  Ms. Zilka also has extensive experience litigating other complex matters such as ERISA and bankruptcy, and she has represented investors in proceedings before the NYSE and the American Arbitration Association.

In her personal time, Ms. Zilka has volunteered with Literacy Volunteers Serving Adults and Big Brothers Big Sisters, and is on the Board of Panetiere Partners, a not-for-profit organization.  She serves as a New Castle County Co-Chair for the annual Combined Campaign For Justice which provides critical funding for Delaware's legal services agencies.

**Stephen K. Benjamin**

Stephen Benjamin brings to G&E an extensive career in law, business, politics, government and civic life. In January 1999, South Carolina Governor Jim Hodges appointed Mr. Benjamin to the Governor's Cabinet. The South Carolina Senate unanimously confirmed his appointment as Director of the South Carolina Department of Probation, Parole and Pardon Services, where he served as Chief Executive of the 950 employee, state law enforcement agency.

Prior to accepting his Cabinet appointment, Mr. Benjamin served as Regional Manager of Public Affairs for International Paper Company, where he managed the company's legislative and public affairs activities in South Carolina, North Carolina, Georgia and Virginia. Prior to joining International Paper, he was Manager of Corporate Affairs at Carolina Power & Light Company and served an Associate in the Administrative and Regulatory practice of the prominent McNair Law Firm in Columbia, South Carolina. He has also served as an assistant prosecutor in South Carolina's 4th Judicial Circuit.

The South Carolina Bar Association named Mr. Benjamin a co-recipient of the 2001 Young Lawyer of the Year and he is a recipient of the 2000 Compleat Lawyer Award given by the University of South Carolina School of Law. In 1999 the National Bar Association named him the National Young Lawyer of the Year and the University of South Carolina recognized him as Young Alumni of the Year. He is the recipient of the Lincoln C. Jenkins, Jr. Award given by the Columbia (SC) Urban League for accomplishments as a young professional and was featured as one of Ebony Magazine's 30 Leaders of the Future.

Mr. Benjamin's community leadership experience is extensive. He sits on the University of South Carolina School of Law Partnership Board, the Board of Directors of the USC Development Foundation, The Columbia Urban League, The Greater Columbia Chamber of Commerce and The South Carolina Chamber of Commerce. He serves as the Chair-Elect of the Midlands Education and Business Alliance and as a Statewide Co-Chair of Choose Children First.

Mr. Benjamin received his B.S. in political science from the University of South Carolina in 1991, and his J.D. from the University of South Carolina School of Law in 1994.

**Richard S. Schiffrin**

Richard S. Schiffrin, retired founding partner of Schiffrin Barroway Topaz & Kessler, LLP, has represented institutional investors and consumers in securities and consumer class actions worldwide.  He is licensed to practice law in Pennsylvania and Illinois and has been admitted to practice before numerous United States District Courts.  Mr. Schiffrin is a graduate of DePaul Law School and attended graduate school at the University of Chicago.  After protecting the civil rights of clients for seven years as an Assistant Public Defender with the Office of the Public Defender of Cook County, where he tried hundreds of cases, Mr. Schiffrin founded Schiffrin & Craig, Ltd., representing consumers and individual investors in actions brought against public companies.

Mr. Schiffrin has been recognized for his expertise in many prominent cases, including *In re Tyco International Ltd. Securities Litigation*, the most complex securities class action in history, which resulted in a record $3.2 billion settlement.  The $2.975 billion payment by Tyco represents the single largest securities class action recovery from a single corporate defendant in history, while the $225 million settlement with PricewaterhouseCoopers (PwC) represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history; *In re AremisSoft Corp. Securities Litigation*, a complex case involving litigation in four countries, resulting in a $250 million settlement providing shareholders with a majority of the equity in the reorganized company after embezzlement by former officers; *In re Tenet Healthcare Corp.*, resulting in a $216.5 million settlement and which led to several important corporate governance improvements; *Henry v. Sears, et al.*, one of the largest consumer class actions in history which resulted in a $156 million settlement distributed without the filing of a single proof of claim form by any class member; *Wanstrath v. Doctor R. Crants, et al.*, a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets to a private entity owned by company insiders, resulting in corporate governance reform in addition to the issuance of over 46 million shares to class members; *Jordan v. State Farm Insurance Company*, resulting in a $225 million settlement and other monetary benefits for current and former State Farm policy-holders; and *In re Sotheby's Holdings, Inc. Derivative Litigation*, resulting in a multi-million dollar settlement and significant governance changes.

Mr. Schiffrin is an internationally renowned speaker and lectures frequently on corporate governance and securities litigation.  His lectures include:  the MultiPensions Conference in Amsterdam, Netherlands; the Public Funds Symposium in Washington, D.C.; the European Pension Symposium in Florence, Italy; and the Pennsylvania Public Employees Retirement Summit (PAPERS) in Harrisburg, Pennsylvania.  Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and served as a faculty member at legal seminars, including the Annual Institute on Securities Regulation, NERA: Finance, Law & Economics - Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC): Ethical Issues in the Practice of Securities Law.

Mr. Schiffrin is well-known in his community for his philanthropic activities, including service on the Board of Directors of the Philadelphia Museum of Art and the Philadelphia Chapter of the ALS Association.  Mr. Schiffrin resides outside of Philadelphia with his wife and two sons.

**Abe Alexander**

Mr. Alexander is an associate at Grant & Eisenhofer. He earned his law degree Order of the Coif from the University of Colorado Law School in 2008, where he was member of the school's award-winning national moot court team.  Prior to joining Grant & Eisenhofer, Mr. Alexander clerked for Justice Michael L. Bender of the Colorado Supreme Court.

Mr. Alexander graduated *cum laude* from New York University in 2003 where he received his B.A. in Analytic Philosophy.

**Peter B. Andrews**

Peter Andrews is an associate with Grant & Eisenhofer.  Mr. Andrews' practice involves complex commercial litigation.  Mr. Andrews represents plaintiffs in a variety of matters, including securities class actions, consumer class actions, and Fair Labor Standards Act collective actions.  Mr. Andrews also represents whistleblowers in Federal False Claims Act litigation.

While at Grant & Eisenhofer, Mr. Andrews has, among others, represented investors against the directors and officers of a failed telecom company for breach of fiduciary duty in *Rahl v. Flag Telecom, Inc.*, S.D.N.Y; represented public pension funds in opt-out securities litigation against the officers and directors of *Enron*; represented former employees of a failed health system in order to secure promised interests in pension benefits (*Burstein v. Allegheny Health System,* E.D. PA); and represented a class of former customers against a major cable television provider in *Baldasarri v. Suburban Cable TV Co. (Comcast Corporation)*.  Mr. Andrews has also been actively engaged in litigation in the Delaware Court of Chancery in shareholder derivative and corporate governance cases such as *CALPERS v. Coulter et al., and Lone Star Steakhouse & Saloon Inc.*

Prior to joining Grant & Eisenhofer in 2004, Mr. Andrews was with a major Philadelphia defense firm where he represented securities brokers and broker-dealers in various disputes, including customer complaint litigation.  Mr. Andrews also represented clients in regulatory proceedings pursued by NYSE, NASD, and SEC, and advised clients as to best practices under federal and state insurance and securities regulations.

Mr. Andrews is a 1992 graduate of Colby College in Waterville, Maine, where he captained the Colby rugby team and a 1998 graduate of the Dickinson School of Law of the Pennsylvania State University.  Upon graduation from Dickinson, Mr. Andrews clerked for the Honorable Alan M. Black of the Court of Common Pleas of Lehigh County, Pennsylvania.

Mr. Andrews is admitted to practice in Delaware and Pennsylvania and numerous federal courts.

**Talyana T. Bromberg**

Talyana Bromberg focuses her practice on complex international and national securities fraud litigation. She previously served as a partner at a prominent law firm in Riga, Latvia, where she focused on commercial litigation and arbitration, real estate and property denationalization.  She also served as in-house counsel for a U.S.-Latvian joint venture in the exporting and manufacturing sector.

Ms. Bromberg received her LL.M. degree from the University of Pennsylvania Law School and her J.D. equivalent from the University of Latvia School of Law in Riga in 1989.  Following law school, Ms. Bromberg clerked for Latvia's Circuit Court Judge for Maskavas District of Riga.

**Traci L. Buschner**

A former state prosecutor, Traci Buschner has spent the last 13 years representing plaintiffs in complex litigation ranging from class actions to government contract fraud under federal and state false claims acts. She has been involved in multi-million dollar recoveries on behalf of workers under the Federal Fair Labor Standards Act and has served as counsel in False Claims actions, bringing tens of millions of dollars to the United States Government.  Ms. Buschner represented one of the six main whistleblowers in False Claims Act litigation against Pfizer, Inc., which resulted in the Government's recovery of $2.3 billion in 2009.

Ms. Buschner's practice has involved representation of some of the nation's largest labor unions and their members. Prior to joining Grant & Eisenhofer, she was an attorney with the Washington, DC office of one of the nation's largest personal injury and labor firms and also practiced with an Austin, Texas firm where she spear-headed litigation on behalf of victims of asbestos exposure.

On behalf of the Oil, Chemical & Atomic Workers International Union (OCAW), AFL-CIO, Ms. Buschner was actively involved in environmental litigation which led to Secretary of Energy, William Richardson, canceling a project to recycle radioactive nickel at the Oak Ridge, Tennessee K-25 Nuclear Weapons Complex. The documentation of her efforts to expose faulty government contracting at Department of Energy Nuclear weapons sites was published in The Environmental Forum, Volume 17, No. 6, November/December 2000.

**Michele S. Carino**

Michele Carino is an associate with Grant & Eisenhofer, focusing on securities and corporate governance litigation. Ms. Carino has experience in a variety of complex commercial cases, including matters involving securities, accountant liability, labor and employment, corporate governance, contracts and torts.

Ms. Carino graduated *magna cum laude* from Georgetown University Law Center in 1999 and received a Bachelor's degree in economics from the State University of New York at Binghamton in 1992. Ms. Carino is an adjunct professor at law at Columbia University School of Law, teaching a legal research and writing workshop for first year law students.

**Ananda N. Chaudhuri**

Ananda Chaudhuri received his law degree in 2005 from the University of Pennsylvania, where he was a member of the Journal of International Law and Policy and a member of the Film, Music & Media Society.  He received his B.A. in journalism and anthropology from New York University.  Mr. Chaudhuri's experience includes positions as a Summer Associate at Adkins, Kelston, Zavez, P.C. in Boston, and research and writing positions at Pennsylvania Employment Law Publishing (Philadelphia), *Self Magazine*, and *Working Woman* magazine in New York City.

**Deborah A. Elman**

Deborah Elman focuses on securities fraud and derivative cases at Grant & Eisenhofer.  Prior to joining Grant & Eisnhofer as an associate, Ms. Elman represented clients before the SEC and participated in numerous appearances before federal and state courts as an associate at Milbank, Tweed, Hadley & McCloy in New York.

Ms. Elman served as a law clerk for the Honorable William L. Standish, United States District Judge, in the United States District Court for the Western District of Pennsylvania, participating in all aspects of federal trial court practice.

Ms. Elman graduated *cum laude* in 2001 from the University of Pittsburgh School of Law, where she was Lead Executive Editor of the *Journal of Law and Commerce* and received the Horowitz Graduate Student Paper Prize, the  National Association of Women Lawyers Law Student Achievement Award and the School of Law Community Service Award. She received a Master of Public Health degree in 1997 from Columbia University, where she graduated *cum laude* with a Bachelor of Arts degree in 1995.

**Lydia Ferrarese**

Lydia Ferrarese focuses on securities litigation on behalf of institutional investors.  Ms. Ferrarese has represented sophisticated institutional investors in high-profile international securities fraud class action, *In re Parmalat Securities* Litigation, and her efforts contributed to the firm's successful settlement against financial institutions and Parmalat in that case.

Prior to joining Grant & Eisenhofer, Ms. Ferrarese (who received her initial law degree in Italy) served as a visiting attorney with several prominent law firms in New York, Boston and Los Angeles. She was also an Associate at international law firms in Milano and Bologna, Italy. Ms. Ferrarese drafted numerous agreements and opinions on corporate issues for major Italian and multi-national corporations, focusing on Mergers and Acquisitions.

Ms. Ferrarese received her LL.M. in Corporate, Banking and Finance Law at Fordham University School of Law in New York City, and her J.D. equivalent from the University of Bologna, Italy in 1993.  She was a contributing writer and editor of the "Guide for the Italian Importer to the United States" by Michael Doland, 2000, and editor of the articles, "Dissolution of a Corporation and Minority Shareholders' Rights" *Le Societa', Ipsoa*, May 2001 and "Rules on class actions: Comparative Analysis between the Italian Law and the U.S. Law, " *La Responsabilita' Civile, Utet*, August 2008.

**Shelly L. Friedland**

Shelly Friedland is an experienced litigator with over ten years of experience practicing both civil and criminal law. Prior to joining Grant & Eisenhofer, she practiced at a national class action firm, prosecuting antitrust cases on behalf of plaintiffs injured by price-fixing and illegal monopolistic practices. Previously, her general litigation practice included several securities-related matters, representing both corporate defendants and third-party plaintiffs.

Ms. Friedland is a *cum laude* graduate of Harvard Law School, where she was an Executive Editor of the Human Rights Law Journal.  She received her bachelor's degree from Columbia College, graduating *summa cum laude*.  She is a member of the New York City Bar Association and the American Bar Association, where she is a member of the Class Action and Derivatives Committee of the Litigation Section.

**Christian Keeney**

Christian Keeney is an associate with Grant & Eisenhofer, focusing on complex litigation issues. Mr. Keeney served as a judicial extern for the Honorable Mary Pat Thynge of the U.S. District Court for the District of Delaware while attending Villanova University School of Law. He also served as a certified legal intern for Villanova's Civil Justice Clinic, representing clients in various civil matters.

Mr. Keeney received his J.D. in 2008 from Villanova University School of Law, where he served as the Summer Competition Coordinator for the Moot Court Board, President of the Sports & Entertainment Law Society and Class Representative for the Student Bar Association. Mr. Keeney also published a scholarly article in the University of Florida's Journal of Technology Law and Policy.  He received a B.A. in Political Science from the University of Kentucky. He also participated in Georgetown University's Washington Semester Program, serving as a columnist for the *Georgetown Voice*.

**Christine M. Mackintosh**

Christine Mackintosh adds depth and experience to Grant & Eisenhofer's complex litigation and trial capabilities.  As a member of the Litigation Practice Group of a large Philadelphia law firm, she gained extensive experience in commercial, insurance recovery, securities and bankruptcy litigation.  She acted as lead counsel in several bankruptcy and commercial litigation cases, and served as lead trial counsel in a case brought before the US Bankruptcy Court for the Eastern District of PA.

A *magna cum laude* graduate of St. Joseph's University in Philadelphia, Ms. Mackintosh earned her law degree at the University of Pennsylvania Law School.  She is the co-author of two articles published by the Practicing Law Institute's *Corporate Law & Practice Course Handbook Series.* "Ethical Issues and Their Impact on Securities Litigation," published in September-October, 2003, was co-authored with Marc J. Sonnenfeld, Viveca D. Parker and Marisel Acosta. "Lessons From Sarbanes-Oxley: The Importance of Independence In Internal Corporate Investigations," published in July, 2003, was co-authored with Alfred J. Lechner, Jr.

Ms. Mackintosh is a member of the Philadelphia and Pennsylvania Bar Associations.

**Alessandra C. Phillips**

Alessandra Phillips is an associate at Grant & Eisenhofer, focusing on derivative shareholder suits and appraisal actions. Prior to joining the firm, she worked as an Assistant Attorney

General for the Delaware Department of Justice in both the civil and criminal divisions and for the Art Crime Team, a joint government venture between the FBI and U.S. Department of Justice.

Ms. Phillips is a 2007 graduate of Temple University School of Law, where she served on the board of the Moot Court Honor Society, was a Rubin Public Interest Fellow and a member of Temple's National Trial Team. She graduated in 1996 with a B.A. in Humanities with distinction from Yale University, where she was awarded the Marshall-Allison Fellowship.

**Susan R. Schwaiger**

Susan Schwaiger is an associate with Grant & Eisenhofer.  Ms. Schwaiger practices in the area of antitrust, with experience in a wide variety of industries, and other areas of complex civil litigation.

Prior to joining Grant & Eisenhofer, she was Of Counsel to several leading New York-based antitrust firms representing plaintiffs in class and individual actions.  She has authored *The Submission of Written Instructions and Statutory Language to New York Criminal Juries*, 56 BROOK. L., REV. 1353, nn.18, 24 & 27 (1991).

Ms. Schwaiger graduated *cum laude* from Brooklyn Law School in 1992 with a J.D.  She obtained her M.A. from the University of Kentucky and a B.S. from the University of Tennessee.

She has played significant roles in a number of major antitrust cases including *In re Microcrystalline Cellulose Antitrust Litigation; In re Plastics Additives Antitrust Litigation*; and *In re Lorazepam & Clorazepate Antitrust Litigation*.   In addition, she has represented large corporate entities in individual actions in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*; *In re Chocolate Confectionary Antitrust Litigation*; and *CVS Pharmacy v. American Express Travel Related Services, et al.*  Ms. Schwaiger's experience also includes representation of Shannon Faulkner and Nancy Mellette in their successful litigation against The Citadel military academy in Charleston, South Carolina, where Shannon Faulkner became the first female cadet admitted to the all-male academy in August 1995.

**David A. Straite**

David Straite represents institutional investors in the United States and Europe in all aspects of investor protection litigation, including corporate governance and shareholder derivative actions, hedge fund disputes, and securities actions, with particular focus on claims against financial institutions.

Representative cases include *ABP v. Bank of America Corp.*, 10-cv-2284 (SDNY), an individual securities action on behalf of the EU's largest pension fund related to Bank of America's acquisition of Merrill Lynch; *International Fund Management v. Citigroup, Inc.*, 09-cv-8755 (SDNY), an individual securities action against Citigroup and other defendants on behalf of European investors; *LV Highland Credit Feeder Fund LLC v. Highland Capital Management, L.P.*, 09-08521 (Dallas County, TX), an action on behalf of a feeder fund and offshore investors related to the wind-down of two hedge funds; *TRSL v. Greenberg*, No. 20106 (Del. Chancery), a

shareholder derivative action on behalf of AIG, which resulted in the largest derivative settlement in the history of the Delaware Court of Chancery; *In re Lehman Brothers Equity/Debt Securities Litigation,* 08-cv-5523 (SDNY), a securities class action on behalf of Lehman investors.

Prior to joining G&E, Mr. Straite was an associate in the Antitrust department in Skadden Arps' New York office, where he represented corporations and investors during the antitrust review of mergers and acquisitions under section 7 of the Clayton Act, HSR premerger notification under section 7A, criminal antitrust grand jury investigations, civil regulatory investigations by the DOJ and FTC, class action antitrust litigation, complex document production and e-discovery, and CFIUS. Mr. Straite was also a litigation associate in the Philadelphia office of Blank Rome, primarily defending claims against air carriers and avionics components manufacturers, and had a solo practice advising small businesses, negotiating contracts, drafting RFP responses, and acting as outside general counsel to a telecommunications start-up company.

Mr. Straite is a 1996 *magna cum laude* graduate of the Villanova University School of Law, where he was a member of the Order of the Coif, the Federalist Society and the St. Thomas More Society. In recognition of his efforts as managing editor of the Villanova Law Review, he received the Arthur Pulling Award. Mr. Straite is a 1993 graduate of the Murphy Institute of Political Economy at Tulane University in New Orleans, where he majored in both Political Economy and Economics.

Mr. Straite recently authored *Netherlands: Amsterdam Court of Appeal Approves Groundbreaking Global Settlements Under the Dutch Act on the Collective Settlement of Mass Claims*, in The International Lawyer's annual "International Legal Developments in Review" (2009); was a contributing author to Dabbah and Lasok's *Merger Control Worldwide* (2005); and contributed to four annual supplements (2002-2005) of the seminal premerger treatise, *Acquisitions Under the Hart-Scott-Rodino Antitrust Improvements Act* by Axinn, Fogg, Stoll & Prager. He has lectured frequently on topics related to the attorney-client privilege and work product doctrine. He is also a Member of the ABA Section of International Law (Europe Committee and International Securities and Capital Markets Committee) and ABA Section of Litigation; The Federalist Society; and The Royal Society of St. George.

**Ned C. Weinberger**

Ned Weinberger is an associate with Grant & Eisenhofer, focusing on securities litigation and shareholder derivative litigation on behalf of institutional investor clients.

Mr. Weinberger attended the Louis D. Brandeis School of Law at the University of Louisville, where he served on the *Journal of Law and Education*. During law school, Mr. Weinberger worked for a nationally-recognized law firm in Louisville, Kentucky. He graduated *cum laude* in May 2005 from Miami University with a B.A. in English Literature.

**Marc D. Weinberg**

Prior to joining G&E in 2006, Marc Weinberg gained a fourteen-year track record with two of the nation's leading securities litigation firms.  He focuses on institutional services at Grant & Eisenhofer.

Mr. Weinberg earned his law degree at Widener University in 1992 after graduating from Pennsylvania State University.  He is a member of the Philadelphia and Pennsylvania Bar Associations, and the Moot Court Honor Society.

**Tracy L. Campbell**

Tracy Campbell is an attorney at Grant & Eisenhofer, focusing on complex securities fraud litigation in class action cases. She received her law degree from the University of Houston Law Center in 2003, where she completed an externship at the Methodist Health Care System. Before joining Grant & Eisenhofer, Ms. Campbell focused her practice on the area of health law. Upon graduating from law school, she worked at a mid-sized firm in Houston where she concentrated primarily on asbestos litigation. Subsequently, she worked for a small transactional health law firm in San Antonio, Texas.

Ms. Campbell received her B.S. in Business Administration with a Concentration in International Business Management from Goldey-Beacom College in 1997, where she graduated *magna cum laude*. Prior to entering law school, Ms. Campbell gained business experience as an analyst at JP Morgan. Upon relocating to Texas, she continued to pursue a career in the financial industry while obtaining her law degree. Ms. Campbell is a member of the Delaware Bar Association.

**Alice Y. Cho**

Alice Cho focuses on securities fraud class actions at Grant & Eisenhofer. She graduated from Brooklyn Law School in 2004 after receiving a Bachelor of Arts degree from the University at Albany.

During law school, Ms. Cho interned as a law clerk for the Honorable Frederic Block, United States District Court, Eastern District of New York. She also worked with the New York City Human Rights Commission and the Asian American Legal Defense and Education Fund.

Ms. Cho currently serves as Executive Vice President of the Korean American Lawyers Association of Greater New York (KALAGNY).

**R. Alexander Gartman**

Alexander Gartman concentrates on securities litigation as a staff attorney at Grant & Eisenhofer. He graduated *cum laude* from Temple University School of Law in 2005. He served on the Student Bar Association Budget Committee, and  the Curriculum Committee, working with faculty to revise first year curriculum.

Mr. Gartman received a Bachelor of Business Administration degree in Finance in 1998 from The College of William and Mary, where he double majored in Economics.

**Matthew Hartman**

Matthew Hartman is a staff attorney at Grant & Eisenhofer, where his responsibilities include coordinating the work of document review attorneys, tracking deposition schedules and preparation, proofreading and e-filing legal memoranda. He monitors court dockets, e-files in diverse jurisdictions; checks federal and local rules for filing compliance issues, organizes potential exhibits for depositions, monitors responses to subpoenas and document requests and monitors document conversion work by vendors for uploading to various document review databases.

Mr. Hartman joined Grant & Eisenhofer in 2004 as a document review attorney in a prominent securities case involving mismanagement and falsification of business and stock records. While on that case, he developed a training manual for attorneys joining the team. His previous corporate experience maintaining corporate records and working on securities issuances and acquisitions has provided a valuable knowledge base for business litigation. While working for the Silicon Valley office of an international law firm, he drafted, researched and revised corporate documents, maintained stock and option ledgers, reviewed documents in due diligence projects for mergers, acquisitions and financings, and performed legal research in the area of compliance with state securities regulations.

A graduate of American University with an M.A. in philosophy and social policy, Mr. Hartman earned his law degree from the Duquesne University School of Law in 1997. He also holds a Certificate in International Business Management from the University of California – Irvine.

**Michael A. Morris**

Michael Morris received his law degree from the University of Bridgeport Law School in 1980. He has been a member of the Connecticut Bar since 1980.

He was employed by the City of New Haven as Special Assistant Corporation Counsel where he represented and provided legal counsel for several city departments. He subsequently established his own law practice in New Haven which he maintained until 2000.

Mr. Morris served as Counsel to the Board of Directors for the Greater New Haven Transit District which involved federal and state legal matters in transportation, government contract and grant development, and presenting testimony to the Connecticut State Legislature.

Mr. Morris earned a Master of Business Administration degree from the University of Bridgeport. He also helped organize and became the first president of the University of Bridgeport Law School Alumni Association.

**Joseph P. Neary**

Joseph Nearey focuses on complex securities litigation as a staff attorney at Grant & Eisenhofer. He received his law degree in 2001 from Temple University School of Law, where he was a member of the Temple International and Comparative Law Journal.  He attended the Temple University School of Law Semester in Japan and interned at a prominent Tokyo firm.  He served as a summer intern for the Honorable James R. Cavanaugh of the Superior Court of Pennsylvania.

Mr. Nearey graduated *cum laude* from Hamilton College in 1997 with dual Bachelor degrees in English Literature and Government.

**Lindsay A. Roseler**

Lindsay Roseler concentrates on class action and complex fraud actions brought under the Federal Securities Acts and the False Claims Act. She has actively participated on litigation teams for cases such as In re Parmalat Securities Litigation and In re Delphi Corp. Securities Litigation.

Ms. Roseler received her law degree in 2005 from Syracuse University College of Law, where she was a member of the Syracuse Journal of International Law and Commerce. She is a Certified Mediator and has trained in International Business Mediation and Alternative Dispute Resolution.

Ms. Roseler received a Bachelor of Arts in International Relations and Diplomacy with a minor in International Business Administration from Schiller International University in Europe. While in Europe, she worked for the United States Commercial Department in Madrid, Spain and for the United States Military in London, England and Heidelberg, Germany. Upon graduation, Ms. Roseler returned to the United States and worked with an international development foundation before pursuing her legal education. She is fluent in German and has advanced knowledge of Spanish.

**Raymond Schuenemann**

Raymond Schuenemann focuses on securities litigation as a staff attorney at Grant & Eisenhofer. He is a graduate of the Widener University School of Law and a member of the American Bar Association and the Pennsylvania Bar Association.

Prior to joining Grant & Eisenhofer, Mr. Schuenemann worked as an associate in labor law, nursing home law, sales and use tax law, and real estate law. He also worked as a consultant in the area of sales and use tax.

Mr. Schuenemann received a B.S. in Finance from West Chester University in 1999. He has experience as an investment accountant and internal auditor in the banking and finance sectors.

**Selected Institutional Client Representations**

G&E has represented or is currently representing a number of institutional investors in major securities fraud actions, shareholder derivative suits, other breach-of-fiduciary-duty cases and related ancillary proceedings around the country.  Some of our cases include:

**(A)     In Securities Fraud Litigation:**

**(1)     Cellstar**

In one of the earliest cases filed after the enactment of PSLRA, the State of Wisconsin Investment Board ("SWIB") was designated lead plaintiff and G&E was appointed lead counsel in Gluck v. CellStar Corp., 976 F.Supp. 542 (N.D.Tex. 1997).  The cited opinion is widely considered the landmark on standards applicable to the lead plaintiff/lead counsel practice under PSLRA.  (See, especially, In re Cendant Corp. Litig., 2001 WL 980469, at *40, *43 (3d Cir. Aug. 28, 2001), citing CellStar.)  After the CellStar defendants' motion to dismiss failed and a round of discovery was completed, the parties negotiated a $14.6 million settlement, coupled with undertakings on CellStar's part for significant corporate governance changes as well.  With SWIB's active lead in the case, the class recovery, gross before fees and expenses, was approximated to be 56% of the class' actual loss claims, about 4 times the historical 14% average gross recovery in securities fraud litigation.  Because of the competitive process that SWIB had undertaken in the selection of counsel, resulting in a contingent fee percentage significantly less than the average 31% seen historically, the net recovery to the class after all claims were submitted came to almost 50% of actual losses, or almost 5 times the average net recovery.

**(2)     DaimlerChrysler**

Florida State Board of Administration ("FSBA") was appointed lead plaintiff and G&E co-lead counsel in the PSLRA class action on behalf of shareholders of the former Chrysler Corporation who exchanged their shares for stock in DaimlerChrysler in Chrysler's 1998 business combination with Daimler-Benz AG which was represented at the time as a "merger of equals."  On February 5, 2004, the court granted final approval of a $300 million cash settlement in that case, among the largest securities class action settlements since the enactment of the PSLRA.  In re DaimlerChrysler Securities Litigation, D. Del., C.A. No. 00-0993.

**(3)     Oxford Health Plans**

Public Employees' Retirement Association of Colorado ("ColPERA") engaged G&E to represent it to seek the lead plaintiff designation in the numerous securities fraud actions that were consolidated into In re Oxford Health Plans, Inc., Securities Litig., S.D.N.Y., MDL Docket No. 1222 (CLB).  The court

ordered the appointment of ColPERA as a co-lead plaintiff and G&E as a co-lead counsel. G&E and its co-leads filed the Consolidated Amended Complaint. Memorandum opinions and orders were entered denying defendants' motions to dismiss (see 51 F.Supp. 2d 290 (May 28, 1999) (denying KPMG motion) and 187 F.R.D. 133 (June 8, 1999) (denying motion of Oxford and individual director defendants)). The case settled for $300 million, another settlement negotiated by G&E that is among the largest settlements since the enactment of the PSLRA.

(4)   **Dollar General**

The U.S. District Court for the Middle District of Tennessee ordered the appointment of Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL") as lead plaintiffs and G&E as co-lead counsel in a PSLRA and Rule 10b-5 case against the defendant company, its accountants, and individual insiders who allegedly issued false and misleading statements over an alleged 3-year Class Period and failed to disclose adverse facts about the company's financial results. Settlements were approved involving a cash payment of $162 million from the company and the individual defendants, an additional $10.5 million from Deloitte & Touche, LLP (Dollar General's accountants), and beneficial governance reforms for Dollar General. In re Dollar General Securities Litigation, M.D. Tenn., No. 3:01-0388, orders dated July 19, 2001 and September 29, 2003.

(5)   **Just For Feet**

G&E represented the State of Wisconsin Investment Board ("SWIB") in a federal securities class action against certain officers and directors of Just For Feet, Inc., and against Just For Feet's auditors, in the Northern District of Alabama. That action arose out of the defendants' manipulation of the company's accounting practices to materially misstate the company's financial results. Having been appointed co-lead plaintiff, SWIB and (G&E) as its counsel took primary responsibility for the case. (SWIB v. Ruttenberg, et al., N.D. Ala., CV 99-BU-3097-S and 99-BU-3129-S, 102 F. Supp. 2d 1280 (N.D. Ala. 2000)). SWIB obtained a policy limits settlement with the individual defendants' D&O carrier and an additional $7.4 million from Just For Feet's auditor, for a recovery totaling approximately $32 million.

(6)   **Waste Management**

G&E filed a non-class federal securities action against Waste Management, Inc., its former and current directors, and the company's accountants in the Northern District of Florida, on behalf of Lens Investment Management, LLC and Ram Trust Services, Inc. The complaint alleged that Waste Management had, over a five-year period, issued financial statements and other public statements that were materially false and misleading due to the defendants' fraudulent and improper accounting manipulations. G&E also filed non-class actions in Illinois state court,

asserting similar claims on behalf of the Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL"). After G&E successfully defeated the defendants' motions to dismiss FSBA's complaint in state court, FSBA's cause of action was transferred to the Northern District of Florida. At the point where there were competing motions for summary judgment pending, G&E successfully negotiated a settlement pursuant to which each plaintiff received several times what it would have received in the class action. <u>Florida State Board of Administration, Ram Trust Services, Inc. and Lens Investment Management, LLC v. Waste Management, Inc., et al.</u>, N.D.Fla., No. 4:99CV66-WS, amended complaint filed June 21, 1999; and <u>Teachers' Retirement System of Louisiana v. Waste Management, Inc., et al.</u>, Circuit Ct., Cook Co. [Ill.], No. 98 L 06034, complaint filed May 18, 1999.

**(7)   <u>Total Renal Care</u>**

In June 1999, the Louisiana State Employees' Retirement System ("LASERS") and Teachers' Retirement System of Louisiana ("TRSL") were appointed as Lead Plaintiff in a federal securities class action against Total Renal Care ("TRC") and certain of its officers and directors, pending in the U.S. District Court for the Central District of California. G&E was approved as Plaintiffs' Lead Counsel. Plaintiffs filed their Corrected Consolidated Amended Complaint against the defendants, alleging, <u>inter alia</u>, that the defendants manipulated TRC's financial statements so as to materially overstate TRC's revenues, income and assets and to artificially inflate TRC's stock price. G&E negotiated a settlement requiring TRC's payment of $25 million into a settlement fund for the class and the company's adoption of certain internal corporate governance policies and procedures designed to promote the future accountability of TRC's management to its stockholders. At the time of the settlement, this amount represented 33% of the value of the Company's shares. <u>In re Total Renal Care Securities Litigation</u>, C.D. Cal., Master File No. CV-99-01745 CBM.

**(8)   <u>Safety-Kleen</u>**

G&E was sole lead counsel for the plaintiffs in a federal securities class action and a series of related individual actions against former officers, directors, auditors and underwriters of Safety-Kleen Corporation, who are alleged to have made false and misleading statements in connection with the sale and issuance of Safety-Kleen bonds. <u>In re Safety-Kleen Corp. Bondholders Litig.</u>, D.S.C., No. 3:00-CV-1145-17, consolidated complaint filed January 23, 2001. In March of 2005, after a jury had been selected for trial, the auditor defendant settled with the class and individual claimants for $48 million. The trial then proceeded against the director and officer defendants. After seven weeks of trial, the director defendants settled for $36 million, and the court entered judgment as a matter of law in favor of the class and against the company's CEO and CFO, awarding damages of over $190 million.

**(9)**    **Styling Technology Corporation**

G&E represented funds managed by Franklin Advisors, Inc., Conseco Capital Management, Inc., Credit Suisse Asset Management, Pilgrim American Funds and Oppenheimer Funds, Inc. in a securities action brought in May 2001, asserting both federal (1933 Act) and state claims brought in the Superior Court of California.  The suit alleged that certain former officers, as well as the independent auditors, of Styling Technology Corporation made false and misleading statements in connection with the sale and issuance of Styling Technology bonds.  Styling Technology filed for bankruptcy protection under Chapter 11 in August 1999.  In October 2000, discovery of accounting irregularities and improperly recognized revenue forced the Company to restate its financial statements for the years 1997 and 1998.  Plaintiffs, owning $66.5 million of the total $100 million in bonds sold in the offering, settled the case for a recovery representing approximately 46% of the losses suffered by the client funds that they manage.  Franklin High Income Trust, et al. v. Richard R. Ross, et al., Cal. Super., San Mateo Co. [Calif.], Case No: 415057, complaint filed November 28, 2000.

**(10)**    **Tyco**

G&E is co-lead counsel representing co-lead plaintiffs Teachers' Retirement System of Louisiana and Louisiana State Employees' Retirement System in a securities class action against Tyco International Ltd. and PricewaterhouseCoopers LLP.  The complaint alleged that the defendants, including Tyco International, Dennis Kozlowski and other former executives and directors of Tyco, and PricewaterhouseCoopers, made false and misleading public statements and omitted material information about Tyco's finances in violation of Sections 10(b), 14, 20A and 20(a) of the Securities Exchange Act of 1934.  Tyco agreed to fund $2.975 billion in cash to settle these claims, representing the single largest payment from any corporate defendant in the history of securities class action litigation.  PricewaterhouseCoopers also agreed to pay $225 million to settle these claims, resulting in a total settlement fund in excess of $3.2 billion.

**(11)**    **Global Crossing**

Ohio Public Employees' Retirement System ("Ohio PERS") and the Ohio Teachers' Retirement System ("STRS") were appointed lead plaintiff and G&E was appointed sole lead counsel in a securities class action against Global Crossing, Ltd. and Asia Global Crossing, Ltd.  In re Global Crossing, Ltd. Securities & "ERISA" Litig., MDL Docket No. 1472.  In November 2004, the Court approved a partial settlement with the Company's former officers and directors, and former outside counsel, valued at approximately $245 million.  In July 2005, the Court approved a $75 million settlement with the Citigroup-related defendants (Salomon Smith Barney and Jack Grubman).  In October 2005, the Court approved a settlement with Arthur Anderson LLP and all Anderson-related

defendants for $25 million.  In October 2006, the Court approved a $99 million settlement with various financial institutions.  In total, G&E has recovered $448 million for investors in Global Crossing.

**(12)    Telxon Corporation**

G&E filed a federal securities and common law action against Telxon Corporation, its former officers and directors and its accountants in the Northern District of Ohio on behalf of Wyser-Pratte Management Co., Inc., an investment management firm.  Following mediation, G&E negotiated a settlement of all claims.  Wyser-Pratte Management Co., Inc. v. Telxon Corp., et al., N.D. Ohio, Case No. 5:02CV1105.

**(13)    Hayes Lemmerz**

G&E served as lead counsel to plaintiffs and class members who purchased or acquired over $1 billion in bonds issued by Hayes Lemmerz International, Inc.  G&E negotiated a settlement worth $51 million.  Pacholder High Yield Fund, Inc. et al. v. Ranko Cucoz et al., E.D. Mich., C.A. No. 02-71778.

**(14)    Enron/Worldcom**

In 2001, G&E, on behalf of various Ohio public pension funds, filed opt-out actions which remain pending.  Public Employees' Retirement System of Ohio v. Ebbers, et al., S.D.N.Y. No. 03-Civ-0338; Public Employees' Retirement System of Ohio v. Fustow, et al., S.D. Tex. No. H-02-4788.

**(15)    Asia Pulp and Paper**

On behalf of bondholders of various subsidiaries of Indonesian paper-making giant Asia Pulp and Paper ("APP"), G&E filed an action alleging that the bondholders were defrauded by APP's financial statements which were inflated by nearly $1 billion in fictitious sales.  Defendants' motions to dismiss were denied.  Franklin High Income Trust, et al. v. APP Global Ltd., et al., N.Y. Sup. Ct., Trial Div., Index No. 02-602567.  The matter was resolved through a confidential settlement several years ago.

**(16)    Babcock Borsig**

G&E filed suit against German company Babcock Borsig, AG alleging that Babcock's CEO, in concert with officers of Babcock's largest shareholder, German conglomerate TUI, devised a plan to overstate Babcock's income through improper use of an accounting device relating to a Babcock subsidiary.  The suit was filed on behalf of Wyser-Pratte Management Co., Inc..  Defendants' motions to dismiss were granted and the case had been terminated.  Wyser-Pratte

<u>Management Co., Inc. v. Babcock Borsig, A.G., et al.</u>, N.Y.Sup. Ct., Trial Div., Index No. 603364/02.

**(17)    Alstom**

In January 2004, Louisiana State Employees' Retirement System was appointed as co-lead plaintiff and G&E was appointed co-lead counsel in a class action against Alstom SA, a French corporation engaged in power generation, transmission and distribution in France.  The suit alleges that Alstom and other defendants made false and misleading statements concerning the growth and financial performance of its transportation subsidiary.  Motions to dismiss were denied in part and granted in part and an amended complaint has been filed.  <u>In re Alstom SA Sec. Litig.</u>, S.D.N.Y. 03-cv-6595.

**(18)    Parmalat**

G&E is co-lead counsel in this securities class action arising out of a multi-billion dollar fraud at Parmalat, which the SEC has described as "one of the largest and most brazen corporate financial frauds in history."  The court has recently denied the motions to dismiss filed by both the company and their auditors.  <u>In re Parmalat Securities Litig.</u>, S.D.N.Y. 04-MDL-1653.

**(19)    Marsh & McLennan**

G&E is co-lead counsel for the class of former Marsh & McLennan shareholders in this federal securities class action alleging that the company, its officers, directors, auditors, and underwriters participated in a fraudulent scheme involving, among other things, bid-rigging and secret agreements to steer business to certain insurance companies in exchange for "kick-back" commissions.  <u>In re Marsh & McLennan Companies, Inc. Sec. Litig.</u>, S.D.N.Y. 04-cv-8144.

**(20)    Hollinger International**

G&E is co-lead counsel in this securities class action arising out of a company scandal at Hollinger International, Inc. which involves payment of millions of dollars to certain executives, including the company's former CEO, Lord Conrad Black, relating to sales of company assets.  G&E has entered into a tentative settlement with Hollinger that is awaiting approval from the Court.  <u>Hollinger International Securities Litigation</u>, N.D. Ill. 04-C-0834**.**

**(21)    Delphi**

Delphi is an automotive company that was spun off of General Motors.  The company failed as a stand-alone entity, but concealed its failure from investors.  G&E's client is one of the largest pension funds in the world and is a lead plaintiff, and G&E serves as a co-lead counsel in the case.  <u>In  re  Delphi</u>

_Corporation Securities Derivative & ERISA Litigation_, E.D. Mich., MDL No. 1725.

**(22)   Refco**

A mere two months after going public, Refco admitted that its financials were unreliable because the company had concealed that hundreds of millions of dollars of uncollectible receivables were owed to the company by an off-balance sheet entity owned by the company's CEO.  G&E serves as a co-lead counsel and G&E's client, PIMCO, is a co-lead plaintiff.   _In re Refco, Inc. Securities Litigation_, S.D.N.Y., No. 05 Civ. 8626.

**(23)   Sprint**

G&E represented lead plaintiff institutional investor Carlson Capital, L.P. in this class action suit against Sprint Corporation and its former CEO and directors for breach of fiduciary duty in the consolidation of two separate tracking stocks.  In December 2007, a $57.5 million settlement was approved.   _In re Sprint Corporation Shareholder Litigation_, D. Kan., No. 04 CV 01714.

**(B)   In Derivative and Other Corporate Litigation:**

**(1)   Digex**

This case resulted in a settlement of over $400 million, the largest reported settlement in the history of Delaware corporate litigation.  G&E represented the lead plaintiff, TCW Technology Limited Partnership, in alleging that Digex, Inc.'s  directors and majority stockholder (Intermedia, Inc.) breached their fiduciary duties in connection with WorldCom's proposed $6 billion acquisition of Intermedia.  Among other issues, WorldCom was charged with attempting to usurp a corporate opportunity that belonged to Digex and improperly waiving on Digex's behalf the protections of Delaware's business combination statute. Following G&E's argument on a motion to preliminarily enjoin the merger, the Court issued an opinion declining to enjoin the transaction but acknowledging plaintiffs' likelihood of success on the merits. _In re Digex, Inc. Shareholders Litigation_, C.A. No. 18336, 2000 WL 1847679 (Del. Ch. Dec. 13, 2000).  The case settled soon thereafter.

**(2)   Willamette**

In January 2002, at the request of Wyser-Pratte Management Co., Inc. and Franklin Mutual Advisors, G&E filed a shareholder derivative action in Oregon state court claiming that the board of Willamette Industries, Inc. breached its fiduciary duties by attempting to cause Willamette to acquire the asbestos-ridden building products division of Georgia-Pacific Company as part of a scorched-earth effort to defeat a hostile takeover of Willamette by its chief competitor,

Weyerhaeuser Company.  G&E obtained an expedited hearing on its motion for a preliminary injunction and obtained an agreement from Willamette at the hearing not to consummate any deal with Georgia-Pacific without providing prior notice to G&E.  Almost immediately thereafter, and after years of fighting against Weyerhaeuser's take-over attempts, the Willamette board relented and agreed to sell the company to Weyerhaeuser.  <u>Wyser-Pratte Management Co., Inc. & Franklin Mutual Advisors v. Swindells, et al</u>., No. 0201-0085 (Ore. Cir. Ct.).

(3)    **Medco Research**

In January 2000, G&E filed a shareholder derivative action on behalf of State of Wisconsin Investment Board against the directors of Medco Research, Inc. in Delaware Chancery Court.  The suit alleged breach of fiduciary duty in connection with the directors' approval of a proposed merger between Medco and King Pharmaceuticals, Inc.  G&E was successful in obtaining a preliminary injunction requiring Medco to make supplemental and corrective disclosures. Because of G&E's efforts, the consideration to Medco's stockholders increased by $4.08 per share, or $48,061,755 on a class-wide basis.  <u>State of Wisconsin Investment Board v. Bartlett, et al.</u>, C.A. No. 17727, 2000 WL 193115 (Del. Ch. Feb. 9, 2000).

(4)    **Occidental Petroleum**

G&E represented Teachers' Retirement System of Louisiana and served as co-counsel in a shareholders' derivative suit against the directors of Occidental Petroleum Corporation, challenging as corporate waste the company's excessive compensation arrangements with its top executives.  Filed in California state court, the case settled when the company agreed to adopt CalPERS's model principles of corporate governance and undertook to reconstitute its key committees so as to meet the tests of independence under those principles. <u>Teachers' Retirement System of Louisiana v. Irani et al.</u>, No. BC1850009 (Cal. Super.).

(5)    **Staples, Inc.**

On behalf of Teachers' Retirement System of Louisiana, G&E challenged Staples, Inc.'s proposed "recapitalization" plan to unwind a tracking stock, Staples.com, which it created in 1998.  G&E obtained a preliminary injunction against the deal and the deal terms were ultimately altered resulting in a $15-$20 million gain for shareholders.  Additional disclosures were also required so that shareholders voted on the challenged transaction based on a new proxy statement with substantial additional disclosures.  <u>In re Staples, Inc. Shareholders Litigation</u>, C.A. No. 18784, 2001 WL 640377 (Del. Ch. June 5, 2001).

**(6)    SFX/Clear Channel Merger**

G&E filed a class action on behalf of Franklin Advisers, Inc. and other stockholders of SFX, challenging the merger between SFX and Clear Channel. While the SFX charter required that in any acquisition of SFX  all classes of common stockholders be treated equally, the merger, as planned, provided for approximately $68 million more in consideration to the two Class B stockholders (who happened to be the senior executives of SFX) than to the public stockholders.  The merger was structured so that stockholders who voted for the merger also had to vote to amend the Charter to remove the non-discrimination provisions as a condition to the merger.  G&E negotiated a settlement whereby $34.5 million more was paid to the public stockholders upon closing of the merger.  This was more than half the damages alleged in the Complaint.  Franklin Advisers, Inc., et al. v. Sillerman, et al., C.A. No. 17878 (Del. Ch.).

**(7)    Lone Star Steakhouse & Saloon**

G&E filed a derivative lawsuit on behalf of CalPERS against Lone Star's former CEO, Jamie Coulter, and six other Lone Star directors.  The suit alleged that the defendants violated their fiduciary duties in connection with their approval of the company's acquisition of CEI, one of Lone Star's service providers, from Coulter, as well as their approvals of certain employment and compensation arrangements and option repricing programs.  Before filing the suit, G&E had assisted in CalPERS in filing a demand for books and records pursuant to Section 220 of the Delaware General Corporation Law.  The company's response to that demand revealed the absence of any documentation that the board ever scrutinized transactions between Lone Star and CEI, that the board negotiated the purchase price for CEI, or that the board analyzed or discussed the repricing programs.  In August 2005, the Court approved a settlement negotiated by G&E whereby Lone Star agreed to a repricing of options granted to certain of its officers and directors, payments from certain of the officers and directors related to option grants, and a $3 million payment from Lone Star's director and officer insurance policy.  Lone Star further acknowledged that the lawsuit was one of the significant factors considered in its adoption of certain corporate governance reforms.  California Public Employees' Retirement System v. Coulter, et al., C.A. No. 19191 (Del. Ch.).

**(8)    Siebel**

The issue of excessive executive compensation has been of significant concern for investors, yet their concerns have remained largely unaddressed due to the wide discretion afforded corporate boards in establishing management's compensation. G&E effected a sea change in the compensation policies of Siebel Systems, a leading Silicon Valley-based software developer long considered to be an egregious example of executive compensation run amok, and caused Thomas Siebel, the company's founder and CEO, to cancel 26 million options with a

potential value of $54 million.  Since the company's founding in 1996, Siebel Systems had paid Mr. Siebel nearly $1 billion in compensation, largely in the form of lavish stock options that violated the shareholder-approved stock option plan.  In addition, the company had paid its directors millions of dollars for their service on the board, also in the form of stock options, at levels exponentially higher than that paid to directors on the boards of similar companies.  G&E, on behalf of Teachers' Retirement System of Louisiana, commenced a derivative action challenging the company's compensation practices in September of 2002 even though a prior, similar lawsuit had been dismissed.  Following a hard-fought and acrimonious litigation, G&E successfully negotiated a settlement that, in addition to the options cancellation, included numerous corporate governance reforms.   The company agreed to, inter alia, restructure its compensation committee, disclose more information regarding its compensation policies and decisions, cause its outside auditor to audit its option plans as part of the company's annual audit, and limit the compensation that can be paid to directors.  The Siebel Systems settlement generated considerable favorable press in the industry, as investors and compensation experts anticipated that the reforms adopted by Siebel Systems could affect how other companies deal with compensation issues.  Teachers' Retirement System of Louisiana v. Thomas M. Siebel, et al., C. A. No. 425796 (Cal. Super.).

**(9)      HealthSouth Corporation**

G&E filed a derivative and class action lawsuit on behalf of Teachers' Retirement System of Louisiana against HealthSouth Corporation, its auditors, certain individual defendants, and certain third parties seeking, inter alia, an order forcing the HealthSouth board of directors to hold an annual shareholder meeting for the purpose of electing directors, as no such meeting had been held for over thirteen months.  Following a trial, G&E negotiated a settlement of part of its claims, pursuant to which five of the defendant directors who were alleged to have engaged in improper self-dealing with the company agreed to resign and be replaced by directors selected by a committee comprised in part by institutional investors of HealthSouth.  Teachers' Retirement System of Louisiana v. Scrushy, Del. Ch., C.A. No. 20529 (March 2, 2004).

**(10)    NYSE/Archipelago**

G&E served as co-lead counsel in a class action in New York state court, brought on behalf of a class of seat holders of the New York Stock Exchange ("NYSE") challenging the proposed merger between the NYSE and Archipelago Holdings, LLC.  The complaint alleged that the terms of the proposed merger were unfair to the NYSE seat holders, and that by approving the proposed merger, the NYSE board of directors had violated their fiduciary duties of care, loyalty and candor, because the transaction was the result of a process that was tainted by conflicts of interest and the directors failed adequately to inform themselves of the relevant facts.  The court denied the defendants' motion to dismiss, and after expedited

discovery, including over 30 depositions in a five week period, a preliminary injunction evidentiary hearing was held, in which plaintiffs sought to postpone the vote on the merger until a new, current fairness opinion was obtained from an independent financial advisor.  On the second day of the hearing, the defendants agreed to the relief being sought, namely that they would obtain a new, current fairness opinion from an independent financial advisor.  In re New York Stock Exchange/Archipelago Merger Litig., No. 601646/05 (Sup. Ct. N.Y. Co.)

**(11)**    **Caremark / CVS**

G&E represented institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as that board's decision to reject a competing proposal from a different suitor.  Ultimately, through the litigation, G&E was able to force Caremark's board not only to provide substantial additional disclosures to the public shareholders, but also to renegotiate the terms of the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and to ensure Caremark's shareholders had statutory appraisal rights in the deal.  Louisiana Municipal Police Employees' Retirement System, et al. v. Crawford, et al., C.A. No. 2635-N (Del. Ch.).

**(12)**    **AIG**

In the largest settlement of derivative shareholder litigation in the history of Delaware Chancery Court, G&E reached a $115 million settlement in a suit against former executives of AIG for breach of fiduciary duty.  The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets. Teachers' Retirement System of Louisiana v. Greenberg, et al., C. A. No. 20106-VCS (Del. Ch.).