Exhibit F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| IN RE: APPLE, INC. PSLRA<br>BACKDATING LITIGATION | Case No.: C-06-05208-JF<br>Honorable Jeremy Fogel |

## DECLARATION OF JONATHAN B. MARKS

1.      I am Jonathan B. Marks, a Mediator and Arbitrator at MARKSADR, LLC, in Bethesda, Maryland.

2.      I received my B.A. Cum Laude from Harvard College in 1966 and my J.D. Cum Laude from Harvard Law School in 1972. At Harvard Law School, I was an editor and then President of the Harvard Law Review.

3.      I began my legal career as an Assistant United States Attorney for the District of Columbia. Following this, I was an Associate and Partner at Munger, Tolles & Olson in Los Angeles. My practice primarily involved corporate and commercial litigation. I left private practice in 1979 to serve as Counsel and Associate Director for Planning and Evaluation for the Peace Corps, and then as General Counsel of the United States International Development Cooperation Agency.

4.      In 1981, I co-founded and served as Chairman of Endispute, which provided mediation, arbitration and other dispute resolution services. In August, 1994, Endispute merged with Judicial Arbitration and Mediation Services to form J·A·M·S/Endispute. I served as Vice-Chairman of the Board of Directors of J·A·M·S/Endispute and Chairman of the firm's Executive Committee, which oversaw professional practice issues, until September, 1999, when I formed MARKSADR, LLC. I devote all my professional time to serving as a mediator and arbitrator.

5.      I have extensive experience in mediation, arbitration and other dispute resolution assistance in litigation or pre-litigation disputes arising out of, for example, disputes involving the sale and acquisition of businesses; commercial activities; all aspects of construction; professional malpractice; securities disputes; consumer class actions; ERISA-related disputes; claims against officers and directors of financial institutions and other corporations; insurance coverage; environmental claims; government contract claims; and high stakes personal injury and product liability claims and lawsuits.

6.      The Parties retained me in April, 2010, to mediate the above-referenced case.

7.      The mediation process was confidential, but the Parties have authorized me to inform the Court of the matters presented in this declaration. I make this declaration based on personal knowledge and am competent to testify to the matters set out herein.

8.      The purpose of the mediation was to work with the Parties to explore whether they could reach a settlement of this complex matter, based on a joint and separate evaluation of the risks and costs each side faced in continued litigation.

9.      On April 7, 2010, I had a joint telephone conference with counsel in order to understand the nature and status of the case. Based on these discussions, I proposed, and the Parties agreed to, a mediation process aimed at allowing me and each Party to better understand the strengths and weaknesses of each side's case and the risks attendant to trial and appeal, as well as to explore appropriate monetary and non-monetary relief.

10.      I requested and received a substantial amount of pre-existing materials relating to the case.

11.      On May 5 and 6, 2010, the Parties exchanged and provided me with extensive mediation submissions, including exhibits and case law.

12.      On May 7, 2010, I conducted *ex parte* pre-mediation telephone conferences with each side.

13.      On May 13, 2010, the Parties exchanged and provided me with responsive mediation submissions, including exhibits and case law.

14.      Before and after these *ex parte* discussions, I spent a considerable amount of time reviewing the substantive materials that each of the Parties had provided me, in preparation for a scheduled mediation session.

15.      I convened a two-day mediation session in New York City on May 19-20, 2010. In attendance were class counsel and senior NYC Law Department and Comptroller's Office officials, along with a Research and Consulting expert, as well as Apple's Senior Vice President and Chief Financial Officer and outside counsel.

16.      During the mediation session, each side made detailed presentations to the other side and me about key issues that each contended would be relevant to the likely outcome of the case if settlement were not reached.

17.      Substantial progress was made during the mediation session, and agreement was reached on most material terms of the settlement.

18.     There followed a joint conference call on June 3, 2010, in which I participated, and another joint call on June 9, 2010, to which my Associate Mediator, Barbara Wally, listened.

19.     Thereafter, the Parties worked together without my involvement to further hone settlement terms and to prepare appropriate papers to begin the process of seeking court approval.

20.     Throughout the entire mediation process, it has been clear to me that each of the Parties is represented by experienced and highly competent counsel, willing, if necessary, to litigate the matter to conclusion.

21.     The settlement effort at the mediation session included extensive exchanges of view on the merits and difficult, arms-length negotiations, in which each side worked to persuade the other to modify positions based on reevaluation of risks faced if the case did not settle.

22.     Counsel for each Party were effective advocates for their clients and effective participants in the effort to reach a settlement that fairly valued the risks and opportunities of each Party in the litigation.

23.     It is my view that counsel were motivated in seeking a resolution by their clients' best interests and that their negotiating positions were informed by that motivation. I observed nothing that suggested any collusion or other untoward behavior on the part of counsel for any Party. In fact, it was apparent that this was not the case.

24.     The ultimate terms of the settlement did represent a compromise of the Parties' initial positions, but these compromises were the product of the Parties' assessment of the perceived relative strengths and weaknesses of their positions, and the risks inherent in continued litigation.

25.     Based on my detailed review of case exhibits, the Parties' multiple mediation submissions, the Parties' adversarial mediation presentations, and the extensive substantive dialogue that I facilitated and participated in, it is my view that the settlement reached by the Parties is a fair and reasonable one. It is consistent with the judgments I reached about the strengths and weaknesses of the Parties' cases.

Dated: January 6, 2011

_____

JONATHAN B. MARKS

State of _Maryland_          }

                             } SS

County of _Montgomery_       }

On this the _6th_ day of _January, 2011_, before me, _Maureen R. Hamilton_ the undersigned Notary Public, personally appeared _Jonathan B. Marks_, personally known to me to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same for the purposes therein stated.

WITNESS my hand and official seal.

_____

Signature of Notary Public

MAUREEN R. HAMILTON
Notary Public
Montgomery County
Maryland
My Commission Expires Mar 15, 2014

4