1  GEORGE A. RILEY (S.B. No. 118304)
   SANDEEP N. SOLANKI (S.B. No. 244005)
2  VIVI T. LEE (S.B. No. 247513)
   O'MELVENY & MYERS LLP
3  Two Embarcadero Center
   28th Floor
4  San Francisco, California  94111-3828
   Telephone:   (415) 984-8700
5  Facsimile:   (415) 984-8701
   E-Mail:      griley@omm.com
6                ssolanki@omm.com
                 vlee@omm.com
7
   Attorneys for Defendant APPLE INC.
8

9

10                  **UNITED STATES DISTRICT COURT**

11                 **NORTHERN DISTRICT OF CALIFORNIA**

12                      **SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Case No. C06-05208-JF |
| | <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **APPLE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 4

    I.      PROCEDURAL HISTORY ......................................................................... 4

    II.     THE SETTLEMENT ................................................................................. 5

    III.   PRELIMINARY APPROVAL .................................................................... 6

LEGAL STANDARD FOR FINAL APPROVAL ......................................................... 8

    I.      THE SETTLEMENT PROVIDES SUBSTANTIAL RECOVERY FOR THE CLASS IN LIGHT OF THE WEAKNESSES IN PLAINTIFFS' CLAIMS AND THE RISKS AND EXPENSE OF CONTINUED LITIGATION ............................................................................................ 8

          A.    The FACC's Allegations Do Not Give Rise To Section 10(b) Liability ..................................................................................... 9

          B.    Plaintiffs Cannot Plead Or Prove Loss Causation .................................... 10

          C.    Plaintiffs Cannot Prove That Class Members Suffered Recoverable Damages ..................................................................................... 12

          D.    The Expected Costs And Duration Of Litigation Also Favor The Settlement ................................................................................... 14

    II.     THE STAGE OF THE PROCEEDING FAVORS APPROVAL OF THE SETTLEMENT .......................................................................................... 14

    III.   THE EXPERIENCE AND VIEWS OF COUNSEL SUPPORT APPROVAL OF THE SETTLEMENT ....................................................... 15

    IV.    THE REACTION OF THE SETTLEMENT CLASS SUPPORTS A FINDING THAT THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ............................................................................................... 16

    V.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE ............................................................................................... 16

    VI.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .............................................................................................. 18

    VII.   THE COURT SHOULD REJECT MR. PEZZATI'S OBJECTION ................... 18

          A.    The Proposed Donation Of Residual Funds Complies With Applicable Law ............................................................................. 18

          B.    Mr. Pezzati's Contentions About The Estimated Response Rates Are Baseless .............................................................................. 20

CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Basic Inc. v. Levinson,*
485 U.S. 224 (1998) ........................................................................................................ 10

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ........................................................................................ 16

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) ........................................................................................ 10, 12, 16

*Garner v. State Farm Mut. Auto. Insur. Co.,*
No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...................... 15

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .......................................................................................... 8

*Hopson v. Hanesbrands Inc.,*
No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) .................................... 19

*Hulliung v. Bolen,*
548 F. Supp. 2d 336 (N.D. Tex. 2008) .............................................................................. 9

*In re Affiliated Computer Serv. Deriv. Litig.,*
540 F. Supp. 2d 695 (N.D. Tex. 2007) .............................................................................. 9

*In re Apple Computer, Inc. Deriv. Lit.,*
No. C 06-4128 JF (N.D. Cal. Nov. 19, 2007) .................................................................... 9

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................................... 15

*In re Hansen Natural Corp. Sec. Litig.,*
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................................................ 11

*In re Heritage Bond Litig.,*
289 F. Supp. 2d 1132 (C.D. Cal. 2003) ............................................................................ 9

*In re Intelligroup Sec. Litig.,*
468 F. Supp. 2d 670 (D.N.J. 2006) .................................................................................. 12

*In re Magma Design Automation, Inc. Sec. Litig.,*
No. C-05-2394 CRB (N.D. Cal. Mar. 27, 2009) ................................................................ 18

*In re Mego Fin. Corp. Sec. Litig.,*
213 F.3d 454 (9th Cir. 2000) ...................................................................................... 14, 15

*In re Omnivision Techs., Inc.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................ 16

*In re Paracelsus Corp. Sec. Litig.,*
No. Civ.A. H-96-3464, 2007 WL 433281 (S.D. Tex. Feb. 6, 2007) .................................... 18

*In re Pharm. Indus. AWP Litig.,*
588 F.3d 24 (1st Cir. 2009) ............................................................................................ 19

*In re Portal Software, Inc. Sec. Litig.,*
No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................ 16

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Rambus Inc. Sec. Litig.*,
No. C-06-4346 JF (N.D. Cal. May 14, 2008) ........................................................ 19

*In re Tellium, Inc. Sec. Litig.*,
No. Civ. A. 02cv5878FLW, 2005 WL 2090254 (D.N.J. Aug. 26, 2005).............................. 10

*In re Veritas Software Corp. Sec. Litig.*,
496 F.3d 962 (9th Cir. 2007)........................................................................ 20

*In re Zoran Corp. Deriv. Litig.*,
511 F. Supp. 2d 986 (N.D. Cal. 2007) ...................................................................... 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008)...................................................................... 10

*Officers for Justice v. Civil Service Comm'n of City & Cnty of San Francisco*,
688 F.2d 615 (9th Cir. 1982)...................................................................... 8, 14

*Powell v. Georgia-Pacific Corp.*,
119 F.3d 703 (8th Cir. 1997)...................................................................... 19

*Rudolph v. UTStarcom*,
560 F. Supp. 2d 880 (N.D. Cal. 2008) ...................................................................... 11

*Six Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990)...................................................................... 19

**STATUTES**

15 U.S.C. § 78u-4(a)(7)(A) ...................................................................... 20

15 U.S.C. § 78u-4(b)(4) ...................................................................... 9, 10, 12, 17

28 U.S.C. § 1658(b) ...................................................................... 9

**RULES**

Fed. R. Civ. P. 9(b) ...................................................................... 2

Fed. R. Civ. P. 23(b)(3)...................................................................... 18

**OTHER AUTHORITIES**

American Law Institute, *Principles of the Law of Aggregate Litigation*,
§ 3.07 (2010)...................................................................... 18

Conte, A. & Newberg, H.B., 4 *Newberg on Class Action*
§ 11:20 (4th ed. 2002)...................................................................... 19

iii

# INTRODUCTION

Apple's shareholders earned extraordinary returns during and after the Class Period.[1]  A share of stock purchased at the beginning and held until the end of the Class Period would have yielded a return of more than 535%.  When Apple made the minor corrections to its past financial statements to account for misdated stock options in December 2006, Apple's share price increased, belying any claim that earlier misstatements were material.  Since the end of the Class Period, moreover, Apple's stock price has increased by over 450%.  Plaintiffs, therefore, face staggering, if not insurmountable, barriers to pleading, much less proving, a cognizable securities fraud claim based on the theory that alleged misstatements about stock options caused shareholders to suffer actual harm.  Plaintiffs recognized as much when they abandoned their Section 10(b) claim years ago, labeling it "de minimis."

After more than three years of litigation, however, Apple believes that a certain and immediate resolution of this Action is in the best interests of the company and its shareholders.  Although Apple continues to deny all allegations of wrongdoing or liability and maintains it has meritorious defenses to every claim, it recognizes that further litigation will be protracted, burdensome, expensive, and distracting.  Accordingly, Apple supports approval of the Settlement to finally resolve litigation over its past stock option practices.

The Settlement provides substantial and immediate recovery for the Class: a $16.5 million Settlement Fund and a series of significant corporate governance measures Apple will implement or extend after the Settlement is approved.  Apple has also agreed to pay separately the costs of administering and distributing the Net Settlement Fund and the amount of reasonable attorneys' fees and costs as may be awarded by the Court.  If any funds remain in the Net Settlement Fund after payment of Class Members' claims, the balance will be donated to nine university programs specializing in corporate governance matters related to the claims at issue, thereby providing additional benefits to the Class.

The Settlement is fair, reasonable and adequate to the Class in light of the barriers

---

[1] Unless otherwise noted, capitalized terms have the same meaning as set forth in the Amended Stipulation and Agreement of Settlement dated as of November 12, 2010 (the "Stipulation").

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

1  plaintiffs face to maintain their claims and to recover damages.  For several reasons, plaintiffs'

2  claims likely would be dismissed before trial, leaving the Class with no recovery.  First,

3  plaintiffs' allegations do not support a federal securities fraud claim because the alleged

4  misstatements regarding Apple's stock option practices were made beyond the five-year statute of

5  repose governing Section 10(b) claims.  Second, plaintiffs cannot satisfy the stringent pleading

6  standards for fraud claims mandated by the Private Securities Litigation Reform Act ("PSLRA")

7  and Fed. R. Civ. P. 9(b).  Third, plaintiffs cannot plead or prove loss causation.  Apple's stock

8  price ***increased*** by nearly $4 on December 29, 2006, after Apple disclosed the results of its

9  independent investigation into past stock option practices and restated its past financials.  Thus,

10  no shareholders suffered any loss.

11       Plaintiffs contend shareholders suffered a loss on June 30, 2006, the first trading day after

12  Apple announced it was beginning an independent investigation into its option practices.  But

13  Apple's June 29, 2006 press release did not reveal that Apple's prior disclosures regarding

14  executive compensation or accounting for past option grants were false or misleading in any way.

15  Thus, as a matter of law the press release cannot be a corrective disclosure for purposes of

16  determining whether prior misstatements caused harm.  Moreover, plaintiffs cannot show the

17  2.8% decline in Apple's stock price on June 30, 2006, was caused by its announcement.  Apple's

18  stock price movement was within its normal volatility range and consistent with market and

19  industry indices that declined by a similar percentage on June 30, 2006.

20       Finally, even if plaintiffs can overcome all of these hurdles and prevail at trial, the PSLRA

21  will severely limit any recovery.  As plaintiffs have acknowledged, the significant rise in Apple's

22  stock price in the second half of 2006—more than 33% between June 29, 2006, and

23  September 27, 2006—precludes the vast majority of Class Members from recovering anything

24  under the PSLRA.  Only shareholders who purchased shares above the applicable "90-day look-

25  back" price ***and*** held those shares until the end of the class period are eligible for recovery.

26  Apple's stock price rarely traded above the applicable "look-back" price during the Class Period,

27  and it is impossible to determine how many Class Members actually purchased their shares above

28  that price and held them until June 29, 2006.  Moreover, those eligible for recovery may recover

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

no more than $1.70 per share, the change in Apple's stock price after the June 29, 2006 statement. That amount, according to plaintiffs, represents the maximum loss attributable to Apple's alleged misstatements regarding past option practices—if one ignores all the legal barriers to recovery and assumes, contrary to actual evidence of similar stock declines for all relevant companies, that the announcement of the investigation was the sole cause of the price decline.

The parties have given proper notice of the Settlement.  In accordance with the Amended Preliminary Approval Order, notice of the settlement was disseminated widely, through direct mailings and media outlets including *Investor's Business Daily* and *Business Wire*.  The informational website and 1-800 number established by the parties also has experienced significant traffic from potential claimants.  Apple expects that a significant number of Class Members will submit Proofs of Claim before the March 15, 2011 deadline.

Although the deadline to file objections to the Settlement is just two weeks away, only one purported Class Member, Patrick Pezzati, has made objections.  Mr. Pezzati's objections are baseless.  First, Mr. Pezzati claims that it is improper for any funds to be donated before distribution to the Class.  The Settlement, however, provides that at least ***two attempts*** shall be made over an 18-month period to distribute the Net Settlement Fund to Class Members before any funds are donated to the university programs.  Moreover, the Ninth Circuit and several other courts have approved class settlements with similar provisions regarding distribution of residual funds.  Second, Mr. Pezzati contends that the settlement amount may be illusory because it assumes an unrealistic response rate.  Mr. Pezzati asserts that the parties should state the expected response rate in the disclosure regarding the estimated average per share recovery.  The Ninth Circuit has explained, however, that the PSLRA requires the parties to disclose the estimated average per share recovery based on a 100% response rate.  The Notice does exactly that. Mr. Pezzati's calculation also suffers from at least two errors based on incorrect assumptions about the maximum per share recovery under the Settlement and the number of shares that may be eligible to participate.

The Settlement is the product of years of arm's-length negotiations between the parties and their counsel, facilitated most recently by an experienced mediator, Jonathan B. Marks of

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

1   MarksADR, LLC.  After weighing the risks and benefits of continued litigation, Apple believes

2   that the Settlement adequately resolves the claims in the Action and provides a fair and

3   reasonable recovery to Class Members.

4                                              **BACKGROUND**

5   **I.        PROCEDURAL HISTORY.**

6               On June 29, 2006, Apple announced it was starting an independent investigation into its

7   past stock option practices.  Several derivative actions were filed immediately in federal and state

8   court, but no securities fraud class action was filed until August 24, 2006, when plaintiffs Martin

9   Vogel and Kenneth Mahoney filed this action ("*Vogel I*").  The *Vogel I* complaint asserted claims

10  under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act based, in part, on the

11  alleged drop in Apple's stock price after announcements related to the independent investigation.

12  Apple's stock price, however, ***increased*** throughout the second half of 2006 when Apple

13  provided updates regarding the independent investigation and ultimately restated its financial

14  statements on December 29, 2006, thereby negating any viable claim for damages.  Vogel and

15  Mahoney lost interest in their claims.  Only one shareholder—the New York City Employees'

16  Retirement System ("NYCERS")—attempted to revive the case.  In its lead plaintiff motion,

17  NYCERS disparaged the Section 10(b) claim as "de minimis" and asserted that the lion's share of

18  damages was recoverable under Section 14(a).  On January 19, 2007, the Court appointed

19  NYCERS as lead plaintiff.  On March 23, 2007, NYCERS filed a Consolidated Complaint

20  asserting claims based on alleged violations of Section 14(a) and state law disclosure duties.

21  NYCERS abandoned the Section 10(b) claim.

22              On November 14, 2007, the Court granted defendants' motion to dismiss the Consolidated

23  Complaint with prejudice.  NYCERS subsequently moved to amend its complaint to reassert the

24  abandoned Section 10(b) claim, but the Court denied NYCERS's motion on the ground that the

25  claim had been waived.  On June 17, 2008, NYCERS appealed the Court's judgment.  On

26  June 27, 2008, Vogel and Mahoney filed a second purported class action, captioned *Vogel, et al.*

27  *v. Apple Inc., et al.*, Case No. C-08-3123-JF (N.D. Cal.) ("*Vogel II*"), reasserting the

28

                                                        4                  APPLE'S MPA ISO FINAL APPROVAL
                                                                           OF SETTLEMENT - C06-05208-JF

Section 10(b) claim abandoned by NYCERS.  Vogel and Mahoney agreed to stay *Vogel II* pending the resolution of the *Vogel I* appeal.

On January 28, 2010, the Ninth Circuit affirmed the dismissal of NYCERS's Section 14(a) and state law claims but ruled that NYCERS could file an amended complaint. NYCERS filed an amended complaint on March 22, 2010 asserting a Section 10(b) claim. Following an order consolidating *Vogel I* and *Vogel II*, plaintiffs filed the operative complaint, the Corrected First Amended Consolidated Class Action Complaint ("FACC").  According to the FACC, defendants caused Apple to issue false and misleading "financial statements" regarding "Apple's financial performance, executive compensation, and associated expenses."  (FACC ¶ 114.)  These alleged misstatements, plaintiffs claim, "artificially inflated" Apple's stock price during the proposed class period of August 24, 2001 to June 29, 2006.  (*Id*.)

## II.    THE SETTLEMENT.

The parties began settlement discussions in 2008.  These discussions included in-person meetings and telephone conferences in which the parties detailed their factual allegations and legal arguments.  These discussions culminated in a May 19 and 20, 2010 mediation before Jonathan Marks, a nationally-recognized mediator.  (Declaration of Jonathan B. Marks ¶¶ 6-9, 15.)[2]  The parties exchanged written statements before the mediation and made detailed presentations at the mediation before senior client representatives.  (*Id*. ¶¶ 11, 13, 16.)  Following several arm's-length negotiation sessions with Mr. Marks and further direct communications, the parties reached an agreement to resolve the action.  (*Id*. ¶¶ 17-19.)

Under the proposed settlement, Apple agreed to pay $14 million in cash into a settlement fund and implement the following corporate governance measures:

- Enhanced compliance requirements for Apple's Insider Trading Policy;
- Amendments to Apple's corporate bylaws to clarify the "advance notice" provisions for shareholder proposals for the annual proxy statement; and
- Amendments to the charter of the Board's Compensation Committee requiring consideration of "clawback" provisions for executive grants.

---

[2] The Declaration of Jonathan B. Marks is attached as Exhibit F to the Barry Declaration.

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

Apple also agreed to extend until at least May 1, 2013, measures adopted in connection with the 2008 settlement of the derivative actions, which were set to expire on May 1, 2011.  These include:  (1) implementing an Equity Award Grant Practices Policy; (2) appointing a Trading Compliance Committee; (3) amending the charter of the Board's Compensation Committee; (4) amending its Corporate Governance Guidelines; (5) implementing a Corporate Minutes Procedure; and (6) implementing a Unanimous Written Consent Procedure.[3]  Apple agreed to donate a total of $2.5 million to corporate governance programs at twelve universities.  Apple also agreed to pay separately the reasonable costs of administering and distributing the settlement fund and reasonable attorneys' fees and expenses as awarded by the Court to Plaintiffs' Counsel.

### III.   PRELIMINARY APPROVAL.

On September 28, 2010, the parties filed the Stipulation and Agreement of Settlement and moved for preliminary approval.  Following a hearing on October 7, 2010, the Court entered the Preliminary Approval Order and directed that notice be given to potential Class Members.

On October 21, 2010, the parties received an objection from Theodore Frank on behalf of purported Class Member Patrick Pezzati.  Mr. Pezzati asserted the proposed donations may violate Circuit precedent regarding *cy pres* distributions.  He also expressed concern about Plaintiffs' Lead Counsel's alleged affiliation with two programs designated to receive donations.  The parties found the objections to be without merit because the proposed donations complied in all respects with applicable law and the selection of the twelve programs had nothing to do with any affiliations with the parties or counsel.  Nevertheless, to expedite final approval of the Settlement and distribution of the benefits to the Class, the parties entered into the Amended Stipulation and Agreement of Settlement on November 12, 2010 (the Stipulation), and requested entry of a proposed amended preliminary approval order.

The Stipulation restructured Apple's payment obligations so that, instead of paying $14 million into the Settlement Fund and donating $2.5 million to the twelve programs, Apple would pay $16.5 million into the Settlement Fund.  The Stipulation identified nine corporate governance programs that will receive any funds remaining in the Net Settlement Fund following payment of

---

[3] The details of these measures are available in the Stipulation.

6

Class Members' claims.  The parties specifically excluded three of the originally designated twelve programs because of affiliations with Plaintiffs' Lead Counsel or Apple.  The parties do not believe that they or their counsel have affiliations with the nine programs designated in the Stipulation.  The proposed amended preliminary approval order set forth a revised schedule to provide Class Members additional time to review the Settlement and specified that Proofs of Claim could be submitted online and by nominees.

On November 15, 2010, Mr. Frank, on behalf of Mr. Pezzati, filed an opposition to the parties' request for preliminary approval.  Mr. Pezzati claimed that the (1) *cy pres* component of the Settlement was improper; and (2) inclusion of a provision regarding residual funds suggested the $16.5 million settlement amount was "illusory."  (Pezzati Opp. at 1:25-28.)  Mr. Pezzati requested that (a) the proposed detailed notice be amended to state Plaintiffs' Lead Counsel's estimate of the likely response rate of Class Members and (b) Plaintiffs' Lead Counsel disclose whether any faculty at the nine universities designated in the Stipulation previously served as expert witnesses for Grant & Eisenhofer P.A. ("G&E").  (*Id.* at 7:25-8:23.)

On November 19, 2010, the Court heard arguments from the parties' counsel and Mr. Frank.  Plaintiffs' Lead Counsel confirmed that one or two individuals employed by the designated universities had served as expert or consulting witnesses for G&E, but on totally unrelated cases several years ago.  After considering the arguments and the papers submitted by the parties and Mr. Pezzati, the Court entered the Amended Preliminary Approval Order on November 22, 2010.  The Court also approved the parties' proposed form of the Notice and Publication Notice.

On December 8, 2010, the Claims Administrator began mailing the Notice to Class Members who could be identified with reasonable effort.  (Declaration of Claims Administrator on Notice Implementation ¶ 10.)[4]  On December 8, 2010, the Claims Administrator also caused the Publication Notice to be published in *Investor's Business Daily* and transmitted over *Business Wire*.  (*Id.* ¶¶ 8-9.)  As of January 7, 2011, the parties have not received any objections to the

---

[4] The Declaration of Claims Administrator on Notice Implementation is attached as Exhibit B to the Barry Declaration.

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

1   Settlement, other than Mr. Pezzati's November 15, 2010 objection.  The last day to file an

2   objection or request exclusion from the class is January 21, 2011.  Apple will respond to any

3   other objections and/or exclusion requests in its reply papers.

**LEGAL STANDARD FOR FINAL APPROVAL**

5           A court reviewing a class action settlement for approval pursuant to Fed. R. Civ. P.

6   23(e)(2) should consider: "the strength of plaintiffs' case; the risk, expense, complexity, and

7   likely duration of further litigation; … the amount offered in settlement; the extent of discovery

8   completed, and the stage of the proceedings; the experience and views of counsel; … and the

9   reaction of the class members to the proposed settlement."  *Officers for Justice v. Civil Service*

10  *Comm'n of City & Cnty of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

11          A settlement fairness hearing is not intended to be a trial on the merits.  *Id*.  Nor is the

12  "proposed settlement … to be judged against a hypothetical or speculative measure of what ***might***

13  have been achieved by negotiators."  *Id*. (emphasis in original).  The court's duty is "to reach a

14  reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

15  between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

16  adequate to all concerned."  *Id*.  The "decision to approve or reject a settlement is committed to

17  the sound discretion of the trial judge because he is exposed to the litigants, and their strategies,

18  positions, and proof."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citations

19  and internal quotations marks omitted).

20          The parties reached this Settlement after more than three years of hard-fought litigation,

21  including an appeal, numerous in-person and telephone conferences, and arm's-length negotiation

22  sessions with a mediator.  The parties were represented by experienced counsel and had sufficient

23  information to evaluate the merits of the claims and the benefits of the Settlement.  (Declaration

24  of Jonathan B. Marks ¶¶ 16-24.)  The Settlement satisfies Rule 23 and should be finally approved.

25  **I.      THE SETTLEMENT PROVIDES SUBSTANTIAL RECOVERY FOR THE CLASS
            IN LIGHT OF THE WEAKNESSES IN PLAINTIFFS' CLAIMS AND THE RISKS
26          AND EXPENSE OF CONTINUED LITIGATION.**

27          Plaintiffs face a significant risk their claims will be dismissed at the pleadings or summary

28  judgment stage and they will not be able to show that any putative Class Members suffered

8

1  recoverable damages.  Continued litigation will involve significant expense and require years to

2  resolve.  The Settlement, by contrast, provides substantial and immediate benefits for the Class.

3  **A.      The FACC's Allegations Do Not Give Rise To Section 10(b) Liability.**

4  Plaintiffs base their Section 10(b) claim on alleged misstatements issued between 1996

5  and 2006.  The FACC, however, specifies only three stock option grants:  (i) a January 12, 2000

6  grant to Apple's CEO, Steve Jobs; (ii) a January 17, 2001 grant to members of Apple's Executive

7  Team; and (iii) an October 19, 2001 grant to Mr. Jobs.  None of these grants supports a

8  Section 10(b) claim.

9  All claims based on statements made before August 24, 2001, are time-barred because a

10  Section 10(b) claim must be brought "not later than" 5 years after the alleged misstatement was

11  made.  28 U.S.C. § 1658(b); *see also In re Heritage Bond Litig.*, 289 F. Supp. 2d 1132, 1147-48

12  (C.D. Cal. 2003).  Plaintiffs may not assert claims based on statements made after August 24,

13  2001, that simply repeat earlier alleged misstatements.  To state a claim under Section 10(b), a

14  plaintiff must identify an actual "violation" of the statute—a false and misleading statement that

15  proximately caused economic loss.  28 U.S.C. § 1658(b); 15 U.S.C. § 78u-4(b)(4).  Thus, no

16  liability arises from a statement that merely fails to correct a prior false statement.  *See In re*

17  *Apple Computer, Inc. Deriv. Litig.*, No. C 06-4128 JF, slip op. at 9-10 n.8 (N.D. Cal. Nov. 19,

18  2007); *see also In re Affiliated Computer Serv. Deriv. Litig.*, 540 F. Supp. 2d 695, 701 (N.D. Tex.

19  2007); *Hulliung v. Bolen*, 548 F. Supp. 2d 336, 338 & n.1 (N.D. Tex. 2008).

20  Plaintiffs cannot assert a viable Section 10(b) claim based on the grants of January 12,

21  2000, January 17, 2001, and October 19, 2001.  The combination of plaintiffs' belated filing of

22  their complaint and their voluntary dismissal of the Section 10(b) claim on March 23, 2007, bars

23  all claims based on the three grants under the 5-year statute of repose.  *See* 28 U.S.C. § 1658(b);

24  *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1014 (N.D. Cal. 2007).

25  The FACC's allegations also do not satisfy the heightened pleading requirements of the

26  PSLRA and Fed. R. Civ. P. 9(b).  To state a Section 10(b) claim, a plaintiff must allege, among

27  other things, that the defendant made a material misrepresentation or omission that proximately

28  caused the plaintiff to suffer an economic loss.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-

42 (2005).  The January 12, 2000 grant was properly dated and accounted for—a conclusion independently confirmed by the SEC following its investigation.  Both the January 12, 2000 and October 19, 2001 grants were cancelled, and therefore, they could have no material impact on Apple or its shareholders.  *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1998).

   **B.**  **Plaintiffs Cannot Plead Or Prove Loss Causation.**

  Plaintiffs also cannot satisfy their burden to plead and prove loss causation.  The PSLRA requires a plaintiff to plead and prove a direct causal connection between a material misrepresentation and an economic loss.  *See* 15 U.S.C. § 78u-4(b)(4).  A plaintiff cannot satisfy its burden merely by showing a stock drop following an announcement of negative news.  Rather, after identifying the corrective disclosure that reveals the relevant truth, plaintiffs must show that the stock price decline was caused by the earlier misrepresentation and not by factors unrelated to the alleged fraud.  *Dura*, 544 U.S. at 343-44; *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008); *In re Tellium, Inc. Sec. Litig.*, No. Civ. A. 02cv5878FLW, 2005 WL 2090254, at *4 (D.N.J. Aug. 26, 2005).

  When Apple corrected the accounting for misdated stock options by issuing its December 29, 2006 restatement, investors did not suffer at all.  Apple's stock price ***increased*** after the December 29, 2006 disclosure and continued to increase thereafter:



Note:  Data from CRSP.  Apple closing stock price from 6/29/06 through 3/29/07.

Indeed, Apple's stock price has increased by more than ***290 percent*** from December 29, 2006 to

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

the present.

Any attempt to make Apple's June 29, 2006 announcement a "corrective disclosure" fails as a matter of law.  The June 29, 2006 press release merely announced the commencement of an investigation and did not correct, in any manner, any allegedly false financial statements on which plaintiffs base their claim.  *See Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 888-89 (N.D. Cal. 2008) (announcement of internal investigation did not constitute a "corrective disclosure"); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007) (same).

Moreover, the change in Apple's stock price after June 29, 2006, was within the normal volatility range for Apple stock and consistent with the technology industry downturn.  Apple's stock price began declining in early 2006, in part because of concerns about iMac sales and its ability to maintain sales and profit levels.  The decline sharpened by the summer of 2006.  Several stock indices, including those tracking technology stocks, were trending downward during the same period.  Apple's stock price continued to decline after June 29, 2006, in parallel with market and industry indices.  The NASDAQ, the S&P 500, and the Dow Jones Industrial Average indices, for example, all declined on June 30, 2006.  Moreover, several industry-specific indices tracking stock prices of Apple and similar companies declined on June 30, 2006:



Note:  The industry indices are indexed to $50.67, the closing stock price of Apple Inc. on 7/14/06.  Data are from CRSP and Bloomberg for 6/22/06-7/17/06.

Based on the historical movement of Apple's stock price relative to market and industry indices,

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

Apple's stock price would have been expected to decline along with the market on June 30, 2006. Statistical analysis of these historical trends indicates the slight decline in Apple's stock price on June 30, 2006 was well within the expected range of fluctuation.  In fact, on the next trading day after June 30, 2006 (July 3, 2006), Apple's stock price increased, again in parallel with market indices like NASDAQ and industry indices like NASDAQ Computer.  Plaintiffs, therefore, cannot satisfy their burden to show that the decline in Apple's stock price was proximately caused by the alleged fraud.  15 U.S.C. § 78u-4(b)(4); *see In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 695 (D.N.J. 2006) (mere temporal proximity between disclosure and stock price decline insufficient to prove loss causation).

**C.**     **Plaintiffs Cannot Prove That Class Members Suffered Recoverable Damages.**

Even if plaintiffs overcome these barriers to recovery, they likely will not be able to prove that many—or any—Class Members can recover significant damages.  Under the PSLRA, only shareholders who purchased shares above the mean trading price of Apple stock in the 90 days following an alleged corrective disclosure (the "look-back" price) and who held those shares until the end of the class period are eligible for recovery.  15 U.S.C. § 78u-4(e)(1); *Dura*, 544 U.S. at 343-44.  If, as Apple contends, the corrective disclosure occurred on December 29, 2006, when Apple restated its financial statements, then no Class Member can recover damages because Apple's stock never traded above the applicable look-back price ($88.30) during the Class Period:



Note:  Data from CRSP and Bloomberg.  Apple Inc. closing stock price from 7/2/01 through 3/29/07.  90-Day Average Apple Stock Price (12/29/06 – 3/28/07), is the mean of the Apple closing stock prices in the 90 calendar days following 12/28/06.

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

1  Alternatively, if one assumes, as plaintiffs contend, that the corrective disclosure date was

2  June 29, 2006, when Apple announced its independent investigation, the mean trading price is

3  $65.71.  Apple's stock traded above $65.71 on a limited number of days during the Class Period:



Note:  Data from First Amended Consolidated Complaint and CRSP.  Apple closing stock price from 7/2/01 through 3/30/07.

16  Moreover, only Class Members who purchased shares on those limited days *and* held their shares

17  until the end of the Class Period are eligible to recover damages.  Thus, the vast majority of Class

18  Members will not meet these requirements.

19       Finally, accepting the FACC's allegations as true, the maximum possible per share

20  recovery for shareholders is $1.70.  This figure assumes not only that the relevant corrective

21  disclosure occurred on June 29, 2006 (which it did not), but also that plaintiffs can prove that the

22  entire stock price decline on June 30, 2006 (from $58.97 to $57.27), was caused by misstatements

23  relating to Apple's option practices.  Plaintiffs would likely recover much less than $1.70 per

24  share if they prevailed at trial because the minor decline in Apple's stock price on June 30, 2006,

25  was attributable to factors other than the alleged fraud, such as concerns about Apple's iPod sales

26  and the general economic downturn.

27       The proposed $16.5 million Settlement, therefore, represents a significant recovery

28  because the same Class Members who would likely be eligible for recovery if plaintiffs prevailed

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

1   at trial will be eligible under the Settlement to recover up to a maximum of $1.70 per share.

2          **D.      The Expected Costs And Duration Of Litigation Also Favor The Settlement.**

3          The Settlement's benefits must also be considered in light of the likely expense of

4   proceeding to trial and the possible duration of the litigation. *Officers for Justice*, 688 F.2d at

5   626. The Action will be contested vigorously at great cost and distraction to all parties. There

6   will be extensive motion practice, scores of depositions, voluminous document productions, and

7   wide-ranging discovery spanning years. A trial likely will require several weeks and any

8   judgment will be subject to appeal. After years of litigation, Class Members ultimately may

9   recover nothing.

10          By contrast, under the Settlement, Class Members are eligible to recover up to $1.70 per

11   share depending on, among other factors, when they purchased their shares, the purchase price,

12   whether they held their shares at the end of the Class Period, and the total number of claims

13   submitted. Apple's agreement to implement new corporate governance measures and to extend

14   measures adopted for the 2008 derivative settlement provides additional, substantial benefits to

15   the Class. Moreover, the costs of administering and distributing the Net Settlement Fund and

16   Plaintiffs' Counsel's reasonable attorneys' fees and expenses will not be deducted from the Net

17   Settlement Fund. Apple will pay those costs, fees, and expenses separately. Thus, the entire Net

18   Settlement Fund—$16.5 million, less Taxes—will be available for distribution to the Class.

19   **II.     THE STAGE OF THE PROCEEDING FAVORS APPROVAL OF THE SETTLEMENT.**

20

21          The Ninth Circuit has stated that "formal discovery is not a necessary ticket to the

22   bargaining table where the parties have sufficient information to make an informed decision about

23   settlement." *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citations

24   omitted). Here, the parties had ample information to evaluate their claims and defenses. The case

25   was litigated vigorously for more than three years, including an appeal to the Ninth Circuit. The

26   parties and their counsel participated in extensive settlement discussions and a two-day mediation

27   proceeding, fully exploring the strengths and weaknesses of their positions.

28

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

1    Defendants made several presentations that included detailed analyses of the defects in

2  plaintiffs' claims.  Plaintiffs also had access to, among other documents, (1) Apple's SEC filings;

3  (2) press releases, public statements, news articles, securities analysts' reports, and other

4  publications disseminated by or concerning Apple; (3) publicly available information regarding

5  the SEC's investigation of Apple's option practices; (4) legal proceedings regarding Apple's

6  option practices; and (5) other publicly available information about Apple.  Plaintiffs' Lead

7  Counsel were aware of the terms of the 2008 derivative settlement and the SEC's determination

8  not to bring an enforcement action against Apple.  Accordingly, the Action had reached a stage in

9  which the parties understood the risks of further litigation and the benefits of settlement.  *See id*.

10  **III.    THE EXPERIENCE AND VIEWS OF COUNSEL SUPPORT APPROVAL OF**
11  **         THE SETTLEMENT.**

12    The parties were represented by counsel with extensive experience with securities and

13  complex class actions.  *Garner v. State Farm Mut. Auto. Insur. Co.*, No. CV 08 1365 CW (EMC),

14  2010 WL 1687832, at *13-14 (N.D. Cal. Apr. 22, 2010) ("Where a settlement is the product of

15  arms-length negotiations conducted by capable and experienced counsel, the court begins its

16  analysis with a presumption that the settlement is fair and reasonable.").  The Settlement was

17  negotiated with the direct involvement of NYCERS, a sophisticated institutional investor.  *In re*

18  *Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (participation of

19  sophisticated institutional investor lead plaintiffs in settlement process supports approval of

20  settlement).

21    While Apple and its counsel believe defendants would have prevailed on all claims, they

22  recognize that further litigation would be protracted, burdensome, expensive and distracting.

23  Litigation would also divert critical resources and attention from other activities important to

24  Apple's business and its shareholders' interests.  Apple and its counsel believe that resolution of

25  this Action on the terms set forth in the Stipulation is in the best interests of the company and its

26  shareholders and should be finally approved.

27

28

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

## IV.   THE REACTION OF THE SETTLEMENT CLASS SUPPORTS A FINDING THAT THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

The Settlement was widely publicized and has generated only one objection to date—from Mr. Pezzati on November 15.  The Notice was mailed to potential Class Members and several major securities brokers and other nominees.  (Declaration of Claims Administrator on Notice Implementation ¶¶ 10-11.)  The Publication Notice was published in a well-known financial newspaper, *Investor's Business Daily* (*id*. ¶ 8), and transmitted over *Business Wire* (*id*. ¶ 9), where it was re-published by other wire services and media outlets.  The parties also established a website and a 1-800 number that potential class members could access to inquire about the Settlement and how to file a Proof of Claim.  (*Id*. ¶¶ 12, 14.)  Thousands of individuals have accessed the website and/or the 1-800 number since December 8, 2010.

Mr. Pezzati is the only purported Class Member who has objected so far to the Settlement.  As discussed below, his objection has no merit.  Regardless, the absence of significant challenges to the Settlement supports a finding that it is fair, reasonable, and adequate and should be approved.  *See, e.g.*, *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007) (citing cases in which class settlements were approved over limited objections and opt outs).

## V.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE.

The "fair, reasonable, and adequate" standard also governs the Court's review of the Plan of Allocation.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).  Courts have explained it is "reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).  The Plan of Allocation detailed in the Notice complies with that standard.

The Plan of Allocation provides for pro rata distribution of the Net Settlement Fund based on Class Members' maximum potential recovery under federal securities laws.  (Notice §§ 44-48, 51-52.)  The Supreme Court in *Dura* held that class members who sold all of their shares before the alleged corrective disclosure are not eligible for recovery.  *Dura*, 544 U.S. at 342.  Thus, the

16

1    Plan of Allocation provides that only Class Members who held Apple stock after June 29, 2006—

2    the date on which plaintiffs allege Apple corrected its prior misstatements—may potentially

3    recover.  (Notice §§ 44-48, 51-52.)  As discussed above, the PSLRA limits shareholder recovery

4    based on the applicable look-back price over or within the 90-day period after June 29, 2006.  15

5    U.S.C. § 78u-4(e)(1).  The Plan of Allocation provides that Class Members who purchased shares

6    at a price equal to or below the applicable look-back price are not eligible for recovery.  (Notice

7    §§ 44-48, 51-52.)  On the other hand, Class Members who purchased shares at a price above the

8    applicable look-back price are eligible for potential recovery.  (*Id*.)  Finally, the Plan of

9    Allocation states that Class Members may recover up to $1.70 a share, the difference between the

10   closing price of Apple stock on June 29, 2006 ($58.97) and June 30, 2006 ($57.27).  That amount

11   represents the maximum possible per share recovery for Class Members if plaintiffs could

12   overcome the multiple barriers discussed above and prevail at trial.

13       The Plan of Allocation states that funds shall be distributed based on the Claims

14   Administrator's calculation of each Authorized Claimant's pro rata share of the Net Settlement

15   Fund pursuant to the Recognized Claim formula described above.  (Notice §§ 44, 49.)  If any

16   funds remain in the Net Settlement Fund after the initial distribution, the Claims Administrator

17   must make a reasonable effort to have eligible Class Members cash their distributions.  (*Id*.)  If

18   unclaimed funds remain one year after the initial distribution, the Claims Administrator must

19   make a second distribution to eligible Class Members, up to a maximum of $1.70 per share.  (*Id*.)

20   Thus, the Net Settlement Fund remains available to the Class—and only the Class—for two

21   separate distributions.

22       The Plan of Allocation provides that if any funds remain six months after the second

23   distribution, the balance shall be donated to nine corporate governance programs.  (*Id*.)  Although

24   there may be no funds remaining after the second distribution, the parties believed it would be

25   prudent to include this provision.  At that point the Claims Administrator will have made multiple

26   attempts to identify eligible Class Members and to distribute available funds.  Thus, additional

27   efforts to distribute funds to Class Members would likely be futile.  Providing in advance for the

28   donations will permit the parties to resolve the Settlement without further burdening the Court.

17

APPLE'S MPA ISO FINAL APPROVAL
OF SETTLEMENT - C06-05208-JF

1  Finally, the donations will support education and research regarding the types of corporate

2  governance issues raised in the FACC.  Courts have approved donations of residual funds to non-

3  profit organizations in other securities class action settlements.  *See, e.g.*, *In re Magma Design*

4  *Automation, Inc. Sec. Litig.*, No. C-05-2394 CRB, slip op. (N.D. Cal. Mar. 27, 2009); *In re*

5  *Paracelsus Corp. Sec. Litig.*, No. Civ.A. H-96-3464, 2007 WL 433281 (S.D. Tex. Feb. 6, 2007).

6  **VI.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.**

7          As set forth in the Stipulation, Defendants have stipulated to certification of the Class

8  pursuant to Fed. R. Civ. P. 23(b)(3) solely for settlement purposes.  Class certification shall be

9  binding only with respect to the Settlement and only if the Order and Final Judgment becomes

10  Final.

11  **VII.   THE COURT SHOULD REJECT MR. PEZZATI'S OBJECTION.**

12          Mr. Pezzati objects to the Settlement on two grounds.[5]  First, Mr. Pezzati claims that the

13  *cy pres* component of the Settlement is improper because unclaimed funds should be distributed

14  to Class Members.  (Pezzati Opp. at 3:10-6:7.)  Second, Mr. Pezzati asserts that the $16.5 million

15  settlement amount may be "illusory" because it is unlikely, based on his calculation of the

16  required response rate, that distribution to eligible Class Members will exhaust the Net Settlement

17  Fund.  (*Id.* at 6:9-7:21.)  Mr. Pezzati contends that the Notice should include Plaintiffs' Lead

18  Counsel's estimate of Class Members' likely response rate.  (*Id.* at 7:23-8:23.)  The Court should

19  reject Mr. Pezzati's contentions and approve the Settlement.

20          **A.    The Proposed Donation Of Residual Funds Complies With Applicable Law.**

21          Mr. Pezzati asserts that the proposed donation of residual funds is improper because the

22  Class Members in this Action are readily identifiable and will not be fully compensated for their

23  alleged damages.  (Pezzati Opp. at 3:10-6:7 (*citing* American Law Institute, *Principles of the Law*

24  *of Aggregate Litigation* (the "ALI Principles"), § 3.07 (2010))).  Mr. Pezzati has misstated the

25  terms of the Plan of Allocation and ignored applicable precedent.

26          As discussed above, the entire Net Settlement Fund is available to Class Members not

27  _____

28  [5] As discussed above, Plaintiffs' Lead Counsel already responded to Mr. Pezzati's request for additional disclosures regarding expert witnesses used by G&E.

1    only for an initial distribution, but for a second distribution one year later, up to the maximum per

2    share recovery of $1.70.  Thus, contrary to Mr. Pezzati's claim, all available settlement funds *will

3    be* "directed to individual claiming class members at least up to the point that class members fully

4    recover." (Pezzati Opp. at 6:4-7.)  Donations will be made to the designated programs 18 months

5    after the initial distribution and *only if* there are unclaimed funds after two rounds of distributions

6    to Class Members.  As the Court noted at the November 19, 2010 hearing, the programs may

7    receive only nominal donations.  (11/19/10 Hearing Tr. at 7:6-9, 11:5-13.)

8           The Ninth Circuit has approved use of *cy pres* awards for unclaimed settlement funds.  *Six

9    Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990).  Other Circuits

10   also have approved distribution of unclaimed funds to non-profit and charitable organizations.

11   *E.g.*, *In re Pharm. Indus. AWP Litig.*, 588 F.3d 24, 34-36 (1st Cir. 2009); *Powell v. Georgia-*

12   *Pacific Corp.*, 119 F.3d 703, 705-07 (8th Cir. 1997); *see also* A. Conte & H.B. Newberg, 4

13   *Newberg on Class Action* § 11:20, at 28-31 (4th ed. 2002).  District courts in this Circuit have

14   approved settlements that included *cy pres* awards of unclaimed funds.  *E.g.*, *Hopson v.*

15   *Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009)

16   (approving settlement that included *cy pres* award to United Way and Family and Children's Law

17   Center in Marin County after "second distribution"); *In re Rambus Inc. Sec. Litig.*, No. C-06-4346

18   JF, slip op. (N.D. Cal. May 14, 2008) (approving settlement that included *cy pres* award to non-

19   sectarian, not-for-profit, 501(c)(3) organization after two distributions).

20          Moreover, the Settlement complies with the ALI Principles, even though they are not

21   binding on this Court.  *AWP Litig.*, 588 F.3d at 35 (Question "is not whether the settlement

22   complies with the ALI draft, but whether the district court abused its discretion in approving the

23   *cy pres* part of the settlement.").  Section 3.07(a) states that if class members can be identified

24   "through reasonable effort" and the distributions "are sufficiently large to make individual

25   distributions economically viable," settlement funds should be distributed to the class.  Section

26   3.07(b) recommends "further distributions" if funds remain after the initial distribution.  Finally,

27   Sections 3.07(b) and (c) acknowledge that if "specific reasons exist that would make . . . further

28   distributions impossible or unfair," a *cy pres* award to "a recipient whose interests reasonably

19

1   approximate those being pursued by the class" may be appropriate.  The Settlement complies with

2   these guidelines:  After making a reasonable effort to identify potential claimants, the Claims

3   Administrator will make two separate distributions to Class Members over an 18-month period.

4   If and only if funds remain after these two distributions will they be donated to organizations that

5   focus on issues raised in the FACC.  The donations provide some benefit, albeit indirect, to Class

6   Members who cannot recover because they sold their shares before June 29, 2006 or purchased

7   shares below the applicable look-back price.  Mr. Pezzati's objection to the residual funds

8   donation provision should be rejected.

9          **B.       Mr. Pezzati's Contentions About The Estimated Response Rates Are Baseless.**

10          Mr. Pezzati asserts that more than 14% of eligible Class Members must submit claims to

11   exhaust the Net Settlement Fund.  That is unlikely, he asserts, because response rates "are quite

12   frequently much lower than that."  (Pezzati Opp. at 6:18-21.)  Mr. Pezzati contends the Notice

13   should include Plaintiffs' Lead Counsel's estimate of likely response rates.  Mr. Pezzati has

14   ignored the PSLRA's requirements, and his calculations are fundamentally flawed.

15          The PSLRA requires notice documents to state "the amount of the settlement proposed to

16   be distributed to the parties to the action, determined in the aggregate and on an average per share

17   basis."  15 U.S.C. § 78u-4(a)(7)(A).  The Ninth Circuit has explained that the "best reading of the

18   PSLRA notice requirements is that the estimated average recovery per share must be based on **all**

19   of the shares in the class.  This interpretation has the salutary effect of ensuring uniformity."  *In*

20   *re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 971 (9th Cir. 2007) (emphasis added).

21   Consistent with this mandate, the Notice disclosed that (i) "Plaintiffs' Lead Counsel estimates

22   that owners of approximately 234.8 million shares of Apple common stock may be eligible for

23   potential recovery" and (ii) the "average per share recovery" will be "approximately $0.07"

24   ($16.5 million / 234.8 million shares) if all eligible shareholders elect to participate in the

25   Settlement.  (Notice § 1.)  The Notice thus complied with the PSLRA in all respects.

26          The *Veritas* court explained that one has the ***option*** of providing an additional estimate of

27   the average per share recovery "based on . . . how many class members are likely to file claims,"

28   but only if the projected response rate is "explicitly disclosed."  496 F.3d at 971.  The parties

20

1   agree that the response rate likely will be less than 100%—and disclosed that in the Notice

2   (§ 1)—but providing a specific projection would be sheer conjecture.  The parties explained

3   previously that they cannot provide a projection because they do not have records of each sale of

4   Apple stock during the Class Period and do not know exactly how many Class Members will be

5   eligible for recovery or file timely claims.  (11/19/10 Hearing Tr. at 9:19-11:10.)  Complying with

6   Mr. Pezzati's demand, therefore, would mislead the Class about the average per share recovery.

7        Mr. Pezzati's calculation of the 14% required response rate also is wrong. [6]  Mr. Pezzati

8   assumed incorrectly that the maximum potential recovery is $0.07 per share.  (Pezzati Opp. at

9   6:18-21.)  The Notice states clearly that Class Members may recover up to *$1.70* per share.

10  (Notice §§ 49, 52.)  Accordingly, a significantly lower number of claims could exhaust the Net

11  Settlement Fund.  Mr. Pezzati also relied erroneously on Plaintiffs' Lead Counsel's estimate of

12  Apple's average daily trading volume (17.5 million shares) during the Class Period.  Mr. Pezzati

13  crudely assumed that all shares purchased on *each* of the 96 days on which Apple's stock traded

14  above $65.71 (or a total of 1.68 billion shares) are eligible for recovery.  That estimate is

15  unsupportable: the total number of outstanding shares of Apple stock during the Class Period

16  never exceeded 1 billion shares.  By contrast, Plaintiffs' Lead Counsel reasonably estimated that

17  approximately 234.8 million shares may be eligible for recovery.  (Notice § 1.)  Mr. Pezzati's

18  objection thus should be disregarded.

19                                   **CONCLUSION**

20       For the foregoing reasons, Apple respectfully requests that the Court grant final approval

21  of the Settlement and the Plan of Allocation.

22  Dated: January 7, 2011                    O'MELVENY & MYERS LLP

23
                                             By:_____/s/ George A. Riley_____
24                                                      George A. Riley
                                               Attorneys for Defendant APPLE INC.
25

26
    _____
27  [6] Mr. Pezzati's calculation appears to be as follows: $16.5 million settlement amount / (17.5
    million shares (average daily trading volume) X 96 days X 14% response rate) = $0.07 maximum
28  per share recovery.

                                   21