THEODORE H. FRANK (SBN 196332)
tedfrank@gmail.com
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
(703) 203-3848

*Attorney for Objector Patrick Pezzati*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: Apple Inc. Securities Litigation | Case No. C 06-5208 JF |
| This document relates to: ALL ACTIONS | **CLASS ACTION** |
| | **CONTINGENT OBJECTION TO SETTLEMENT** |
| | Judge:     Honorable Jeremy Fogel<br>Date:      November 19, 2010<br>Time:      9:00 a.m.<br>Courtroom: 3, Fifth Floor |

**STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))**

1. Whether the court should approve the settlement under Rule 23(e).

**Objector's Answer**: The court should approve the settlement if and only if class members who are shareholders are not injured by the settlement's contingent provision that corporate assets be diluted by *cy pres* payments to unrelated third parties.

2. Whether the court should approve class counsel's attorneys' fee request.

**Objector's Answer**: The court should approve the fee request only to the extent it complies with 15 U.S.C. § 77z-1(a)(6) and 15 U.S.C. § 78u-4(a)(6). The objector does not object to the fee request to the extent that at least $14,138,234 is actually paid to class members, but the fee request should be reduced *pro rata* if less than that amount is paid to the class after all claims are made.

3. Whether the court should award attorneys' fees to objector's attorneys.

**Objector's Answer**: To the extent that more than $11,638,234 is actually paid to class members, a reasonable percentage of that additional amount should be awarded to objector's attorneys for their role in causing the modification of the settlement to the benefit of the class, with such sum to be deducted from the award of fees to class counsel.

## INTRODUCTION

The settling parties won preliminary approval of the settlement over Patrick Pezzati's objection by representing to the court that there was little chance that class members would not exhaust the settlement fund and any impermissible *cy pres* provisions would be effectively mooted. Docket No. 138 at 1. But when the settling parties moved for settlement approval weeks after class notice was issued, they were suddenly silent about the response rate of the class in making claims, though the vast majority of claims are made shortly after notice is received, and though the PSLRA requires that any attorney fee award can only be approved based on the amount "actually paid" to the class. If one draws the appropriate adverse inference from this silence, it is ***not*** the case that the settlement fund will be exhausted, and the settling parties are attempting to pull a bait and switch upon the class and the Court.

Pezzati hopes that this is incorrect: if, indeed, the $16.5 million settlement fund will be exhausted, he has no objection to the settlement or the fee request. But the Court cannot approve the settlement until that precondition is satisfied: under the current settlement structure, if the settlement fund is not exhausted, class members will be injured because their shareholdings will be diluted by impermissible *cy pres* payments to non-class members. The parties do not cite to a single case that addresses this issue; the fact that courts may have previously approved *cy pres* awards that injure class member/shareholders without explicitly considering the problem that the *cy pres* awards would injure class members who are shareholders is not persuasive or binding precedent.

Separately, as the Court will recall, the parties responded to Pezzati's objection by modifying the settlement to increase the amount of the settlement fund available to be paid to class members from $14 million to $16.5 million. If the Court approves the settlement, Pezzati submits that he is entitled to attorneys' fees for his role in improving the settlement to the extent that this increase in the size of the fund results in actual increased payments to class members; such fees should be deducted from class counsel fees so as not to dilute the amount available to the class. But, as mentioned above, the settlement should not be approved if any of the settlement fund goes to *cy pres*.

## BACKGROUND

Class member Patrick Pezzati purchased 100 shares (pre-split) of Apple stock at a price of $14.86 on July 30, 2002, and is thus a member of the class entitled to object to the settlement. Mr. Pezzati (144 Dry Hill Rd, Montague, MA 01351, (413) 367-9641) is a current Apple shareholder. The litigation and settlement depletes shareholder assets to pay attorneys and third parties while providing him with no pecuniary recovery.

On October 21, Mr. Pezzati notified the settling parties of his intent to object to the settlement on the grounds that the settlement, *inter alia*, violated Ninth Circuit precedent and American Law Institute standards for *cy pres* distributions. Pursuant to *In re Mercury Corp. Sec. Litig.*, No. 08-17372, 2010 WL 3239460 (9th Cir. Aug. 18, 2010), Pezzati requested the voluntary disclosure of information relating to possible conflicts of interest.

In response, the parties restructured the settlement to remove the most obvious conflicts of interest and to combine the pool of *cy pres* funding and class pecuniary recovery. On November 12, the settling parties filed a joint submission with this Court and represented that they had "agreed to amend the Settlement in order to address Mr. Frank's [sic][1] objection." Pezzati opposed the motion for preliminary approval.

Upon the representation of the settling parties that any *cy pres* relief would be *de minimis* because the settlement fund would be exhausted, the Court gave preliminary approval to the settlement. However, when the parties filed their papers in support of final approval, they failed to indicate how many claims had been made on the settlement fund. Mr. Pezzati therefore renews his objection, contingent upon whether the settlement fund will be exhausted by class claims.

I.  **A settlement with a *cy pres* component is a breach of fiduciary duty to the class when class members are identifiable and have not been fully compensated.**

A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). Where a court is confronted with a settlement-only class certification, the court must look to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "Settlements that take place prior to formal class certification require a higher standard of fairness." *Molski*, 318 F.3d at 953 (*quoting Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)).

---

[1] Mr. Frank is not the class member or the objector. Mr. Pezzati is, and Mr. Frank and the Center for Class Action Fairness act as his attorney.

Class counsel owes a fiduciary duty to their putative class clients to put the clients' interests first in negotiating a settlement. This is especially true in a shareholder class action, where many of the class members are current shareholders, and thus would be injured by any dissipation of corporate assets to benefit recipients other than class members.

*Cy pres* may be appropriate when the class is not easily ascertainable, or where the transaction costs of distributing a small settlement among many class members is not feasible. *Principles* § 3.07(a). But that is plainly not the case here where the settlement already provides for a structure to distribute funds to class members.

Distribution of any leftover funds is not appropriate under the ALI *Principles*, which states that "the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair." *Id.* § 3.07(b). *Accord Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 435-36 (2d Cir. 2007) (cy pres only appropriate where class members are difficult to identify, when funds involved are too small to distribute economically to class members, or when distributing unclaimed funds to class members would result in windfall). Again, this is not the case: there is no difference in cost between distributing seven cents a share to claimants or nine or ten cents a share to claimants. The increased distribution would not be a windfall: the plaintiffs' complaint alleges approximately $10/share in damages plus pre-judgment interest (Docket No. 105, ¶¶ 463 and XIII(d)), and the current settlement pays an average of $0.07 a share with a cap of $1.70/share. *Cf. In re Pharmaceutical Industry Avg. Wholesale Price Lit.*, 588 F.3d 24 (1st Cir. 2009) (approving *cy pres* of unclaimed funds because district court ensured full recovery of class members first).

There is no reason to have **any** *cy pres* distribution in this settlement, other than the class counsel's preference to have a few discrete powerful third parties realize hundreds of thousands of dollars of benefit instead of thousands of faceless clients realize only a few

dollars of benefit. But the nine corporate governance programs are not the class counsel's clients; the class members are. And the failure of class counsel and the class representative to put the interests of the class first in negotiating this settlement raises severe Rule 23(a)(4) concerns: how can they be said to fairly and adequately represent the class when they are pursuing the interests of third parties at the expense of the class?

The ALI is not alone in noting the inherent conflicts of interest raised by *cy pres* distributions. *See, e.g.*, Martin H. Redish, *et al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010); John Beisner, *et al.*, *Cy Pres: A Not So Charitable Contribution to Class Action Practice* (2010);[2] Sam Yospe, *Cy Pres Distributions in Class Action Settlements*, 2009 COLUMBIA BUS. L. REV. 1014; Theodore H. Frank, *Cy Pres Settlements*, CLASS ACTION WATCH (March 2008); Editorial, *When Judges Get Generous; A better way to donate surpluses from class-action awards*, WASH. POST (Dec. 17, 2007); Adam Liptak, *Doling Out Other People's Money*, N.Y. TIMES (Nov. 26, 2007); *In re Pet Food Prods. Liab. Litig.*, 2010 WL 5127661 at *23 (3d Cir. Dec. 16, 2010) (Weis, J., concurring and dissenting). The way to avoid these conflicts of interest is to forbid *cy pres* awards except in the narrow circumstance where non-windfall pecuniary relief to the class is not feasible.

While the settling parties cite *Newberg* and cases where courts have granted *cy pres* awards, neither *Newberg* nor any of those cases addressed or rejected the *Principles*.[3]

---

[2] Mr. Beisner is the former head of the class action practice at defendant Apple's counsel, O'Melveny & Myers LLP.

[3] *Newberg*—which performs no public policy analsyis on the *cy pres* issue—is especially incoherent on the question. At first, *Newberg* claims that *cy pres* distributions "to organizations whose functions are unrelated, even to confer benefits indirectly on injured class members, have been recognized as proper by trial and appellate courts, when the terms of a class settlement so provide." *Newberg On Class Actions* § 10.25 at 541 (4th ed. 2002). But within the next two pages, *Newberg* continues "The future of cy pres distributions of class recovery balances remains uncertain… The validity and priority of various approaches for the distribution of unclaimed class recovery funds await Supreme Court clarification." *Id.* at 542-43. Moreover, *Newberg* says that the Ninth Circuit has "rejected the validity of cy pres" in an opinion that "apparently remain[s] the law." *Id.* at

They cannot be considered persuasive precedent. The only case that the settling parties cite that mention the *Principles*, *In re Pharmaceutical Industry Avg. Wholesale Price Lit.*, 588 F.3d 24 (1st Cir. 2009), approved *cy pres* only after consumers were fully compensated. Here, the plaintiffs have alleged that shareholders suffered $10/share in damages plus pre-judgment interest. Docket No. 105, ¶¶ 463 and XIII(d). But relief is capped at $1.70. The plaintiffs do not explain the discrepancy. Unless the plaintiffs expressly admit that they made a frivolous allegation in their complaint in violation of Rule 11, it is inappropriate to cap recovery at less than the amount requested in the complaint. (And if plaintiffs do make that admission, the Court should consider sanctions, as it would be inappropriate for the attorneys to profit from a violation of Rule 11.)

**II.   A settlement with a *cy pres* component is a breach of fiduciary duty to the class in *any* shareholder action where class members include current shareholders.**

The class here consists of current and former shareholders of Apple; Pezzati is a current shareholder. When a settlement provides for funds to go from the corporate defendant to third-party *cy pres* recipients, this adversely affects class members who are current shareholders: it means the value of their shares is being depleted for purposes of the settlement. This is simply impermissible under Fed. R. Civ. Proc. 23(a)(4). *See for comparison* 28 U.S.C. § 1713 (forbidding class action settlements in non-securities cases that result in net loss to class members).

The plaintiffs defend the *cy pres* relief by saying that class members will benefit from the donations to the corporate governance programs. This is highly questionable, but it is irrelevant even if it is true. If class members wish to benefit from their money going to corporate governance programs, then they can decide to make their own donations, and do not need a court to order that their money be donated on their behalf. *Cy pres* in a

---

539 & n. 1 (*citing Kline v. Coldwell, Banker & Co.*, 508 F.2d 226 (9th Cir. 1974) *and Six Mexican Workers*). Nothing in the treatise attempts to reconcile these inconsistent statements with one another; in short, anyone can find a sentence in *Newberg* to support virtually any debatable proposition relating to *cy pres*.

shareholder class action is thus distinguishable from *cy pres* in a consumer class action where the class members are not the owner of the defendant that is paying the *cy pres*.

This is a question of first impression; while there exist courts that have granted *cy pres* in shareholder class actions, none have explicitly considered the question of the appropriateness of *cy pres* relief under Rule 23(a)(4) where the *cy pres* is coming from the class members' pockets.

**III.   The court cannot rule on the fairness of the settlement or the attorneys' fees until it knows the amount the class is "actually paid."**

Class counsel has requested $2,361,766 in fees and expenses to be paid from the $16.5 million settlement fund (leaving $14,138,234 in the settlement fund for the class). But the class counsel fee request omits the critical factual predicate: the amount "actually paid" to the class. Under the PSLRA, any attorneys' fees must be based on the amount "actually paid" to the class. 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6).

If at least $14,138,234 is "actually paid" to the class, Pezzati does not object to the approval of the settlement or the fee-and-expenses request of $2,361,766 (minus a deduction for attorneys' fees for Pezzati). If less is paid to the class, however, this means that there has been a *cy pres* diversion that means both that class members who have submitted claims are not being fully compensated and that class members such as Pezzati who are current shareholders are having their assets depleted so that the class counsel can issue a press release trumpeting the *cy pres* donation, and the settlement is objectionable. At a minimum, the fee request should be reduced *pro rata* to reflect the difference between the amount "actually paid" to the class and the $14,138,234 that the fee request is based upon.

The Court should defer ruling on the fairness of the settlement or the fee request until the parties make an accurate representation to the Court how much will be "actually paid" under the settlement.

### IV.   Class notice failed to meet the explicit requirements of 15 U.S.C. § 77z-1.

Under 15 U.S.C. § 77z-1(a)(7)(B), the class notice "*shall*" contain "the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim." *Accord* 15 U.S.C. § 78-u4(a)(7)(B). Pezzati pointed out this flaw in the hearing on the parties' motion for preliminary approval, but the parties pooh-poohed it. The notice is thus facially deficient under the PSLRA. Pezzati will waive this objection if the settlement fund is exhausted by payouts to the class without diversion to *cy pres*.

### V.   Pezzati is entitled to attorneys' fees if the class benefits from his objection.

If the settling parties are correct, the amended settlement will pay over $14,138,234 to class members (including interest on the settlement fund). But had Pezzati not objected, the settlement fund would have only provided $11,638,234 to class members, with $2.5 million diverted to third parties. Pezzati has generated as much as a $2.5 million benefit to the class; he thus reserves the right to make a request for attorneys' fees capped at 3.4% of the difference between the amount actually paid to the class and $11,638,234, to be paid from the class counsel's attorney fee award. *See, e.g., In re Prudential Ins. Co. of Am.*, 273 F. Supp. 2d 563, 572 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695, 697 (3rd Cir. 2004) (awarding objector's attorneys' fees out of Class Counsel's fee award); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010) (same).

A "litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This principle applies to objector's counsel and plaintiff's counsel alike. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 (9th Cir. 2002). Moreover, an objector's counsel is entitled to fees and expenses even if the objector continues to object to the modified settlement and that objection is overruled. *See White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974).

Attorneys whose actions confer benefits upon class members are entitled to file a claim for reasonable compensation for the attorneys' efforts. *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 413

(E.D. Wis. 2002). When such a claim is presented, the court should consider whether the efforts of counsel for the objectors "improved the settlement, assisted the court, and/or enhanced the recovery in any discernible fashion." *Id.* (internal quotations omitted). Here, the Objector and his counsel have accomplished all three: class members will potentially recover 21% more than they would have had there been no objection.

*Second*, the Objector has improved the *process* of the settlement. Class action settlements require a higher level of scrutiny than ordinary cases because there always exists a potential conflict of interest between the class and class counsel. *Thorogood v. Sears*, 627 F.3d 289, 293-94 (7th Cir. 2010) (citing long list of authority for proposition); *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Mars Steel v. Continental Ill. Nat. Bank & Trust*, 834 F.2d 677, 681-2 (7th Cir. 1987). Because the risk of collusive settlements is much greater in class actions than in ordinary litigation, it is "imperative" that a trial judge conduct a "careful inquiry" into the fairness of a proposed class settlement. *Id.* at 682.

Objectors aid this process by providing independent scrutiny of a proposed settlement. "Objectors serve as a highly useful vehicle for class members, for the court and for the public generally" in evaluating the terms of a proposed settlement to ensure that it is fair, adequate, and reasonable. *Great Neck*, 212 F.R.D, at 412; MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.643 (2004) ("Objectors can also play a beneficial role in opening a proposed settlement to scrutiny and identifying areas that need improvement."). Objectors benefit the class action settlement process by reintroducing an adversarial aspect to settlements where an adversarial relationship between the parties is otherwise lacking. This adversarial dynamic serves a crucial role in assisting the trial court in ensuring that the proposed settlement meets the requisite legal standards of Fed. R. Civ. P. 23. *See In re General Motors Corp. Pick-up Truck Fuel Tank Litig.*, 55 F.3d 768, 803 (3d Cir. 1995) ("where there is an absence of objectors, courts lack the independently derived information about the merits to oppose proposed settlements").

Pezzati will thus make a formal request for attorneys' fees upon disclosure of the amount actually paid to the class, contingent upon the court's approval of the settlement and the class being actually paid at least $11,638,234.

## CONCLUSION

The settling parties won preliminary approval of the settlement over Patrick Pezzati's objection by representing to the court that there was little chance that class members would not exhaust the settlement fund and any impermissible *cy pres* provisions would be effectively mooted. Docket No. 138 at 1. But they have not yet followed through on that representation by disclosing the amount the class will be "actually paid" under the settlement, despite the fact that the PSLRA requires this disclosure before any attorneys' fees are awarded. Pezzati thus renews his objection in the contingency that the settlement fund is not actually exhausted by class claims. The court cannot approve the settlement or attorneys' fees until the settling parties make this disclosure.

Pezzati is entitled to attorneys' fees should the class be actually paid more than they would have before the settlement was modified, and reserves the right to make a formal request for such fees (payable from class counsel's fees) upon disclosure of the amount actually paid to the class.

Pezzati's counsel will attend the fairness hearing.

Dated: January 21, 2010

>	Respectfully submitted,
>
>	*/s/ Theodore H. Frank*
>	Theodore H. Frank
>	**CENTER FOR CLASS ACTION FAIRNESS**
>	1718 M Street NW
>	No. 236
>	Washington, DC 20036
>	(703) 203-3848
>	Attorney for Objector Patrick Pezzati

PROOF OF SERVICE

I declare that:

I am a resident of the State of Virginia, over the age of 18 years, and not party to the within action; my business address is 1718 M Street, NW, No. 236, Washington, DC 20036.

On January 21, 2010, pursuant to Local Rule 23-2, I served the attached:

CONTINGENT OBJECTION TO SETTLEMENT

by forwarding the document as a PDF file attached to an e-mail sent to the following Designated Internet Site:

> Securities Class Action Clearinghouse
> Stanford University School of Law
> Crown Quadrangle
> Stanford, CA 94305-8612
> scac@law.stanford.edu

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 21, 2010.

> */s/ Theodore H. Frank*
> Theodore H. Frank