JAY W. EISENHOFER (*admitted pro hac vice*)
MICHAEL J. BARRY (*admitted pro hac vice*)
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 N. Market Street
Wilmington, Delaware 19801
Telephone:     (302) 622-7000
Facsimile:     (302) 622-7100
E-Mail:        jeisenhofer@gelaw.com
               mbarry@gelaw.com

*Attorneys for Lead Plaintiff New York City*
*Employees' Retirement System*

(Additional Counsel Listed on Signature Page)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| | Case No. C-06-5208-JF |
| IN RE APPLE INC. SECURITIES LITIGATION | CLASS ACTION |
| | **LEAD PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| | Date:      February 25, 2011 |
| | Time:      9:00 a.m. |
| | Courtroom: 3, 5th Floor |
| | Judge:     Hon. Jeremy Fogel |

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

ARGUMENT ............................................................................................................................ 1

I.       THE SETTLEMENT AND PLAN OF ALLOCATION ARE FAIR AND
         REASONABLE AND SHOULD BE APPROVED ....................................................... 1

         A.       The Overwhelming Positive Response To The Settlement Counsels
                  In Favor Of Approval........................................................................................ 2

         B.       The Distribution Of Any Settlement Funds Remaining After Repeated
                  Distribution To Shareholders To Designated Educational Institutions
                  Is Appropriate.................................................................................................... 3

         C.       The Objections That Options Transactions Should Be Included And
                  That The June 26, 2009 Cutoff Date Is Unfair Are Without Merit
                  And Should Be Rejected .................................................................................... 6

II.      The Objections to the Motion For Attorneys' Fees and Expenses Should
         Be Overruled ................................................................................................................. 7

         A.       Notice Of The Settlement And Lead Plaintiffs' Fee Application
                  Were Timely ...................................................................................................... 7

                  1.       The "Contingent" And Other Objections To The Requested
                           Attorneys' Fees And Expenses Are Without Merit ............................... 10

                  2.       Objector Pezzati's Purported Reservation Of Rights To
                           Request Attorneys' Fees Should Be Rejected........................................ 11

         B.       The Reaction Of The Class Confirms the Reasonableness Of The
                  Requested Fees................................................................................................. 13

CONCLUSION ........................................................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*In re 2TheMart.com, Inc. Sec. Litig.*,
    114 F. Supp. 2d 955 (C.D. Cal. 2000) .................................................................. 5

*In re American Int'l Group, Inc. Sec. Litig.*,
    265 F.R.D. 157, 182 S.D. ...................................................................................... 6

*In re AOL Time Warner S'holder Derivative Litig.*,
    No. 02 civ. 6302 (SWT), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) .................. 8

*In re BankAmerica Corp. Sec. Litig.*,
    210 F.R.D. 694 (E.D. Mo. 2002) .......................................................................... 8

*Bellows v. NCO Fin. Sys., Inc.*,
    No. 3:07-cv-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008).................... 13, 14

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ....................................................................... 2

*Brannon v. Household Int'l* Inc.,
    236 F. Appx. 285 (9th Cir. 2007)........................................................................ 8, 9

*Buxbaum v. Deutsche Bank AG*,
    216 F.R.D 72 (S.D.N.Y. 2003) ............................................................................ 8

*In re Countrywide Fin. Corp. Sec. Litig.*,
    --- F.R.D. ----, 2009 WL 7322254 (C.D. Cal. Dec. 9, 2009) ................................ 5

*DeJulius v. New England Health Care Emps. Pension Fund*,
    429 F.3d 935 (10th Cir. 2005)............................................................................... 8

*Dura Pharm. Inc. v. Broudo*,
    544 U.S. 336 (2005)............................................................................................. 6, 7

*Enstar Corp. v. Senouf*,
    535 A.2d 1351 (Del. 1987) .................................................................................. 9

*Fernandez v. Victoria Secret Stores, LLC*,
    No. CV 06-04149 MMM, 2008 WL 8150856 (C.D. Cal. July 21, 2008)............... 13

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008)................................................................................ 10

*Fleury v. Richemont North Am., Inc.*,
No. 05-4525 EMC, 2008 WL 4829868 (N.D. Cal. Nov. 4, 2008)..........................................12

*Hartless v. Clorox Co.*,
No. 06-2705, 2011 WL 197542 (S.D. Cal. Jan. 20, 2011)....................................................12

*In re Heritage Bond Litig.*,
Nos. 02-ML-1475-DT (RCX) et al., 2005 WL 1594389 (C.D. Cal. June 10, 2005)..............13

*Hunt v. Imperial Merch. Servs.*,
No. c-05-04993 DMR, 2010 U.S. Dist. LEXIS 111243 (N.D. Cal. Oct. 7, 2010) ...................4

*Knight v. Red Door Salons, Inc.*,
No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .............................................13

*In re Leapfrog Enter., Inc. Sec. Litig.*,
No. 03-05421, 2008 WL 5000208 (N.D. Cal. Nov. 21, 2008) ..............................................12

*In re Lorazepam & Clorazepate Antitrust Litig.*,
205 F.R.D. 369 (D.D.C. 2002)...........................................................................................11

*Marshall v. Holiday Magic, Inc.*,
550 F.2d 1173 (9th Cir. 1977)..........................................................................................3, 8

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)................................................................................................2

*Miller v. Republic Nat'l Life Ins. Co.*,
559 F.2d 426 (5th Cir. 1977)................................................................................................8

*National Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .........................................................................................2

*In re Patriot Am. Hospitality Inc. Sec. Litig.*,
No. mdl-c-00-1300, 2005 WL 3801595 (N.D. Cal. Nov. 30, 2005)........................................2

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) ..................................................................................................5

*In re Portal Software Inc. Sec. Litig.*,
No. 03-cv-5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............................................2

*Powell v. Georgia-Pacific Corp.*,
19 F.3d 703 (8th Cir. 1997)..................................................................................................4

*In re Rambus, Inc. Sec. Litig.*,
No. 06-4346-JF, slip op. (N.D. Cal. April 30, 2010) ..............................................................4

*In re Rambus, Inc. Sec. Litig.*,
No. 06-4346-JF, slip op. (N.D. Cal.  May 14, 2008) ............................................................10

iii

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992) ........................................................................................ 13

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) .......................................................................................... 9, 10

*Six Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ............................................................................................ 4

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................................... 13

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ........................................................................................... 8, 10

*Vizcaino v. Microsoft Corporation*,
290 F.3d 1043 (9th Cir. 2002) .......................................................................................... 12

*In re Washington Public Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ............................................................................................ 11

*Wilson v. Airborne, Inc.*,
No. 07-770-VAP, 2008 WL 3854963 ............................................................................... 11

## STATUTES

15 U.S.C. § 78u-4(b)(4) ......................................................................................................... 6

15 U.S.C. §78u-4(e) ............................................................................................................... 7

## OTHER AUTHORITIES

American Law Institute, *Principles of the Law of Aggregate Litigation* ....................................... 4

3 Newberg on Class Actions § 10:17 (4th ed.) ............................................................................ 4

REPLY IN SUPPORT OF SETTLEMENT
CASE NO. C-06-5208-JF

The New York City Employees' Retirement System ("Lead Plaintiff") submits this Reply in further support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 142, "Settlement Motion"), and (2) Lead Plaintiff's Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (Dkt, No. 143, "Fee Motion"), and in response to the objections filed by (1) objector Patrick Pezzati ("Pezzati") filed on January 21, 2011 (Dkt. No. 148); (2) objector Fred Fekrat ("Fekrat") filed on January 24, 2011 (Dkt. No. 149); (3) objector George W. Sibley ("Sibley") filed on January 24, 2011 (Dkt. No. 150); as well as the letter objections of Dr. Marshall J. and Ann S. Orloff, Winston Gouzoules, and Charles S. Kyriazos, which have not been filed with the court.

# ARGUMENT

## I.   THE SETTLEMENT AND PLAN OF ALLOCATION ARE FAIR AND REASONABLE AND SHOULD BE APPROVED

The substantial monetary recovery obtained for the Class was achieved only after over four years of hard-fought litigation, through the skill, work, tenacity, and effective advocacy of Plaintiffs' Counsel to address the legal and factual issues that posed substantial risks to the claims of the Class.  For the reasons explained in Lead Plaintiff's Settlement Motion, the Declaration of Carolyn Wolpert in Support of Lead Plaintiff's Motion for Final Approval of the Proposed Settlement ("Lead Plaintiff Decl."), attached as Exhibit A to the Declaration of Michael J. Barry in Support of Motion for Final Approval of Settlement and Plan of Allocation and Motion for An Award of Attorneys' Fees and Reimbursement of Expenses. (Dkt. No. 144, "Barry Declaration"), Lead Plaintiff and Lead Counsel submit that the $16.5 million cash Settlement provides an excellent recovery and is in the best interests of the Class.  The proposed Plan of Allocation is also fair and reasonable to Class Members.  Accordingly, because the Settlement and the Plan of Allocation are fair and reasonable, Lead Plaintiff respectfully requests that they be approved.

REPLY IN SUPPORT OF SETTLEMENT
CASE NO. C-06-5208-JF

**A.      The Overwhelming Positive Response To The Settlement Counsels In Favor Of Approval**

The Class's reaction to the Settlement supports approval.  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of [the settlement] are favorable to the class members."  *National Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  As set forth in the Supplemental Declaration of the Claims Administrator (the "Suppl. Oseas Decl."), attached hereto as Exhibit A, Lead Plaintiff made every reasonable effort to provide Notice by mail and by publication to all ascertainable Class members, and established a toll-free hotline, email address and website to handle inquiries.  *Id.* ¶¶ 13-15, 18.  The Notice provides, among other things, details about the nature of the lawsuit, the settlement, and the rights of Class members to object or request exclusion. See  *Id.* ¶¶ 5, 19-20.  Through these efforts, the Administrator reached hundreds of thousands of Class Members, fully informing them of the Settlement terms and the Class Members' rights, including their right to object to the Settlement Agreement or any part of it (including the Plan of Allocation and Plaintiffs' Counsel's application for attorneys' fees and reimbursement of expenses).  Only *six* potential Class Members have objected (or purported to object).  These five objections represent a mere .0004127% of the Notice Packets mailed to Class Members.

This is an exceptionally strong indication of the fairness of the Settlement.  *See*, *e.g.*, *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (objections from only 16% of class held "persuasive" of settlement's adequacy); *In re Patriot Am. Hospitality Inc. Sec. Litig.*, No. MDL-C-00-1300, 2005 WL 3801595, at *3 (N.D. Cal. Nov. 30, 2005) (favoring settlement where "[t]he claims administrator has received hundreds of proof of claim forms. . . . [and] no objector has come forward. . . . [and] two class members have requested exclusion"); *In re Portal Software Inc. Sec. Litig.*, No. 03-cv-5138, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007) (approving settlement with no objections and only one exclusion) (citing *Churchill Village v. General Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (approving settlement where there were 45 objections and 500 exclusions from a class of 90,000 members)); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

459 (9th Cir. 2000) (approving settlement where one objection was received from a class of 5,400 members); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977)¸ *overruled on other grounds* (approving settlement where one percent of the class objected).

### B.   The Distribution Of Any Settlement Funds Remaining After Repeated Distribution To Shareholders To Designated Educational Institutions Is Appropriate

Objector Pezzati raises a "contingent" objection to final approval of the settlement.  His objection is "contingent" because it is raised *if and only if* there are unclaimed funds after all efforts to distribute the settlement funds are unsuccessful (i.e., there are *cy pres* distributions to corporate governance programs).  *See* Pezzati Objection, Dkt. No. 148 at 2 ("if…the $16.5 million settlement fund will be exhausted, [Pezzati] has no objection to the settlement or the fee request.").  Pezzati's objection to the potential for *cy pres* distributions of unclaimed settlement funds, if any, is without merit.[1]

The Settlement provides that distribution will be made to corporate governance programs at designated academic institutions *only if* any funds remain o the now increased $16.5 million settlement fund *after distribution and redistribution* to the Class, specifically:

> Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement.  If any funds remain in the Net Settlement Fund by reason of un-cashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of any unpaid costs or fees incurred in administering the Net Settlement Fund for such re-distribution, up to a maximum distribution of $1.70 per share (the difference between the closing price of Apple common stock on June 29, 2006 ($58.97) and June 30, 2006 ($57.27)).  If after six months after such re-distribution any funds shall remain in the Net Settlement Fund, then such balance shall be contributed in nine equal payments to the following nine corporate governance programs …

Notice of Proposed Settlement, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Expenses (the "Notice"), ¶ 49, attached as Exhibit A-1 to the Amended Stipulation and Agreement of Settlement.

---

[1]  The Court rejected similar objections raised by Pezzati to preliminary approval of the settlement.  *See* Dkt. Nos. 137-39.

REPLY IN SUPPORT OF SETTLEMENT
CASE NO. C-06-5208-JF

Pezzati asserts that there is not "a single case" that addresses his argument that *cy pres* payments of residual funds to non-class members are impermissible. *See* Pezzati Objection, Dkt. No. 148, at 2. Pezzati is wrong. Quite the contrary, the Ninth Circuit has specifically approved use of *cy pres* distributions of unclaimed settlement funds. *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). Other Circuits and district courts have as well. *See, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 34 (1st Cir. 2009) ("courts have allowed parties to establish *cy pres* funds when money remained from the defendant's payout after money for damages had been distributed to class members"); *Powell v. Georgia-Pacific Corp.*, No. 96-3531, 119 F.3d 703, 705-706 (8th Cir. 1997) (refusing, after money in a settlement fund remained, to distribute the remainder to class members because "neither party ha[d] a legal right" to the unclaimed amount); *Hunt v. Imperial Merch. Servs.*, No. C-05-04993 DMR, 2010 U.S. Dist. LEXIS 111243 (N.D. Cal. Oct. 7, 2010); *see also* 3 Newberg on Class Actions § 10:17 (4th ed.) ("The [commonly used] cy pres approach…puts the unclaimed fund[s] to [their] next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class…."); *see also id.* (citing further cases recognizing the propriety of distributing funds that were unclaimed by class members to charitable and other public interest organizations for the indirect benefit of the class).

Pezzati further asserts that there is no authority for *cy pres* distributions in shareholder class actions (as distinguished from consumer class actions) where class members include current shareholders. *See* Pezzati Objection, Dkt. No. 148, at 6-7 (asserting that *cy pres* distributions in shareholder class actions "is a question of first impression"). This assertion is also meritless. *See In re Rambus, Inc. Sec. Litig.*, No. 06-4346-JF, slip op. (N.D. Cal. April 30, 2010) (approving backdating settlement that included contingent *cy pres* distribution provision to non-profit organization for funds remaining after two distributions to class members).

Pezzati also claims that "[d]istribution of any leftover funds is not appropriate under the [American Law Institute, *Principles of the Law of Aggregate Litigation* (the "ALI Principles")]." Pezzati Objection, Dkt. No. 148, at 4-5. Once again, Pezzati is wrong. The Settlement fully complies with the ALI Principles, which are not binding on this Court in any event. *See In re*

*Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 35 (holding the issue "is not whether the settlement complies with the ALI draft, but whether the district court abused its discretion in approving the *cy pres* part of the settlement."). Sections 3.07(b) and (c) of the ALI Principles recognize that if "specific reasons exist that would make…further distributions impossible or unfair," a *cy pres* distribution to "a recipient whose interests reasonably approximate those being pursued by the class" may be appropriate. The Settlement here is perfectly consistent with the ALI guidelines. *Cy pres* distributions will only occur, if at all, after the Claims Administrator has made two separate distributions over an 18-month period of time. If and only if "leftover" funds remain after these two distributions, they will be distributed to organizations that focus on corporate governance issues. These organizations clearly have interests that "reasonably approximate" the interests of Class Members, especially given the corporate governance failures alleged in the complaint.

Finally, Pezzati complains that while the complaint in this action alleged that Apple's share price dropped approximately $10 per share, the Settlement caps damages per share at $1.70, and that the limitations placed on recoverable damages are not fully explained in the Notice. *See* Pezzati Objection, Dkt. No. 148, at 4-6. Once again, Mr. Pezatti is wrong.

The Notice clearly explains that the $1.70 cap on damages is the product of the difference between the closing price of Apple common stock on June 29, 2006 ($58.97), when the Company disclosed certain "irregularities" regarding in the accounting for stock options, and the next day, June 30, 2006 ($57.27). Notice ¶ 49. The significant decline in the stock price alleged in the Amended Consolidated Complaint, and referenced by Mr. Pezatti (Pezatti Objection, Dkt. No. 148, at 6), took place over a two week period following the disclosure at issue. *See* Dkt No. 105, ¶¶ 458-63. Although there are significant arguments that a court may consider the impact on a company's stock price in an extended period following an alleged "corrective disclosure", there is myriad caselaw standing for the proposition that a single day "even window" is appropriate for purposes of establishing loss causation in a claim under Section 10(b) of the Exchange Act. *See*, *e.g.*, *In re Countrywide Fin. Corp. Sec. Litig.*, --- F.R.D. ----, 2009 WL 7322254, at *28 (C.D. Cal. Dec. 9, 2009) ("Same-day correlation is consistent with market efficiency."); *see also In re*

*2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 963-64 (C.D. Cal. 2000) (same).   For

example, in *In re American International Group, Inc. Sec. Litig.*, 265 F.R.D. 157, 182 S.D.N.Y.

(2010), the court succinctly explained how the absence of a same-day stock price drop can have

the effect of vastly limiting damages in a class action under the federal securities laws:

> [I]f the market on which AIG stock traded was indeed efficient – an assumption
> and requirement of the fraud-on-the-market presumption – then the absence of a
> price decline on the day a fraud was disclosed will strongly indicate that there was
> also no price increase on the day the fraud occurred [i.e., no artificial inflation
> attributable to the false statements].  Thus, to the extent a Defendant can show that
> there was no price decrease in AIG stock on the date a misrepresentation was
> disclosed [i.e., the corrective disclosure date(s)], the Court views this showing as
> strong evidence that there was no price change on the date of the
> misrepresentation, thus rebutting the fraud-on-the-market presumption.

*Id.*  The fact that there is significant authority limiting the ability of shareholders to prove "loss

causation" through an impact on the price of a company's stock following several days (let alone

two weeks) after a corrective disclosure was a substantial factor in Lead Plaintiffs' agreement to

settle the case.  If Mr. Pezzati or his counsel has complaints about the limitations imposed on a

shareholder's ability to demonstrate economic loss by the PSLRA[2] and by judicial application of

the Supreme Court's decision in *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, 346 (2005), those

arguments should be addressed to Congress.


**C.     The Objections That Options Transactions Should Be Included And That The
         June 26, 2009 Cutoff Date Is Unfair Are Without Merit And Should Be
         Rejected**

Mr. Fekrat objects to the Settlement the ground that the plan of allocation excludes

options transactions and excludes those who purchased and sold shares during the Class Period.

As an initial matter, Fekrat's objection is not proper, as he fails to provide proof that he purchased

---

[2]  *See* 15 U.S.C. § 78u-4(b)(4) ("In any private action arising under this chapter, the plaintiff shall
have the burden of proving that the act or omission of the defendant alleged to violate this chapter
caused the loss for which the plaintiff seeks to recover damages.").

REPLY IN SUPPORT OF SETTLEMENT
CASE NO. C-06-5208-JF

shares of Apple stock during the Class Period.[3]  Nonetheless, his objection is without merit in any event.

Option holders were not a part of the Class, and therefore cannot properly be included in the Settlement.[4]  With regard to his complaint that the exclusion of purchasers of Apple shares who sold their shares on or before June 29, 2006 "defies logic," (Fekrat Obj. at ¶ 3), Mr. Fekrat may be right, but such exclusion is also mandated by statute and by the Supreme Court.  *See Dura Pharm. Inc.*, 544 U.S. at 342-46 (prohibiting the recovery of damages for shares sold before the "relevant truth" is disclosed about the fraud); *see also* 15 U.S.C. §78u-4(e) ("the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.").

## II.   THE OBJECTIONS TO THE MOTION FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE OVERRULED

### A.   Notice Of The Settlement And Lead Plaintiffs' Fee Application Were Timely

Dr. Sibley argues that the Fee Motion violates procedural due process because it was not filed before the deadline for filing objections.  He is factually incorrect.  Lead Plaintiff filed the Settlement Motion, the Fee Motion, and all supporting documents — including six detailed declarations — ***before*** the January 21, 2011 objection deadline.  Unlike the situation addressed by the Court in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), the Fee

---

[3]  The Notice requires that individuals wishing to object must "identify the date(s), price(s), and number of shares of all purchases and sales of Apple common stock you made during the Class Period." Notice ¶ 36.  The Orloff Objectors failed to include this information, and Fekrat has not provided this information with respect to his option transactions.

[4]  *See* Dkt. No. 105 at 1 ("Plaintiffs bring this securities fraud class action … on behalf of itself and all other persons or entities who acquired securities *issued by Apple*, between and including August 24, 2001 and June 29, 2006 …").  Options of Apple that may be purchased on various exchanges such as the Chicago Board Options Exchange are not "issued by Apple," but are individual contracts between private investors.  *See also* Dkt. No. 105 at ¶ 484 ("Had Lead Plaintiff and the other members of the Section 10(b) Class known the truth, they would not have purchased Apple's stock or would not have purchased stock at the inflated prices that were paid.").

Motion here was electronically filed with the Court on January 7, 2011, and posted on the www.AppleSecuritiesSettlement.com website on January 10, 2011.  Contrary to Mr. Sibley's argument, therefore, the Fee Motion was thus available not only before the objection deadline, but six weeks before the Final Approval Hearing.

Moreover, Notice was mailed out on December 8, 2010.  Objections were due 44 days later on January 21, 2011.  Courts have repeatedly found such time periods to constitute sufficient notice.  *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-1375 (9th Cir. 1993) (initial notice sent 31 days before the opt-out deadline held to be adequate); *Marshall,* 550 F.2d at 1178 (1977) (approving notice mailed 26 days before opt-out deadline); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 707-08 (E.D. Mo. 2002) (timing of notice comports with due process when "[t]here were three to four weeks between the mailing of class notice and the last date to object") (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120-21 (8th Cir. 1975) (nineteen days notice was enough time to object, particularly when case had been ongoing for two years)); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429-30 (5th Cir. 1977) (in securities fraud class action, a period of "almost four weeks between the mailing of the notices and the settlement hearing" was adequate time, particularly when only one class member objected to the timing and where such class member was a part of the case since its inception).  *See also DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 940 (10th Cir. 2005) (initial notice to nominees mailed 32 days before the opt-out deadline held to be adequate); *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 civ. 6302 (SWT), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) (publication of notice 34 days before the deadline for objections held to be adequate).

Notice of a proposed class action settlement may satisfy the requirements of due process without guaranteeing personal notification to every individual class member.  *See Brannon v. Household Int'l Inc.*, 236 F. Appx. 285, 287-88, & n.1 (9th Cir. 2007) (determining that class notice was adequate and rejecting the proposition that actual notice had to be given to each and every class member). *See also Buxbaum v. Deutsche Bank AG*, 216 F.R.D 72, 80 (S.D.N.Y. 2003) ("It is 'widely recognized that for the due process standard to be met it is not necessary that every

class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected'").  Indeed, as the Ninth Circuit has held:

> [T]he notice in this case was constitutionally sufficient. The Administrator published notices in, among others [national] newspapers, maintained an internet website detailing the settlement and opt out procedures, and mailed a follow-up notice. In addition, the district court noted that quality control procedures were put in place by the Administrator. Given the large size of the class and its geographical distribution, the aforementioned procedures constitute "the best practicable notice" reasonably aimed at reaching the class.

*Brannon*, 271 F. Appx. at 287-88 (citing *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994)).

As set forth in the Supplemental Oseas Declaration, of the total 1,211,562 Notice Packets that were mailed to potential Class members, 31,866 were mailed by the December 8, 2010, mailing deadline set by the Court in the Scheduling Order.  For reasons discussed in the Supplemental Oseas Declaration, as of January 14, 2011, over 1.1 million Notice Packets were mailed to potential settlement class members.  Supp. Oseas Decl.  ¶ 9.  In addition, a copy of the Notice was published in *The Investor's Business Daily* and transmitted over *Business Wire* on December 8, 2010.  *Id.* ¶ 18.  The Class as a whole indisputably had adequate notice.  These objections are also without merit.

Notably, certain of the objectors received notice later than others because they held their shares in "street name" – *i.e.*, in the name of a nominee/brokerage house.  Pursuant to the Scheduling Order, the Claims Administrator used "reasonable efforts to give notice to nominee purchasers such as brokerage firms and other persons and entities who purchased Apple common stock during the Class Period as record owners but not as beneficial owners."  Scheduling Order ¶ 9.  *See* Supp. Oseas Decl. ¶ 7.  In addition, the Scheduling Order provides that "[s]uch nominee purchasers are directed within fourteen (14) days of their receipt of the Notice, to either forward copies of the Notice and Proof of Claim to their beneficial owners, or to provide the Claims Administrator with lists of the names and addresses of the beneficial owners."  Scheduling Order ¶ 9.

That certain brokers were slower than others in forwarding copies of the notice to beneficial owners cannot be blamed on Lead Counsel or any party to this litigation.  That such delays may occur is a byproduct of an individual shareholder's decision to hold securities in "street name".  *See Enstar Corp. v. Senouf*, 535 A.2d 1351, 1354-55 (Del. 1987) (noting that the "attendant risks" of owning stock registered in street name, including the risk that the shareholder may not receive notice of corporate proceedings, are borne by the stockholder).  Moreover, "notice provided to the class members' nominees – *i.e.*, the brokerage house – has been deemed sufficient even if brokerage houses failed to timely forward the notice to the beneficial owners." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (citing *DeJulius*, 429 F.3d at 936 (finding notice sufficient where two beneficial owners received notice of class settlement two weeks after deadline for filing objections and on the same day as the final fairness hearing)); *Torrisi*, 8 F.3d at 1374-75 (concluding notice was sufficient where notice was mailed to some beneficial owners after deadline for filing objections had passed); *Silber*, 18 F.3d at 1453-54 (finding notice adequate where, due to late response of brokerage house, 1000 beneficial owners received notice after the opt-out deadline)).[5]

### 1. The "Contingent" And Other Objections To The Requested Attorneys' Fees And Expenses Are Without Merit

Pezzati raises yet another "contingent" objection to the request for attorneys' fees and expenses based on the potential for *cy pres* distributions and asserts that before approving the fee request the Court must wait until the Claims Administration process is complete, determine the amount, if any, of *cy pres* distributions and then reduce the requested fee based on the amount of such distributions.  Pezzati Objection, Dkt. No. 148 at 7.  This argument is without merit for three reasons.

First, courts routinely grant approval to attorneys' fee requests prior to knowing whether there will be funds leftover for *cy pres* distributions.  *See, e.g.*, *In re Rambus*, No. 06-4346-JF,

---

[5]   Nevertheless, to address any possible concern Court might have on Notice, to the extent substantive objections are received prior to the Fairness Hearing, counsel will address them at that time.

slip op. (N.D. Cal. May 14, 2008) (approving award of attorneys' fees and expenses prior to knowing whether there might be "leftover" *cy pres* funds to be distributed).  Pezzati raises nothing that requires a different result here.  Second, the objection is based on Pezzati's erroneous view of the Settlement.  Pezzati apparently believes the $16.5 million settlement fund will be reduced by the fees awarded to Plaintiffs' Counsel, and that the settlement fund will thus amount to only $14,138,234.  *See* Pezzati Objection, Dkt. No. 148, at 8-10.  This is wrong; Apple will pay Plaintiffs' Counsel's fees and expenses separate and apart from the $16.5 million settlement fund. There will be no reduction in the Settlement Fund.  *See* Notice ¶ 29.  Third, Pezzati does not raise any objection to the reasonableness of the requested attorneys' fees or expenses nor could he.

Objectors Gouzoules, the Orloffs and Kyriazos, however, do object to the fee, but without even mentioning, let alone presenting an analysis of the factors courts consider in evaluating fee awards.[6]  Ninth Circuit jurisprudence, however, is clear: A district court must review several case-specific factors in determining the reasonableness of the fee award for class counsel.  *See In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994).  And, as explained in the Fee Brief (at 10-22), Class Counsel has satisfied each of these elements. Accordingly, these baseless objections should be rejected out of hand and the requested fees and expenses should be approved for the reasons stated in Plaintiffs' Opening Brief.  *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 378 (D.D.C. 2002) (rejecting broad, unsupported objections because "[they] are of little aid to the Court").

### 2. Objector Pezzati's Purported Reservation Of Rights To Request Attorneys' Fees Should Be Rejected

Pezzati purports to "reserve[] the right to make a request for attorneys' fees capped at 3.4% of the difference between the amount actually paid to the class and $11,638,234, to be paid from the class counsel's attorney fee award," Pezzati Objection, Dkt. No. 148, at 8, and states that

---

[6]  Messrs. Gouzoules and Kyriazos's objections are, in fact, nothing more than objections to securities class actions generally.  Neither Mr. Gouzoules nor Mr. Kyriazos offers any reason, explanation, or evidence to support his contention.  As such, their objections are improper and should be overruled.  *Wilson v. Airborne, Inc.*, No. 07-770-VAP, 2008 WL 3854963, at **7-8 (C.D. Cal. Aug. 13, 2008) (rejecting objections that do not address the terms of the settlement).

"Pezzati will…make a formal request for attorneys' fees upon disclosure of the amount actually paid to the class, contingent upon the court's approval of the settlement and the class being actually paid at least $11,638,234." *Id.* at 10.  This purported "right" is based on Pezzati's claim that he somehow *caused* a $2.5 million increase in the settlement fund.  *Id.* at 8-10.  Objector Pezzati's assertion is without merit for three reasons.

First, Pezzati's objection is not a proper motion for attorneys' fees and, therefore, Pezzati's purported reservation of the right to seek attorneys' fees in the future should be denied. *See Hartless v. Clorox Co.*, No. 06-2705, 2011 WL 197542 at *15 (S.D. Cal. Jan. 20, 2011) (overruling objection, denying objector's request for attorneys' fees and granting final approval to settlement and class counsel's request for attorneys' fees; "objector Newman raises this issue [of his attorneys' fees] at the end of his objection and not as a properly brought request for attorneys' fees.").[7] Second, even if there were a valid basis for Pezzati's fee application either now or in the future – which there is not, Pezzati's assertion that his fees could be deducted from an award to Plaintiffs' Counsel is meritless because Plaintiffs' Counsel's fees will not be paid from the Settlement Fund.  *See Fleury v. Richemont North Am., Inc.*, No. 05-4525 EMC, 2008 WL 4829868 (N.D. Cal. Nov. 4, 2008) ("[Objector's] contention that his fees could be taken from the fee award to class counsel is without merit because class counsel is not being paid out of a common fund.").  Third, Pezzati is not entitled to any award of attorneys' fees because he did not cause any increase to the settlement here.  The increased settlement fund in the amended settlement was the result of negotiations between Plaintiffs' Counsel and the defendants in which Pezzati's counsel did not participate.  Indeed, Pezzati's objection to the *cy pres* aspect of the settlement was as meritless with respect to the original settlement terms as it is now with respect to the final terms.  Moreover, the very authority Pezzati cites rejected a similar claim for fees by an objector.  *See Vizcaino v. Microsoft Corporation*, 290 F.3d 1043, 1051-52 (9th Cir. 2002) (holding district court did not abuse its discretion in denying objector's fee application; "Because objectors did not increase the fund or otherwise substantially benefit the class members, they

---

[7] While Pezzati's request for fees should be denied now, Plaintiffs reserve the right to contest any future motion for attorneys' fees he may make.

- 12 -

were not entitled to fees."); *see* Pezzati Objection, Dkt. No. 148, at 8 (citing *Vizcaino*); *see also In re Leapfrog Enter., Inc. Sec. Litig.*, No. 03-05421, 2008 WL 5000208 (N.D. Cal. Nov. 21, 2008) (denying objector's motion for attorneys' fees because objector did not confer a substantial benefit on the class).

**B.     The Reaction Of The Class Confirms The Reasonableness Of The Requested Fees**

The reaction of the class may also be a factor in determining the fee award.  *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *see also Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *13 (C.D. Cal. July 21, 2008) (holding, where three class members objecting and only twenty-nine opting out "indicates that counsel achieved a favorable result for the class, which in turn suggests that they are entitled to a generous fee.").  This is especially so where, as here, the amount of the fee requested is, in fact, ***less*** than what was reported in the Notice.

That only two objections to the fee request were received "is powerful evidence that the requested fee is fair and reasonable."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 594 (S.D.N.Y. 2008) (citing *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97, 103 (S.D.N.Y. 1996) (determining that an "isolated expression of opinion" should be considered "in the context of thousands of class members who have not expressed themselves similarly")); *In re Heritage Bond Litig.*, Nos. 02-ML-1475-DT (RCX) et al., 2005 WL 1594389, at *15 (C.D. Cal. June 10, 2005) (citing *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 327 (E.D.N.Y. 1993) (lack of objections to requested fee supported its reasonableness)); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("The fact that there are no objections to either the Settlement or to Petitioners' request for attorney's fees is strong evidence of the propriety and acceptability of that request.").

"The absence of any meaningful objection by a Class Member is an important factor in evaluating the fairness, reasonableness, and adequacy of the settlement and supports approval of the settlement here."  *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413-W-AJB, 2008 WL

- 13 -

5458986, at *8 (S.D. Cal. Dec. 10, 2008) (citations omitted). Hundreds of thousands of prospective Class members were sent the Notice. Only two objections relating to the Fee Application have been submitted. That is overwhelmingly convincing evidence that the request is fair and reasonable. *Id.*

# CONCLUSION

Based on the foregoing and the entire record herein, Lead Plaintiff respectfully requests that the Court approve the Settlement and Plan of Allocation as fair, reasonable and adequate and in the best interest of the Class, and approve the fee and expense application as requested, and overrule the objections to the fee and expense application.

Dated: February 4, 2011

Respectfully submitted,
**GRANT & EISENHOFER P.A.**

/s/ *Michael J. Barry*
MICHAEL J. BARRY (*admitted pro hac vice*)

JAY W. EISENHOFER (*admitted pro hac vice*)
MICHAEL J. BARRY (*admitted pro hac vice*)
1201 N. Market Street
Wilmington, Delaware 19801
Telephone:    (302) 622-7000
Facsimile:    (302) 622-7100

*Attorneys for Lead Plaintiff New York City*
*Employees' Retirement System*

PATRICE L. BISHOP (CSB. No. 182256)
STULL, STULL & BRODY
10940 Wilshire Blvd., Suite 2350
Los Angeles, CA  90024
Telephone:    (310) 209-2468
Facsimile:    (310) 209-2087

REPLY IN SUPPORT OF SETTLEMENT
CASE NO. C-06-5208-JF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWARD T. LONGMAN
STULL, STULL & BRODY
6 East 45th Street, Suite 500
New York, N.Y. 10017
Telephone:      (212) 687-7230
Facsimile:       (212) 490-2022


GARY S. GRAIFMAN
KANTROWITZ GOLDHAMER & GRAIFMAN
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Telephone:  (845) 356-2560
Facsimile:  (845) 356-3445

*Attorneys for Plaintiffs*
*Martin Vogel and Kenneth Mahoney*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Michael J. Barry, am the ECF User whose ID and password are being used to file this Stipulation and Agreement of Settlement.  In compliance with General Order 45, X.B., I hereby attest that George A. Riley, Douglas R. Young, Yohance C. Edwards, and Patrice L. Bishop have concurred in this filing.

By:    /s/ *Michael J. Barry*
Michael J. Barry