GEORGE A. RILEY (S.B. No. 118304)
SANDEEP N. SOLANKI (S.B. No. 244005)
VIVI T. LEE (S.B. No. 247513)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3828
Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701
E-Mail:         griley@omm.com
                    ssolanki@omm.com
                    vlee@omm.com

Attorneys for Defendant APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Case No. C06-05208-JF |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **APPLE INC.'S REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  ADDITIONAL FACTUAL BACKGROUND ................................................... 1

    A.  The Notice Program ........................................................................... 2

    B.  CAFA Notice ...................................................................................... 3

    C.  Requests for Exclusion ....................................................................... 4

    D.  Objections ........................................................................................... 4

III.  THE SETTLEMENT AND PLAN OF ALLOCATION SHOULD BE
APPROVED ......................................................................................................... 5

    A.  Mr. Frank's Objection To The Plan Of Allocation And The Notice Is
Unavailing .......................................................................................... 6

        1.  The Proposed Donation Of Unclaimed Funds Complies With
Applicable Precedent ............................................................. 6

        2.  Mr. Frank's Objection That Current Shareholders' Holdings Will
Be Unfairly Diluted If Any Funds Are Donated Is Frivolous .................. 10

        3.  The Contents Of The Notice Comply With Applicable Law ................... 10

    B.  The Orloffs' Objection Has No Merit ................................................ 11

    C.  Dr. Sibley's Objection To The Notice Program Is Unfounded ............................. 12

    D.  Mr. Fekrat's Objections Are Inconsistent With The Operative Complaint
And Federal Securities Law ............................................................... 14

IV.  CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992)...................................................................................... 5

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336 (2005) ........................................................................................... 8, 9, 15

*Fidel v. Farley,*
   534 F.3d 508 (6th Cir. 2008)...................................................................................... 14

*In re Critical Path Sec. Litig.,*
   No. C 01-00551 WHA, 2002 WL 32627559 (N.D. Cal. June 18, 2002)................................ 15

*In re Intelligroup Sec. Litig.,*
   468 F. Supp. 2d 670 (D.N.J. 2006) ............................................................................... 9

*In re Magma Design Automation, Inc. Sec. Litig.,*
   No. C-05-2394 CRB, slip op. (N.D. Cal. Mar. 27, 2009) ...................................... 10

*In re Paracelsus Corp. Sec. Litig.,*
   No. Civ.A. H-96-3464, 2007 WL 433281 (S.D. Tex. Feb. 6, 2007) .............................. 10, 12

*In re Pharm. Indus. AWP Litig.,*
   588 F.3d 24 (1st Cir. 2009).......................................................................................... 7

*In re Portal Software, Inc. Sec. Litig.,*
   No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................... 6

*In re Rambus Inc. Sec. Litig.,*
   No. C-06-4346 JF, slip op. (N.D. Cal. May 14, 2008).......................................... 10

*In re UnitedHealth Group Inc. PSLRA Litig.,*
   643 F. Supp. 2d 1094 (D. Minn. 2009) ....................................................................... 11

*Masters v. Wilhelmina Model Agency, Inc.,*
   473 F.3d 423 (2d Cir. 2007)......................................................................................... 9

*N.Y.C. Employees' Ret. Sys. v. Jobs,*
   593 F.3d 1018 (9th Cir. 2010)..................................................................................... 11

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.,*
   688 F.2d 615 (9th Cir. 1982)........................................................................................ 5

*Silber v. Mabon,*
   18 F.3d 1449 (9th Cir. 1994)................................................................................. 13, 14

*Torrisi v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993)................................................................................... 13, 14

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

**<u>STATUTES</u>**

4

15 U.S.C. § 77z-11(a)(7)(B) ................................................................................................. 10

5

15 U.S.C. § 78u-4(a)(7)(B)(i) .............................................................................................. 11

6

15 U.S.C. § 78u-4(a)(7)(B)(ii) ............................................................................................. 11

7

15 U.S.C. § 78u-4(e)(1) ......................................................................................................... 8

8

28 U.S.C. § 1713 .................................................................................................................. 10

9

28 U.S.C. § 1715 .................................................................................................................... 3

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

1   **I.      INTRODUCTION**

2          The Settlement was reached after years of hard-fought litigation, including complex

3   motion practice, an appeal to the Ninth Circuit, and extensive negotiations.  The Settlement

4   provides substantial and immediate benefits for the Class:  a $16.5 million Settlement Fund and a

5   series of significant corporate governance reforms.  The costs of administering and distributing

6   the Net Settlement Fund and the attorneys' fees and costs award will not reduce the funds

7   available to the Class because Apple has agreed to pay those amounts separately.  The Plan of

8   Allocation provides for distribution of the Net Settlement Fund based on the maximum possible

9   recovery—up to $1.70 per share—available under federal securities law if plaintiffs could

10  overcome several major barriers and prevail at trial.  If funds remain after two distribution rounds,

11  the balance will be donated to nine university programs specializing in corporate governance.

12  The Settlement and Plan of Allocation clearly satisfy the prerequisites for final approval.

13         The Claims Administrator has complied in all respects with the Court-approved notice

14  program and has publicized the Settlement in the national media and on the internet and

15  distributed over 1.2 million copies of the Notice to potential Class Members by mail.  As a result,

16  over 18,000 Proofs of Claims have been submitted.  Six weeks remain until the March 15, 2011

17  claim submission deadline, and Apple expects a significant number of individual and institutional

18  investors and nominees will submit additional claims.

19         Only a handful of exclusion requests have been submitted, and none indicates that the

20  Settlement is unfair or improper.  No institutional investor has objected to the Settlement or

21  requested exclusion.  Only four objections have been received and, as demonstrated below, none

22  has merit.  Accordingly, Apple respectfully requests the Court grant final approval.

23  **II.     ADDITIONAL FACTUAL BACKGROUND**

24         Apple provided a summary of the relevant facts, procedural history, and settlement terms

25  in its opening briefs in support of preliminary and final approval.  (Apple Mem. ISO Prelim.

26  Approval at 3:8-12:13; Apple Mem. ISO Final Approval at 4:5-8:3.)  Apple focuses below on the

27  implementation of the notice program and the response of Class Members.

28

1

### A.      The Notice Program

The Claims Administrator has given notice to more than 1.2 million potential Class

Members it could reasonably identify.  (Supplemental Decl. of Claims Administrator ("Epiq

Decl.")[1] ¶ 11.)  As directed by the Court's Amended Preliminary Approval Order, the notice

program started on December 8, 2010, with the publication of the Publication Notice in *Investor's*

*Business Daily*, a business paper with national readership, and over *Business Wire*.  (*Id.* ¶ 18.)  As

a result, the Publication Notice was picked up by several other news and media outlets.  The

Claims Administrator also mailed the Notice to 31,886 record holders based on information

obtained from Apple's transfer agent.  (*Id.* ¶ 4.)

On December 9, 2010, the Claims Administrator contacted 5,804 bankers, brokers and

other nominees (collectively, "nominees") that may hold shares for potential Class Members.  (*Id.*

¶ 4.)  The mailing to these nominees included a cover letter stating:

> The Court has directed that WITHIN FOURTEEN (14) DAYS OF
> YOUR RECEIPT OF THIS NOTICE you either:  (a) Provide the
> Claims Administrator the name and last known address of
> beneficial owners of Apple Inc. common stock; or (b) Forward
> copies of the attached Notice and Proof of Claim to beneficial
> owners of Apple Inc. common stock."

(*Id.*, Attachment B.)  The Claims Administrator also emailed the Notice and cover letter to

nominees for which it had email addresses.  (*Id.* ¶ 4.)  In response, nominees have sent the Claims

Administrator:  (1) lists of potential Class Members; (2) pre-printed address labels for potential

Class Members; and (3) requests for quantities of unaddressed notices to forward to potential

Class Members.  (*Id.* ¶ 5.)  The Claims Administrator promptly fulfilled requests from nominees

as they were received.  As of January 14, 2011, the Claims Administrator had distributed more

than 1.1 million copies of the Notice.  (*Id.* ¶ 11.)[2]

Some nominees submitted requests to the Claims Administrator after the Court-imposed

fourteen-day deadline.  Nevertheless, the Claims Administrator fulfilled those requests in an

---

[1] The Epiq Decl. is Exhibit A to Lead Plaintiff's reply brief in support of final approval.

[2] Some copies of the Notice were returned as undeliverable.  The Claims Administrator attempted to re-mail the Notice to a different address if possible, but about 42,000 records remain undeliverable.  (Epiq Decl. ¶ 11.)

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

1    expeditious manner.  (*Id*. ¶¶ 7-8.)  As permitted under the Amended Preliminary Approval Order,

2    nominees also have made copies of the Notice and mailed it directly to their clients.  The Claims

3    Administrator has received invoices from nominees for such mailings.  (*Id*. ¶ 10.)

4         The Notice provides information about (i) the Settlement, (ii) how Class Members can

5    qualify for a payment and how much their payment may be, (iii) Plaintiffs' Lead Counsel's fee

6    petition, and (iv) how and when to object to the Settlement or request exclusion from the Class.

7    The Publication Notice summarized the Settlement and the key deadlines.

8         The Notice and Publication Notice refer Class Members to a website and toll-free number

9    for additional information.  The toll-free number has been accessed by more than 2,300 callers

10   since it began on December 8, 2010.  (*Id*. ¶ 13.)  The website, which also went live on

11   December 8, 2010, has had over 12,000 user sessions.  (*Id*. ¶ 17.)  The website has information

12   and documents relating to the Settlement, including the Stipulation, the Notice, and briefs in

13   support of final approval.  As disclosed in the Notice (§ 29), the Claims Administrator posted

14   Plaintiffs' Lead Counsel's fee petition shortly after it was filed.  (Epiq Decl. ¶ 17.)

15        The deadline for submitting Proofs of Claim is March 15, 2011.  As of February 3, 2011,

16   over 18,000 paper and electronic claims have been filed by or on behalf of Class Members who

17   purportedly purchased over 547 million shares of Apple stock.  (*Id*. ¶ 20.)  As a point of

18   reference, approximately 700 to 840 million shares (split-adjusted) of Apple stock were

19   outstanding during the nearly five-year Class Period.  The Claims Administrator has begun to

20   process the claims and follow up with Class Members regarding deficiencies.  (*Id*. ¶ 23.)  The

21   Claims Administrator has been advised by several nominees that they intend to file claims on

22   behalf of their clients before the March 15, 2011 deadline.  (*Id*. ¶ 12.)  Apple expects a significant

23   number of additional claims will be filed by individual and institutional shareholders.

24        **B.    CAFA Notice**

25        The Class Action Fairness Act ("CAFA") requires defendants to notify the U.S. Attorney

26   General and all state attorneys general of a proposed class action settlement.  *See* 28 U.S.C.

27   § 1715.  Although the legislative history and statutory language suggest CAFA may not apply to

28   securities class actions, Defendants nevertheless provided the notice on October 4, 2010, and

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

1   distributed copies of relevant settlement documents.  (Declaration of Vivi Lee ISO Apple's Reply

2   ISO Final Approval ("Lee Decl.") ¶ 2, Ex. A.)  On November 23, 2010, Defendants provided

3   supplemental notice enclosing copies of the Stipulation and Amended Preliminary Approval

4   Order.  (*Id.* ¶ 3, Ex. B.)  As of February 4, 2011, Apple has received no objections to the

5   Settlement from the U.S. Attorney General or any state attorney general.  (*Id.* ¶ 4.)

6   **C.   Requests for Exclusion**

7       The deadline for submitting requests for exclusion from the Class was January 21, 2011.

8   Nineteen exclusion requests were submitted, all from individual shareholders.  (Epiq Decl. ¶ 19.)

9   Seven individuals did not identify the number of shares they purchased during the Class Period;

10  one individual stated she did not purchase any shares.  (*Id.*)  The ***total*** number of shares purchased

11  by individuals requesting exclusion is 3,425 shares.  (*Id.*)  None of the individuals requesting

12  exclusion indicated that they believe the Settlement is unfair or improper.  One individual

13  excluded herself because she earned significant returns on Apple stock.  (*Id.*, Ex. I.)

14  **D.   Objections**

15      The deadline for filing objections to the Settlement was January 21, 2011.  Objections

16  were submitted by four individual shareholders.[3]  No institutional investors filed objections.  The

17  objections are summarized below in the order in which they are discussed in Section III below:

18      • On January 21, 2011, Theodore Frank of the Center for Class Action Fairness, counsel

19  for putative Class Member Patrick Pezzati, renewed the objection to the Plan of Allocation's

20  *cy pres* component that he made at the preliminary approval stage.  Mr. Frank also objected to the

21  content of the Notice and Plaintiffs' Lead Counsel's fee petition.  Mr. Pezzati purportedly

22  purchased 100 shares during the Class Period.  Mr. Frank seeks attorneys' fees and indicates he

23  will appear at the Settlement Fairness Hearing.

---

24  [3] In addition to the four objections discussed below, the parties received correspondence about the

25  Settlement from Charles Kyriazos and Winston Gouzoules.  (Lee Decl., Exs. F, G.)  Mr. Kyriazos requests exclusion from the Class but also objects to the "lawsuit."  Mr. Kyriazos states that he

26  does not "believe any of the alleged actions by the Defendants harmed any member of the class" and "would be in favor of barring or limiting attorneys [sic] fees and a recovery for this action."

27  (*Id.*, Ex. F.)  Mr. Gouzoules does not appear to be objecting to the Settlement or requesting exclusion.  He states that nothing "should be paid to the claimants" because "the company has

28  done nothing wrong" and shareholders earned significant returns.  (*Id.*, Ex. G.)

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

- On January 20, 2011, Drs. Marshall and Ann Orloff filed an objection to the Settlement, Plan of Allocation, and Plaintiffs' Lead Counsel's fee petition.  The Orloffs do not indicate the number of shares they purchased during the Class Period or the date(s) of purchase.  The Orloffs state that they will appear at the Settlement Fairness Hearing.  (Lee Decl., Ex. H.)

- On January 22, 2011, Dr. George Sibley, on behalf of the Sibley Family Trust (the "Trust"), filed an objection on the ground that he did not have sufficient time to review the Settlement, Plan of Allocation, or Plaintiffs' Lead Counsel's fee petition.  Dr. Sibley does not indicate the number of shares purchased by the Trust during the Class Period or the date(s) of purchase.  Dr. Sibley states that he or his counsel, Gary Sibley, will appear at the Settlement Fairness Hearing.  He reserves the right to seek fees and expenses.

- On January 17, 2011, Fred Fekrat filed an objection to the Plan of Allocation.  Mr. Fekrat purportedly purchased 200 shares during the Class Period.  If his objections are sustained, Mr. Fekrat requests that Plaintiffs' Counsel not recover any fees and expenses.

## III.    THE SETTLEMENT AND PLAN OF ALLOCATION SHOULD BE APPROVED

A class action settlement should be approved if the court reaches a "reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992) ("fair, reasonable, and adequate" standard also governs review of proposed plan of allocation).  As Apple demonstrated in its opening brief, the Settlement satisfies this standard and should be approved.  (Apple Mem. ISO Final Approval at 8:4-18:5.)

The Settlement has received overwhelming support from Class Members.  Notice was given to more than 1.2 million potential Class Members and over 18,000 of them have filed Proofs of Claim.  Apple expects a significant number of Proofs of Claim will be filed by nominees and individual and institutional shareholders before the March 15, 2011 deadline.  Only nineteen individual shareholders who purchased a total of 3,425 shares submitted exclusion requests.  None of those shareholders indicated the Settlement is unfair or improper.  Only four

1   objections have been submitted, but as discussed below, they are meritless and should not

2   preclude final approval.  *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007

3   WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007) (citing cases in which class settlements were

4   approved over limited objections and opt outs).[4]

5       **A.    Mr. Frank's Objection To The Plan Of Allocation And The Notice Is Unavailing.**

6

7       Mr. Frank does not object to the fairness or adequacy of the Settlement.  Nor does he

8   object to the Plan of Allocation to the extent the entire Net Settlement Fund is distributed to Class

9   Members.  (1/21/11 Frank Obj. at 2:1-2.)  He asserts that the Plan of Allocation should not be

10  approved until the Court knows how much of the Settlement Fund is distributed to Class

11  Members and remains to be donated to the university programs.  (*Id.* at 2:2-9.)  Anticipating that

12  Mr. Frank might object to the *cy pres* provision, Apple addressed this issue in its opening brief.

13  (Apple Mem. ISO Final Approval at 18:11-21:18.)  Mr. Frank nevertheless repeats the same

14  arguments he made at the preliminary approval stage, ignoring the Plan of Allocation and the

15  Court's prior ruling against him.  (11/22/10 Order re Amended Motion for Preliminarily Approval

16  of Settlement at 1:23-25.)  Mr. Frank also contends that any donation of unclaimed funds unfairly

17  dilutes current shareholders' holdings.  (1/21/11 Frank Obj. at 6:11-7:6.)  Finally, Mr. Frank

18  states that the Notice is defective because it does not state the average per share recovery if

19  plaintiffs prevail at trial.  (*Id.* at 8:1-7.)  None of these objections has merit.

20       **1.    The Proposed Donation Of Unclaimed Funds Complies With Applicable Precedent.**

21

22       Mr. Frank acknowledges that several courts have approved plans of allocation providing

23  for the distribution of unclaimed funds to charitable organizations.  He asserts that those

24  authorities are not "persuasive" because they do not apply the American Law Institute's

25  *Principles of the Law of Aggregate Litigation* ("ALI Principles").  (1/21/11 Frank Obj. at 5:18-

26  _____

27  [4] Apple takes no position at this time on the objections to Plaintiffs' Lead Counsel's fee petition or Mr. Frank's and Dr. Sibley's fee requests.  Apple reserves the right to respond and object to any order requiring it to pay Attorneys' Fees and Expenses in excess of $2.45 million, the amount

28  agreed upon in the Stipulation.  (Stipulation § 9.1.)

1    6:4.)  The ALI Principles are guidelines issued by a private organization and are not binding on

2    this Court.  *In re Pharm. Indus. AWP Litig.*, 588 F.3d 24, 35 (1st Cir. 2009).  Mr. Frank has not

3    identified a single case in which a court has applied the ALI Principles in lieu of binding circuit

4    precedent or persuasive district court authorities.

5         The Plan of Allocation, moreover, is consistent with the ALI Principles.  As Apple

6    explained in its opening brief, there will be two distribution rounds to the Class before any funds

7    may be donated.  (Apple Mem. ISO Final Approval at 16:18-18:5, 18:26-20:8.)  If a sufficient

8    number of Class Members submit valid claims—as Apple expects and as the Court recognized at

9    the preliminary approval stage—any *cy pres* distribution is likely to be small.  (11/22/10 Order re

10   Amended Motion for Preliminary Approval of Settlement at 1:23-25.)  If funds remain after the

11   Claims Administrator has made two attempts to pay Class Members' claims, the balance will be

12   donated to nine university programs specializing in the types of corporate governance issues

13   raised in this case.  The ALI Principles permit this form of *cy pres* distribution.

14        Mr. Frank also contends that the Plan of Allocation does not adequately compensate Class

15   Members because it limits recovery to $1.70 per share—the difference between the closing price

16   of Apple stock on June 29, 2006 ($58.97) and June 30, 2006 ($57.27).  (1/21/11 Frank Obj. at

17   6:4-10.)  But he fails to address the multiple and significant barriers to recovery discussed in

18   Apple's opening brief.  Plaintiffs' claims are time barred because they rely on stock option grants

19   and alleged misstatements made beyond the five-year period of repose governing securities fraud

20   actions.  (Apple Mem. ISO Final Approval at 9:3-10:4.)  Plaintiffs also have not pled with

21   particularity that Apple's disclosures regarding specific stock option grants were false or

22   misleading or material.  (*Id.*)  Nor can plaintiffs satisfy their burden to plead and prove loss

23   causation because investors did not suffer loss when Apple restated its financial statements on

24   December 29, 2006; Apple's stock price increased by nearly $4 that day.  (*Id.* at 10:5-11:1.)

25   Plaintiffs allege shareholders suffered economic loss after Apple's June 29, 2006 press release

26   regarding the commencement of an independent investigation of past stock option grants.  But the

27   June 29 press release did not correct, in any manner, any allegedly false statements on which

28   plaintiffs base their claims.  (*Id.* at 11:2-7.)  The change in Apple's stock price after the June 29

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

1    statement, moreover, was within the normal range of volatility for Apple stock and tracked the

2    decline of other major technology stocks that day.  (*Id*. at 11:2-12:9.)

3        Any damages award will be limited significantly—if not entirely—by federal securities

4    law, as plaintiffs admitted at the outset of the case.  (*Id*. at 4:16-21, 12:10-14:1.)  Under the

5    PSLRA, only shareholders who purchased shares above the mean trading price of Apple stock in

6    the ninety days following an alleged corrective disclosure are eligible for recovery.  15 U.S.C.

7    § 78u-4(e)(1).  If, as Apple contends, the corrective disclosure occurred on December 29, 2006,

8    when Apple restated its financial statements, ***no Class Member*** could recover damages because

9    Apple's shares never traded above the relevant mean trading (or "look-back") price ($88.30)

10   during the Class Period.  (Apple Mem. ISO Final Approval at 12:10-28.)  The result is not

11   materially different if one assumes, contrary to law, the corrective disclosure occurred on June 29,

12   2006, when Apple announced the investigation, because Apple's shares rarely traded above the

13   relevant look-back price ($65.71) during the Class Period.  (*Id*. at 13:1-18.)  Additionally, only

14   those Class Members who purchased shares on those limited days ***and*** held their shares until the

15   end of the class period would be eligible for recovery.  *Dura Pharms., Inc. v. Broudo*, 544 U.S.

16   336, 343-44 (2005).  These limitations would preclude the vast majority of Class Members from

17   recovering damages if plaintiffs could survive the challenges discussed above and prevail at trial.

18       Plaintiffs do allege in the Corrected First Amended Consolidated Complaint ("FACC")

19   that Apple's stock price declined by $8.30 between June 29, 2006 and July 14, 2006 because of

20   "the Company's disclosure of 'irregularities' in its accounting for stock options."  (FACC ¶¶ 460-

21   61.)  But neither the facts nor the law supports the use of a two-week period to calculate damages

22   in a securities fraud action.  There was only one relevant disclosure during that period: Apple's

23   June 29 statement regarding the independent investigation.  Although Apple's stock price

24   declined with the prices of other technology companies on June 30, 2006, it ***increased*** by

25   1.2 percent on the next trading day, July 3, 2006.  Apple's stock price also increased for eight

26   straight trading days after July 14, 2006.  Further, plaintiffs admit Apple's stock price was

27   declining in the weeks before the June 29, 2006 press release and the stock prices of several

28   major technology stocks declined after June 29, 2006.  (FACC ¶¶ 459, 462.)  In light of these

- 8 -

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

1    facts, the FACC cannot be reasonably read as seeking damages of $10 per share.

2            It also is well-established in an efficient market that material information is reflected in a

3    company's stock price immediately, not over the course of two weeks.  *See In re Intelligroup Sec.*

4    *Litig.*, 468 F. Supp. 2d 670, 696 (D.N.J. 2006).  The efficient market principle is particularly

5    appropriate here given the extent to which Apple—one of the world's largest companies—is

6    covered in the media.  Rumors and information about Apple's products, sales estimates, earnings,

7    and management are reported in newspapers, magazines, and online news sites on a daily, even

8    hourly, basis.  Had investors reacted negatively to Apple's June 29 press release, any such

9    reaction would have been immediate—not spread out over the course of two weeks.

10           The single case cited by Mr. Frank, *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d

11   423 (2d Cir. 2007), is inapposite.  (1/21/11 Frank Obj. at 4:14-18.)  In *Masters*, the plaintiffs

12   asserted class claims under the Clayton Act, which provides for actual and treble damages.  The

13   parties settled the action and allocated the settlement fund based solely on class members' actual

14   damages.  *Id.* at 428.  The parties' settlement agreement granted authority to the district court to

15   determine how any unclaimed funds should be allocated.  *Id.* at 432.  The district court, believing

16   it was bound by the parties' agreement, determined that unclaimed funds should be donated to

17   charity.  *Id.*  The Second Circuit reversed.  The court did not hold that the donation of unclaimed

18   funds was improper.  *Id.* at 435-36.  Instead, the Second Circuit held that the district court should

19   have considered whether to allocate unclaimed funds to class members as treble damages because

20   that form of recovery was available under the Clayton Act.  *See id.* at 436.

21           There is no basis to allocate more than $1.70 per share in funds to Class Members in this

22   case.  That amount, in fact, is extremely generous because it assumes—contrary to the facts—that

23   the drop in Apple's stock price was caused entirely by the June 29 press release and not other

24   factors, such as general economic conditions or other concerns about Apple's business.  *Dura*,

25   544 U.S. at 342-43 (to prove loss causation, plaintiff must disaggregate "tangle of factors

26   affecting price," such as "changed economic circumstances, changed investor expectations, new

27   industry-specific or firm-specific facts, or other events").  Thus, the Plan of Allocation reasonably

28   allocates funds to Class Members based on the maximum potential recovery under federal

- 9 -

1    securities law and should be approved.

2              **2.      Mr. Frank's Objection That Current Shareholders' Holdings Will Be
                         Unfairly Diluted If Any Funds Are Donated Is Frivolous.**
3

4          Mr. Frank contends that Class Members who are current shareholders may be injured if

5    any settlement funds are donated to the designated university programs.  (1/21/11 Frank Obj. at

6    6:13-19.)  These potential donations, Mr. Frank claims, will "deplete[]" the value of current

7    shareholders' holdings.  (*Id.*)  Mr. Frank's objection is frivolous.

8          Mr. Frank presents his objection as one of "first impression," admitting that no court has

9    ever accepted his argument.  (*Id.* at 7:3-6.)  Mr. Frank does not even attempt to address the many

10   decisions Apple cited approving donations of unclaimed funds in securities class actions.  *See,*

11   *e.g.*, *In re Magma Design Automation, Inc. Sec. Litig.*, No. C-05-2394 CRB, slip op. (N.D. Cal.

12   Mar. 27, 2009); *In re Rambus Inc. Sec. Litig.*, No. C-06-4346 JF, slip op. (N.D. Cal. May 14,

13   2008); *In re Paracelsus Corp. Sec. Litig.*, No. Civ.A. H-96-3464, 2007 WL 433281 (S.D. Tex.

14   Feb. 6, 2007).  Nor does Mr. Frank explain how donations from the Net Settlement Fund could

15   have a material impact on the value of Class Members' holdings.  The ***entire*** Settlement Fund

16   represents 0.005% of Apple's market capitalization (over $310 billion) and 0.067% of Apple's

17   holdings of cash and short-term marketable securities (over $25 billion).  There has been no

18   indication that the Settlement has affected Apple's stock price.  Indeed, since the Settlement was

19   first announced on September 28, 2010, Apple's stock price has increased by nearly 20 percent.

20         The only authority Mr. Frank cites, 28 U.S.C. § 1713, is irrelevant.  That provision relates

21   to settlements in which a "class member is obligated to pay sums to class counsel that would

22   result in a net loss to the class member."  28 U.S.C. § 1713.  Apple has agreed to pay separately

23   the attorneys' fees and expenses award and thus, no Class Members will suffer a "net loss."

24              **3.      The Contents Of The Notice Comply With Applicable Law.**

25         Mr. Frank asserts the Notice is defective because it does not state "the average amount of

26   damages per share that would be recoverable if the plaintiff prevailed on each claim."  (1/21/11

27   Frank Obj. at 8:1-4 (citing 15 U.S.C. § 77z-1(a)(7)(B)).)  The provision he cites, however,

28   governs actions asserting claims under the Securities Act of 1933.  The claims in this case were

- 10 -

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

1   brought under the Securities Exchange Act of 1934 ("Exchange Act").  The notice provision

2   governing Exchange Act claims states that the parties must disclose the average amount of

3   recoverable damages per share *only if they agree on that amount*.  15 U.S.C. § 78u-4(a)(7)(B)(i).

4   If the parties do not agree, they must disclose their disagreement in the notice.  15 U.S.C. § 78u-

5   4(a)(7)(B)(ii).  The parties complied with the latter provision: the Notice states "[t]he parties

6   disagree on both liability and damages and the average amount of damages that would be

7   recoverable if Plaintiffs prevailed."  (Notice § 2.)

8           **B.        The Orloffs' Objection Has No Merit.**

9           The Orloffs contend that (i) the Settlement does not remedy the alleged "20% dilution" of

10  their shareholdings and "loss of . . . voting privileges," and (ii) the corporate governance

11  measures and donation of unclaimed funds do not benefit Class Members.  (Lee Decl., Ex. H

12  at 1.)  To the extent donations are made, the Orloffs request the Court add two universities near

13  their residence in San Diego.  (*Id.*)  The Orloffs' objection should be overruled.[5]

14          First, the Court already rejected plaintiffs' claims based on the alleged dilution of

15  shareholder interests, and the Ninth Circuit affirmed that judgment.  *N.Y.C. Employees' Ret. Sys.*

16  *v. Jobs*, 593 F.3d 1018, 1024 (9th Cir. 2010) ("dilution theory of economic loss is unsupported in

17  caselaw").  The Ninth Circuit granted plaintiffs an opportunity to re-plead their Section 10(b)

18  claim.  As Apple showed in its opening brief and above, however, the Section 10(b) claim is

19  likely to be dismissed on multiple grounds.  Even if the claim survived summary judgment,

20  plaintiffs face additional and substantial challenges to prove recoverable damages.  Thus, the

21  $16.5 million Settlement represents a substantial recovery.

22          Second, courts have recognized that class action settlements which include remedial

23  measures and donations of unclaimed funds to research or educational institutions can benefit the

24  class.  In *In re UnitedHealth Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1104 (D. Minn.

25  2009), for example, the court held that the corporate governance reforms proposed in a securities

26  class action settlement provided "substantial" benefits to the class.  Similarly, in this case, Apple

27

28  [5] The Orloffs' objection is defective because it fails to specify the number of shares purchased
    and sold during the Class Period, as required by the Amended Preliminary Approval Order.

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

1   has agreed to implement or extend significant corporate governance measures relating to, among

2   other things, (i) insider trading, (ii) "clawback" of executive grants, (iii) granting, dating, and

3   vesting of stock options, and (iv) preparation, approval, and maintenance of the minutes of Board

4   and Board committee meetings.  (Stipulation § 2.1 & Exs. C-K.)  Moreover, in *In re Paracelsus*

5   *Corp. Securities Litigation*, 2007 WL 433281, at *1-2, the court held that the donation of

6   unclaimed funds to an organization focused on "corporate governance and investors' rights . . .

7   may indirectly and prospectively benefit the class members in the aggregate."  The nine

8   university programs designated to receive unclaimed funds in this case also focus on governance

9   matters and shareholder rights, and their efforts will indirectly benefit the Class.

10         Finally, the Orloffs provide no support for their claim that the selection of the corporate

11   governance programs was improper.  (Lee Decl., Ex. H at 1.)  The nine programs were selected

12   because of their reputations as leading corporate governance research institutions and their

13   locations throughout the United States.  There is no basis for adding more programs.

14         **C.**    **Dr. Sibley's Objection To The Notice Program Is Unfounded.**

15         Dr. Sibley contends he did not have adequate time to review the Settlement, the Plan of

16   Allocation, or Plaintiffs' Lead Counsel's fee petition because he received the Notice on

17   January 21, 2011, the deadline for filing an objection or requesting exclusion.  (1/22/11 Sibley

18   Obj. at 1.)  Upon receipt of Dr. Sibley's correspondence on January 22, 2011, Apple's counsel

19   sent his attorney that day the relevant Settlement documents and fee petition and referred him to

20   the settlement website and toll-free number.  (Lee Decl., ¶ 5 & Ex. C.)  On January 27, 2011,

21   Apple's counsel provided Dr. Sibley's attorney with a summary of the notice program and a

22   timeline of circumstances of the mailing to Dr. Sibley.  (*Id*., ¶ 6 & Ex. D.)  Dr. Sibley has not

23   supplemented his objection after reviewing these materials.  Moreover, as discussed below, the

24   facts show that any delay in Dr. Sibley's receipt of the Notice was caused by his broker's failure

25   to comply with Court-imposed deadlines, not by any lapses by the Claims Administrator or the

26   parties.  Accordingly, Dr. Sibley's objection should be rejected.[6]

27

28
___

[6] Because it does not specify the number of shares purchased and sold during the Class Period, as required by the Amended Preliminary Approval Order, Dr. Sibley's objection is defective.

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

1   Courts have recognized that claims administrators in securities class actions must rely on

2   nominees to notify potential class members because securities are typically held by nominees

3   instead of beneficial owners. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir.

4   1993); *Silber v. Mabon*, 18 F.3d 1449, 1452 (9th Cir. 1994).  Accordingly, on December 9, 2010,

5   the Claims Administrator contacted 5,804 nominees and advised them of their obligation under

6   the Amended Preliminary Approval Order to (i) forward the Notice directly to Class Members or

7   (ii) provide a list of names or pre-printed labels to the Claims Administrator.  The Claims

8   Administrator informed nominees they had fourteen days to comply with this directive.  Many

9   nominees responded in a timely manner and their requests were processed promptly.  Some

10   nominees, however, did not comply with the fourteen-day deadline.  One such nominee,

11   Broadridge, requested unaddressed copies of the Notice on behalf of Merrill Lynch on January 5,

12   2011. (Epiq Decl. ¶ 7.)  According to the Claims Administrator, Broadridge was responsible for

13   mailing the Notice to Dr. Sibley.  (*Id.* ¶ 9.)  Although Broadridge's January 5 request was after

14   the Court-imposed deadline, the Claims Administrator sent Broadridge unaddressed copies of the

15   Notice by overnight mail on January 10 and 11, 2011.  (*Id.* ¶ 7.)  Broadridge informed the Claims

16   Administrator that it mailed the Notice to Dr. Sibley on January 14, 2011.  (*Id.* ¶¶ 7, 9.)  Thus, the

17   Claims Administrator complied in all respect with the Court-approved notice program.

18   The facts demonstrate that Dr. Sibley's experience was not widespread.  The parties are

19   aware of only two other shareholders who claim to have received the Notice on or shortly before

20   January 21, 2011.  As with Dr. Sibley, the Claims Administrator determined that any delay in the

21   receipt of those two mailings was because of a nominee's failure to comply with the Court's

22   fourteen-day deadline.  (*Id.* ¶ 9.)  In an abundance of caution, however, the parties requested that

23   the Claims Administrator inform Class Members who inquire about the January 21, 2011

24   deadline that they may submit late objections or exclusion requests for the Court's consideration.

25   (Lee Decl., ¶ 7 & Ex. E.)  This should resolve Dr. Sibley's concerns.

26   Even if a greater number of Class Members received the Notice late because of their

27   brokers' failure to act within Court-imposed deadlines, it should not compromise final approval

28   of the Settlement.  The relevant issue in determining the adequacy of notice in a class action

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

1    settlement "is not whether some individual shareholders got adequate notice, but whether the

2    class as a whole had notice adequate to flush out whatever objections might reasonably be raised

3    to the settlement." *Torrisi*, 8 F.3d at 1375.  As the Sixth Circuit explained in *Fidel v. Farley*, 534

4    F.3d 508, 514 (6th Cir. 2008), "in each case in which a court has confronted this issue, notice

5    provided to the class members' nominees—*i.e.*, the brokerage houses—has been deemed

6    sufficient even if brokerage houses failed to timely forward the notice to the beneficial owners."

7    *See also Silber*, 18 F.3d at 1452-54 (claims administrator provided "best notice practicable"

8    through direct mailings to record owners and by contacting brokerage houses, even though

9    objecting class member received notice "well after the opt out deadline").

10       As explained in Section II above, the Claims Administrator made reasonable efforts to

11   give notice to potential Class Members through a national publication, a national wire service,

12   direct mailings, a website and toll-free number, and by contacting nominees.  As a result, over

13   18,000 Proofs of Claim have been filed to date, with six weeks remaining before the March 15,

14   2011 claim submission deadline.  Accordingly, the notice program approved by the Court and

15   implemented by the Claims Administrator was the best notice practicable under the circumstances

16   and satisfies all statutory and due process requirements.

17       **D.      Mr. Fekrat's Objections Are Inconsistent With The Operative Complaint
                   And Federal Securities Law.**

18

19       Mr. Fekrat contends that the following categories of investors should be eligible to

20   recover under the Plan of Allocation but are not:  (1) investors who engaged in options

21   transactions; and (2) investors who traded Apple stock but did not hold any shares at the end of

22   the Class Period.  (1/17/11 Fekrat Obj. at 1.)  Neither objection is well-founded.

23       The Plan of Allocation was structured to reflect plaintiffs' allegations in accordance with

24   federal securities law.  The FACC alleges only that Apple common stockholders were damaged

25   because of disclosures "of 'irregularities' in [Apple's] accounting for stock options."  (FACC

26   ¶¶ 460-61, 466.)  The FACC nowhere alleges that investors who traded in Apple option contracts

27   were damaged.  Such claims are beyond the scope of the case and were properly excluded.  *See In*

28   *re Critical Path Sec. Litig.*, No. C 01-00551 WHA, 2002 WL 32627559, at *5 (N.D. Cal. June 18,

APPLE'S REPLY ISO REQUEST FOR
FINAL APPROVAL – C06-05208-JF

2002) (exclusion of investors who traded option contracts was appropriate because operative complaint did not mention options).  Moreover, Apple did not issue any call or put options during the Class Period, other than stock options to employees.  All such employees have been excluded from the Class.  (Notice § 15.)

Investors who sold all their shares before the end of the Class Period also were properly excluded.  In *Dura*, the Supreme Court held that investors who sell their shares before an alleged corrective disclosure do not suffer a loss because "the inflated purchase payment is offset by ownership of a share that ***at that instant*** possesses equivalent value."  544 U.S. at 342 (emphasis in original).  The parties in this case reasonably limited recovery to Class Members who held shares until the end of the Class Period.

## IV.        CONCLUSION

The Class has shown its overwhelming support for the Settlement.  Although the Notice and Publication Notice were disseminated to more than 1.2 million potential Class Members, the parties received only nineteen requests for exclusions and four objections.  Neither the exclusion requests nor the objections demonstrate that the Settlement is unfair, unreasonable or inadequate in any respect.  Accordingly, the Court should approve the Settlement and Plan of Allocation.


Dated:  February 4, 2011                      O'MELVENY & MYERS LLP


                                              By:  */s/ George A. Riley*
                                              George A. Riley

                                              Attorneys for Defendant
                                              APPLE INC.