1  JAY W. EISENHOFER (*admitted pro hac vice*)
   MICHAEL J. BARRY (*admitted pro hac vice*)
2  GRANT & EISENHOFER P.A.
   Chase Manhattan Centre
3  1201 N. Market Street
   Wilmington, Delaware 19801
4  Telephone:     (302) 622-7000
   Facsimile:     (302) 622-7100
5  E-Mail:        jeisenhofer@gelaw.com
                  mbarry@gelaw.com
6
   *Attorneys for Lead Plaintiff New York City*
7  *Employees' Retirement System*

8  (Additional Counsel Listed on Signature Page)

9                  **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11                        **SAN JOSE DIVISION**

12                                          Case No. C-06-5208-JF

13  IN RE APPLE INC. SECURITIES              CLASS ACTION
    LITIGATION
14                                           **LEAD PLAINTIFF'S OPPOSITION TO**
                                             **OBJECTOR PATRICK PEZZATI'S**
15                                           **RESPONSE TO SUPPLEMENTAL**
                                             **MARCH 15 FILINGS OF SETTLING**
16                                           **PARTIES**

17

18

19

20

21

22

23

24

25

26

27

28

The New York City Employees' Retirement System ("Lead Plaintiff") submits this Opposition to Objector Patrick Pezzati's Response To Supplemental March 15 Filing Of Settling Parties (the "Supplemental Pezzati Submission") (Dkt. No. 172) and in further support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 142, "Settlement Motion"), and (2) Lead Plaintiff's Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (Dkt. No. 143, "Fee Motion").

## PRELIMINARY STATEMENT

On March 15, 2011, pursuant to the Court's instructions at the February 25, 2011 fairness hearing, the Settling Parties submitted updates to the Court. The updates explained that the Claims Administrator's calculations show that 18,425 Proofs of Claim have a Recognized Claim greater than $5.00 and represent $48,180,424.75 in value of Recognized Claims, far exceeding the $16.5 million Settlement Fund. *See* Dkt. Nos. 168 and 169. Lead Plaintiff further explained that since the objection lodged by Objector Pezzati was contingent on the Settlement Fund not being exhausted, *see* Dkt No. 168 at 1 (quoting Pezzati Objection, Dkt. No. 148 at 2 ("if…the $16.5 million settlement fund will be exhausted, [Pezzati] has no objection to the settlement or the fee request."), and the Recognized Claims exceed the Settlement Fund, Pezzati's "contingent" objections to the Settlement Motion and the Fee Request have been rendered moot and should be overruled. Dkt. No. 168 at 1.

Objector Pezzati has now withdrawn his objection to the settlement approval, Supplemental Pezzati Submission, Dkt. No. 172 at 1 ("Pezzati moves to withdraw his objection to the settlement approval"), and therefore the Settlement Motion should be granted for the reasons stated therein. *See* Dkt. No. 142.

In the Supplemental Pezzati Submission, however, Objector Pezzati continues to press his claim for attorneys' fees and purports to reserve the right to file a motion for attorneys' fees in the future. Pezzati continues to assert that his objection to the settlement caused an increase of the Settlement Fund from $14 million to $16.5 million. Pezzati further contends, therefore, that he is "entitled, as a matter of law, to 15.15% of the $1,966,250 fee award that

1   the Settling Parties stipulated would be awarded to class counsel, or $297,916, with the

2   amount being deducted from the class counsel fee award." Supplemental Pezzati Submission,

3   Dkt. No. 172 at 2. Although he claims he is entitled to $297,916 in fees, Pezzati states that he

4   will only seek $85,000 as a fee award. *Id.*

5        In the Supplemental Pezzati Submission, Pezzati also asserts that Class Counsel

6   breached its fiduciary duty and Rule 23(a)(4) in negotiating the settlement and otherwise

7   rehashes the erroneous arguments raised in his original objection that the attorneys' fees he

8   seeks are properly paid from any award of fees that the Court may grant to Class Counsel. *See*

9   Dkt Nos. 172 and 148.

10       These arguments are without merit for two reasons. First, as discussed below, Class

11   Counsel has not breached it fiduciary duty or violated Rule 23(a)(4). Second, as discussed in

12   Lead Plaintiff's Reply in Support of Motion for Final Approval of Class Action Settlement and

13   Plan of Allocation and Application for Attorneys' Fees and Reimbursement of Expenses (Dkt.

14   No. 153), Pezzati's request for attorneys' fees is meritless because he has not demonstrated

15   that he caused an increase in the Settlement Fund. But, even if he did, contrary to Pezzati's

16   assertions in his supplemental submission, any fee award to which Pezzati claims he is entitled

17   should not be deducted from any award that the Court may determine to grant Lead Counsel

18   based on its independent application for an award of fees. Assuming *arguendo* that Objector

19   Pezzati has a basis to seek attorneys' fees, any such award should be sought from Apple or be

20   paid from the common Settlement Fund that Objector Pezzati claims he materially increased.

# ARGUMENT

**I.    PEZZATI'S REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED AND HIS OBJECTION TO THE FEE MOTION SHOULD BE OVERRULED**

24       Objector Pezzati asserts that because the Settling Parties negotiated an amended

25   settlement that changed the settlement terms from a $14 million settlement fund and a $2.5

26   million contribution to certain corporate governance programs to a $16.5 million settlement

27   fund, Class Counsel must have put its interests ahead of the Class in negotiating the settlement

28

1   in violation of its fiduciary obligations and Rule 23(a)(4).[1]  Dkt. 172 at 1.  This is factually and

2   legally incorrect.

3       **A.      Pezzati's Counsel Has Tried And Failed To Make These Arguments Before**

4           This is not the first time that Theodore Frank, counsel for Mr. Pezzati, has advanced

5   the arguments he does here.  In *Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766

6   (N.D. Ohio 2010), the parties reached a settlement with a separate fund for attorneys' fees not

7   to exceed $6.6 million.  Mr. Frank represented one of ten objectors to the settlement.  After

8   receipt of the objections, the settling parties reduced the maximum amount of attorneys' fees

9   from $6.6 million to $4.6 million and awarded the $2 million difference to the settlement class.

10  *Id.* at 776.  Among other objections to the settlement, Mr. Frank offered the same canned

11  argument "that by setting up two separate funds – one for class payments and one for a

12  potential fee award – Class Counsel 'ha[d] breached their fiduciary duty to the class'."  *Id.* at

13  785.  The court agreed with class counsel that Mr. Frank's argument was "'long on ideology

14  and short on law,'" rejecting Mr. Frank's legal and policy arguments and finding, on the facts

15  of that case, that "there [wa]s nothing to indicate that collusion occurred between the parties on

16  this issue; indeed, all evidence supports the opposite conclusion."  *Id.* at 786.

17          The court approved the settlement and attorneys' fees for class counsel.  Mr. Frank

18  then sought an award of attorneys' fees, claiming "that he is at least partially responsible …

19  because the timing of the agreement to amend the Settlement Agreement is significant

20  circumstantial evidence that [his client's] objection caused the adjustment."  *Id.* at  802.  The

21  court disagreed, stating, "the fact remains that it was Class Counsel who secured the

22  [additional $2 million] for the Settlement Class by negotiating the First Amendment to the

23  Settlement Agreement with Travelers.  Mr. Frank was not a party to that negotiation."  *Id.*

24          Mr. Frank filed a supplemental brief asserting that he was entitled to reasonable

25  attorneys' fees "for his role in improving the Settlement Agreement for the benefit of the

26

27  _____
    [1] Rule 23(a)(4) provides that "the representative parties will fairly and adequately protect the
    interests of the class."  FED. R. CIV. P. 23(a)(4).

28

1   Settlement Class." 706 F. Supp. 2d at 803.  While noting that controlling case law recognized

2   that awards of attorneys' fees to objectors may be appropriate where the objector provided a

3   benefit to the class by virtue of their objection, the court denied Mr. Frank's request for leave

4   to file a formal fee petition, stating

> With the exception of pointing out that the amendment to the Settlement
> Agreement occurred after he filed his objection, however, Mr. Greenberg has
> not submitted any evidence to support the notion that his objections-as
> opposed to the objections of other Settlement Class Members, or even
> objections of the Court itself-actually provided a meaningful benefit to the
> class. While Mr. Frank's policy arguments contribute to the legal discussion
> regarding this important area of law, the Court finds that they did not
> increase the tangible or intangible benefits available to this Settlement Class.

*Id.* at 804.

Thereafter, Mr. Frank filed a motion to reconsider, claiming the court committed "clear

error" by prematurely denying him leave to file a fee petition, and offering "newly discovered

evidence." *Id.* at 807.  The "newly discovered evidence" that was offered was an *affidavit of

Class counsel* "expressly stat[ing] … that (1) the … objection provided some value to the class

*and* (2) that such a fee should come from Class Counsel's attorneys' fee award." *Id.* at 810

(emphasis in original).  The court rejected Mr. Frank's assertion that its prior decision was

clear error or that the affidavit of class counsel constituted newly discovered evidence.  The

court did, however, grant the motion to reconsider in the interest of fairness, because the

affidavit of class counsel established the essential basis of Mr. Frank's claim that he was

entitled to an award of attorneys' fees because it attested that the objection provided a benefit

to the settlement class.  The court recognized that

> [The affidavit] is a clear statement in support of a fee award for [Mr. Frank].
> **It comes from lead Class Counsel, a source with specific and reliable
> knowledge of all of the facts surrounding the amendment to the Settlement
> Agreement**, and it is unequivocal. It is also significant that it includes the
> stipulation that any fee award to Objector Greenberg should come from
> Class Counsel's fee award, and, therefore, will not reduce the amount
> available to the Settlement Class.

*Id.* at 812 (emphasis added).

The *Lonardo* court appropriately overruled Mr. Frank's objections, and properly denied his request for a fee based on rank speculation that he created a benefit through his objection.  Although class counsel in *Lonardo* subsequently attested that Mr. Frank's objection contributed a benefit to the class, Mr. Frank presents no such evidence here.  Mr. Frank's objection should be overruled.

**B.     Pezzati's Assertion That Class Counsel Breached Its Fiduciary Duty And Violated Rule 23(a)(4) Is Without Merit**

The assertion that Lead Counsel breached its fiduciary duty to the Class is meritless.  Indeed, it is based purely on Mr. Pezzati's rank speculation, since neither he nor his counsel were involved in the extensive settlement negotiations that led to the settlement and, therefore, Pezzati has no facts to substantiate the false accusations he makes.  Lead Plaintiff and Lead Counsel have scrupulously adhered to their fiduciary obligations to the Class throughout the settlement negotiations in this case and produced an excellent result for the Class, despite considerable defenses mounted by the Defendants.

Defendants strenuously argued that the Lead Plaintiff's class claims (i.e., the claims that produced the $16.5 million Settlement Fund in this case) were derivative, not direct class claims.  Numerous times during the pendency of this case, Defendants offered to settle the claims as a derivative lawsuit, which would have provided no monetary benefit to the Class.  Lead Plaintiff and Lead Counsel staunchly refused those offers, even though any derivative settlement likely would have led to a substantial attorneys' fee award.  Indeed, the Court approved an award of $8.85 million in attorneys' fees (equal to 63% of the $14 million cash recovery) in connection with the related settlement of a derivative action against Apple relating to stock options backdating.  *See In re Apple Computer Inc. Derivative Litig.*, No. 06-4128 JF, 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) (the "Apple Derivative Action").  These fees are more than four times the amount Lead Counsel seeks in the Fee Motion.  If Pezzati's assertion that Lead Counsel was putting its interests ahead of the Class were correct, Lead Counsel would have agreed to the offers to pursue a settlement on a derivative basis rather

1    than vigorously pressing for a Class settlement, which entailed the substantial risk that no class

2    claims would survive.  Thus, Pezzati's assertions about Lead Counsel's motives lack any basis

3    in fact whatsoever.

4         Pezzati also suggests that Lead Counsel proposed a $2.5 million payment to corporate

5    governance programs contemplated by the original settlement in order to "divert" monies to

6    corporate governance programs with which Lead Counsel had "affiliations."  *See* Dkt. No. 172

7    at 1.  This assertion is also without merit.  The separate $2.5 million payment to corporate

8    governance programs contemplated by the original settlement was not Lead Counsel's idea.

9    After Apple indicated a flat refusal to pay any more than $14 million to settle the case, and

10   Lead Plaintiff declined that offer, Apple offered as additional consideration to endow a chair at

11   a university to promote the interests sound corporate governance.  *See* Supplemental

12   Declaration of Jonathan B. Marks at ¶ 7 ("Supp. Marks Decl.") (attached hereto as Exhibit A).

13   Rather than endowing a single chair at a single university, Lead Plaintiff suggested the

14   establishment of a fund to be distributed among several different universities.  *Id.* at ¶ 8.  The

15   $2.5 million fund as originally proposed, therefore, was not instead of a payment to the Class,

16   but was proposed *in addition to* any payment to the Class because of Apple's stated refusal to

17   pay more.  Pezzati's assertion that Lead Plaintiff and Lead Counsel somehow "diverted" funds

18   away from the Class, therefore, is simply incorrect.  Moreover, Pezzati ignores that it was not

19   Lead Counsel, but rather NYCERS – the Court-appointed Lead Plaintiff in this action – that

20   negotiated the original and amended settlement terms.  These negotiations were conducted in

21   good faith and resulted in the $16.5 million benefit to the Class.  Indeed, Lead Counsel's good

22   faith is demonstrated by the fact that its fees are being paid by Apple separately (subject to

23   Court approval) and will not reduce the common fund benefit produced for the Class.  Thus, to

24   suggest that Lead Counsel somehow structured the Settlement to elevate Lead Counsel's

25   interests over those of the Class is factually incorrect.

26        Lead Counsel's fee request seeks $1,966,250, plus expenses of $395,515.90.  Of this

27   amount, Lead Counsel is applying for an award of fees in the amount of $1.5 million, which

28

1    represents 7.5% of the total economic value of the Settlement (excluding attorneys' expenses),

2    plus out of pocket expenses of $350,910.70.  Other Plaintiffs' Counsel in *Vogel II* are applying

3    for an award of fees in the amount of $466,250, which represents 2.28% of the total economic

4    value of the Settlement, plus out of pocket expenses of $44,605.20.  Apple has agreed to pay

5    Plaintiffs' Counsel the amount of reasonable attorneys' fees and expenses separately, and such

6    payment will not reduce the amount of the Net Settlement Fund.  The fee requested amounts to

7    a combined total of the total economic value of the Settlement of only 9.61%.[2]

8            Pezzati does not dispute (nor can he) that the benchmark established by the Ninth

9    Circuit for class counsel's fees in class actions is 25% of the common fund, *see Glass v. UBS*

10   *Fin. Servs., Inc.*, 331 Fed. Appx. 452, 457 (9th Cir. 2009), nor does Pezzati dispute that the

11   requested fee percentage is below fee awards in other similar backdating cases.  *See* Fee

12   Motion, Dkt. No. 143 at 3-4 (citing numerous cases).  Thus, far from breaching its fiduciary

13   duty to the Class, Lead Counsel seeks a fee that is substantially less than the benchmark.  *See*

14   Fee Motion, Dkt. No. 143 at 16 (noting that in most common fund cases, the award exceeds

15   the 25% benchmark and discussing cases).  Indeed, even if the Court were to somehow

16   conclude that Lead Plaintiff only produced a $14 million benefit for the Class (rather than the

17   $16.5 million benefit under the terms of the amended settlement), the requested fees are still

18   substantially below the 25% benchmark.  Therefore, the Court should grant the Fee Motion in

19   its entirety.

20           **C.      Even Assuming *Arguendo* That Pezzati Is Entitled To A Fee Award, Any
21                    Fee Award To Pezzati Should Not Be Paid From Any Award The Court
                     May Determine To Grant To Class Counsel**

22           Pezzati's request for attorneys' fees is without merit because he has not demonstrated

23   that he caused an increase to the Settlement Fund.  *See* Dkt. No. 153 at 12-13 ("Pezzati is not

24   entitled to any award of attorneys' fees because he did not cause any increase to the settlement

25

26   [2] The term "total economic value of the Settlement," as used herein, includes all payments
     Apple has agreed to make under the Settlement, including Apple's payment to establish the
27   Settlement Fund, reimbursement of the costs of administering and distributing the Net
     Settlement Fund, and payment of Attorneys' Fees and Expenses.

28

1    here.  The increased settlement fund in the amended settlement was the result of negotiations

2    between Plaintiffs' Counsel and the defendants in which Pezzati's counsel did not

3    participate.") (citing cases denying objector's petition for attorneys' fees because the objector

4    produced no benefit for the Class).

5           However, even assuming *arguendo* that Pezzati did cause an increase to the Settlement

6    Fund, any award of attorneys' fees to Pezzati should not reduce the amount of attorneys' fees

7    to be paid to Class Counsel by Apple.  *See Fleury v. Richemont North Am., Inc.*, No. 05-4525

8    EMC, 2008 WL 4829868, at *4 (N.D. Cal. Nov. 4, 2008) ("[Objector's] contention that his

9    fees could be taken from the fee award to class counsel is without merit because class counsel

10   is not being paid out of a common fund.").[3]

11          Pezzati contends that *Fleury* is "bosh and nonsense" and unsupported by any authority.

12   *See* Dkt. No. 172 at 2.  This is incorrect.  *Fleury's* conclusion that an objector's fee award

13   should not be deducted from a separately negotiated fee that does not reduce the common fund

14   (such as Lead Counsel's fee here) is supported by ample reasoning, a decision of the United

15   States Supreme Court and common sense.  As *Fleury* explained, "the rationale of the common

16   fund/common benefit doctrine suggests that fees should come from the class benefitted by the

17   objector."  *Id.*  The rationale referred to is the principle that:

18          '[T]o allow the [class] to obtain full benefit from the [objector's] efforts
            without contributing equally to the litigation expenses would be to enrich the
19          [class] unjustly at the [objector's] expense.'  *Hall v. Cole*, 412 U.S. 1, 6 (1973).
            This rationale suggests that **fees can only be assessed against the benefited**
20          **class**.

21   *Fleury*, 2008 WL 4829868, at *3 (emphasis added).  Thus, to award fees other than from the

22   common fund (i.e., other than from the fund that the objector supposedly increased), as Pezzati

23

24   ─────────────────
     [3] Because Lead Counsel and counsel for Plaintiffs Vogel and Mahoney provided notice to the
25   Class that plaintiffs reserved the right to seek an award of fees of up to $2 million, but have in
     fact applied only for an award of fees in the amount of $1,966,250.00, Lead Counsel has no
26   objection to Mr. Frank seeking payment of the difference if he can establish, like counsel for
     Lead Plaintiff, that his conduct produced a common benefit for the Class.  But whether Mr.
27   Frank is entitled to any award at all has nothing to do with the independent merits of the
     application for fees by lead plaintiffs.

28

1    seeks to have the Court do, would violate the long-standing American rule that litigants should

2    bear their own litigation costs.  *See id.* at *5.

3         Pezzati cites *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977), for the

4    proposition that the "district court has power to assess attorneys to compensate other attorneys

5    for benefit provided the class," Dkt. No. 172 at 3, and claims that "*Fleury's dicta* gave no

6    reason for contradicting the Ninth Circuit precedent in *Vincent.*"  *Id.  Fleury*, however, does

7    not contradict Ninth Circuit precedent.  *Vincent* was not a class action because "no valid class

8    ever existed."   557 F.2d at 768.  Thus, *Vincent* did not involve an objector's counsel seeking

9    an award of attorneys' fees.  Rather, the fee dispute was between attorneys' *who actually*

10   *represented and rendered services* to recovering parties in the litigation, *see id.* at 768-69,

11   unlike Objector Pezzati here.  Similarly, Pezzati's reliance on *In re Prudential Ins. Co. of Am.*,

12   273 F. Supp. 2d 563 (D.N.J. 2003), *aff'd*, 103 Fed. Appx. 695, 697 (3d Cir. 2004), is

13   inapposite because there the lead counsel specifically agreed that it would not oppose the

14   award of fees, up to a certain amount, to objectors' counsel, *see* 273 F. Supp. 2d at 564,

15   whereas no such agreement exists here.

16        In sum, the Court should deny Objector Pezzati's request for attorneys' fees[4] and grant

17   the Fee Motion and the Settlement Motion forthwith.

18

19

20

21

22

23

---

24   [4] Objector Pezzati purports to reserve his right to make a future motion for attorneys' fees on
     or before March 30, 2011.  *See* Dkt. No. 172 at 4.  This request should also be denied. *See*
25   *Hartless v. Clorox Co.*, No. 06-2705, 2011 WL 197542 at *15 (S.D. Cal. Jan. 20, 2011)
     (overruling objection, denying objector's request for attorneys' fees and granting final
26   approval to settlement and class counsel's request for attorneys' fees; "objector Newman raises
     this issue [of his attorneys' fees] at the end of his objection and not as a properly brought
27   request for attorneys' fees.").  While Pezzati's request for fees should be denied now, Plaintiffs
     reserve the right to contest any future motion for attorneys' fees he may make.

28

1

## CONCLUSION

2          Based on the foregoing and the entire record herein, Lead Plaintiff respectfully requests

3    that the Court approve the Settlement and Plan of Allocation as fair, reasonable and adequate

4    and in the best interest of the Class, and approve the fee and expense application as requested,

5    and overrule the objections to the fee and expense application.

6

7    Dated:  March 25, 2011                          Respectfully submitted,
                                                      **GRANT & EISENHOFER P.A.**

8
                                                      */s/ Michael J. Barry*
9                                                     MICHAEL J. BARRY (*admitted pro hac vice*)

10                                                    JAY W. EISENHOFER (*admitted pro hac vice*)
                                                      MICHAEL J. BARRY (*admitted pro hac vice*)
11                                                    1201 N. Market Street
                                                      Wilmington, Delaware 19801
12                                                    Telephone:     (302) 622-7000
                                                      Facsimile:     (302) 622-7100
13

14                                                    *Attorneys for Lead Plaintiff New York City*
                                                      *Employees' Retirement System*
15

16                                                    PATRICE L. BISHOP (CSB. No. 182256)
                                                      STULL, STULL & BRODY
17                                                    10940 Wilshire Blvd., Suite 2350
                                                      Los Angeles, CA  90024
18                                                    Telephone:     (310) 209-2468
                                                      Facsimile:     (310) 209-2087

19                                                    HOWARD T. LONGMAN
                                                      STULL, STULL & BRODY
20                                                    6 East 45th Street, Suite 500
                                                      New York, N.Y. 10017
21                                                    Telephone:     (212) 687-7230
                                                      Facsimile:     (212) 490-2022
22

23                                                    GARY S. GRAIFMAN
                                                      KANTROWITZ GOLDHAMER &
24                                                    GRAIFMAN
                                                      747 Chestnut Ridge Road
25                                                    Chestnut Ridge, New York 10977
                                                      Telephone: (845) 356-2560
26                                                    Facsimile: (845) 356-3445

27                                                    *Attorneys for Plaintiffs*
                                                      *Martin Vogel and Kenneth Mahoney*
28