# Exhibit A

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | CASE NO. C-06-05208-JF<br>Honorable Jeremy Fogel<br><br><u>CLASS ACTION</u><br><br>**SUPPLEMENTAL DECLARATION OF JONATHAN B. MARKS** |

I, JONATHAN B. MARKS, hereby declare as follows:

1. I am a Mediator and Arbitrator at MARKSADR, LLC, in Bethesda, Maryland.

2. My *curriculum vitae* was set forth in the Declaration of Jonathan B. Marks dated January 6, 2011, submitted to the Court as Exhibit F to the Declaration of Michael J. Barry in Support of Motion for Final Approval of Settlement and Plan of Allocation and Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (Dkt. 144).

3. On May 19 and 20, 2010, in New York City, I convened a mediation session with representatives from Lead Plaintiff the New York City Employees' Retirement System ("NYCERS") and Defendant Apple, Inc. ("Apple" or the "Company"), as well as their respective counsel and a research and consulting expert.

4. The mediation process was confidential, but the parties have authorized me to inform the Court of the matters presented in this Supplemental Declaration. This Supplemental Declaration adds further details to my January 6, 2011, Declaration with regard to the parties' negotiations during the mediation process.

5. At the beginning of the mediation session, Apple declined to offer any money at all to settle the litigation. Rather, Apple argued that it faced no liability because the statute of repose barred the plaintiffs' claims and that the plaintiffs could not establish loss causation, among other arguments.

6. After two days of difficult, arm's-length negotiations, Apple offered to pay $14 million to the Class to settle the claims. My understanding was this is the same amount the Company received in settlement of a derivative litigation based on allegations relating to backdated stock options—also the subject of the instant action.

7. NYCERS initially declined to accept Apple's $14 million offer, viewing it as insufficient, particularly if it would be reduced through the payment of administrative expenses and any award of attorneys fees that may be awarded by the Court.

8. Apple then suggested that, as an additional element of consideration, it would be agreeable to endowing a chair at a university for the purposes of promoting the interests of sound corporate governance.

9. After the parties had direct communications out of my presence, I learned that NYCERS had suggested as an alternative that Apple establish a fund to be distributed among different universities. After several more hours of negotiation, the parties agreed on a corporate governance fund of $2.5 million in addition to a $14 million fund for distribution to the Class.

10. During the course of the mediation, the parties did not discuss the amount of any award of attorneys' fees. In order to avoid any award of fees and any administrative expenses reducing the distribution to shareholders, however, NYCERS asked Apple to commit to paying any such award of fees and all administrative expenses in addition to the $14 million to be distributed to the Class and the $2.5 million slated for payment to corporate governance programs. In response, Apple agreed to pay in addition to the $14 million to be distributed to the Class and the $2.5 million to be distributed among corporate governance programs (a) all expenses incurred in connection with the administration and distribution of the settlement, and (b) any award of attorneys fees and expenses approved by the Court up to a total of $2.45 million.

11. Although the parties reached an agreement in principle based on the above-stated terms, the mediation ended without a signed settlement agreement. However, the parties agreed to continue to negotiate the final terms of any settlement, including the corporate governance initiatives ultimately made part of the Settlement.

12. I and/or my Associate Mediator, Barbara Wally, participated in three subsequent phone calls with the parties. Thereafter, the parties negotiated without my involvement to reach and prepare documents in support of a mutually agreeable settlement.

13. I understand that after the parties signed the original Settlement Agreement, the parties agreed to amend the terms of the Settlement Agreement as it related to the distribution of funds to corporate governance programs. I did not participate in discussions about that amendment.

Respectfully submitted,

*/s/ Jonathan B. Marks*

JONATHAN B. MARKS

Dated: March 24, 2011