JAY W. EISENHOFER (*admitted pro hac vice*)
MICHAEL J. BARRY (*admitted pro hac vice*)
GRANT & EISENHOFER P.A.
1201 N. Market Street
Wilmington, Delaware 19801
Telephone:     (302) 622-7000
Facsimile:     (302) 622-7100
E-Mail:        jeisenhofer@gelaw.com
               mbarry@gelaw.com

*Attorneys for Lead Plaintiff New York City*
*Employees' Retirement System*

(Additional Counsel Listed on Signature Page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Case No. C-06-5208-JF |
| | <u>CLASS ACTION</u> |
| | **LEAD PLAINTIFF'S OPPOSITION TO OBJECTOR PATRICK PEZZATI'S MOTION FOR ATTORNEYS' FEES** |
| | Date:        May 6, 2011 |
| | Time:        9:00 a.m. |
| | Courtroom: 3, Fifth Floor |
| | Judge:       Hon. Jeremy Fogel |

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL BACKGROUND ........................................................................................... 1

      A.   The Litigation ............................................................................................... 1

      B.   The Settlement ............................................................................................. 2

ARGUMENT ............................................................................................................................ 6

I.     OBJECTOR PEZZATI DID NOT CONFER A BENEFIT ON THE CLASS
      AND IS NOT ENTITLED TO AN INCENTIVE PAYMENT OR AWARD
      OF ATTORNEYS' FEES ............................................................................................. 6

II.    EVEN IF OBJECTOR PEZZATI DID CONFER A BENEFIT ON THE CLASS,
      AND HE DID NOT, HE MUST APPLY TO THE COMMON FUND FOR AN
      AWARD BECAUSE IT WOULD BE IMPROPER TO DEDUCT AN AWARD
      FROM CLASS COUNSEL FEES .............................................................................. 10

CONCLUSION ...................................................................................................................... 14

1

2

<strong><u>TABLE OF AUTHORITIES</u></strong>

3

<strong>Page(s)</strong>

4

CASES

5

*Boeing Co. V. Van Gemert,*
    444 U.S. 472 (1980) ..................................................................................................... 10

6

*Chemical Bank v. Jaffe & Schlesinger, P.A.,*

7
    19 F.3d 1306 (9th Cir. 1994) .......................................................................................... 6

8

*DeHoyos v. Allstate Corp.,*

9
    240 F.R.D. 269 (W.D. Tex. 2007) ................................................................................ 13

10

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
    2 F. Supp. 2d 175 (D. Mass. 1998) .............................................................................. 12

11

*Fleury v. Richemont North Am., Inc.,*

12
    No. 05-4525 EMC, 2008 WL 4829868 (N.D. Cal. Nov. 4, 2008) ................................ 13

13

*Gottlieb v. Barry,*

14
    43 F.3d 474 (10th Cir. 1994) ....................................................................................... 12

15

*In re Air Crash Disaster at Florida Everglades on Dec. 29, 1972,*
    549 F.2d 1006 (5th Cir. 1977) ...................................................................................... 11

16

*In re Domestic Air Transp. Antitrust Litig.,*

17
    148 F.R.D. 297 (N.D. Ga. 1993) ............................................................................... 6, 9

18

*In re Heritage Bond Litig.,*

19
    MDL No. 02-ML-1475-DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .................... 6

20

*In re Homestore.com Inc. Sec. Litig.,*
    No. C-01-11115 (MJP), 2004 U.S. Dist. LEXIS 25234 (C.D. Cal. Aug. 10, 2004) ........ 9

21

*In re Horizon/CMS Healthcare Corp.,*

22
    3 F. Supp. 2d 1208 (D.N.M. 1998) ............................................................................. 12

23

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*

24
    273 F. Supp. 2d 563 (D.N.J. 2003), *aff'd*, 103 Fed. Appx. 695 (3d Cir.2004) ........... 6

25

*In re Veritas Software Corp. Sec. Litig.,*
    No. C-03-0283 MMC, 2006 WL 463509 (N.D. Cal. Feb. 24, 2006) ............................. 8

26

*Lan v. Ludrof,*

27
    No. 06-CV-114-SJM, 2008 WL 763763 (W.D. Pa. Mar. 21, 2008) ............................ 11

28

LEAD PLAINTIFF'S OPPOSITION TO OBJECTOR
PATRICK PEZZATI'S MOTION FOR ATTORNEYS' FEES
    ii
    CASE NO. C-06-5208-JF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Larson v. Sprint Nextel Corp.*,
    C.A. 07-5325 (JLL), 2010 WL 234934 (D.N.J. Jan. 15, 2010) ............................................... 11

*Lonardo v. Travelers Indemnity Co.*,
    706 F. Supp. 2d 766 (N.D. Ohio 2010) ................................................................................. 13

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................................................. 11

*Spark v. MBNA Corp.*,
    289 F. Supp. 2d 510 (D. Del. 2003) ....................................................................................... 6

*Vincent v. Hughes Airwest, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ................................................................................................. 11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................................... 6, 11

*Wininger v. SI Mgmt. L.P.*,
    301 F.3d 1115 (9th Cir. 2002) ............................................................................................. 8, 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

The New York City Employees' Retirement System ("Lead Plaintiff") submits this Opposition to the Motion for Objector's Attorneys' Fees submitted by Objector Patrick Pezzati (Dkt. No. 176) and in further support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 142, "Settlement Motion"); and (2) Lead Plaintiff's Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (Dkt. No. 143, "Fee Motion").

Objector Pezzati's motion should be denied for several reasons. First, Pezzati has not met his burden to demonstrate that he conferred a "substantial benefit" upon the Settlement Class that would entitle his counsel to fees from the settlement. Second, even if Pezzati were entitled to attorneys' fees, which he is not, objector Pezzati's request for nearly $300,000 in attorneys' fees and costs is excessive. Moreover, he seeks to have the excessive fees paid out of Lead Counsel's fee, rather than the Settlement Fund he claims to have increased, and provides no basis for such an unusual request.

**PROCEDURAL BACKGROUND**

**A.     The Litigation**

This litigation has been going on for well over four years. On August 24, 2006, plaintiffs Martin Vogel and Kenneth Mahoney filed a class action complaint in the U.S. District Court for the Northern District of California against Apple and certain Individual Defendants captioned *Vogel, et al. v. Jobs, et al.*, Case No. C-06-5208-JF, and alleged violations of §§ 10(b), 14(a), and 20(a) of the Exchange Act. ("*Vogel I*"). No other complaint was filed. On October 24, 2006, The New York City Employees' Retirement System ("NYCERS") filed a Motion for Its Appointment as Lead Plaintiff and for Approval of Its Selection of Counsel. On January 19, 2007, the Court granted NYCERS's motion and appointed Grant & Eisenhofer as lead counsel.

On March 23, 2007, after conducting an extensive pre-filing investigation; completing an extensive review and analysis of Apple's Securities and Exchange Commission ("SEC") filings and other documents related to the alleged false and misleading statements, including

proxy statements, annual reports and press releases; NYCERS filed a consolidated class action complaint ("Consolidated Complaint") against Apple and certain Individual Defendants, alleging violations of §§ 14(a) and 20(a) of the Exchange Act and breach of state law duties of disclosure.   NYCERS did not assert a claim under Section 10(b) of the Exchange Act.   On June 8, 2007, the Defendants moved to dismiss the Consolidated Complaint.   On November 14, 2007, the Court dismissed the Consolidated Complaint with leave to amend only as a derivative action.   On December 14, 2007, NYCERS filed a motion for leave to file a first amended consolidated class action complaint to assert claims under §§ 10(b) and 20(a) of the Exchange Act, as well as amended versions of the claims asserted in the Consolidated Complaint.   On May 14, 2008, the Court denied NYCERS's motion for leave to amend.   On June 12, 2008, the Court entered judgment in favor of the Defendants and dismissed NYCERS's claims with prejudice.

On June 17, 2008, NYCERS filed a notice of appeal before the U.S. Court of Appeals for the Ninth Circuit.   On January 28, 2010, the Ninth Circuit affirmed the Court's dismissal of NYCERS's claims under § 14(a) of the Exchange Act and state law.   The Ninth Circuit reversed the Court's May 14, 2008 order and granted NYCERS leave to amend its complaint to assert claims under §§ 10(b) and 20(a) of the Exchange Act.   On March 22, 2010, NYCERS filed a First Amended Consolidated Class Action Complaint against Apple and certain Individual Defendants.   NYCERS's amended complaint alleged violations of §§ 10(b) and 20(a) of the Exchange Act.

On May 14, 2010, Plaintiffs filed a Corrected First Amended Consolidated Class Action Complaint against Apple and certain Individual Defendants captioned *In re Apple Inc. Securities Litigation*, Case No. C-06-5208-JF, alleging violations of §§ 10(b) and 20(a) of the Exchange Act.

**B.   The Settlement**

Lead Counsel retained and consulted with experts; exchanged confidential mediation statements with Defendants; prepared for, and, on May 19 and 20, 2010, Lead Plaintiff and

1   Defendants participated in a mediation session with Jonathan B. Marks, noted mediator, in

2   New York.  Negotiations continued thereafter and on September 28, 2010, the Settling Parties

3   entered into a stipulation and agreement to settle the Action for $14 million in cash to be paid

4   by Apple into a settlement fund, to implement certain corporate governance measures, and to

5   donate $2.5 million to twelve corporate governance programs at universities throughout the

6   United States.  After a hearing on October 7, 2010, the Court entered the Preliminary Approval

7   Order and scheduled a final hearing for January 7, 2011.

8          On October 21, 2010, the Settling Parties received a written objection from Theodore

9   H. Frank of the Center for Class Action Fairness, a professional class action objector, on

10  behalf of Objector Pezzati.  Objector Pezzati asserted that Apple's proposed donations may

11  violate Circuit precedent regarding "*cy pres*" distributions.  He also expressed concern about

12  Plaintiffs' Lead Counsel's affiliation with two programs designated to receive *pro rata*

13  donations under the Settlement:  the Harvard Law School's Program on Corporate Governance

14  and Financial Regulation ("HLS Program") and the University of Delaware's Weinberg Center

15  for Corporate Governance ("Weinberg Center").  As disclosed in the papers filed with this

16  Court in support of the Settlement, Mr. Eisenhofer serves in an uncompensated capacity on the

17  boards of advisors for the HLS Program and the Weinberg Center.  (Lead Plaintiff's Notice of

18  Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement (Docket

19  #116) at 6 n.5.)

20         The Settling Parties reviewed Pezzati's objection and found it to be without merit.  Mr.

21  Eisenhofer's affiliation was disclosed in Lead Plaintiff's submission in support of preliminary

22  approval.   The selection of the twelve programs had nothing to do with any existing

23  affiliations with the parties or their counsel, and the proposed $2.5 million donation complied

24  in all respects with applicable law.  The $2.5 million donation was in addition to and did not

25  reduce the payment to the Class.  *See* Supplemental Affidavit of Jonathan Marks ¶ 10.

26         Nevertheless, Apple sought to expedite settlement proceedings and requested that

27  NYCERS consent to an amendment to the settlement agreement that would increase the fund

28

1  payable to the class by $2.5 million, but eliminate any separate payment to corporate

2  governance programs.  Instead of having any designated fund payable to such programs, Apple

3  suggested that instead certain of the funds previously identified be designated to share in the

4  distribution of any residual amount of the class settlement fund following distribution to the

5  Class.  Because Apple's proposed amendment increased the fund payable to the Class,

6  NYCERS agreed.  Thus, on November 12, 2010, the Settling Parties entered into an amended

7  stipulation and agreement that restructured Apple's payment obligations under the Settlement

8  so that, instead of paying $14 million into the Settlement Fund and donating $2.5 million to

9  the twelve programs, Apple would pay $16.5 million into the Settlement Fund.  Any funds

10  remaining in the Net Settlement Fund after payment of Class Members' claims would be

11  donated to nine corporate governance programs, which were among the twelve designated in

12  the September 28 Stipulation.

13      In response to the proposed amendment, Pezzati's counsel once again objected to the

14  proposed settlement.  This time, he argued that the provision of the amended settlement that

15  provided for distribution of settlement funds that are "leftover" after paying all claims

16  submitted by class members — if any — to corporate governance programs was illegal and

17  constituted a breach of class counsel's fiduciary duties; and alleged "gerrymandering" of the

18  Class Period to limit the number of Apple shareholders who will be eligible to make claims on

19  the settlement funds.  The court overruled his objection and granted preliminary approval to

20  the settlement.

21      On January 7, 2011, NYCERS moved for final approval of the settlement and for an

22  award of fees.  Mr. Pezzati's counsel objected again.  This time, he argued that because Lead

23  Counsel did not guarantee that the Settlement Fund would be exhausted by Class claims, such

24  that there was the potential for *cy pres* distributions of unclaimed settlement funds, if any, the

25  Settlement was somehow improper.

26      On February 25, 2011, this Court heard argument on the motion for final approval.  At

27  that time, the Recognized Claims submitted amounted to approximately $9.4 million, although

28

1   the deadline for filing claims extended until March 15, 2011.  Mr. Pezzati's counsel appeared
2   and objected, arguing again that the Settlement was inadequate because it allowed for the
3   possibility of *cy pres* distributions of unclaimed amounts from the Settlement Fund, if any.
4   The Court ordered the parties to provide an update on March 15, 2011 regarding the status of
5   recognized claims submitted.

6       On March 15, 2011, the parties provided an update to the court (Dkt. No. 168)
7   explaining that as of March 14, 2011, the Claims Administrator had received Recognized
8   Claims greater than $5.00 totaling $48,180,424.75, far exceeding the $16.5 million Settlement
9   Fund.

10      Thereafter, Mr. Pezzati submitted a "response" in which he acknowledged that his
11  objection was "moot," but suggested that he should be entitled to an award of fees of
12  $297,916.00, although he would be "willing to take" attorneys' fees, costs, and an incentive
13  payment not to exceed a total of $85,000.  He claimed that he caused a $2.5 million increase in
14  the settlement fund, but instead of seeking any award payable from such fund, stated that he
15  wanted any such payment to be paid by NYCERS's counsel.

16      In response, on March 25, 2011, NYCERS submitted a brief reply, explaining that
17  Pezzati's request for attorneys' fees is meritless because he has not demonstrated that he
18  caused an increase in the Settlement Fund and that, even if he had, any fee award to which he
19  claims entitlement should be sought from Apple or be paid from the common Settlement Fund
20  that Objector Pezzati claims he materially increased.

21      Apple agreed to pay any fees awarded to plaintiffs' counsel in this plaintiffs' counsel in
22  this case in addition to the Settlement Fund, so as not to reduce the amount payable to the
23  Class.  NYCERS's request for fees seeks payment for the benefit that NYCERS provided.
24  And NYCERS's fee request is not only well below the 25% "benchmark" in the Ninth Circuit
25  (regardless of whether the Court considers the fee as a percentage either of $14 million or
26  $16.5 million); it is below Lead Counsel's lodestar.  *See* Lead Plaintiff's Motion for
27  Attorneys' Fees and Reimbursement of Litigation Expenses (Dkt. No. 143).

28

1    On March 31, 2011, Mr. Pezzati filed his present motion.

2                                **ARGUMENT**

3    **I.    OBJECTOR PEZZATI DID NOT CONFER A BENEFIT ON THE CLASS AND
4           IS NOT ENTITLED TO AN INCENTIVE PAYMENT OR AWARD OF
            ATTORNEYS' FEES**

5

6           It is well settled that "an objector to a class action settlement is not generally entitled to

7    an award of counsel fees."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F.

8    Supp. 2d 563, 565 (D.N.J. 2003), *aff'd*, 103 Fed. Appx. 695 (3d Cir.2004) (internal quotations

9    and alterations omitted); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 358

10   (N.D. Ga. 1993); *Spark v. MBNA Corp.*, 289 F. Supp. 2d 510, 513 (D. Del. 2003) (An

11   objector's role in a class action is different from that of class counsel, and, therefore, its fee

12   petition should not be given the same treatment as a petition from class counsel.)  "In the

13   absence of a showing that objectors substantially enhanced the benefits to the class under the

14   settlement ... they [are] not entitled to fees."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052

15   (9th Cir. 2002); *Chemical Bank v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir.

16   1994).  Indeed, as one court has observed,

17          [T]he cases in which objectors are awarded attorneys' fees are few and far
            between. In such cases, the objectors expended large amounts of time,
18          money and resources, aided the court considerably in its consideration of
            proposed settlements and fee awards, and the class members were
19          ultimately benefited as a result of the objectors' efforts.

20   *Spark*, 289 F. Supp. 2d at 513.  Objector Pezzati fails to satisfy his burden of proof and thus, as

21   a matter of law, his motion must be denied.  *See In re Heritage Bond Litig.*, MDL No. 02-ML-

22   1475-DT, 2005 WL 1594403, at *25 (C.D. Cal. June 10, 2005) (objector bears the burden of

23   proof with regard to demonstrating substantial benefit to common fund).

24          Here, Objector Pezzati played no role in the creation of the $16.5 million settlement

25   fund.[1]  Objector Pezzati's counsel was not appointed Lead Counsel, had nothing to do with

26   ---
     [1]   Indeed, one wonders how objector Pezzati came to be involved in the case at all, based
27   upon Mr. Frank's trolling for an objector to further his political agenda of class action
     "reform."  *See*  http://www.pointoflaw.com/archives/2010/10/the-illegal-app.php.  ("The
     Center for Class Action Fairness … would love to object to [the Apple] settlement. But it can't

28

1    prosecuting the case for more than four years, and did not participate in the day to day efforts

2    that resulted in this recovery for the Settlement Class.  Objector Pezzati's claimed contribution

3    to the Settlement was one letter dated October 21, 2010.  In his letter, Mr. Pezzati asserted that

4    the settlement violated Ninth Circuit law because it contained a *cy pres* award.  Although

5    Pezzati's arguments were thoroughly considered, both the factual and legal premises were

6    simply incorrect, and did not meaningfully alter the settlement.

7            Moreover, Objector's counsel has represented his own interests and agenda, not the

8    Settlement Class.  Contrary to his representations that his actions are intended to benefit

9    members of class actions, Theodore Frank, counsel for Pezzati, is a "serial objector" who is an

10   admitted anti-class action activist.[2]  *See* Theodore Frank, "Protecting Main Street from

11   Lawsuit Abuse," Statement presented to the Senate Republican Conference, March 16, 2009,

12   available at http://www.aei.org/docLib/Frank%20testimony.pdf.  He has described his current

13   organization, the Center for Class Action Fairness, as a "guerilla operation" dedicated almost

14   exclusively to challenging class actions. See Kate Moser, "Class Action Avenger Discusses

15   Coupon       Crusades"      Legal       Pad       (Sept.      23,      2009,      2:19      p.m.)

16   http://legalpad.typepad.com/my_weblog/2009/09/class-action-avenger-discusses-coupon-

17   crusades.html; http://centerforclassactionfairness.blogspot.com; Peter Lattman, "Trial Lawyers

18   Defend Themselves While Taking on Terrorism", Wall Street Journal Law Blog, October 30,

19   2006,   available   at   http://blogs.wsj.com/law/2006/10/30/trial-lawyers-defends-themselves-

20   while-taking-on-terrorism.  Indeed, Mr. Frank reiterated his status as a "tort reform advocate"

21   as     recently     as     March     1     of     this     year.     *See*     http://www.pointoflaw.com/

22   archives/2011/03/the-nvidia-clas.php.

23

---

24   do so in a vacuum: it can only do so on behalf of a class member … if you … wish to object:
     please contact me. If you're not in the class, but know people or institutions who might be,
25   spread the word.).
     [2]    Mr. Frank's status as a professional objector to class action settlements is well
26   documented. *See In re HP Inkjet Printer Litig.*, No. C-05-3580 JF (PVT) (N.D. Cal. filed Jan.
     17, 2011), Declaration of Niall P. McCarthy In Support of Plaintiffs' Motion For Final
27   Approval of Class Action Settlement, (Dkt. 272) at Ex. 3 (including a partial list of ten cases in
     which Frank either objected himself, or represented an objector).

28

1    Even if there were a basis for fees, his request is improper.  Mr. Frank seeks an award

2    of fees (1) as a percentage of the overall fee award and (2) for all of the "work" he conducted.

3    The percentage of the overall fee is not the standard for payment of objector's fees in the Ninth

4    Circuit.  Because objectors come into a case when a recovery has been assured for the class

5    and provide a limited amount of work on narrow issues, in the narrow circumstances where

6    any fee award is appropriate, this Circuit allows payment to objectors based on a reasonable

7    lodestar for the "substantial benefit" they achieved.  *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115,

8    1120 (9th Cir. 2002).  Here, that amount would be limited to the fees and expenses incurred in

9    connection with preparing his initial letter—if this Court finds Pezzati's objection provided a

10   substantial benefit to the class.  However, said objection did nothing to benefit the class or

11   advance the progress of the litigation. Rather, the actions of Pezzati's attorney only hindered

12   the progression and increased the cost of litigation.

13   Mr. Frank's $300,000 fee and expenses request is not only far out of line with any

14   benefit Mr. Frank conferred, but if Mr. Frank deserves any fee at all, it must be limited to his

15   lodestar.  Fees are based on the reasonable amount of time spent in achieving a benefit for the

16   class.  *Wininger*, 301 F.3d at 1125-27; *see also In re Veritas Software Corp. Sec. Litig.*, No. C-

17   03-0283 MMC, 2006 WL 463509 (N.D. Cal. Feb. 24, 2006) ("Given the minimal number of

18   hours [objector's] counsel spent in preparing his initial objection, an award in the amount

19   calculated by [his] percentage method would result in an unwarranted windfall.").

20   Thus, to the extent Pezzati's objection conferred any benefit; this Court could properly

21   consider payment for the one or two hours spent in drafting the initial letter pointing out his

22   objection to the separate *cy pres* fund.  In *Wininger*, the Ninth Circuit rejected an objector's

23   argument for a percentage award, upheld the court's award based on lodestar, upheld the

24   reduction of hours on unsuccessful efforts, upheld denial of a risk multiplier, and remanded for

25   further reduction of hours.  301 F.3d at 1126-27.  The Ninth Circuit concluded that the

26   objector was entitled to payment for a limited number of hours at straight time because of the

27

28

1  limited nature of the work, the relative lack of difficulty, the partial success and the fact there
2  was no risk at this stage of the case.  *Id.* at 1126.  Nothing more is compensable.

3         In contrast to the cases he cites, objector Pezzati conferred no identifiable benefit,
4  intangible or otherwise, upon the Settlement Class beyond exercising his individual right to
5  take part in the adversarial process by filing an objection.  Objector Pezzati also ignores the
6  fact that in the cases he cites in support of his motion, the amount awarded to objectors was far
7  less (both as a percentage of the recovery and as an amount) than the amount he is requesting
8  here, despite the fact that the objectors contributed substantially to the class action process.
9  Indeed, in *Homestore.com*, where the objection resulted in a revised notice, the court awarded
10 the objector less than $9,000 from the settlement fund for the benefit conferred.  The court also
11 rejected objector's request for a "multiplier," noting that, unlike class counsel, the objector
12 faced no risks to support one.  *In re Homestore.com Inc. Sec. Litig.*, No. C-01-11115 (MJP),
13 2004 U.S. Dist. LEXIS 25234 at **7-8 (C.D. Cal. Aug. 10, 2004); *see also see also In re*
14 *Domestic Air Transp.*, 148 F.R.D. at 359 (denying excessive fee because objector's counsel
15 "did not work over the course of three years against a vigorous defense in pursuit of complex
16 and unique claims, nor did counsel shoulder the financial burden of pursuing the action").  In
17 short, objector Pezzati not only does not, but cannot, cite a single case in which the objector's
18 fee award totaled anywhere near the exorbitant amount that he is requesting.

19        It is also worth noting that the $297,916 in attorneys' fees and expenses Mr. Frank
20 seeks would amount to 11.9% of the benefit he allegedly conferred upon the class.  Less than a
21 year ago, however, he stated the following:

22      The Center for Class Action Fairness … announce[s] in advance that we
        refuse to settle unless the settlement results in an objectively fair and
23      reasonable settlement, ***and we refuse to request a fee for more than 4.4%
        of the additional pecuniary benefit to consumers resulting from our***
24      ***objections***.

25

26

27

28

1   http://centerforclassactionfairness.blogspot.com/2010/05/thoughts-on-professional-

2   objectors.html (emphasis added).[3]

3

4   II.    **EVEN IF OBJECTOR PEZZATI DID CONFER A BENEFIT ON THE CLASS,
        AND HE DID NOT, HE MUST APPLY TO THE COMMON FUND FOR AN
        AWARD BECAUSE IT WOULD BE IMPROPER TO DEDUCT AN AWARD
5       FROM CLASS COUNSEL FEES**

6          Objector Pezzati seeks $230,000 in attorneys' fees to be paid by Lead Counsel from the

7   fee awarded by this Court for their work in obtaining the settlement.  He argues that because

8   Pezzati's objection is responsible for 15.15% of the class recovery, Pezzati is entitled to

9   15.15% of the $1,966,250 fee award sought by class counsel, or $297,916, with the amount

10  being deducted from the class counsel fee award.  This violates the so-called "American rule"

11  relating to attorneys' fees.

12         Under the "American rule," every litigant is responsible for the payment of his or her

13  own attorneys' fees.  However, in certain settings, the "American rule" creates the problem of

14  "free riding", that is, when individuals who benefit from the litigation avoid sharing the full

15  burden and expense of litigation by relying on the work of others.  *Boeing Co. V. Van Gemert*,

16  444 U.S. 472, 478 (1980) (citing *Trustees v. Greenough*, 105 U.S. 527 (1882) and *Central R.R.

17  & Banking Co. v. Pettus*, 13 U.S. 116 (1885)).  The "Common Fund Doctrine" avoids the

18  problem of "free riding."  "The doctrine rests on the perception that persons who obtain the

19  benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful

20  litigant's expense."  *Boeing*, 444 U.S. at 478; *see also* Manual for Complex Litigation (Fourth)

21  ("MCL") §14.121 (2004) (discussing the American Rule and the common benefit exception in

22  complex cases).  Thus, to the extent Pezzati substantially increased the common fund (and he

23  did not), his payment should be payable out of that fund.

24

25  [3]   In addition to his own exorbitant fee request, Mr. Frank seeks an incentive payment for
    objector Pezzati based on the completely unfounded assertion that he was "likely
26  investigated".  (Obj. Mot. at 2).  Yet incentive payments are frowned upon in PSLRA cases,
    and Lead Plaintiff, which devoted considerably more, and more meaningful, time to this case
27  than objector Pezzati, does not seek one.

28

1    The cases relied on by Pezzati do not advance his cause. Pezzati relies on *In re Air

2    Crash Disaster at Florida Everglades on Dec. 29, 1972*, 549 F.2d 1006 (5th Cir. 1977) and

3    *Vincent v. Hughes Airwest, Inc.*, 557 F.2d 759, 773-74 (9th Cir. 1977) in support of his fee-

4    shifting argument.  These cases are inapposite.  *In re Air Crash Disaster at Florida Everglades*

5    is instructive.   That mass tort case involved consolidated multi-district litigation with

6    numerous plaintiffs and extensive discovery.  The court appointed Committee to manage the

7    litigation for the benefit of all plaintiffs.   549 F.2d at 1008. The Committee was chiefly

8    involved in organizing discovery and other pretrial preparation.  *Id.*  The attorneys that did not

9    do any pretrial work were ordered to pay the Committee attorneys a portion of their fees.  *Id.*

10   This is nothing like the case at hand. The attorneys here were never ordered to work together,

11   nor did they ever agree to.

12   In  addition, Pezzati  relies on a series of cases from other Circuits finding that

13   objectors are entitled to attorneys' fees for being a "devil's advocate," improving the

14   settlement process or otherwise assisting the court.  Pezzati fails to recognize, however, that

15   this is not the standard in the Ninth Circuit, where objectors must establish that their efforts

16   "substantially enhanced the benefits to the class under the settlement." *Vizcaino*, 290 F.3d at

17   1052; *see also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009)

18   (remanding for reconsideration of the question of "the extent to which Objectors added value

19   that increased the fund or substantially benefitted the class members").

20   In *Larson v. Sprint Nextel Corp.*, C.A. 07-5325 (JLL), 2010 WL 234934, at **26-35

21   (D.N.J. Jan. 15, 2010), the court considered the objectors' hours in determining the lodestar,

22   *i.e.*, they were included for purposes of determining the total fee award, then allocated among

23   Class and certain objectors' counsel.  In *Lan v. Ludrof*, No. 06-CV-114-SJM, 2008 WL

24   763763, at *28 (W.D. Pa. Mar. 21, 2008), the court did award an objector a percentage of the

25   increase in the benefit to the class, but it awarded it ***from the common fund***, not from the

26   award of attorneys' fees to class counsel.   Moreover, class counsel agreed that the objection

27

28

1   caused them to lower their fees.  That Pezzati cites these cases as supporting an award of his

2   fees from class counsel's borders on the disingenuous.

3       Another case string-cited by Pezzati, *Gottlieb v. Barry*¸ 43 F.3d 474, 491 (10th Cir.

4   1994), is equally unavailing.  There, the Tenth Circuit held that the court below abused its

5   discretion for failing to articulate why the special master's were clearly erroneous.  Thus, the

6   decision was based on the court of appeal's finding that the district court substituted its

7   findings, without explanation, for the findings of the special master the district court

8   appointed, when the special master had spent three days reviewing billing records and

9   interviewing counsel and determined that objectors had conferred a benefit on the class—for

10  which, held the court, the objectors were entitled to an award of $7,000.  *Gottlieb* does not, as

11  Objector Pezzati implies, stand for the proposition that all objectors are *per se* entitled to fee

12  awards.

13      *Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175, 176 (D. Mass. 1998)

14  is equally inapposite, as there **was no common fund** in that case.

15      Likewise, *In re Horizon/CMS Healthcare Corp.*, 3 F. Supp. 2d 1208 (D.N.M. 1998) is

16  unavailing.  In that case, an institutional plaintiff that had sought and failed to be appointed

17  lead plaintiff and remained involved in the case objected to the amount of the lead plaintiff's

18  fee request.  The court noted the extensive work the objector had performed, including:

19  (i) preparing and submitting a brief in opposition to plaintiffs' fee request with supporting

20  declarations, one from Assistant General Counsel of Unisys Corporation, retained by the

21  objector as an expert on attorneys' fees; (ii)  retaining economic experts to conduct a full-scale

22  damage analysis which included extensive document review; (iii) consultation with counsel

23  and the client; (iv) preparation of documents and testimony; (v) production of documents and

24  review of documents produced by plaintiffs and defendants; (vi) meeting with representatives

25  of plaintiffs and defendants; and (vii) appearing at a hearing, arguing in support of a reduction

26  in counsel's fees that the court identified as having led to a reduction of counsel's fees.  *Id.* at

27

28

1   1214.  The court then paid the objector out of that reduction.  That is not what objector Pezzati

2   seeks in the present case.

3        As discussed more fully in Lead Plaintiff's Opposition to Objector Patrick Pezzati's

4   Response to March 15 Supplemental Filings of Settling Parties (Dkt. #174),  the other cases

5   cited by Pezzati are easily distinguished because Class Counsel in those cases *supported* the

6   objector's fee application.  Such is not the case here.  Indeed, this case is similar to *Lonardo v.*

7   *Travelers Indemnity Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010), where the court denied Mr.

8   Frank's assertion that he had increased the benefit to the class, stating, "the fact remains that it

9   was Class Counsel who secured the [additional $2 million] for the Settlement Class by

10  negotiating the First Amendment to the Settlement Agreement with Travelers.  Mr. Frank was

11  not a party to that negotiation."  *Id.* at 802; *see also DeHoyos v. Allstate Corp.*, 240 F.R.D.

12  269, 337-38 (W.D. Tex. 2007) (declining any award of fees to objectors' counsel); *Fleury v.*

13  *Richemont North Am., Inc.*, No. 05-4525 EMC, 2008 WL 4829868 (N.D. Cal. Nov. 4, 2008)

14  ("[Objector's] contention that his fees could be taken from the fee award given to class counsel

15  is without merit because class counsel is not being paid out of a common fund.").

16                                    *   *   *   *   *

17       As set forth in extensive briefing on this subject by both Plaintiffs' counsel and counsel

18  for Defendants, as well as the Declarations of Michael J. Barry and Jonathan B. Marks in

19  support thereof, objector Pezzati and his counsel played no role whatsoever in this litigation or

20  in the settlement negotiations between Lead Plaintiff, Lead Counsel, and counsel for the

21  Defendants.  Accordingly, he is not entitled to an award of attorneys' fees.  To the extent the

22  Court decides otherwise, objector Pezzati must apply to the common fund for an award based

23  on the amount of any **substantial benefit** for which he can offer **specific proof** that he is

24  responsible.

25       NYCERS seeks an award of fees based on the benefit provided to the Class.  Whether

26  that benefit is measured as $14 million or $16.5 million, Lead Counsel's request for attorneys'

27  fees is well below the 25% benchmark in the Ninth Circuit.  Simply because NYCERS

28

1  convinced Apple to agree to pay any amount awarded to NYCERS in addition to (rather than

2  out of) the settlement fund, in order to ensure that the distribution to the Class would not be

3  reduced by any award of fees to NYCERS, provides no basis to say that *ipso facto* any award

4  of fees to an objector must be paid by NCYERS' counsel.  Rather, to the extent Pezzati claims

5  that he created a $2.5 million benefit, he may apply for an award of fees to be paid out of that

6  fund.  For his own political purposes, and not any legal reasons, he has declined to do so.

7     Nevertheless, as NYCERS previously pointed out, the notice to the class informed

8  Apple shareholders that plaintiffs reserved the right to seek an award of fees of up to $2

9  million.  Here, the application for fees by plaintiffs' counsel is only $1,966,250.00, leaving a

10  difference of $33,750.00.  NYCERS has no objection if the Court were to award any fees to

11  Mr. Pezzati's counsel payable out of the $2.5 million "fund" he purportedly created, or the

12  difference in fees that Apple previously agreed to pay and the amount actually sought by

13  plaintiffs in this case.  There is absolutely no legal support, however, for Mr. Frank's

14  insistence that he be paid out of any fee awarded to NYCERS's counsel here.

15  **CONCLUSION**

16     Based on the foregoing and the entire record herein, Lead Plaintiff respectfully requests

17  that the Court reject the Pezzati Motion for Fees, approve the Settlement and Plan of

18  Allocation as fair, reasonable and adequate and in the best interest of the Class, and approve

19  the fee and expense application as requested, and overrule the objections to the fee and

20  expense application.

21  Dated:  April 15, 2011        Respectfully submitted,
                    **GRANT & EISENHOFER P.A.**

22

23                     */s/ Michael J. Barry*
                   JAY W. EISENHOFER (*admitted pro hac vice*)

24                     MICHAEL J. BARRY (*admitted pro hac vice*)
                   1201 N. Market Street

25                     Wilmington, Delaware 19801
                   Telephone:  (302) 622-7000

26                     Facsimile:  (302) 622-7100

27                     *Attorneys for Lead Plaintiff New York City*
                   *Employees' Retirement System*

28