**E-Filed 5/17/2011**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Case Number 5:06-CV-05208-JF (HRL) |
| _____ | ORDER[1] GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS' FEES AND EXPENSES; AND GRANTING IN PART OBJECTOR PEZZATI'S MOTION FOR ATTORNEYS' FEES AND INCENTIVE AWARD |
| This Document Relates To All Actions | |
| | [Re: Docket Nos. 142, 143, 176.] |

Lead Plaintiff New York City Employees' Retirement System ("NYCERS") moves for final approval of a proposed class action settlement,[2] attorneys' fees, and expenses.  Objector Patrick Pezzati ("Pezzati") moves for an award of attorneys' fees and an incentive award.  For the reasons set forth below, NYCERS' motions will be granted, and Pezzati's motion will be granted in part.

---

[1] This disposition is not designated for publication in the official reports.

[2] Defendants Apple, Inc. ("Apple"), Steven P. Jobs, Fred D. Anderson, Nancy R. Heinen, William V. Campbell, Millard S. Drexler, Arthur D. Levinson, and Jerome B. York join in NYCERS' motion for final approval of the settlement.

# I. BACKGROUND

## A.    Procedural History

On August 24, 2006, Plaintiffs Martin Vogel ("Vogel") and Kenneth Mahoney ("Mahoney") filed a securities fraud class action alleging violations of the Securities and Exchange Act of 1934 ("the 1934 Act").  On June 27, 2008, Vogel and Mahoney filed a second securities fraud class action, again alleging violations of the 1934 Act.  On April 8, 2010, the Court consolidated the two actions under the caption *In re Apple Inc. Securities Litigation*, Case No. 5:06-cv-05208-JF; appointed NYCERS as lead plaintiff; and appointed Grant & Eisenhofer as lead counsel.  Shortly thereafter, NYCERS filed an amended consolidated class action complaint alleging violations of sections 10(b) and 20(a) of the 1934 Act.

NYCERS claims that Defendants backdated Apple's employee stock options for more than a decade and issued false and misleading financial statements.  NYCERS' claims are based on a series of announcements and a corrective disclosure made by Apple regarding its issuance of stock option grants.

## B.    Terms of the Settlement

After months of negotiations and a formal mediation session, the parties reached an agreement in September 2010, under which Defendants would establish a $14 million settlement fund for distribution to the class, donate $2.5 million to the corporate governance programs of twelve universities, pay administrative costs, pay attorneys' fees in an amount not exceeding $2 million, reimburse counsel for litigation expenses in an amount not exceeding $450,000, and implement certain corporate governance reforms.  In return, the class would release all claims against Defendants arising out of the conduct at issue in this action, whether known or unknown at the time of settlement.  The Court granted preliminary approval and conditionally certified a settlement class consisting of all persons and entities who purchased Apple common stock between August 24, 2001 and June 29, 2006.

The parties subsequently amended the settlement agreement by increasing the fund established for distribution to the class from $14 million to $16.5 million, eliminating the separate $2.5 million fund to be donated to the university corporate governance programs, and

providing that any amount remaining in the settlement fund after distribution to the class would be donated to nine university corporate governance programs ("*cy pres* component"). The Court granted preliminary approval to the amended agreement ("proposed agreement").

## C.   Notice

Notice of the proposed agreement was mailed to more than 1.3 million individuals, 31,886 record holders, and 5,802 bankers, brokers, and other nominees who may hold shares for potential class members. Notice also was published in *Investor's Business Daily* and transmitted over *Business Wire*.

## D.   Claims, Exclusions, and Objections

The Court heard oral argument on February 25, 2011 and requested that the parties provide an update on March 15, 2011 regarding the number of claims, exclusions, and objections submitted by class members. As of March 14, 2011, the claims administrator had received 76,820 proofs of claim, the value of which exceeds $48 million. Eleven[3] class members requested exclusion from the class, and three class members filed objections to the proposed settlement.

## II. LEGAL STANDARD

In evaluating a settlement, a district court must determine whether the proposed settlement is "fundamentally fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e); *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

> "Assessing a settlement proposal requires a district court to balance a number of factors, including: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement."

*Id.* at 458 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citations omitted)). The district court also must satisfy itself that the proposed settlement is not the product of collusion among the negotiating parties. *Id.*

_____

[3] A total of twenty individuals requested exclusion from the class, but nine of them did not provide evidence showing that they are class members as required by this Court's order.

3

### III. DISCUSSION

**A.     Settlement Class**

The instant action satisfies the requirements for class action treatment under Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.  The numerosity requirement is satisfied because the joinder of more than 1.3 million individuals would be impracticable.  The commonality requirement is satisfied because the issue of whether Apple issued false and misleading proxy statements is common to all class members.  The typicality requirement is met because the claims of NYCERS are identical to the those of the other class members, as all of them arise from Apple's allegedly false and misleading proxy statements.  The adequacy of representation requirement also is met because NYCERS and its counsel fairly and adequately have protected the interests of the class throughout the litigation.  A class action is superior to other methods of adjudication, as all questions of law or fact that are common to the class members predominate over any questions affecting only individual class members.  Accordingly, the proposed class, which includes all persons who purchased Apple common stock between August 24, 2001 and June 29, 2006, is certified for purposes of this settlement agreement.

**B.     Notice**

The form and content of the notice, which was mailed directly to more than 1.3 million potential class members and published in two media outlets, satisfies the requirements of Rule 23(e) and constitutes the best notice practicable under the circumstances.  Class members were given ample opportunity to object to the proposed settlement, to participate in the fairness hearings, and to request exclusion from the class.

**C.     The Proposed Settlement**

Based on the factors below, the Court concludes that the proposed settlement is fair, reasonable, and adequate.

**1. Strength of Plaintiffs' Case**

NYCERS asserts that continuing the litigation would be risky, as it might not have been able to meet its burden of proving reliance and loss causation at the summary judgment stage or at trial.

4

**2. Risk, Complexity, and Likely Duration of Further Litigation**

The parties attest that this action would have continued for years and that its outcome would have been uncertain had they not reached a settlement. A settlement provides the class with an immediate and substantial recovery.

**3. Terms of the Settlement**

The terms of the proposed agreement confer considerable benefits on the class. Defendants have agreed to establish a $16.5 million fund to be distributed among class members. Defendants separately will pay Plaintiffs' attorneys' fees and expenses, as well as the costs of administrating the class. Defendants also have agreed to implement a variety of corporate governance programs to prevent a recurrence the alleged conduct.

**4. Stage of the Proceedings**

Because the parties have been litigating this action for more than four years, they had a thorough understanding of the strengths and weaknesses of their cases during settlement negotiations.

**5. Experience and Views of Counsel**

Counsel for both parties have many years of experience in litigating securities and complex class actions. Because the settlement is the product of a formal mediation session and several months of negotiations conducted at arm's length, the Court is satisfied that the settlement is not the product of collusion.

**6. Reaction of the Class Members**

Out of more than 1.3 potential class members, only eleven class members requested exclusions and three class members filed objections. The small number of objections raises a strong presumption that the settlement is favorable to the class. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).[4] The Court concludes that

---

[4] George Sibley filed objections but subsequently withdrew them. Geoffrey Wood also filed objections, but he lacks standing to object as he did not provide evidence to show that he is a class member as required by this Court's order. *See San Francisco NAACP v. San Francisco Unified School Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) ("nonclass members have no standing to object to the settlement of a class action") (citations omitted).

none of the objections rebuts this presumption.

### a.  Pezzati Objection

Patrick Pezzati objected to the settlement's *cy pres* component and to the content of the notice.  However, Pezzati withdrew his objection after NYCERS provided documentation showing that the settlement fund will be exhausted by the 76,820 claims received as of March 14, 2011.  As will be discussed below, Pezzati now argues that he is entitled to attorneys' fees.

### b.  Kyriazos Objection

Charles Kyriazos claims that Defendants' alleged actions did not harm the class members, and he objects to an award of attorneys' fees to Plaintiffs' counsel.  However, while Kyriazos is entitled to his view of the merits, his objections are not directed to the fairness or adequacy of the settlement, which represents a compromise with respect to the claims asserted by Plaintiffs.

### c.  Fekrat Objection

Fred Fekrat objects to the plan of allocation because options traders who purchased Apple stock but did not hold their shares until the end of the class period are ineligible to recover under the plan.  These investors were excluded from the class for two reasons.  First, NYCERS' amended complaint does not allege that options traders suffered an injury as a result of Defendants' alleged conduct; the amended complaint refers only to "common stockholders." Am. Compl. ¶¶ 460, 461.  Second, the Supreme Court has held that investors who sell their shares before a corrective disclosure do not necessarily suffer a loss.  *See Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 342 (2005) ("[I]f the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

## D.    Attorneys' Fees and Costs Requested by NYCERS

NYCERS requests attorneys' fees in the amount of $1,966,250 and costs in the amount of $395,515.90, or a total of 11.9% of the $16.5 million settlement fund.  This percentage is well below the Ninth Circuit's benchmark of 25% of the recovery for the class in common fund cases. *See, e.g.*, *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  NYCERS negotiated a settlement that provides significant benefits to the class, as discussed above.  The settlement allows the class to recover up to $1.70 per share, an amount that reflects the maximum potential

6

1    recovery class members could have achieved under federal law.  The Court is entirely satisfied

2    that the requested award of fees and expenses is warranted in this case.

3    **E.     Attorneys' Fees Requested by Pezzati**

4           Pezzati claims to have conferred a benefit to the class in the amount of $2.5 million.  He

5    asserts that the increase of the settlement fund from $14 million to $16.5 million is attributable to

6    his objection to the portion of the original proposed agreement that would have required

7    Defendants to donate $2.5 million to various university programs in corporate governance.  At

8    the first hearing for preliminary approval of the settlement, Pezzati argued that such donations

9    would be unlawful because lead counsel are affiliated with two university programs that were

10   selected to benefit from that portion of the agreement.  After Pezzati raised his objection, the

11   parties amended their proposed agreement to eliminate Defendants' $2.5 million donation to the

12   university programs and to increase the settlement fund by $2.5 million.

13          Because $2.5 million is 15.15% of the total class recovery of $16.5 million, Pezzati

14   requests that his attorneys be awarded 15.15% of the $1,966,250 in fees sought by Plaintiffs'

15   counsel, which would result in award to Pezzati's counsel[5] of $297,916.  Pezzati also seeks an

16   incentive payment of $1,000 on the basis that "he exposed himself to the risk of harassing

17   discovery" and "quite likely faced private investigation from the plaintiffs' attorneys."  Pezzati's

18   counsel claim that they worked a total of 104 hours on this action, but they do not provide a

19   detailed accounting of their hours.

20          When the percentage recovery for objectors' counsel would be either too small or too

21   large in light of the hours devoted to the case, the benchmark percentage should be adjusted or

22   replaced by the lodestar calculation.  *See Wininger v. SI Management L.P.*, 301 F.3d 1115, 1127

23   (9th Cir. 2002).  Assuming 104 hours expended on this case, an award of $297,916 as requested

24   by Pezzati would result in an excessive hourly rate of more than $2,800.  Accordingly, the

25   lodestar calculation is more appropriate in this case.  Moreover, "[t]he party petitioning for

26   attorneys' fees bears the burden of submitting detailed time records justifying the hours claimed

27

28          [5] Pezzati is represented by Theodore H. Frank, Daniel Greenberg, and Adam Schulman of
     the Center for Class Action Fairness.

1  to have been expended." *In re Washington Public Power Supply System Sec. Litig.,* 19 F.3d

2  1291, 1305 (9th Cir. 1994) (internal quotation marks omitted).  "Where the documentation of

3  hours is inadequate, the district court may reduce the award accordingly."  *Id.*

4      Pezzati's counsel do not provide detailed records to justify the 104 hours they claim to

5  have expended on their objections to the proposed settlement.  It is unclear how drafting

6  Pezzati's limited submissions and making a few short court appearances would have required so

7  much time.  At the same time, the Court agrees that Pezzati's objection did benefit the class, and

8  that a fee award in some amount is appropriate.  Although NYCERS objects strenuously to any

9  award that would result in a diminution of the award to its counsel, it has no objection in

10 principle to an award of fees to Pezzati's attorneys.  NYCERS suggests that the Court award

11 Pezzati the difference between what Defendants agreed to pay in attorneys' fees ($2 million), and

12 the amount actually sought by Plaintiffs' counsel ($1,966,250), which is $33,750.  NYCERS also

13 points out that although Defendants agreed to pay up to $450,000 in litigation costs, Plaintiffs

14 have requested only $395,515.90 of that amount, leaving an additional sum of approximately

15 $54,480.  Defendants' counsel stated at the hearing that Defendants would have no objection to

16 utilization of these funds to pay a fee award to Pezzati, on the condition that Pezzati waive his

17 right to appeal the judgment, which Pezzati agreed to do.  Under the circumstances, an award of

18 fees to Pezzati in the amount of $87,000 would result in an hourly rate of approximately $836,

19 which is generous but not overly so.  An additional incentive award of $1,000 would bring the

20 total amount awarded to Pezzati to $88,000, which is within the combined limit of $2.45 million

21 for fees and expenses to which the parties agreed.  In light of all of the relevant circumstances,

22 the Court concludes that a fee award of $87,000 and an incentive payment of $1,000 fairly will

23 compensate Pezzati and his counsel for their contributions to this litigation.[6]

24

25      [6] At the hearing, Plaintiffs' counsel argued that Pezzati's request for attorneys' fees

26 should be denied entirely because Pezzati solicited class members who were represented by
counsel in violation of California Rules of Professional Conduct.  The Court is not inclined to

27 consider this argument given that it was not briefed but rather was raised for the first time at the
end of the hearing.  Even if it were to consider the argument, the Court would conclude that no

28 ethical violation has been established.  It is not clear that the California Rules of Professional
Conduct have any application in this particular context.  Perhaps more to the point, *Hernandez v.*

8

**IV. ORDER**

Good cause therefor appearing, IT IS HEREBY ORDERED that:

(1)     NYCERS' motion for final approval of the class action settlement is GRANTED;

(2)     NYCERS' motion for attorneys' fees and litigation expenses in the amount of $1,966,250 and $395,515.90 respectively is GRANTED; and

(3)     Pezzati's motion for attorneys' fees is GRANTED in the amount of $87,000, and his motion for an incentive award is GRANTED in the amount of $1,000.

DATED:  May 17, 2011

_____
JEREMY FOGEL
United States District Judge

---

*Vitamin Shoppe Industries, Inc.*, 174 Cal. App. 4th 1441 (2009), the case cited by Plaintiffs' counsel at the hearing, is distinguishable.  *Hernandez* involved an attorney who sent letters directly to class members who were represented by class counsel; the letters contained misrepresentations of fact and urged class members to opt out of the class and retain the letters' author.  There is no evidence of direct solicitation in the instant case.  Pezzati's counsel admitted to discussing the case in a blog, but he also stated that Pezzati did not retain him as a result of the blog.

9