# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE APPLE INC. SECURITIES LITIGATION | Case No. C06-05208-JF |
| | CLASS ACTION |

### Affidavit of Stephanie Thurin In Support of Class Representatives' Motion For Distribution of the Net Settlement Fund

I, STEPHANIE THURIN, being duly sworn, declare as follows:

1.    I am a Project Manager employed by Epiq Class Action and Claims Solutions Inc., ("Epiq"), the Claims Administrator designated in the Amended Stipulation and Agreement of Settlement dated as of November 12, 2010 in this matter (the "Stipulation") and approved by the Court in its Amended Order Preliminarily Approving Settlement, Directing Notice of Settlement, and Scheduling Settlement Fairness Hearing (the "Preliminary Approval Order"). *See* Doc. 134-1 at ¶1.6 and Doc. 139 at ¶8.

2.    I am overseeing and am fully familiar with the notice and claims administration actions taken by Epiq in connection with the Settlement,[1] as described below.

3.    This affidavit is based upon my personal knowledge and upon information provided by associates or staff under my supervision.

4.    Epiq is a firm with more than 40 years of experience in data processing. Epiq's claims administration services include: (a) coordination of all notice requirements;

---

[1] Unless otherwise noted, capitalized terms have the same meaning as set forth in the Stipulation.

(b) design of direct mail notice; (c) establishment of toll free phone line and fulfillment services; (d) coordination with the U.S. Postal Service; (e) database management; (f) website hosting and management; (g) claims processing; and (h) preparation of reports to courts overseeing class action settlements describing Epiq's notice and claims administration activities.

5.      As a Project Manager for Epiq, I am responsible for overseeing the claims administration services for specific class action settlements.  In conjunction with these activities, I oversee a multitude of services, such as document mailing, phone services, voice response units, live operators, website design and maintenance, mail processing and retention services, claims processing, distribution, and related tax preparation or reporting.

6.      Epiq has been retained in the above matter to:

      a.      Develop and execute a notice and claim form mailing campaign;

      b.      Cause the Publication Notice to be published in *Investor's Business Daily* and transmitted over *Business Wire*;

      c.      Publish the Notice on an informational website developed specifically for this Settlement;

      d.      Answer written and telephonic inquiries from Class Members and/or forward such inquiries to Lead Counsel;

      e.      Establish an e-mail address for Class Members and other interested persons to contact the Claims Administrator

      f.      Provide additional copies of the Notice and claim form, upon request, to Class Members;

      g.      Receive and process claims from Class Members;

       h.     Mail to Authorized Claimants their distributions under the Plan of Allocation; and

       i.     Otherwise assist Lead Counsel with the administration and implementation of the Settlement.

## I.   MAILING OF CLAIM PACKETS

7.    Pursuant to the Court's Preliminary Approval Order, Epiq, on December 8, 2010, mailed the Notice and the Proof of Claim and Release form (the "Proof of Claim" and, together with the Notice, the "Claim Packet") to a list of 31,886 potential Class Members, provided to Epiq by the transfer agent for Apple. In addition, on December 9, 2010, Epiq mailed the Claim Packet together with a solicitation letter to 5,804 brokers, financial institutions, banks, financial advisors, trustees, and custodians (collectively, "Nominees") contained in a database maintained by Epiq for use on securities cases.

8.    Subsequent to the initial Claim Packet mailings on December 8 and 9, 2010, Epiq mailed an additional 1,418,945 Claim Packets to those who called to request a Claim Packet as well as to names and addresses of potential Class Members provided to Epiq by Nominees in the form of mailing lists, mailing labels, or requests for blank Claim Packets to mail to their clients. In the aggregate, to date, Epiq has mailed a total of 1,456,635 Claim Packets for potential Class Members.

## II.   TOLL FREE TELEPHONE NUMBER AND WEBSITE

9.    Epiq activated a dedicated toll free number for the Settlement on December 7, 2010. The toll free number provides callers with automated answers to frequently asked questions and the ability to request a copy of the Claim Packet by mail. This automated or "IVR" system is available 24 hours a day, 7 days a week. One of the

options available on the toll free number is for callers to speak with a live agent. Epiq has trained agents on how to respond to questions from callers seeking information about the Settlement, seeking to obtain assistance in completing, updating and filing their Proofs of Claim and/or help in responding to any communications from Epiq. Agents are available Monday through Friday from 9:00 A.M. to 5:00 P.M. Pacific Time (excluding official holidays). During other hours, callers may leave a message for an agent to call them back. Through April 9, 2012, Epiq has received a total of 9,019 calls to the toll-free number for IVR and 4,650 calls routed to live agents. In addition to the incoming calls, Epiq made 939 calls to individuals who left call back numbers.

10.     A settlement website, www.applesecuritiessettlement.com, was established by Epiq which provides general information about the Settlement, answers to frequently asked questions and access to a number of case-related documents. Specifically, visitors to the website can download documents such as the Notice, Proof of Claim, Stipulation and Preliminary Approval Order, among other documents. This website also has automated functionality for Class Members and nominees to submit Proofs of Claim online. As of April 9, 2012, there were 5,397 Proofs of Claim filed via the settlement website. Finally, the website provided Nominees with instructions for requesting additional Claim Packets or for sending mailing lists containing names and addresses of potential Class Members to Epiq, so that Epiq could mail Claim Packets to these potential Class Members. The website also instructed Nominees regarding how to electronically submit files containing claims for large numbers of Claimants.

11.     As of April 9, 2012 the settlement website has received 39,559 unique visitors and 1,110,970 individual hits.

## III.   CLAIMS PROCESSING PROCEDURES

12.     As of April 9, 2012, Epiq has received a total of 230,237 Proof of Claim submissions. Of these, 102 were received after February 17, 2012 and were deemed "Invalid - Late" and not processed. Epiq processed the Proofs of Claim, if received before February 17, 2012, as follows:

a.     Epiq first stamped the Proof of Claim with the date of receipt, labeled the form with a unique claim number, and scanned an image of the form and supporting documentation, if any. Epiq then entered into a computer database the Claimant's personal information, such as name and address, together with the information regarding the Claimant's transactions in the eligible securities contained in their Proof of Claim or supporting documentation.

b.     Epiq reviewed the supporting documentation sent by the Claimant to determine whether the Claimant had provided sufficient proof of the transactions listed on the Proof of Claim and whether, pursuant to the information provided, the Claimant was eligible to participate in the Settlement. If a Claimant proved both that they were eligible to participate in the Settlement and that the transactions the Claimant had listed on the Proof of Claim were valid, Epiq placed the Proof of Claim in a "Complete" status. If a Claimant did not provide sufficient documentation to substantiate their claim, Epiq placed the Proof of Claim in an "Incomplete" status.

c.     Throughout the claims processing phase, Epiq mailed deficiency letters ("Defect Letters") to those Claimants whose Proofs of Claim had been deemed "Incomplete" with one or more potentially curable deficiency. The Defect Letters identified the reason(s) the claim was defective and gave Claimants 20 days to cure the deficiency(ies) in their claim. A sample Defect Letter is attached hereto as Exhibit A. In total, Epiq mailed 11,883 Defect Letters.

**Affidavit of Stephanie Thurin in Support of Class Representatives' Motion for
Distribution of the Net Settlement Fund**
Page 5 of 13

13.     If a nominee filed claims for multiple accounts electronically ("Nominee Claim"), and one or more of the individual accounts in the electronic claim were found to be deficient with one or more potentially curable deficiency, Epiq sent an e-mail to the nominee identifying the reason(s) the Nominee Claim(s) was(ere) defective and provided the nominee 20 days to cure the deficiency(ies). In total, Epiq sent 190 e-mails, representing 67,608 defective Nominee Claims, to nominees notifying them of claim deficiencies.

14.     After processing any responses received from Defect Letters, Epiq updated claims to a status of "Complete" if the claim no longer had any deficiencies, "Partially Complete" if the claim had remaining deficiencies but was otherwise eligible for payment or "Invalid" if the claim was determined to not be eligible to share in the distribution of the Net Settlement Fund.

15.     Epiq mailed Claimants notification of the denial of their Proof of Claim ("Denial Notification") informing the Claimants of the rejection of their claim for one or more of the following reasons: a) for those Claimants who did not respond to the Defect Letter sent by Epiq, or who responded, but the Claimants' response(s) did not cure the deficiency(ies); b) the Proof of Claim had no loss according to the Plan of Allocation; c) the information submitted with the Claimant's Proof of Claim indicated that there was no purchase or acquisition of eligible stock within the Class Period; d) the Proof of Claim did not contain complete and adequate documentation supporting the claimed transactions; e) the Proof of Claim submitted did not contain any transactional information; f) the claimant indicated they are a current or former employee of Apple; g) the Proof of Claim was not properly signed; or h) the Proof of Claim was found to be a duplicate of another Proof of Claim submitted. In total, Epiq mailed Denial Notifications for 29,938 rejected Proofs of Claim. The Denial Notification provided Claimants 20 days

Affidavit of Stephanie Thurin in Support of Class Representatives' Motion for
Distribution of the Net Settlement Fund
Page 6 of 13

to supply additional information and request Court review of their denied Proof of Claim. A sample Denial Notification is attached hereto as Exhibit B.

16.    If a nominee filed claims electronically, and one or more of the Nominee Claims were found to be insufficient or did not have a calculated Recognized Claim, Epiq sent an e-mail to the nominee identifying the reason(s) the Nominee Claim(s) was(ere) rejected and provided the nominee 20 days to provide additional information or request Court Review. Epiq sent 142 e-mails, representing 126,606 denied e-claims, to nominees notifying them of claim denial.

## IV.    REQUESTS FOR COURT REVIEW

17.    To date, Epiq has received letters from 101 Claimants who have timely contested the administrative rejection of their claim by requesting Court review. Epiq has reviewed these timely responses and requests for Court Review with the following results:

> a.  20 Claimants provided sufficient documentation and/or support to cure the deficiencies with their Proofs of Claim.  These Proofs of Claim have now been marked as "Complete" and the Claimants will be notified that the Proofs of Claim are no longer denied.
>
> b.  8 Proofs of Claim are denied for being duplicate claims.  The Claimants did not provide any documentation or support to show that the denied Proof of Claim was not a duplicate.  The duplicate Proofs of Claim remain "Invalid" and the main Proofs of Claim will still be processed to the extent they are eligible.
>
> c.  13 Proofs of Claim are denied as they did not show a valid purchase/acquisition of Apple common stock during the Class Period.

**Affidavit of Stephanie Thurin in Support of Class Representatives' Motion for Distribution of the Net Settlement Fund**
Page 7 of 13

> The Claimants did not provide any supporting documentation showing a valid purchase or acquisition of Apple common stock during the Class Period with their request for Court Review. The Proofs of Claim remain "Invalid."
>
> d. 60 Proofs of Claim are denied for having no Recognized Loss according to the Court approved Plan of Allocation. The Claimants did not provide any supporting documentation showing that they suffered an eligible Recognized Loss according to the Court approved Plan of Allocation with their request for Court Review. The Proofs of Claim remain "Invalid."

18. A listing of all timely requests for Court Review is attached hereto as Exhibit C which includes a brief explanation of the rejection reason and copies of the calculations according to the Plan of Allocation. In all cases, Epiq has confirmed that the Proofs of Claim were calculated pursuant to the terms of the Settlement, specifically as outlined in the Court-approved Plan of Allocation.

## V.   DISTRIBUTION RECOMMENDATIONS

19. As a result of the claims handling process explained above, Epiq has determined that 157,274 claims submitted on or before February 17, 2012, are ineligible to receive a distribution. Epiq has sent notification to each of these Claimants, explaining the reason(s) their claims would be rejected. For those Claimants who requested a Court Review but did not provide sufficient information to cure the deficiencies with their claims, Epiq has determined that these claims are not eligible to share in the Net Settlement Fund.

20. Based on approval from Lead Counsel, no Proof of Claim was rejected because it was postmarked after the initial submission deadline, as long as it was received

Affidavit of Stephanie Thurin in Support of Class Representatives' Motion for
Distribution of the Net Settlement Fund
Page 8 of 13

on or before February 17, 2012, the date Denial Notifications were sent. Accordingly, any procedurally sufficient Proof of Claim postmarked after the initial submission deadline of March 15, 2011, but received on or before February 17, 2012, was assigned a status of "Complete" or "Partially Complete" if it was otherwise found to be eligible. A total of 21,931 Proofs of Claim were submitted after the original filing deadline of March 15, 2011 but before February 17, 2012. Of these, 12,412 Proofs of Claim were found to be otherwise eligible for payment. We believe no delay has resulted from the provisional acceptance of these late claims. It is our belief that it would be unfair to prevent an otherwise valid Proof of Claim from participating in the Net Settlement Fund solely because it was submitted after the cut-off date, when it was submitted while Proofs of Claim were still being processed.

21. Acceptance of any Proof of Claim received after February 17, 2012 to share in the Net Settlement Fund would necessarily require a delay in the proposed distribution. Lead Counsel's motion requests the Court to enter an order barring acceptance of any Proofs of Claim received after February 17, 2012.

## VI. SUMMARY OF PROOFS OF CLAIM

22. In summary, after completing the processing described in this affidavit, Epiq has placed the Proofs of Claim received into the following categories:

| | |
|---|---|
| Complete | 50,408 |
| Partially Complete | 22,453 |
| Invalid – General | 155,761 |
| Invalid – Duplicate | 1,218 |
| Invalid – Void/Withdrawn | 295 |

Invalid – Late (received after February 17, 2012)          102

**Total**                                                        **230,237**

These results are typical for a complex class action administration of this size, given the requirements of the Settlement and Plan of Allocation.

23.     Epiq recommends that the Court reject all claims falling into the categories "Invalid – General", "Invalid – Duplicate", "Invalid – Void/Withdrawn", and "Invalid – Late". A summary of these rejected claims is attached as Exhibit D, and a full list of all rejected claims can be provided to the Court upon request.

24.     Epiq recommends that the Court accept all claims deemed "Complete" and "Partially Complete." There are 60,449 Proofs of Claim which were submitted before the original filing deadline and have been determined to be Authorized Claims. Attached as Exhibit E is a list of these Authorized Claims. There are also 12,412 Proofs of Claim which were submitted after the original filing deadline of March 15, 2011 but before February 17, 2012 and are otherwise eligible for payment. Attached as Exhibit F is a list of these Authorized Claims filed after the original filing deadline.

25.     In total, Epiq has determined that 72,861 Proofs of Claim are Authorized Claims representing total Recognized Claims of $233,140,564.49 (including $182,095,141.24 from Proofs of Claim submitted before the original March 15, 2011 submission deadline and $51,045,423.25 from Proofs of Claim submitted after the March 15, 2011 submission deadline, but received on or before February 17, 2012).

26.     Epiq will continue to process any incoming correspondence pertaining to Proofs of Claim that were received on or before February 17, 2012. Adjustments to Proofs of Claim will be updated in our database and Recognized Claim amounts amended prior to distribution of the Net Settlement Fund. Any such adjustments to the numbers submitted herein will be provided to Lead Counsel prior to distribution.

## VII.   THE DISTRIBUTION

27.     The Plan of Allocation directs that the Net Settlement Fund (the "Distribution Amount"), be distributed to Authorized Claimants. Once it is determined which Authorized Claimants are entitled to payment from the Distribution Amount, Epiq will allocate the Distribution Amount among all eligible Authorized Claimants in the proportions each eligible Authorized Claimant's Recognized Claim bears to the total Recognized Claims of all eligible Authorized Claimants.

28.     The Plan of Allocation directs that no payment will be made on a Recognized Claim where the distribution amount is less than $5.00. Any Authorized Claimant whose *pro rata* distribution amount falls below this threshold will be sent a notification that their Proof of Claim is *de minimis* and they will not be sent an award from the Net Settlement Fund.

29.     After the *de minimis* Proofs of Claim have been excluded, Epiq will recalculate the remaining *pro rata* distribution amounts for the Authorized Claimants whose Recognized Claims are above the minimum payment threshold. Once the *pro rata* distribution amounts are determined for each eligible Authorized Claimant who is not *de minimis*, Epiq will create a payment file that identifies the distribution amounts for such Authorized Claimants. Epiq will then perform quality control checks to confirm that the payment file is expected to correctly pay the eligible Authorized Claimants according to the Plan of Allocation. If any discrepancies are found, Epiq will correct these and re-run the payment file. When the payment file appears to be correct, Epiq will print the checks. Epiq will compare the printed checks to the list of Authorized Claimants and their projected payment amounts to confirm those checks have printed correctly and are made payable in the correct amounts to the correct Authorized Claimants.

Affidavit of Stephanie Thurin in Support of Class Representatives' Motion for
Distribution of the Net Settlement Fund
Page 11 of 13

30.     Epiq will then mail the checks to the eligible Authorized Claimants by first class mail. Epiq will issue replacement checks upon request by the payee, and will respond to inquiries about distribution amounts and claim calculations.

31.     As indicated in the Plan of Allocation, if any funds remain in the Net Settlement Fund by reason of un-cashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have participating Class Members deposit the checks they were issued, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution shall be re-distributed to Authorized Claimants who have cashed their initial distributions, after payment of any unpaid costs or fees incurred in the administering of the Net Settlement Fund for such re-distribution, up to a maximum distribution of $1.70 per share. If any funds remain in the Net Settlement Fund six (6) months after such re-distribution, then such balance shall be contributed in nine equal payments to the nine corporate governance programs as described in the Plan of Allocation.

## VIII.  FEES AND EXPENSES

32.     Epiq agreed to be the Claims Administrator for this case in exchange for the payment of its fees and out-of-pocket expenses. Defendants were billed on a regular basis and received regular reports of all of the work Epiq performed with respect to the administration of this Settlement.    Defendants have authorized all of the claims administration work performed herein.

33.     Epiq has incurred and will continue to incur administrative expenses through the termination of the Net Settlement Fund. These expenses include, *inter alia*: the preparation and mailing of checks to approved claimants, responding to Class Member inquiries regarding their distributions, conducting a possible re-distribution of

Affidavit of Stephanie Thurin in Support of Class Representatives' Motion for
Distribution of the Net Settlement Fund
Page 12 of 13

any remaining settlement funds following the initial distribution, and completing all tax activities.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Stephanie Thurin

Project Manager, Epiq Systems Inc.

SWORN TO AND SUBSCRIBED before me, a Notary Public for the State and County aforesaid, on this  11th  day of  July , 2012.

Notary Public

My Commission Expires:  8/12/2015

OFFICIAL SEAL
ROBERT B OSEAS
NOTARY PUBLIC-OREGON
COMMISSION NO. 460732
MY COMMISSION EXPIRES AUG. 12, 2015